1  **SMILEY WANG-EKVALL, LLP**
Lei Lei Wang Ekvall, State Bar No. 163047
2  *lekvall@swelawfirm.com*
Philip E. Strok, State Bar No. 169296
3  *pstrok@swelawfirm.com*
Timothy W. Evanston, State Bar No. 319342
4  *tevanston@swelawfirm.com*
3200 Park Center Drive, Suite 250
5  Costa Mesa, California 92626
Telephone:   714 445-1000
6  Facsimile:   714 445-1002

7  Proposed Attorneys for Elissa D. Miller,
Chapter 7 Trustee

8

**UNITED STATES BANKRUPTCY COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**LOS ANGELES DIVISION**

11

| | |
|---|---|
| In re | Case No. 2:20-bk-21022-BR |
| GIRARDI KEESE, | Chapter 7 |
| Debtor. | **EMERGENCY MOTION FOR ORDER:** |
| | **(1) APPROVING COMPROMISE WITH FRANTZ LAW GROUP, APLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019;** |
| | **(2) AUTHORIZING THE ASSIGNMENT OF THE ESTATE'S INTERESTS IN THE SOUTHERN CALIFORNIA GAS LEAK LITIGATION FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS PURSUANT TO 11 U.S.C. § 363; AND** |
| | **(3) AUTHORIZING REJECTION OF THE ASSUMPTION AND LIEN AGREEMENT BETWEEN THE DEBTOR AND ABIR COHEN TREYZON SALO LLP PURSUANT TO 11 U.S.C. § 365** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ELISSA D. MILLER IN SUPPORT** |
| | Date:    To be set |
| | Time:    To be set |
| | Ctrm.:   1668 via ZoomGov |
| | 255 E. Temple Street |
| | Los Angeles, CA 90012 |

*Left margin vertical text:* SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

2

3

4

5

Web Address: https://cacb.zoomgov.com
Meeting ID:    To be set
Password:      To be set
Telephone:     To be set

6   / / /

7   / / /

8   / / /

9   / / /

10   / / /

11   / / /

12   / / /

13   / / /

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2852950.2

MOTION

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................. 1

II.   BACKGROUND .............................................................................. 3

    A.    The Debtor's Bankruptcy Case............................................... 3

    B.    The Debtor's Pending Cases................................................... 4

    C.    The Purported Pre-Petition Agreement with Abir Cohen Treyzon
       Salo LLP............................................................................... 4

    D.    The Settlement Agreement with Frantz ................................... 5

III.  MEMORANDUM OF POINTS AND AUTHORITIES ........................... 8

    A.    The Court Can Approve the Settlement Agreement with Frantz Law
       Group, APLC ......................................................................... 8

    B.    The Settlement Agreement is Fair and Reasonable.................... 9

        1.    The Probability of Success is Uncertain and the Issues are
           Complex ....................................................................... 9

        2.    There Will Be Delay If Resolution is Through Litigation ...... 10

        3.    The Settlement Agreement is Reasonable and In the Best
           Interest of Creditors ...................................................... 10

        4.    The Settlement Agreement is in the Best Interest of the
           Debtor's Clients ........................................................... 11

    C.    The Court Can Authorize the Assignment Under 11 U.S.C. § 363(b) ........ 11

    D.    The Court May Authorize the Assignment of the Estate's Interests in
       Free and Clear of Any Liens and Interests Under 11 U.S.C. § 363(f) ........ 12

    E.    Waiver of 14-Day Stay Set Forth in FRBP 6004(h) is Appropriate ............. 14

    F.    The Trustee Should Be Authorized to Reject Any Agreements with
       ACTS.................................................................................... 14

IV.   EMERGENCY RELIEF IS WARRANTED AND APPROPRIATE .......................... 16

V.    CONCLUSION .............................................................................. 16

i

MOTION

## TABLE OF AUTHORITIES

**Page**

## CASES

*Agarwal v. Pomona Valley Med. Group (In re Pomona Valley Med. Group)*, 476 F.3d 665 (9th Cir. 2007). ........................................................................................ 15

*Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (B.A.P. 9th Cir. 2008). ............................................................................................................. 13

*Diamond Tr. of Estate of Howrey LLP v. Hogan Lovells US LLP (In re Howrey LLP)*, 950 F.3d 1200 (9th Cir. 2020). ............................................................. 9

*GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251 (N.D. Tex. 2005) ................................................................................................................ 12

*Heller Ehrman LLP v. Davis Wright Tremaine LLP*, 4 Cal. 5th 467 (2018). ...................... 9

*In re 240 North Brand Partners, Ltd.*, 200 B.R. 653 (B.A.P. 9th Cir. 1996) ..................... 12

*In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986) ......................................................... 8

*In re America West Airlines*, 166 B.R. 908  (Bankr. D. Ariz.1994) ................................... 11

*In re America West Airlines, Inc.*, 214 B.R. 382 (Bankr. D. Ariz. 1997) .............................. 9

*In re Ernst Home Center, Inc.*, 209 B.R. 974 (Bankr. W.D. Wash. 1997) ......................... 12

*In re Hermitage Inn, Inc.*, 66 B.R. 71 (Bankr. D. Colo. 1986) ............................................ 8

*In re Lahijiani*, 325 B.R. 282 (B.A.P. 9th Cir. 2005) .......................................................... 12

*In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983) ............................................................... 11

*In re MF Global, Inc.*, 535 B.R. 596 (Bankr. S.D.N.Y. 2015) ............................................ 12

*In re Mickey Thompson Entertainment Group, Inc.*, 292 B.R. 415 (B.A.P. 9th Cir. 2003) ................................................................................................................ 8

*In re Psychrometric Systems, Inc.*, 367 B.R. 670 (Bankr. D. Colo. 2007). ....................... 12

*In re Schmitt*, 215 B.R. 417 (B.A.P. 9th Cir. 1997) ............................................................. 8

*In re World Health Alternatives, Inc.*, 344 B.R. 291 (Bankr. D. Del. 2006). ..................... 8

*Lubrizol Enter. v. Richmond Metal Finishers*, 756 F. 2d 1043 (4th Cir. 1985). ................. 15

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984). ........................................................... 14

*Unsecured Creditors' Comm. of Robert L. Helms Constr. & Dev. Co., v. Southmark Corp.*, 139 F. 3d 702 (9th Cir. 1998) ................................................................... 14

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## **STATUTES**

11 U.S.C. § 303(g) .................................................................................................. 3

11 U.S.C. § 362 ..................................................................................................... 4

11 U.S.C. § 363 .............................................................................................. passim

11 U.S.C. § 365 .......................................................................................... 1, 17, 20

California Commercial Code § 9610 ................................................................ 15, 16

California Commercial Code § 9615 ................................................................ 15, 16

FRBP 6004(h) ...................................................................................................... 16

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Elissa D. Miller, the chapter 7 trustee (the "Trustee") for the bankruptcy estate of Girardi Keese (the "Estate"), submits this Emergency Motion for Order: (1) Approving Compromise with Frantz Law Group, APLC Pursuant to Federal Rule of Bankruptcy Procedure 9019; (2) Authorizing the Assignment of the Estate's Interests in the Southern California Gas Leak Litigation Free and Clear of Liens, Claims and Interests Pursuant to 11 U.S.C. § 363; and (3) Authorizing Rejection of the Assumption and Lien Agreement Between the Debtor and Abir Cohen Treyzon Salo LLP Pursuant to 11 U.S.C. § 365 (the "Motion").  In support of the Motion, the Trustee submits the following memorandum of points and authorities and the attached Declaration of Elissa D. Miller.

## I.    **INTRODUCTION**

Prior to the involuntary petition, Girardi Keese (the "Debtor") was a prominent plaintiff's law firm representing clients in the areas of personal injury, defective products, sexual abuse, toxic torts, business law, employment law, and aviation law.  Pre-petition, the Debtor and Frantz Law Group, APLC ("Frantz") jointly represented approximately 8,200 plaintiffs against Southern California Gas Company in connection with the 2015 months-long gas leak at Aliso Canyon near Porter Ranch in Los Angeles, California (the "Southern California Gas Leak Litigation").  In connection with the joint representation, the Debtor and Frantz entered into agreements including (a) the Porter Ranch Agreement Frantz Law Group, APLC & Girardi Keese, and (b) the Attorney-Client Contingent Fee Agreement Addendum  (the "Joint Representation Agreements")[1].  Collectively, the Debtor's and Frantz's jointly represented clients that constitute approximately 22% of the total plaintiffs in the Southern California Gas Leak Litigation.

---

[1]    The Joint Representation Agreements are confidential.  At the Court's request, the Trustee and/or Frantz will provide copies of the Joint Representation Agreements for *in camera* review.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   Since her appointment, the Trustee and her counsel have diligently worked to

2   analyze the Debtor's pending cases.  To protect the Debtor's clients, the Trustee and her

3   counsel have engaged in discussions with reputable law firms to discuss the possibility of

4   transferring some or all of the Debtor's pending cases to qualified and experienced

5   counsel.

6   The Trustee has reached an agreement with Frantz involving the transfer of the

7   Estate's interests in the Southern California Gas Leak Litigation to Frantz, its co-counsel

8   in the Southern California Gas Leak Litigation (the "Settlement Agreement").  The Court

9   should approve the Settlement Agreement.  The Estate's interests in the Southern

10  California Gas Leak Litigation implicate an unsettled area of law and other related issues

11  which will result in lengthy litigation.  The Settlement Agreement resolves these issues

12  and expedites an orderly transition of existing jointly-represented clients to co-counsel

13  and maximizes the recovery to the Estate.  Moreover, the Settlement Agreement is in the

14  best interest of both the Estate's creditors and the Debtor's clients.  Not only does the

15  Settlement Agreement dramatically reduce litigation costs for the Estate, it also provides

16  for a near identical recovery of fees as contemplated in the Joint Representation

17  Agreements.  The Settlement Agreement also protects the clients and eliminates any

18  uncertainty for the clients as to who represents them.  In short, the Settlement Agreement

19  results in the best possible outcome for the Estate and the Debtor's clients in the

20  Southern California Gas Leak Litigation.  For these reasons, the Settlement Agreement

21  should be approved.

22  In connection with the Southern California Gas Leak Litigation, the Trustee

23  recently learned that the law firm of Abir Cohen Treyzon Salo, LLP ("ACTS"), has been

24  sending mass emails to the Debtor's and Franz's jointly represented clients seeking to

25  unethically and improperly solicit their agreement to retain ACTS.  ACTS claims that it

26  has a pre-petition agreement with the Debtor to be associated into several cases with the

27  case files to be transferred to ACTS.  However, the files were not transferred due to a

28  freeze order issued against ACTS by Judge Thomas M. Durkin, United States District

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  Court Judge for the Northern District of Illinois.  The freeze order was not lifted until after

2  the involuntary petition was filed and the automatic stay was in place.  To avoid any

3  confusion and with a full reservation of rights, the Trustee also seeks to reject this

4  purported pre-petition agreement between the Debtor and ACTS.

5

6  **II.      BACKGROUND**

7           A.      <u>The Debtor's Bankruptcy Case</u>

8           The Debtor is a plaintiff's law firm based in Los Angeles, California.  On December

9  18, 2020, petitioning creditors Jill O'Callahan, as successor in interest to James

10  O'Callahan, Robert M. Keese, John Abassian, Erika Saldana, Virginia Antonio, and

11  Kimberly Archie (collectively, the "Petitioning Creditors") filed an involuntary chapter 7

12  bankruptcy petition against the Debtor.[2]  On December 24, 2020, the Petitioning

13  Creditors filed a *Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. §*

14  *303(g)* [Docket No. 12].  The Court entered an order granting the motion on January 5,

15  2021 [Docket No. 45].  On January 6, 2021, the Trustee was appointed as the interim

16  trustee [Docket No. 50].

17           On January 13, 2021, the Court entered an *Order Directing: (1) The Clerk of Court*

18  *to Immediately Enter an Order for Relief under Chapter 7; (2) The United States Trustee*

19  *to Immediately Appoint a Chapter 7 Trustee; (3) The Debtor to File All Schedules and*

20  *Related Documentation for Chapter 7 Case within Fourteen Days of the Entry of this*

21  *Order; and (4) Vacating February 16, 2021 Status Conference* [Docket No. 68].  On

22  January 13, 2021, the Clerk of Court entered an order for relief against the Debtor

23  [Docket No. 69], and the Trustee was appointed and accepted her appointment in the

24  Debtor's case [Docket No. 71].

25

26  _____

27  [2]      The Petitioning Creditors also filed an involuntary chapter 7 bankruptcy petition
against Thomas V. Girardi, which is currently pending as Bankruptcy Case No. 2:20-bk-

28  21020-BR.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    On December 30, 2020, Frantz filed a *Motion for Relief from the Automatic Stay*

2 *Under 11 U.S.C. § 362* ("Stay Relief Motion") [Docket No. 31].  On January 19, 2021, the

3 Trustee filed its Opposition to the Stay Relief Motion.  On January 20, 2021, the Trustee

4 and Frantz stipulated to continue the hearing on the Stay Relief Motion [Docket No. 109].

5 On January 21, 2021, the Court entered an order approving the stipulation to continue

6 the hearing on the Stay Relief Motion [Docket No. 110].  A hearing on the Stay Relief

7 Motion is currently scheduled for March 2, 2021.

8    **B.    The Debtor's Pending Cases**

9    As of the filing of the involuntary petition against the Debtor, the Debtor was

10 counsel of record in a significant number of cases which were undertaken on a

11 contingency fee basis.  Unfortunately, by the time the Trustee was appointed in the

12 Debtor's case, most of the Debtor's attorneys and staff had resigned or moved on from

13 the firm.  Accordingly, the Debtor is not in a position where it can continue to represent its

14 clients in its pending matters.  The protection of the clients' rights has been one of the

15 Trustee's highest concerns since her appointment.  Accordingly, the Trustee and her

16 counsel have initiated discussions with a number of law firms, with the goal of transferring

17 some or all of the Debtor's pending cases.  *See* Declaration of Elissa D. Miller.

18    The Southern California Gas Leak Litigation is one of the Debtor's most significant

19 pending cases.  Pursuant to the Joint Representation Agreements, both parties agreed to

20 equally share all expenses paid and attorneys' fees recovered from the Southern

21 California Gas Leak Litigation.  Together, the Debtor and Frantz worked on the Southern

22 California Gas Leak Litigation for over five years, with Frantz being actively involved as

23 co-counsel.  *See* Declaration of Elissa D. Miller.

24    **C.    The Purported Pre-Petition Agreement with Abir Cohen Treyzon**

25        **Salo LLP**

26    In or about April 2020, ACTS obtained a judgment for approximately $11 million

27 against the Debtor on behalf of a client.  In October 2020, ACTS filed a turnover action on

28 behalf of its client.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    In or about October of 2020, in connection with ACTS' collection efforts on the $11

2 million judgment against the Debtor, ACTS and the Debtor purportedly entered into an

3 agreement for ACTS to associate into several cases with GK with case files transferred to

4 ACTS.  *See* Declaration of Boris Treyzon at ¶ 4, Exhibit 2.  According to a partner at

5 ACTS, this agreement was not effectuated and none of the files were transferred due to a

6 freeze order (the "Freeze Order") directed at ACTS and others that was issued by the

7 Honorable Thomas M. Durkin, United States District Court, Northern District of Illinois.

8 *See id.*  After the involuntary petition was filed, Judge Durkin lifted the Freeze Order as

9 the automatic stay was in effect.  *See* Declaration of Elissa D. Miller.

10    In response to the Trustee's demand to ACTS for turnover of property of the

11 Debtor's estate and to cease contacting the jointly represented clients in the Southern

12 California Gas Leak Litigation, ACTS referred the Trustee and Frantz to an Assumption

13 and Lien Agreement ("Assumption Agreement"), a copy of which is attached hereto as

14 Exhibit 3.  In the Assumption Agreement, ACTS was given the opportunity to conduct due

15 diligence on the Debtor's pending cases and determine which ones it would assume,

16 "subject to client consents and ethical compliance."  ACTS was also permitted to

17 communicate directly with the Debtor's lawyers or staff to determine whether to employ

18 them.  In exchange for this, the Debtor gave up its economic and contractual rights in the

19 cases ACTS decided to assume for only a promise to be reimbursed costs and "quantum

20 meruit charges" if there was a recovery to pay them.

21    Prepetition, ACTS admitted that it had not assumed representation of any of the

22 clients in the Southern California Gas Leak Litigation.  Despite not representing the

23 clients in Southern California Gas Leak Litigation, ACTS has prematurely—and without

24 authorization—filed notices of substitution in the Southern California Gas Leak Litigation.

25    **D.    The Settlement Agreement with Frantz**

26    On January 24, 2020, the Trustee and Frantz entered into the Settlement

27 Agreement.  A true and correct copy of the Settlement Agreement is attached hereto as

28 Exhibit "1."  The salient terms of the Settlement Agreement summarized as follows:

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1.    **Allocation of Joint Representation Fees.**  The Settlement Agreement defines Joint Representation Fees as all fees that may be received by Frantz or the Trustee on account of Frantz's and Debtor's representation of the 8,202 clients in the Southern California Gas Leak Litigation, net of referral fees and any common benefit assessments.  The Trustee is to receive 45% of the Joint Representation Fees less 50% of the costs (the "Estate Allocation"), with Frantz to receive 55% of the Joint Representation Fees less 50% of the costs (the "Frantz Allocation").  As of the petition date, to the extent that Frantz advanced and paid more than 50% of the costs, the difference between the amount advanced and paid and 50% shall be credited against the Estate Allocation.  Postpetition, the Estate is not obligated to provide any services or advance any costs, with 50% of the costs advanced and paid by Frantz to be credited against the Estate Allocation.  The parties also acknowledge that the Debtor has advanced or incurred costs in the Southern California Gas Leak Litigation, with some of these costs to be claims in the Debtor's bankruptcy case, and the Estate is to receive reimbursement for such costs as part of the Estate Allocation.

2.    **Payment of Allocated Fees.**  Fees will be made payable to a trust fund that Frantz administers.  Within 30 days of receipt of funds, Frantz will calculate the allocations to the Estate and Frantz, and Frantz will notify the Trustee of the proposed allocations.  If the Trustee does not object to the proposed allocations in 14 days, Frantz will distribute the fees according to the proposed allocation.  If there is a dispute among the parties, Frantz will reserve the amount necessary to satisfy the Trustee's objection and may distribute the remainder if the Trustee's objection is sustained.  The parties agree to promptly resolve any disputes.  If the parties are unable to resolve any disputes in 30 days, they will submit their dispute to the Bankruptcy Court.

3.    **Common Defense Benefit Claim.**  The Trustee and Frantz each retain 100% of any common defense/benefit fund claim owing to them and are each separately responsible for all costs and expenses associated with each of their claims.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

4.      **Assignment of Interests Free and Clear.**  Subject to the fee allocation, the Trustee will assign all of the Debtor's and Estate's interests in the Southern California Gas Leak Litigation to Frantz.  The Trustee's assignment is "as-is", "where-is", and without representation or warranty of any kind, including without limitation any representation or warranty as to the continued representation of the clients in the Southern California Gas Leak Litigation.  The assignment to Frantz will be free and clear of any liens, claims and interests to Frantz pursuant to 11 U.S.C. § 363(f).  The assignment free and clear of any liens, claims and interests includes but is not limited to any purported liens or encumbrances to litigation funders or creditors of the Debtor and any purported assignments and transfers by the Debtor.  Any claims held by creditors or third parties against the Debtor will be asserted only against the Estate Allocation.  Frantz is not assuming any liabilities of the Estate or the Debtor.

5.      **Withdrawal and Substitution of Debtor as Counsel.**  The Trustee will take all reasonable steps to cause the Debtor to withdraw as counsel.  The Trustee shall also coordinate with Frantz to smoothly transition the cases to Frantz and to notify the clients of the transition.  Frantz agrees and the clients acknowledge and agree that the Debtor has a lien in the Southern California Gas Leak Litigation for the Estate Allocation and the costs advanced or otherwise incurred by the Debtor.  The Debtor's lien will attach to any recovery obtained by the clients whether through arbitration award, judgment settlement or otherwise.  The Trustee is authorized to take all steps necessary to protect and preserve the lien on behalf of the Debtor and the Estate.

6.      **Bankruptcy Court Approval.**  The terms of the Settlement Agreement, and the effectiveness thereof, are subject to Court approval.

/ / /

/ / /

/ / /

/ / /

/ / /

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

III. **MEMORANDUM OF POINTS AND AUTHORITIES**

A. **The Court Can Approve the Settlement Agreement with Frantz Law Group, APLC**

Federal Rule of Bankruptcy Procedure ("FRBP") 9019(a) provides, in part, that a court may approve a compromise per motion by the trustee and after a hearing on notice to the debtor, all creditors, and all interested parties. The standard to be applied to the approval of a settlement includes the probability of success of any litigation, the difficulties in collection on a judgment, the complexity of the matter, the expense, inconvenience or delay occasioned by resolution through litigation, and interests of creditors, and the reasonableness of the compromise. *In re A & C Properties,* 784 F.2d 1377, 1380-81 (9th Cir. 1986).

"The bankruptcy court has great latitude in approving compromising agreements." *See id.* In approving a settlement agreement, the court must find that it is fair and equitable and the product of good-faith negotiations. *See id.* Generally speaking, the court may defer to the business judgment of the debtor-in-possession or trustee in deciding whether to settle a matter. *See In re Mickey Thompson Entertainment Group, Inc.,* 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003). The court need not conclude that the proposed settlement is the best possible compromise, but only that the settlement is "within the reasonable range of litigation possibilities." *See In re World Health Alternatives, Inc.,* 344 B.R. 291, 296 (Bankr. D. Del. 2006). Similarly, the court need not, and should not conduct a "mini-trial" on the compromised claims but simply determine that disputes related to those claims exist. *See In re Schmitt,* 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997) ("When assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues. A mini-trial on the merits is not required."); *see also, In re Hermitage Inn, Inc.,* 66 B.R. 71, 72 (Bankr. D. Colo. 1986) ("[T]he court's assessment does not require resolution of the issues, but only their identification, so that the reasonableness of the settlement may be evaluated."). It is

1    enough that the court conclude the probability of success is uncertain.  *See, e.g., In re*

2    *America West Airlines, Inc.,* 214 B.R. 382, 386 (Bankr. D. Ariz. 1997).

3    **B.    The Settlement Agreement is Fair and Reasonable**

4    **1.    The Probability of Success is Uncertain and the Issues are**

5    **Complex**

6    The Settlement Agreement resolves complex legal issues and the probability of

7    the Trustee's success is not certain.  Here, a key legal issue concerns whether the Estate

8    has an interest in the prospective fees of the Debtor's contingency cases.  However, the

9    question of whether the Estate has an interest in these prospective fees from contingency

10    cases is a matter of unsettled law.  Specifically, the California Supreme Court has only

11    ruled on whether a dissolved law firm has an interest in prospective fees from hourly fee

12    matters, finding that the dissolved law firm does not have an interest in hourly fee

13    matters.  *See Heller Ehrman LLP v. Davis Wright Tremaine LLP*, 4 Cal. 5th 467, 471

14    (2018).  The Ninth Circuit reached a similar conclusion regarding hourly fee matters when

15    applying Washington D.C. law.  *See Diamond Tr. of Estate of Howrey LLP v. Hogan*

16    *Lovells US LLP (In re Howrey LLP)*, 950 F.3d 1200, 1202 (9th Cir. 2020).  However, both

17    the California Supreme Court and Ninth Circuit noted in dicta that contingency fee cases

18    may warrant different treatment.  *See Heller Ehrman LLP*, 4 Cal. 5th at 480, 483; *In re*

19    *Howrey LLP*, 950 F.3d at 1214-15.  In short, these decisions are recent and there

20    appears to be no prevailing case law that is directly on point.  Thus, it is not certain

21    whether the Trustee will ultimately prevail.

22    Multiple additional issues exist.  If the Settlement Agreement is not approved, the

23    parties will likely litigate over the amount the Estate is entitled to under a quantum meruit

24    theory for work already performed.  Frantz has also indicated the possibility of alleging

25    that the Debtor breached its obligations under the Joint Representation Agreements and

26    owes Frantz for alleged costs Frantz advanced.  Collectively, all of these issues will

27    require the Trustee to spend significant time and resources, made even more difficult

28    because most of the Debtor's attorneys and staff are no longer working for the Debtor.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  The Settlement Agreement resolves these issues, also resolves the pending Stay Relief

2  Motion, and prevents the Estate from incurring crippling fees and costs from protracted

3  litigation.

4  **2.      There Will Be Delay If Resolution is Through Litigation**

5      The Settlement Agreement will expedite the recovery to the Estate.  As noted

6  above, if the Settlement Agreement is not approved, there will likely be lengthy litigation

7  between the Debtor and Frantz concerning the Debtor's rights to fees in the Southern

8  California Gas Leak Litigation.  In addition, the Debtor and Frantz will likely litigate over

9  the value of the Debtor's quantum meruit rights and whether the Debtor breached any

10 obligations under the Joint Representation Agreements.  If litigation ensues, it will very

11 likely delay the final recovery to the Estate's creditors.  The Estate's costs to recover any

12 assets will further diminish recovery to creditors.  In sum, the Settlement Agreement

13 prevents extended litigation that will delay the ultimate recovery to the Estate's creditors.

14 **3.      The Settlement Agreement is Reasonable and In the Best**

15 **Interest of Creditors**

16     The Settlement Agreement is reasonable and in the best interest of the Debtor's

17 creditors.  Under the Settlement Agreement, the Estate will receive 45% of the fees

18 recovered for the clients in the Southern California Gas Leak Litigation.  This result

19 greatly benefits the Estate.  The Debtor and Frantz previously agreed to divide the

20 recovered fees 50% each.  Here, the Settlement Agreement is entirely reasonable—the

21 Estate will receive only 5% less in recovered fees than previously bargained for.  As to

22 costs, the Estate will ultimately be responsible for 50% of the costs as originally agreed.

23 The recovered fees in the Southern California Gas Leak Litigation are expected to be a

24 significant asset for the Estate.  With the Estate retaining its interest in the recovered

25 fees, the Estate's creditors will greatly benefit from approval of the Settlement

26 Agreement.  In short, the Settlement Agreement is in the best interest of the Debtor's

27 creditors because it is reasonable and will likely yield a substantial recovery for the

28 Estate.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**4.** **The Settlement Agreement is in the Best Interest of the Debtor's**

**Clients**

The Settlement Agreement is in the best interest of the Debtor's clients.  While the

decision to choose and retain counsel rests with the clients, the Settlement Agreement

will provide the Debtor's clients in the Southern California Gas Leak Litigation with the

opportunity to continue with reputable and experienced counsel through Frantz's

representation.  Moreover, the Debtor's clients will be represented by existing co-counsel

who is already familiar with the case.  Together with the Debtor, Frantz has represented

the clients for over five years.  Frantz's experience working on this case and its extensive

knowledge is invaluable for clients.  Moreover, throughout its half a decade of

involvement in the Southern California Gas Leak Litigation, Frantz communicated

extensively with the clients.  Thus, given Frantz's extensive experience and familiarity,

there will be significant disruption to the clients' representation if the Settlement

Agreement is not approved.  *See* Declaration of Elissa D. Miller.  Ultimately, if the clients

choose to remain with Frantz, they will be represented by counsel who is already

knowledgeable about the case and the clients and is experienced and qualified.  Thus,

the Settlement Agreement is in the best interests of the Southern California Gas Leak

Litigation clients.

**C.** **The Court Can Authorize the Assignment Under 11 U.S.C. § 363(b)**

Section 363(b) of the Bankruptcy Code empowers a trustee to "use, sell or

lease…other than in the ordinary course of business, property of the estate…"  A

transaction outside the ordinary course of business is appropriate when proposed in good

faith and supported by a sound or valid business justification.  In consideration of a

proposed transaction to use or sell property of the estate, courts look at whether the

transaction is in the best interests of the estate based on the facts and history of the

case.  *In re America West Airlines*, 166 B.R. 908, 912 (Bankr. D. Ariz.1994) (*citing In re

Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).  This requires examination of the

"business justification" for the proposed transaction.  *In re 240 North Brand Partners,*

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel  714 445-1000  •  Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel  714 445-1000 • Fax 714 445-1002

1  *Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996); *In re Ernst Home Center, Inc.*, 209 B.R.

2  974 (Bankr. W.D. Wash. 1997).  A trustee's business judgment is subject to great judicial

3  deference.  *See In re Lahijiani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *see also In re*

4  *MF Global, Inc.,* 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015)*; GBL Holding Co., Inc. v.*

5  *Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005); *In re Psychrometric*

6  *Systems, Inc.*, 367 B.R. 670, 674 (Bankr. D. Colo. 2007).

7           The proposed assignment under the Settlement Agreement is in the best interests

8  of the Estate and has been proposed in good faith.  The Settlement Agreement

9  eliminates the costs the Estate would incur litigating with Frantz over the Estate's rights

10  and interests in the Southern California Gas Leak Litigation.  Further, the Settlement

11  Agreement allows the Estate to maximize its recovery on one of its most significant

12  cases, and on terms that are substantially similar to the Debtor's prepetition Joint

13  Representation Agreements.  Finally, the Settlement Agreement is the product of the

14  Trustee's arms-length negotiations with Frantz, after receiving far inferior proposals from

15  other law firms, ranging from 10% to 25% of the total fee, as compared to 45% of the

16  total fee.  The Settlement Agreement likely represents the best outcome for the Estate.

17  In short, there is a valid business justification for the Settlement Agreement.  *See*

18  Declaration of Elissa D. Miller.  For these reasons, the Court should authorize the

19  assignment under the Settlement Agreement under 11 U.S.C. § 363(b).

20           **D.      The Court May Authorize the Assignment of the Estate's Interests in**

21                    **Free and Clear of Any Liens and Interests Under 11 U.S.C. § 363(f)**

22           As noted earlier, the Settlement Agreement provides that any creditors of the

23  Debtor that may hold an interest in the Debtor's future recovered attorney fees may only

24  assert such interests against the Estate Allocation.  These claims are unique to the

25  Debtor and not Frantz.  Simply put, creditors can only assert their claims and interests

26  against the Debtor, not against Frantz and the Frantz Allocation.  To make clear that

27  these creditors' potential interests are only against the Estate Allocation, the Trustee

28  seeks Court approval to authorize the assignment contemplated in the Settlement

1  Agreement to be free and clear of any liens, claims and interests under 11 U.S.C. §

2  363(f).

3      The Court has authority to authorize the assignment of the Estate's interests in the

4  Southern Gas Leak Litigation to Frantz free and clear of any liens, claims and interests

5  under 11 U.S.C. § 363(f).  Section 363(f) provides the following:

> (f)  The trustee may sell property under subsection (b) or (c) of this section
> free and clear of any interest in such property of an entity other than the
> estate, only if—
>
>> (1)  applicable nonbankruptcy law permits sale of such property free
>> and clear of such interest;
>>
>> (2)  such entity consents;
>>
>> (3)  such interest is a lien and the price at which such property is to
>> be sold is greater than the aggregate value of all liens on such
>> property;
>>
>> (4)  such interest is in bona fide dispute; or
>>
>> (5)  such entity could be compelled, in a legal or equitable
>> proceeding, to accept a money satisfaction of such interest

15  Because 11 U.S.C. § 363(f) is written in the disjunctive, the Court may authorize

16  the assignment free and clear of any interests if any of the conditions are met.

17      The Court can authorize assignment of the Estate's interests in the Southern

18  California Gas Leak Litigation free and clear of any liens, claims and interests under 11

19  U.S.C. § 363(f)(5).  Section 363(f)(5) "requires that there be, or that there be the

20  possibility of, some proceeding, either at law or at equity, in which the nondebtor could be

21  forced to accept money in satisfaction of its interest."  *Clear Channel Outdoor, Inc. v.*

22  *Knupfer (In re PW, LLC)*, 391 B.R. 25, 45 (B.A.P. 9th Cir. 2008).  The California

23  Commercial Code provides for a proceeding where the nondebtor could be forced to

24  accept money satisfaction of its interest.  Under California Commercial Code § 9610(a),

25  "[a]fter default, a secured party may sell…or otherwise dispose of any or all the collateral

26  in its present condition or following any commercially reasonable preparation or

27  processing."  *See* California Commercial Code § 9610(a).  Further, "[a] secured party

28  shall apply…the cash proceeds of disposition under Section 9610... [to] the satisfaction of

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel  714 445-1000 • Fax 714 445-1002

1   obligations secured by the security interest…[and] the satisfaction of obligations secured

2   by any subordinate security interest…"  *See* California Commercial Code § 9615(a).

3   Here, because any party that potentially holds a security interest in the Estate's fees from

4   the Southern California Gas Leak Litigation can be compelled to accept a money

5   satisfaction under California Commercial Code §§ 9610(a) and 9615(a), 11 U.S.C. §

6   363(f)(5) applies.  Thus, the Court may authorize the assignment contemplated in the

7   Settlement Agreement free and clear of any liens, claims and interests under 11 U.S.C. §

8   363(f)(5).

9           **E.      Waiver of 14-Day Stay Set Forth in FRBP 6004(h) is Appropriate**

10          FRBP 6004(h) provides that "[a]n order authorizing the use, sale, or lease of

11  property other than cash collateral is stayed until the expiration of 14 days after entry of

12  the order, unless the court orders otherwise."  Given the involuntary petition commenced

13  against the Debtor, it is in the best interests of the clients in the Southern California Gas

14  Leak Litigation to resolve any uncertainty they may have concerning who is representing

15  them.  Because the Southern California Gas Leak Litigation is ongoing, resolving any

16  confusion as quickly as possible is in the best interest of the clients.  Further, the Trustee

17  and Frantz have learned that another law firm has initiated unauthorized solicitation of the

18  parties' clients in the Southern California Gas Leak Litigation.  The unauthorized

19  solicitation of clients demonstrates the need for the emergency relief requested by the

20  Motion.  Waiver of the stay under FRBP 6004(h) will further preserve the amount of fees

21  the Estate can expect to collect pursuant to the Settlement Agreement.  For these

22  reasons, waiver of the FRBP 6004(h) stay is appropriate.

23          **F.      The Trustee Should Be Authorized to Reject Any Agreements with**

24                  **ACTS**

25          "An executory contract is one 'on which performance remains due to some extent

26  on both sides.'"  *See Unsecured Creditors' Comm. of Robert L. Helms Constr. & Dev.*

27  *Co., v. Southmark Corp.*, 139 F. 3d 702, 705 (9th Cir. 1998) *citing NLRB v. Bildisco &*

28  *Bildisco*, 465 U.S. 513, 522-23 n. 6 (1984).  According to Treyzon's declaration filed with

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel  714 445-1000 • Fax 714 445-1002

1   this Court, any agreement between ACTS and the Debtor was not effectuated when

2   ACTS was ordered to stop transferring files by the Freeze Order.  Assuming it is a valid

3   contract, the Assumption Agreement or any other such agreement is an executory

4   contract.  Treyzon admitted that as of the Petition Date, there were outstanding

5   obligations for both the Debtor and ACTS as none of the file transfers had occurred due

6   to the Freeze Order.  *See* Declaration of Boris Treyzon at ¶ 4, Exhibit 2.  The Assumption

7   Agreement also provides for both parties to cooperate in ACTS' efforts to obtain the

8   informed consent of the Debtor's clients in transferring cases to ACTS.

9        Section 365(a) of the Bankruptcy Code provides as follows:

10       Except as provided in sections 765 and 766 of this title and in subsections
         (b), (c), and (d) of this section, the trustee, subject to the court's approval,
11       may assume or reject any executory contract or unexpired lease of the
         debtor.

12

13       When evaluating whether to authorize rejection of a contract under 11 U.S.C. §

14  365(a), courts apply the "business judgment rule."  Under the business judgment rule,

15  "the bankruptcy court should presume that the [trustee] acted prudently, on an informed

16  basis, in good faith, and in the honest belief that the action taken was in the best interests

17  of the bankruptcy estate."  *See Agarwal v. Pomona Valley Med. Group (In re Pomona*

18  *Valley Med. Group)*, 476 F.3d 665, 670 (9th Cir. 2007).  Further, the bankruptcy court

19  "should approve the rejection of an executory contract of an executory contract under

20  § 365(a) unless it finds that the [trustee's] conclusion that rejection would be

21  'advantageous is so manifestly unreasonable that it could not be based on sound

22  business judgment, but only on bad faith, whim, or caprice.'"  *Id. citing Lubrizol Enter. v.*

23  *Richmond Metal Finishers*, 756 F. 2d 1043, 1047 (4th Cir. 1985).

24       The Court should authorize the Trustee's rejection of the Assumption Agreement.

25  There is no benefit accorded to the Estate under the Assumption Agreement.  Moreover,

26  as set forth above, the Settlement Agreement represents the best outcome for the Estate,

27  as it maximizes recovery for the Estate while also protecting the Debtor's clients.

28  Rejection of the Assumption is reasonable and is based on the Trustee's business

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   judgment.  *See* Declaration of Elissa D. Miller.  Accordingly, the Assumption Agreement

2   and any other agreements between the Debtor and ACTS regarding the transfer of files

3   should be rejected so that the parties can effect the Settlement Agreement.

4

5   **IV.     EMERGENCY RELIEF IS WARRANTED AND APPROPRIATE**

6          As set forth in greater detail above, the Settlement Agreement is in the best

7   interest of the Estate and the Debtor's clients.  Relief is necessary on an expedited basis

8   because ACTS, in violation of the ethical rules governing California attorneys, has

9   recently sent unsolicited emails containing a number of misrepresentations to the

10  Debtor's and Frantz's joint clients in the Southern California Gas Leak Litigation seeking

11  to convert the clients to its own, despite knowing that the clients are currently represented

12  by both the Debtor and Frantz.  Approximately 50 families have been tricked into signing

13  retainer agreements with ACTS, and it is feared that more will follow suit as a result of the

14  unethical behavior of ACTS.  The Court's approval of this settlement will eliminate mass

15  confusion that has resulted from ACTS' improper solicitations.  The interests of the jointly

16  represented clients as well as millions of dollars of fees are at risk.  Boris Treyzon admits

17  this in his declaration, in which he testifies that if attorneys are permitted to take over the

18  Debtor's cases, "Debtor and this bankruptcy estate will lose significant assets and a

19  significant amount in fees which would otherwise be available to pay creditors."  *See*

20  Declaration of Boris Treyzon at ¶ 8, Exhibit 2.  This conduct leaves the Trustee with no

21  alternative but to seek emergency relief.[3]

22

23  **V.      CONCLUSION**

24         For these reasons, the Trustee respectfully requests that the Court enter an order

25  providing for the following relief:

26  _____

27  [3] The Trustee is concurrently filing a complaint against ACTS and Boris Treyzon for
    violation of the automatic stay, among other things, and an emergency motion for a

28  temporary restraining order.

1.      Granting the Motion;

2.      Authorizing the Trustee to enter into the Settlement Agreement;

3.      Approving the terms of the Settlement Agreement, a copy of which is attached hereto as Exhibit "1";

4.      Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Settlement Agreement;

5.      Approving the transaction as contemplated in the Settlement Agreement pursuant to 11 U.S.C. § 363(b);

6.      Authorizing and ordering the assignment and transfer of any rights or payment to property as contemplated in the Settlement Agreement to be free and clear of all claims, liens, encumbrances, or other interests against the Debtor pursuant to 11 U.S.C. § 363(f);

7.      Authorizing and ordering that any asserted claims, liens, encumbrances, or other interests against the Debtor will attach only to the Estate Allocation and not to the Frantz Allocation;

8.      Finding that Frantz is assuming no liabilities of the Estate, the Debtor, or any partners, members, attorneys, insiders, affiliates, or employees thereof, whether under contract, tort, or otherwise;

9.      Finding that the Federal Rule of Evidence 502(d) protections for attorney-client privilege and work-product set forth in the Settlement Agreement apply;

10.     Authorizing the waiver of the 14-day period under FRBP 6004(h);

11.     Rejecting the Assumption and Lien Agreement and any other agreements between the Debtor and ACTS as referenced in the Treyzon Declaration pursuant to 11 U.S.C. § 365(a); and

/ / /

/ / /

/ / /

/ / /

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

12.    For such other relief as the Court may deem just and necessary.

DATED:  January 25, 2021                Respectfully submitted,

                                         SMILEY WANG-EKVALL, LLP


                                    By:  _____/s/ Lei Lei Wang Ekvall_____
                                         LEI LEI WANG EKVALL
                                         Proposed Attorneys for Elissa D. Miller,
                                         Chapter 7 Trustee

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

### **DECLARATION OF ELISSA D. MILLER**

2      I, Elissa D. Miller, declare as follows:

3      1.      I am the duly appointed Chapter 7 Trustee in the bankruptcy case of Girardi

4  Keese.  I am also a partner at the law firm SulmeyerKupetz.  I know each of the following

5  facts to be true of my own personal knowledge, except as otherwise stated and, if called

6  as a witness, I could and would competently testify with respect thereto.  I make this

7  declaration in support of the *Emergency Motion for Order: (1) Approving Compromise*

8  *with Frantz Law Group, APLC Pursuant to Federal Rule of Bankruptcy Procedure 9019;*

9  *(2) Authorizing the Assignment of the Estate's Interests in the Southern California Gas*

10 *Leak Litigation Free and Clear of Liens, Claims and Interests Pursuant to 11 U.S.C.*

11 *§ 363; and (3) Rejecting the Assumption and Lien Agreement Between the Debtor and*

12 *Abir Cohen Treyzon Salo LLP Pursuant to 11 U.S.C. § 365* (the "Motion").  Unless

13 otherwise defined in this declaration, all terms defined in the Motion are incorporated

14 herein by this reference.

15     2.      The Debtor was counsel of record in a significant number of pending cases

16 when the Petitioning Creditors commenced the involuntary petition against the Debtor.

17 The Debtor undertook these cases on a contingency fee basis.

18     3.      By the time I was appointed as the Chapter 7 Trustee, most of the Debtor's

19 staff and attorneys had already resigned or moved on from the Debtor.  Because of the

20 exodus of employees, the Debtor cannot continue to represent its clients in its pending

21 matters.

22     4.      After my appointment and after the involuntary petition was filed, I appeared

23 telephonically at a hearing before the Honorable Thomas M. Durkin, United States

24 District Court.  At the hearing, Judge Durkin lifted the Freeze Order, as the automatic stay

25 was in effect at that time.

26     5.      Since my appointment, one of my highest priorities was ensuring that the

27 rights of the Debtor's current clients in pending matters were protected.  In order to

28 protect these clients' rights, I immediately began to interview law firms—with the

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   assistance of my counsel—to explore the possibility of transferring the Debtor's pending

2   cases.  The goal of my discussions with these law firms was to ultimately transfer some

3   or all of the pending cases to protect the clients' rights.

4          6.     One of the Debtor's most important pending cases is the Southern

5   California Gas Leak Litigation.  Under Frantz and the Debtor's Joint Representation

6   Agreements, the parties agreed to equally share all expenses paid and attorneys' fees

7   recovered from the Southern California Gas Leak Litigation.  To date, Frantz and the

8   Debtor have worked on the Southern California Gas Leak Litigation for over five years.

9   Frantz has been actively involved as co-counsel.  Because of Frantz's extensive

10  involvement in the Southern California Gas Leak Litigation, there will be significant

11  disruption to the clients' representation if the Settlement Agreement is not approved.

12         7.     Recently, after a series of arms-length negotiations, I entered into the

13  Settlement Agreement on behalf of the Estate with Frantz to resolve the Estate's and

14  Frantz's claims related to the Southern California Gas Leak Litigation and Joint

15  Representations Agreements.  A true and correct copy of the Settlement Agreement is

16  attached hereto as Exhibit "1."

17         8.     The Settlement Agreement is the product of my arms-length negotiations

18  with Frantz and will allow the Estate to transfer its pending cases to Frantz, while still

19  allowing the Estate to collect 45% of the recovered attorneys' fees from the Southern

20  California Gas Leak Litigation less 50% of costs.  Prior to entering in the Settlement

21  Agreement, I received proposals from other law firms, ranging from 10% to 25% of the

22  total fee, as opposed to 45% of the total fee in the Southern California Gas Leak

23  Litigation.

24         9.     In my opinion and based on my business judgment, the Settlement

25  Agreement is in the best interest of the Estate.  The Settlement Agreement eliminates the

26  Estates' litigation costs against Frantz and maximizes the Estate's recovery on one its

27  most significant cases.

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

10.     In sum, I believe there is valid business justification for the Settlement Agreement, as the Settlement Agreement will result in the best outcome for the Estate and the Debtor's clients.

11.     Relief is necessary on an expedited basis because ACTS, in violation of the ethical rules governing California attorneys, has recently sent unsolicited emails containing a number of misrepresentations to the Debtor's and Frantz's joint clients in the Southern California Gas Leak Litigation seeking to convert the clients to its own, despite knowing that the clients are currently represented by both the Debtor and Frantz.  I am informed and believe that approximately 50 families have been tricked into signing retainer agreements with ACTS, and it is feared that more will follow suit as a result of the unethical behavior of ACTS.  Boris Treyzon admits this in his declaration, in which he testifies that if attorneys are permitted to take over the Debtor's cases, "Debtor and this bankruptcy estate will lose significant assets and a significant amount in fees which would otherwise be available to pay creditors."  A true and correct copy of the Declaration of Boris Treyzon, filed in support of the Motion for Appointment of Interim Trustee as docket number 15, obtained by my counsel's office, is attached hereto as Exhibit "2."

12.     In my opinion and based on my business judgment, rejection of the Assumption Agreement with ACTS is in the best interest of the Estate.  There is no benefit accorded to the Estate under the Assumption Agreement.  A true and correct copy of the Assumption Agreement which was sent to me and my counsel by email from Boris Treyzon is attached hereto as Exhibit "3."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 25th day of January, 2021, at Los Angeles, California.

Elissa D. Miller

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2852950.2

21

MOTION

# EXHIBIT "1"

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between Elissa D. Miller ("Trustee"), solely in her capacity as trustee of the estate ("Estate") of Girardi Keese ("Debtor"), the chapter 7 debtor in case number 2:20-bk-21022-BR ("Bankruptcy Case") pending in the U.S. Bankruptcy Court for the Central District of California ("Bankruptcy Court"), on the one hand, and Frantz Law Group, APLC ("Frantz"), on the other hand. The Trustee and Frantz may hereinafter be referred to individually as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, prior to December 18, 2020 ("Petition Date"), the Debtor and Frantz jointly represented 8,202 victims asserting claims arising out of the 2015 blowout and subsequent months-long gas leak in Porter Ranch, California ("Southern California Gas Leak Litigation"), pursuant to agreements including (i) the Porter Ranch Agreement Frantz Law Group, APLC & Girardi Keese, and (ii) the Attorney-Client Contingent Fee Agreement Addendum ("Joint Representation Agreements");

WHEREAS, Frantz asserts that prior to the Petition Date, the Debtor breached obligations owed to Frantz, is liable to Frantz for costs Frantz advanced on behalf of the Debtor, and is not capable of continuing to perform as co-counsel pursuant to the Joint Representation Agreements;

WHEREAS, the Trustee asserts that under the Joint Representation Agreements, the Estate is entitled to 50% of all fees from the Southern California Gas Leak Litigation;

WHEREAS, an involuntary chapter 7 bankruptcy petition was filed against the Debtor on the Petition Date, commencing the Bankruptcy Case [Docket No. 1];

WHEREAS, on December 30, 2020, Frantz filed a motion for relief from the automatic stay ("Stay Relief Motion") seeking certain relief relating to the Southern California Gas Leak Litigation representations [Docket No. 30];

WHEREAS, on January 5, 2021, the Bankruptcy Court ordered the appointment of an interim trustee [Docket No. 45]. The Trustee was appointed as interim trustee and accepted her appointment on January 6, 2020 [Docket No. 46];

WHEREAS, on January 13, 2021, the Bankruptcy Court entered an "Order Directing: (1) The Clerk of Court to Immediately Enter an Order for Relief under Chapter 7; (2) The United States Trustee to Immediately Appoint a Chapter 7 Trustee; (3) The Debtor to File All Schedules and Related Documentation for Chapter 7 Case within Fourteen Days of the Entry of this Order; and (4) Vacating February 16, 2021 Status Conference" [Docket No. 68]. On January 13, 2021, the Clerk of Court entered an order for relief against the Debtor [Docket No. 69], and the Trustee was appointed and accepted her appointment [Docket No. 70];

1

EXHIBIT "1"

WHEREAS, on January 19, 2021, the Trustee filed her opposition to the Stay Relief Motion [Docket No. 101], and other parties also have opposed the Stay Relief Motion; and

WHEREAS, following good faith, arm's length negotiations, and to avoid the expense, delay, and risks of litigation, and to ensure continuous representation and a smooth transition for the clients in the Southern California Gas Leak Litigation, the Parties desire to resolve the disputes between and among them, subject to the terms and conditions as hereinafter set forth, and pursuant to Bankruptcy Code section 363 and Federal Rule of Bankruptcy Procedure 9019;

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each of the Parties hereto, and subject to approval of this Agreement by the Bankruptcy Court, the Parties hereby agree as follows:

## TERMS AND CONDITIONS

1.    Definitions.

In addition to the definitions in the Recitals or otherwise in this Agreement, the following definitions shall apply:

"Clients" mean all clients of the Debtor and Frantz in the Southern California Gas Leak Litigation, including any clients that the Debtor purported to assign or otherwise transfer to (or agree to a substitution of counsel by) any other law firm, *provided, however*, that Clients shall not include any client that retains Frantz after the Petition Date and that was not as of the Petition Date a client of the Debtor or Frantz in the Southern California Gas Leak Litigation (i.e., totally new clients).

"Costs" mean all costs relating to the representation of the Clients in the Southern California Gas Leak Litigation that were to be shared, or in the future would be shared, by the Debtor and Frantz, including (i) filing fees and other court costs, (ii) expert witness fees and expenses, (iii) client costs, (iv) discovery-related expenses, including reporter costs, transcript costs, and costs relating to document production and storage, (v) marketing expenses, (vi) steering committee contributions, and (vii) all costs and expenses of case management and accounting.  All such costs are subject to documentation.

"Joint Rep. Fees" mean all fees that may be received by Frantz or the Trustee on account of the representation of the Clients in the Southern California Gas Leak Litigation, net of (i) Referral Fees, and (ii) any common benefit assessments.

"Referral Fees" mean referral fees owing to third parties pursuant to enforceable and documented referral fee arrangements that were disclosed in writing to both the Debtor and Frantz.  For the avoidance of doubt, Referral Fees shall not include any bonuses, salaries, draws, distributions, or other compensation or obligations paid or owing to current or former partners, members, attorneys, insiders, affiliates, or employees of the Debtor.

2

2.    Allocation of Joint Rep. Fees.

    a.    All Joint Rep. Fees shall be allocated as follows:

        To the Trustee for the benefit of the Estate, 45% of the Joint Rep. Fees less 50% of Costs (the "Estate Allocation"); and

        To Frantz, 55% of the Joint Rep. Fees less 50% of Costs (the "Frantz Allocation").

    b.    As of the Petition Date, to the extent that Frantz advanced and paid more than 50% of the Costs in connection with representing the Clients, the difference between the amount advanced and paid and 50% shall be credited against the Estate Allocation and in favor of the Frantz Allocation.  Postpetition, the Estate shall not be obligated to provide any services or advance any Costs, but 50% of the amount of Costs advanced and paid by Frantz shall be credited against the Estate Allocation and in favor of the Frantz Allocation.

    c.    It is understood and acknowledged that the Debtor has advanced or otherwise incurred Costs in the Southern California Gas Leak Litigation, some of which may be claims in the Bankruptcy Case, and reimbursement for such Costs will be made to the Estate as part of the Estate Allocation.

3.    Payment Of Allocated Fees.

All Joint Rep. Fees shall be initially payable to a trust fund administered by Frantz. Within 30 days of receipt, Frantz shall calculate the Frantz Allocation and the Estate Allocation and notify the Trustee of the proposed allocation.  If the Trustee does not object to the proposed allocation within 14 days after such notice, Frantz shall distribute the Joint Rep. Fees in accordance with the proposed allocation.  If the Trustee does object, Frantz shall reserve such amount as would be necessary to satisfy the Trustee's objection, if sustained, and may distribute the reminder.  The Parties agree to attempt to resolve any dispute promptly.  If the Parties cannot resolve their dispute within 30 days, the matter will be submitted to the Bankruptcy Court.

4.    Common Defense Benefit Claim.

Frantz and the Estate shall separately retain 100% of any common defense/benefit fund claim owing to them, and each shall be separately responsible for all costs, expenses, and other charges associated with their respective claims.

5.    Assignment Of All Other Rights / Free And Clear Assignment.

Subject to the fee sharing agreement set forth above and Section 11 below, all of the Debtor's and the Estate's interests in the Southern California Gas Leak Litigation shall be assigned to Frantz "as-is", "where-is", and without representation or warranty of any kind by the

3

Trustee including, without limitation, any representation or warranty as to the Clients or the continued representation of the Clients by Frantz.

The assignment to Frantz, including without limitation the Frantz Allocation, shall be free and clear of all liens, claims, encumbrances, and other interests pursuant to Bankruptcy Code section 363(f), including but not limited to (i) any purported liens, assignments, encumbrances, or other purported transfers to litigation funders or other creditors of the Debtor, and (ii) any purported assignments or transfers (or agreements to a substitution of counsel) by the Debtor. Any interests of creditors or other third parties that have or may assert claims against the Debtor shall attach only to the Estate Allocation, and not to the Frantz Allocation. For the avoidance of doubt, Frantz is assuming no liabilities of the Estate, the Debtor, or any partners, members, attorneys, insiders, affiliates, or employees thereof, whether under contract, tort, or otherwise.

6.    <u>Withdrawal And Substitution Of Debtor As Counsel and Lien in Favor of the Estate.</u>

The Trustee shall take all steps reasonably necessary to cause the Debtor to promptly withdraw as counsel in the Southern California Gas Leak Litigation. The Trustee shall coordinate with Frantz to provide for the smooth transition of the cases and to notify the Clients that their cases will be handled solely by Frantz. Frantz agrees and the Clients shall acknowledge and agree that the Estate has a lien in the Southern California Gas Leak Litigation for the Estate Allocation and Costs advanced or otherwise incurred by the Debtor. The lien will attach to any recovery the Clients may obtain in the Southern California Gas Leak Litigation, whether by arbitration award, judgment, settlement, or otherwise. The Trustee, on behalf of the Debtor and the Estate, is hereby authorized to take all steps deemed necessary by the Trustee to protect and preserve the lien.

Immediately upon execution of this Agreement, the Trustee consents to Frantz communicating to the Clients the existence and/or terms of this Agreement, provided that prior to Bankruptcy Court approval of this Agreement, any such communication note that the Agreement is subject to such approval.

7.    <u>Cooperation.</u>

The Parties shall cooperate in good faith to effectuate the terms of this Agreement, including (i) effectuating the transfer of all client and case files to Frantz, (ii) filing of withdrawals and/or substitutions of counsel, and (iii) preparing, executing or filing any documents necessary to acknowledge the Estate's lien as set forth in Section 6 of this Agreement. The Trustee and her counsel shall promptly direct all communications relating to the Southern California Gas Leak Litigation to Frantz.

Pursuant to Federal Rule of Evidence 502(d), the order approving this Agreement shall provide that no communications between the Trustee, Frantz, and their counsel shall constitute a waiver of the Clients' attorney-client communications or attorney work product relating to the Southern California Gas Leak Litigation.

EXHIBIT "1"

8.    <u>Notices</u>.

Any notices required hereunder shall be provided in writing by overnight delivery or email to the following:

Trustee:

Elissa D. Miller
c/o SulmeyerKupetz
333 S Grand Ave #3400
Los Angeles, CA  90071
emiller@sulmeyerlaw.com

with copies to:

Lei Lei Wang Ekvall
Philip E. Strok
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA  92626
lekvall@swelawfirm.com
pstrok@swelawfirm.com

Frantz:

James Frantz
Frantz Law Group, APLC
402 W. Broadway # 860
San Diego, CA  92101
JPF@frantzlawgroup.com

with copies to:

Kenneth Chiate
K. John Shaffer
Eric Winston
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
kenchiate@quinnemanuel.com
johnshaffer@quinnemanuel.com
ericwinston@quinnemanuel.com

5

EXHIBIT "1"

9.      <u>Entire Agreement</u>.

This Agreement constitutes the final and entire agreement between the Parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous negotiations, discussions, agreements, and understandings of the Parties, whether oral or written, with respect to such subject matter.

10.     <u>Binding on Successors</u>.

This Agreement shall be binding upon and inure to the benefit of the successors, assigns, heirs, executors, administrators, etc. of each of the Parties, including but not limited to any successor trustee and the Debtor after the case is dismissed or closed.

11.     <u>No Assignments or Delegation of Rights</u>.

Neither Party hereto has assigned or delegated any rights to any other party or person any of the rights or interests related to any claim which may be subject to the terms of this Agreement.

12.     <u>Jurisdiction and Venue</u>.

Any action to enforce this Agreement must be brought in the Bankruptcy Court.  The Parties each hereby waive their right to trial by jury, if any, in connection with any such legal action.  The Parties consent to entry of a final judgment or order by the Bankruptcy Court as a core matter.

13.     <u>Modification</u>.

This Agreement may be modified only by a writing executed by the Party to this Agreement against whom enforcement of such modification is sought.

14.     <u>Further Assurances</u>.

The Parties shall take all further acts and sign all further documents necessary or convenient to effectuate the purpose of this Agreement.

15.     <u>Signature and Execution</u>.

A signed copy of this Agreement shall have the same force and effect as the original. This Agreement may be executed in counterparts, each of which is deemed to be an original, but such counterparts together shall constitute one and the same instrument.

6

EXHIBIT "1"

16.    <u>Severability</u>.

In the event that any court determines that any provision of this Agreement is unenforceable, the provision at issue shall be enforced to the maximum extent permitted by law, and all other provisions shall remain in full effect.

17.    <u>Full Authority to Sign Agreement</u>.

Any individual signing on behalf of any Party hereto expressly represents and warrants to each other Party that he or she has full authority to do so and to bind such Party hereto and, in the case of the Trustee, to bind the Estate, subject only to approval of the Bankruptcy Court.

18.    <u>No Penalty for Drafting Agreement</u>.

No provisions of this Agreement shall be interpreted for or against any Party because that Party or its legal representative drafted this Agreement.

19.    <u>Parties to Bear Own Costs</u>.

Each party shall be responsible for the payment of its own costs, attorneys' fees, and all other expenses in connection with negotiation, preparation, execution, and approval of this Agreement.  Notwithstanding the foregoing, if arbitration or other legal action is necessary to enforce the terms of this Agreement, the Party declared to be the prevailing party in such arbitration or proceedings shall be entitled to its reasonable attorneys' fees and costs incurred in enforcing this Agreement.

20.    <u>Recitals Acknowledged</u>.

The Recitals are true and correct to the best of the Parties' knowledge, and hereby adopted by the Parties.

21.    <u>Bankruptcy Court Approval</u>.

The terms of this Agreement, and the effectiveness thereof, are subject to the approval of the Bankruptcy Court, after the Parties' compliance with the notice and hearing requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules.  Within five days of execution of this Agreement, the Trustee will file a motion seeking Bankruptcy Court approval of this Agreement.  The Trustee shall request (i) a hearing on an emergency basis or shortened time, and (ii) that the order approving this Agreement shall be effective and enforceable immediately upon entry.

The form and substance of the order approving this Agreement shall be reasonably acceptable to Frantz, and shall include determinations by the Bankruptcy Court that (i) the Trustee has authority to enter into this Agreement and to consummate the transactions contemplated hereby, (ii) the assignment and transfer of any rights to payment or other property is free and clear of all claims, liens, encumbrances, and other interests against the Debtor,

EXHIBIT "1"

(iii) any asserted claims, liens, encumbrances, or other interests against the Debtor shall attach only to the Estate Allocation, and not to the Frantz Allocation, (iv) Frantz is assuming no liabilities of the Estate, the Debtor, or any partners, members, attorneys, insiders, affiliates, or employees thereof, whether under contract, tort, or otherwise, and (v) the Federal Rule of Evidence 502(d) protections for attorney-client privilege and work-product set forth in Section 7 above apply.

The Hearing on the Stay Relief Motion has been continued until March 2, 2021, and if this Agreement is approved, the motion shall be withdrawn.

IN WITNESS WHEREOF, the Parties hereto hereby execute this Settlement Agreement as of the date of final signature below.

Dated: January 24, 2021                    Elissa D. Miller, Chapter 7 Trustee

By:_____
                                           Elissa D. Miller, solely in her capacity as Chapter 7 Trustee
                                           of the Estate

Dated: January 24, 2021                    Frantz Law Group, APLC

By:_____
                                           James Frantz

8

# EXHIBIT "2"

1   Andrew Goodman, Esq. (State Bar No. 115685)
    **GOODMAN LAW OFFICES**
2   **A PROFESSIONAL CORPORATION**
    30700 Russell Ranch Road
3   Suite 250
    Westlake Village, CA. 91362
4   TELEPHONE: (818) 827-5169;
    FACSIMILE: (818) 975-5256
5   E-Mail: agoodman@andyglaw.com

6   Attorneys for Petitioning Creditors

7

8                    UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

10

11

12   In re:                                    Case No. 2:20-bk-21022-BR

13   GIRARDI KEESE a/k/a/ GIRARDI & KEESE,     [Chapter 7]

14              Debtor.                        **DECLARATION OF BORIS TREYZON
                                               IN SUPPORT OF PETITIONING
15                                             CREDITORS' EMERGENCY MOTION
                                               FOR APPOINTMENT OF INTERIM
16                                             TRUSTEE PURSUANT TO 11 U.S.C. §
                                               303(g)**

17                                             **Hearing Date:**
                                               **DATE:  December __, 2020**
18                                             **TIME:  _____ a.m./p.m.**
                                               **CTRM: "1668"**
19                                             **255 E. Temple Street**
                                               **Los Angeles, CA. 90012**
20

21

22

23

24

25

26

27

28

─────────────────────────────────────────
                    DECLARATION OF BORIS TREYZON

## DECLARATION OF BORIS TREYZON

I, Boris Treyzon, hereby declare:

1.    I am, and at times herein mentioned was, a founding partner of Abir Cohen Treyzon Salo, LLP ("ACTS") and if called to testify I could and testify to the facts stated herein. I am over the age of eighteen years old. I make this declaration of my own personal knowledge in support of the *Petitioning Creditors' Motion for Appointment of an Interim Trustee Pursuant to 11 U.S.C. § 303(g)* ("Motion"). If called to testify, I could and would competently testify thereto.

2.    ACTS is a plaintiffs' law firm based in Los Angeles, California. We have twenty (20) attorneys and twenty five (25) support staff.

3.    There is a currently a "freeze" ordered by Judge Thomas M. Durkin, a US District Judge for Northern District of Illinois ("Freeze Order").

4.    In or about October of 2020, ACTS and Girardi Keese ("GK") entered into an agreement whereby ACTS would associate into several cases with GK, with case files transferred to ACTS. Despite this agreement with GK, files were not transferred over to ACTS by GK, contrary to the agreement ACTS had with GK. These files likely contain information indispensable for prosecuting these cases.

5.    As a result of the Freeze Order, ACTS was ordered by Judge Durkin, to stop transfers of case files from GK. ACTS abided by this order.

6.    If an interim trustee is not immediately appointed to take control of Debtor's files and retain counsel to evaluate Debtor's cases and/or continue to prosecute cases, I believe there will be a substantial amount of damage to Debtor's clients and Debtor and/or the Estate will lose the opportunity to collect substantial attorneys' fees which can be used to pay creditors. As one example, attached as Exhibit "A" is a copy of a Meet and Confer letter from counsel for Defendant addressed to me and Jack Girardi, an attorney at GK and brother of Thomas Girardi, regarding discovery responses, stating that if verified responses, without objections, are not provided by December 28, 2020, a Motion to Compel Discovery Responses and a Motion to Deem Admitted all Requests for Admissions. If such a motion is granted, the case, which would entitle moving party to seek damages against client, likely in thousands of dollars, could be lost or

- 2 -

EXHIBIT "2"

1  severely jeopardized.

2          4.      Prior to the litigation in the District Court in Illinois and the filing of the

3  Involuntary Petition, ACTS, hired, with permission of GK, a number of GK's staff and associate

4  attorneys who are familiar with these cases. If ACTS were able to obtain the files in the cases

5  Debtor agreed to us associating in as counsel, ACTS would have the lawyers and staff to actively

6  and properly litigate such cases, protect the rights of the various plaintiffs and protect attorneys'

7  fees and costs which may be rightfully payable to Debtor and which would be turned over to the

8  trustee for the benefit of GK and Thomas Girardi's creditors.

9          8.      In addition to GK's failure to actively prosecute cases, I have become aware that

10  other law firms and attorneys are attempting to take over GK's cases and I have seen substitutions

11  of attorney filed in at least one case which was originally prosecuted and settled by GK. If this

12  continues, Debtor and this bankruptcy estate will lose significant assets and a significant amount

13  in fees which would otherwise be available to pay creditors.

14          9.      As a result of ACTS's agreement with GK to associate in as counsel, ACT has

15  repeatedly been contacted by clients looking for information and reassurances that their cases are

16  proceeding. Without access to the documents and information in files/cases in which we have an

17  agreement with GK to associate in as counsel, ACTS cannot assist these clients and as stated

18  above, we risk client finding other counsel and substituting in new counsel in place of GK and

19  ACTS. If other attorneys substitute into cases, the bankruptcy estate will be damaged. These cases

20  are assets of GK to the extent work was performed and costs were advanced, and GK would be

21  accordingly entitled to be paid appropriate fees if there is a successful result or a settlement.

22  Again, these fees and recovered would then be available to pay creditors of the Estate.

23          I declare under penalty of perjury under the laws of the United States of America that the

24  foregoing is true and correct.

25          Executed on this 23rd day in December 2020, in Los Angeles, California.

26

27                                                     _____
                                                       Boris Treyzon
28

                                        - 3 -

                        DECLARATION OF BORIS TREYZON

EXHIBIT "2"

# EXHIBIT "A"

EXHIBIT "2"



December 23, 2020

**Christy Kostich**
213.330.8793 (direct)
323.397.4652 (mobile)
Christy.Kostich@wilsonelser.com

Boris Treyzon, Esq.
ABIR COHEN TREYZON SALO, LLP
16001 Ventura Blvd., Ste. 200
Encino, CA 91436-4482
btreyzon@actslaw.com
VIA E-MAIL

Jack Girardi, Esq.
GIRARDI | KEESE
1126 Wilshire Boulevard
Los Angeles, California 90017-1904
jgirardi@girardikeese.com
VIA E-MAIL

Re:       *Thomas Layton v. Mikhail Anoshin, et al.*

### MEET AND CONFER REGARDING PLAINTIFF'S FAILURE TO RESPOND TO RASIER, LLC'S DISCOVERY REQUESTS

Dear Counsel:

On September 11, 2020, Uber Technologies, Inc. served its First Set of Form Interrogatories, Requests for Admissions, Requests for Production of Documents, and Special Interrogatories on Plaintiff Thomas Layton. We have granted multiple extensions to your office, and the last extension granted was to Monday, December 14, 2020. On December 14, 2020, Plaintiff's Responses to all aforementioned discovery requests were due, but our office did not receive any discovery Responses from Plaintiff. On December 16, 2020 we sent Mr. Jack Girardi a meet and confer letter asking for verified responses, without objections, by December 18, 2020. As of the date of this correspondence, we still have not received verified responses from Plaintiff.

555 South Flower Street, Suite 2900  •  Los Angeles, CA 90071  •  p 213.443.5100  •  f 213.443.5101

Alabama • Albany • Atlanta • Austin • Baltimore • Beaumont • Boston • Chicago • Dallas • Denver • Edwardsville • Garden City • Hartford • Houston
Indiana • Kentucky • Las Vegas • London • Los Angeles • Miami • Michigan • Milwaukee • Mississippi • Missouri • Nashville • New Jersey • New Orleans
New York • Orlando • Philadelphia • Phoenix • San Diego • San Francisco • Sarasota • Stamford • Virginia • Washington, DC • Wellington • White Plains

**wilsonelser.com**

3481737v.1

EXHIBIT "2"

WILSON ELSER
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

- 2 -

Thus, please provide Plaintiff's **verified** responses to Uber Technologies, Inc.'s First Set of Form Interrogatories, Requests for Admissions, Requests for Production of Documents, and Special Interrogatories **by December 28, 2020 without objections** or Uber will be forced to file a Motion to Compel Discovery Responses, including a Motion to Deem Admitted all Requests for Admissions.

Please feel free to contact me with any questions or to further meet and confer, and I look forward to resolving this issue without court intervention.

Very truly yours,

Christy Kostich

3481737v.1

EXHIBIT "2"

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

GOODMAN LAW OFFICES, A PROFESSIONAL CORPORATION, 30700 RUSSELL RANCH ROAD, SUITE 250, WESTLAKE VILLAGE, CA. 91362

A true and correct copy of the foregoing document entitled (*specify*):  DECLARATION OF BORIS TREYZON
IN SUPPORT OF EMERGENCY MOTION FOR APPOINTMENT OF INTERIM TRUSTEE PURSUANT
TO 11 USC 303(g); MEMORANDUM OF POINTS AUTHORITIES

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/24/2020          , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On (*date*)   12/24/2020          , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)   12/24/2020   , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
        Leonard Pena (lpena@penalaw.com)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/24/2020    Andrew Goodman | /s/ Andrew Goodman |
|---|---|
| Date            Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT "2"

**2:20-bk-21020-BR - Notice will be electronically mailed to:**

**Eric D Goldberg on behalf of Creditor Stillwell Madison, LLC  -**
eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com

**Andrew Goodman on behalf of Petitioning Creditor Erika Saldana**
agoodman@andyglaw.com

**Andrew Goodman on behalf of Petitioning Creditor Jill O'Callahan**
agoodman@andyglaw.com

**Andrew Goodman on behalf of Petitioning Creditor John Abassian**
agoodman@andyglaw.com

**Andrew Goodman on behalf of Petitioning Creditor Kimberly Archie**
agoodman@andyglaw.com

**Andrew Goodman on behalf of Petitioning Creditor Robert M. Keese**
agoodman@andyglaw.com

**Andrew Goodman on behalf of Petitioning Creditor Virginia Antonio**
agoodman@andyglaw.com

**M. Jonathan Hayes on behalf of Interested Party Courtesy NEF**
jhayes@rhmfirm.com, roksana@rhmfirm.com; matt@rhmfirm.com;
janita@rhmfirm.com; susie@rhmfirm.com; priscilla@rhmfirm.com;
pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com;
sloan@rhmfirm.com

**Lewis R Landau on behalf of Interested Party Courtesy NEF**
Lew@Landaunet.com

**Aram Ordubegian on behalf of Interested Party Courtesy NEF**
ordubegian.aram@arentfox.com

**Matthew D. Resnik on behalf of Interested Party Courtesy NEF**
matt@rhmfirm.com, Roksana@rhmfirm.com; janita@rhmfirm.com;
susie@rhmfirm.com;max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com;
russ@rhmfirm.com;rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com

**Ronald N Richards on behalf of Interested Party Courtesy NEF**
ron@ronaldrichards.com, morani@ronaldrichards.com, justin@ronaldrichards.com

**United States Trustee (LA)**
ustpregion16.la.ecf@usdoj.gov

EXHIBIT "2"

## THE FOLLOWING PARTIES WILL BE SERVED VIA UNITED STATES MAIL

**Thomas Girardi**
**1126 Wilshire Boulevard**
**Los Angeles, CA. 90017**

**Girardi Keese**
**1126 Wilshire Boulevard**
**Los Angeles, CA. 90017**

**Leonard Pena, Esq.**
**PENA & SOMA, APC**
**402 S. Marengo Avenue, Suite B**
**Pasadena, CA. 91101**

EXHIBIT "2"

# EXHIBIT "3"

Assumption and Lien Agreement

This Assumption and Fee Sharing Agreement ("Agreement") is between the law firm of Abir, Cohen, Treyzon and Salo LLP ("ACTS") and the law firm of Girardi & Keese (a sole proprietorship) and its owner and principal, Thomas Girardi (collectively "Girardi") (all parties collectively, "the Parties") whereby, subject to client consents, responsibility for continued prosecution of certain pending cases shall be transferred from Girardi to ACTS in consideration for agreement from ACTS to undertake representation of these cases. The date by which this agreement shall take effect (the "Effective Date" of this agreement) shall be November 16, 2020.

1.   Recitals.

   a.   Whereas, ACTS, presently is interested in assuming representation in certain cases that Girardi is presently the attorney of record.

   b.   Whereas, Girardi presently believes that their clients will be best served if representation in certain cases is transferred and taken over by ACTS.

2.   **Due Diligence**. Girardi will provide to ACTS all information and documents in its possession and control, including, without limitation, documents and information reasonably requested by ACTS, that will permit ACTS to determine those cases for which it is prepared to assume further case handling Girardi shall ensure that its employees cooperate in gathering such documents and information. The information to be provided by Girardi to ACTS, which Girardi hereby represents and warrants is true and correct, shall include but not necessarily limited to:

   a.   A list of all matters in which Girardi represents clients as of the Effective Date of this agreement, including copies of any contingency fee agreements, fee sharing/referral agreements, and a summary of costs advanced to date.

   b.   A list of all  matters in which Girardi represents clients as of the Effective Date of this agreement where a settlement has been reached but not yet finalized.

   c.   A list of all  matters in which Girardi represents clients as of the Effective Date of this agreement where litigation funding is involved, including copies of litigation funding agreements and financial reports concerning payments made by such litigation funders.

   d.   A list of all matters in which Girardi is no longer representing the clients as of the Effective Date of this agreement and has served a lien notice, including pertinent information such as case name, case number, identity of successor counsel and the status of each such case.

   e.   A list of all matters in which Girardi was representing the clients up to and including sixty (60) days prior to the Effective Date of this Agreement and the status of such matters, including if any funds remain to be paid thereunder.

EXHIBIT "3"

f.    A list of all client funds, including, without limitation, advanced deposits for costs and/or legal fees, held in trust by Girardi on behalf of any clients whose cases are being transferred subject to this Agreement as of the Effective Date of this agreement. If any such cases are transferred, with client consent said trust funds shall be transferred to the ACTS client trust account.

g.    A list of all attorneys employed by Girardi as of the Effective Date of this agreement.

3.    **Selection of cases**. ACTS, in its sole discretion, and subject to client consents and ethical compliance as explained below, shall determine which Girardi cases to assume ("the Transferred Case(s)"). Any cases not selected, shall remain the continuing responsibility of Girardi & Keese. ACTS and Girardi agree and emphasize that the decision whether clients agree to be represented by ACTS belongs solely to the client(s) and any such transfer is contingent upon client(s) agreement and consent to such transfer.

4.    **Offers of Employment to Certain Lawyers Employed by Girardi**. ACTS, at its sole and absolute discretion, shall be permitted to communicate directly with any of the lawyers and staff currently employed by Girardi for the purpose of determining whether they will agree to be employed by ACTS on terms to be agreed to by ACTS and such lawyer(s). Nothing contained in this Section 4 or elsewhere shall obligate ACTS to communicate with, offer employment to or employ any such lawyers or staff.

5.    **Costs Advanced Agreement and Quantum Meruit**. ACTS agrees that, as to any costs advanced by Girardi or any time subject to compensation under a Quantum Meruit principle of recovery in any given Transferred Case, upon proper documentation, such expenses and Quantum Meruit charge shall be reimbursed to Girardi from a future recovery, if any. In the event that no recovery is made on any given Transferred Case, ACTS shall have no obligation to pay to Girardi any amounts, including, without limitation, to reimburse Girardi for any costs or Quantum Meruit charges advanced or expended by Girardi in connection with that Transferred Case.

6.    **Communications with Clients and Ethical compliance.**  The Parties agree to cooperate in the efforts of ACTS to obtain the informed consent of Clients that their matters may be transferred from Girardi to ACTS. Toward that end, Girardi will provide contact information for clients on matters that are identified by ACTS as potential transfer cases, and shall introduce such clients to ACTS and facilitate communications intended to secure the informed consent of the clients. The Parties shall agree in advance to the explanation to be provided to the client as for the proposed transfer of the case. For any matter selected by ACTS and for which the clients agree that the case may be transferred, ACTS shall document the disclosure of the fee sharing agreement as to each client in each such case and shall obtain the written consent of the client consistent, and otherwise comply with Rule 1.5.1 (a) of the California Rules of Professional Conduct.  ACTS shall provide a copy of said fee sharing agreement/consents to Girardi and the client. Girardi and ACTS will work jointly to obtain consent from clients on cases being transferred from ACTS.

7.    **Representations and Warranties**.

    a.    The Parties represent and warrant that they are legally authorized to enter into this Agreement.

    b.    The Parties represent and warrant that each entity is in good standing with the State of California and the State Bar of California.

    c.    Girardi represents and warrants that the information and documents provided to ACTS relating to the cases, including, without limitation, the information and documents listed in Section 2 above, are true and correct.  Girardi acknowledges and agrees that ACTS is relying on the truth and accuracy of such information and documents, which are material to the decision of ACTS to enter into this Agreement and assume any Transferred Cases in accordance herewith.

    d.    ACTS agrees to continuously maintain a Professional Errors and Omissions (malpractice) Policy in the amounts presently maintained.

    e.    ACTS will provide Girardi with quarterly status of Transferred Cases.

8.    **Confidentiality**. The terms of this Agreement are strictly confidential and shall not be disclosed by Girardi or ACTS, or any of their respective agents or representatives, to any third parties, absent written consent or court order. If the Parties are asked about this Agreement and/or the transfer of cases and/or the status of the judgment against Girardi, by the media or other third parties, the Parties shall simply say that the matters are the subject of a confidential agreement.

9.    **Indemnification**.

10.    **No Assumption of Liabilities,** ACTS does not assume any liability of Girardi existent as of the Effective Date by operation of this Agreement or otherwise, including, but not limited to, any liability owed by Girardi to any of its current or former lawyers or any of its current or former clients arising out of the holding of any client funds in trust, the accounting for holding any client funds held in trust, or any alleged act of legal malpractice, breach of fiduciary duty or other professional wrongdoing. Likewise, ACTS does not assume any liability to Girardi with respect to any matter not selected to be one of the Transferred Cases.

11.    **No Modifications Except in Writing**. The Parties agree that the agreement can only be amended or modified by a writing signed by the parties.

12.    **Notices**. In the event of breach or for any other notice purpose, notices shall be as follows:

    a.    To ACTS:

       Boris Treyzon, Esq.

Abir Cohen Treyzon Salo, LLP

16001 Ventura Blvd., Suite 200

Encino, CA 91436

btreyzon@actslaw.com

b.    To Girardi:

Girardi | Keese

1126 Wilshire Blvd.

Los Angeles, CA 90017

By signing below, the Parties agree to the terms of the Agreement

for Abir Cohen Treyzon Salo, LLP

_____    11/18/2020
Danny Abir                 Date
Managing Partner

For Girardi |Keese

_____    _____
Tom Girardi                Date

For Thomas V. Girardi, Esq.

_____    _____
Tom V. Girardi             Date

EXHIBIT "3"

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626.

A true and correct copy of the foregoing document entitled (*specify*): **EMERGENCY MOTION FOR ORDER: (1) APPROVING COMPROMISE WITH FRANTZ LAW GROUP, APLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019; (2) AUTHORIZING THE ASSIGNMENT OF THE ESTATE'S INTERESTS IN THE SOUTHERN CALIFORNIA GAS LEAK LITIGATION FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS PURSUANT TO 11 U.S.C. § 363; AND (3) AUTHORIZING REJECTION OF THE ASSUMPTION AND LIEN AGREEMENT BETWEEN THE DEBTOR AND ABIR COHEN TREYZON SALO LLP PURSUANT TO 11 U.S.C. § 365 MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ELISSA D. MILLER IN SUPPORT**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  January 25, 2021  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  January 25, 2021 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  January 25, 2021 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

⊠ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 25, 2021 | Gabriela Gomez-Cruz | /s/ Gabriela Gomez-Cruz |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Richard D Buckley     richard.buckley@arentfox.com
- Marie E Christiansen     mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-4166@ecf.pacerpro.com
- Jennifer Witherell Crastz     jcrastz@hrhlaw.com
- Ashleigh A Danker     Ashleigh.danker@dinsmore.com, SDCMLFiles@DINSMORE.COM;Katrice.ortiz@dinsmore.com
- Clifford S Davidson     csdavidson@swlaw.com, jlanglois@swlaw.com;cliff-davidson-7586@ecf.pacerpro.com
- Lei Lei Wang Ekvall     lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Richard W Esterkin     richard.esterkin@morganlewis.com
- Timothy W Evanston     tevanston@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Eric D Goldberg     eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Andrew Goodman     agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com
- Steven T Gubner     sgubner@bg.law, ecf@bg.law
- Marshall J Hogan     mhogan@swlaw.com, knestuk@swlaw.com
- Razmig Izakelian     razmigizakelian@quinnemanuel.com
- Lewis R Landau     Lew@Landaunet.com
- Daniel A Lev     dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Peter J Mastan     peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
- Edith R Matthai     ematthai@romalaw.com
- Kenneth Miller     kmiller@pmcos.com, efilings@pmcos.com
- Elissa Miller (TR)     CA71@ecfcbis.com, MillerTrustee@Sulmeyerlaw.com;C124@ecfcbis.com;ccaldwell@sulmeyerlaw.com
- Eric A Mitnick     MitnickLaw@aol.com, mitnicklaw@gmail.com
- Scott H Olson     solson@vedderprice.com, scott-olson-2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- Leonard Pena     lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com
- Michael J Quinn     mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-2870@ecf.pacerpro.com
- Ronald N Richards     ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Philip E Strok     pstrok@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Eric D Winston     ericwinston@quinnemanuel.com
- Christopher K.S. Wong     christopher.wong@arentfox.com, yvonne.li@arentfox.com
- Timothy J Yoo     tjy@lnbyb.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**

**Via E-mail:**

| | | |
|---|---|---|
| Andrew W Zepeda<br>James J Finsten<br>Lurie, Zepeda, Schmalz, Hogan & Martin<br>1875 Century Park E Ste 2100<br>Los Angeles, CA 90067<br>azepeda@lurie-zepeda.com<br>jfinsten@lurie-zepeda.com | Rafey Balabanian<br>Edelson PC<br>123 Townsend St Ste 100<br>San Francisco, CA 94107<br>rbalabanian@edelson.com | Nano Banc<br>25220 Hancock Ave., Suite 140<br>Murrieta, CA 92562<br>epadilla@nanobanc.com<br>pdonaldson@nanobanc.com |
| Abir Cohen Treyzon Salo, LLP<br>c/o: Boris Treyzon<br>16001 Ventura Boulevard, Suite 200<br>Encino, CA 91436<br>btreyzon@actslaw.com | Law Finance Group, LLC<br>591 Redwood Hwy<br>Suite 1200<br>Mill Valley, CA 94941<br>info@lawfinance.com | LFG Special Investor Group, LLC<br>Finance Group Fund II<br>200 South Virginia St., 8th Floor<br>Reno, NV 89501<br>info@lawfinance.com |
| Corporation Service Company, As Representative<br>P.O.Box 2576<br>Springfield, IL  62708<br>801 Adlai Stevenson Dr.<br>Springfield, IL 62703<br>UCCSPREP@CSCINFO.com | | CT Corporation System, as Representative<br>CT Lien Solutions<br>330 N. Brand Blvd., Suite 700<br>Glendale, CA 91203<br>UCCSPREP@CSCINFO.com |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**