Boris Treyzon, Esq. (State Bar No. 188893)
**ABIR COHEN TREYZON SALO, LLP**
16001 Ventura Blvd,
Los Angeles, CA 91436
Telephone: (310) 407-7888
E-Mail: Btreyzon@actslaw.com

Attorneys for Defendants Boris Treyzon
And Abir Cohen Treyzon Salo, LLP

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| In Re | CASE NO. 2:20-bk-21022-BR |
|---|---|
| GIRARDI KEESE | |
| Debtor. | [Chapter 7] |

**OPPOSITION OF BORIS TREYZON AND ABIR COHEN TREYZON SALO TO TRUSTEE'S EMERGENCY MOTION TO APPROVE THE COMPROMISE WITH FRANTZ LAW GROUP; AUTHORIZING THE ASSIGNMENT OF THE ESTATE'S INTEREST IN THE SOUTHERN CALIFORNIA GAS LEAK LITIGATION; AUTHORIZING THE REJECTION OF THE ASSUMPTION AND LIEN AGREEMENT DECLARATON OF BORIS TREYZON**

**CTRM: 1668 via ZoomGov**

**Web Address:**
**https://cacb.zoomgov.com/j/1614873359**
**Meeting ID: 1614873359**
**Password: 123456**
**Telephone: (669) 254-5252 (San Jose)**
**(646) 828-7666 (New York)**

TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY

JUDGE, ELISSA MILLER, INTERIM CHAPTER 7 TRUSTEE, THE OFFICES OF THE

UNITED STATES TRUSTEE AND ALL OTHER INTERESTED PARTIES:

1    The yet unserved Defendants Boris Treyzon and Abir Cohen Treyzon Salo, LLP submit

2    the following opposition (the "Opposition") to Elissa D. Miller, Chapter 7 Trustee (the "Trustee")

3    for the bankruptcy estate of Girardi Keese, Emergency Motion For Order Approving Compromise

4    with Frantz Law Group; Authorizing the Assignment of Estate's interest in the Southern Califorinia

5    Gas Leak Litigation free and clear; and authorizing the reject of the assumption and lien agreement.

6    Boris Treyzon and Abir Cohen Treyzon Salo, LLP allege that, as unserved Defendants,

7    they have not had sufficient time and opportunity to properly oppose this motion and request an

8    opportunity to file a more expansive opposition as well as an opportunity to hire counsel that is

9    familiar with Bankruptcy rules.

10    **I.    INTRODUCTION**

11    The Trustee comes before this Court on an emergency basis seeking an approval of a

12    compromise with Frantz law group free and clear of any liens and the rejection of the prepetition

13    assumption and lien agreement between Girardi Keese and Abir Cohen Treyzon Salo.

14    The Emergency Motion goes on to allege that this relief is necessary on an <u>expedited basis</u>

15    because ACTS and Treyzon, in violation of the Rules of Professional Conduct, the ethical rules

16    governing California attorneys, have recently sent an unsolicited email containing a number of

17    misrepresentations to the Debtor's clients in litigation involving the Porter Ranch gas leak seeking

18    to <u>convert</u> the clients to their own, despite that ACTS and Treyzon have personal knowledge that

19    the clients are currently represented by the Debtor and Frantz Law Group, APLC ("Frantz").

20    Approximately 100 of the more than 8200 clients in that litigation have been <u>tricked</u> into signing

21    retainer agreements with ACTS, and it is feared that more will follow suit as a result of the

22    unethical behavior of the defendants. The interests of the jointly represented clients as well as

23    millions of dollars of fees are at risk.

24    The Compliant filed in conjunction with this Emergency Motion are nothing more than

25    fabricated allegations devoid of any factual or legal support. In fact, Frantz admitted that he does

26    not have a retainer for 1,200 clients that he previously purported to represent. See Dkt. 19 ¶ 14.

27    The Trustee puts forth a story in order to allow her "hand pick" firm (Frantz Law Group, APLC

28    ("Frantz")) to have the sole ability to handle the Southern California Gas Leak Litigation cases

1  they previously were handling, PLUS take over all cases that the Debtor was handling by itself

2  while giving away a substantial fee from Debtor and relinquishing any referral fees owed by

3  debtor.

4      As will be established below, it is the Trustee who has been tricked by Frantz and the

5  Trustee who has not only breached her duty to maximize value and assets for the creditors but the

6  Trustee appears to have intentionally ignored facts, refused to listen to people, such as Defendants

7  who have substantial knowledge of the Southern California Gas Leak Litigation and instead rushed

8  into an agreement, which will, in the opinion of Petitioning Creditors may cost this Estate and its

9  creditors millions of dollars not only through the Porter Ranch Gas Leak, but the hundreds of other

10  clients represented by Debtor.

## II.    THERE IS NO BASIS FOR EMERGENCY RELIEF

### A.    The Trustee's Material Allegations.

11      The Trustee asserts that "a significant asset of the Debtor's bankruptcy estate is its

12  economic interest in potential recoveries of attorneys' fees related to litigation involving the

13  Southern California Gas Leak Litigation and this order must be granted on an emergency basis

14  because the "estate will lose significant assets and a significant amount in fees…" if the motion is

15  not granted on an emergency basis.  Motion p. 16.

16

17      The Trustee has concluded that Defendant (i) in violation of unspecified Rules of

18  Professional Conduct, (ii) fraudulently; (iii) illegally; and (iv) with knowledge that the Debtor and

19  Frantz represented the Gas Leak clients, has been trying to steal clients by (i) contacting them; (ii)

20  convincing them to dump Frantz (iii) getting them to sign a new retainer agreement with them with

21  the intent of keeping all fees collected for themselves, to the detriment of the Estate and its

22  creditors.

23      The Trustee, who is a fiduciary to all creditors of this Estate, has decided to simply rely on

24  Frantz's self-serving statements, failed to conduct sufficient due diligence in connection with

25  entering into the agreement with Frantz and based on the evidence, which was provided to the

26  Trustee, has decided to ignore agreements and other documents, <u>unilaterally</u> deciding that they are

27  fraudulent or unenforceable. This was done without a shred of proof from either Frantz, or, better

28  yet, from the accused ACTS. At no point, prior to Friday evening of January 22, 2021, has the

Trustee indicated that she had any issues with ACTS conduct. Declaration of Boris Treyzon ("Treyzon Decl.") ¶ 43. At no point prior to that evening has she indicated that she intended to reject a binding agreement entered by Debtor and GK. And no point prior to that Friday evening has she, or anyone acting on her behalf, conducted as much as a basic meet and confer phone call with Defendants. At no point did she request proof that there was any agreement between Frantz and the Debtor which would have supported Frantz's contentions he made to the Trustee. Equally troubling is the fact that the Trustee's entire efforts at the meet and confer consisted of a self-serving cease and desist letter from counsel for Frantz. She has accepted the statements and representations of Frantz as "gospel". Her reliance on Frantz, her lack of full and complete due diligence and her personal feelings and opinions may very well cost the Estate millions of dollars.

**B.      Material Facts Omitted And/Or Ignored and Dismissed by the Trustee.**

On November 16, 2020, Debtor, Thomas Girardi (Girardi) and Defendant signed an Assumption and Lien Agreement (Agreement). This Agreement provides, subject to informed client consent, that the responsibility for continued prosecution of certain pending cases shall be transferred from Debtor to Defendant in consideration for an agreement from Defendant to undertake representation.

By its terms, the Agreement was effective as of November l6, 2020. A copy of the Agreement was provided by Defendant to the Trustee and her counsel on January 11, 2021.

Under the Agreement, Girardi and the Debtor agreed to: (i) Provide Defendant with copies of any contingency fee agreements, fee sharing/referral agreements, and a summary of costs advanced in cases in which Debtor represented and/all plaintiffs; (ii) A list of all matters in which Debtor represents clients where a settlement has been reached but not yet finalized; (iii) A list of matters in which Debtor represents clients where litigation funding is involved, including copies of litigation funding agreements and financial reports about payments made by such litigation flinders; (iv) A list of all matters in which Debtor is no longer representing clients and has served a lien notice, including information such as case name, case number, identity of successor counsel and the status of each such case; (v) A list of all matters in which Debtor was representing the clients up to and including sixty ( 60) days prior to the Agreement and the status of such matters, including if any funds remain to be paid; (vi) A list of all client funds, including, advanced deposits

for costs and/or legal fees, held in trust by Debtor on behalf of any clients whose cases are being transferred subject to the Agreement as. If any such cases are transferred, and with client consent said trust funds shall be transferred to the Defendants client trust account.

The Agreement further provided that Defendant, in its sole discretion, and <u>subject to client consent and ethical compliance</u>, shall determine which of Debtor's cases to assume ("the Transferred Case(s)") and any cases not selected, shall remain the continuing responsibility of the Debtor. Under the Agreement, it was agreed and emphasized that the decision as to whether clients agree to be represented by Debtor belonged **solely** to the client(s) and any such transfer was contingent upon agreement by the client and such clients' consent to such transfer. Last, the Agreement provides that the Parties agree to cooperate in the efforts of Defendant to obtain the informed consent of the Clients so that their matters may be transferred from Debtor to Defendants. Toward that end, Defendant provided contact information for clients on matters identified by Defendants as potential transfer cases. Further, Debtor agreed to introduce such clients to Defendant and facilitate communications intended to secure the informed consent of the clients. For any matter selected by Defendant and for which the clients agreed that the case may be transferred, Defendants would document the disclosure of the fee-sharing agreement as to each client in each such case and would obtain the written consent of the client consistent with, and in compliance with, Rule 1.5.1 (a) of the California Rules of Professional Conduct.

While Frantz disputes this fact, Debtor, in fact, had its own cases and clients separate and apart from Frantz and at no time did Defendant target or solicit Frantz clients. The contact list that was utilized was limited solely to Debtor's own clients and only those clients that were covered by the agreement Defendant reached with Debtor. Frantz is not mentioned or referred to, in any manner, and the communication contains a disclosure, instructing its target audience what to do in case they are already represented by counsel.

### C.    The Agreement Between the Trustee and Frantz.

The Emergency motion states that the Trustee "and her counsel have initiated discussions with a number of law firms that they believed to be qualified and reputable, with the goal of transferring some or all of the Debtor's pending cases pursuant to agreements in which the Debtor would retain an economic benefit." The Trustee does not explain why she decided to transfer

1  some/all of the Debtor's pending cases rather than employ counsel to handle the cases on behalf

2  of the Estate?

3      Ultimately the Trustee reached an agreement with Frantz. Under the terms of the

4  Agreement the estate has agreed to assign Frantz all of its interest in the Southern California Gas

5  Leak Litigation fees. Frantz has agreed to continue to represent the interests of the Gas Leak Client

6  and share 45% of all recoveries, after reimbursement of costs, with the Estate. The Trustee will

7  have no say and no control as to how Frantz litigations these cases, the decisions made by Frantz

8  in connection with the litigation, settlements which Frantz may enter into or any decision by Frantz

9  to associate with counsel.

10      The Association of Counsel Agreements prior to the filing of this case provided for a 50/50

11  split. The Agreement fails to explain why the Trustee has given away 5%, which given the value

12  of these cases could amount to a loss of millions of dollars to the Estate. This is especially true

13  considering that none of the plaintiffs alleged to be represented jointly by Frantz and Girardi are

14  going to be in the first group of trial plaintiffs in the Gas Leak Cases. Therefore, Frantz is getting

15  an extra 5% of the fees to sit back and do nothing on the individual clients' cases. Further, to the

16  extent Frantz decides to enter into an agreement with another law firm to associate in as their co-

17  counsel, how much will the associated counsel receive from fees collected and will his percentage

    impact the 45% due to the Estate?

18  **III.    ARGUMENT**

19      **A.    This Motion Should Be Denied As There Was No Basis For Seeking This**

20          **Relief on an Emergency Basis.**

21      There was no need and no showing by the Trustee for an "emergency" hearing on this

22  Motion. The overuse of ex parte motions is discussed in. *Mission Power Engineering Co. v.*

23  *Continental Cas. Co*., 883 F.Supp. 488 (C.D. Cal. 1995). In *Mission Power*, the Court stated:

24      "Ex parte motions are rarely justified, and it is necessary to explain again when
        their use is justified and when it is not. Lawyers also need to understand why the
25      use of ex parte motions can be detrimental even to the party filing them."

26      The fact that opposing parties are usually given an opportunity to argue or file
        opposing papers does not mask the plain truth: these hybrid ex parte motions are
27      inherently unfair, and they pose a threat to the administration of justice. They
        debilitate the adversary system. Though the adversary does have a chance to be
28

heard, the parties' opportunities to prepare are grossly unbalanced. Often, the moving party's papers reflect days, even weeks, of investigation and preparation; the opposing party has perhaps a day or two. This is due primarily to gamesmanship. The opposing party is usually told by telephone when the moving party has completed all preparation of the papers and has a messenger on the way to court with them. The goal often appears to be to surprise opposing counsel or at least to force him or her to drop all other work to respond on short notice.

"All of this detracts from a fundamental purpose of the adversary system, namely, to give the court the best possible presentation of the merits and demerits of the case on each side. The opposing party can rarely make its best presentation on such short notice."

All derogatory allegations about an opponent in motion papers raise ethical problems for the lawyers and the court to the extent that the allegations are subjective or conclusory. When unsupportable allegations are made in regular noticed motions, they can to a great extent be neutralized by a well-prepared rebuttal. In papers prepared on short notice, however, the lawyers too often simply make allegations that have no supporting evidence to back them up. Even more pernicious is another tendency: the advocates draw conclusions that appear to be supported by voluminous exhibits but are not borne out when the evidence is reviewed with more deliberation and more careful rebuttal than is possible in hasty hearings on ex parte motions. This poisoning of the well may or may not be deliberate, but it can taint the court's view of a lawyer, a party, or both.

What showing is necessary to justify ex parte relief? First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect.

"To show that the moving party is without fault, or guilty only of excusable neglect, requires more than a showing that the other party is the sole wrongdoer. It is the creation of the crisis — the necessity for bypassing regular motion procedures — that requires explanation." *Mission Power Engineering Co. v. Continental Cas. Co*., 883 F.Supp. 488 (C.D. Cal. 1995).

Here, the Trustee has not demonstrated that it will be irreparably harmed absent relief on an emergency basis.  The Trustee has not, and cannot, argue that the Porter Ranch gas leak clients will be irreparably harmed absent relief on an emergency basis.  This is because none of the Girardi-Frantz clients have been selected as initial test plaintiffs.  Moreover, there is no trial date set.

1    In fact, the only harm that will result is if the Court grants the Trustee's motion on an

2    emergency basis.  If the Court were to grant this motion on an emergency basis, the Court would

3    allow the Trustee to invalidate Girardi's prepetition agreement with ACTS.  This would have the

4    effect of leaving numerous Girardi clients unrepresented and in danger of suffering severe

5    prejudice.

6    **B.    The Court Should Not Reject the Prepetition Agreement Between Girardi**

7    **and ACTS**

8    The Trustee also asks this Court for permission to reject the prepetition agreement between

9    Girardi and ACTS.  The Trustee argues that the Court should allow the Trustee to reject the

10   agreement arguing that it is executory.  "An executory contract is one 'on which performance

11   remains due to some extent on both sides.'" *In re Robert L. Helms Construction & Development

12   Co., Inc.*, 139 F.3d 702, 705 (9th Cir. 1998).  "More precisely, a contract is executory if ' the

13   obligations of both parties are so unperformed that the failure of either party to complete

14   performance would constitute a material breach and thus excuse the performance of the other.'"

15   *Id*; See also *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1348 (9th Cir. 1983) (An executory

16   contract is one "under which the obligations of both the bankrupt and the other party to the contract

17   are so far unperformed [at the moment of filing] that the failure of either to complete performance

18   would constitute a material breach excusing the performance of the other.").  Here, the Trustee

19   contends that the prepetition agreement between ACTS and Girardi was executory because both

20   sides still had obligations to perform under the contract.  The Trustee argues that the contract was

21   executory because Giradi had to cooperate under the agreement and transfer the client's property.

22   Neither of these conditions, however, are "so unperformed that the failure of either party to

23   complete performance would constitute a material breach." *In re Robert L. Helms Construction

24   & Development Co., Inc.*, 139 F.3d at 705.

25   Girardi's cooperation was not a material term in the contract.  The case of *In re Boates*,

26   551 B.R. 428 (9th Cir. 2016) is instructive.  In *Boates*, the debtor retained an attorney in a flat fee

27   matter.  *Id*, at 430.  The trustee in *Boates* tried to reject the contract as executory.  One of the

28   arguments that the *Boates* trustee asserted was that the contract was executory because the debtor

     had to cooperate under the contract.  The Ninth Circuit disagreed. See *Boates*, at 434-35 ("More

importantly, even if Boates was obliged to cooperate in his own defense, this was not a bargained-for part of Schian Walker's consideration.  Quite obviously, Schian Walker was not entering into the retainer agreement in order to obtain Boates' cooperation." ).  Specifically, the *Boates* court found that "To the extent Boates was obliged to cooperate in his own defense, we do not consider this a contractual duty under the retainer agreement; instead Boates' cooperation was a mere condition to Schian Walker's performance." *Id*, at 435.  Therefore, the *Boates* court refused to find that the contract was executory based on the fact that the agreement required Boates' cooperation.  While the *Boates* court ultimately held the contract was executory, the court only did so because of "Boates' [continued] obligation to pay out-of-pocket costs Schian Walker incurs in the process of defending Boates…" *Id*.  Here, the Trustee asks the Court for permission to reject the contract as executory because of Girardi's obligation to cooperate and deliver client files.  As the *Boates* court has already found, Girardi's failure to cooperate would not be considered a "breach of the contract." *Id*.  Therefore, the Court cannot find that the contract is executory on that ground.  Moreover, nowhere in the agreement is Girardi obliged to transfer the client file.  These obligations arise out of his duty as an attorney, not a contractual agreement with ACTS.  Therefore, the Court cannot find the contract executory and the Trustee has no authority to reject. ACTS considers that Debtor has fully performed under the Agreement.

## C.    The Trustee Cannot Rely on the Business Judgment Rule

Assuming the contract is executory, which it is not, the Court should not allow the Trustee to reject the agreement.  The Trustee argues that her rejection of the agreement falls within the business judgment rule.  The Trustee, however, has also admitted that she has not reviewed a single gas leak retainer, let alone a retainer in any of Girardi's other cases.  If the Trustee had reviewed the retainers, she would know that Frantz misrepresented the fact that he jointly represented all of Girardi's gas leak cases.  In order for a court to rely on the business judgment rule, "it is presupposed that judgment –reasonable diligence—has in fact been exercised." *Palm Springs Villas II Homeowners Assn., Inc. v. Parth*, 248 Cal.App.4th 268, 280 (2016).  "A director cannot close his eyes to what is going on about him in the conduct of the business of the corporation and have it said that he is exercising business judgment." *Id*.  "Put differently, whether a director exercised reasonable diligence is one of the 'factual prerequisites' to the application of the business

1  judgment rule." *Id*; See also *Lamden v. La Jolla Shores Clubdominium Homeowners Assn.*, 21

2  Cal.4th 249, 253 (1999) (requiring 'reasonable investigation' for judicial deference.).    What

3  California cases make clear is that a director, or Trustee, relying on the business judgment rule

4  must perform a reasonable investigation.  Here, the Trustee has admitted that she has not done so.

5  The Trustee has not reviewed a single retainer.  Instead, the Trustee is entering this agreement

6  based on a representation with Frantz that he jointly represents all gas leak clients.  Frantz,

7  however, has now recanted that statement and admitted that he does Girardi had the sole retainer

8  agreement for 1,200 clients.  The Trustee has also not performed a reasonable investigation to

9  determine what will happen to the Debtor's clients in other legal matters if the agreement with

10  ACTS is invalidated.  An invalidation could cause hundreds of clients to be unrepresented and

11  deadlines to be blown without said representation.  The Trustee has repeatedly claimed that the

12  client's representation is of upmost concern.  The Trustee, however, has made no effort to

13  determine what will happen to Girardi's other clients if this agreement is rejected.  Therefore, the

    Court should not rely on the Trustee's business judgment.

14  **IV.    CONCLUSION.**

15         Defendants join in the Creditors' opposition to approval of the settlement agreement with

16  Frantz.  Moreover, the Court should not allow Trustee to reject the prepetition agreement between

17  Girardi and ACTS.  The agreement is not executory because Girardi does not have any obligations

18  to perform.  Moreover, the Trustee has demonstrated that she has not engaged in the reasonable

19  diligence necessary to hide behind the business judgment rule.  Therefore, Trustee's motion should

20  be denied.

21  DATED: January 29, 2021                    Abir Cohen Treyzon Salo, LLP

22

23                                        By:____/s/ Boris Treyzon_____
                                              Boris Treyzon
24                                            Counsel for Abir Cohen Treyzon Salo, LLP
                                              and Boris Treyzon
25

26

27

28

# DECLARATION OF BORIS TREYZON

I, Boris Treyzon, declare:

1.     I am an attorney at law licensed to practice before all of the courts of the State of California and the United States District Court, Central District of California. I am a partner with the law firm of Abir Cohen Treyzon Salo, LLP ("ACTS"). I make this declaration of my own personal knowledge and if called to testify, I could and would competently testify thereto.

2.     I received this "Emergency" Motion on or about January 25, 2021 at 6:43 p.m. and had approximately three days file a response. In addition, I was served with the Trustee's Emergency Motion for Order: (1) Approving Compromise with Frantz Law Group, APLC Pursuant to Federal Rule of Bankruptcy Procedure 9019; (2) Authorizing the Assignment of the Estate's Interests in the Southern California Gas Leak Litigation Free and Clear of Liens, Claims and Interests Pursuant to 11 U.S.C. § 363; and (3) Authorizing Rejection of the Assumption and Lien Agreement Between the Debtor and Abir Cohen Treyzon Salo LLP Pursuant to 11 U.S.C. § 365 (the "Motion") on January 26, 2021 at 1:08 p.m. and also had less than three days to file a response, while the Trustee and her counsel had days, if not weeks to prepare their "Emergency" motions.

3.     Lastly, on January 27, 2021 at approximately 11:01 P.M., counsel for Frantz emailed me a Supplemental Declaration of James Frantz along with documents totaling approximately 175 pages. Frantz, who filed a declaration in support of the Trustee's Motion did not seek Court authority or a stipulation of the parties to have this latest pleading and documents considered at the hearing on February 2, 2021. Further this Court's Order setting forth the briefing schedule and date/time for the hearing did not provide for supplemental pleadings. Serving this document on me at 11:01 p.m. on January 27, 2021, knowing that opposition was due at 10:00 a.m. on January 29, 2021, if not intentional, is certainly prejudicial and should be stricken and not considered by this Court. If the Court intends to consider it, I respectfully request that the February 2, 2021 hearing be continued to allow me and my firm to have time to prepare a proper (not rushed) response.

4.      With regard to the substance of the Motion, the Trustee's creative recitation of the facts and the declarations filed in support, I respond as follows:

5.      On November 16, 2020, Debtor, Thomas Girardi (Girardi) and Defendant signed an Assumption and Lien Agreement (Agreement). This Agreement provides, subject to informed client consent, that the responsibility for continued prosecution of certain pending cases shall be transferred from Debtor to Defendant in consideration for an agreement from Defendant to undertake representation. I participated in the negotiation and drafting of the Agreement.

6.      By its terms, the Agreement was effective as of November l6, 2020. ACTS entered into this agreement with the consent of Girardi's secured creditors.  A copy of the Agreement was provided by Defendant to the Trustee and her counsel on January 11, 2021.

7.      Under the Agreement, Girardi and the Debtor agreed to: (i) provide my firm with copies of any contingency fee agreements, fee sharing/referral agreements, and a summary of costs advanced in cases in which Debtor represented any/all plaintiffs; (ii) A list of all matters in which Debtor represent clients where a settlement has been reached but not yet finalized; (iii) A list of matters in which Debtor represents clients where litigation funding is involved, including copies of litigation funding agreements and financial reports about payments made by such litigation flinders; (iv) A list of all matters in which Debtor is no longer representing clients and has served a lien notice, including information such as case name, case number, identity of successor counsel and the status of each such case; (v) A list of all matters in which Debtor was representing the clients up to and including sixty ( 60) days prior to the Agreement and the status of such matters, including if any funds remain to be paid; (vi) A list of all client funds, including, advanced deposits for costs and/or legal fees, held in trust by Debtor on behalf of any clients whose cases are being transferred subject to the Agreement as. If any such cases are transferred, and with client consent said trust funds shall be transferred to the Defendants client trust account.

8.      The Agreement further provided that ACTS, in its sole discretion, and subject to client consent and ethical compliance, shall determine which of Debtor's cases to assume ("the Transferred Case(s)") and any cases not selected, shall remain the continuing responsibility of the Debtor. Under the Agreement, it was agreed and emphasized that the decision as to whether clients agree to be represented by Debtor belonged solely to the client(s) and any such transfer was

contingent upon agreement by the client and such clients' consent to such transfer. Last, the Agreement provides that the Parties agree to cooperate in the efforts of ACTS to obtain the informed consent of the Clients so that their matters may be transferred from Debtor to Defendants.

9.      Toward this end, Debtor provided contact information for clients on matters identified by ACTS as potential transfer cases. Further, Debtor agreed to introduce such clients to ACTS and facilitate communications intended to secure the informed consent of the clients. For any matter selected by ACTS and for which the clients agreed that the case may be transferred, ACTS would document the disclosure of the fee-sharing agreement as to each client in each such case and would obtain the written consent of the client consistent with, and in compliance with, Rule 1.5.1 (a) of the California Rules of Professional Conduct.

10.     The Trustee, in her Motion, without providing any evidence, asserts that this Agreement was entered into "under suspicious circumstances" and she intends to "reject the agreement" or challenge the Agreement as a fraudulent conveyance or void contract. The Trustee fails to articulate how rejection, fraudulent transfer or voiding the Agreement will benefit the Estate. ACTS would suggest that the Trustee not make rash decisions and not take action on a whim without first fully and properly investigating and analyzing all the facts, circumstances and the impact such actions may have on the Estate.

11.     In supporting the Motion, Frantz disputes the facts regarding the Agreement as I set forth above. Contrary to Frantz assertion, Debtor, in fact, had its own cases and clients separate and apart from its cases in which it was co-counsel with Frantz. At no time did ACTS target or solicit any Frantz clients and there is no evidence to support Frantz' claim. The contact list that was utilized by ACTS was limited solely to Debtor's own clients and only those clients that were covered by the agreement ACTS reached with Debtor. Frantz is not mentioned or referred to, in any manner, and the communication contains a disclosure, instructing its target audience what to do in case they are already represented by counsel. Attached hereto as **Exhibit "A"** is a true and correct copy of a retainer agreement between Debtor and a client, who's name/information has been redacted. Frantz is not mentioned anywhere in the exhibit.

12.     In addition to the above, I reviewed the declarations filed in support of the Motion. With regard to the Trustee's sworn statements I have the following comments.

A.    In paragraph 9 of her declarations, the Trustee states: Shortly after my appointment, on January 7, 2021, I had a conversation with Boris Treyzon of Abir Cohen Treyzon Salo, LLC ("ACTS"). During that conversation, he told me he wanted to take over the cases and had hired some of the Debtor's former attorneys. He also told me that prior to my appointment, he had been provided access to the Debtor's computer system and the iManage program, the database on which the Debtor maintained its digital files for mass tort actions, of which Porter Ranch is one. He told me he had downloaded data to an external computer hard drive and had some associations of counsel (I later learned none were signed by clients) but had been stopped from taking any action by the freeze issued by the District Court Judge in Chicago in the Lion Air Case which was only lifted after the bankruptcy was filed and I was appointed and the automatic stay went into effect.

13.    I was <u>never</u> provided access to Debtor's computer system and have never been inside Debtor's offices. Neither I nor ACTS ever received possession of the hard drive and to the best of my knowledge it is still at the Debtor's offices or with one of the Trustees. I will admit that ACTS did pay for the drive that it never received. The only action I was stopped from doing is the physical transfer of files.

14.    In paragraph 14 of her Declaration, the Trustee states: It is my understanding that prepetition, the Debtor, together with the Frantz Firm, had been representing the Gas Leak Clients for more than five (5) years. I have also been advised that all of the Debtor's clients in the Southern California Gas Leak Litigation are jointly represented by Frantz. In other words, the Debtor did not have any clients in the Southern California Gas Leak Litigation that are not jointly represented by Frantz. It is for this reason and others, as discussed below, after reviewing proposals from several of the firms who executed NDA's, including the ACTS firm, that I elected to enter into an agreement with Frantz for Frantz to continue to represent the Gas Leak Clients and to conclude the litigation. I believe that the agreement with Frantz, which I am seeking this court's approval, is a sound exercise of my best business judgment.

15.     The Trustee says she was "advised that all of the Debtor's clients in the Southern California Gas Leak Litigation are jointly represented by Frantz". The Trustee does not state who advised her/how she was advised. If she was advised by Frantz, she was misled. It is improper for the Trustee to make such a determination until she reviews the retainer agreements. That is part of the Trustee's job, to conduct proper due diligence to insure that proper decisions are being made on behalf of and for the benefit the creditors of the Estate. It appears that, in this case, this was not done and, instead, the Trustee relied on the representation of some "unnamed person". The Trustee never asked me for any client contact information. Further, at no time since this case was filed did I or my firm ever refuse a request from the Trustee and as a matter of fact I always offered to share all information gathered by my firm over 18 months of litigation against Girardi. If she doesn't have retainers, Frantz certainly must. Have him show retainers. Finally, by the Trustee's own definition, in the NDA that I was required to sign, states that a document is not confidential if (c) Its already in my possession and previously provided by Debtor.

16.     In connection with my review of the Declaration of James Frantz, I have the following comments.

17.     Paragraph 10 of Frantz Declaration states: After filing its first complaint, in December 2015, Girardi Keese ("GK") and Frantz agreed to work together as co-counsel on the Southern California Gas Leak Litigation. We ultimately agreed to equally pay for marketing costs and case management expense, to devote equal time to the cases, <u>and to jointly share in all attorneys' fees recovered.</u>

18.     Paragraph 11 of Frantz Declaration states: We also agreed that all clients in the Southern California Gas Leak Litigation represented by either firm would be jointly represented by the two firms for all purposes, regardless of which firm was initially retained by the client.

19.     Pursuant to *B&P Code §6148* all agreements with clients be in writing. Debtor and Frantz's apparently verbal agreement notwithstanding this in no way creates a retainer that is binding on the client. ACTS was associated into the case by then counsel of record and have reached out solely to Debtor's clients, not the joint clients. This "joint" client definition came about as a result of what appears to be an oral agreement with Debtor that is not permitted under

California statutory authority. As such Frantz' prior conduct was in violation of State Bar rules as they existed then and as they exist now.

20.    Paragraph 12 of Frantz Declaration states: . GK does not have any clients in the Southern California Gas Leak Litigation that are not also Frantz clients. All GK clients in that matter are jointly represented by Frantz.

21.    The statement, as Frantz later admitted is blatantly false.

22.    Paragraph 14 of Frantz Declaration states:  On December 14, 2020, after 6:00 p.m., ACTS served 12 Notices of Association of counsel in the Southern California Gas Leak cases. The notices claim that ACTS represented 12 clients who are represented by GK and Frantz. A copy of one of the notices is attached hereto as Exhibit "7."

23.    The notices speak for themselves. They were prepared by GK and the only thing it says is that ACTS has been associated and nothing else. It asks that ACTS to be added to the service list and informs the Court that ACTS is are now in the case.

24.    Paragraph 15 of Frantz Declaration states: These notices of association were filed without Frantz's permission. To the best of my knowledge, they also were filed without the permission of any client.

25.    I can't speculate about what, if anything GK did prior to filing, but ACTS did not speak to clients. The Agreement provided for ACTS to reach out to them to speak to them which is what we did. We also relied on the following provision of the GK's retainer agreement that provided: "Client agrees that Attorneys also have the discretion to associate with other counsel to assist in prosecuting the Client's cause of action. Any attorney fees recovered by way of settlement or final resolution at arbitration, mediation or trial may be shared with such law firm(s). Such associations will not affect the total attorney fees charged to Client."

26.    Paragraph 16 of Frantz Declaration states: I, and others on my behalf, have contacted Boris Treyzon of ACTS concerning those filings. Mr. Treyzon admitted that he filed such notices without personally obtaining the consent of any client that he and his firm claimed to represent, and that he did not have any client signatures consenting to the representation. Only at that point did ACTS request permission to co-counsel with Frantz on the cases. Frantz declined ACTS's request and made clear that it did not want to have ACTS involved in the matters.

27.     I was contacted by Frantz's office. Jim Frantz <u>never</u> contacted me. We set up a conference call. On this call was myself and Robert Finnerty from ACTS. James Frantz was on that call with counsel and Regina Bagdasarian. On that December 16, 2020 telephone call the members of the ACTS firm informed Jim Frantz that ACTS was associated in to represent Girardi's gas leak clients based on a retainer agreement through Girardi.

28.     Paragraph 17 of Frantz Declaration states:  Frantz asked Mr. Treyzon and ACTS to withdraw those associations and, when he failed to do so, Frantz and the law firm of Goldberg & Gage filed objections and motions to strike those notices. The Court has not yet ruled on these objections and motions.

29.     I informed Mr. Frantz's counsel (I never spoke to Mr. Frantz after our one conference call) that I would be willing to withdraw Notices of Association if he and I could not come to agreement and if clients did not agree to our representation.

30.     Paragraph 21 of Frantz Declaration states: Shortly thereafter, on January 22, I received an e-mail from a client, forwarding a solicitation e-mail from ACTS. ACTS apparently sent the same e-mail to most or all of the (already represented) clients of Frantz and GK. Indeed, my firm and I started receiving numerous other inquiries about ACTS solicitation. Attached hereto as Exhibit "2" is a true and accurate copy of a client e-mail forwarding a copy of the ACTS solicitation (but redacted to protect the client's contact information).

31.     The clients that were contacted were limited solely to those that were provided to ACTS as GK only clients by Debtor in or around November of 2020. That's why ACTS did not email the entirety of the clients represented by Frantz and Girardi. The clients were contacted after ACTS discovered that Frantz was directly reaching out to Girardi only clients and asking the clients to terminate their relationship with Girardi and retain Frantz.  Attached hereto as Exhibit "B" is a true and correct copy of Frantz solicitation of Girardi clients.

32.     Paragraph 22 of Frantz Declaration states towards the end: Yet because it was sent to clients Frantz and GK already represented, which fact ACTS had already been informed of, ACTS plainly knew it was sending this e-mail to parties who were already represented by counsel who had rejected ACTS's offer to co-counsel on these cases per the above-noted communications between Mr. Treyzon and Frantz.

33.     See the email of 01/01/21 from Ken Chiate, a copy of which is attached as **Exhibit "C"**. If Frantz had any other communications with me or ACTS they would need to show some evidence of that.

34.     Paragraph 24 of Frantz Declaration states: **At least 50 families have already signed the ACTS fee agreement based on this solicitation.** Approximately 20 other clients are confused as to whether they fully signed the agreement.

35.     ACTS is presently aware of approximately 43 retainers. None of the people who ACTS spoke with expressed confusion. I personally spoke to one person, Mr. D, who told me that he was unclear about who represented him. I explained to him that Frantz Law Group are fine lawyers who, if they represent him, will undoubtedly do a good job and that there is nothing wrong with their representation. He indicated that he was unhappy with what he called, I believe, was Girardi mess, asked me to note his number and indicated that he was not signing anything at this time. I thanked him for his call and disconnected from it. That is the only conversation I had with anyone who called my office because of the email sent out.

36.     Paragraph 25 of Frantz Declaration states: Other clients are also confused as to the "Town Hall" meeting announced in the ACTS e-mail. Frantz already was planning on hosting a "Town Hall" and told clients registration details would follow in a future email. The ACTS e-mail similarly states that one can register for a "Town Hall" meeting by clicking on a link.

37.     ACTS's townhall meeting was scheduled for Monday, January 25, 2021. Frantz's townhall meeting was scheduled for January 31, 2021. Apparently on Sunday, Frantz moved its townhall meeting to the same time as ACTS. During its townhall meeting, which Frantz categorized as attended by thousands, most of the time was dedicated to the Trustee and Mr. Frantz describing ACTS and myself as unethical and unprofessional. Due to the rushed nature of this proceeding, I was not able to obtain a declaration from the person who has personal knowledge of the statements made about me by the Trustee and Frantz. Basically, under the guise of this Court, my firm's reputation to approximately 8500 families has been tarnished. Who are the confused clients? The word townhall is not copyrighted it's a descriptor of the format.

38.     Paragraph 26 of Frantz Declaration states: More worrisome were statements by clients that ACTS was making false representations of what *the Trustee* purportedly provided to

ACTS. Many clients have been very concerned as to how their personal information was obtained by ACTS. ACTS told one client that it received the list from the Trustee. Attached hereto as Exhibit "11" is a true and accurate copy of the email from that client (but redacted to protect the client's contact information).

39.    At no time have I or anyone at ACTS ever said that.

40.    I have also reviewed the Declaration of Kenneth Chiate, counsel for Frantz and have the following comments.

41.    Paragraph 6 of Chiate Declaration states: During that conversation, Mr. Treyzon acknowledged that he was aware that Frantz was co-counsel with Girardi Keese to all plaintiffs they jointly represented in the Southern California Gas Leak Litigation, and Mr. Treyzon assured me that if Frantz did not want to associate with ACTS, ACTS would withdraw the Associations of Counsel and only seek to preserve its claims and the claims of certain lenders against Girardi Keese in the bankruptcy proceedings. Mr. Treyzon did not disclose to me during this conversation or at any time before this conversation that ACTS had entered into an agreement with Girardi Keese about representing plaintiffs jointly represented by Frantz and Girardi Keese, or that ACTS intended to solicit clients currently represented currently represented by Frantz and/or Girardi Keese.

42.    I have no recollection of having such a conversation. I would like to know when and how Mr. Chiate called me. I keep detailed notation of calls and would like to refer to my notes. I do remember having a conversation with Mr. Chiate previously where he asked me what I was looking for. I provided an offer and Mr. Chiate stated that he needed to speak with his client. At no point was I told that Frantz did not want to work with ACTS. In fairness neither was I told that he agreed to work with ACTS. As of right now, my proposal to Frantz Law Group remained unanswered.

43. At no point, prior to Friday evening of January 22, 2021, has the Trustee indicated that she had any issues with ACTS conduct. At no point prior to that evening has she indicated that she intended to reject a binding agreement entered by Debtor and GK. And no point prior to that Friday evening has she, or anyone acting on her behalf, conducted as much as a basic meet and confer phone call with Defendants. At no point did she request proof there was any

1  agreement between Frantz and the Debtor which would have supported Frantz's contentions he

2  made to the Trustee. Equally troubling is the fact that the Trustee's entire efforts at the meet and

3  confer consisted of a self-serving cease and desist letter from counsel for Frantz.

4         I declare under penalty of perjury that the forgoing is true and correct.

5         Executed this 29th day of January 2021 at Encino, California.

6                         /s/ Boris Treyzon

7                     BORIS TREYZON, ESQ.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

# G | K        GIRARDI | KEESE
### L A W Y E R S

████████

## PORTER RANCH RETAINER AGREEMENT
## & POWER OF ATTORNEY

This document (the "Agreement") is the written fee contract that California law requires lawyers to have with their clients.

**1.    Conditions.**  This agreement will not take effect until GIRARDI | KEESE ("GK") has received a signed copy of this agreement.

**2.    Scope    of    Services.**    This    Agreement    is    between ████████_____ ("Client,") and Girardi and Keese ("Attorneys") to investigate and possibly prosecute causes of action or claims for damages against all entities and/or persons who are or might be responsible for the gas leak at or near the city of Porter Ranch, California.  The scope of Attorneys' representation is limited to evaluating and potentially pursuing any such claims. Attorneys are authorized to file suit on your behalf at their sole discretion.

No other legal services of any kind are covered by this Agreement. This retention does not include investigating or prosecuting any claim or action against any health care provider.  Further, Attorneys will not represent Client on any appeal without specific agreement memorialized in a separate agreement. Attorneys make no promise or guarantee regarding the outcome of this matter.

Attorneys reserve the right to withdraw from representation at their sole discretion upon reasonable notice given to client.  In said case Attorneys may cancel this Agreement with Client and said cancellation will release Attorneys from any further action on Client's claim, and will discharge Attorneys from this Agreement. Cancellation will be effected by certified letter mailed to the last address provided by the Client to Attorneys. Client agrees to be truthful with Attorneys, to cooperate, to keep Attorneys informed of developments, to abide by this Agreement and any addendums, and to keep Attorneys informed of Client's current address, telephone number and whereabouts.

G | K

█████████████

Page 2 of 10

**3.     Services Not Covered By This Agreement.**  This Agreement does not cover other related claims, appeals, writs or other legal services that may arise. If additional services are necessary in connection with Your claims and You request that GK perform such services, a separate written fee agreement must be made between GK and You.   Such additional services may be required, for example, in bringing any additional complaints against other potential defendants, or in defense of a lawsuit, cross-complaint or other cross demand filed against You in connection with the above-referenced matter.

**4.     Client's Duties.**  You agree to be truthful with GK, to cooperate, to keep GK informed of developments, to abide by this agreement, and to keep GK advised of Your address, telephone number and whereabouts.

**5.     Contingent Fee Agreement:** Except as otherwise provided herein, the fees to be paid to GK will be a percentage of the total recovery in any matter(s) GK handles pursuant to this Agreement ("Total Recovery").  The Total Recovery means cash and anything of value received on Your behalf as a result of GK's representation no matter how characterized, no matter when paid and whether paid by any person or by any third party.  The Total Recovery is the gross recovery and/or future recovery that is obtained, awarded, negotiated or otherwise obtained as a result of GK's representation of You.  The Total Recovery includes but is not limited to any damages, money, payments, consideration, royalties, licensing fees, options, stock, property, receivables, obligations, equitable relief and/or injunctive relief obtained as a result of GK's representation of You.  For a recovery that involves relief other than a cash payment, a reasonable cash value will be determined in good faith by You and GK, and the below fee scale will be applied to that value.

GK's attorney fee scale for Your claims is as follows:

i.  If GK obtains any recovery for You at any time , GK's legal fees shall be ████ (██%) of the Total Recovery.  For illustrative purposes only, if Your Total Recovery is $████ at any time within three months of Your execution of this Agreement, GK's legal fees will be $████.

ii.  IN THE EVENT OF NO MONETARY RECOVERY, ATTORNEYS SHALL RECEIVE NOTHING FOR THEIR SERVICES. This fee agreement is not set by law and is negotiable between you and Attorneys.

G | K

████████████

Client agrees that Attorneys also have the discretion to associate with other counsel to assist in prosecuting the Client's cause of action. Any attorney fees recovered by way of settlement or final resolution at arbitration, mediation or trial may be shared with such law firm(s). Such associations will not affect the total attorney fees charged to Client.

By signing this Agreement, Client acknowledges and agrees that the above contingency fee is reasonable considering the time and labor required, the novelty, complexity and difficulty of the legal questions involved, and the requisite skill necessary to perform these legal services properly. Client further acknowledges and understands that this contingent fee, or rate of fee, is customary for legal services of a comparable or similar nature. Client further acknowledges, agrees, and understands that the above contingency fee is reasonable considering the significance of this representation, the amount of money involved, the subject matter of this litigation, and the responsibility involved in the representation to obtain the desired results. Client further acknowledges, agrees, and understands that the above contingency fee contract is reasonable considering the expertise, reputation, diligence, and ability of the Attorneys performing these legal services.

In the event that Attorneys withdraw or are discharged, they may be permitted by law to recover the reasonable value of their services and any costs or expenses that have been advanced. That recovery could be less or the same as the amount that would have been obtained by Attorneys had they proceeded with your case and received their contingency fee. However, Attorneys agree not to seek reimbursement of costs/expenses or the reasonable value of their services unless you receive a recovery in the underlying matter.

**6.    Costs and Other Expenses.** It will be necessary for Attorneys to incur and advance certain costs and expenses for the Client. These costs may include, but are not necessarily limited to, any of the following: filing and service fees; costs for screening and medical exams; reports and records; travel expenses including air fare, meals, and lodging for the Client and Attorneys' employees; fees of accountants, court reporters, or other professionals employed with respect to your case including judicial officers' fees; costs and fees associated

**G | K**

███████████████

with any necessary foreign estate administration procedures; telephone charges; facsimile charges; miscellaneous copying costs and postage. It may be necessary to employ medical and/or technical expert witnesses to examine and report on the facts of the Client's cause of action. The Client agrees that Attorneys have the discretion to employ and pay these expert witnesses. The Client further agrees to reimburse Attorneys from any settlement money received or from payment of any judgment.  Upon receipt by Attorneys of the proceeds of any settlement or judgment, Attorneys shall retain the above referenced distribution of attorney fees, then deduct any costs, expenses and expert fees from the Client's portion of the recovery after attorney fees are deducted, and disburse the remainder to Client.

**If no money is recovered in Client's case, Attorneys will not seek costs and expenses advanced by Attorneys in the investigation and/or prosecution of Client's case.**

**7.** **Alternative Dispute Resolution:** It may be beneficial to the case to seek alternative avenues to resolve your claim. You agree that any claim made or lawsuit filed can be made the subject of Alternative Dispute Resolution ("ADR") before a retired Judge or such other person or persons as the Attorneys choose in their discretion. The retired Judge(s) or other persons chosen will decide your case after hearing both sides. That decision will be referred to as a "judgment." You are waiving the right to a jury trial and the right of appeal. Sometimes this is called "binding arbitration." You authorize Attorneys to execute all documents on your behalf to effect conclusion of this matter. You agree to cooperate with Attorneys at all stages of litigation and to keep Attorneys advised of a current mailing address at all times.

**8.** **Waiver of Potential Conflicts – Multiple Plaintiffs:** Client understands that his/her case may be filed, settled, and/or go to trial with a larger group of tort claimants with similar claims. Client agrees that Attorneys, at Attorneys' election, may combine this Action with other related actions, which are often called Mass Tort Actions. One benefit of Mass Tort Actions is that by litigating multiple related cases together and spreading the cost of litigation

G | K

████████████████

Page 5 of 10

across the group of cases, litigation costs for each individual client may be lower than they would be if each individual's case were litigated in isolation. By signing this Agreement, Client does hereby waive any potential or actual conflict between themselves and any other member of a Mass Tort Group. Client gives permission to Attorneys to disclose Client's name, and Client's settlement (offer) amount to other claimants also represented by Attorneys, whose case may be litigated and/or settled at the same time, to the extent that such disclosures may be necessary to comply with applicable rules of legal ethics and professional conduct. Additionally, Client understands that certain expenses, including travel and expert expenses, may be incurred jointly in all cases in a group and authorizes Attorneys to allocate such expenses among all such cases in proportion to the ultimate gross recovery obtained by each client in the group.

Client agrees that Attorneys are authorized to settle this case against any or all of the defendants on a global basis with recovery being made to client out of the global settlement.   Attorneys may retain the services of a retired judge(s) to allocate settlement proceeds among the various clients, including yourself.   If client disputes the amount received through the global settlement, client may submit the dispute to said retired judge(s) who would determine the final amount after hearing client's reasons for a different amount. This decision would be final.

**9.    Governing Law:** The laws of the State of California shall govern the validity, construction, enforcement, and interpretation of this Agreement. This Agreement contains the entire agreement between Client and Attorneys regarding the matters described herein, and the fees, charges and expenses to be paid relative thereto, and supersedes all prior oral or written agreements. This Agreement may only be amended in writing by Client and Attorneys, and their respective legal representatives, successors, and assigns. This Agreement may be executed in multiple original counterparts, each of which shall be deemed an original, and which together shall constitute the same agreement.

**10.    Discharge or Withdrawal.**  You may discharge GK at any time, on written notice to GK, and GK will immediately cease to render additional services after receiving such notice.  GK will fully cooperate with any successor law firm.

G | K

██████████████

Page 6 of 10

GK may withdraw from its representation of You (i) with Your consent, (ii) on court approval, (iii) if You are in material breach of this Agreement. (iv) if You refuse to cooperate with GK on any material matter or fail to follow GK's reasonable advice on a material matter, (v) for any fact or circumstance out of Your control that would render GK's continuing representation of You unlawful or unethical or (vi) if no court action has been filed, on reasonable notice to You.

In the event GK withdraws under this paragraph or if You discharge GK, GK shall be reimbursed for all documented and reasonable costs incurred by GK in connection with a matter for which GK represented You hereunder in accordance with this Agreement. In addition, out of any recovery You may subsequently obtain for such matter GK commenced prior to termination plus GK shall receive legal fees therefrom for the services GK rendered to the date of termination reflecting the reasonable good faith value of GK's legal services and as GK shall negotiate with the successor law firm (it being understood that in no event shall the aggregate legal fees payable to GK and all other lawyers exceed those percentages set forth above in paragraph 5). The attorney's lien that is set forth below in paragraph 8 shall also apply to any sums due under this paragraph. GK will not be entitled to any fees or other payment if You discharge GK for good cause, which includes GK's material breach of this Agreement (which breach is not cured after 20 days' notice from You to GK) or unlawful or unethical behavior, or if GK withdraws for any reasons not permitted herein.

11.    **Lien.**  You hereby grant GK a lien on any and all claims or actions in which GK represent You under this Agreement. GK's lien will be for any sums owing to GK in accordance with this Agreement for any unpaid costs, or attorneys' fees, at the conclusion of GK's services, and acts as security for the payment of such sums. The lien will attach to any recovery You receive, whether by judgment, settlement, arbitration award or otherwise. The lien could delay payments to You if there are any disputes over the amounts to be paid to GK. Before signing this Agreement You may seek the advice of an independent lawyer of Your choice about the lien and all other aspects of this Agreement. Your right to do this is also set out in paragraph 16, below.

12.    **Confidential Information.**  You understand that You may receive confidential information, including confidential information from or relating to

G | K

other parties, in the course of the litigation and that such information is or may be subject to protective orders and/or attorney-client, work-product, joint-prosecution, and other applicable privileges.  You agree not to disclose any such confidential information to the detriment of the litigation, except insofar as may be required in any dispute between the You and GK.

13.    **Express Consent to Electronic Communications.**    In order to maximize efficiency in this matter, GK intends to use state-of-the-art communications devices to the fullest extent possible (*e.g.*, email, electronic document transfers, mobile devices and facsimile transfers).  The use of such devices under current technology may place Your confidences and privileges at risk.  However, GK believes the effectiveness involved in use of these devices outweighs the risk of accidental disclosure. By signing this letter, You acknowledge Your consent to the use of these devices.

14.    **Attorney's Authority.**  In connection with the claims covered by this Agreement, subject to Your prior approval You hereby give GK the power and authority to execute any and all claims, deposits, orders, and other papers that You could properly execute, and to receive on Your behalf any moneys or other things of value to which You may be entitled because of any judgment recovered or any settlement received.

15.    **Approval Necessary for Settlement.**    You hereby give Attorneys permission to settle this case against any or all of the defendants on a global basis. So long as Attorneys represent You in the matter, You agree that You will not make any settlement or compromise of any nature of any of Your claims in the matter without prior notice to and in consultations with Attorneys.

16.    **Disclaimer of Guarantee.**  Nothing in this Agreement and nothing in GK's statements to You will be construed as a promise or guarantee about the outcome of Your matter.  GK makes no such promises or guarantees.  Any comments about the outcome of Your matter are expressions of opinion only.

17.    **Insurance Disclosure.**  GK does not meet any of the criteria for errors and omissions (malpractice) coverage set forth in Business and Professions Code § 6147.

G | K

**18.    Arbitration.**    Although GK does not expect that any dispute will arise, in the unlikely event of any dispute concerning GK's representation, including disputes regarding the amount of fees or the quality of GK's services, You and GK shall first conduct a mediation under the rules of ADR (ADR Services, Inc.) in Los Angeles, California.  The cost of the mediation will be borne equally by both parties to this agreement.  If You and GK cannot agree on the mediator, then ADR shall have the authority to appoint one mediator so the mediation can be held.

If the mediation is unsuccessful then the dispute shall be determined by binding arbitration under the rules of ADR in Los Angeles, California by one arbitrator, either agreed to between You and GK at the time of any dispute or appointed under the ADR rules.  The cost of the arbitration shall be initially borne equally by both parties.  However, upon making a determination of the claims in arbitration, the arbitrator shall have the discretion to order that the costs of the arbitration, including fees and other costs—but not reasonable attorney fees—shall be borne by the losing party.  You and GK further agree that all information concerning the facts, substance or result of any such mediation or arbitration shall remain confidential and not be disclosed except to the extent necessary to enforce the arbitration award or as otherwise required by law.

**19.    Your Right to Consult with Counsel on This Agreement.**  You have the right to consult with counsel other than GK to advise You on this Agreement and any provision in it.

**20.    Informed Consent.**  You acknowledge that You had the opportunity to discuss the contents of this Agreement with independent counsel, and that You have read and understand this Agreement.

**21.    Severance.**  If any provision contained in this Agreement is held to be invalid, void or illegal by any court of competent jurisdiction, that provision will be deemed severed from the remainder of this Agreement.  Such severance will in no way affect, impair or invalidate any other provision contained in this Agreement.  If any provision is deemed invalid due to its scope or breadth, such provision will be deemed valid to the extent of the scope or breadth permitted by law.

G | K

████████████

Page 9 of 10

 

**22.    Execution by Counterparts and Facsimile.** This Agreement may be executed in counterparts and when You have signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and all counterparts taken together will constitute one and the same agreement, which will be binding and effective as to each of You and as to GK.  Signatures by facsimile or by email in an electronic document are binding.

**23.    Effective Date.**   This Agreement will take effect when You have performed the conditions stated in Paragraph 1, but its effective date will be retroactive to the date GK first performed services.  The dates in the signatures lines of this Agreement are for reference only.

Please review this Agreement carefully. If you believe it accurately reflects the understanding we have reached, please sign the original and return to us at 1126 Wilshire Blvd., Los Angeles, CA 90017.  Unless other arrangements are made, five years from the date this case is resolved, the file will be destroyed.

NOTE: If you are signing on behalf of another individual (e.g., for your minor child or decedent), please write that individual's name first, then yours (i.e. Bob Smith by Betty Smith).  The remaining information should be completed for the individual you are signing for.

████████████
Client (Print name)

████████            ████████████████████
Date                       Client (Signature)

████████████
Mailing Address

████████████
City                          State                          Zip

████████████
Home Telephone Number

G | K

████████████████

Page 10 of 10

████████████████                    /
_____
Work Telephone    /    Mobile Telephone

████████████████
_____
Email Address

_____
Social Security Number

████████████████
_____
Date of Birth

_____

I have read and understood the foregoing terms and agree to them, as of the date GIRARDI | KEESE first provided services. By signing this Agreement, I acknowledge receipt of a fully executed duplicate of this Agreement.

GIRARDI | KEESE

APPROVED AND ACCEPTED BY _____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT "B"

26
27
28



-------- Original Message --------
Subject: Urgent Porter Ranch Communication
From: FRANTZ LAW GROUP, APLC <PorterRanch@frantzlawgroup.com>
Date: Fri, December 18, 2020 11:40 am
To: ████████████████████

**Advertisement**



**NOTE:** If you are represented by other counsel, please disregard this message and **unsubscribe** from our mailing list

**Personal & Confidential;**

*Attorney/Client Communication*

**Dear** ████████████████

As you may already be aware, Tom Girardi and Girardi Keese are currently being sued by former clients and creditors for non-payment of settlements, loans and other debts.

loans and other debts.

On Monday, December 14th,  there was a hearing in Federal Court in Chicago related to one of the lawsuits.  In that hearing, U.S. District Court Judge Thomas M. Durkin, who is overseeing one of the lawsuits, froze the personal assets of Tom Girardi and those of Girardi Keese.

We are cognizant of our ethical obligations to the clients we represent jointly with Girardi Keese.  We believe, based on various court filings, discussions with other counsel, and representations on the record, that Girardi Keese may no longer have the ability to continue to be involved in this case in any capacity. We have no financial entanglements with Girardi Keese that would prevent us from continuing to represent you.

Below are links to several recent articles detailing these matters:

https://www.latimes.com/california/story/2020-12-17/tom-girardi-erika-jayne-rhobh-divorce
https://chicago.suntimes.com/2020/12/14/22174396/real-housewives-erika-jaynes-husband-held-civil-contempt-over-missing-lion-air-settlement-cash
https://www.latimes.com/california/story/2020-12-14/judge-freezes-assets-lawyer-tom-girardi-cites-millions-unpaid-to-clients

We have sought the advice of outside counsel and would like to bring to your attention that you have the right to terminate  Girardi Keese as your counsel. We have discontinued our co-counsel relationship with Girardi Keese and are advising Girardi Keese of this.  Therefore, please confirm whether you wish to terminate your representation by Girardi Keese.  If you wish to discharge Girardi Keese, please confirm by using the link below.

Southern California Gas leak Representation Selection

Our most important ethical obligation is to act in the best interest of our clients at all times.  We have concluded that  termination of our contractual relationship with Girardi Keese is necessary to allow us to represent you and to continue our aggressive prosecution of this case on your behalf as we have from the very beginning.  We believe this is a mandatory action to protect your interests. This will not affect your standing in the case.

In addition, we wanted to provide a general update on the status of the litigation.  We are happy to report the case is progressing well in spite of the pandemic.  Discovery is continuing, with the Steering Committee taking the depositions of key witnesses for the liability portion of the case.  Motions have been filed with the Court by the defense to exclude certain key witnesses' depositions and documents which have been vigorously opposed by the Plaintiffs' Steering Committee.

Numerous depositions of important witnesses are ongoing weekly to prove liability against the defendants. The arrival of the pandemic has resulted

in the rescheduling of numerous depositions and delayed the production of documents. Moreover, the trial date scheduled for last fall was vacated due to the Covid-19 hazards. All hearings now are being conducted virtually via Zoom. Frantz Law Group, APLC continues to prosecute your case as a member of the steering committee with the goal of achieving a favorable settlement or jury verdict. We remain optimistic that we will secure a trial date in 2021 and/or successfully conclude global settlement negotiations on your behalf.

Finally, we would like to wish you the happiest of holidays. We remain deeply honored to represent you in this important matter. We also are excited to share with you that we are proud to once again be featured on the 2021 cover of Best Lawyers of America, Southern California edition. We invite you to view the magazine and the coverage therein HERE.

# Has your contact information changed?

If so, you must click the link below to submit your current contact information.

## Click Here to Update Contact Information

We will continue to update you concerning important developments. If you have any questions, please contact PorterRanch@frantzlawgroup.com or via telephone at **323-425-8138**. We appreciate the opportunity to be of assistance to you and your family.

**All our best,**

**James P. Frantz of Frantz Law Group, APLC**

**The Porter Ranch Team**

E-mail: PorterRanch@FrantzLawGroup.com

Web URL: www.FrantzLawGroup.com

Phone: **(323) 425-8138**

Toll Free: **(855) 735-5945**

Fax: **(619) 525-7672**

**LOS ANGELES**

Century Plaza Towers

2029 Century Park East

Suite:400

Los Angeles, CA 90067

Ph: (323) 425-8138

**SAN DIEGO**

Emerald Plaza

402 West Broadway

Suite 860

San Diego, CA 92101

Ph: (619) 233-5945

**SAN FRANCISCO**

Providian Financial Bldg

201 Mission Street

12th Floor

San Francisco, CA 94105

Ph: (415) 282-2928

**BAKERSFIELD**

Cal Twin Towers

4900 California Avenue

Tower B, 2nd Floor

Bakersfield, CA  93309

Ph: (661) 469-4612

**SACRAMENTO**

770 L Street

Suite 950

Sacramento, CA 95814

Ph: (916) 492-6059

**RIVERSIDE**

Turner Riverwalk

11801 Pierce Street

Suite 200

Riverside, CA  92505

Ph: (951) 225-4097

**FRESNO**

River Bluff

8050 N. Palm Avenue

Fresno, CA  93711

Ph: (559) 400-7177

**ST. HELENA**

Offices at Southbridge

1030 Main St.

Suite 212

St. Helena, CA 94574

Ph: (707) 236-6316

**VENTURA**

**SANTA BARBARA**

**CHICO**

Barrister Executive Suites, In...

Santa Barbara O...

236 Broadway Street

**SANTA ROSA**

Fountaingrove Center

3558 Round Barn Blvd.

Suite 215

Santa, Rosa, CA 95403

Ph: (707) 236-6316

1500 Palma Dr. Ventura, CA 93003 Ph: (805) 586-3605

West Figueroa Street, Santa Barbara, CA 93101 Ph: (805) 586-2412

Suite B Chico, CA 95928 Ph: (530) 423-6774

**HAWAII**

7 Waterfront Plaza

500 Ala Moana Blvd.

Suite 400

Honolulu, HI 96813

Ph: 808-354-0112

<u>**CONFIDENTIALITY NOTICE**</u>

If you are represented by other counsel, please disregard this message and unsubscribe from our mailing list.

This electronic message contains information from **Frantz Law Group, APLC** which may be confidential or protected by the attorney-client privilege and/or the work product doctrine and is intended solely for the use of the addressee listed above. If you are neither the intended recipient nor the employee or agent responsible for delivering this electronic message to the intended recipient, you are hereby notified that any disclosure, copying, distribution or the use of the content of this electronic message is strictly prohibited. If you have received this electronic message in error, please immediately notify us by replying to this message and delete the original

message.

**James P. Frantz of Frantz Law Group, APLC is responsible for the content of this message.**

**Advertisement**

*Copyright © 2020 Frantz Law Group, APLC, All rights reserved.*
You are receiving this email because you attended one of our Porter Ranch Informational Meetings or responded to our promotional mailer.

**Our mailing address is:**
Frantz Law Group, APLC
2029 Century Park E Ste 400
Century Plaza Towers
Los Angeles, CA 90067-2905

[Add us to your address book](#)

Want to change how you receive these emails?
You can [update your preferences](#) or [unsubscribe from this list](#)



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "C"

-----Original Message-----
From: Kenneth Chiate <kenchiate@quinnemanuel.com>
Sent: Friday, January 1, 2021 6:34 PM
To: Boris Treyzon <btreyzon@actslaw.com>
Cc: Eric Winston <ericwinston@quinnemanuel.com>; James Frantz <JPF@frantzlawgroup.com>
Subject: GIRARDI BK.

BORIS:  Happy New Year, and hope 2021 will bring you and your family good health and happiness. Jim is still exploring options but i
wanted to get back to you about your suggestion that if Jim didnt want to agree at this time to an association with ACTS, it would not
be necessary for him to file pleadings to strike your filed associations in his cases, and you would agree to dismiss those pleadings.   I
see several other firms  have filed such motions to dismiss them, and hopefully Jim wont have to do so.  All he can do at this time is
seek to lift the stay (if it applies) so he can advise his clients of the status of the BK and turmoil involving GK and assure his clients he
is looking after their interests.  I think he is ethically obligated to do that, but to be prudent we are asking the BK court for its approval.
Can you assure me you are dismissing the associations you filed, and plan to do that now?  Please let me know.  I am aware you are
involved in the pending motions before the court and would like to know your response to dismissing the associations you filed as
soon as possible.  Thanks.

- Sent from my iPad Pro

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
16001 Ventura Boulevard Encino, Ca 91316

A true and correct copy of the foregoing document entitled (*specify*): Opposition of Boris Treyzon and Abir Cohen
Treyzon Salo To Trustee's Emergency Motion To Approve the Compromise With Frantz Law Group; Authorizing the
Assignment of the Estate's Interest in The Southern California Gas Leak Litigationl Authorizing the Rejection of the
Assumption and Lien Agreement; Declaration of Boris Treyzon
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
 January 29, 2021 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

[X] Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  January 29, 2021 , I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

[X] Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  01/29/2021 , I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

[✔] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 01/29/2021 | Shayan Sabeti | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                      **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION** (if needed):

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Richard D Buckley    richard.buckley@arentfox.com
- Marie E Christiansen    mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-4166@ecf.pacerpro.com
- Jennifer Witherell Crastz    jcrastz@hrhlaw.com
- Ashleigh A Danker    Ashleigh.danker@dinsmore.com, SDCMLFiles@DINSMORE.COM;Katrice.ortiz@dinsmore.com
- Clifford S Davidson    csdavidson@swlaw.com, jlanglois@swlaw.com;cliff-davidson-7586@ecf.pacerpro.com
- Lei Lei Wang Ekvall    lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Richard W Esterkin    richard.esterkin@morganlewis.com
- Timothy W Evanston    tevanston@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Eric D Goldberg    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Andrew Goodman    agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com
- Steven T Gubner    sgubner@bg.law, ecf@bg.law
- Marshall J Hogan    mhogan@swlaw.com, knestuk@swlaw.com
- Razmig Izakelian    razmigizakelian@quinnemanuel.com
- Lewis R Landau    Lew@Landaunet.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Peter J Mastan    peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
- Edith R Matthai    ematthai@romalaw.com
- Kenneth Miller    kmiller@pmcos.com, efilings@pmcos.com
- Elissa Miller (TR)    CA71@ecfcbis.com, MillerTrustee@Sulmeyerlaw.com;C124@ecfcbis.com;ccaldwell@sulmeyerlaw.com
- Eric A Mitnick    MitnickLaw@aol.com, mitnicklaw@gmail.com
- Scott H Olson    solson@vedderprice.com, scott-olson-2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- Leonard Pena    lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com
- Michael J Quinn    mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-2870@ecf.pacerpro.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Philip E Strok    pstrok@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Eric D Winston    ericwinston@quinnemanuel.com
- Christopher K.S. Wong    christopher.wong@arentfox.com, yvonne.li@arentfox.com
- Timothy J Yoo    tjy@lnbyb.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**

**Via E-mail:**

| | | |
|---|---|---|
| Andrew W Zepeda<br>James J Finsten<br>Lurie, Zepeda, Schmalz, Hogan & Martin<br>1875 Century Park E Ste 2100<br>Los Angeles, CA 90067<br>azepeda@lurie-zepeda.com<br>jfinsten@lurie-zepeda.com | Rafey Balabanian<br>Edelson PC<br>123 Townsend St Ste 100<br>San Francisco, CA 94107<br>rbalabanian@edelson.com | Nano Banc<br>25220 Hancock Ave., Suite 140<br>Murrieta, CA 92562<br>epadilla@nanobanc.com<br>pdonaldson@nanobanc.com |
| Law Finance Group, LLC<br>591 Redwood Hwy<br>Suite 1200<br>Mill Valley, CA 94941<br>info@lawfinance.com | LFG Special Investor Group, LLC<br>Finance Group Fund II<br>200 South Virginia St., 8th Floor<br>Reno, NV 89501<br>info@lawfinance.com | CT Corporation System, as Representative<br>CT Lien Solutions<br>330 N. Brand Blvd., Suite 700<br>Glendale, CA 91203<br>UCCSPREP@CSCINFO.com<br><br>**VIA E-Mail and FedEx** |
| Corporation Service Company, As Representative<br>P.O.Box 2576<br>Springfield, IL  62708<br>801 Adlai Stevenson Dr.<br>Springfield, IL 62703<br>UCCSPREP@CSCINFO.com<br><br>**VIA E-Mail and FedEx** | SMILEY WANG-EKVALL, LLP<br>Lei Lei Wang Ekvall, Esq.<br>lekvall@swelawfirm.com<br>Philip E. Strok, Esq.<br>pstrok@swelawfirm.com<br>3200 Park Center Drive, Suite 250<br>Timothy W. Evanston, State Bar<br>tevanston@swelawfirm.com<br>Costa Mesa, California 92626 | |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*