**SMILEY WANG-EKVALL, LLP**
Lei Lei Wang Ekvall, State Bar No. 163047
*lekvall@swelawfirm.com*
Philip E. Strok, State Bar No. 169296
*pstrok@swelawfirm.com*
Timothy W. Evanston, State Bar No. 319342
*tevanston@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:   714 445-1000
Facsimile:   714 445-1002

Proposed Attorneys for Elissa D. Miller,
Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| In re | Case No. 2:20-bk-21022-BR |
|---|---|
| GIRARDI KEESE, | Chapter 7 |
| Debtor. | **OMNIBUS REPLY IN SUPPORT OF TRUSTEE'S EMERGENCY MOTION FOR ORDER:** |
| | **(1) APPROVING COMPROMISE WITH FRANTZ LAW GROUP, APLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019, ETC.** |
| | **(2) AUTHORIZING THE ASSIGNMENT OF THE ESTATE'S INTERESTS IN THE SOUTHERN CALIFORNIA GAS LEAK LITIGATION FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS PURSUANT TO 11 U.S.C. § 363; AND** |
| | **(3) AUTHORIZING REJECTION OF THE ASSUMPTION AND LIEN AGREEMENT BETWEEN THE DEBTOR AND ABIR COHEN TREYZON SALO LLP PURSUANT TO 11 U.S.C. § 365** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES; SUPPLEMENTAL DECLARATION OF ELISSA D. MILLER IN SUPPORT** |

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

2

3

4

5

6

7

8

| Date: | February 2, 2021 |
| Time: | 10:00 a.m. |
| Ctrm.: | 1668 via ZoomGov |
| | 255 E. Temple Street |
| | Los Angeles, CA 90012 |

Web Address:
https://cacb.zoomgov.com/j/1614873359

| Meeting ID: | 1614873359 |
| Password: | 123456 |
| Telephone: | (669) 254 5252 (San Jose) |
| | (646) 828 7666 (New York) |

9  / / /

10  / / /

11  / / /

12  / / /

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................. 4

II. MEMORANDUM OF POINTS AND AUTHORITIES ............................... 7

    A.  The Amended Settlement Agreement and the Proposed Order
        Resolve Stillwell's and the Petitioning Creditors' Concerns .................... 7

        1.  The Trustee Has Addressed Stillwell's Concerns ............................ 7

        2.  The Trustee Has Also Addressed the Petitioning Creditors'
            Concerns ................................................................ 9

    B.  The Amended Settlement Agreement is Reasonable ................................ 12

    C.  No Party Disputes that the Trustee Has Satisfied the Requirements
        under 11 U.S.C. § 363(f) ...................................................... 14

    D.  Rejection of the Assumption Agreement is Clearly Reasonable ............... 15

    E.  The Assumption Agreement is an Executory Contract Because the
        Outstanding Obligations are Material .......................................... 16

    F.  The Debtor's Clients Will Not Be Prejudiced by Rejection ..................... 18

    G.  Emergency Relief is Necessary ................................................. 19

III. CONCLUSION .................................................................. 20

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Agarwal v. Pomona Valley Med. Group (In re Pomona Valley Med. Group)*, 476
    F.3d 665 (9th Cir. 2007) ........................................................................... 15

*Banner v. Bagen (In re Bagen)*, 186 B.R. 824 (Bankr. S.D.N.Y. 1984) ..................... 11, 12

*Goodwin v. Mickey Thompson Ent. Group, Inc. (In re Mickey Thompson Ent.
    Group, Inc.)*, 292 B.R. 415 (B.A.P. 9th Cir. 2003) .................................. 12

*In re World Health Alternatives, Inc.*, 344 B.R. 291 (Bankr. D. Del. 2006) ...................... 12

*Lubrizol Enter. v. Richmond Metal Finishers*, 756 F.2d 1044 (4th Cir. 1985) .................. 15

*Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652 (2019) ........................... 15

*Ulrich v. Walker (In re Boates)*, 551 B.R. 448 (B.A.P. 9th Cir. 2016) ......................... 17, 18

## **STATUTES**

11 U.S.C. § 363 ................................................................................................. 3, 21

11 U.S.C. § 363(f) .............................................................................................. 5, 14

11 U.S.C. § 365 ...................................................................................................... 3

11 U.S.C. § 365(a) ....................................................................................... 5, 15, 18

FRBP 9019 ...................................................................................................... 3, 21

## **RULES**

CA Rule of Professional Conduct 1-400 ................................................................. 19

CA Rule of Professional Conduct 2-100 ................................................................. 19

Court Manual Rule 3.2(d)(1) .................................................................................. 4

Court Manual Rule 3.2(d)(3) .................................................................................. 4

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

2       Elissa D. Miller, the chapter 7 trustee (the "Trustee") for the bankruptcy estate of

3  Girardi Keese (the "Estate"), submits this omnibus reply ("Reply") in support of the

4  Trustee's *Emergency Motion for Order: (1) Approving Compromise with Frantz Law*

5  *Group, APLC, Pursuant to Federal Rule of Bankruptcy Procedure 9019; (2) Authorizing*

6  *the Assignment of the Estate's Interests in the Southern California Gas Leak Litigation*

7  *Free and Clear of Liens, Claims and Interests Pursuant to 11 U.S.C. § 363; and (3)*

8  *Authorizing Rejection of the Assumption and Lien Agreement Between the Debtor and*

9  *Abir Cohen Treyzon Salo LLP Pursuant to 11 U.S.C. § 365* (the "Motion").[1]   The Reply

10  addresses the following pleadings received by the Trustee in response to the Motion:

11  • Stillwell Madison, LLC's ("Stillwell") *Limited Objection to Trustee's*

12     *Motion to Approve Compromise with Frantz Law Group* [Docket No.

13     139] and *Notice of Errata Regarding Its Limited Objection to*

14     *Trustee's Motion to Approve Compromise with Frantz Law Group*

15     [Docket No. 144][2];

16  • Petitioning Creditors' *Limited Opposition of Petitioning Creditors to*

17     *Elissa D. Miller, Chapter 7 Trustee's Emergency Motion for Order:*

18     *(1) Approving Compromise with Frantz Law Group, APLC,*

19     *Pursuant to Federal Rule of Bankruptcy Procedure 9019; (2)*

20     *Authorizing the Assignment of the Estate's Interests in the Southern*

21     *California Gas Leak Litigation; and (3) Authorizing Rejection of the*

22     *Assumption and Lien Agreement Between the Debtor and Abir*

23     *Cohen Treyzon Salo LLP Pursuant to 11 U.S.C. § 365* [Docket No.

24     140]; and

25

26  _____

   [1]    Unless otherwise defined in this Reply, capitalized terms used herein shall have the meaning
   ascribed to them in the Motion.

27

28  [2] On February 1, 2021, Virage SPV 1, LLC filed a *Limited Joinder in Response by Stillwell Madison,
   LLC to Motion to Approve Compromise with Frantz Law Group* [Docket No. 147].

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    • Abir Cohen Treyzon Salo LLP's and Boris Treyzon's *Opposition of Boris*

2    *Treyzon and Abir Cohen Treyzon Salo to Trustee's Emergency Motion to*

3    *Approve the Compromise with Frantz Law Group; Authorizing the*

4    *Assignment of the Estate's Interest in the Southern California Gas Leak*

5    *Litigation; Authorizing the Rejection of the Assumption and Lien Agreement*

6    [Docket No. 145].[3]

7

8    **I.    INTRODUCTION**

9    The Trustee's Motion is uncomplicated and the requested relief straightforward.

10   The Trustee seeks approval of the Settlement Agreement, as fully amended, restated

11   and superseded by the Amended Settlement Agreement attached hereto as Exhibit "1"

12   (the "Amended Settlement Agreement"), entered into with Frantz Law Group, APLC

13   ("Frantz")[4].  As described more fully in the Motion, the Amended Settlement Agreement

14   concerns the continued uninterrupted representation of Debtor's clients, plaintiffs in the

15   Southern California Gas Leak Litigation and the Debtor's right to fees associated

16   therewith.  The standard to approve the Amended Settlement Agreement is clearly

17   defined.  To approve the Amended Settlement Agreement, the Court must ultimately find

18   that the Amended Settlement Agreement is fair and reasonable, giving deference to the

19   Trustee's business judgment.  That standard is easily satisfied here.  The Amended

20   Settlement Agreement is also in the best interest of the Estate.  As set forth in the Motion,

21   the Trustee met with different law firms to discuss the assignment of the Estate's interest

22

23   ───────────────
     [3]   This opposition was filed nearly six and a half hours after the Court's deadline.  Although Boris
     Treyzon signed the opposition on behalf of himself and ACTS, the opposition was filed using the CM/ECF

24   credentials of counsel for Petitioning Creditors whose name does not appear anywhere in the opposition.
     *See* Court Manual Rule 3.2(d)(1) ("No registered CM/ECF User shall knowingly permit or cause to permit

25   his or her login and password to be utilized by anyone…*CM/ECF user logins are not transferable.*")
     (emphasis in original); *see also* Court Manual Rule 3.2(d)(3) (providing that the Court may suspend or

26   revoke the password of a CM/ECF's user password for failure to comply with provisions of the Court
     manual, failing to adequately protect password, or other misuse of the CM/ECF system, among other
     reasons).

27
     [4]  The Settlement Agreement attached to the Motion was amended and restated to address the

28   concerns raised by the creditors as described hereinbelow.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    in the Southern California Gas Leak Litigation.  From these law firms, the Trustee

2    received a range of offers where the Estate would receive anywhere from 10% to 25% of

3    the recovered attorneys' fees.  Abir Cohen Treyzon Salo LLP ("ACTS") also participated

4    in discussions with the Trustee, proposing an offer at the lower end of the 10% to 25%

5    range.  Ultimately, Frantz, the Debtor's existing co-counsel for the clients in the Southern

6    California Gas Leak Litigation, presented the highest and best offer, offering the Estate a

7    45% interest in all recovered attorneys' fees.  In her business judgment, the Trustee

8    decided to accept Frantz's offer as it was the highest and best offer and in the best

9    interest of the Estate and the Debtor's clients.  Without the compromise, the Estate's

10    interest in the Southern California Gas Leak Litigation could arguably be an undefined

11    quantum meruit claim; a result that is substantially inferior economically and would likely

12    lead to a contested prove-up process.  Thus, the Court should approve the Amended

13    Settlement Agreement.

14        In order to effectuate the Amended Settlement Agreement, the Trustee requests

15    that the assignment of the Estate's interest be free and clear of liens, claims and interests

16    under 11 U.S.C. § 363(f).  The Trustee also seeks rejection of the Assumption and Lien

17    Agreement ("Assumption Agreement") with ACTS pursuant to 11 U.S.C. § 365(a).  No

18    party disputes that the Trustee has met the requirements under 11 U.S.C. § 363(f).  As

19    with approval of a compromise, the standard to review the Trustee's rejection of the

20    Assumption Agreement is similarly clear.  In considering whether to authorize a rejection,

21    the Court should authorize rejection unless rejection is clearly not based on sound

22    business judgment or is based on bad faith.  In her business judgment, the Trustee has

23    determined that rejection of the Assumption Agreement is necessary to facilitate

24    implementation of the Amended Settlement Agreement and prevent further interference

25    from ACTS, especially given the lack of any apparent consideration in favor of the Debtor

26    or the Estate in the Assumption Agreement.  As such, the Court should authorize the

27    rejection.

28

2854316.2

REPLY

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    The Trustee's request for emergency relief is entirely warranted.  Upset that the

2    Trustee acted in the best interest of the Estate by selecting the highest and best offer,

3    which offer was not from ACTS, ACTS blatantly engaged in an underhanded client

4    solicitation effort that has led to tremendous confusion among clients that are already

5    jointly represented by the Debtor and Frantz.  In fact, some clients were misled into

6    engaging ACTS.[5]  When the Trustee requested that ACTS stop its deceptive solicitations

7    that violate the California Rules of Professional Conduct *and* the automatic stay, ACTS

8    remained defiant.  Rather than stop its violations, ACTS doubled-down and continued its

9    deception to further its self-interest, to the detriment of the Estate's creditors and the

10   Debtor's and Frantz's joint clients.  Now, ACTS is attempting to justify its misdeeds by

11   claiming it is simply abiding by its obligations under the Assumption Agreement, an

12   agreement that ACTS acknowledged was the subject of the freeze order issued by the

13   District Court in Illinois, which was only lifted when the Trustee was appointed and the

14   automatic stay was in place to protect the Estate's assets from being assigned or

15   dissipated.  ACTS' brazen disregard for the automatic stay and its ethical violations

16   necessitate expedited relief.[6]

17       In sum, the Trustee has conducted her due diligence and determined in her

18   business judgment that the Amended Settlement Agreement, which results in the highest

19   recovery to the Estate, is reasonable.  The Trustee has satisfied her burden that the

20   assignment of the Estate's interest in the Southern California Gas Leak Litigation should

21   be free and clear of liens, claims, and interests.  Finally, the Trustee's request to reject

22   the Assumption Agreement with ACTS is likewise reasonable because it allows the

---

[5]    As detailed in the Trustee's motion for a temporary restraining order [Docket No. 3, Adv No. 2:21-ap-01019-BR] and papers filed in support thereof, the Trustee fully acknowledges that the clients have the right to choose their own counsel.  However, the Trustee is troubled by ACTS' misleading and unethical solicitations implying that a court has authorized ACTS to act on behalf of these clients, and that the clients are not represented.

[6]    It is still too early to tell the magnitude or extent of damages suffered by the Estate.  The Trustee reserves all rights and claims against ACTS for any damages caused by ACTS in connection with the improper solicitation of the Debtor's and Frantz's clients.

1  Trustee to effectuate the Amended Settlement Agreement and because ACTS is acting

2  under the mistaken belief that it can continue doing what it is doing in direct violation of

3  the automatic stay.  Accordingly, the Court should grant the Trustee's Motion.

4

5  **II.**    **MEMORANDUM OF POINTS AND AUTHORITIES**

6      **A.**    **The Amended Settlement Agreement and the Proposed Order Resolve**

7          **Stillwell's and the Petitioning Creditors' Concerns**

8          In their limited objection and opposition, Stillwell and the Petitioning Creditors pose

9  several questions regarding the Settlement Agreement with Frantz.  Since receiving the

10  comments from Stillwell and the Petitioning Creditors, the Trustee and Frantz have

11  entered into an Amended Settlement Agreement which supersedes the prior Settlement

12  Agreement, to address their concerns.  A true and correct copy of the Amended

13  Settlement Agreement is attached hereto as Exhibit "1."  For convenience, a blackline

14  version comparing the original Settlement Agreement to the Amended Settlement

15  Agreement is attached hereto as Exhibit "2."  To further alleviate any concerns, attached

16  as Exhibit "3" is the proposed order the Trustee plans to lodge if the Motion is granted.

17  The specific questions and concerns of Stillwell and the Petitioning Creditors are listed

18  below and discussed.

19          **1.**    **The Trustee Has Addressed Stillwell's Concerns**

20          In their opposition, Stillwell raised the following questions and concerns, with the

21  Trustee's responses below:

22      • ***There is no release of Frantz's potential claims against the Estate***

23          The Amended Settlement Agreement provides for a mutual release, including a

24  release of any claims Frantz may have against the Estate.  *See* ¶ 22, Amended

25  Settlement Agreement, Ex. "1."

26      • ***There is no language that the existing liens against the Debtor's***

27          ***interest in the Southern California Gas Leak Litigation will attach to***

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

*the Estate Allocation to the same extent and priority as of the Petition Date*

The Amended Settlement Agreement now clarifies that "[a]ny liens, claims, encumbrances, or other interests of the Debtor's creditors or other entities that may assert an interest in the Debtor's right to attorneys' fees or other compensation relating to the Clients shall attach only to the Estate Allocation, to the same extent, priority, validity (if any) that such liens, claims, encumbrances or other interests had prior to consummation of this Agreement, and subject to any claims or defenses the Trustee or the Estate may have."  *See* ¶ 5, Amended Settlement Agreement, Ex. "1."  Likewise, the proposed order attached as Exhibit "3" incorporates this change.

- *There is no language limiting Frantz's right to assign all or part of its responsibility for the Southern California Gas Leak Litigation to other counsel, and whether counsel would be entitled to receive any portion of the recovered fees*

The Amended Settlement Agreement now provides that neither Frantz nor the Trustee may voluntarily assign their interest in the Joint Rep. Fees recovered from the Southern California Gas Leak Litigation unless such assignment or other transfer (i) by Frantz is solely out of the Frantz Allocation, or (ii) by the Trustee (and with Bankruptcy Court approval) is solely out of the Estate Allocation.  Any such assignment shall be subject to the reasonable consent of the other party.  *See* ¶ 11, Amended Settlement Agreement, Ex. "1."

- *There is no provision that allows the Trustee to review the costs that Frantz has elected to cover or that Frantz's costs be reasonable*

The Amended Settlement Agreement provides that Costs must be reasonable and the documentation of the Costs shall be provided to the Trustee.  *See* Amended Settlement Agreement at ¶ 1, Ex. "1."  The Amended Settlement Agreement now provides that "[n]either Frantz nor the Trustee may voluntarily assign their interest in the Joint Rep. Fees recovered from the Southern California Gas Leak Litigation unless such

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   assignment or other transfer (i) by Frantz is solely out of the Frantz Allocation, or (ii) by

2   the Trustee (and with Bankruptcy Court approval) is solely out of the Estate Allocation.

3   Any such assignment shall be subject to the reasonable consent of the other party."  *See*

4   Amended Settlement Agreement at ¶ 11, Ex. "1."  Moreover, if there is a dispute

5   regarding the Costs which would affect the Estate Allocation, the Amended Settlement

6   Agreement provides a mechanism for the Trustee to object and for the Trustee and

7   Frantz to bring the dispute before this Court.  *See* ¶ 3, Amended Settlement Agreement,

8   Ex. "1."

9   • ***It should be made clear that Frantz is not entitled to interest or other***

10  ***charges for the advancement of cash***

11  The definition of Costs in the Amended Settlement Agreement now clarifies that

12  "[n]o interest shall accrue or be payable on behalf of" Costs.  *See* Amended Settlement

13  Agreement at ¶ 1, Ex. "1."

14  • ***Whether any referral fee agreements exist and the terms of potential***

15  ***referral fee agreements***

16  The Trustee and Frantz continue to investigate the scope and extent of the referral

17  fee agreements.  Currently, they are aware of 1,243 referral fee agreements in place that

18  are for either 25% or 30% of the attorneys' fees recovered.  These referral fees will be

19  deducted from the contingency fee before the remaining fees will be divided pursuant to

20  the Amended Settlement Agreement.  *See* Supplemental Declaration of Elissa D. Miller.

21  Accordingly, with these changes in the Amended Settlement Agreement, the

22  Trustee has addressed the concerns raised by Stillwell.

23  **2.**   **The Trustee Has Also Addressed the Petitioning Creditors'**

24  **Concerns**

25  Many of the Petitioning Creditors' concerns overlap with the concerns raised by

26  Stillwell.  Thus, the Trustee addresses only the Petitioning Creditors' questions that she

27  has not already addressed above as follows:

28  • ***Did the Trustee review any retainers?***

2854316.2                                    9                                    REPLY

Yes.  On January 13, 2021, the Trustee and Frantz entered into a *Stipulation Between Frantz Law Group, APLC and Interim Trustee Regarding Protection of Documents* [Docket No. 72] (the "Stipulation").  On January 14, 2021, the Bankruptcy Court entered an order approving the Stipulation [Docket No. 77].  Pursuant to the Stipulation, the Trustee received and reviewed certain client engagement and retainer agreements provided by Frantz.  *See* Supplemental Declaration of Elissa D. Miller.

- *In interviewing law firms to assign the Estate's interest in the Southern California Gas Leak Litigation, did the Trustee interview law firms with experience in mass tort litigation?*

Yes.  The Trustee interviewed several law firms, and all claimed to have experience in mass tort litigation, with one firm currently having a lead role in the Southern California Gas Leak Litigation.  In addition, one of the law firms interviewed by the Trustee, at the suggestion of a creditor, was ACTS.  *See* Supplemental Declaration of Elissa D. Miller.

- *There is no mention of the form or nature of the notice that Frantz will provide to the Trustee regarding the Estate Allocation.  Will there be a breakdown in the fees to be recovered by each case so that the Trustee can review whether the calculation of the Estate Allocation is proper?*

The Amended Settlement Agreement provides that Frantz shall provide notice to the Trustee of the proposed allocation of Joint Rep. Fees to the Estate.  Under the Amended Settlement Agreement, if the Trustee determines that Frantz's notice is insufficient, the Trustee may seek prompt resolution of the dispute through the Bankruptcy Court.  *See* ¶ 3, Amended Settlement Agreement, Ex. "1."

- *Has the Trustee determined whether there are lenders or creditors that may have a lien in the proceeds to be received by the Trustee and how much they are owed?*

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

1   Currently, the Debtor's bankruptcy case is in its beginning stages.  The Trustee is

2   only now beginning to get her arms around the massive amount of physical and

3   electronic files maintained by the Debtor.  The Debtor was required to file schedules on

4   January 27, 2021 but has failed to do so, again putting the Trustee at a disadvantage.

5   Because no schedules have been filed and because the Debtor's case is in its infancy,

6   the Trustee has not yet had the opportunity to complete her review of the claims of

7   lenders and other lienholders, although the Trustee has contacted each of the lenders of

8   which she is aware and requested their loan documents, which have been received and

9   are being reviewed.  *See* Supplemental Declaration of Elissa D. Miller.  The Trustee

10  submits that this issue is irrelevant to whether the settlement should be approved as it

11  only affects the proceeds, if any, that the Estate may receive.

12  • ***Has any determination or estimation been made as to the amount of***

13  ***the Debtor's lien?***

14  As noted above, the Debtor's bankruptcy case is in its infancy.  The Trustee has

15  not yet had an opportunity to complete her evaluation, analysis, and calculation of any

16  lien the Estate may assert in the Southern California Gas Leak Litigation.  It is difficult to

17  imagine a scenario where, if the Estate is limited to a quantum meruit claim as suggested

18  by ACTS, that the 45% attorneys' fee allocation to the Estate under the Amended

19  Settlement Agreement wouldn't be significantly higher that the Estate's quantum meruit

20  lien.  The Amended Settlement Agreement solves this problem with a fixed attorneys' fee

21  percentage recovery.  *See* Supplemental Declaration of Elissa D. Miller.

22  As to the rejection of the Assumption Agreement with ACTS, the Petitioning

23  Creditors seem to suggest that the Assumption Agreement may not be an executory

24  contract because it provides for the transfer of client files which may not be property of

25  the Estate.  Whether or not the client files are property of the estate is a completely

26  distinct issue and is irrelevant to rejection. *See Banner v. Bagen (In re Bagen)*, 186 B.R.

27  824, 829 (Bankr. S.D.N.Y. 1984) ("Whether an executory contract may be assumed

28  under Code § 365 has no bearing on whether a debtor's right to future payment under the

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  contract is property of the estate.").  For the reasons outlined in the Motion and as

2  explained further below, the Assumption Agreement is an executory contract that should

3  be rejected.

4      The Trustee has also considered the potential of rejection damages claims that

5  may be asserted by ACTS.  As made clear in her Motion, the Trustee has not conceded

6  that the Assumption Agreement with ACTS is non-avoidable, enforceable, or even valid,

7  and is not waiving such arguments.  Further, the Trustee makes clear in her complaint

8  against ACTS and Treyzon that she is not waiving any arguments concerning the

9  Assumption Agreement.  *See* Complaint at ¶ 24, n. 2, Docket No. 1, Adv. Case No. 2:21-

10  ap-01019-BR ("The Trustee is investigating whether the [Assumption] Agreement is

11  avoidable or void as a fraudulent transfer or voidable on other grounds such as undue

12  influence and reserves the right to either amend the complaint to add these and other

13  causes of action or file a separate action on the [Assumption] Agreement.").  Rejection in

14  no way precludes the Trustee from seeking to disallow any rejection damages that may

15  be asserted by ACTS.  *See* Supplemental Declaration of Elissa D. Miller.

16      It is odd that the Petitioning Creditors, who appear to hold only unsecured claims,

17  would want to see the Estate be bound by the Assumption Agreement because, on its

18  face, the Debtor received nothing for it, regardless of whether there are proceeds from

19  cases that the Debtor had been handling.  It is equally odd that they seem to attempt to

20  equate the misconduct by ACTS with the relief Frantz sought in its relief from stay

21  motion, which the Trustee views as worlds apart.[7]

22      **B.    The Amended Settlement Agreement is Reasonable**

23      A bankruptcy court "generally gives deference to a trustee's business judgment in

24  deciding whether to settle a matter."  *Goodwin v. Mickey Thompson Ent. Group, Inc. (In*

25

26  [7]    Counsel for the Petitioning Creditors is the person who purportedly filed the pleadings signed by
Mr. Treyzon on behalf of himself and ACTS, which is not permitted by this Court's local rules.  Moreover,

27  Mr. Treyzon submitted a declaration in support of the Petitioning Creditors' motion to appoint an interim
trustee.  These facts suggest that there may be a relationship between counsel for the Petitioning Creditors

28  and Mr. Treyzon/ACTS that the Trustee reserves the right to investigate.

1    *re Mickey Thompson Ent. Group, Inc.)*, 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003).  "The

2    settlement should be in the best interests of the estate…and 'reasonable, given the

3    particular circumstances of the case.'"  *See id.* (internal citations omitted).  The court

4    need not conclude that the proposed settlement is the best possible compromise, but

5    only that the settlement is "within the reasonable range of litigation possibilities."  *See In*

6    *re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).

7          The Amended Settlement Agreement is reasonable and in the best interest of the

8    Estate.  The Trustee has extensively discussed the factors the Court should consider in

9    approving the Amended Settlement Agreement with Frantz in her Motion.  Notably, no

10   party disputes that these factors weigh in favor of approving of compromise.  In addition,

11   no party has argued that Frantz, the Debtor's co-counsel for the 8,202 clients in the

12   Southern California Gas Leak Litigation, is unqualified to represent the Debtor's clients in

13   the Southern California Gas Leak Litigation.  Frantz and the Debtor have been

14   representing the Southern California Gas Leak Litigation Clients for over 5 years.

15         The Amended Settlement Agreement is the best outcome for the Estate.  Under

16   the Amended Settlement Agreement, the Trustee will receive 45% of any fees and costs

17   recovered from the Southern California Gas Leak Litigation.  Although the agreement

18   between the Debtor and Franz initially provided for 50% of the fees to the Debtor, now

19   that the Debtor has ceased operations, it may only be entitled to an undefined quantum

20   meruit claim.  Stillwell estimates that this 5% reduction may result in millions lost to the

21   Estate, but the Trustee submits that 45% of the possible contingency fees is substantially

22   more than a quantum meruit claim.

23         Moreover, the other offers the Trustee received would result in even greater loss

24   to the Estate.  As noted in the Motion, the Trustee and her counsel interviewed multiple

25   law firms, including mass tort law firms already involved in the Southern California Gas

26   Leak Litigation as well as those that are not, and received several offers.  These offers

27   provided that the Estate would receive anywhere from 10% to 25% of the recovered fees

28   and costs for the Southern California Gas Leak Litigation.  If the Trustee received the

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

1   next best offer of 25%, the Estate's losses would be five times greater than the current

2   5% reduction.  Assuming Stillwell's estimate is true, any other offer would likely result in

3   the Estate losing tens of millions.  The Trustee's decision to enter into the Amended

4   Settlement Agreement avoids this loss.  The Trustee has worked extensively to reach the

5   best result for the Estate, only accepting the offer from Frantz after meeting with the other

6   firms, interviewing attorneys who are or were involved in the Southern California Gas

7   Leakage Litigation regarding the status of the litigation and the firm's and Frantz's

8   respective roles in the litigation, and determining Frantz's offer was the highest and best

9   and least disruptive to the joint 8,202 clients.  Accordingly, it is clear the Amended

10  Settlement Agreement is within the reasonable range of litigation possibilities and should

11  be approved.

12          ACTS attempts to cast doubt on the Trustee's judgment, arguing that the

13  "Agreement fails to explain why the Trustee has given away 5%, which given the value of

14  these cases could amount to a loss of millions of dollars to the Estate."  *See* ACTS

15  Opposition at 6, lines 10-11 at Docket No. 145.  ACTS' concern is disingenuous and

16  meritless.  As detailed above and in the Motion, the Trustee accepted the highest offer.

17  ACTS fails to mention that its own offer to the Trustee was considerably lower.  Notably,

18  *ACTS' offer was at the lower end of the 10% to 25% range* of offers the Trustee received.

19  Moreover, ACTS is counsel for a creditor that purports to hold a secured claim against

20  the Debtor.  If the Trustee accepted ACTS' offer instead, the Estate would receive

21  significantly less, and ACTS' own client would receive a smaller distribution.  The Trustee

22  is looking out for the best interests of all creditors, including ACTS' client, even when

23  ACTS is not.  Accordingly, the Court should find that the Amended Settlement Agreement

24  is fair and reasonable.

25          **C.     No Party Disputes that the Trustee Has Satisfied the Requirements**

26                   **under 11 U.S.C. § 363(f)**

27          The Trustee has satisfied the requirements under 11 U.S.C. § 363(f) to assign the

28  Estate's interest free and clear of any liens, claims, and interests.  As the Court's docket

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  reflects, numerous parties have responded to the Trustee's motion.  No party opposed

2  this request.  As demonstrated in the Motion, the Trustee has met her burden under 11

3  U.S.C. § 363(f).  Accordingly, the Court should authorize the assignment of the Estate's

4  interest free and clear of any liens, claims, and interests.

5          **D.**      **Rejection of the Assumption Agreement is Clearly Reasonable**

6          Section 365(a) authorizes a trustee to reject an executory contract, and the

7  bankruptcy court generally approves the trustee's choice to reject "under the 'deferential

8  business judgment' rule."  *Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652,

9  1658 (2019).  Under the business judgment rule, the "bankruptcy court should presume

10  that the [trustee] acted prudently, on an informed basis, in good faith, and in the honest

11  belief that the action taken was in the best interests of the bankruptcy estate."  *See*

12  *Agarwal v. Pomona Valley Med. Group (In re Pomona Valley Med. Group)*, 476 F.3d 665,

13  670 (9th Cir. 2007).  Further, the court "should approve the rejection of an executory

14  contract…unless it finds that the [trustee's] conclusion that rejection would be

15  'advantageous is so manifestly unreasonable that it could not be based on sound

16  business judgment, but only on bad faith, or whim or caprice.'"  *Id. citing Lubrizol Enter. v.*

17  *Richmond Metal Finishers*, 756 F.2d 1044, 1047 (4th Cir. 1985).

18          The Trustee's decision to reject the Assumption Agreement with ACTS is clearly

19  reasonable.  Rejection of the Assumption Agreement will allow the Trustee to effectuate

20  the Amended Settlement Agreement, which is in the best interest of the Estate.  Further,

21  no party has asserted that the Trustee's decision to reject the contract is being made in

22  bad faith, whim, or caprice.  The Trustee has acted prudently and in good faith in the best

23  interests of the Estate.  By simple example, if the Trustee were to assume the

24  Assumption Agreement, the Estate would only be entitled to a quantum meruit claim in

25  the Southern California Gas Leak Litigation, a claim that exists even if the Assumption

26  Agreement never existed.  The Debtor got nothing more than what it already had when it

27  entered into the Assumption Agreement.  Conversely, rejection of the Assumption

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

1    Agreement will allow the Trustee, on behalf of the Estate, to receive 45% of the attorneys'

2    fees recovered rather than its quantum meruit claim in an undefined amount.

3         The Trustee has also established that the Assumption Agreement is an executory

4    contract.  As set forth in the Motion, there are material outstanding obligations under the

5    Assumption Agreement.  In particular, the obligations to transfer the files and client

6    information are both material and outstanding.  Furthermore, ACTS and Treyzon have

7    each conceded that the obligations under the Assumption Agreement are outstanding.

8    *See* Declaration of Boris Treyzon at ¶  4, Ex. "2" to Motion; *see also* ACTS Opposition to

9    Emergency Motion for Temporary Restraining Order at 8, lines 18-19, Adv No. 2:21-ap-

10   01019-BR, Docket No. 21 ("Until such time the Agreement stops being operative

11   Defendants are within their rights and *obligation to continue their performance.*")

12   (emphasis added).  For these reasons, the Court should authorize the rejection of the

13   Assumption Agreement.

14       E.     **The Assumption Agreement is an Executory Contract Because the**

15             **Outstanding Obligations are Material**

16        The obligations in the Assumption Agreement are both outstanding and material

17   terms.  Thus, the Trustee can reject the Assumption Agreement as an executory contract.

18        Mr. Treyzon told the Illinois District Court on December 16, 2020 that the client file

19   transfers contemplated by the Assumption Agreement had stopped due to the District

20   Court's December 14 freeze order.  *See* December 16 Transcript at 23:8-11 (attached to

21   the Supplemental Frantz Declaration [AP ECF 19] as Ex. E).  Thus, a central term of the

22   Assumption Agreement was not fully consummated.  Mr. Treyzon asked the District Court

23   to permit the file transfers to continue, but the District Court denied his request.  *Id.* at

24   24:3-22.  Since the freeze remained in effect until the Petition Date, ACTS could not have

25   completed the file transfers.

26        Moreover, the Assumption Agreement made clear that the transactions

27   contemplated by it were "subject to client consent."  ACTS has failed to produce evidence

28   of any client consents – not one of the more than 8,000 clients in the Southern California

2854316.2                                   16                                   REPLY

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   Gas Leak Litigation.  Without client consent, none of the purported transfers of client files

2   and personal information is effective.  Whatever obligations the Debtor had remain

3   outstanding.

4          ACTS' reliance on *Ulrich v. Walker (In re Boates)*, 551 B.R. 448 (B.A.P. 9th Cir.

5   2016) is misplaced.[8]  In *Boates*, the debtor paid a $60,000 flat fee retainer to a law firm to

6   defend against a nondischargeability proceeding.  The chapter 7 trustee brought an

7   adversary proceeding to recover the $60,000 flat fee retainer.  The trustee argued that

8   the retainer agreement was an executory contract, and that rejection of the retainer

9   agreement entitled the estate to the entire $60,000 fee under binding Ninth Circuit

10  authority. The bankruptcy court determined that the retainer agreement was not

11  executory.  Ultimately, the BAP reversed the bankruptcy court.

12         On appeal, the trustee argued that the retainer agreement was executory because

13  the debtor had a duty to cooperate with his defense and to pay the law firm's costs.  The

14  BAP ultimately held that the debtor's duty to pay the law firm's costs rendered the retainer

15  agreement executory.  However, the BAP noted that the debtor's duty to cooperate in his

16  defense was not a written term, but even if it was, it would be immaterial.  In reaching this

17  conclusion, the BAP reasoned that the debtor's duty to cooperate was not material

18  because the law firm entered into the retainer agreement to be paid its fees and costs.

19  The law firm did not enter into the retainer agreement for the debtor's cooperation.  Thus,

20  the BAP reasoned, even if this term existed, it would not be a material outstanding

21  obligation.

22         ACTS flatly asserts that any term requiring a party to cooperate cannot be a

23  material obligation.  This contention misconstrues the BAP's decision in *Boates*.  In

24  *Boates*, the BAP's reasoning focused on the type of agreement—a retainer agreement—

25  in reaching its conclusion.  The BAP did not hold that any clause requiring cooperation

---

26   [8]   ACTS and Treyzon repeatedly state that the Ninth Circuit decided this case.  This is incorrect.  The

27  Bankruptcy Appellate Panel of the Ninth Circuit issued this decision.  Thus, the case is persuasive, not
binding authority.  *See Rinard v. Positive Inv., Inc. (In re Rinard)*, 451 B.R. 12, 21 (Bankr. C.D. Cal. 2011)

28  ("BAP decisions are not binding on bankruptcy courts…").

1    cannot be material.  Rather, the BAP held that the purported cooperation clause in the

2    retainer agreement at issue did not render that specific agreement executory.

3        Here, the fact that the Assumption Agreement was entered into by ACTS and the

4    Debtor to facilitate the transfer of cases to ACTS is relevant.  Specifically, the Assumption

5    Agreement provides that the "responsibility for continued prosecution of certain pending

6    cases shall be transferred from [the Debtor] to ACTS in consideration for agreement from

7    ACTS to undertake representation of these cases."  *See* Assumption Agreement, Ex. "3"

8    to Motion.  The Assumption Agreement further provides the parties "agree to cooperate in

9    the effort of ACTS to obtain the informed consent of Clients that their matters may be

10   transferred from [the Debtor] to ACTS" and to "*work jointly* to obtain consent from clients

11   on cases being transferred…" *See* Assumption Agreement at ¶ 6, Ex. "3" to Motion

12   (emphasis added).

13       These obligations of the Debtor are material.  Here, the Debtor and ACTS entered

14   into the Assumption Agreement so that the Debtor would transfer cases to ACTS.  ACTS

15   bargained for the transfer of the Debtor's cases, and also for the Debtor's cooperation

16   and assistance in transferring the cases to ACTS.  The Debtor's obligation to assist in

17   obtaining the clients' informed consent to transfer the cases to ACTS is clearly material.

18   Without the Debtor's cooperation, the transfer of cases contemplated under the

19   Assumption Agreement would not occur.  Moreover, unlike *Boates*, the language is

20   expressly provided for in the Assumption Agreement.  Thus, because these obligations

21   are material and outstanding, the Assumption Agreement is an executory contract subject

22   to rejection under 11 U.S.C. § 365(a).

23       **F.    The Debtor's Clients Will Not Be Prejudiced by Rejection**

24       Rejection of the Assumption Agreement will not prejudice the Debtor's clients.

25   ACTS suggests that if the Assumption Agreement is rejected, numerous clients of the

26   Debtor will be unrepresented and prejudiced.  ACTS' statement is false.  The Amended

27   Settlement Agreement will allow Frantz to continue its representation of a large portion of

28   the Debtor's clients, if the clients so choose.  Moreover, the Trustee is continuing to

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 ● Fax 714 445-1002

1    discuss the transfer of the remainder of the Debtor's pending cases to other firms, with

2    the Court's approval, to protect the Debtor's clients and has signed numerous

3    substitutions of attorney for clients.  *See* Supplemental Declaration of Elissa D. Miller.

4    The clients will not be prejudiced by a rejection of an Assumption Agreement that ACTS

5    admits was subject to the freeze order issued by the District Court in Illinois and now the

6    automatic stay.  The wholesale transfer of clients without any consideration of the clients'

7    cases and without any consideration to the Estate—that one court has already found to

8    be suspect—is not beneficial to the Estate or the Debtor's clients.

9        **G.    Emergency Relief is Necessary**

10        The Trustee's request for emergency relief is necessary because of ACTS'

11    repeated violations of the California Rules of Professional Conduct and the automatic

12    stay.  If left unchecked, ACTS' exploitation of clients will harm the Estate.  Most critically,

13    emergency relief is necessary to prevent further confusion for the Debtor's clients.  Since

14    the Trustee entered into the Settlement Agreement with Frantz (and likely before), ACTS

15    has repeatedly made unethical overtures to clients jointly represented with Frantz.

16    Attorneys cannot communicate with parties who are represented by counsel.  *See*

17    California Rules of Professional Conduct 1-400 and 2-100.  Despite the Trustee's request

18    that ACTS cease its improper communications and stay violations, ACTS has continued

19    to deceive clients into retaining them.  Currently, clients have been left distressed and

20    confused concerning ACTS' violations.  Clients are unsure about who represents them,

21    and how ACTS obtained their contact information.  The clients expressed these fears

22    directly to the Trustee at the town hall meeting conducted on January 25, 2021.  *See*

23    Supplemental Declaration of Elissa D. Miller.  Because ACTS is refusing to stand down

24    from its unethical actions and violations of the automatic stay, emergency relief is

25    necessary to protect the Estate.

26    / / /

27    / / /

28    / / /

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

III.    **CONCLUSION**

2        For the foregoing reasons, the Trustee requests that the Court enter an order: (a)

3   granting the relief requested in the Motion; and (b) approving the Amended Settlement

4   Agreement attached hereto as Exhibit "1."

5

6   DATED:  February 1, 2021              SMILEY WANG-EKVALL, LLP

7

8                                        By:      */s/ Lei Lei Wang Ekvall*
                                         _____
9                                        LEI LEI WANG EKVALL
                                         Proposed Attorneys for Elissa D. Miller,
10                                       Chapter 7 Trustee

11

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **SUPPLEMENTAL DECLARATION OF ELISSA D. MILLER**

2    I, Elissa D. Miller, declare as follows:

3    1.    I am the duly appointed Chapter 7 Trustee for the bankruptcy estate of

4 Girardi Keese.  I also a partner at SulmeyerKupetz.  I know each of the following facts to

5 be true of my own personal knowledge, except as otherwise stated and, if called as a

6 witness, I could and would competently testify with respect thereto.  I make this

7 declaration in support of the omnibus reply in support of the *Trustee's Emergency Motion*

8 *for Order: (1) Approving Compromise with Frantz Law Group, APLC, Pursuant to Federal*

9 *Rule of Bankruptcy Procedure 9019; (2) Authorizing the Assignment of the Estate's*

10 *Interests in the Southern California Gas Leak Litigation Free and Clear of Liens, Claims*

11 *and Interests Pursuant to 11 U.S.C. § 363; and (3) Authorizing Rejection of the*

12 *Assumption and Lien Agreement Between the Debtor and Abir Cohen Treyzon Salo LLP*

13 *Pursuant to 11 U.S.C. § 365.*  Unless otherwise defined in this declaration, all terms

14 defined in the Reply are incorporated herein by this reference.

15    2.    In order to address and alleviate the concerns raised by certain objecting

16 parties, Frantz and I, on behalf of the Estate, have entered into the Amended Settlement

17 Agreement.  A true and correct copy of the Amended Settlement Agreement is attached

18 hereto as Exhibit "1."

19    3.    A true and correct copy of the blackline version of the Amended Settlement

20 Agreement comparing the original Settlement Agreement to the Amended Settlement

21 Agreement is attached hereto as Exhibit "2."

22    4.    My counsel, at my request, has prepared a proposed order on the Motion

23 that further demonstrates that the concerns of the objecting parties are being resolved.

24 A true and correct copy of the proposed order granting the Motion is attached hereto as

25 Exhibit "3."

26    5.    I, along with Frantz, have continued to investigate the scope and extent of

27 the referral fee arrangements.  As of the filing of the Reply, I am aware of 1,243 referral

28 fee agreements in place for 25% or 30% of the attorneys' fees recovered.  The referral

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  fees will be deducted from the contingency fee before the remaining fees will be divided

2  pursuant to the Amended Settlement Agreement.

3        6.     I have reviewed certain retainer agreements in connection with the

4  Southern California Gas Leak Litigation.  On January 13, 2021, I entered into a stipulation

5  with Frantz to allow me to review these retainer agreements.  The Court entered an order

6  approving the stipulation on January 14, 2021.

7        7.     While determining how to assign the Estate's interest in the Southern

8  California Gas Leak Litigation, I, with my counsel, interviewed several law firms interested

9  in representing the Debtor's clients in the Southern California Gas Leak Litigation.  All of

10  the law firms I interviewed claimed to have expertise in mass tort litigation.  I also

11  interviewed one law firm that has a lead role in the Southern California Gas Leak

12  Litigation.  In addition, at the request of a creditor, I interviewed ACTS.

13        8.     The Debtor's case is still in its beginning stages, and I am only now

14  beginning to have better grasp of the extensive physical and electronic files that the

15  Debtor maintained prior to my appointment.  The Debtor was required to file schedules

16  on January 27, 2021 but has not yet done so.  Because the Debtor has not filed any

17  schedules, I am further disadvantaged and have not yet had the opportunity to complete

18  my review of the lenders' claims and lienholders' claims.  Nonetheless, I have contacted

19  each of the lenders of which I am aware and requested their loan documents.  I recently

20  received these loan documents and am currently reviewing them.

21        9.     I have not yet had the opportunity to finish a complete and thorough

22  analysis and calculation of any lien the Estate may assert in the Southern California Gas

23  Leak Litigation.  In my business judgment, if the Estate were to receive only a quantum

24  meruit claim for the Debtor's services in connection with the Southern California Gas

25  Leak Litigation, it seems unlikely that a quantum meruit lien would exceed the recovery

26  the Estate will receive under the Amended Settlement Agreement with Frantz.

27       10.    Before requesting the Court authorize the rejection of the Assumption

28  Agreement with ACTS, I considered the potential claim for rejection damages that ACTS

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    may attempt to assert against the Estate.  I am not conceding that the Assumption

2    Agreement with ACTS is non-avoidable, enforceable, or even valid.  I am also not

3    waiving any arguments seeking to challenge the Assumption Agreement.  I have

4    considered these specific arguments in conjunction with the potential claim for rejection

5    damages.

6        11.    In order to protect the Debtor's clients, I am continuing to engage in

7    discussions to transfer the remainder of the Debtor's cases to other law firms and will

8    seek in the near future Court approval of any transfer of cases.  In addition, I have signed

9    numerous substitutions of attorney for the Debtor's clients.

10        12.    I sought emergency relief to mitigate any damage to the Estate.  Moreover,

11    I am highly concerned about ACTS' ongoing violations.  On January 25, 2021, I attended

12    a town hall meeting hosted by Frantz.  At the town hall meeting, numerous clients were

13    distressed and confused regarding ACTS' violations, and directly expressed their fears

14    and concerns to me.

15        I declare under penalty of perjury under the laws of the United States of America

16    that the foregoing is true and correct.

17        Executed on this 1st day of February, 2021, at Los Angeles, California.

18

19

20    _____

21                Elissa D. Miller

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# EXHIBIT "1"

## AMENDED SETTLEMENT AGREEMENT

This Amended Settlement Agreement ("Agreement") is entered into by and between Elissa D. Miller ("Trustee"), solely in her capacity as trustee of the estate ("Estate") of Girardi Keese ("Debtor"), the chapter 7 debtor in case number 2:20-bk-21022-BR ("Bankruptcy Case") pending in the U.S. Bankruptcy Court for the Central District of California ("Bankruptcy Court"), on the one hand, and Frantz Law Group, APLC ("Frantz"), on the other hand.  The Trustee and Frantz may hereinafter be referred to individually as a "Party" and collectively as the "Parties".  This Agreement fully amends, restates, and supersedes the Parties' Settlement Agreement entered into on January 24, 2021.

## RECITALS

WHEREAS, prior to December 18, 2020 ("Petition Date"), the Debtor and Frantz jointly represented 8,202 victims asserting claims arising out of the 2015 blowout and subsequent months-long gas leak in Porter Ranch, California ("Southern California Gas Leak Litigation"), pursuant to agreements including (i) the Porter Ranch Agreement Frantz Law Group, APLC & Girardi Keese, and (ii) the Attorney-Client Contingent Fee Agreement Addendum ("Joint Representation Agreements");

WHEREAS, Frantz asserts that prior to the Petition Date, the Debtor breached obligations owed to Frantz, is liable to Frantz for costs Frantz advanced on behalf of the Debtor, and is not capable of continuing to perform as co-counsel pursuant to the Joint Representation Agreements;

WHEREAS, the Trustee asserts that under the Joint Representation Agreements, the Estate is entitled to 50% of all fees from the Southern California Gas Leak Litigation;

WHEREAS, an involuntary chapter 7 bankruptcy petition was filed against the Debtor on the Petition Date, commencing the Bankruptcy Case [Docket No. 1];

WHEREAS, on December 30, 2020, Frantz filed a motion for relief from the automatic stay ("Stay Relief Motion") seeking certain relief relating to the Southern California Gas Leak Litigation representations [Docket No. 30];

WHEREAS, on January 5, 2021, the Bankruptcy Court ordered the appointment of an interim trustee [Docket No. 45].  The Trustee was appointed as interim trustee and accepted her appointment on January 6, 2020 [Docket No. 46];

WHEREAS, on January 13, 2021, the Bankruptcy Court entered an "Order Directing: (1) The Clerk of Court to Immediately Enter an Order for Relief under Chapter 7; (2) The United States Trustee to Immediately Appoint a Chapter 7 Trustee; (3) The Debtor to File All Schedules and Related Documentation for Chapter 7 Case within Fourteen Days of the Entry of this Order; and (4) Vacating February 16, 2021 Status Conference" [Docket No. 68].  On January 13, 2021, the Clerk of Court entered an order for relief against the Debtor [Docket No. 69], and the Trustee was appointed and accepted her appointment [Docket No. 70];

1

EXHIBIT "1"

WHEREAS, on January 19, 2021, the Trustee filed her opposition to the Stay Relief Motion [Docket No. 101], and other parties also have opposed the Stay Relief Motion; and

WHEREAS, following good faith, arm's length negotiations, and to avoid the expense, delay, and risks of litigation, and to ensure continuous representation and a smooth transition for the clients in the Southern California Gas Leak Litigation, the Parties desire to resolve the disputes between and among them, subject to the terms and conditions as hereinafter set forth, and pursuant to Bankruptcy Code section 363 and Federal Rule of Bankruptcy Procedure 9019;

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each of the Parties hereto, and subject to approval of this Agreement by the Bankruptcy Court, the Parties hereby agree as follows:

## TERMS AND CONDITIONS

1.    <u>Definitions</u>.

In addition to the definitions in the Recitals or otherwise in this Agreement, the following definitions shall apply:

"<u>Clients</u>" mean 8,202 joint clients of the Debtor and Frantz in the Southern California Gas Leak Litigation, including any of such clients that the Debtor purported to assign or otherwise transfer to (or agree to a substitution of counsel or notice of association or appearance by) any other law firm.  For the avoidance of doubt, Clients shall not include any client that retains Frantz after the Petition Date and that was not as of the Petition Date a client of the Debtor or Frantz in the Southern California Gas Leak Litigation (i.e., totally new clients).

"<u>Costs</u>" mean all reasonable costs relating to the representation of the Clients in the Southern California Gas Leak Litigation that were to be shared, or in the future would be shared, by the Debtor and Frantz, including (i) filing fees and other court costs, (ii) expert witness fees and expenses, (iii) client costs, (iv) discovery-related expenses, including reporter costs, transcript costs, and costs relating to document production and storage, (v) marketing expenses, (vi) steering committee contributions, and (vii) all costs and expenses of case management and accounting.  All such costs are subject to documentation, which documentation shall be provided to the Trustee and Frantz.  No interest shall accrue or be payable on account of Costs.

"<u>Joint Rep. Fees</u>" mean all fees that may be received by Frantz or the Trustee on account of the representation of the Clients in the Southern California Gas Leak Litigation, net of (i) Referral Fees, and (ii) any common benefit assessments.

"<u>Referral Fees</u>" mean referral fees owing to third parties pursuant to enforceable and documented referral fee arrangements that were entered into prior to the Petition Date and disclosed in writing to both the Debtor and Frantz.  For the avoidance of doubt, Referral Fees shall not include any bonuses, salaries, draws, distributions, or other compensation or obligations

EXHIBIT "1"

paid or owing to current or former partners, members, attorneys, insiders, affiliates, or employees of the Debtor.

2.    Allocation of Joint Rep. Fees.

    a.    All Joint Rep. Fees shall be allocated as follows:

        To the Trustee for the benefit of the Estate, 45% of the Joint Rep. Fees less 50% of Costs (the "Estate Allocation"); and

        To Frantz, 55% of the Joint Rep. Fees less 50% of Costs (the "Frantz Allocation").

    b.    As of the Petition Date, to the extent that Frantz advanced and paid more than 50% of the Costs in connection with representing the Clients, the difference between the amount advanced and paid and 50% shall be credited against the Estate Allocation and in favor of the Frantz Allocation.  Postpetition, the Estate shall not be obligated to provide any services or advance any Costs, but 50% of the amount of Costs advanced and paid by Frantz shall be credited against the Estate Allocation and in favor of the Frantz Allocation.

    c.    It is understood and acknowledged that the Debtor has advanced or otherwise incurred Costs in the Southern California Gas Leak Litigation, some of which may be claims in the Bankruptcy Case, and reimbursement for such Costs will be made to the Estate as part of the Estate Allocation.

3.    Payment Of Allocated Fees.

All Joint Rep. Fees shall be initially payable to a trust fund administered by Frantz. Within 30 days of receipt, Frantz shall calculate the Frantz Allocation and the Estate Allocation and notify the Trustee of the proposed allocation.  If the Trustee does not object to the proposed allocation within 14 days after such notice, Frantz shall distribute the Joint Rep. Fees in accordance with the proposed allocation.  If the Trustee does object, Frantz shall reserve such amount as would be necessary to satisfy the Trustee's objection, if sustained, and may distribute the remainder.  The Parties agree to attempt to resolve any dispute promptly, which resolution shall be subject to approval under Bankruptcy Rule 9019.  If the Parties cannot resolve their dispute within 30 days, the matter will be submitted to the Bankruptcy Court.

4.    Common Defense Benefit Claim.

Frantz and the Estate shall separately retain 100% of any common defense/benefit fund claim owing to them, and each shall be separately responsible for all costs, expenses, and other charges associated with their respective claims.

EXHIBIT "1"

5.    Assignment Of All Other Rights / Free And Clear Assignment.

Subject to the fee sharing agreement set forth above and Section 11 below, all of the Debtor's and the Estate's interests in the Southern California Gas Leak Litigation shall be assigned to Frantz "as-is", "where-is", and without representation or warranty of any kind by the Trustee including, without limitation, any representation or warranty as to the Clients or the continued representation of the Clients by Frantz.

The assignment to Frantz, including without limitation the Frantz Allocation, shall be free and clear of all liens, claims, encumbrances, and other interests pursuant to Bankruptcy Code section 363(f), including but not limited to (i) any purported liens, assignments, encumbrances, or other purported transfers to litigation funders or other creditors of the Debtor, and (ii) any purported assignments or transfers (or agreements to a substitution of counsel or notice of association or appearance) by the Debtor.

Any liens, claims, encumbrances, or other interests of the Debtor's creditors or other entities that may assert an interest in the Debtor's right to attorneys' fees or other compensation relating to the Clients shall attach only to the Estate Allocation, to the same extent, priority, and validity (if any) that such liens, claims, encumbrances, or other interests had prior to consummation of this Agreement, and subject to any claims or defenses the Trustee or the Estate may have.  The Frantz Allocation shall be free and clear of such liens, claims, encumbrances, or other interests.  For the avoidance of doubt, Frantz is assuming no liabilities of the Estate, the Debtor, or any current or former partners, members, attorneys, insiders, affiliates, or employees thereof, whether under contract, tort, or otherwise.

6.    Withdrawal And Substitution Of Debtor As Counsel and Lien in Favor of the Estate.

The Trustee shall take all steps reasonably necessary to cause the Debtor to promptly withdraw as counsel in the Southern California Gas Leak Litigation.  The Trustee shall coordinate with Frantz to provide for the smooth transition of the cases and to notify the Clients that their cases will be handled solely by Frantz.  Frantz agrees and the Clients shall acknowledge and agree that the Estate has a lien in the Southern California Gas Leak Litigation for the Estate Allocation and Costs advanced or otherwise incurred by the Debtor.  The lien will attach to any recovery the Clients may obtain in the Southern California Gas Leak Litigation, whether by arbitration award, judgment, settlement, or otherwise.  The Trustee, on behalf of the Debtor and the Estate, is hereby authorized to take all steps deemed necessary by the Trustee to protect and preserve the lien.

Immediately upon execution of this Agreement, the Trustee consents to Frantz communicating to the Clients the existence and/or terms of this Agreement, provided that prior to Bankruptcy Court approval of this Agreement, any such communication note that the Agreement is subject to such approval.

4

EXHIBIT "1"

7.      Cooperation.

The Parties shall cooperate in good faith to effectuate the terms of this Agreement, including (i) effectuating the transfer of all client and case files to Frantz, (ii) filing of withdrawals and/or substitutions or disassociations of counsel, and (iii) preparing, executing or filing any documents necessary to acknowledge the Estate's lien as set forth in Section 6 of this Agreement.  The Trustee and her counsel shall promptly direct all communications relating to the Southern California Gas Leak Litigation to Frantz.

Pursuant to Federal Rule of Evidence 502(d), the order approving this Agreement shall provide that no communications between the Trustee, Frantz, and their counsel shall constitute a waiver of the Clients' attorney-client privilege, attorney-client confidentiality of communications, or attorney work product relating to the Southern California Gas Leak Litigation.

8.      Notices.

Any notices required hereunder shall be provided in writing by overnight delivery or email to the following:

        Trustee:

                Elissa D. Miller
                c/o SulmeyerKupetz
                333 S Grand Ave #3400
                Los Angeles, CA  90071
                emiller@sulmeyerlaw.com

        with copies to:

                Lei Lei Wang Ekvall
                Philip E. Strok
                Smiley Wang-Ekvall, LLP
                3200 Park Center Drive, Suite 250
                Costa Mesa, CA  92626
                lekvall@swelawfirm.com
                pstrok@swelawfirm.com

        Frantz:

                James Frantz
                Frantz Law Group, APLC
                402 W. Broadway # 860
                San Diego, CA  92101
                JPF@frantzlawgroup.com

5

EXHIBIT "1"

with copies to:

> Kenneth Chiate
> K. John Shaffer
> Eric Winston
> Quinn Emanuel Urquhart & Sullivan, LLP
> 865 S. Figueroa Street, 10th Floor
> Los Angeles, CA  90017
> kenchiate@quinnemanuel.com
> johnshaffer@quinnemanuel.com
> ericwinston@quinnemanuel.com

9.      <u>Entire Agreement</u>.

This Agreement constitutes the final and entire agreement between the Parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous negotiations, discussions, agreements, and understandings of the Parties, whether oral or written, with respect to such subject matter.

10.     <u>Binding on Successors</u>.

This Agreement shall be binding upon and inure to the benefit of the successors, assigns, heirs, executors, administrators, etc. of each of the Parties, including but not limited to any successor trustee and the Debtor after the case is dismissed or closed.

11.     <u>No Assignments or Delegation of Rights</u>.

Neither Party hereto has assigned or delegated any rights to any other party or person any of the rights or interests related to any claim which may be subject to the terms of this Agreement.   Neither Frantz nor the Trustee shall make any voluntary assignment or other transfer of the Joint Rep. Fees, unless such assignment or other transfer (i) by Frantz is solely out of the Frantz Allocation, or (ii) by the Trustee (and with Bankruptcy Court approval) is solely out of the Estate Allocation.   Any such assignment or other transfer shall be subject to the reasonable consent of the other Party.

12.     <u>Jurisdiction and Venue</u>.

Any action to enforce this Agreement must be brought in the Bankruptcy Court.  The Parties each hereby waive their right to trial by jury, if any, in connection with any such legal action.  The Parties consent to entry of a final judgment or order by the Bankruptcy Court as a core matter.

EXHIBIT "1"

13.      <u>Modification</u>.

This Agreement may be modified only by a writing executed by the Party to this Agreement against whom enforcement of such modification is sought.

14.      <u>Further Assurances</u>.

The Parties shall take all further acts and sign all further documents necessary or convenient to effectuate the purpose of this Agreement.  Subject to the Bankruptcy Court's approval, the order approving this Agreement shall relieve the Trustee of the obligation of signing amendments and/or substitutions for individual Clients (unless such signature is required by another court or governmental authority with relevant jurisdiction).

15.      <u>Signature and Execution</u>.

A signed copy of this Agreement shall have the same force and effect as the original. This Agreement may be executed in counterparts, each of which is deemed to be an original, but such counterparts together shall constitute one and the same instrument.

16.      <u>Severability</u>.

In the event that any court determines that any provision of this Agreement is unenforceable, the provision at issue shall be enforced to the maximum extent permitted by law, and all other provisions shall remain in full effect.

17.      <u>Full Authority to Sign Agreement</u>.

Any individual signing on behalf of any Party hereto expressly represents and warrants to each other Party that he or she has full authority to do so and to bind such Party hereto and, in the case of the Trustee, to bind the Estate, subject only to approval of the Bankruptcy Court.

18.      <u>No Penalty for Drafting Agreement</u>.

No provisions of this Agreement shall be interpreted for or against any Party because that Party or its legal representative drafted this Agreement.

19.      <u>Parties to Bear Own Costs</u>.

Each party shall be responsible for the payment of its own costs, attorneys' fees, and all other expenses in connection with negotiation, preparation, execution, and approval of this Agreement.  Notwithstanding the foregoing, if arbitration or other legal action is necessary to enforce the terms of this Agreement, the Party declared to be the prevailing party in such arbitration or proceedings shall be entitled to its reasonable attorneys' fees and costs incurred in enforcing this Agreement.

EXHIBIT "1"

20.    <u>Recitals Acknowledged</u>.

The Recitals are true and correct to the best of the Parties' knowledge, and hereby adopted by the Parties.

21.    <u>Bankruptcy Court Approval</u>.

The terms of this Agreement, and the effectiveness thereof, are subject to the approval of the Bankruptcy Court, after the Parties' compliance with the notice and hearing requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules.  Within five days of execution of this Agreement, the Trustee will file a motion seeking Bankruptcy Court approval of this Agreement.  The Trustee shall request (i) a hearing on an emergency basis or shortened time, and (ii) that the order approving this Agreement shall be effective and enforceable immediately upon entry.

The form and substance of the order approving this Agreement shall be reasonably acceptable to Frantz, and shall include determinations by the Bankruptcy Court that (i) the Trustee has authority to enter into this Agreement and to consummate the transactions contemplated hereby, (ii) the assignment and transfer of any rights to payment or other property is free and clear of all claims, liens, encumbrances, and other interests against the Debtor, (iii) any asserted claims, liens, encumbrances, or other interests against the Debtor or its property shall attach only to the Estate Allocation, to the same extent, priority, and validity (if any) that such liens, claims, encumbrances, or other interests had prior to consummation of this Agreement, and subject to any claims or defenses the Trustee or the Estate may have; such claims, liens encumbrances, or other interests shall not attach to the Frantz Allocation, (iv) Frantz is assuming no liabilities of the Estate, the Debtor, or any partners, members, attorneys, insiders, affiliates, or employees thereof, whether under contract, tort, or otherwise, (v) the Federal Rule of Evidence 502(d) protections for attorney-client privilege and work-product set forth in Section 7 above apply, and (vi) subject to the Bankruptcy Court's approval, the Trustee is relieved of the obligation of signing amendments and/or substitutions for individual Clients, unless such signature is required by another court or governmental authority with relevant jurisdiction.

The Hearing on the Stay Relief Motion has been continued until March 2, 2021, and if this Agreement is approved, the motion shall be withdrawn.

22.    <u>Mutual Release</u>.

a.    <u>Release of the Trustee and the Estate</u>.

Except as for the obligations and benefits set forth by and for the Parties in the Settlement Agreement (including without limitation the Frantz Allocation), Frantz hereby releases and forever discharges the Estate, the Trustee, and the Trustee's attorneys and agents, each in their capacity(ies) as such (collectively, the "<u>Trustee Released Parties</u>") from and against any and all claims (including, without limitation, all complaints, causes of action, lawsuits, charges, debts, liens, contracts, agreements, promises, liabilities, judgments, demands, damages, losses,

8

EXHIBIT "1"

emotional distress, rights, benefits, obligations, attorneys' fees, costs, and expenses), of any kind, nature or type, whether known or unknown, liquidated or unliquidated, matured or unmatured, that Frantz has or may have against any, some, or all of the Trustee Released Parties in connection with, arising out of or related to the Southern California Gas Leak Litigation.

For the avoidance of doubt, the Trustee Released Parties shall include the Estate (including any released claim Frantz may have against the Estate), but shall not include the revested Debtor (if any) or any of the Debtor's current or former attorneys, employees, members, partners, insiders, or affiliates.

b.    <u>Release by the Trustee and the Estate</u>.

Except as for the obligations and benefits set forth by and for the Parties in the Settlement Agreement (including the Estate Allocation), the Trustee on behalf of the Estate (collectively, the "<u>Trustee Releasors</u>") hereby releases and forever discharges Frantz and its attorneys and agents (the "<u>Frantz Released Parties</u>") from and against any and all claims (including, without limitation, all complaints, causes of action, lawsuits, charges, debts, liens, contracts, agreements, promises, liabilities, judgments, demands, damages, losses, emotional distress, rights, benefits, obligations, attorneys' fees, costs and expenses), of any kind, nature or type, whether known or unknown, liquidated or unliquidated, matured or unmatured, that the Trustee Releasors have or may have against the Frantz Released Parties in connection with, arising out of or related to the Southern California Gas Leak Litigation.

c.    <u>Unknown Claims</u>.

The Parties each acknowledge and assume the risk that subsequent to the execution of the Settlement Agreement, he, she, or it may discover facts or law, or may incur, suffer, or discover losses, damages, or injuries that are unknown and unanticipated at the time the Settlement Agreement was executed or became effective, which if known at such time may have materially affected his, her, or its decision to give the release contained herein.

d.    <u>Section 1542 Waiver</u>.

The Trustee on behalf of the Estate, and Frantz waive any and all rights they might otherwise possess under California Civil Code section 1542 and similar provisions of law existing in any other jurisdiction.

California Civil Code Section 1542 provides as follows:

A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor.

9

EXHIBIT "1"

IN WITNESS WHEREOF, the Parties hereto hereby execute this Settlement Agreement as of the date of final signature below.

Dated: January 31, 2021                 Elissa D. Miller, Chapter 7 Trustee

                                        By: _____
                                             Elissa D. Miller, solely in her capacity as Chapter 7 Trustee
                                             of the Estate

Dated: January 31, 2021                 Frantz Law Group, APLC

                                        By: _____
                                             James Frantz

10

EXHIBIT "1"

# EXHIBIT "2"

# AMENDED SETTLEMENT AGREEMENT

This Amended Settlement Agreement ("Agreement") is entered into by and between Elissa D. Miller ("Trustee"), solely in her capacity as trustee of the estate ("Estate") of Girardi Keese ("Debtor"), the chapter 7 debtor in case number 2:20-bk-21022-BR ("Bankruptcy Case") pending in the U.S. Bankruptcy Court for the Central District of California ("Bankruptcy Court"), on the one hand, and Frantz Law Group, APLC ("Frantz"), on the other hand.  The Trustee and Frantz may hereinafter be referred to individually as a "Party" and collectively as the "Parties".   This Agreement fully amends, restates, and supersedes the Parties' Settlement Agreement entered into on January 24, 2021.

## RECITALS

WHEREAS, prior to December 18, 2020 ("Petition Date"), the Debtor and Frantz jointly represented 8,202 victims asserting claims arising out of the 2015 blowout and subsequent months-long gas leak in Porter Ranch, California ("Southern California Gas Leak Litigation"), pursuant to agreements including (i) the Porter Ranch Agreement Frantz Law Group, APLC & Girardi Keese, and (ii) the Attorney-Client Contingent Fee Agreement Addendum ("Joint Representation Agreements");

WHEREAS, Frantz asserts that prior to the Petition Date, the Debtor breached obligations owed to Frantz, is liable to Frantz for costs Frantz advanced on behalf of the Debtor, and is not capable of continuing to perform as co-counsel pursuant to the Joint Representation Agreements;

WHEREAS, the Trustee asserts that under the Joint Representation Agreements, the Estate is entitled to 50% of all fees from the Southern California Gas Leak Litigation;

WHEREAS, an involuntary chapter 7 bankruptcy petition was filed against the Debtor on the Petition Date, commencing the Bankruptcy Case [Docket No. 1];

WHEREAS, on December 30, 2020, Frantz filed a motion for relief from the automatic stay ("Stay Relief Motion") seeking certain relief relating to the Southern California Gas Leak Litigation representations [Docket No. 30];

WHEREAS, on January 5, 2021, the Bankruptcy Court ordered the appointment of an interim trustee [Docket No. 45].  The Trustee was appointed as interim trustee and accepted her appointment on January 6, 2020 [Docket No. 46];

WHEREAS, on January 13, 2021, the Bankruptcy Court entered an "Order Directing: (1) The Clerk of Court to Immediately Enter an Order for Relief under Chapter 7; (2) The United States Trustee to Immediately Appoint a Chapter 7 Trustee; (3) The Debtor to File All Schedules and Related Documentation for Chapter 7 Case within Fourteen Days of the Entry of this Order; and (4) Vacating February 16, 2021 Status Conference" [Docket No. 68].  On January 13, 2021, the Clerk of Court entered an order for relief against the Debtor [Docket No. 69], and the Trustee was appointed and accepted her appointment [Docket No. 70];

1

WHEREAS, on January 19, 2021, the Trustee filed her opposition to the Stay Relief Motion [Docket No. 101], and other parties also have opposed the Stay Relief Motion; and

WHEREAS, following good faith, arm's length negotiations, and to avoid the expense, delay, and risks of litigation, and to ensure continuous representation and a smooth transition for the clients in the Southern California Gas Leak Litigation, the Parties desire to resolve the disputes between and among them, subject to the terms and conditions as hereinafter set forth, and pursuant to Bankruptcy Code section 363 and Federal Rule of Bankruptcy Procedure 9019;

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each of the Parties hereto, and subject to approval of this Agreement by the Bankruptcy Court, the Parties hereby agree as follows:

## TERMS AND CONDITIONS

1.    Definitions.

In addition to the definitions in the Recitals or otherwise in this Agreement, the following definitions shall apply:

"Clients" mean all8,202 joint clients of the Debtor and Frantz in the Southern California Gas Leak Litigation, including any of such clients that the Debtor purported to assign or otherwise transfer to (or agree to a substitution of counsel or notice of association or appearance by) any other law firm.  For the avoidance of doubt, provided, however, that Clients shall not include any client that retains Frantz after the Petition Date and that was not as of the Petition Date a client of the Debtor or Frantz in the Southern California Gas Leak Litigation (i.e., totally new clients).

"Costs" mean all reasonable costs relating to the representation of the Clients in the Southern California Gas Leak Litigation that were to be shared, or in the future would be shared, by the Debtor and Frantz, including (i) filing fees and other court costs, (ii) expert witness fees and expenses, (iii) client costs, (iv) discovery-related expenses, including reporter costs, transcript costs, and costs relating to document production and storage, (v) marketing expenses, (vi) steering committee contributions, and (vii) all costs and expenses of case management and accounting.  All such costs are subject to documentation, which documentation shall be provided to the Trustee and Frantz.  No interest shall accrue or be payable on account of Costs.

"Joint Rep. Fees" mean all fees that may be received by Frantz or the Trustee on account of the representation of the Clients in the Southern California Gas Leak Litigation, net of (i) Referral Fees, and (ii) any common benefit assessments.

"Referral Fees" mean referral fees owing to third parties pursuant to enforceable and documented referral fee arrangements that were entered into prior to the Petition Date and disclosed in writing to both the Debtor and Frantz.  For the avoidance of doubt, Referral Fees shall not include any bonuses, salaries, draws, distributions, or other compensation or obligations

2

paid or owing to current or former partners, members, attorneys, insiders, affiliates, or employees of the Debtor.

2.      Allocation of Joint Rep. Fees.

     a.      All Joint Rep. Fees shall be allocated as follows:

        To the Trustee for the benefit of the Estate, 45% of the Joint Rep. Fees less 50% of Costs (the "Estate Allocation"); and

        To Frantz, 55% of the Joint Rep. Fees less 50% of Costs (the "Frantz Allocation").

     b.      As of the Petition Date, to the extent that Frantz advanced and paid more than 50% of the Costs in connection with representing the Clients, the difference between the amount advanced and paid and 50% shall be credited against the Estate Allocation and in favor of the Frantz Allocation.  Postpetition, the Estate shall not be obligated to provide any services or advance any Costs, but 50% of the amount of Costs advanced and paid by Frantz shall be credited against the Estate Allocation and in favor of the Frantz Allocation.

     c.      It is understood and acknowledged that the Debtor has advanced or otherwise incurred Costs in the Southern California Gas Leak Litigation, some of which may be claims in the Bankruptcy Case, and reimbursement for such Costs will be made to the Estate as part of the Estate Allocation.

3.      Payment Of Allocated Fees.

All Joint Rep. Fees shall be initially payable to a trust fund administered by Frantz. Within 30 days of receipt, Frantz shall calculate the Frantz Allocation and the Estate Allocation and notify the Trustee of the proposed allocation.  If the Trustee does not object to the proposed allocation within 14 days after such notice, Frantz shall distribute the Joint Rep. Fees in accordance with the proposed allocation.  If the Trustee does object, Frantz shall reserve such amount as would be necessary to satisfy the Trustee's objection, if sustained, and may distribute the ~~reminder~~remainder.  The Parties agree to attempt to resolve any dispute promptly, which resolution shall be subject to approval under Bankruptcy Rule 9019.  If the Parties cannot resolve their dispute within 30 days, the matter will be submitted to the Bankruptcy Court.

4.      Common Defense Benefit Claim.

Frantz and the Estate shall separately retain 100% of any common defense/benefit fund claim owing to them, and each shall be separately responsible for all costs, expenses, and other charges associated with their respective claims.

EXHIBIT "2"

5.      Assignment Of All Other Rights / Free And Clear Assignment.

Subject to the fee sharing agreement set forth above and Section 11 below, all of the Debtor's and the Estate's interests in the Southern California Gas Leak Litigation shall be assigned to Frantz "as-is", "where-is", and without representation or warranty of any kind by the Trustee including, without limitation, any representation or warranty as to the Clients or the continued representation of the Clients by Frantz.

The assignment to Frantz, including without limitation the Frantz Allocation, shall be free and clear of all liens, claims, encumbrances, and other interests pursuant to Bankruptcy Code section 363(f), including but not limited to (i) any purported liens, assignments, encumbrances, or other purported transfers to litigation funders or other creditors of the Debtor, and (ii) any purported assignments or transfers (or agreements to a substitution of counsel or notice of association or appearance) by the Debtor.

Any liens, claims, encumbrances, or other interests of the Debtor's creditors or other ~~third parties~~entities that ~~have or~~ may assert ~~claims against~~an interest in the Debtor~~'~~s right to attorneys' fees or other compensation relating to the Clients shall attach only to the Estate Allocation, ~~and not~~ to the same extent, priority, and validity (if any) that such liens, claims, encumbrances, or other interests had prior to consummation of this Agreement, and subject to any claims or defenses the Trustee or the Estate may have.  The Frantz Allocation shall be free and clear of such liens, claims, encumbrances, or other interests.  For the avoidance of doubt, Frantz is assuming no liabilities of the Estate, the Debtor, or any current or former partners, members, attorneys, insiders, affiliates, or employees thereof, whether under contract, tort, or otherwise.

6.      Withdrawal And Substitution Of Debtor As Counsel and Lien in Favor of the Estate.

The Trustee shall take all steps reasonably necessary to cause the Debtor to promptly withdraw as counsel in the Southern California Gas Leak Litigation.  The Trustee shall coordinate with Frantz to provide for the smooth transition of the cases and to notify the Clients that their cases will be handled solely by Frantz.  Frantz agrees and the Clients shall acknowledge and agree that the Estate has a lien in the Southern California Gas Leak Litigation for the Estate Allocation and Costs advanced or otherwise incurred by the Debtor.  The lien will attach to any recovery the Clients may obtain in the Southern California Gas Leak Litigation, whether by arbitration award, judgment, settlement, or otherwise.  The Trustee, on behalf of the Debtor and the Estate, is hereby authorized to take all steps deemed necessary by the Trustee to protect and preserve the lien.

Immediately upon execution of this Agreement, the Trustee consents to Frantz communicating to the Clients the existence and/or terms of this Agreement, provided that prior to Bankruptcy Court approval of this Agreement, any such communication note that the Agreement is subject to such approval.

4

EXHIBIT "2"

7.    <u>Cooperation</u>.

The Parties shall cooperate in good faith to effectuate the terms of this Agreement, including (i) effectuating the transfer of all client and case files to Frantz, (ii) filing of withdrawals and/or substitutions or disassociations of counsel, and (iii) preparing, executing or filing any documents necessary to acknowledge the Estate's lien as set forth in Section 6 of this Agreement.  The Trustee and her counsel shall promptly direct all communications relating to the Southern California Gas Leak Litigation to Frantz.

Pursuant to Federal Rule of Evidence 502(d), the order approving this Agreement shall provide that no communications between the Trustee, Frantz, and their counsel shall constitute a waiver of the Clients' attorney-client privilege, attorney-client confidentiality of communications, or attorney work product relating to the Southern California Gas Leak Litigation.

8.    <u>Notices</u>.

Any notices required hereunder shall be provided in writing by overnight delivery or email to the following:

Trustee:

Elissa D. Miller
c/o SulmeyerKupetz
333 S Grand Ave #3400
Los Angeles, CA  90071
emiller@sulmeyerlaw.com

with copies to:

Lei Lei Wang Ekvall
Philip E. Strok
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA  92626
lekvall@swelawfirm.com
pstrok@swelawfirm.com

Frantz:

James Frantz
Frantz Law Group, APLC
402 W. Broadway # 860
San Diego, CA  92101
JPF@frantzlawgroup.com

5

EXHIBIT "2"

with copies to:

> Kenneth Chiate
> K. John Shaffer
> Eric Winston
> Quinn Emanuel Urquhart & Sullivan, LLP
> 865 S. Figueroa Street, 10th Floor
> Los Angeles, CA  90017
> kenchiate@quinnemanuel.com
> johnshaffer@quinnemanuel.com
> ericwinston@quinnemanuel.com

9.    <u>Entire Agreement</u>.

This Agreement constitutes the final and entire agreement between the Parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous negotiations, discussions, agreements, and understandings of the Parties, whether oral or written, with respect to such subject matter.

10.    <u>Binding on Successors</u>.

This Agreement shall be binding upon and inure to the benefit of the successors, assigns, heirs, executors, administrators, etc. of each of the Parties, including but not limited to any successor trustee and the Debtor after the case is dismissed or closed.

11.    <u>No Assignments or Delegation of Rights</u>.

Neither Party hereto has assigned or delegated any rights to any other party or person any of the rights or interests related to any claim which may be subject to the terms of this Agreement.  Neither Frantz nor the Trustee shall make any voluntary assignment or other transfer of the Joint Rep. Fees, unless such assignment or other transfer (i) by Frantz is solely out of the Frantz Allocation, or (ii) by the Trustee (and with Bankruptcy Court approval) is solely out of the Estate Allocation.  Any such assignment or other transfer shall be subject to the reasonable consent of the other Party.

12.    <u>Jurisdiction and Venue</u>.

Any action to enforce this Agreement must be brought in the Bankruptcy Court.  The Parties each hereby waive their right to trial by jury, if any, in connection with any such legal action.  The Parties consent to entry of a final judgment or order by the Bankruptcy Court as a core matter.

6

EXHIBIT "2"

13.     Modification.

        This Agreement may be modified only by a writing executed by the Party to this
Agreement against whom enforcement of such modification is sought.

14.     Further Assurances.

        The Parties shall take all further acts and sign all further documents necessary or
convenient to effectuate the purpose of this Agreement. Subject to the Bankruptcy Court's
approval, the order approving this Agreement shall relieve the Trustee of the obligation of
signing amendments and/or substitutions for individual Clients (unless such signature is required
by another court or governmental authority with relevant jurisdiction).

15.     Signature and Execution.

        A signed copy of this Agreement shall have the same force and effect as the original.
This Agreement may be executed in counterparts, each of which is deemed to be an original, but
such counterparts together shall constitute one and the same instrument.

16.     Severability.

        In the event that any court determines that any provision of this Agreement is
unenforceable, the provision at issue shall be enforced to the maximum extent permitted by law,
and all other provisions shall remain in full effect.

17.     Full Authority to Sign Agreement.

        Any individual signing on behalf of any Party hereto expressly represents and warrants to
each other Party that he or she has full authority to do so and to bind such Party hereto and, in the
case of the Trustee, to bind the Estate, subject only to approval of the Bankruptcy Court.

18.     No Penalty for Drafting Agreement.

        No provisions of this Agreement shall be interpreted for or against any Party because that
Party or its legal representative drafted this Agreement.

19.     Parties to Bear Own Costs.

        Each party shall be responsible for the payment of its own costs, attorneys' fees, and all
other expenses in connection with negotiation, preparation, execution, and approval of this
Agreement.  Notwithstanding the foregoing, if arbitration or other legal action is necessary to
enforce the terms of this Agreement, the Party declared to be the prevailing party in such
arbitration or proceedings shall be entitled to its reasonable attorneys' fees and costs incurred in
enforcing this Agreement.

EXHIBIT "2"

20.  <u>Recitals Acknowledged</u>.

The Recitals are true and correct to the best of the Parties' knowledge, and hereby adopted by the Parties.

21.  <u>Bankruptcy Court Approval</u>.

The terms of this Agreement, and the effectiveness thereof, are subject to the approval of the Bankruptcy Court, after the Parties' compliance with the notice and hearing requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules.  Within five days of execution of this Agreement, the Trustee will file a motion seeking Bankruptcy Court approval of this Agreement.  The Trustee shall request (i) a hearing on an emergency basis or shortened time, and (ii) that the order approving this Agreement shall be effective and enforceable immediately upon entry.

The form and substance of the order approving this Agreement shall be reasonably acceptable to Frantz, and shall include determinations by the Bankruptcy Court that (i) the Trustee has authority to enter into this Agreement and to consummate the transactions contemplated hereby, (ii) the assignment and transfer of any rights to payment or other property is free and clear of all claims, liens, encumbrances, and other interests against the Debtor, (iii) any asserted claims, liens, encumbrances, or other interests against the Debtor or its property shall attach only to the Estate Allocation, andto the same extent, priority, and validity (if any) that such liens, claims, encumbrances, or other interests had prior to consummation of this Agreement, and subject to any claims or defenses the Trustee or the Estate may have; such claims, liens encumbrances, or other interests shall not attach to the Frantz Allocation, (iv) Frantz is assuming no liabilities of the Estate, the Debtor, or any partners, members, attorneys, insiders, affiliates, or employees thereof, whether under contract, tort, or otherwise, and (v) the Federal Rule of Evidence 502(d) protections for attorney-client privilege and work-product set forth in Section 7 above apply, and (vi) subject to the Bankruptcy Court's approval, the Trustee is relieved of the obligation of signing amendments and/or substitutions for individual Clients, unless such signature is required by another court or governmental authority with relevant jurisdiction.

The Hearing on the Stay Relief Motion has been continued until March 2, 2021, and if this Agreement is approved, the motion shall be withdrawn.

22.  <u>Mutual Release</u>.

a.  <u>Release of the Trustee and the Estate</u>.

Except as for the obligations and benefits set forth by and for the Parties in the Settlement Agreement (including without limitation the Frantz Allocation), Frantz hereby releases and forever discharges the Estate, the Trustee, and the Trustee's attorneys and agents, each in their capacity(ies) as such (collectively, the "Trustee Released Parties") from and against any and all claims (including, without limitation, all complaints, causes of action, lawsuits, charges, debts, liens, contracts, agreements, promises, liabilities, judgments, demands, damages, losses,

8

EXHIBIT "2"

emotional distress, rights, benefits, obligations, attorneys' fees, costs, and expenses), of any kind, nature or type, whether known or unknown, liquidated or unliquidated, matured or unmatured, that Frantz has or may have against any, some, or all of the Trustee Released Parties in connection with, arising out of or related to the Southern California Gas Leak Litigation.

For the avoidance of doubt, the Trustee Released Parties shall include the Estate (including any released claim Frantz may have against the Estate), but shall not include the revested Debtor (if any) or any of the Debtor's current or former attorneys, employees, members, partners, insiders, or affiliates.

b.      Release by the Trustee and the Estate.

Except as for the obligations and benefits set forth by and for the Parties in the Settlement Agreement (including the Estate Allocation), the Trustee on behalf of the Estate (collectively, the "Trustee Releasors") hereby releases and forever discharges Frantz and its attorneys and agents (the "Frantz Released Parties") from and against any and all claims (including, without limitation, all complaints, causes of action, lawsuits, charges, debts, liens, contracts, agreements, promises, liabilities, judgments, demands, damages, losses, emotional distress, rights, benefits, obligations, attorneys' fees, costs and expenses), of any kind, nature or type, whether known or unknown, liquidated or unliquidated, matured or unmatured, that the Trustee Releasors have or may have against the Frantz Released Parties in connection with, arising out of or related to the Southern California Gas Leak Litigation.

c.      Unknown Claims.

The Parties each acknowledge and assume the risk that subsequent to the execution of the Settlement Agreement, he, she, or it may discover facts or law, or may incur, suffer, or discover losses, damages, or injuries that are unknown and unanticipated at the time the Settlement Agreement was executed or became effective, which if known at such time may have materially affected his, her, or its decision to give the release contained herein.

d.      Section 1542 Waiver.

The Trustee on behalf of the Estate, and Frantz waive any and all rights they might otherwise possess under California Civil Code section 1542 and similar provisions of law existing in any other jurisdiction.

California Civil Code Section 1542 provides as follows:

A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor.

9

IN WITNESS WHEREOF, the Parties hereto hereby execute this Settlement Agreement as of the date of final signature below.

Dated: January ~~24~~31, 2021                    Elissa D. Miller, Chapter 7 Trustee


By:_____
Elissa D. Miller, solely in her capacity as Chapter 7 Trustee of the Estate


Dated: January ~~24~~31, 2021                    Frantz Law Group, APLC


By:_____
James Frantz


10

EXHIBIT "2"

Document comparison by Workshare 10.0 on Sunday, January 31, 2021 2:35:06 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\johnshaffer\Desktop\GK FLG Settlement Agreement - Execution.docx |
| Description | GK FLG Settlement Agreement - Execution |
| Document 2 ID | file://C:\Users\johnshaffer\Desktop\Execution Amended GK FLG Settlement Agreement.DOCX |
| Description | Execution Amended GK FLG Settlement Agreement |
| Rendering set | Standard no moves |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 50 |
| Deletions | 11 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 61 |

# EXHIBIT "3"

1 | **SMILEY WANG-EKVALL, LLP**
Lei Lei Wang Ekvall, State Bar No. 163047
2 | *lekvall@swelawfirm.com*
Philip E. Strok, State Bar No. 169296
3 | *pstrok@swelawfirm.com*
Timothy W. Evanston, State Bar No. 319342
4 | *tevanston@swelawfirm.com*
3200 Park Center Drive, Suite 250
5 | Costa Mesa, California 92626
Telephone:   714 445-1000
6 | Facsimile:    714 445-1002

7 | Proposed Attorneys for Elissa D. Miller,
Chapter 7 Trustee

8

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| In re | Case No. 2:20-bk-21022-BR |
|---|---|
| GIRARDI KEESE, | Chapter 7 |
| Debtor. | **[PROPOSED] ORDER GRANTING TRUSTEE'S EMERGENCY MOTION FOR ORDER:** |
| | **(1) APPROVING COMPROMISE WITH FRANTZ LAW GROUP, APLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019, ETC.** |
| | **(2) AUTHORIZING THE ASSIGNMENT OF THE ESTATE'S INTERESTS IN THE SOUTHERN CALIFORNIA GAS LEAK LITIGATION FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS PURSUANT TO 11 U.S.C. § 363; AND** |
| | **(3) AUTHORIZING REJECTION OF THE ASSUMPTION AND LIEN AGREEMENT BETWEEN THE DEBTOR AND ABIR COHEN TREYZON SALO LLP PURSUANT TO 11 U.S.C. § 365** |
| | Date:       February 2, 2021
Time:       10:00 a.m.
Ctrm.:     1668 via ZoomGov
                255 E. Temple Street
                Los Angeles, CA 90012 |

*(Left margin, vertical text)* SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "3"

Web Address:
https://cacb.zoomgov.com/j/1614873359
Meeting ID:      1614873359
Password:        123456
Telephone:       (669) 254 5252 (San Jose)
                 (646) 828 7666 (New York)

On February 2, 2021 at 10:00 a.m., the above-captioned Court held a hearing on the *Emergency Motion for Order: (1) Approving Compromise with Frantz Law Group, APLC Pursuant to Federal Rule of Bankruptcy Procedure 9019; (2) Authorizing the Assignment of the Estate's Interests in the Southern California Gas Leak Litigation Free and Clear of Liens, Claims and Interests Pursuant to 11 U.S.C. § 363; and (3) Authorizing Rejection of the Assumption and Lien Agreement Between the Debtor and Abir Cohen Treyzon Salo LLP Pursuant to 11 U.S.C. § 365* [Docket No. 123] (the "Motion")[1] filed by Elissa D. Miller, in her capacity as Chapter 7 Trustee for the bankruptcy estate (the "Estate") of Girardi Keese.  Appearances were as noted as on the Court's record.  Having considered the Motion and the pleadings, declarations, and exhibits filed in support thereof and opposition thereto, and the statements and arguments of counsel on the record at the hearing on the Motion, finding that notice and service of the Motion were proper and that no further notice be given, and finding good cause for the relief requested in the Motion,

**IT IS HEREBY ORDERED** that:

1.      The Motion is GRANTED;

2.      The Trustee is authorized to enter into the Amended Settlement Agreement, a copy of which is attached to the Trustee's reply in support of the Motion as Exhibit "1";

3.      The terms of Amended Settlement Agreement are approved;

---

[1]   Terms not otherwise defined herein shall have the meaning ascribed to them in the Motion and/or the Amended Settlement Agreement.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "3"

4.    The Trustee is authorized to execute any documents or take any actions reasonably necessary to effectuate the terms of the Amended Settlement Agreement;

5.    The transaction contemplated in the Amended Settlement Agreement is approved pursuant to 11 U.S.C. § 363(b) and Bankruptcy Rule 9019;

6.    The assignment and transfer of any rights to payment or other property as contemplated in the Amended Settlement Agreement are free and clear of all claims, liens, encumbrances, or other interests against the Debtor or its property pursuant to 11 U.S.C. § 363(f), including but not limited to (i) any purported liens, assignments, encumbrances, or other transfers to litigation funders or other creditors of the Debtor, and (ii) any purported assignments or transfers (or agreements to a substitution of counsel or notice of association or appearance) by the Debtor**;**

7.    Any asserted claims, liens, encumbrances, or other interests against the Debtor or its property shall attach only to the Estate Allocation, to the same extent, priority, and validity (if any) that such liens, claims, encumbrances, or other interests had prior to consummation of the Amended Settlement Agreement, and subject to any claims or defenses the Trustee or the Estate may have; such claims, liens, encumbrances, or other interests shall not attach to the Frantz Allocation;

8.    Frantz is assuming no liabilities of the Estate, the Debtor, or any current or former partners, members, attorneys, insiders, affiliates, or employees thereof, whether under contract, tort, or otherwise;

9.    The Federal Rule of Evidence 502(d) protections for attorney-client privilege, attorney-client confidentiality of communications, or attorney work product set forth in the Amended Settlement Agreement constitute the order of this Court and shall apply in any other federal or state proceeding;

10.    The Trustee is relieved of the obligation of signing amendments and/or substitutions for individual Clients, unless such signature is required by another court or governmental authority with relevant jurisdiction.

11.    The 14-day waiver period under FRBP 6004(h) is waived; and

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

EXHIBIT "3"

1          12.      The Assumption and Lien Agreement between the Debtor and ACTS is

2    rejected pursuant to 11 U.S.C. § 365(a).

3                                                    ###

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2854367.2                              4                    [PROPOSED] ORDER

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626.

A true and correct copy of the foregoing document entitled (*specify*): **OMNIBUS REPLY IN SUPPORT OF TRUSTEE'S EMERGENCY MOTION FOR ORDER: (1) APPROVING COMPROMISE WITH FRANTZ LAW GROUP, APLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019, ETC.; (2) AUTHORIZING THE ASSIGNMENT OF THE ESTATE'S INTERESTS IN THE SOUTHERN CALIFORNIA GAS LEAK LITIGATION FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS PURSUANT TO 11 U.S.C. § 363; AND (3) AUTHORIZING REJECTION OF THE ASSUMPTION AND LIEN AGREEMENT BETWEEN THE DEBTOR AND ABIR COHEN TREYZON SALO LLP PURSUANT TO 11 U.S.C. § 365 MEMORANDUM OF POINTS AND AUTHORITIES; SUPPLEMENTAL DECLARATION OF ELISSA D. MILLER IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 1, 2021  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  February 1, 2021   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  January 25, 2021 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA E-Mail**

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 1, 2021 | Gabriela Gomez-Cruz | /s/ Gabriela Gomez-Cruz |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

<u>**ADDITIONAL SERVICE INFORMATION**</u> (if needed):

1. <u>**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u>

- Richard D Buckley    richard.buckley@arentfox.com
- Marie E Christiansen    mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-4166@ecf.pacerpro.com
- Jennifer Witherell Crastz    jcrastz@hrhlaw.com
- Ashleigh A Danker    Ashleigh.danker@dinsmore.com, SDCMLFiles@DINSMORE.COM;Katrice.ortiz@dinsmore.com
- Clifford S Davidson    csdavidson@swlaw.com, jlanglois@swlaw.com;cliff-davidson-7586@ecf.pacerpro.com
- Lei Lei Wang Ekvall    lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Richard W Esterkin    richard.esterkin@morganlewis.com
- Timothy W Evanston    tevanston@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Eric D Goldberg    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Andrew Goodman    agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com
- Steven T Gubner    sgubner@bg.law, ecf@bg.law
- Marshall J Hogan    mhogan@swlaw.com, knestuk@swlaw.com
- Razmig Izakelian    razmigizakelian@quinnemanuel.com
- Lewis R Landau    Lew@Landaunet.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Peter J Mastan    peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
- Edith R Matthai    ematthai@romalaw.com
- Kenneth Miller    kmiller@pmcos.com, efilings@pmcos.com
- Elissa Miller (TR)    CA71@ecfcbis.com, MillerTrustee@Sulmeyerlaw.com;C124@ecfcbis.com;ccaldwell@sulmeyerlaw.com
- Eric A Mitnick    MitnickLaw@aol.com, mitnicklaw@gmail.com
- Scott H Olson    solson@vedderprice.com, scott-olson-2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- Leonard Pena    lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com
- Michael J Quinn    mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-2870@ecf.pacerpro.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
- Philip E Strok    pstrok@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Eric D Winston    ericwinston@quinnemanuel.com
- Christopher K.S. Wong    christopher.wong@arentfox.com, yvonne.li@arentfox.com
- Timothy J Yoo    tjy@lnbyb.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**

**Via E-mail:**

| | | |
|---|---|---|
| Andrew W Zepeda<br>James J Finsten<br>Lurie, Zepeda, Schmalz, Hogan & Martin<br>1875 Century Park E Ste 2100<br>Los Angeles, CA 90067<br>azepeda@lurie-zepeda.com<br>jfinsten@lurie-zepeda.com | Rafey Balabanian<br>Edelson PC<br>123 Townsend St Ste 100<br>San Francisco, CA 94107<br>rbalabanian@edelson.com | Nano Banc<br>25220 Hancock Ave., Suite 140<br>Murrieta, CA 92562<br>epadilla@nanobanc.com<br>pdonaldson@nanobanc.com |
| Abir Cohen Treyzon Salo, LLP<br>c/o: Boris Treyzon<br>16001 Ventura Boulevard, Suite 200<br>Encino, CA 91436<br>btreyzon@actslaw.com | Law Finance Group, LLC<br>591 Redwood Hwy<br>Suite 1200<br>Mill Valley, CA 94941<br>info@lawfinance.com | LFG Special Investor Group, LLC<br>Finance Group Fund II<br>200 South Virginia St., 8th Floor<br>Reno, NV 89501<br>info@lawfinance.com |
| Corporation Service Company, As Representative<br>P.O.Box 2576<br>Springfield, IL  62708<br>801 Adlai Stevenson Dr.<br>Springfield, IL 62703<br>UCCSPREP@CSCINFO.com | | CT Corporation System, as Representative<br>CT Lien Solutions<br>330 N. Brand Blvd., Suite 700<br>Glendale, CA 91203<br>UCCSPREP@CSCINFO.com |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                      **F 9013-3.1.PROOF.SERVICE**