**SMILEY WANG-EKVALL, LLP**
Lei Lei Wang Ekvall, State Bar No. 163047
lekvall@swelawfirm.com
Philip E. Strok, State Bar No. 169296
pstrok@swelawfirm.com
Timothy W. Evanston, State Bar No. 319342
tevanston@swelawfirm.com
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:  714 445-1000
Facsimile:  714 445-1002

Attorneys for Elissa D. Miller, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>GIRARDI KEESE,<br><br>                      Debtor. | Case No. 2:20-bk-21022-BR<br><br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S REPLY TO RESPONSE BY JOSEPH RUIGOMEZ, JAIME RUIGOMEZ, AND KATHLEEN RUIGOMEZ, TO CHAPTER 7 TRUSTEE'S SECOND MOTION FOR ORDER APPROVING STIPULATIONS FOR USE OF CASH COLLATERAL AND AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(b) AND (d)**<br><br>Date:      April 6, 2021<br>Time:     2:00 p.m.<br>Ctrm.:    1668 via ZoomGov<br>           255 E. Temple Street<br>           Los Angeles, CA 90012<br><br>Web Address:  https://cacb.zoomgov.com<br>Meeting ID:    161 446 3922<br>Password:      123456<br>Telephone:    (669) 254-5252 (San Jose)<br>                    (646) 828-7666 (New York) |

2863363.4                                     1                                    REPLY

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................. 2

II.   LEGAL ARGUMENT .......................................................................................... 4

    A.   The Trustee is Working for the Benefit of All Creditors ................................ 4

    B.   Cash Collateral is Necessary to Preserve and Enhance Value for the Estate .............................................................................................................. 5

    C.   The Ruigomez Creditors Have and Will Receive the Same Treatment as the Other Secured Creditors ..................................................................... 7

    D.   The Ruigomez Creditors are Adequately Protected ..................................... 9

    E.   The Ruigomez Creditors Are Not Entitled to Adequate Protection Payments ..................................................................................................... 10

    F.   The Request for Documents is Misplaced .................................................. 11

III.   CONCLUSION .................................................................................................. 12

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2863363.4              i              REPLY

# TABLE OF AUTHORITIES

**Page**

**CASES**

*First Fed. Bank of Cal. v. Weinstein (In re Weinstein)*,
   227 B.R. 284 (B.A.P. 9th Cir. 1998) ................................................................... 11

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc.*, Ltd.,
   484 U.S. 365 (1988) ............................................................................................ 10

**STATUTES**

11 U.S.C. § 363 ............................................................................................................ 2

11 U.S.C. § 506(c) ....................................................................................................... 8

FRBP 4001(b) .............................................................................................................. 2

FRBP 4001(d) .............................................................................................................. 2

FRBP 9019 .................................................................................................................. 9

FRE 1006 .............................................................................................................. 11, 12

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Elissa D. Miller, the chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Girardi Keese (the "Debtor"), submits this reply to the response (the "Response") filed by Joseph Ruigomez, Jaime Ruigomez, and Kathleen Ruigomez (the "Ruigomez Creditors") to the *Chapter 7 Trustee's Second Motion for Order Approving Stipulations for Use of Cash Collateral and Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Federal Rule of Bankruptcy Procedure 4001(b) and (d)* (the "Motion").[1]

## I.    INTRODUCTION

The Court should grant the Motion and overrule the Ruigomez Creditors' Response. The Ruigomez Creditors request relief that they have already and will continue to receive (*e.g.*, a replacement lien and automatic perfection of such lien, if any) or are not entitled to (*e.g.*, adequate protection payments). The Trustee recognizes and does not dispute that the Ruigomez Creditors have suffered immensely. However, the Trustee cannot simply ignore her fiduciary role in this case; to work for the benefit of **all** creditors (many of whom are clients or former clients of the Debtor who have suffered similar tragedies) and to preserve and enhance the value of the Estate for **all** creditors.

The Trustee's continuing need for cash collateral has not changed. The Trustee's goal is to transition the Debtor's cases to qualified counsel to protect the Debtor's clients and maximize value for the Estate's claims for quantum meruit fees and costs, as evidenced by the Trustee's compromise with Frantz Law Group concerning the Southern California Gas Leak Litigation[2] and later agreement to transfer cases to Aitken, Overland

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] This was over the objection of Abir Cohen Treyzon Salo LLP ("ACTS"), counsel for the Ruigomez Creditors, who believed they had the right to take these clients (over 8,200 of them) for their own benefit. Margulies Faith, LLP represents both ACTS and the Ruigomez Creditors. The Trustee is confused and concerned regarding for whose benefit Margulies Faith and ACTS are

& Overland, and other firms, as well as numerous other case resolution stipulations and compromises.

Since the Trustee's First Cash Collateral Motion, the Trustee has used cash collateral to substantially enhance the value of the Estate—value that would not have been realized if the Court did not authorize the Trustee to use cash collateral. The Estate's cash position has increased from approximately $350,000.00 in the Trustee's general account at the time of the First Cash Collateral Motion to approximately $3.8 million at the time of the Motion; an increase of approximately $3.45 million in the Estate's cash position.[3] If the Motion is denied, all creditors will be harmed. Indeed, all creditors alleging secured claims are currently *undersecured or unsecured due to the limited funds on hand*. Denial of the Motion will eliminate all creditors' best prospects for recovery, including those creditors claiming to have secured claims, such as the Ruigomez Creditors.

The Ruigomez Creditors, to the extent they have a valid secured claim, are more than adequately protected. While negotiating with consensual lienholders (as with the First Cash Collateral Motion), the Trustee made certain that any party asserting a secured claim receives the same treatment and protections. The Ruigomez Creditors have already and will continue to receive these same protections and adequate protection, as expressly provided in the proposed order attached to the Motion as Ex. "7." Therefore, contrary to the Ruigomez Creditors' assertions, the Trustee has been working for their benefit, as well as the benefit of **all** creditors. Moreover, the Ruigomez Creditors

---

acting. Are they acting for the benefit of their joint client – the Ruigomez Creditors - when they try to hamstring the Trustee in her efforts to collect funds for the benefit of the Estate and all of the creditors, including the Ruigomez Creditors? Or, conversely, are they acting for the benefit of ACTS when they try to prevent the Trustee from collecting funds that ultimately could go to pay the victims including, among others, the Ruigomez Creditors?

[3]    The Trustee is also in control of approximately $581,114.92 in funds in five IOLTA accounts—Wells Fargo Bank (2), Citizens Business Bank (2) and her estate account (transferred from Nano Bank). All of these accounts were in existence on the petition date. The Trustee has still not been able to determine the source of these funds.

are adequately protected because their collateral will likely be enhanced and has not declined in value. The Ruigomez Creditors' request for adequate protection payments[4] is unfounded given that their asserted lien(s) came into existence after four other creditors alleging secured claims.

All parties asserting secured claims are being treated equally. The Ruigomez Creditors are not entitled to any greater treatment, especially given their alleged junior lien position, and are adequately protected to the same extent as the other alleged secured creditors. Accordingly, because the Trustee has established that all interested parties have consented and/or will receive adequate protection, the Court should grant the Motion and authorize the Trustee to use cash collateral.

## II.  LEGAL ARGUMENT

### A.  The Trustee is Working for the Benefit of All Creditors

The Trustee is working to benefit all creditors and to protect the clients of the Debtor. The Trustee acknowledges that the Ruigomez Creditors have suffered immeasurably and that they bear lifelong burdens. But sadly, they are not the only victims of the Debtor. The Debtor was counsel for thousands of clients, many of whom have also suffered and continue to suffer tremendous loss. Unfortunately, the Trustee continues to discover more clients that were re-victimized like the Ruigomez Creditors.[5] In addition, there are consensual lienholders who are asserting significant secured claims. Therefore, to enhance and preserve the value of the Estate for all creditors, secured and unsecured, the Trustee needs authority to use cash collateral.

---

[4] The Ruigomez Creditors are requesting periodic cash payments in an amount not less than the monthly interest (i.e., 10% annually on the $11 million judgment). This equates to monthly payments of approximately $91,666.67.

[5] As this Court is aware, the Hon. Thomas Durkin in the *Lion Air* case, pending in the United States District Court for the Northern District of Illinois, found the Debtor and Thomas Girardi to be in civil contempt for failing to turn over $2 million in settlement proceeds to the families of the victims that passed away in the *Lion Air* plane crash.

### B. Cash Collateral is Necessary to Preserve and Enhance Value for the Estate

The Trustee's need for use of cash collateral to preserve and further enhance value for the Estate has been sufficiently demonstrated in the Motion and in the Trustee's supporting declaration. Since the Court granted the First Cash Collateral Motion, the Trustee has been able to recover an additional $3.45 million in funds for the Estate. If the Trustee's request to use cash collateral was previously denied, most of these funds wouldn't have been recovered. Importantly, the Trustee's efforts to preserve and enhance value for the Estate have been continuous and are ongoing. As set forth in the Motion, the Trustee protected both the clients' and the Estate's interest in the Debtor's attorneys' fees and costs by reaching a compromise with Frantz Law Group concerning the Southern California Gas Leak Litigation. The Trustee again protected the clients and the Estate's financial interests by agreeing to transfer certain cases of the Debtor to Aitken, Overland & Overland, and other firms. There are many other similar instances where the Trustee has preserved value through case transitions and resolutions of quantum meruit fee and cost claims. By preserving the Estates' interests in these cases, the Trustee has enhanced the value of the Estate and obtained a recovery for the Estate's quantum meruit claims.

It is undeniable that the Ruigomez Creditors' request to deny the Motion will significantly damage the Estate's value. If the Trustee has no authority to use cash collateral, the Trustee will have no ability to fund the limited operations of the Debtor. Consequently, the Trustee will lose access to the Debtor's case information, case files, cost ledgers, and any other electronically stored data. The Trustee will be unable to pay the former employees of the Debtor that have proved to be an invaluable resource for the Trustee's efforts. The Trustee's physical access to the office will be denied or severely limited if the utilities do not remain current, and the Estate could be subject to liability if the insurance for the Debtor's offices lapses. This potential liability may further erode the Estate's value. With little or no information available, it is unlikely the Trustee will be able

to prove or substantiate any quantum meruit claims for the benefit of creditors. Most critically, the Debtor's clients—also victims—will lose information about their cases. This loss of data will prejudice their claims, raise unnecessary barriers to recovery for their loss, and make any transitions to new counsel significantly more difficult. There is no justification for such a result.

The Ruigomez Creditors' request to deny use of cash collateral is against their own best interests. Assuming the alleged secured creditors' claims are valid, the chart below summarizes the estimated amount of asserted secured claims based on date of recordation[6]:

| Order of Recordation | Alleged Lienholder | Estimated Claim |
| --- | --- | --- |
| First | California Attorney Lending II | $6,765,014.57 |
| Second | Stillwell Madison, LLC | $6,500,000.00 |
| Third | Virage SPV 1, LLC | $5,594,069.35 |
|  | Virage SPV 1, LLC | $4,990,572.40 |
| Fourth | Nano Banc | $4,250,000.00 |
| Fifth[7] | Joseph, Jaime, & Kathleen Ruigomez | $11,491,232.87 |
| Sixth | KCC Class Action Services, LLC | $7,504,109.59 |

The Ruigomez Creditors' alleged secured claim is based on a lien(s) that came into existence after four alleged consensual lien holders. The aggregate value of the other higher priority alleged secured creditors (approximately $28 million) well exceeds the current funds on hand in the Estate (approximately $3.8 million). If the Trustee is not authorized to use cash collateral, the Trustee's limited operation of the Debtor will

---

[6]  A more detailed chart is included in the Motion at 11-12 and attached to the Motion as Ex. "8."

[7]  The Ruigomez Creditors' alleged ORAP lien would also be in fifth position.

shutter, and little additional value will be realized for the Estate..  In this scenario, the Ruigomez Creditors will likely receive *nothing*.  The Trustee wants to avoid this scenario, and she and her team have been working relentlessly to preserve and enhance the value for all creditors.  In sum, use of cash collateral is crucial to accomplish the best result.  Denial of the Motion is *not* in the best interest of creditors, including any alleged secured creditors.[8]

### C. The Ruigomez Creditors Have and Will Receive the Same Treatment as the Other Secured Creditors

Contrary to their assertions, the Trustee is not treating the Ruigomez creditors any differently than any of the other alleged secured creditors.[9]  The Trustee has ensured that the Ruigomez Creditors, along with *all* alleged secured creditors, receive the same treatment as the consensual lienholders that have signed the Stipulations.  This was true in the First Cash Collateral Motion and remains true for this Motion.  In the conclusion of the Motion, the Trustee requests that the Court enter an order "[p]roviding **all** alleged secured creditors with the adequate protection and other applicable benefits of the Stipulations[.]"  *See* Motion at 15, ¶ 7 (emphasis added).  Moreover, the proposed order, attached to the Motion as Ex. "7," provides the following:

> 6. CAL II, Stillwell, Virage, Nano, and **any other alleged secured creditor of the Debtor and/or the Estate shall be considered a "secured creditor"** as that term is used in this Order **and shall be entitled to the protections provided to such creditor**;
>
> 10. As adequate protection for the use of cash collateral in accordance with the Budget, **any alleged secured creditor shall receive a post-petition replacement lien** for its

---

[8] Presumably, the alleged consensual lienholders reached the same conclusion by consenting to the Trustee's use of cash collateral.

[9] The Ruigomez Creditors repeatedly and falsely state otherwise.  *See* Response at 9, lines 26-28 ("[T]he Motion provides other relief to those alleged secured creditors that signed a stipulation…but not offered to the Ruigomez Secured Creditors); *see also id*. at 10, line 28 to 11, line 1 ("The Ruigomez Secured Creditors are entitled to all such benefits offered to other alleged financial institutions.").

asserted secured claim(s) against the Debtor's assets with the same validity, priority, scope and extent as any lien(s) held by the alleged secured creditor as of December 18, 2020, the petition date, solely to the extent that the use of cash collateral results in a diminution of the value of the alleged secured creditor's prepetition lien(s);

11.    **Any alleged secured creditor shall not be required to file** any financing statement, notice, lien, or other similar instrument in any jurisdiction, or take any other action in order to perfect its replacement lien created hereunder because the replacement lien is automatically perfected upon entry of this Order;

*See* Motion, Ex. "7" at ¶¶ 6, 10, and 11 (emphasis added).  The proposed order further preserves the right of *any* alleged secured creditor to oppose certain arguments the Trustee may raise, as well as contest the Trustee's reservation of rights under 11 U.S.C. § 506(c).  *Id*. at ¶¶ 13, 14, and 18.  In addition, *any* alleged secured creditor is entitled to request the Trustee's Form 2 Cash Receipts and Disbursements Record subject to confidentiality protections.  *Id*. at ¶ 15.  These protections are not new.  The Ruigomez Creditors received these same protections in the Court's previous orders authorizing use of cash collateral.  *See* Orders at Docket No. 193 and 257.   Thus, the Ruigomez Creditors' request for replacement liens and automatic perfection of their alleged security interest is unnecessary because it is already provided for.

The Ruigomez Creditors' contention that the Trustee has acknowledged the secured claims of CAL II, Stillwell, Virage, and Nano is similarly inaccurate.  *See* Response at 7, 16-18.  This is made clear by provisions in both the Stipulations and the proposed order.  These provisions preserve the Trustee's right to contest the validity, priority, scope or extent of any asserted security interests.  *See* Motion, Ex. "7" at ¶ 13.  The stipulating parties' consent is also revoked if the Trustee challenges their claims during the Cash Collateral Period.  *See id*. at ¶ 17.  In short, the Trustee has not acknowledged the claims of any party asserting secured claims.

The Trustee is currently reviewing and investigating the claims alleged to be secured.  As to the claims asserted by CAL II, Stillwell, Virage, and Nano, the Trustee is

not yet in a position to confirm the validity, extent, scope or priority of their claims, and has made that clear to them. The Ruigomez Creditors filed proofs of claim just four days before the Motion was filed. Similarly, the Trustee has not had sufficient time to reach a determination as to their claims.[10]

### D. The Ruigomez Creditors are Adequately Protected

The Ruigomez Creditors, to the extent they are entitled to adequate protection, are adequately protected. As discussed earlier, the Ruigomez Creditors will receive the same treatment as all other creditors asserting secured claims. Specifically, the Ruigomez Creditors will receive a replacement lien(s) and will not be required to further perfect their lien(s). *See* Motion, Ex. "7" at ¶¶ 10-11. The Trustee has also guaranteed that the additional protections and rights afforded to the stipulating parties extend to the Ruigomez Creditors and all other parties asserting secured claims. *See id.* at ¶¶ 13, 14, 15, and 18. The total amount of the alleged secured claims eclipses the current cash in the Estate. In fact, all alleged secured creditors are currently undersecured. Because the use of cash collateral will enhance the value of the Estate, as evidenced by the $3.8 million the Trustee is currently holding, the Ruigomez Creditors, to the extent they hold a valid secured claim, are further adequately protected. This adequate protection is underscored by the fact that all consensual lienholders have consented to the use of cash collateral, as well as by the Court's prior two orders authorizing the use of cash collateral and finding that all secured creditors are adequately protected. *See* Orders at Docket No. 193 and 257.

---

[10] The Ruigomez Creditors imply that the Trustee is opposing their claims by falsely stating that the Trustee is opposing Jason Rund's compromise with them in Thomas Girardi's individual case. *See* Response at 2, lines 8-9 ("The Trustee in the instant case filed a response in opposition thereto."); *id*. at 4, lines 20-21 ("Further, as stated above, the Trustee filed a response in opposition to the 9019-settlement motion by and between the Ruigomez Secured Creditors and chapter 7 trustee Jason Rund…"). However, the Trustee's *Statement Regarding Chapter 7 Trustee's Motion to Approve Compromise Under FRBP 9019* plainly states "[T]he Trustee's **does not oppose** the relief requested in the Motion[.]" *See* Docket No. 138, case no. 2:20-bk-21020-BR (emphasis added). The Trustee is simply requesting that certain rights be preserved as to the Debtor and the Estate.

The Ruigomez Creditors fail to offer any support for their contention that they are not adequately protected by a replacement lien. Rather, they suggest that there is no adequate protection because it is not clear "what property, if any, such liens may attach to…" *See* Response at 8, lines 2-3. The Trustee has made abundantly clear that the Estate's primary assets are the Debtor's interests in its attorneys' fees and costs incurred in cases. The replacement lien(s) will attach to these recovered funds, to the same extent, validity, priority and scope of the asserted lien(s). Moreover, the Ruigomez Creditors' contention that there is no specific evidence the Trustee is using cash collateral to protect the Estate's interests is also baseless. *See* Response at 9, lines 1-4. As discussed in the Motion, the Court has approved two agreements, a compromise with Frantz Law Group concerning the Southern California Gas Leak Litigation, and another agreement to transfer certain cases to Aitken. And again, the Trustee has recovered $3.45 million for the Estate since the First Cash Collateral Motion. In sum, it is clear that the Trustee's use of cash collateral has protected the Estate's interests in the Debtor's cases.

### E. The Ruigomez Creditors Are Not Entitled to Adequate Protection Payments

The Ruigomez Creditors are not entitled to adequate protection payments. A secured creditor is only entitled to adequate protection from the decline in value of its collateral. *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc.*, Ltd., 484 U.S. 365, 370 (1988). Based on the current cash position of the Estate and other asserted secured claims, the Ruigomez Creditors' alleged secured claim is undersecured or unsecured and not entitled to adequate protection. Moreover, there has been no decline in the value of any collateral. Rather, the value of collateral has increased, with the Trustee having recovered funds of approximately $3.45 million since the First Cash Collateral Motion. The Ruigomez Creditors' request for adequate protection payments is unsupported. They fail to raise any arguments or cite evidence that the value of the collateral has declined. The Ruigomez Creditors, to the extent they are entitled to

adequate protection, are adequately protected, and their request for adequate protection payments is without any basis.

Moreover, the Ruigomez Creditors' request for adequate protection payments will adversely impact other creditors, particularly those who alleged priority senior to them. As noted in the chart above, the Ruigomez Creditors' alleged secured claim arose after four other alleged secured creditors. None of the creditors asserting senior secured claims are receiving adequate protection payments. Moreover, there is no rationale why the Ruigomez Creditors' claim, which is undersecured and junior, should be awarded special treatment. "Payments intended to provide adequate protection are not meant to improve the undersecured creditor's position in relation to other creditors." *First Fed. Bank of Cal. v. Weinstein (In re Weinstein)*, 227 B.R. 284, 297 (B.A.P. 9th Cir. 1998). The Bankruptcy Code does not authorize the Court to elevate the Ruigomez Creditors' claims to the detriment of other creditors.

### F. The Request for Documents is Misplaced

Federal Rule of Evidence ("FRE") 1006 is inapplicable, and the Ruigomez Creditors' request is misplaced. FRE 1006 provides:

> The proponent may use a summary, chart, or calculation **to prove the content of voluminous writings, recordings, or photographs** that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time or place. And the court may order the proponent to produce them in court.

FRE 1006 (emphasis added).

The Trustee is not offering the Budget to prove the content of writings, recordings, or photographs. The Budget is nothing more than what it purports to be, a simple pared-down subsistence budget. Moreover, the Budget is not a summary or chart that represents numerous writings, recordings, or photographs. Rather, the Budget is being offered to demonstrate how the Trustee will spend the cash collateral if authorized by the Court, as well as set forth the monetary limits constraining the Trustee for each line item. In short, the Budget is being offered for transparency, not to summarize other documents

or writings.  Accordingly, because the Trustee is not offering the Budget to prove the content of any writings, recordings, or photographs, the plain language of FRE 1006 indicates that it is inapplicable here.

The Ruigomez Creditors' request for production of documents is misplaced.  Even assuming that FRE 1006 applies (it does not), the request is not properly made in a Response to the Trustee's request to use cash collateral.

## III.     CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court overrule the Ruigomez Creditors' Response and enter an order granting the relief requested in the Motion.

DATED:  April 5, 2021                    Respectfully submitted,

SMILEY WANG-EKVALL, LLP


By: _____
    PHILIP E. STROK
    Attorneys for Elissa D. Miller, Chapter 7 Trustee

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626.

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S REPLY TO RESPONSE BY JOSEPH RUIGOMEZ, JAIME RUIGOMEZ, AND KATHLEEN RUIGOMEZ, TO CHAPTER 7 TRUSTEE'S SECOND MOTION FOR ORDER APPROVING STIPULATIONS FOR USE OF CASH COLLATERAL AND AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(b) AND (d)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 5, 2021 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) April 5, 2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 5, 2021 | Gabriela Gomez-Cruz | /s/ Gabriela Gomez-Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                         F 9013-3.1.PROOF.SERVICE

1. <u>**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u>

- Kyra E Andrassy    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- •Rafey Balabanian    , docket@edelson.com
- •Michelle Balady    mb@bedfordlg.com, leo@bedfordlg.com
- •William C Beall    will@beallandburkhardt.com, carissa@beallandburkhardt.com
- •Ori S Blumenfeld    Ori@MarguliesFaithLaw.com, Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com
- •Sandor Theodore Boxer    tedb@tedboxer.com
- •Richard D Buckley    richard.buckley@arentfox.com
- •Marie E Christiansen    mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-4166@ecf.pacerpro.com
- •Jennifer Witherell Crastz    jcrastz@hrhlaw.com
- •Ashleigh A Danker    Ashleigh.danker@dinsmore.com, SDCMLFiles@DINSMORE.COM;Katrice.ortiz@dinsmore.com
- •Clifford S Davidson    csdavidson@swlaw.com, jlanglois@swlaw.com;cliff-davidson-7586@ecf.pacerpro.com
- •Lei Lei Wang Ekvall    lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- •Richard W Esterkin    richard.esterkin@morganlewis.com
- •Timothy W Evanston    tevanston@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- •Jeremy Faith    Jeremy@MarguliesFaithlaw.com, Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- •James J Finsten    , jimfinsten@hotmail.com
- •Alan W Forsley    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com
- •Eric D Goldberg    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- •Andrew Goodman    agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com
- •Suzanne C Grandt    suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov
- •Steven T Gubner    sgubner@bg.law, ecf@bg.law
- •Marshall J Hogan    mhogan@swlaw.com, knestuk@swlaw.com
- •Sheryl K Ith    sith@cookseylaw.com, sith@ecf.courtdrive.com
- •Razmig Izakelian    razmigizakelian@quinnemanuel.com
- •Lewis R Landau    Lew@Landaunet.com
- •Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- •Craig G Margulies    Craig@MarguliesFaithlaw.com, Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- •Peter J Mastan    peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
- •Edith R. Matthai    ematthai@romalaw.com, lrobie@romalaw.com
- •Kenneth Miller    kmiller@pmcos.com, efilings@pmcos.com
- •Elissa Miller (TR)    CA71@ecfcbis.com, MillerTrustee@Sulmeyerlaw.com;C124@ecfcbis.com;ccaldwell@sulmeyerlaw.com
- •Eric A Mitnick    MitnickLaw@aol.com, mitnicklaw@gmail.com
- •Scott H Olson    solson@vedderprice.com, scott-olson-2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- •Leonard Pena    lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com
- •Michael J Quinn    mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-2870@ecf.pacerpro.com
- •Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com
- •Kevin C Ronk    Kevin@portilloronk.com, Attorneys@portilloronk.com
- •William F Saavino    wsavino@woodsoviatt.com, lherald@woodsoviatt.com
- •Kenneth John Shaffer    johnshaffer@quinnemanuel.com
- •Philip E Strok    pstrok@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- •Boris Treyzon    jfinnerty@actslaw.com, sgonzales@actslaw.com
- • United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- •Eric D Winston    ericwinston@quinnemanuel.com
- •Christopher K.S. Wong    christopher.wong@arentfox.com, yvonne.li@arentfox.com
- •Timothy J Yoo    tjy@lnbyb.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-3.1.PROOF.SERVICE**