Elissa D. Miller
  emiller@sulmeyerlaw.com
333 South Grand Ave., Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| In re | Case No. 2:20-bk-21022-BR |
|---|---|
| GIRARDI KEESE, | Chapter 7 |
| Debtor. | **CHAPTER 7 STATUS REPORT** |

Date:      April 27, 2021
Time:      10:00 a.m.
Ctrm.:     1668 via ZoomGov
           255 E. Temple Street
           Los Angeles, CA 90012

Web Address: https://cacb.zoomgov.com
Meeting ID: 161 282 3731
Password:   123456
Telephone:  (669) 254-5252 (San Jose)
            (646) 828-7666 (New York)

Elissa D. Miller, Chapter 7 Trustee, for the estate of the Debtor Girardi Keese (the "GK Trustee") hereby submits her Chapter 7 Status Report.

**I.**

## FACTUAL BACKGROUND

**A.    The Debtor's Involuntary Bankruptcy Case**

Pre-petition, the Debtor was a plaintiff's law firm based in Los Angeles, California. On December 18, 2020, petitioning creditors Jill O'Callahan, as successor in interest to James O'Callahan, Robert M. Keese, John Abassian, Erika Saldana, Virginia Antonio, and Kimberly Archie (collectively, the "Petitioning Creditors") filed an involuntary chapter

7 bankruptcy petition against the Debtor.[1]  Prior to the involuntary petition, the Debtor practiced in the areas of personal injury, defective products, sexual abuse, toxic torts, business law, employment law, and aviation law.  The Debtor was well known in the national mass torts community representing clients in mass tort cases around the country.  One or more of Debtor's attorneys would often participate on the mass tort case leadership teams.

With a few minor exceptions, all of the Debtor's cases were handled on a contingency basis with different percentages based on the case, the client and the number of clients the Debtor represented in any one case.  There was no rule of thumb.  In addition, the Debtor was co-counsel on some cases and had referring attorneys to whom it had promised a percentage of the recovery on others.  Sometimes the referral fee was documented in a retainer agreement, other times not.

On December 24, 2020, the Petitioning Creditors filed a *Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g)* [Docket No. 12].  The Court entered an order granting the motion on January 5, 2021 [Docket No. 45].  On January 6, 2021, the Trustee was appointed as the interim trustee [Docket No. 50].

On January 13, 2021, the Court entered an *Order Directing: (1) The Clerk of Court to Immediately Enter an Order for Relief under Chapter 7; (2) The United States Trustee to Immediately Appoint a Chapter 7 Trustee; (3) The Debtor to File All Schedules and Related Documentation for Chapter 7 Case within Fourteen Days of the Entry of this Order; and (4) Vacating February 16, 2021 Status Conference* [Docket No. 68].  On January 13, 2021, the Clerk of Court entered an order for relief against the Debtor [Docket No. 69], and the Trustee was appointed and accepted her appointment in the Debtor's case [Docket No. 71].

---

[1]     The Petitioning Creditors also filed an involuntary chapter 7 bankruptcy petition against Thomas V. Girardi, which is currently pending as Bankruptcy Case No. 2:20-bk-21020-BR.

## A.    The Debtor's Primary Assets

At the time the involuntary petition was filed against the Debtor, the Debtor was counsel of record in a significant number of cases which had been undertaken on a contingency basis.  Prior to the involuntary petition date, many of the Debtor's employees and attorneys had resigned.

The Debtor was counsel of record in a number of cases referred to as "Mass Tort Cases," where the Debtor represented between dozens to hundreds of clients in cases concerning similar injuries resulting from a general set of facts or circumstances against the same group of defendants and in one particular instance, in the Southern California Gas Leak Litigation, the Debtor had 8,202 client cases.  In addition, the Debtor was counsel of record in number of cases where the Debtor represented one or more plaintiffs in more discrete actions (the "Discrete Cases").  The Debtor did not have any active class action cases.

All of the cases were at varying litigation stages.  Many cases were pending and still in the midst of active litigation.  Some cases were resolved in principal but with outstanding ministerial and/or other tasks that had to be addressed before the settlement could be finalized and the settlement funds released.  There were a few settled cases that were waiting on instructions as to where to send the settlement funds.  In addition, there were cases where the Debtor had been substituted out pre-petition leaving the Debtor with a quantum meruit claim for its fees and a claim for the recovery of its costs. Without staff and attorneys, the Trustee is left with the challenge of establishing the Estate's rights to fees and costs and collecting on such fees and costs from the Debtor's contingency cases.

/ / /

/ / /

/ / /

/ / /

/ / /

The Debtor's fees and costs in its plethora of cases constitute the most significant assets in the Estate[2] and are likely the main sources of funds that could potentially result in a distribution to the Debtor's unsecured creditors.  Protecting and preserving the Debtor's and clients' interests in these cases are of paramount importance and require a support team for the maintenance of the Debtor's computer systems and access to its physical files and data.

**B.**    **State of the Debtor's Office**

Since her appointment, the Trustee regularly visits the Debtor's offices.  The Debtor's offices are difficult to navigate, disorganized, and hold a large volume of current and old physical case files, including physical exhibits.  In addition, there are numerous antiquated computers, computer accessories, printers, telephones, and other office equipment.

The Debtor occupies two contiguous and conjoined low-rise buildings on Wilshire Boulevard just west of downtown Los Angeles.  The lower floor of each building has large, packed-to-the-gills file rooms with case files (including personal identifiable information (e.g. medical records and social security numbers) ("PII")) dating back decades.  Also in the file rooms are calendars, phone messages, personal correspondence for attorneys long gone from the firm, cancelled checks for the Debtor and for Tom Girardi, personally dating back to the 1990's and in some cases, earlier.  Also in the file rooms are boxes of copies of various publications that mention the Debtor or Tom Girardi.[3]  The Trustee will be determining which of the old client files can be

_____

[2]     In addition, the Debtor has a non-priority unsecured claim against the estate of Thomas Girardi, the Debtor's general partner, pursuant to 11 U.S.C. § 723.  There may also be avoidance actions and interests in miscellaneous assets, which the Trustee is investigating.

[3]     It appeared that if a publication featured Tom Girardi or the Debtor on the cover or featured the Debtor in an article, the Debtor ordered cases of the publication.

shredded and how to provide appropriate notice to the Debtor's former clients.[4]  With no unencumbered funds in the Estate at this time, the Trustee is also analyzing how and whether she will be able to properly dispose of the paper trash as well as the antiquated electronic equipment.

The Debtor's current case files and data are generally stored in one or more of three different methods:  (1) certain case files are stored in physical, paper files, sometimes in one of the file rooms, other times strewn about the office in one or more attorneys' offices or on a secretarial or paralegal desk, (2) some files are stored in a proprietary electronic system of the Debtor, and (3) other files are stored electronically in a program called iManage.  This is in addition to client cost information located on the Debtor's Sage Accounting System.

The accounting department was located in one corner of one of the buildings.  It consists of a separate office for the CFO, three work stations, and a storage room with bank statements going back decades.  To say the offices were a mess is an understatement.  Financial records (bank statements, invoices, tax returns, and other financial records) and other mail and papers were piled high on each and every flat service and in no particular order.  Much of what the Trustee found was very dated.  The good news is that the Debtor did maintain a robust accounting program, both as to costs incurred or advanced for a client and a general ledger.  The Trustee has been able to access and rely upon the data from the accounting program with the assistance of an accounting employee and information technology manager who worked for the Debtor to seek payment of fees and costs and to assist in preparation of the schedules.

---

[4]    The Trustee intends to seek the assistance of the State Bar and/or an ethics expert on this issue.

## II.

## THE DEBTOR'S FINANCIAL CONDITION

At the time of the Trustee's appointment, she began assessing the financial condition of the Debtor.  She found limited cash and significant debt.  Specifically, immediately following her appointment, the Trustee recovered approximately $300,000 in general bank accounts, approximately $650,000 in IOLTA accounts and identified approximately $2.8 million that was being held in blocked minors' accounts.

Through UCC searches, the Trustee identified five creditors with various UCC filings although after further investigation and analysis, the Trustee and her team was able to obtain a complete release of the UCC filings by one such creditor.  The Trustee and her team have had several discussions with the remaining four consensual lien holders and have requested and received documentation from each, which the Trustee and her team are reviewing.[5]  Preliminarily, the consensual lien holders are asserting secured claims totaling in excess of $25 million.[6]  In addition, the Trustee identified judgment liens, including one in the amount of over $11 million asserted by the Ruigomez family, former clients and victims of the Debtor, and another to a vendor in the approximate amount of $7.5 million.

The Trustee was also contacted by numerous vendors whose bills had not been paid and referring attorneys and/or co-counsel who contended they did not get their referral or co-counsel fees.

Most distressing, the Trustee found evidence that many cases had settled but the clients had not received the funds from the settlement.  The Court is acutely aware of the

---

[5]     The information regarding all asserted secured claims is based on representations made to the Trustee.  The Trustee is still investigating any and all such claims and retains all rights to challenge, dispute, and/or object to any claims, including secured claims and the validity, amount, priority, and scope of any such claims and/or liens associated with such claims.

[6]     On April 9, 2021, the Trustee filed a *Motion for Order Setting Bar Date for Filing Secured Proofs of Claim and Approving Form of Notice of Bar Date* [Docket No. 300].

1  Lions Air litigation pending in the federal district court in Chicago, which was initiated by

2  plaintiffs represented by the Debtor who did not receive approximately $2 million in

3  settlement funds and the Ruigomez family who holds a judgment of over $11 million

4  based on unpaid settlement funds due to the family from many years ago.

5    In addition to the over $13 million collectively claimed by the Lions Air litigation

6  plaintiffs and the Ruigomez family, the Trustee has identified and currently estimate that

7  in excess of $10 million in settlement funds were not paid to clients, which includes

8  multiple clients in certain Mass Tort Cases that were resolved and paid pre-petition.  The

9  Trustee is contacted on nearly a daily basis by former clients of the Debtor who claim

10  they did not receive their settlement funds.  The Trustee is maintaining a list of these

11  individuals so they can be included in the bankruptcy schedules as creditors.  The

12  Trustee has not completed a calculation of the total amount of settlement funds that were

13  not paid to the Debtor's clients – a daunting task, given the lack of cooperation from the

14  Debtor.

15    It is against this backdrop the Trustee began her administration of the Estate.

16                                                    **III.**

17    **ACTIONS TAKEN BY THE TRUSTEE SINCE HER APPOINTMENT**

18    **A.**      **General Post-Appointment Matters**

19    Upon her appointment, the Trustee visited the Debtor's offices and began looking

20  for information as to bank accounts, insurance, utilities, etc.

21    The Trustee located bank statements for numerous bank accounts including

22  general accounts, blocked minors' accounts and IOLTA accounts.  All of the general

23  accounts have now been closed and the funds transferred to the Trustee.  With regard to

24  the blocked minors' accounts and the IOLTA accounts, the Court authorized the Trustee

25  to maintain the accounts at their current banks by order entered on March 2, 2021 [See

26  Docket No. 235].

27    The Trustee also looked for the Debtor's existing insurance policies.  She found

28  that the Debtor did not and had not for quite some time, maintained malpractice

1  insurance.  In addition, all of the liability, workers compensation and contents insurance

2  had lapsed.  Thus, the Trustee was required to obtain new liability and contents

3  insurance to protect the Estate.

4          In addition, the Debtor did not have internet access at its office and therefore, the

5  Trustee could not access its data, in part, due to unpaid bills from the vendors and utility

6  providers.  The Trustee worked with the Debtor's former IT manager to identify the

7  various vendors for the services and ultimately was able to be restore all necessary

8  services.

9          The Trustee also learned from former employees that while they had received their

10 final paycheck in November 2020, the firm had not funded their 401k.  The Trustee

11 communicated with the payroll company, the 401k administrator and others to ascertain

12 status.  The Trustee then filed a motion to terminate the 401k which was granted by order

13 entered on March 11, 2021 [Docket No. 259].  The Trustee has been working with TD

14 Ameritrade to effectuate the termination.   Since her appointment the Trustee has been in

15 contact with former employees regarding their 401k and their W-2's.  The information for

16 the W-2's was with the payroll company who refused to provide same since they had not

17 been paid.  Thus, in accordance with the handbook, the Trustee advised the employees

18 of the situation and that they should file an IRS form 4852 with their returns.  Where

19 possible and available, the Trustee has also provided the data which is in the Debtor's

20 accounting system.  The Trustee also refers each of the employees to TD Ameritrade

21 regarding their 401k.

22         These, and the lack of health insurance, are just a few of the employee issues the

23 Trustee and team has had to resolve.

24     **B.**    **Retention of Professionals and Others**

25 The Trustee has retained the following professionals at this time:

26              1.      Smiley Wang-Ekvall, LLP as her general counsel

27              2.      Development Specialists, Inc. ("DSI") as her forensic accountant

28              3.      iDiscovery Solutions, Inc. as her computer specialist

1      4.      Menchaca & Company, LLP as her tax accountant

2      In addition, the Trustee retained and is utilizing the services of Daphne Masin as

3  her field agent.

4      The Trustee is also utilizing the services of several of the Debtor's former

5  employees, to, among other tasks, work with the Trustee and her field agent to find the

6  files so that claims for fees and costs can be asserted, keep the systems operational and

7  generally support the Trustee and her professionals as they work to orderly transition the

8  cases and clients to assist the client and protect the Estate's rights to fees and costs.

9  Without their assistance, the Trustee would not have been able to collect the fees and

10  costs she has collected to date or to transition as many pending cases as she has to

11  date.

12      **C.      Meetings of Creditors, Claims Bar Date and Preparation of Schedules**

13      The Trustee conducted the first meeting of creditors (the "Meeting") on February

14  19, 2021.  There was no appearance on behalf of the Debtor.  The Trustee continued the

15  Meeting until May 18, 2021.

16      Recently, the Trustee filed a motion to designate Chris Kamon, the Debtor's CFO,

17  to appear and testify at the Meeting on behalf of the Debtor.  Mr. Kamon opposed the

18  motion, asserting that due to the criminal investigation commenced in Illinois, he would

19  be invoking his Fifth Amendment privilege and that designation would be futile.  The

20  hearing on the Motion is set concurrently with this status report.

21      The Debtor did not file schedules or a statement of financial affairs.  The Trustee

22  requested and the Court authorized the Trustee extra time to prepare and file them.  The

23  documents are currently due no later than August 24, 2021 and the Trustee expects to

24  have them filed on or before that date.

25      As noted earlier, the Trustee filed a motion requesting that the Court set a bar date

26  for secured creditors to file proofs of claim.  Until the schedules and statement of financial

27  affairs are filed, however, the Trustee submits that it does not make sense to set a

28  general bar date.  The Trustee anticipates requesting a general bar date once those

1  documents are filed.  She is also considering alternative ways to provide notice in the

2  event she does not have current addresses for all of the Debtor's creditors, including

3  former clients who did not receive their settlement payments.

4        **D.**    **Operations, Preparation of Schedules and Cash Collateral**

5      In order to access the information necessary to transfer the files and  preserve the

6  Estate's right to collect fees and costs, the Trustee needed to maintain limited operations.

7  Thus, she filed two motions to operate the business of the Debtor on a limited basis,

8  including to transition files and file notices of liens in cases in order to collect fees and

9  costs and to retain and pay former employees as independent contractors, as well as pay

10  for certain essential vendor services, for a period for six months.  The motions were

11  granted by orders entered on February 16, 2021, and March 2, 2021.  In connection

12  therewith, she has also filed two motions to use cash collateral pursuant to stipulations

13  with creditors asserting consensual liens.  The Court has granted both motions.

14      Pursuant thereto, the Trustee has:

15        1.    Identified and retained former employees of the Debtor to assist in

16  locating the Debtor's case files and accounting records in order to transition the case files

17  and establish claims for fees and costs;

18        2.    Identified and procured necessary insurance;

19        3.    Negotiated with utility providers and other providers of necessary

20  computing services to continue to services so that case files can be located, accessed,

21  and transitioned;

22        4.    Terminated any unnecessary services and is working on identifying

23  potential rights to refunds; and

24        5.    Continued to follow up on any bank accounts and the status of such

25  accounts as they become known to the Trustee, including accounts that existed several

26  years before the commencement of this case.

27      The Trustee also needs access to information on the Debtor's computer systems

28  so that DSI can prepare the Bankruptcy Schedules and Statement of Financial Affairs.

1    The Trustee continues to work diligently to identify cases in which fees and costs

2    may be owing or may be owed to the Debtor and this process, which is ongoing, requires

3    access to the Debtor's computer systems and case files. To date, the Trustee and her

4    team have identified, negotiated for and recovered approximately $3.9 million in fees and

5    costs owed to the Debtor on cases where the Debtor was counsel of record, including in

6    some cases which were completed by new counsel after the Debtor was replaced. In

7    addition, the Trustee and her team have located additional cases in which fees and costs

8    may be due to the Debtor and which may result in a recovery for the Estate in the next

9    few months.

10    **E.** **Transition of Files**

11    Upon and continually since her appointment, the Trustee has received numerous

12    daily e-mails and phone calls from former clients, co-counsel, and referring counsel,

13    requesting information on the status of their case or their settlement payment. The

14    Trustee endeavors to timely respond to each call/email.

15    With the assistance of various former employees of the Debtor who have offered

16    to work with the Trustee part-time as independent contractors, including the individual

17    who was responsible for managing the mass tort database, the Trustee and her team

18    continue to identify additional new cases which need successor counsel and are working

19    to attempt to find counsel to whom cases can be transitioned. These cases may involve

20    from one to more than a hundred clients. This is both with regard to the Mass Tort Cases

21    as well as the Discrete Cases.

22    In addition, the Trustee weekly signs multiple substitutions of counsel for the cases

23    where she assists in finding new counsel, as well as in cases where she is contacted by

24    a new attorney for a former client. These are in addition to the cases which have been

25    transitioned pursuant to orders of this Court where no substitution is necessary (such as

26    the 8,202 Southern California Gas Leak Litigation cases and dozens of Woolsey Fire

27    cases). In addition, the Trustee and her team are negotiating the transitions of half a

28

1   dozen of additional mass tort cases to several firms, which will be presented to the Court

2   for approval in the coming weeks involving a couple of hundred clients.

3       Included in the transition of files are the 8,202 joint clients in the Southern

4   California Gas Leak Litigation where the Debtor was co-counsel with Frantz Law Group

5   ("Frantz").  The Trustee and Frantz entered into a settlement whereby Frantz would take

6   over sole representation of the joint clients and the Estate would retain a substantial

7   quantum meruit claim and the ability to recoup the Debtor's costs.  The arrangement was

8   documented and approved by the Court.  The result of the agreement between the Estate

9   and Frantz was to preserve the Estate's right to fees and costs in the Southern California

10  Gas Leak Litigation.

11      The Trustee estimates that in addition to the Southern California Gas Leak Clients,

12  she has signed substitutions or entered into agreements to transition an additional

13  approximate 1,000 cases.

14      At the same time, her counsel is either negotiating agreements (as presented to

15  this Court) or filing notices of liens for the fees and costs due to the estate for the period

16  the Debtor represented the clients.

17      Not all clients or new counsel have requested case files, but many have and the

18  Trustee has located, collected, and made available for pick-up approximately 75 case

19  files, many involving multiple clients.

20      Hampering the Trustee's transition of the cases is that the Debtor did not maintain

21  an up-to-date case list.  The Trustee initially identified approximately 730 cases[7] but has

22  since learned that some of the cases were pending while others had been resolved.

23  Since her appointment she has identified another approximately 375 cases, including

24  some unresolved mass tort cases.

25  _____

26  [7]    This is not the number of clients as some of these cases have more than one and
27  potentially up to hundreds of clients.  For example, the 8,202 Southern California Gas
    Leak client's cases were listed as one case.
28

1    Unfortunately, some of the cases are cases where the Trustee cannot locate new

2    counsel willing to take the case.  In such situations, the Trustee is notifying the client that

3    the firm is a debtor in bankruptcy, the demise of the Debtor, and that the client must find

4    new counsel or represent themselves. In addition, the Trustee has signed various

5    pleadings and appeared at hearings in the actions to explain to courts around the country

6    of the Debtor's demise and to plead for a continuance of dispositive motion hearings or

7    trial dates to allow Debtor's clients to find new counsel.

8    The identification and transitioning of the Debtor's active cases is and continues to

9    be the Trustee's number one priority, both to protect the interests of the Debtor's clients,

10   as well as to protect and preserve the Estate's most significant asset – the Debtor's

11   contingency fees and costs.  In addition, in cases that have settled but not yet funded, the

12   Trustee and her team are identifying what tasks need to be taken and determining

13   whether those tasks can be completed and settlements secured and disbursed without

14   transitioning the cases.  In a number of instances, stipulations have been filed with the

15   Court that provide the detailed disbursement information for the Court's approval.

16   **F.    The Southern California Gas Leak Litigation**

17   One of the largest assets in this case is the fees that will be due if there is a

18   successful conclusion of the Southern California Gas Leak Litigation.  As noted above,

19   the Debtor, together with Frantz, represented 8,202 clients.  This is approximately 22% of

20   the total plaintiffs in that case.  As discussed above, the Trustee reached an agreement

21   with Frantz to continue its representation of the clients while preserving the Debtor's right

22   to its fees and costs.  The agreement provides for the Estate to receive 45% and Frantz

23   to receive 55% of the fee whereas the pre-petition agreement between the Debtor and

24   Frantz provided for a 50/50 split of the fees.  The Estate also retained its right to the

25   Debtor's fees and reimbursement of costs from the common benefit fund.

26   Shortly after her appointment, the Trustee learned that another law firm—where a

27   former partner and several attorneys at the Debtor now practice—sent misleading

28   phishing e-mails to the clients without regard to the fact that the clients were still

1   represented by Frantz and the Debtor, and utilizing the client list that belonged to the

2   Estate.  The Trustee contends that the firm had inappropriately obtained and used

3   property of the bankruptcy estate and had violated the automatic stay.  The Trustee thus

4   filed a complaint and successfully sought a temporary restraining order against the firm.

5   This litigation is still pending, and the Trustee recently filed a first amended complaint

6   adding claims for fraudulent conveyance to avoid a pre-petition agreement that the

7   defendants claim gave them the rights to the Debtor's cases, and to recover fees and

8   costs that were due to the Debtor in connection with its representation of a former client.

9        **G.**      **Collection of Fees and Costs and Payments To Clients**

10       Since her appointment, the Trustee has entered into several stipulations with

11  defendants, new counsel and former co-counsel to facilitate the distribution of funds to

12  clients, coupled with an agreement on the payment of fees and costs to the Debtor.

13       Based on these stipulations, the Trustee has distributed or caused to be

14  distributed over $26 million to clients and has collected approximately $3.9 million in fees.

15  Based on recent investigations, pending negotiations, as well as anticipated recoveries

16  from existing agreements, the Trustee is anticipating collecting additional fees and costs

17  over the next few months.

18       The process of transitioning cases and protecting and collecting the Debtor's fees

19  is ongoing and is one that consumes the majority of time spent by the Trustee and her

20  team in this case.

21       **H.**      **Miscellaneous Additional Action**

22       The following are additional matters with which the Trustee is dealing:

23       1.      As noted above, the Debtor occupies two conjoined buildings on

24  Wilshire Boulevard – 1122 and 1126 Wilshire.  The Thomas V. Girardi estate has an

25  ownership interest in both.  It is unclear whether and to what extent the Debtor held an

26  ownership interest in one of the two.  Recently, the 1122 building was listed for sale.  As

27  the Trustee and her field agent are the only two people with keys to the building, the

28  Trustee has worked with the co-owners to allow access to the building to the seller's

broker, inspectors and engineers to assess the building.  The Trustee recently learned that the building is now in escrow and will likely have to vacate within the next three months.  The Trustee has been asked to continue to coordinate during the escrow process as well as after closing with architects, contractors and others as they need to seal off the passage ways between the two buildings and separate utility and other services.

In addition, as a result of the pending sale, the Trustee will now have to move out of the 1122 building.  Fortunately, there is room in the 1126 building for the files, equipment and other of the Debtor's property that require moving from the 1122 building.[8] This is a project that the Trustee did not anticipate adding to the agenda or the budget at this time.  The Trustee is currently obtaining estimates for the move.

2.      The Trustee has been monitoring Thomas V. Girardi's individual case to ensure that actions taken by that trustee (the "TG Trustee") do not have a negative impact on the instant case and to protect and preserve this Estate's claim against Thomas Girardi's estate, pursuant to 11 U.S.C. § 723.  Among other things, the Trustee filed a motion to extend the date for all creditors to file actions pursuant to 11 U.S.C. § 523 and joined in the motion by the TG Trustee to extend the date to file actions under 11 U.S.C. § 727.

3.      Shortly after her appointment, the Trustee met with an Auctioneer to value the contents of the offices.  The Trustee was required to do so in order to obtain contents insurance as the Debtor had none.

4.      The Trustee is currently negotiating with the TG Trustee regarding the Estate's rights to recover from the transfer of its interest in or claims relating to two airplanes and for a split of the proceeds of the sale

---

[8] The Trustee has been advised that the buyer will likely want to purchase the furniture.

## IV.

## **FUTURE ACTIONS**

The Trustee anticipates that over the next several months she will continue to work on transitioning cases and protecting the Estate's right to collect fees and costs. Her goal is to complete as much of this project as is possible, within the next three to six months.

With the assistance of her professionals, as noted above, the Trustee is also preparing the bankruptcy schedules and statement of financial affairs.

At the same time, she has commenced collecting historical financial data which she will utilize to attempt to trace the many millions of dollars not paid to the clients.

Once all of the files that can be transitioned are transitioned, and all clients who the Trustee can locate are contacted, the Trustee will need to determine the best and most economical way to dispose of the many years of client files stored at the Debtor's offices and the best and most economical way to notify clients of the pending file destruction. The Trustee anticipates that she will be seeking appropriate orders regarding notice from this Court.

Throughout this process, the Trustee will continue to monitor the case, investigate and take actions to collect the fees and costs owed to the Debtor, prepare periodic reports for the Court and the Office of the United States Trustee, and administer the case as any other chapter 7 case.

The foregoing report is a summary of the major events and matters handled and to be handled by the Trustee in this case. The Trustee will be present at the April 27, 2021 status conference and will be prepared to respond should the Court have any questions.

April 13, 2021                          /s/ *Elissa D. Miller*
                                         Elissa D. Miller

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 STATUS REPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>April 13, 2021</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On (*date*) <u>April 13, 2021</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Debtor
Girardi Keese
1126 Wilshire Blvd
Los Angeles, CA 90017-1904

☐ Service information continued on attached page.

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 13, 2021 | Cheryl Caldwell | /s/Cheryl Caldwell |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 2708887v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

Kyra E Andrassy on behalf of Plaintiff Elissa Miller
kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

Rafey Balabanian on behalf of Creditor Edelson PC
, docket@edelson.com

Michelle Balady on behalf of Creditor Bedford Law Group, APC
mb@bedfordlg.com, leo@bedfordlg.com

William C Beall on behalf of Interested Party Mullen & Henzell, LLP
will@beallandburkhardt.com, carissa@beallandburkhardt.com

William C Beall on behalf of Interested Party Shane Horton
will@beallandburkhardt.com, carissa@beallandburkhardt.com

Ori S Blumenfeld on behalf of Creditor Jaime Ruigomez
Ori@MarguliesFaithLaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com

Ori S Blumenfeld on behalf of Creditor Joseph Ruigomez
Ori@MarguliesFaithLaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com

Ori S Blumenfeld on behalf of Creditor Kathleen Ruigomez
Ori@MarguliesFaithLaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com

Ori S Blumenfeld on behalf of Defendant ABIR COHEN TREYZON SALO, LLP, a California limited liability partnership
Ori@MarguliesFaithLaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com

Ori S Blumenfeld on behalf of Defendant Boris Treyzon Esq
Ori@MarguliesFaithLaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com

Ori S Blumenfeld on behalf of Interested Party Courtesy NEF
Ori@MarguliesFaithLaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com

Sandor Theodore Boxer on behalf of Interested Party Courtesy NEF
tedb@tedboxer.com

Richard D Buckley on behalf of Interested Party L.A. Arena Funding, LLC
richard.buckley@arentfox.com

Marie E Christiansen on behalf of Creditor KCC Class Action Services, LLC
mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-4166@ecf.pacerpro.com

Jennifer Witherell Crastz on behalf of Creditor Wells Fargo Vendor Financial Services, Inc.
jcrastz@hrhlaw.com

Jennifer Witherell Crastz on behalf of Creditor Wells Fargo Vendor Financial Services, LLC
jcrastz@hrhlaw.com

CC 2708887v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

Ashleigh A Danker on behalf of Interested Party Courtesy NEF
Ashleigh.danker@dinsmore.com, SDCMLFiles@DINSMORE.COM;Katrice.ortiz@dinsmore.com

Clifford S Davidson on behalf of Creditor California Attorney Lending II, Inc.
csdavidson@swlaw.com, jlanglois@swlaw.com;cliff-davidson-7586@ecf.pacerpro.com

Lei Lei Wang Ekvall on behalf of Interested Party Courtesy NEF
lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

Lei Lei Wang Ekvall on behalf of Plaintiff Elissa Miller
lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

Lei Lei Wang Ekvall on behalf of Trustee Elissa Miller (TR)
lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

Richard W Esterkin on behalf of Creditor Southern California Gas Company
richard.esterkin@morganlewis.com

Richard W Esterkin on behalf of Interested Party Courtesy NEF
richard.esterkin@morganlewis.com

Timothy W Evanston on behalf of Interested Party Courtesy NEF
tevanston@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com

Timothy W Evanston on behalf of Plaintiff Elissa Miller
tevanston@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com

Timothy W Evanston on behalf of Trustee Elissa Miller (TR)
tevanston@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com

Jeremy Faith on behalf of Interested Party Courtesy NEF
Jeremy@MarguliesFaithlaw.com,
Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com

James J Finsten on behalf of Interested Party Courtesy NEF
, jimfinsten@hotmail.com

Alan W Forsley on behalf of Interested Party Courtesy NEF
alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com

Eric D Goldberg on behalf of Creditor Stillwell Madison, LLC
eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com

Andrew Goodman on behalf of Attorney William F Savino
agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

Andrew Goodman on behalf of Petitioning Creditor Erika Saldana
agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

Andrew Goodman on behalf of Petitioning Creditor Jill O'Callahan
agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

Andrew Goodman on behalf of Petitioning Creditor John Abassian
agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

Andrew Goodman on behalf of Petitioning Creditor Kimberly Archie

CC 2708887v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

Andrew Goodman on behalf of Petitioning Creditor Robert M. Keese
agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

Andrew Goodman on behalf of Petitioning Creditor Virginia Antonio
agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

Suzanne C Grandt on behalf of Interested Party Courtesy NEF
suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov

Steven T Gubner on behalf of Interested Party Courtesy NEF
sgubner@bg.law, ecf@bg.law

Marshall J Hogan on behalf of Creditor California Attorney Lending II, Inc.
mhogan@swlaw.com, knestuk@swlaw.com

Sheryl K Ith on behalf of Creditor Daimler Trust
sith@cookseylaw.com, sith@ecf.courtdrive.com

Razmig Izakelian on behalf of Creditor Frantz Law Group, APLC
razmigizakelian@quinnemanuel.com

Lewis R Landau on behalf of Creditor Virage SPV 1, LLC
Lew@Landaunet.com

Lewis R Landau on behalf of Interested Party Courtesy NEF
Lew@Landaunet.com

Daniel A Lev on behalf of Interested Party Courtesy NEF
dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com

Craig G Margulies on behalf of Defendant ABIR COHEN TREYZON SALO, LLP, a California limited liability partnership
Craig@MarguliesFaithlaw.com,
Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com

Craig G Margulies on behalf of Defendant Boris Treyzon Esq
Craig@MarguliesFaithlaw.com,
Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com

Craig G Margulies on behalf of Interested Party Courtesy NEF
Craig@MarguliesFaithlaw.com,
Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com

Peter J Mastan on behalf of Interested Party Courtesy NEF
peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com

Edith R. Matthai on behalf of Defendant David Lira
ematthai@romalaw.com, lrobie@romalaw.com

Edith R. Matthai on behalf of Interested Party Courtesy NEF
ematthai@romalaw.com, lrobie@romalaw.com

Kenneth Miller on behalf of Interested Party Courtesy NEF
kmiller@pmcos.com, efilings@pmcos.com

CC 2708887v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

Elissa Miller (TR)
CA71@ecfcbis.com, MillerTrustee@Sulmeyerlaw.com;C124@ecfcbis.com;ccaldwell@sulmeyerlaw.com

Eric A Mitnick on behalf of Interested Party Courtesy NEF
MitnickLaw@aol.com, mitnicklaw@gmail.com

Scott H Olson on behalf of Creditor KCC Class Action Services, LLC
solson@vedderprice.com, scott-olson-2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com

Leonard Pena on behalf of Interested Party Robert Girardi
lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com

Michael J Quinn on behalf of Creditor KCC Class Action Services, LLC
mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-2870@ecf.pacerpro.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, morani@ronaldrichards.com

Ronald N Richards on behalf of Plaintiff Robert P Finn
ron@ronaldrichards.com, morani@ronaldrichards.com

Kevin C Ronk on behalf of Creditor U.S. Legal Support, Inc.
Kevin@portilloronk.com, Attorneys@portilloronk.com

William F Savino on behalf of Creditor California Attorney Lending II, Inc.
wsavino@woodsoviatt.com, lherald@woodsoviatt.com

Kenneth John Shaffer on behalf of Creditor Frantz Law Group, APLC
johnshaffer@quinnemanuel.com

Richard M Steingard on behalf of Other Professional Christopher Kamon
, awong@steingardlaw.com

Philip E Strok on behalf of Interested Party Courtesy NEF
pstrok@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com

Philip E Strok on behalf of Trustee Elissa Miller (TR)
pstrok@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com

Boris Treyzon on behalf of Defendant ABIR COHEN TREYZON SALO, LLP, a California limited liability partnership
jfinnerty@actslaw.com, sgonzales@actslaw.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Eric D Winston on behalf of Creditor Frantz Law Group, APLC
ericwinston@quinnemanuel.com

Christopher K.S. Wong on behalf of Interested Party L.A. Arena Funding, LLC
christopher.wong@arentfox.com, yvonne.li@arentfox.com

Timothy J Yoo on behalf of Interested Party Courtesy NEF
tjy@lnbyb.com

Timothy J Yoo on behalf of Interested Party Jason M. Rund
tjy@lnbyb.com

CC 2708887v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                           **F 9013-3.1.PROOF.SERVICE**