1  Peter J. Mastan (State Bar No. 190250)
   *peter.mastan@dinsmore.com*
2  DINSMORE & SHOHL LLP
   550 S. Hope Street, Suite 1765
3  Los Angeles, CA  90071
   Tel:  213-335-7737
4

5  Attorneys for Erika Girardi

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

10  In re                                    ) Case No. 2:20-bk-21022-BR
                                             )
11                                           ) Chapter 7
    GIRARDI KEESE,                           )
12                                           ) **OPPOSITION OF ERIKA GIRARDI TO**
                                             ) **CHAPTER 7 TRUSTEE'S APPLICATION**
13               Debtor.                     ) **TO EMPLOY THE LAW OFFICES OF**
                                             ) **RONALD RICHARDS & ASSOCIATES,**
14                                           ) **A.P.C. AS SPECIAL LITIGATION**
                                             ) **COUNSEL; DECLARATION OF PETER J.**
15                                           ) **MASTAN IN SUPPORT THEREOF;**
                                             ) **REQUEST FOR HEARING ON**
16                                           ) **APPLICATION**
                                             )
17                                           )
                                             ) **(L.B.R. 9013-1(o)(4))**
18                                           )
                                             ) Date:      To Be Set
19                                           ) Time:
                                             ) Ctrm:      1668
20                                           )            255 E. Temple St.
                                             )            Los Angeles, CA  90012
21  _____             ) Judge:     Hon. Barry Russell

22

23

24

25

26

27

28

21625473.9

## I.    INTRODUCTION

Erika Girardi ("Erika") is the current, but estranged, spouse of Thomas Vincent Girardi.  Mr. Girardi is a debtor in related Case No. 2:20-bk-21020-BR (the "Girardi Case").  He is also a principal of Girardi Keese, the debtor (the "Debtor" or "GK") in this case (the "GK Case").  Elissa D. Miller is the Chapter 7 trustee (the "Trustee") in this case.  Erika submits this *Opposition* to the application (ECF No. 318, the "Application") filed on April 26, 2021 by the Trustee for authority to employ Ronald Richards & Associates, A.P.C. (the "Richards Firm") as special litigation counsel.  Ronald N. Richards is the principal of the Richards Firm.

As described in the *Application*, the Trustee contends that Erika "may" have received avoidable transfers from the Debtor.  *Application,* 2:22-23.  Although not a single potentially avoidable transfer is identified, she seeks authority to employ the Richards Firm on a contingency fee basis as special litigation counsel under 11 U.S.C. § 327(c) and/or (e) for the limited purpose of "investigating and recovering" the alleged transfers to Erika.  *Application,* 3:9-10.  Erika understands that such investigation must take place as part of the Trustee's duties.  She is also aware that Jason Rund, the trustee in the Girardi Case, has sought to employ (*see* ECF No. 168 on the Girardi Case docket) Abir, Cohen, Treyzon, Salo, LLP ("ACTS") as special litigation counsel in that case for the same purpose.  Significantly, Erika ***did not*** object to the employment of ACTS.

Here, however, Erika objects to the employment of the Richards Firm on the grounds that that firm has actual conflicts of interest which disqualify it from acting as special counsel to the Trustee.  First, the Richards Firm represents—and continues to represent—plaintiffs in the competing Sheldon Litigation (defined below) asserting the ***very same*** alleged fraudulent transfer claims against Erika that he now seeks to prosecute on behalf of the Trustee and which belong exclusively to the bankruptcy estate.  Not only does the continued assertion of these alleged claims violate the automatic stay by seeking a recovery on claims that belong to the bankruptcy estate, it compromises any advice the Richards Firm might render to the Trustee with respect thereto.

Second, the plaintiffs in the Sheldon Litigation, two law firms, assert that they have claims against the estate based on purported oral fee-splitting agreements with the Debtor.  In California, oral fee-splitting agreements are not enforceable.  As a result, at some point, the Trustee will have

to take a position on these claims.  Her fiduciary duties will require her to object to them.  If she fails to object, or compromises these patently objectionable claims, such negotiation with her own counsel gives rise, at a minimum, to the appearance of impropriety and undermines the Bankruptcy Code's  fundamental underpinnings of transparency and independence of bankruptcy trustee.  Not only does this make the Trustee actually adverse to these purported claimants, the Richards Firm is conflicted as to any confidential information it has or may acquire from one or either of these proposed clients during discovery that further undermines these claims.

Finally, aside from his actual conflicts of interest, it is clear that Mr. Richards' motivations include promoting himself with tabloid-style publicity on social media, rather than maintaining the decorum appropriate to litigants before a bankruptcy court.  Since December 4, 2020, Mr. Richards has made at least 290 social media posts about this case and/or Erika.  Copies of certain of these posts are attached hereto as **Exhibit C.**  For example on April 12, 2021, Mr. Richards tweeted: "Your First Look at The Real Housewives of Beverly Hills Season 11 . . . .  A nice preview of all of the impeachable statements @erikajayne will make . . ." reflecting an apparent bias and prejudgment of Erika and the issues.  Mr. Richards has also commented on Erika's marital residence, her current residence, posted pictures of Mr. Girardi alongside pictures of Bernie Madoff and Pete Rose, posted pictures and commentary about an alleged burglary at the Girardi's marital residence, and repeatedly ended his tweets with the hashtag "GirardiFraud."  *See* **Exhibit C.**  While this conduct may be appropriate for social media influencers, it is not appropriate for a lawyer representing a party in a bankruptcy case, and is particularly unseemly for counsel to a trustee.

## II.    STATEMENT OF FACTS

A.  The Richards Firm's Disclosures.

The *Application's* disclosure regarding the Richards Firm's disinterestedness and connections to the GK Case consists of the following:

> The firm is a small firm and Ronald Richards reviews all matters wherein [sic] the firm is employed or is potentially employed. Richards has determined that the only case in which Richards is involved which has any connection to the Debtor or Thomas Girardi is that Richards is co-counsel with Spertus, Landes & Umhofer, LLP in conection [sic] with *its representation of creditors the Law Offices of Philip Sheldon and The Law*

21625473.9

*Offices of Robert Finn in connection with their claims for unpaid referral fees by the Debtor* [emphasis added].

*See Statement of Disinterestedness for Employment of Professional Person Under FRBP 2014*) attached to the *Application,* Q. 5 on p. 7 of 30 (using the Court's header at the top of the page).

> B.    The Pending Sheldon Litigation.

Attached hereto as **Exhibit A** is a copy of the *First Amended Complaint* (the "Sheldon FAC") filed in the Los Angeles County Superior Court, but now pending before this Court as Adversary Proceeding No. 2:21-ap-01039-BR (the "Sheldon Litigation"), which is the basis of the above-quoted disclosure.  Among other things, the *Sheldon FAC* added Erika, EJ Global, LLC, and Girardi Financial, Inc. as defendants.  Although the Richards Firm is not listed on the caption of the *Sheldon FAC,* on January 29, 2021, the Richards Firm filed a *Notice of Association of Counsel* in the Sheldon Litigation.  *See* **Exhibit B.**

The Sheldon Litigation was removed from the Los Angeles County Superior Court to this Court on March 5, 2021.  Since then, the plaintiffs have stipulated with each of the Trustees to the dismissal of both GK and Mr. Girardi.  *See* ECF Nos. 15, 16, 18, and 22 in the Sheldon Litigation.

> C.    The Richards Firm Failed to Disclose At Least Two Conflicts of Interest.

As shown by the *Sheldon FAC* and discussed below, the Richards Firm's disinterestedness disclosure in the *Application* omits at least two crucial details regarding the firm's representation of the plaintiffs which make the Richards Firm ***actually*** adverse to the Trustee: (i) the causes of action in that litigation, which the Richards Firm continues to prosecute, include the very same alleged fraudulent transfer-type claims against Erika that belong exclusively to the GK estate and (ii) the plaintiffs, two law firms, hold objectionable claims against the GK estate for oral fee-splitting agreements.

As a result, the Trustee is actually adverse to the Richards Firm, which is violating the automatic stay by continuing to pursue claims that belong exclusively to the bankruptcy estate and acting on behalf of the plaintiffs based on alleged, unenforceable oral fee-splitting agreements.  In light of its fiduciary obligations to its existing clients, the plaintiffs, including any confidential client information pertaining to the enforceability of the alleged oral fee-splitting agreement, the

3

21625473.9

1   Richards Firm is ethically compromised in its proposed representation of the Trustee, and its

2   employment should be denied.

3   **III.    BECAUSE THE RICHARDS FIRM HAS ACTUAL CONFLICTS OF INTEREST**

4   **WITH THE TRUSTEE, THE *APPLICATION* MUST BE DENIED**

5   **A.    Actual Conflicts of Interest Require Denial of the *Application***

6   The Trustee seeks to employ the Richards Firm pursuant to 11 U.S.C. § 327 (c) and/or (e).

7   Pursuant to 11 U.S.C. § 327(c):

8

9   [A] person is not disqualified for employment under this section solely
    because of such person's employment by or representation of a creditor,
    unless there is objection by another creditor or the United States trustee, in
10  which case the court ***shall*** disapprove such employment if there is an
    actual conflict of interest [emphasis added].

11

12  In the Central District of California and throughout the country, bankruptcy courts conclude that:

13  [i]f there is any doubt as to the existence of a conflict, that doubt should be
    resolved in favor of disqualification.  *See, e.g., In re Michigan General
14  Corp.,* 78 Bankr. 479, 484 (Bankr. N.D. Tex. 1987), *aff'd in relevant part
    sub nom. Diamond Lumber v. Unsecured Creditors' Committee,* 88 Bankr.
15  773 (N.D. Tex. 1988); *In re Johore Investment Co. (U.S.A.),* 49 Bankr. 710,
    713 (Bankr. D. Ha. 1985). Negligence does not excuse the failure to
16  disclose a possible conflict of interest. *Michigan General, supra,* 78 Bankr.
    at 482; *In re Coastal Equities,* 39 Bankr. 304, 308 (Bankr. S.D. Cal. 1984).

17

18  *See In re Lee*, 94 B.R. 172, 177 (Bankr. C.D. Cal. 1988).  Although *Lee* involved the employment

19  of counsel under 11 U.S.C. § 327(a), the principal is equally applicable to employment under

20  Sections 327(c) or (e): disclosure must be full and candid and actual conflicts of interest necessarily

21  result in denial of employment.

22  Similarly, Section 327(e) permits the employment of counsel by a trustee for a special

23  purpose even though the proposed counsel is not disinterested, provided that the proposed counsel

24  "does not represent or hold any interest adverse to the debtor or to the estate with respect to the

25  matter on which such attorney is to be employed." 11 U.S.C. § 327(e).  The term "adverse interest"

26  is not defined in the Bankruptcy Code, but case law has defined it to mean: (1) possession or

27  assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2)

28  possession or assertion of an economic interest that would create either an actual or potential

21625473.9

dispute in which the estate is the rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate. *Dye v. Brown (In re AFI Holding, Inc.)*, 530 F.3d 832, 845 (9th Cir. 2008). To represent an adverse interest includes serving as an attorney for a party who holds such an adverse interest. *Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis)*, 347 B.R. 679, 688 (9th Cir. BAP 2006).

Federal Rule of Bankruptcy Procedure 2014(a) requires an employment application to state, among other things, "all of . . . [the proposed professional's] connections with the debtor, creditors, [and] any other party in interest . . . ."  The Rule further requires that the professional's accompanying verified statement set forth these same disclosures.  Full disclosure is required for both employment and compensation.  *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 881 (9th Cir. 1995). A professional has a duty to make full, candid and complete disclosure of all facts concerning his transactions with the debtor, and must disclose all connections with the debtor, creditors, and parties in interest, no matter how irrelevant or trivial those connections may seem. *Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474, 480 (9th Cir. BAP 1996).

Rule 2014's disclosure requirements are applied strictly. *Neben & Starrett*, 63 F.3d at 881-882.  Even negligent or inadvertent failures may result in adverse consequences.  *Id.* at 882. Upon failure to comply with disclosure requirements, employment may be denied or revoked, or other sanctions imposed "even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." *Id.* at 880.

**B.**    **The Claims of the Plaintiffs in the *Sheldon FAC* Are Actually Adverse to the Proposed Special Representation**

Avoidance actions arising under Chapter 5 of the Bankruptcy Code, including those arising under state law (such as conversion) under Section 544(b) of the Bankruptcy Code, belong exclusively to the estate.  *See Custom Food Grp., LP v. McCulloch (In re Wilson)*, 527 B.R. 253 (Bankr. N.D. Tex. 2015).  In *Wilson,* the Court found:

Avoidance actions belong to the estate.  *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284—86 (5th Cir. 1994); *Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275—

21625473.9

76 (5th Cir. 1983). "If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim." *Educators Grp.*, 25 F.3d at 1284 (citations omitted); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 7, 120 S. Ct. 1942, 147 L. Ed. 2d 1 (2000) (holding that an administrative claimant does not have standing to seek payment of its claim under § 506(c) because the language of the statute reserves standing on that provision to the trustee); *Reed v. Cooper (In re Cooper)*, 405 B.R. 801, 807 (Bankr. N.D. Tex. 2009) (only the trustee has independent standing to pursue chapter 5 avoidance actions); *Klingman v. Levinson*, 158 B.R. 109, 113 (N.D. Ill. 1993) (once bankruptcy case commences, trustee has right to pursue fraudulently conveyed assets to exclusion of creditors).

In *Hartford Underwriters*, the Supreme Court held that an administrative claimant does not have standing to seek payment of its claim under § 506(c). 530 U.S. at 14. In doing so, the Supreme Court inquired if the text of § 506(c) stating that "[t]he trustee may recover . . ." means that the trustee is the only party empowered to invoke its provisions. *Id.* at 5—6. The Court examined the language and held that "exclusivity is intended." Id. at 6. In doing so, the Court said that "a situation in which a statute authorizes specific action and designates a particular party empowered to take it is surely among the least appropriate in which to presume nonexclusivity." *Id.* The Court also stated that "had Congress intended the provision to be broadly available, it could simply have said so, as it did in describing the parties who could act under other sections of the Code." *Id.* at 7.

Here, as in *Hartford Underwriters*, the sections of the Code under which CFG brings its causes of action, §§ 544 and 548, begin with "[t]he trustee shall . . ." and "[t]he [**7] trustee may . . . ," respectively. 11 U.S.C. §§ 544(a); 548(a)(1) (emphasis added). The Code assigns standing to the trustee to pursue these avoidance actions.

*Id.* at 255-56.

Pursuant to the *Application*, the Richards Firm proposes to investigate and recover alleged, purportedly improper transfers to Erika for the benefit of the estate. *Application,* 3:9-10. Likewise, pursuant to Counts 6 (Fraudulent Transfer) and 7 (Conversion) of the *Sheldon FAC*, the Richards Firm seeks to recover such alleged, purportedly improper transfers from Erika for the benefit of the plaintiffs. *See* **Exhibit B**. The concurrent representation of these conflicting interests is no accident of timing. Since no later than March 2, 2021 and continuing through at least April 24, 2021, Ronald Richards has emailed Peter Mastan of Dinsmore & Shohl LLP ("Dinsmore") requesting that he accept service of a summons and complaint against Erika in the Sheldon Litigation. April 24, 2021 is the day ***after*** the *Application* and Mr. Richards' declaration regarding disinterestedness are ***dated***.[1] In addition, on May 4, 2021, the Richards Firm filed a reply, ECF No. 27 in the Sheldon

---

[1] The *Application*, including Mr. Richards' *Statement of Disinterestedness for Employment of Professional Person Under FRBP 2014)* are dated April 23, 2021, but were not ***filed*** until April 26, 2021.

6

21625473.9

Litigation, in support of his pending remand motion in the Sheldon Litigation.  Thus, not only is the Richards Firm violating the automatic stay by continuing to prosecute alledged causes of action that belong exclusively to the bankruptcy estate, he has continued to do so even after he signed on to represent the Trustee.  Such concurrent representations are unacceptable in bankruptcy cases when one of the attorneys represents the bankruptcy trustee.  *See* Declaration of Peter J. Mastan, attached hereto, ¶ 2.

Here, the Richards Firm cannot simultaneously represent the Trustee and the plaintiffs in the Sheldon Litigation in investigating and prosecuting purported avoidance claims against Erika.  The claims of his existing clients to the proceeds of any potential recoveries against Erika through the Sheldon Litigation are adverse to the Trustee's assertion of an ***exclusive*** right to pursue such potential recoveries on behalf of the estate.  The plaintiffs cannot separately collect on these alleged claims as doing so would deprive the estate of the purported asset.

**C.    The Trustee is Adverse to the Assertion of Claims Based on Fee Splitting by the Plaintiffs in the Sheldon Litigation**

As noted above, Trustee Miller and Trustee Rund have each stipulated with the plaintiffs in the Sheldon Litigation to dismissal of the GK and Girardi estates, respectively.  Each stipulation notes that the plaintiffs are free to assert their purported claims by filing proofs of claim against each estate.  ECF Nos. 15 and 18 in the Sheldon Litigation.  In their *Reply* in support of their remand motion filed in the Sheldon Litigation filed on May 4, 2021, the plaintiffs, through Mr. Richards, indicated their intention to pursue these claims: "Plaintiffs will pursue their claims against the Girardi Debtors in these proceedings,…."  ECF No. 27 in the Sheldon Litigation, 1:18-19.

The plaintiffs in the Sheldon Litigation are law firms: the Law Offices of Philip Sheldon and The Law Offices of Robert Finn.  As set forth in the *Sheldon FAC*, their claims against GK and Mr. Girardi are based on alleged breaches of purported, oral fee-splitting agreements.  *See* **Exhibit A,** Count 1 (Breach of Contract, Count 2 (Breach of Fiduciary Duty), Count 3 (Fraud), and Count 4 (Money Had and Received) of the *Sheldon FAC*.

7

21625473.9

In California, fee-splitting agreements are required to be written.  With respect to fee-splitting, Rule 1.5.1 of the California Rules of Professional Conduct (effective November 1, 2018 and superseding Rule 2-200), Fee Divisions Among Lawyers, provides:

> (a) Lawyers who are not in the same law firm* shall not divide a fee for legal services unless: (1) the lawyers enter into a written* agreement to divide the fee; (2) the client has consented in writing,* either at the time the lawyers enter into the agreement to divide the fee or as soon thereafter as reasonably* practicable, after a full written* disclosure to the client of: (i) the fact that a division of fees will be made; (ii) the identity of the lawyers or law firms* that are parties to the division; and (iii) the terms of the division; and (3) the total fee charged by all lawyers is not increased solely by reason of the agreement to divide fees. (b) This rule does not apply to a division of fees pursuant to court order.
> Comment The writing* requirements of paragraphs (a)(1) and (a)(2) may be satisfied by one or more writings.*

Generally, judicial enforcement of a fee-splitting agreement will not be permitted absent a written agreement.  *See Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler* (2012) 212 Cal.App.4th 172, 179-180 [151 Cal. Rptr. 3d 134] ("Defendants frame the issue here as 'a simple question of law: May a lawyer seek to enforce a purported fee-splitting agreement against another lawyer when there has been no client consent to the agreement as mandated by [rule] 2-200? Under an unbroken line of California precedent, the answer to this question is a resounding, unequivocal 'no.'' "  *See also Kessler v. Beitchman*, 2016 Cal. Super. LEXIS 15043, *6-7:

> Nonetheless, the Court is persuaded on the present record that, to be enforceable, a fee-sharing agreement is valid only when the client consents to the amount that would be shared or the formula by which the sharing would be calculated." [Rules of Professional Conduct], rule 2-200 aims to protect clients by requiring, inter alia, the attorney's written disclosure and the client's written consent to nonexempt fee divisions.' (*Chambers v. Kay* (2002) 29 Cal.4th 142, 162, 126 Cal.Rptr.2d 536, 56 P.3d 645 (*Chambers* ).) "Just as a client has a right to know how his or her attorney's fees will be determined, he or she also has a right to know the extent of, and the basis for, the sharing of such fees by attorneys. Knowledge of these matters helps assure the client that he or she will not be charged unwarranted fees just so that the attorney who actually provides the client with representation on the legal matter has 'sufficient compensation' to be able to share fees with the referring attorney...." [Citation.]' (*Id.* at pp. 156-157, 126 Cal.Rptr.2d 536, 56 P.3d 645.)" *Mark v. Spencer* (2008) 166 Cal.App.4th 219, 226. This interpretation of the rule, particularly the language providing that the client "has a right to know the extent of ... the sharing of such fees" reveals that the attorneys must disclose amount of shared fees or the manner of its calculation and the client must consent.

Here, in the *Sheldon FAC*, the plaintiffs **admit** that their alleged fee-splitting agreements were oral agreements.  *See* **Exhibit A** (Count 1: "38. Plaintiffs and the Girardi Defendants orally

8

21625473.9

agreed to jointly represent clients in the TXI Cases and share any fee recovery in addition to reimbursement to Plaintiffs of Plaintiffs' costs."; Count 2: "43. Plaintiffs and the Girardi Defendants had a fiduciary relationship that was established when the parties orally agreed to jointly represent clients in the TXI Cases and share any fee recovery."). Accordingly, any claims that they assert against the estate based on such purported oral fee-splitting agreements are subject to objection by the Trustee. As a result, the Trustee is actually adverse to any claims asserted by the Richards Firm's existing clients. Even if such claims were pursued by the Trustee's general counsel, the appearance of conflict and impropriety is overwhelming.

### D. If the Court grants the *Application*, it should issue a Gag Order

If Mr. Richards is able to overcome his direct conflict of interest in representing the bankruptcy estate, Erika hereby requests that this Court restrict Mr. Richards from making any further extrajudicial comments about these proceedings. This is necessary to ensure the fairness of the judicial process and to ensure that Mr. Richards complies with his ethical obligations under the California Rules of Professional Conduct.

The California Rules of Professional Conduct specifically limit the lawyers ability to comment in public about ongoing litigation. Rule 3.6 provides that:

> [a] lawyer who is participating or has participated in the investigation of a matter shall not make an extrajudicial statement that the lawyer knowns or reasonable should know will (i) be disseminated by means of public communication and (ii) have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

There are limited exceptions to this rule – namely, that a lawyer may state basic facts about the litigation such as identifying the claims and identities of the persons involved, or identifying upcoming dates and deadlines. The exceptions do not excuse Mr. Richards' historical conduct, which goes far beyond these exceptions and should be stopped if his employment by the trustee is granted.

Tom Girardi is a long time Los Angeles trial lawyer who was recently accused in multiple forums of having misappropriated client settlements and to have otherwise violated his ethical and legal obligations. Mr. Girardi's well known national profile within the legal community, coupled with Erika's status as a member of the "The Real Housewives of Beverly Hills," has subjected this

21625473.9

particular matter to an extensive amount of publicity. While in many regards the publicity cannot be avoided given the circumstances, the attorneys involved in this bankruptcy and other related litigation should not be permitted to further expose this matter to public scrutiny beyond the very narrow exceptions imposed by the rules.

Mr. Richards has at least 13,000 followers on Twitter. According to his Twitter profile, he is a former paid legal analyst for NBC News. He regularly posts Youtube videos and comments to the press on this Case. Since December of 2020, Mr. Richards has made over 290 comments and posted dozens of pictures via Twitter on a near daily basis about Mr. Girardi and Erika. A sampling of these tweets is attached hereto as **Exhibit C.** On April 12, 2021, Mr. Richards boldly concluded that the latest season of "The Real Housewives of Beverly Hills" is "[a] nice preview of all of the impeachable statements @erikajayne will make plus more fake assertions of wealth fueled by the show's lust for material." *See* **Exhibit C.** Mr. Richards has also commented on Erika's marital residence, her current residence, posted pictures of Mr. Girardi alongside pictures of Bernie Madoff and Pete Rose, posted pictures and commentary about an alleged burglary at the Girardi's marital residence, and repeatedly ended his tweets with the hashtag "GirardiFraud." *See* **Exhibit C.** This statement alone reflects Mr. Richards' bias and prejudgement of Erika. Mr. Richards regularly provides his own opinion and interpretation of this litigation and Erika's participation herein. This conduct is both unbecoming of a lawyer and goes far beyond the limited exceptions to Rule 3.6 of the California Rules of Professional Conduct. A lawyer for a bankruptcy trustee is held to a higher standard than a social media commentator.

## IV.    **CONCLUSION**

For the reasons set forth above, the Court must deny the *Application*. If the Court disagrees, the Court should restrict Mr. Richards' direct or indirect out-of-Court statements to the public, except as narrowly permitted by the exceptions to Rule of Conduct 3.6.

DATED: May 10, 2021                              DINSMORE & SHOHL LLP

By: /s/ Peter J. Mastan
Peter J. Mastan
Attorneys for Erika Girardi

21625473.9

## **DECLARATION OF PETER J. MASTAN**

I, Peter J. Mastan, declare as follows:

**1.**    I am a partner in the law firm of Dinsmore & Shohl LLP.  I am one of the attorneys at the firm responsible for the representation of Erika Girardi in this case.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.  Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the pleading to which this *Declaration* is attached.

**2.**    Since no later than March 2, 2021 and continuing through at least April 24, 2021, Ronald Richards has emailed me requesting acceptance of service of a summons and complaint against Erika in the Sheldon Litigation.

**3.**    Pursuant to Fed.R.Evid. 201, Erika requests that the Court take judicial notice of the following:

a.    **Exhibit A** hereto is a copy of the *First Amended Complaint* in the action styled *Law Offices of Philip R. Sheldon et al. v. Thomas R. Girardi et al.,* filed in the Los Angeles County Superior Court and currently pending before this Court as Adversary Proceeding No. 2:21-ap-01039-BR (the "Sheldon Litigation").

b.    **Exhibit B** hereto is a copy of the *Notice of Association of Counsel* filed by Law Offices of Ronald Richards & Associates, A.P.C., in the Sheldon Litigation.

c.    **Exhibit C** contains copies of tweets about the Cases posted by Mr. Richards on his Twitter account since December 4, 2020, including the one posted on April 12, 2021 referred to in the *Opposition.*

d.    Mr. Richards' profile on his Twitter account, @RonaldRichards, states that he has 13,000 followers and describes him as a former NBC News paid legal analyst.

///

///

///

21625473.9

1               e.      Since December 4, 2020, Mr. Richards has posted at least 290

2 tweets about the Cases/

3       I declare under penalty of perjury under the laws of the United States of America that the

4 foregoing is true and correct.

5 DATED: May 10, 2021               DINSMORE & SHOHL LLP

6

7                          By: /s/ Peter J. Mastan
                                  Peter J. Mastan

8                         Attorneys for Erika Girardi

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21625473.9

**EXHIBIT A**

Electronically Received 12/16/2020 07:24 PM

1  SPERTUS, LANDES & UMHOFER, LLP
   James W. Spertus (SBN 159825)
2  Ezra D. Landes (SBN 253052)
   1990 South Bundy Dr., Suite 705
3  Los Angeles, California 90025
   Telephone: (310) 826-4700
4  Facsimile: (310) 826-4711
   jim@spertuslaw.com
5  ezra@spertuslaw.com

6  Attorneys for Plaintiff

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8           FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

9   LAW OFFICES OF PHILIP R.               Case No. 20STCV47160
    SHELDON, APC, a California
10  professional corporation, PHILIP R.    *[Hon. Richard L. Fruin, Dept. 15]*
    SHELDON, an individual, LAW
11  OFFICES OF ROBERT P. FINN, a           **FIRST AMENDED COMPLAINT FOR:**
    California sole proprietorship, and
12  ROBERT P. FINN, an individual,            **1. BREACH OF CONTRACT;**

13                        Plaintiffs,         **2. BREACH OF FIDUCIARY DUTY;**

14         v.                                 3. **FRAUD;**

15  THOMAS V. GIRARDI, an individual;         4. **MONEY HAD AND RECEIVED;**
    GIRARDI & KEESE, a California law
16  firm; ERIKA GIRARDI a/k/a ERIKA          5. **ACCOUNTING;**
    JAYNE, an individual, EJ GLOBAL,
17  LLC, a California limited liability       6. **FRAUDULENT TRANSFER;**
    company, 1126 WILSHIRE
18  PARTNERSHIP, a California general         7. **CONVERSION;**
    partnership, GIRARDI FINANCIAL,
19  INC., a Nevada corporation, DAVID         8. **FINANCIAL ELDER ABUSE;**
    LIRA, an individual, ROBERT
20  FINNERTY, an individual, and DOES       **DEMAND FOR JURY TRIAL.**
    1-100, inclusive,
21
                          Defendants.
22

23

24

25

26

27

28

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, 90025
Telephone 310-826-4700; Facsimile 310-826-4711

---

                    *FIRST AMENDED COMPLAINT*          Exhibit A, p. 013

COME NOW PLAINTIFFS LAW OFFICES OF PHILIP R. SHELDON, APC, and

LAW OFFICES OF ROBERT P. FINN, and for their First Amended Complaint ("FAC"),

complain, aver, and allege as follows:

### **INTRODUCTION**

1.      Attorneys Philip Sheldon and Robert Finn referred thousands of cases to Tom

Girardi and his law firm Girardi & Keese ("GK") pursuant to an agreement to share in the

attorneys' fees paid when the cases settled.  Plaintiffs are both seniors who devoted the

twilight years of their careers to working on these cases with the promise and expectation that

they would have the resources necessary to retire once Girardi paid them for the services they

performed.  However, when the cases ultimately settled, Girardi concealed from Plaintiffs his

receipt of the settlement funds, lulled Plaintiffs into believing they would soon be paid, and

then refused to pay them.  Instead of paying Plaintiffs, Girardi embezzled and redirected the

funds to family members, friends, partners, lenders, and creditors, and used the money to fund

outrageously lavish lifestyles for himself and his wife Erika Jayne, who is better known as one

of *The Real Housewives of Beverly Hills*.  To avoid paying Plaintiffs the amounts owed,

Girardi and his firm "loaned" millions of dollars to Girardi's wife, and then filed a sham

"divorce" to fraudulently keep the money from Plaintiffs and other vulnerable victims.

2.      The other defendants in this case, who are some of those individuals and

entities who received money, have not simply been passively receiving funds that could

plausibly be construed as valid repayments for loans or other obligations.  Rather, with

Girardi's and GK's financial woes and years of fraudulent tactics in full view, these

individuals and entities knowingly conspired with Girardi and GK to redirect to themselves

monies received into the bank accounts of GK and embezzled by Girardi that they knew or

should have known belonged to Plaintiffs and other victims of Girardi's fraud schemes.

3.      With this action, Plaintiffs seek to recover the funds they are owed that were

embezzled and misappropriated by Defendants and seek to punish the Girardi defendants and

their co-conspirators for their fraudulent conduct and contemptible elder abuse of Plaintiffs.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

2

*FIRST AMENDED COMPLAINT*

Exhibit A, p. 014

**THE PARTIES**

4.      Plaintiff Law Offices Philip R. Sheldon, APC (the "Sheldon Firm") is, and at all times relevant to this action was, a law firm and a California professional corporation with its principal place of business in the County of Los Angeles.

5.      Plaintiff Philip R. Sheldon is, and at all times relevant to this action was, a resident of the State of California.  Sheldon is a solo practitioner and the sole owner of the Sheldon Firm.  (The Sheldon Firm and Mr. Sheldon are collectively referred to as the "Sheldon Plaintiffs.")

6.      Plaintiff Law Offices of Robert P. Finn (the "Finn Firm") is, and at all times relevant to this action was, a law firm and a California sole proprietorship with its principal place of business in the County of Los Angeles.

7.      Plaintiff Robert P. Finn is, and at all times relevant to this action was, a resident of the State of California.  Finn is a solo practitioner and the sole owner of the Finn Firm. (The Finn Firm and Mr. Finn are collectively referred to as the "Finn Plaintiffs" and the Sheldon Plaintiffs and the Finn Plaintiffs are collectively referred to herein as "Plaintiffs").

8.      Defendant Thomas V. Girardi ("Girardi") is, and at all times relevant to this action was, a resident of the State of California.  Girardi is, and at all times relevant to this action was, an attorney licensed to practice law in the State of California and is a principal and owner of Defendant Girardi & Keese.

9.      Defendant Girardi & Keese ("GK") is, and at all times relevant to this action was, a California law firm and general partnership with its principal place of business in the County of Los Angeles.  (Defendants Girardi and GK are collectively referred to as the "Girardi Defendants").

10.      Defendant Erika Girardi, also known as Erika Jayne ("Defendant Jayne"), is, and at all times relevant to this action was, a resident of the State of California.  Jayne is the wife of Defendant Girardi.  On information and belief, Jayne has a legal and financial interest in a community property interest in GK and the actions of her husband, taken for the benefit of

3

*FIRST AMENDED COMPLAINT*

Exhibit A, p. 015

their marital community property. Jayne is also a principal owner of Defendants EJ Global,
LLC and Girardi Financial, Inc.

11. Defendant EJ Global, LLC is, and at all times relevant to this action was, a
California limited liability company, with its principal place of business located at 1126
Wilshire Boulevard, Los Angeles, California 90017.

12. Defendant 1126 Wilshire Partnership is, and at all times relevant to this action
was, a California general partnership, with its principal place of business located at 1126
Wilshire Boulevard, Los Angeles, California 90017. Defendant 1126 Wilshire Partnership is
the owner of the real property commonly known as 1126 Wilshire Boulevard, Los Angeles,
California 90017, Assessor's Parcel Number 5143-022-012, with the legal description of:

> LOTS 48 AND 49 OF THE SUBDIVISION OF THAT PART OF LOT 1 IN
> BLOCK 37 OF HANCOCK'S SURVEY, LYING SOUTH OF ORANGE
> STREET AND WESTERLY FROM WILLIAM STREET, IN THE CITY OF
> LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA,
> AS PER MAP RECORDED IN BOOK 9 PAGE 95 OF MISCELLANEOUS
> RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
> COUNTY. EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND
> OTHER HYDROCARBONS, BELOW A DEPTH OF 500 FEET, WITHOUT
> THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS
> OF RECORDS.

(the "1126 Wilshire Property").

13. Defendant Girardi Financial, Inc. ("Girardi Financial") is, and at all times
relevant to this action was, a Nevada corporation, with its principal place of business located at
1126 Wilshire Boulevard, Los Angeles, California 90017. The President of Girardi Financial
is Defendant Girardi, the Secretary is Defendant Jayne, and the Treasurer and Director is
Defendant Lira.

14. Defendant David Lira is, and at all times relevant to this action was, a
California resident. Lira was a partner at GK until in or about May 2020. Lira is also
Defendant Girardi's son-in-law.

15. Defendant Robert Finnerty is, and at all times relevant to this action was, a
California resident. Finnerty was a partner at GK until in or about May 2020.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

4
*FIRST AMENDED COMPLAINT*

16. The true names and capacities of the defendants sued as DOES 1 through 100 are unknown to Plaintiffs. Plaintiffs will amend this FAC to allege such names and capacities as soon as they are ascertained. Plaintiffs are informed and believe, and on that basis allege, that each of these fictitiously named defendants is responsible in some manner for the acts or omissions alleged in this FAC and that Plaintiffs' injuries and damages were proximately caused by the acts or omissions of these defendants.

17. Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned in this FAC, each of the defendants was the agent, co-conspirator, servant, joint venturer, partner, employee and/or employer of each of the remaining defendants and was, in doing the things complained of herein, acting within the scope of his/her/its agency, conspiracy, joint venture, partnership or employment and acting also with the full knowledge or subsequent ratification of his/her/its principals, co-conspirators, joint venturers, partners, employees or employers. Alternatively, in doing the things complained of herein, each of the defendants was acting alone and solely to further his/her/its own personal interests.

## JURISDICTION AND VENUE

18. This Court has personal jurisdiction over Defendants because they maintain offices and/or regularly conduct business in the State of California, and/or reside in the State of California. Additionally, Defendants entered into the relationships with Plaintiffs, entered into the contracts that are the subject of this action, engaged in fraudulent acts in the State of California, and/or conspired with other defendants in the State of California and the contractual duties and obligations under the contracts were to be performed in the State of California, including in Los Angeles County.

19. Venue is proper in this judicial district pursuant to California Code of Civil Procedure section 395 because Defendants contracted to perform obligations in this district, the contracts were also entered into in this district, and Defendants committed tortious acts in this district.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

5

*FIRST AMENDED COMPLAINT*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

## GENERAL ALLEGATIONS

### The Girardi Defendants Scheme to Defraud Plaintiffs

20.      In or about 2008 and 2009, Plaintiffs entered into written retainer agreements with a substantial number of individuals who each retained Plaintiffs to represent them in connection with claims arising from their or their loved one's personal injuries sustained from exposure to toxic chemicals emanating from several cement manufacturing facilities in California; one facility in Riverside, California operated by Riverside Cement Holdings Company, Texas Industries, Inc., TXI Riverside, Inc., TXI Cement Company, and TXI California, Inc., and another facility operated in Colton, California by California Portland Cement Company and CalPortland Company (collectively, the "TXI Cases"). Plaintiffs referred all of the clients to the Girardi Defendants, and Plaintiffs and the Girardi Defendants then jointly represented the clients in the TXI Cases and agreed to share the fees recovered. Pursuant to their agreements with the Girardi Defendants, Plaintiffs were also entitled to be reimbursed for all costs incurred by Plaintiffs in connection with the prosecution of the TXI Cases. In addition to initially retaining the clients, Plaintiffs also performed significant work and provided services in connection with the prosecution of the TXI Cases

21.      The TXI Cases were ultimately resolved with a cash settlement, and the Girardi Defendants received fees, a portion of which should have been held in trust for Plaintiffs in addition to the amount owed Plaintiffs for costs. Rather than honoring their obligation under the contract to pay Plaintiffs the fees plus costs due, the Girardi Defendants kept that money for themselves, and on information and belief, funds that belong to Plaintiffs were paid to each of the Defendants named in this FAC.

22.      Since settling the TXI Cases, the Girardi Defendants have not paid Plaintiffs any of the fees owed pursuant to the fee sharing agreements and have not reimbursed Plaintiffs for their costs. The Girardi Defendants executed a scheme to keep Plaintiffs unaware that they had received fees from the TXI Cases and prevented Plaintiffs from learning that the money for fees and costs had been received by the Girardi Defendants. When Plaintiffs inquired, the Girardi Defendants responded that the fees owed to Plaintiffs would not be received,

*FIRST AMENDED COMPLAINT*

Exhibit A, p. 018

1  calculated or disbursed until liens claimed by the litigation administrator, KCC, were first

2  resolved.  The Girardi Defendants then promised to make preliminary disbursements to

3  Plaintiffs, but after fabricating one reason or another to postpone the disbursements,

4  Defendants failed to fulfill those promises and have made no disbursements to Plaintiffs of any

5  kind and have provided no accounting of the amounts owed.  Plaintiffs are informed and

6  believe that the Girardi Defendants took the attorneys' fees from the settlement amount,

7  retained for themselves the fees and costs owed to Plaintiffs, and distributed portions of the

8  amounts owed to the other Defendants and/or paid debts and obligations of the other

9  Defendants with the funds.  Plaintiffs are also informed and believe that the Girardi

10  Defendants misallocated and misappropriated funds by unlawfully claiming entitlement to

11  reimbursement for purported costs that are either overstated, misstated, unlawful to claim as

12  costs and/or that were used for the personal expenditures of Defendants, and the Girardi

13  Defendants have refused to provide an accounting.

14  **The Girardi Defendants' Lulling Efforts with Respect to the Sheldon Plaintiffs**

15       23.    In a September 19, 2018 letter to Mr. Sheldon, the Girardi Defendants affirmed

16  the fee sharing agreement, and assured Mr. Sheldon that payment would soon be made.  In the

17  letter, which contained the subject line "TXI Referrals," Defendant Girardi wrote to Mr.

18  Sheldon: "My dear pal . . . I know you do not believe this but we are getting close."  The

19  Girardi Defendants did not make any payment to the Sheldon Plaintiffs and, on December 20,

20  2018, Defendant Girardi again wrote another letter to Mr. Sheldon with the subject line "TXI

21  Referrals," stating: "My dear pal: I know you will never believe this, but we are getting much

22  closer.  I hope to have a little something for you."  Again, despite these assurances, the Girardi

23  Defendants did not make any payment to the Sheldon Plaintiffs.

24       24.    On February 7, 2019, Defendant Girardi wrote another letter to Mr. Sheldon in

25  which he falsely claimed that payment to the Sheldon Plaintiffs was delayed because "[t]hese

26  idiots from KCC are making outrageous claim[s] of million of dollars."  Defendant Girardi

27  claimed that he was "meeting with the Special Master to blow them out of the water."  Three

28  weeks later, Defendant Girardi sent Mr. Sheldon another letter with the subject line "TXI

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, 90025
Telephone 310-826-4700; Facsimile 310-826-4711

7

*FIRST AMENDED COMPLAINT*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1    Referrals" in which he again falsely claimed that the payment owed to the Sheldon Plaintiffs

2    was delayed because of claims being made by the litigation administrator, KCC. Defendant

3    Girardi wrote: "We are in an unbelievable fight with KCC. They are claiming $5 million. It is

4    total B.S., but we are attempting to set a hearing in front of the Special Master." The Girardi

5    Defendants' false claims were designed to lull the Sheldon Plaintiffs into believing payment

6    would be made once the issues involving KCC were resolved by the Special Master, but on

7    information and belief, Defendants were already in possession of the settlement funds and

8    were wrongfully withholding and misappropriating the funds, disbursing the funds to the other

9    Defendants and converting the funds.

10         25.    On July 20, 2020, Defendant Girardi wrote a letter to Mr. Sheldon with the

11    subject line "Attorney Fees – TXI Riverside Cement Litigation" in which he again falsely

12    claimed that payment was not being made because of KCC's unresolved claims. Defendant

13    Girardi stated: "I think I will have some very good news in about 30 days. Right now as you

14    know, everything is tied up by the fraudulent claims of KCC."

15         26.    On October 8, 2020, Defendant Girardi spoke to Mr. Sheldon by telephone and

16    promised: "I am going to send you a partial distribution tomorrow," meaning October 9, 2020.

17    Defendant Girardi also promised that he would provide Mr. Sheldon with a breakdown and

18    timeline regarding the TXI Cases' final distribution. In reliance on Defendant Girardi's

19    promises, Mr. Sheldon expended funds of his own that he otherwise would have delayed

20    expending. On October 15, 2020, Mr. Sheldon received a letter from Defendant Girardi, dated

21    October 13, 2020, but the letter did not contain any payment. Rather, the letter, which bore the

22    subject line "Attorney Fees Due for TXI Lawsuit" stated "We still have 150 issues on TXI. I

23    promise you I'll be fair to you as soon as we can distribute."

24         27.    On October 21, 2020, Defendant Girardi sent another letter to Mr. Sheldon with

25    the subject line "Attorney Fees Due for TXI Lawsuit" in which Defendant Girardi falsely

26    stated: "We are down to 60 loopholes before we can distribute. I am attempting to get

27    authority for at least a partial distribution before the end of the month. I am also going to

28

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

make a loan to you out of my own pocket to hopefully tide you over." The Girardi Defendants did not make the promised distribution, and Girardi did not make the promised loan.

**The Girardi Defendants' Lulling Efforts with Respect to the Finn Plaintiffs**

28.  Defendant Lira expressly informed Mr. Finn that the amount of fees the Girardi Defendants owed Mr. Finn for the TXI Cases was $3.94 million. However, after being advised of this, the Girardi Defendants failed to make any payment to the Finn Plaintiffs.

29.  In a March 18, 2020 letter to Mr. Finn, the Girardi Defendants affirmed the fee sharing agreement and the Girardi Defendants promised to pay the Finn Plaintiffs the amounts owed. Defendant Girardi claimed that he had only recently "found out the large number of cases that you had sent, and the large amount of money you are entitled to." Defendant Girardi promised to soon "begin a partial settlement resolution," however, he did not make any payment to the Finn Plaintiffs.

30.  On April 17, 2020, Defendant Girardi again affirmed by letter to Mr. Finn the fee sharing agreement with the Finn Plaintiffs and promised to "get back" to Mr. Finn on April 22, with a report about "three meetings" he was scheduled to have with the settlement judge for the TXI Cases. Defendant Girardi represented that the attorneys' fees had not yet been disbursed and Defendant Girardi further promised to make an "advance" payment to Plaintiff "out of [Defendant Girardi's] own pocket." Defendant Girardi then did not "get back" to Plaintiff on April 22 or make the promised payment.

31.  On May 14, 2020, Defendant Girardi sent Mr. Finn another letter in which he again affirmed the fee sharing agreement and claimed, "I am trying desperately to get you decent legal fee." [sic]. Defendant Girardi further claimed that on May 22, 2020, he was scheduled to have an "important meeting, that I think will solve everything." Defendant Girardi then sent Mr. Finn a letter on May 27, 2020, in which he indicated that the disbursement of the fees owed would be forthcoming. Defendant Girardi stated, "Dear Mr. Finn: You will end up loving me. With kind regards, Tom."

32.  The Girardi Defendants did not make any payment to Plaintiff, and on June 11, 2020, Defendant Girardi sent Mr. Finn a letter stating that the "fraud and deceit of KCC" was

9

*FIRST AMENDED COMPLAINT*

delaying disbursement of the fees to the Finn Plaintiffs. Defendant Girardi claimed that the Girardi Defendants would be filing a class action lawsuit against KCC, and that disbursement of the fees would now be delayed for years until that lawsuit was resolved. Mr. Finn then again asked Defendant Girardi to provide an accounting of the attorneys' fees owed, but the Girardi Defendants ignored the request and failed to provide an accounting. The Girardi Defendants' false claims were designed to lull the Finn Plaintiffs into believing payment would be made once the issues involving KCC were resolved, but on information and belief, the Girardi Defendants were already in possession of the settlement funds and were wrongfully withholding and misappropriating the funds, disbursing the funds to the other Defendants, and converting the funds.

**The Girardi Defendants Fraudulently Transfer Plaintiffs' Funds to Defendants.**

33. For years, Defendant Girardi was aided and abetted in his schemes to defraud by GK employees and partners such as Defendants Lira and Finnerty, who were intimately involved in all of the Girardi Defendants' affairs and were well aware that Girardi was effectively operating a Ponzi scheme. When Defendants Lira and Finnerty received funds conveyed by Defendants Girardi and GK, they received those funds with full knowledge that the funds they were receiving belonged to Plaintiffs or other creditors.

34. Similarly, Defendants Girardi and GK fraudulently transferred funds to Defendant Jayne and her company Defendant EJ Global, LLC. On information and belief, Defendant Girardi used GK to "loan" more than $20 million to EJ Global. Defendants Girardi and Jayne then used those stolen funds to support their notoriously lavish lifestyles, which have been chronicled on the reality series *The Real Housewives of Beverly Hills*. On information and belief, Defendants Girardi's and Jayne's divorce is a sham proceeding designed to further their scheme to place assets outside the reach of creditors like Plaintiffs and to convert the funds.

35. Plaintiffs are informed and believe that Defendant 1126 Wilshire Partnership and its partners received and misappropriated funds that belong to Plaintiffs, with knowledge that the funds belong to and were owed to Plaintiffs and used those funds for the benefit of the

10

*FIRST AMENDED COMPLAINT*

Exhibit A, p. 022

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1126 Wilshire Property and the partners, including to pay debts and/or obligations incurred by the partnership with respect to the property. Defendants Girardi and GK fraudulently conveyed the funds to the partnership and its partners to place the funds outside the reach of Plaintiffs and to allow the funds to be converted by the partnership and its partners.

36. Similarly, Plaintiffs are informed and believe that Girardi Financial, Inc. and its owners, directors, officers, and shareholders, received and misappropriated funds that belong to Plaintiffs, with knowledge that the funds belong to and were owed to Plaintiffs and used those funds for the benefit of Girardi Financial, Inc. and its owners, directors, officers, and shareholders. Defendants Girardi and GK fraudulently conveyed the funds to Girardi Financial, Inc. and its owners, directors, officers, and shareholders to place the funds outside the reach of Plaintiffs and to allow the funds to be converted by the corporation and its owners, directors, officers, and shareholders.

## FIRST CAUSE OF ACTION

### (Breach of Contract – Against the Girardi Defendants and Does 1-20)

37. Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in paragraphs 1 through 36 of this FAC as though set forth fully herein.

38. Plaintiffs and the Girardi Defendants orally agreed to jointly represent clients in the TXI Cases and share any fee recovery in addition to reimbursement to Plaintiffs of Plaintiffs' costs. The Girardi Defendants then repeatedly reaffirmed the agreement by promising to pay the amounts due to Plaintiffs. The Sheldon Plaintiffs' contract damages are $900,000, and the Finn Plaintiffs' contract damages are $3.94 million.

39. Plaintiffs performed as required by jointly representing, with the Girardi Defendants, clients in the TXI Cases. Plaintiffs also incurred costs in connection with the prosecution of the TXI Cases.

40. The Girardi Defendants have breached the fee sharing agreement and the subsequent promises to pay amounts owed by refusing to pay Plaintiffs the portion of the attorneys' fees and the costs that Plaintiffs are entitled to receive in connection with the TXI Cases.

*FIRST AMENDED COMPLAINT*

Exhibit A, p. 023

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

41.     As a direct and proximate result of the Girardi Defendants' breach of the fee

sharing agreement and the subsequent promises to pay amounts owed, the Sheldon Plaintiffs

have been damaged in the amount of $900,000, plus interest at the legal rate, and the Finn

Plaintiffs have been damaged in the amount of $3.94 million, plus interest at the legal rate.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty – Against the Girardi Defendants and Does 1-20)

42.     Plaintiffs re-allege and incorporate herein by this reference each and every

allegation set forth in paragraphs 1 through 41 of this FAC as though set forth fully herein.

43.     Plaintiffs and the Girardi Defendants had a fiduciary relationship that was

established when the parties orally agreed to jointly represent clients in the TXI Cases and

share any fee recovery.  As a result of this fiduciary relationship, the Girardi Defendants had a

duty to act with the utmost good faith for the benefit of Plaintiffs with respect to those matters

connected to the fiduciary relationship.  The Girardi Defendants' duty of good faith and duty

to disclose material facts required the Girardi Defendants to distribute attorneys' fee recovered

from the TXI Cases to Plaintiffs.  The Girardi Defendants further had a fiduciary duty not to

misstate the true amount of costs incurred by the Girardi Defendants, and not to

misappropriate those settlement funds misallocated by the Girardi Defendants as costs.

44.     The Girardi Defendants breached their fiduciary duties by not distributing to

Plaintiffs the amounts due Plaintiffs under the fee-sharing agreement and the subsequent

promises to pay the amounts owed.  The Girardi Defendants further breached their fiduciary

duty to act with the utmost good faith for the benefit of Plaintiffs by misallocating certain

settlement proceeds as costs and misappropriating those purported costs from Plaintiffs, and by

not disclosing the true amount of the costs incurred by the Girardi Defendants to Plaintiffs.

45.     As a direct and proximate result of the Girardi Defendants' breach of their

fiduciary duties, the Sheldon Plaintiffs have been damaged in the amount of $900,000, plus

interest at the legal rate, and the Finn Plaintiffs have been damaged in the amount of $3.94

million, plus interest at the legal rate.

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, 90025
Telephone 310-826-4700; Facsimile 310-826-4711

12

*FIRST AMENDED COMPLAINT*

46.     In doing these acts, the Girardi Defendants acted with oppression, fraud, or malice as defined by California Civil Code section 3294(c), and Plaintiffs are therefore also entitled to punitive and/or exemplary damages in addition to the damages set forth above.

### THIRD CAUSE OF ACTION

**(Fraud – Against the Girardi Defendants and Does 1-20)**

47.     Plaintiff re-alleges and incorporates herein by this reference each and every allegation set forth in paragraphs 1 through 46 of this FAC as though set forth fully herein.

48.     The Girardi Defendants knowingly made false representations to Plaintiffs and made promises without any intent to perform the promises when the Girardi Defendants represented and promised to Plaintiffs that they would share any fee recovery with respect to the TXI Cases referred to the Girardi Defendants by Plaintiffs.  Then, after the TXI Cases were settled, Defendants made additional promises to make payments to Plaintiffs that the Girardi Defendants had no intention of keeping, as the promises were made for the purpose of lulling Plaintiffs into believing Plaintiffs would be paid and stringing Plaintiffs along to enable the Girardi Defendants to avoid making the payments owed to Plaintiffs and to fraudulently transfer the funds to the other Defendants beyond the reach of Plaintiffs to enable Defendants to convert the funds.  On information and belief, the Girardi Defendants also made misrepresentations regarding the effect of the alleged lien claims by third party KCC.  The Girardi Defendants misrepresented to Plaintiffs that the attorneys' fees for the TXI Cases referred to the Girardi Defendants by Plaintiffs had not yet been disbursed to the Girardi Defendants when, in fact, the Girardi Defendants had received the payments from the TXI Cases referred by Plaintiff and had fraudulently transferred the funds to the other Defendants. At the time of making the representations and promises, the Girardi Defendants had no intention of paying Plaintiffs the amounts owed to Plaintiffs by the Girardi Defendants after the Girardi Defendants had received attorney's fees and costs for the TXI Cases referred to the Girardi Defendants by Plaintiffs.

49.     It was justifiable for Plaintiffs to rely on the Girardi Defendants' representations that they would share any fee recovery because Defendant Girardi is an

13

*FIRST AMENDED COMPLAINT*

Exhibit A, p. 025

attorney and a member of the State Bar, and it was justifiable for Plaintiff to presume that the Girardi Defendants would not breach the legal and ethical duties that they ultimately in fact breached.

50.     As a direct and proximate result of Defendants' fraud, the Sheldon Plaintiffs have been damaged in the amount of $900,000, plus interest at the legal rate, and the Finn Plaintiffs have been damaged in the amount of $3.94 million, plus interest at the legal rate.

51.     In doing these acts, Defendants acted with oppression, fraud, or malice as defined by California Civil Code section 3294(c), and Plaintiff is therefore also entitled to punitive and/or exemplary damages in addition to the damages set forth above.

## FOURTH CAUSE OF ACTION

### (Money Had And Received – Against the Girardi Defendants and Does 1-20)

52.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in paragraphs 1 through 51 of this FAC as though set forth fully herein.

53.     On information and belief, the Girardi Defendants have received money that was intended to be held by the Girardi Defendants for the benefit of Plaintiffs.

54.     The money that the Girardi Defendants received was not used for the benefit of Plaintiffs, and the Girardi Defendants have not given the money to Plaintiffs.

55.     Accordingly, Plaintiffs are entitled to recover the money that was received by Defendants to which the Sheldon Plaintiffs and the Finn Plaintiffs are entitled, which is in the amount of $900,000, plus interest at the legal rate, and $3.94 million, plus interest at the legal rate, respectively.

## FIFTH CAUSE OF ACTION

### (Accounting – Against All Defendants)

56.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in paragraphs 1 through 55 of this FAC as though set forth fully herein.

57.     Plaintiffs and the Girardi Defendants orally agreed to jointly represent clients in the TXI Cases and share any fee recovery.  A fiduciary relationship existed between Plaintiffs

14
*FIRST AMENDED COMPLAINT*

Exhibit A, p. 026

and the Girardi Defendants that required the Girardi Defendants to act with the utmost good faith for the benefit of Plaintiffs with respect to the parties' fee-sharing agreement.

58. The Girardi Defendants recovered fees paid in the TXI Cases pursuant to the settlement agreements in those cases, and a portion of those attorneys' fees are the rightful property of Plaintiff under the fee-sharing agreement between Plaintiffs and the Girardi Defendants. The Girardi Defendants transferred the fees owed to Plaintiffs to each of the remaining Defendants.

59. The amount of money due from Defendants is unknown to Plaintiffs and cannot be ascertained without an accounting of the settlement amounts received by the Girardi Defendants and disbursed by the Girardi Defendants to the parties' clients and the remaining Defendants, the costs actually incurred by the Girardi Defendants in connection with the TXI Cases, and the attorneys' fees and costs reimbursements received by the Girardi Defendants in connection with the TXI Cases, therefore making an accounting necessary.

## SIXTH CAUSE OF ACTION

### (Fraudulent Transfer – Against All Defendants)

60. Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in paragraphs 1 through 59 of this FAC as though set forth fully herein.

61. The Sheldon Plaintiffs had a right to payment from the Girardi Defendants in the amount of $900,000, plus interest at the legal rate, and the Finn Plaintiffs had a right to payment from the Girardi Defendants in the amount of $3.94 million, plus interest at the legal rate.

62. With the intent to hinder, delay, and/or defraud Plaintiffs' receipt of the amounts they are owed, and/or without receiving reasonably equivalent consideration in exchange, the Girardi Defendants transferred the amounts owed to Plaintiffs to Defendants Jayne, EJ Global, LLC and its owners, managers and/or members, 1126 Wilshire Partnership and its partners, Girardi Financial, Inc. and its owners, directors, officers, and/or shareholders, Lira, Finnerty, and each of the Doe Defendants. Each of the transferee Defendants actually knew or should have known that they were receiving funds that belonged to Plaintiffs.

15

*FIRST AMENDED COMPLAINT*

63.     Plaintiffs were harmed by the fraudulent transfers in the amounts stated and Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

## SEVENTH CAUSE OF ACTION

### (Conversion – Against All Defendants)

64.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in paragraphs 1 through 63 of this FAC as though set forth fully herein.

65.     The Sheldon Plaintiffs had a right to possess funds in the amount of $900,000, plus interest at the legal rate, and the Finn Plaintiffs had a right to possess funds in the amount of $3.94 million, plus interest at the legal rate.

66.     Defendants substantially interfered with Plaintiffs' property by knowingly or intentionally taking possession of Plaintiffs' property, preventing Plaintiffs from having access to the property, spending the funds, and refusing to return the funds after numerous demands by Plaintiffs.

67.     On information and belief, Defendant 1126 Wilshire Partnership and its partners converted Plaintiffs' property by using the funds for the 1126 Wilshire Partnership's expenditures including expenditures for the 1126 Wilshire Property.

68.     Plaintiffs did not consent to the conversion and Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

## EIGHTH CAUSE OF ACTION

### (Financial Elder Abuse – Individual Plaintiffs Sheldon and Finn Against Defendants Girardi, GK, Lira, Finnerty and Does 21-40)

69.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in paragraphs 1 through 68 of this FAC as though set forth fully herein.

70.     Defendants Girardi, GK, Lira, Finnerty and Does 21-40, and each of them, took, hid, misappropriated, obtained, and/or retained Plaintiffs Sheldon's and Finn's property with the intent to defraud Plaintiffs Sheldon and Finn and/or assisted in taking, hiding, misappropriating, obtaining, and/or retaining Plaintiffs Sheldon's and Finn's property with the

16

*FIRST AMENDED COMPLAINT*

Exhibit A, p. 028

1  intent to defraud Plaintiffs Sheldon and Finn, specifically $900,000 with respect to Mr.

2  Sheldon and $3.94 million with respect to Mr. Finn.

3        71.    Mr. Sheldon and Mr. Finn were each older than 65 years of age at the time of

4  the conduct, and Defendants Girardi's, GK's, Lira's, Finnerty's and Does 21-40's conduct was

5  a substantial factor in causing Plaintiffs Sheldon's and Finn's harm.

6        72.    In doing these acts, Defendants Girardi, GK, Lira, Finnerty and Does 21-40,

7  and each of them, acted with recklessness, oppression, fraud, or malice, as defined by

8  California Civil Code section 3294(c), and Plaintiffs Sheldon and Finn are therefore also

9  entitled to punitive and/or exemplary damages, and damages for pain and suffering as provided

10  in California Welfare and Institutions Code section 15657.5.

11        73.    Plaintiffs Sheldon and Finn are also entitled to enhanced remedies, including

12  without limitation their attorneys' fees and costs, as provided in California Welfare and

13  Institutions Code section 15657.5.

14                            **PRAYER FOR RELIEF**

15      Wherefore, Plaintiffs pray for judgment against Defendants, and each of them, as

16  follows:

17                          **FIRST CAUSE OF ACTION**

18      **(Breach of Contract – Against the Girardi Defendants and Does 1-20)**

19      1.     For compensatory damages and other special, general and consequential

20  damages in the amount of $900,000 for the Sheldon Plaintiffs and $3.94 million for the Finn

21  Plaintiffs;

22      2.     For specific performance of the agreement;

23      3.     For an award of interest, including prejudgment interest, according to law;

24      4.     For an award of costs of suit;

25      5.     For such other and further relief as this Court deems just and proper.

26

27

28

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, 90025
Telephone 310-826-4700; Facsimile 310-826-4711

*FIRST AMENDED COMPLAINT*

Exhibit A, p. 029

**SECOND CAUSE OF ACTION**

**(Breach of Fiduciary Duty – Against the Girardi Defendants and Does 1-20)**

1. For compensatory damages and other special, general and consequential damages in the amount of $900,000 for the Sheldon Plaintiffs and $3.94 million for the Finn Plaintiffs;

2. For punitive and exemplary damages;

3. For a constructive trust for the benefit of Plaintiffs;

4. For an award of interest, including prejudgment interest, according to law;

5. For an award of costs of suit;

6. For such other and further relief as this Court deems just and proper.

**THIRD CAUSE OF ACTION**

**(Fraud – Against the Girardi Defendants and Does 1-20)**

1. For compensatory damages and other special, general and consequential damages in the amount of $900,000 for the Sheldon Plaintiffs and $3.94 million for the Finn Plaintiffs;

2. For punitive and exemplary damages;

3. For a constructive trust for the benefit of Plaintiffs;

4. For an award of interest, including prejudgment interest, according to law;

5. For an award of costs of suit;

6. For such other and further relief as this Court deems just and proper.

**FOURTH CAUSE OF ACTION**

**(Money Had And Received – Against the Girardi Defendants and Does 1-20)**

1. For return of the money had and received by Defendants in the amount of $900,000 for the Sheldon Plaintiffs and $3.94 million for the Finn Plaintiffs;

2. For a constructive trust for the benefit of Plaintiffs;

3. For an award of interest, including prejudgment interest, according to law;

4. For an award of costs of suit;

5. For such other and further relief as this Court deems just and proper.

18

*FIRST AMENDED COMPLAINT*

Exhibit A, p. 030

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, 90025
Telephone 310-826-4700; Facsimile 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, 90025
Telephone 310-826-4700; Facsimile 310-826-4711

## FIFTH CAUSE OF ACTION

### (Accounting – Against the All Defendants)

1.    For an accounting;

2.    For an award of costs of suit;

3.    For such other and further relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION

### (Fraudulent Transfer – Against All Defendants)

1.    For an order that the fraudulent transfers be set aside and/or voided to the extent necessary to satisfy the Sheldon Plaintiffs' claims in the amount of $900,000, plus interest at the legal rate, and the Finn Plaintiffs' claims in the amount of $3.94 million, plus interest at the legal rate;

2.    For an order enjoining Defendant 1126 Wilshire Partnership from selling, encumbering, or disposing of the real property commonly known as 1126 Wilshire Property, a description of which is provided in paragraph 12 of this FAC;

3.    For a constructive trust for the benefit of Plaintiffs;

4.    For an award of interest, including prejudgment interest, according to law;

5.    For an award of costs of suit;

6.    For such other and further relief as this Court deems just and proper.

## SEVENTH CAUSE OF ACTION

### (Conversion – Against All Defendants)

1.    For compensatory damages and other special, general and consequential damages in the amount of $900,000 for the Sheldon Plaintiffs and $3.94 million for the Finn Plaintiffs;

2.    For punitive and exemplary damages;

3.    For a constructive trust for the benefit of Plaintiffs;

4.    For an award of interest, including prejudgment interest, according to law;

5.    For an award of costs of suit;

6.    For such other and further relief as this Court deems just and proper.

19

*FIRST AMENDED COMPLAINT*

Exhibit A, p. 031

**EIGHTH CAUSE OF ACTION**

**(Financial Elder Abuse – Individual Plaintiffs Sheldon and Finn Against Defendants**

**Girardi, GK, Lira, Finnerty and Does 21-40)**

1.      For compensatory damages and other special, general and consequential damages in the amount of $900,000 for the Sheldon Plaintiffs and $3.94 million for the Finn Plaintiffs;

2.      For punitive and exemplary damages;

3.      For pain and suffering damages as provided in California Welfare and Institutions Code section 15657.5;

4.      For attorneys' fees and costs as provided in California Welfare and Institutions Code section 15657.5;

5.      For an award of interest, including prejudgment interest, according to law;

6.      For such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial.

Dated: December 16, 2020          SPERTUS, LANDES & UMHOFER, LLP


                                  By: _____
                                      James W. Spertus
                                      Ezra D. Landes
                                      Attorneys for Plaintiffs

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, 90025
Telephone 310-826-4700; Facsimile 310-826-4711

20

*FIRST AMENDED COMPLAINT*

**EXHIBIT B**

Electronically FILED by Superior Court of California, County of Los Angeles on 01/29/2021 12:15 PM Sherri R. Carter, Executive Officer/Clerk of Court, by W. Moore,Deputy Clerk

1  SPERTUS, LANDES & UMHOFER, LLP
   James W. Spertus (SBN 159825)
2  Ezra D. Landes (SBN 253052)
   1990 South Bundy Dr., Suite 705
3  Los Angeles, California 90025
   Telephone: (310) 826-4700
4  Facsimile:  (310) 826-4711
   jim@spertuslaw.com
5  ezra@spertuslaw.com

6  Ronald Richards, Esq. (SBN 176246)
   Morani Stelmach, Esq.  (SBN 296670)
7  THE LAW OFFICES OF
   RONALD RICHARDS & ASSOCIATES, A.P.C.
8  P. O. Box 11480
   Beverly Hills, California 90213
9  Tel: (310) 556-1001
   Fax: (310) 277-3325
10 Email:  morani@ronaldrichards.com
11 Email: ron@ronaldrichards.com

12 Attorneys for Plaintiff

13          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14          **COUNTY OF LOS ANGELES- CENTRAL DISTRICT**

15 LAW OFFICES OF PHILIP R. SHELDON, APC, a          Case No.: 20STCV47160
   California professional corporation, PHILIP R.    [Assigned for all purposes to Dept. "15", Hon.
16 SHELDON, an individual, LAW OFFICES OF            Richard L. Fruin, Judge presiding.]
   ROBERT P. FINN, a California sole
17 proprietorship, and ROBERT P. FINN, an            **NOTICE OF ASSOCIATION OF COUNSEL**
   individual,
18
19                Plaintiffs,
20        vs.

21 THOMAS V. GIRARDI, an individual; GIRARDI
   & KEESE, a California law firm; ERIKA
22 GIRARDI a/k/a ERIKA JAYNE, an individual, EJ
   GLOBAL, LLC, a California limited liability
23 company, 1126 WILSHIRE PARTNERSHIP, a
   California general partnership, GIRARDI
24 FINANCIAL, INC., a Nevada corporation,
   DAVID LIRA, an individual, ROBERT
25 FINNERTY, an individual, and DOES 1-100,
   inclusive,
26
27        Defendants
28

---

- 1 -

**NOTICE OF ASSOCIATION OF COUNSEL**          **Exhibit B, p. 033**

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Plaintiffs hereby associate in as counsel, Ronald Richards, Morani Stelmach, of the Law Offices of Ronald Richards & Associates, A.P.C., P.O. Box 11480, Beverly Hills, CA 90213; telephone (310) 556-1001, fax (310) 277-3325.

DATED:  January 29, 2021

Law Offices of Ronald Richards & Associates, A.P.C.

/s Ronald Richards

By:_____
RONALD RICHARDS, Esq.
*Attorneys for Plaintiffs*

- 2 -

**EXHIBIT C**

2:25



**Ronald Richards**
@RonaldRichards

I am an attorney that has a unique LA and DC practice that I share insights on national cases. Former NBC News paid Legal Analyst for numerous matters.

📍 Los Angeles   🔗 ronaldrichards.com

📅 Joined June 2009

**122** Following   **13K** Followers

Not followed by anyone you're following

**Tweets**   Tweets & replies   Media   Likes

**Ronald Richards** @RonaldRicha... · 2h  ···
This just in with @michaelavenatti. The government's predicted hard hitting opposition.  The part that will drive MA the most nuts is their quote about how he is simply not famous any more and he is only trying to delay his cases. See attached.



   

Exhibit C. p. 035

1:53

| Tweets | Tweets & replies | Media | Likes |
|---|---|---|---|



**Ronald Richards** @RonaldRich... · 3/23/21 · · ·

BREAKING: FINALLY, Erika Girardi appears in the bankruptcy case through counsel to object to the sale of the house without giving her estate $600,000 in exemptions. This is huge news. Now she is subject to the Court's jurisdiction and discovery. It is incredible that her 1st..



💬 32       🔁 20       ♡ 207       ⬆️

**Ronald Richards** @RonaldRich... · 3/23/21 · · ·

words legally since this all started is I want my $600K exemption carved out of any motion. The house is not in her name.This will throw the settlement into a contested proceeding for sure. EG is claiming a marital interest in the home.The motion complains the divorce is not fin.



            

Covered a lot of ground. Here it is in case you want to listen to it or watch it.
#girardifraud

💬 24          ⇄ 19          ♡ 127          

---



**Ronald Richards** @Ronald... · 4/14/21    •••
One famous with investors and the other, with clients. Also, close in age.



💬 7          ⇄ 11          ♡ 90          ⬆

---



**Ronald Richards** @Ronald... · 4/14/21    •••
Replying to @RonaldRichards

sale of Tom's house. Now, ACTS may be qualified as are the only firm that actually won the race to the courthouse and perf. their judgment but I believe

Exhibit C. p. 037

1:54

**Tweets** | Tweets & replies | Media | Likes





💬 22     🔁 8     ♡ 117     ⬆️



**Ronald Richards** @RonaldRich... · 3/23/21  •••
Yes, we will be transcribing every word.  The show does not provide immunity to its talent. Andy Cohen Says Erika Girardi Will Talk About Divorce from Estranged Husband Tom on RHOBH yahoo.com/entertainment/... via @Yahoo



Andy Cohen Says Erika Girardi Will Talk About Divorce from Estranged Husband...
yahoo.com

💬 35     🔁 19     ♡ 139     ⬆️



**Ronald Richards** @RonaldRich... · 3/23/21  •••
Just in, Girardi's son in law David Lira, married to his daughter Jacqueline Lira fka Girardi has filed a claim AGAINST Girardi & Keese for reimbursement of $150,000 of his legal fees. He has been claiming in numerous cases he can't be sued because he can his father in law.

Exhibit C. p. 038

1:54

**Ronald Richards**
8,163 Tweets

**Tweets**    Tweets & replies    Media    Likes

 **Ronald Richards** @RonaldRich... · 3/23/21    •••
Interesting enough, DL only filed a proof of claim against the Girardi Keese entity which is just a name IMO and not his father in law's personal estate.  He is not seeking direct money from @erikajayne nor @realtomgirardi. His daughter brings TG food every day. #girardifraud

 
 

💬 2        ⟲ 5        ♡ 30        ⬆

 **Ronald Richards** @RonaldRich... · 3/22/21    •••
This just in, @CAALA_org stripped @realtomgirardi  of his Hall of Fame award and his Trial Lawyer of the Year Award.  He has since resigned. This email was just sent to all of its members. This is like Pete Rose getting banned from baseball.  #girardifraud

 

1:55

# Ronald Richards
8,163 Tweets

**Tweets**  |  Tweets & replies  |  Media  |  Likes


**Ronald Richards** @RonaldRicha... · 3/21/21  •••
Erika and Thomas Girardi Are Now Being
Accused Of Staging Divorce and Me...
youtu.be/JP-ikT2R0zk This was a good you
tube by Up and Adam who follow our feed.

💬 20          🔁 12          ♡ 141          ⬆️


**Ronald Richards** @RonaldRicha... · 3/17/21  •••
In a report just filed with the Probate Court by
Tom Girardi's court appointed attorney, who
can't even spell his name correctly, he goes
on to indicate Girardi is living in neat house
taking care of himself. He has no medical
helper and lives alone after the housekeeper
leaves..

 

💬 12          🔁 7          ♡ 91          ⬆️


**Ronald Richards** @RonaldRicha... · 3/17/21  •••
This is really making a mockery of this. He is
directing people from his office and acting
like he is fully functional except when it
comes to lost money or his criminal
investigation. He then has memory laps
Read it yourself and judge. #RHOBH
#girardifraud. This reeks of BS.

Exhibit C. p. 040

1:57



‹

# Ronald Richards
8,163 Tweets

**Tweets**    Tweets & replies    Media    Likes



**Ronald Richards** @RonaldRicha... · 3/12/21   •••
Obviously not everyone is buying the dementia. #girardifraud



> **LA Daily Journal** @LADaily... · 3/12/21
>
> NEW: State Bar objects to Tom Girardi's conservatorship
>
> In a filing Friday, the bar's Chief Trial Counsel wrote that this conservatorship proceeding may interfere with the State Bar discipline process. (No paywall) dailyjournal.com/articles/36183...

💬 9     ⟲ 10     ♡ 109     ⬆



**Ronald Richards** @RonaldRicha... · 3/12/21   •••
Breaking:  Wow!  Ruigomez creditors and Rund strike a deal giving a priority lien over all of Erika/Tom's assets for $9,397,796 with the balance of $2,349,449 going to the estate. This does not effect RM's right to get post petition interest. This means that most of TG's personal

 

1:58

 



← **Ronald Richards**
8,163 Tweets                                    •••

| **Tweets** | Tweets & replies | Media | Likes |

 **Ronald Richards** @RonaldRich... · 3/10/21  •••
Breaking:  Thomas Girardi's law license becomes inactive.  There is no pending case in the State Bar Court. We searched. However, apparently due to the conservatorship, this becomes automatic without the need for a hearing.  Here is the evidence of the update.  #girardifraud

 

💬 41          ⇄ 23          ♡ 191          ⬆

 **Ronald Richards** @RonaldRichar... · 3/8/21  •••
Breaking:  California Franchise Tax Board files tax claims for $5,373,045.55.  This is A STAGGERING sum.  We can't wait to see his fed tax liab.  This was filed in his personal bk.  This means all of the community property with
@erikajayne is subject to this claim.
#girardifraud

 

                              

Exhibit C. p. 042

1:58



# Ronald Richards
8,163 Tweets



**Tweets**      Tweets & replies      Media      Likes

 **Ronald Richards** @RonaldRichar... · 3/5/21  ···
1. Transfer money to spouse and others. ✓
2.  Have spouse file for divorce. ✓
2.  Let firm close and fall apart. ✓
3.  Have brother declare me incompetent. ✓
4.  Slowly fade away while Trustees sell my assets. ✓
5.  Try to avoid all consequences and trust the plan. 💯



💬 28        ⟲ 31        ♡ 218        ⬆️

 **Ronald Richards** @RonaldRichar... · 3/5/21  ···
The right thing for @erikajayne to do at this point is to simply let @realtomgirardi live at her house. If he is truly in such bad shape, why does Erika get to live like this while Tom has no cars, and is a prisoner in an empty home /w strangers coming in and out all day? #RHOBH

 

   

2:01



# Ronald Richards
8,163 Tweets



**Tweets**        Tweets & replies        Media        Likes

  Ronald Richards @RonalRich... · 2/23/21  ...
Update during Girardi hearing today re:
Girardi's home.  The judge indicated Girardi
does not need a 10,000 square foot home and
that he would prefer him to move.  The judge
is asking a lot of questions about the house.
Judge wants to know how much is owed.
There are two...



💬 26        🔁 14        ♡ 171        ⬆️

**Show this thread**

  Ronald Richards @RonaldRich... · 2/23/21  ...
(Now his memory is good apparently.) Hard to
believe mentally infirm Girardi confronted a
burglary.   The conservator is paying for long
term cleaning lady.   His brother Robert is
spending the night.  Judge now mentions
@erikajayne.  Judge wants to know about her!
Judge



                        

Exhibit C. p. 044

2:01



## Ronald Richards
8,163 Tweets

**Tweets**  Tweets & replies  Media  Likes



**Ronald Richards** @RonaldRich... · 2/20/21  ···
Breaking:  @erikajayne and TG's daughter had pymts assigned to them via a court stipulation.  Those payments are still on going.  We are not aware they have been disclosed to anyone.  Attys don't assign their fees to their spouses.  Erika should return this money...#girardifraud






💬 34          ⟲ 34          ♡ 226          ⬆



**Ronald Richards** @RonaldRich... · 2/20/21  ···
as it simply does not belong to her.  I am sure she would not like this revealed but it has to be before these funds are dissipated.  Shirleen Fujimoto is of course the notary.  She was Girardi's secretary.  This is Erika's signature and redacted information.  She won't deny it.




Exhibit C. p. 045

2:02



## Ronald Richards
8,163 Tweets

**Tweets** | Tweets & replies | Media | Likes

 **Ronald Richards** @RonaldRich... · 2/19/21
TRUSTEE'S NOTICE OF INSTRUCTIONS REGARDING TELEPHONIC MEETING OF CREDITORS FOR GIRARDI PERSONALLY, YOU CAN CATCH THE ENCORE
Date: February 19, 2021
Time: 1:00 p.m.
Telephone Access: 866-916-3454
Meeting Passcode: 4876953#
#GIRARDIFRAUD #RHOBH



💬 3    🔁 4    ♡ 43    ⬆️

 **Ronald Richards** @RonaldRich... · 2/19/21
Matter continued to May 18, at 900am. Girardi was a no show. Big shocker. #girardifraud continued.

>  **Ronald Richards** @Ronald... · 2/19/21
> TO THE DEBTOR, DEBTOR'S ATTORNEY AND INTERESTED PARTIES: Please take notice that the §341 Meeting of Credi... scheduled for the above date and tim will be telephonic. This is for GK
> Here is the dial-in: Call 866-918-5491

12:25



<- **Ronald Richards**
8,163 Tweets  •••

**Tweets**    Tweets & replies    Media    Likes

 Ronald Richards @RonaldRich... · 4/14/21  •••
Rund vs. Miller.  Miller is the firm's trustee and Rund is Thomas Girardi's trustee.  Miller is suing the ACTS law firm and Boris Treyzon. ACTS received a settlement on TG's large house split with Rund where their firm and the Ruigomez party will be receiving the lions share of





💬 4      ⟲ 11      ♡ 58      ⬆️

 Ronald Richards @RonaldRich... · 4/14/21  •••
the proceeds of Tom's Pasadena mansion. Here is the optics:  Settlement with Rund lands ACTS an A plus contingency fee gig against @erikajayne. Erika is not exactly a hard target. If ACTS recovers another $10 to $20m they will be making $8m on this plus their large cut from the..



Exhibit C. p. 047

12:25





# Ronald Richards

8,163 Tweets

**Tweets** | Tweets & replies | Media | Likes



**Ronald Richards** @RonaldRich... · 4/14/21 ···
BREAKING: Thomas Girardi's Trustee is obtaining special counsel to sue @erikajayne. The proposed special counsel is a defendant in lawsuit by the Girardi Keese Trustee Elissa Miller. There may be a conflict and the two Trustee's may not be working in tandem on this. Here are..







💬 15        🔁 53        ♡ 209        ⬆️

**Ronald Richards** @RonaldRich... · 4/14/21 ···
the terms. This means that there is credible information that Erika Jayne has received $$ from Tom Girardi and may have transferred it to others. She is refusing to give it back. It is 33% / 45% split depending on the stage of the case. EJ referenced a legal fund. Was it this?





   

12:25



# Ronald Richards
8,163 Tweets



**Tweets**    Tweets & replies    Media    Likes



**Ronald Richards** @RonaldRich... · 4/13/21   •••
Sobering status report by GK Trustee Elissa
Miller.  It shows $23,000,000 in client money
that was stolen but she has been able to safe
guard $26,000,000 for return to clients. This
does not include the tens of millions of dollars
of attorney and vendor claims.  #girardifraud.



💬 16        ⇄ 22        ♡ 154        ⬆

# Promoted Tweet



**BetterHomes&Gardens** ✓  @BHG    •••
Here's how to create the perfect spot to
unwind and recharge.



1:02

   

12:26



# Ronald Richards
8,163 Tweets

| **Tweets** | Tweets & replies | Media | Likes |



**Ronald Richards** @RonaldRich... · 4/13/21 ···
Sutton vs. @erikajayne:  Yet, Sutton recently sold her non Beverly Hills upper Bel Air home (had a lot of debt on it) and had a now cleared $263,000+ state tax lien.  Why is she combative with Erika?  Is this for real?  Here are the quotes:



💬 24          ↻ 14          ♡ 79          ⬆

**Ronald Richards** @RonaldRich... · 4/13/21 ···
Erika's legal drama is also addressed during a second cast dinner, where she viciously confronts Sutton about her comments she's made.
"I am not a liar. You have a lot of f*cking nerve," Erika tells her castmate.
"Don't talk to me like that. Seriously," Sutton fires back...



💬 5          ↻ 8          ♡ 54          ⬆

**Ronald Richards** @RonaldRich... · 4/13/21 ···
"Or what? Or what?" Erika wants to know.
"Or nothing," Sutton states.  We will pull interest on a deep dive or leave it alone. you attack the Girardi's on show, to keep it



               

Exhibit C. p. 050

12:26

**Tweets**    Tweets & replies    Media    Likes



**Ronald Richards** @RonaldRich... • 4/13/21  •••
Breaking:  Thomas Girardi's Pasadena home set to hit the market on April 18, 2021.  This means he could be evicted quickly as the asset will be priced to sell.   Will @erikajayne let him live with her or assisted living?  He has no other asset he can live in.  #girardifraud



💬 29          ⟲ 35          ♡ 175          ⬆



**Ronald Richards** @RonaldRich... • 4/13/21  •••
This is where the dementia defense will be tested.  If he just moves to another place where he takes care of himself at night, his defense will be broken up.  If he moves to Pasadena assisted living on a floor with others, more believable.  This is a crucial juncture for him/us.




12:27

 

# Ronald Richards
8,163 Tweets



**Tweets**      Tweets & replies      Media      Likes

of a taser.   It is clearly negligence and most likely criminal negligence.  It is not murder but it could be involuntarily manslaughter. twitter.com/ABC/status/138...

This Tweet is unavailable.

💬 2      ↻ 3      ♡ 23      ⬆️

 **Ronald Richards** @RonaldRich... · 4/12/21  ···
Your First Look at The Real Housewives of Beverly Hills Season 11 bravotv.com/video/share/43...
A nice preview of all of the impeachable statements @erikajayne will make plus more fake assertions of wealth fueled by the show's lust for material.  Should be great to watch for some!

 Home Page
bravotv.com

💬 24      ↻ 15      ♡ 122      ⬆️

 **Ronald Richards** @RonaldRich... · 4/12/21  ···
This story ran today in the Daily Journal. What a nice surprise that my colleagues covered this matter, it is much appreciated.

 **LA Daily Journal** @LADaily... · 4/12/21
Real lawyer analyzes legal issues of 'Real Housewives' TV show. Ron Richards, a Beverly Hills attorney, breaks down the legal facts for viewers of popular show
ow.ly/93a950Eledb

   

12:49




← **Ronald Richards**
8,163 Tweets

**Tweets**     Tweets & replies     Media     Likes

 **Ronald Richards** @RonaldRichar... · 4/6/21  ...
Breaking:  In connection with an opposition to
@erikajayne's request to get a part of the
$600,000 exemption from Tom Girardi's
house, a lender has provided damaging
signatures showing her direct involvement in
the borrowing by TG and this will become
powerful evidence against..





💬 72        🔁 112        ♡ 459        ⬆

 **Ronald Richards** @RonaldRichar... · 4/6/21  ...
her in any future case if she tries to claim she
didn't know what was going on.  These
purportedly signed documents would
undercut that position.  She was assisting in
the loan and in fact, gave a priority to the
lender over her own personal assets. You can
judge for yourself.



12:49

<

**Ronald Richards**
8,163 Tweets

| Tweets | Tweets & replies | Media | Likes |

Ronald Richards @RonaldRichar... · 4/2/21 ···
This just in. Erika and Tom's residence is approved to hit the market for $13,000,000 with a 4% commission.  This is much lower then what was previously valued.  Before lenders, we are at net of $12.5M and that is a generous price. Girardi will be evicted soon as they will price.



💬 11          ⟲ 26          ♡ 167          ⬆️

**Show this thread**

Ronald Richards @RonaldRichar... · 4/2/21 ···
this to sell by lowering it.  You can review the listing agreement yourself and see how it all works.  We will do a net calculation to the estate but it is not going to be that much as Ruigomez gets 80%.  The key takeaway is now that the listing is authorized, it should be in...



Exhibit C. p. 054

12:50

# Ronald Richards
8,163 Tweets

**Tweets**      Tweets & replies      Media      Likes

💬 14          🔁 19          ♡ 239          📤



**Ronald Richards** @RonaldRichar... · 4/1/21    •••

Big News Just in:  Former Girardi Keese CEO Chris Kamon is taking the 5th and refusing to cooperate with the Trustee.  His newly retained criminal defense attorney confirms a broad reaching investigation. Here are the relevant pages.  Did @realtomgirardi act alone?  #girardifraud




💬 20          🔁 25          ♡ 110          📤



**Ronald Richards** @RonaldRich... · 3/31/21    •••

SHAH ARRAIGNMENT:  ORDER as to Jennifer Shah, Stuart Smith: The arraignment of the above defendants will take place on Friday, April 2, 2021, at 11:00 a.m. Toll Free: 877-226-8163, International: 234-720-6983, and using Access Code: 6542333.  #shahfraud




🏠          🔍          🔔          ✉️

Exhibit C. p. 055

12:51

# Ronald Richards
8,163 Tweets

**Tweets**          Tweets & replies          Media          Likes



💬 9          🔁 6          ♡ 26          ⬆️

 Ronald Richards @RonaldRich... · 3/31/21  ...
Here is the product liability issue.  @BravoTV
People who are predisposed to embellish
their wealth are put under tremendous
pressure to create fake wealth to get on the
show.  The producers must know at some
point.  Yet, they keep filming and weaponize
the cast. The public...






💬 34          🔁 41          ♡ 226          ⬆️

 Ronald Richards @RonaldRich... · 3/31/21  ...
is then harmed or victimized by the thirst for
fame and staying on the show.  The product
that is created is dangerous and should be
subject to strict liability principles or at least,
a negligence standard imposing a duty t
warn.  The first amendment is not a shie
crime.

12:52




# Ronald Richards
8,163 Tweets

**Tweets**   Tweets & replies   Media   Likes



💬 6   ⬆⬇ 5   ♡ 64   ⬆️



**Ronald Richards** @RonaldRich... · 3/30/21 ···
State bar charges famed attorney Tom Girardi
with misappropriating millions from clients
latimes.com/california/sto... Its about time.
Pulling complaint now.



State bar charges famed attorney Tom
Girardi with misappropriating millions fro...
latimes.com

💬 23   ⬆⬇ 28   ♡ 222   ⬆️



**Ronald Richards** @RonaldRich... · 3/30/21 ···
Bravo really needs to start requiring some
sort of moral character screening as well as a
basic debt to income ratio for cast members.
This pattern of using broke hucksters and con
artists is a cycle that needs to be eliminated
and can only be done with a deep dive and
light.

💬 102   ⬆⬇ 90   ♡ 863   ⬆️



**Ronald Richards** @RonaldRich... · 3/30/
Does this sound familiar?   "Shah and S
flaunted their lavish lifestyle to the public

   

Exhibit C, p. 057

12:52

# Ronald Richards
8,163 Tweets

**Tweets**    Tweets & replies    Media    Likes

 **Ronald Richards** @RonaldRich... · 3/24/21 ···
We have been questioning the $20,000,000 claim that EJ Global aka Erika Jayne was loaned this money from TG and Keese. Today's schedules showed Thomas Girardi has loaned GK over $51M. This fact was 1st alleged by the last paid lender who in 2019 was paid in full.  See below docs.



💬 13    🔁 16    ♡ 109    ⬆

**Show this thread**

 **Ronald Richards** @RonaldRich... · 3/24/21 ···
decade.  TG committed one error after another including his firm forgetting to file an opposition.  Needless to say, he lost big time.  Yet, this $20M number was never proven.  If anyone has a document that shows a $20M transfer, send it over.  I guess we can wait and see if..

💬 2    🔁 5    ♡ 46    ⬆

 **Ronald Richards** @RonaldRich... · 3/24
the GK trustee sues EJ for the return of money.  Other than that, we stick by our

Exhibit C. p. 058

12:53



# Ronald Richards
8,163 Tweets

**Tweets**  |  Tweets & replies  |  Media  |  Likes

Ronald Richards @RonaldRich... · 3/24/21

here we need to unpack it for you.  Here are nine select pages.  We will do some deep analysis tomorrow in a podcast and will highlight specific information shortly.  Also, he admits to many large gifts and transfers to others, wonder who?  Financial info still under review!







💬 7        ⟲ 4        ♡ 58        ⬆

Ronald Richards @RonaldRich... · 3/24/21  ···

here are the rest of the selected schedules. The mystery has now widened substantially. Where is the money?  #girardifraud #rhobh




💬 15        ⟲ 8        ♡ 79        ⬆

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My
business address is:

Dinsmore & Shohl LLP
550 S. Hope Street, Suite 1765
Los Angeles, CA 90071

A true and correct copy of the foregoing document entitled (*specify*): ***Opposition Of Erika Girardi
To Chapter 7 Trustee's Application To Employ The Law Offices Of Ronald Richards &
Associates, A.P.C. As Special Litigation Counsel; Declaration of Peter J. Mastan in Support
Thereof; Request For Hearing on Application*** will be served or was served **(a)** on the judge in
chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the
court via NEF and hyperlink to the document. On **May 10, 2021**, I checked the CM/ECF docket
for this bankruptcy case or adversary proceeding and determined that the following persons are on
the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On _____, 2021, I served the following persons and/or entities at the last known
addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy
thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed
as follows. Listing the judge here constitutes a declaration that mailing to the judge will be
completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE
TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to
F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **May 10, 2021**, I served the following persons
and/or entities by personal delivery, overnight mail service, or (for those who consented in writing
to such service method), by facsimile transmission and/or email as follows.  Listing the judge here
constitutes a declaration that personal delivery on, or overnight mail to, the judge will be
completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and
correct.

| 5/10/21 | Katrice Ortiz | /s/ Katrice Ortiz |
|---------|---------------|-------------------|
| *Date* | *Printed Name* | *Signature* |

21625473.9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**In re GIRARDI KEESE**
Case No. 2:20-bk-21022-BR
U.S.B.C. Central District of California
Los Angeles Division

1.    **SERVED VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Kyra E Andrassy on behalf of Plaintiff Elissa Miller
kandrassy@swelawfirm.com,
lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

Rafey Balabanian on behalf of Creditor Edelson PC
rbalabanian@edelson.com, docket@edelson.com

Michelle Balady on behalf of Creditor Bedford Law Group, APC
mb@bedfordlg.com, leo@bedfordlg.com

William C Beall on behalf of Interested Party Mullen & Henzell, LLP
will@beallandburkhardt.com, carissa@beallandburkhardt.com

William C Beall on behalf of Interested Party Shane Horton
will@beallandburkhardt.com, carissa@beallandburkhardt.com

Ori S Blumenfeld on behalf of Creditor Jaime Ruigomez
Ori@MarguliesFaithLaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaith
Law.com

Ori S Blumenfeld on behalf of Creditor Joseph Ruigomez
Ori@MarguliesFaithLaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaith
Law.com

Ori S Blumenfeld on behalf of Creditor Kathleen Ruigomez
Ori@MarguliesFaithLaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaith
Law.com

Ori S Blumenfeld on behalf of Defendant ABIR COHEN TREYZON SALO, LLP, a
California limited liability partnership
Ori@MarguliesFaithLaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaith
Law.com

Ori S Blumenfeld on behalf of Defendant Boris Treyzon Esq
Ori@MarguliesFaithLaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaith
Law.com

Ori S Blumenfeld on behalf of Interested Party Courtesy NEF
Ori@MarguliesFaithLaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaith
Law.com

21625473.9

Richard D Buckley on behalf of Interested Party L.A. Arena Funding, LLC
richard.buckley@arentfox.com

Marie E Christiansen on behalf of Creditor KCC Class Action Services, LLC
mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-4166@ecf.pacerpro.com

Jennifer Witherell Crastz on behalf of Creditor Wells Fargo Vendor Financial Services, Inc.
jcrastz@hrhlaw.com

Jennifer Witherell Crastz on behalf of Creditor Wells Fargo Vendor Financial Services, LLC
jcrastz@hrhlaw.com

Ashleigh A Danker on behalf of Interested Party Courtesy NEF
Ashleigh.danker@dinsmore.com,
SDCMLFiles@DINSMORE.COM;Katrice.ortiz@dinsmore.com

Clifford S Davidson on behalf of Creditor California Attorney Lending II, Inc.
csdavidson@swlaw.com, jlanglois@swlaw.com;cliff-davidson-7586@ecf.pacerpro.com

Lei Lei Wang Ekvall on behalf of Interested Party Courtesy NEF
lekvall@swelawfirm.com,
lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

Lei Lei Wang Ekvall on behalf of Plaintiff Elissa Miller
lekvall@swelawfirm.com,
lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

Lei Lei Wang Ekvall on behalf of Trustee Elissa Miller (TR)
lekvall@swelawfirm.com,
lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

Richard W Esterkin on behalf of Creditor Southern California Gas Company
richard.esterkin@morganlewis.com

Richard W Esterkin on behalf of Interested Party Courtesy NEF
richard.esterkin@morganlewis.com

Timothy W Evanston on behalf of Interested Party Courtesy NEF
tevanston@swelawfirm.com,
gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com

Timothy W Evanston on behalf of Plaintiff Elissa Miller
tevanston@swelawfirm.com,
gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com

Timothy W Evanston on behalf of Trustee Elissa Miller (TR)
tevanston@swelawfirm.com,
gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com

Jeremy Faith on behalf of Interested Party Courtesy NEF
Jeremy@MarguliesFaithlaw.com,
Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com

21625473.9

James J Finsten on behalf of Interested Party Courtesy NEF
, jimfinsten@hotmail.com

Alan W Forsley on behalf of Interested Party Courtesy NEF
alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com

Eric D Goldberg on behalf of Creditor Stillwell Madison, LLC
eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com

Andrew Goodman on behalf of Attorney William F Savino
agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

Andrew Goodman on behalf of Petitioning Creditor Erika Saldana
agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

Andrew Goodman on behalf of Petitioning Creditor Jill O'Callahan
agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

Andrew Goodman on behalf of Petitioning Creditor John Abassian
agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

Andrew Goodman on behalf of Petitioning Creditor Kimberly Archie
agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

Andrew Goodman on behalf of Petitioning Creditor Robert M. Keese
agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

Andrew Goodman on behalf of Petitioning Creditor Virginia Antonio
agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

Suzanne C Grandt on behalf of Interested Party Courtesy NEF
suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov

Steven T Gubner on behalf of Interested Party Courtesy NEF
sgubner@bg.law, ecf@bg.law

Marshall J Hogan on behalf of Creditor California Attorney Lending II, Inc.
mhogan@swlaw.com, knestuk@swlaw.com

Sheryl K Ith on behalf of Creditor Daimler Trust
sith@cookseylaw.com, sith@ecf.courtdrive.com

Razmig Izakelian on behalf of Creditor Frantz Law Group, APLC
razmigizakelian@quinnemanuel.com

Lewis R Landau on behalf of Creditor Virage SPV 1, LLC
Lew@Landaunet.com

Lewis R Landau on behalf of Interested Party Courtesy NEF
Lew@Landaunet.com

Daniel A Lev on behalf of Interested Party Courtesy NEF
dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com

Elizabeth A Lombard on behalf of Creditor American Express National Bank c/o Zwicker &
Associates, P.C.

3

21625473.9

elombard@zwickerpc.com, bknotices@zwickerpc.com

Craig G Margulies on behalf of Defendant ABIR COHEN TREYZON SALO, LLP, a
California limited liability partnership
Craig@MarguliesFaithlaw.com,
Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithla
w.com

Craig G Margulies on behalf of Defendant Boris Treyzon Esq
Craig@MarguliesFaithlaw.com,
Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithla
w.com

Craig G Margulies on behalf of Interested Party Courtesy NEF
Craig@MarguliesFaithlaw.com,
Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithla
w.com

Peter J Mastan on behalf of Interested Party Courtesy NEF
peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com

Edith R. Matthai on behalf of Defendant David Lira
ematthai@romalaw.com, lrobie@romalaw.com

Edith R. Matthai on behalf of Interested Party Courtesy NEF
ematthai@romalaw.com, lrobie@romalaw.com

Kenneth Miller on behalf of Interested Party Courtesy NEF
kmiller@pmcos.com, efilings@pmcos.com

Elissa Miller (TR)
CA71@ecfcbis.com,
MillerTrustee@Sulmeyerlaw.com;C124@ecfcbis.com;ccaldwell@sulmeyerlaw.com

Eric A Mitnick on behalf of Interested Party Courtesy NEF
MitnickLaw@aol.com, mitnicklaw@gmail.com

Scott H Olson on behalf of Creditor KCC Class Action Services, LLC
solson@vedderprice.com, scott-olson-
2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com

Leonard Pena on behalf of Interested Party Robert Girardi
lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com

Michael J Quinn on behalf of Creditor KCC Class Action Services, LLC
mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-
2870@ecf.pacerpro.com

David M Reeder on behalf of Interested Party Courtesy NEF
david@reederlaw.com, secretary@reederlaw.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, morani@ronaldrichards.com

Ronald N Richards on behalf of Plaintiff Robert P Finn
ron@ronaldrichards.com, morani@ronaldrichards.com

4

21625473.9

1

2
        Kevin C Ronk on behalf of Creditor U.S. Legal Support, Inc.
        Kevin@portilloronk.com, Attorneys@portilloronk.com

3
        William F Savino on behalf of Creditor California Attorney Lending II, Inc.
        wsavino@woodsoviatt.com, lherald@woodsoviatt.com
4

5
        Kenneth John Shaffer on behalf of Creditor Frantz Law Group, APLC
        johnshaffer@quinnemanuel.com

6
        Richard M Steingard on behalf of Other Professional Christopher Kamon
        , awong@steingardlaw.com
7

8
        Philip E Strok on behalf of Interested Party Courtesy NEF
        pstrok@swelawfirm.com,
        gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
9

10
        Philip E Strok on behalf of Trustee Elissa Miller (TR)
        pstrok@swelawfirm.com,
        gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
11

12
        Boris Treyzon on behalf of Defendant ABIR COHEN TREYZON SALO, LLP, a California
        limited liability partnership
        jfinnerty@actslaw.com, sgonzales@actslaw.com
13

14
        United States Trustee (LA)
        ustpregion16.la.ecf@usdoj.gov

15
        Eric D Winston on behalf of Creditor Frantz Law Group, APLC
        ericwinston@quinnemanuel.com
16

17
        Christopher K.S. Wong on behalf of Interested Party L.A. Arena Funding, LLC
        christopher.wong@arentfox.com, yvonne.li@arentfox.com

18
        Timothy J Yoo on behalf of Interested Party Courtesy NEF
        tjy@lnbyb.com
19

20
        Timothy J Yoo on behalf of Interested Party Jason M. Rund
        tjy@lnbyb.com

21

22
2.    **SERVED BY UNITED STATES MAIL:**
      **N/A**

23
3.    **SERVED BY PERSONAL DELIVERY:**

24
      **U.S. Bankruptcy Court**
      Hon. Hon. Barry Russell
25
      255 E. Temple Street, Suite 1660
      Los Angeles, CA 90012
26

27

28

21625473.9