1 | **SMILEY WANG-EKVALL, LLP**
Philip E. Strok, State Bar No. 169296
2 | *pstrok@swelawfirm.com*
Kyra E. Andrassy, State Bar No. 207959
3 | kandrassy@swelawfirm.com
Timothy W. Evanston, State Bar No. 319342
4 | *tevanston@swelawfirm.com*
3200 Park Center Drive, Suite 250
5 | Costa Mesa, California 92626
Telephone:   714 445-1000
6 | Facsimile:   714 445-1002

7 | Attorneys for Elissa D. Miller, Chapter 7
Trustee
8 |

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

In re

GIRARDI KEESE,

                              Debtor.

Case No. 2:20-bk-21022-BR

Chapter 7

**OPPOSITION TO MOTION FOR RECONSIDERATION OF ORDER GRANTING CHAPTER 7 TRUSTEE'S APPLICATION TO EMPLOY THE LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, A.P.C. AS SPECIAL LITIGATION COUNSEL; DECLARATIONS OF ELISSA D. MILLER AND RONALD RICHARDS IN SUPPORT**

**[Evidentiary Objections to Declaration of Evan C. Borges Concurrently Filed]**

Date:     To be determined
Time:     To be determined
Ctrm.:    1668
          255 E. Temple Street
          Los Angeles, CA 90012

*(left margin vertical text)* SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

2

## TABLE OF CONTENTS

**Page**

3    I.    INTRODUCTION ................................................................................. 2

4    II.    FACTUAL BACKGROUND ................................................................. 4

5        A.    The Application and Hearing on the Application ........................... 4

6        B.    The Trustee's Ongoing Investigation and the Complaint ............. 4

7        C.    Erika's Recent Efforts to Interfere with the Trustee's Case
              Administration ............................................................................. 5

8

9    III.    LEGAL ARGUMENT ......................................................................... 6

10        A.    Erika Has No Standing to Seek Reconsideration of the Order
              Granting the Application ............................................................... 7

11        B.    There are No Grounds Under Rule 59(e) to Grant the Motion ..... 8

12            1.    Erika's Motion is Premised on Incorrect Standards ........... 8

13            2.    Erika Requests Relief Beyond the Scope of a Rule 59(e)
                  Motion ............................................................................. 10

14

15            3.    The Richards Firm Fully Complied with FRBP 2014 ......... 11

16        C.    The Motion Will Disrupt the Trustee's Ongoing Investigation and
              Pursuit of Claims ......................................................................... 13

17    IV.    CONCLUSION ................................................................................. 14

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 ● Fax 714 445-1002

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Abbott v. Daff (In re Abbott)*,
    183 B.R. 198 (B.A.P. 9th Cir. 1995) ..................................................................... 7

*Carroll v. Nakatani*,
    342 F.3d 934 (9th Cir. 2003) .......................................................................... 6, 9

*Eisen v. Golden (In re Eisen)*,
    2007 WL 7532273 (B.A.P. 9th Cir. 2007) .......................................................... 6

*Fondiller v. Robertson (In re Fondiller)*,
    707 F.2d 441 (9th Cir. 1983) .......................................................................... 8

*Greco v. Troy Corp.*,
    952 F.2d 406 (9th Cir. 1991) .......................................................................... 7

*In re Autosport Int'l, Inc.*,
    2013 WL 3199826 (Bankr. C.D. Cal. June 24, 2013) ............................................ 7

*In re Greco*,
    113 B.R. 658 (D. Haw. 1990) ..................................................................... 7, 10

*In re Mannie*,
    299 B.R. 603 (Bankr. N.D. Cal. 2003) .............................................................. 7

*In re Polaroid Corp.*,
    424 B.R. 446 (Bankr. D. Minn. 2010) ............................................................. 10

*Kona Enters., Inc. v. Estate of Bishop*,
    229 F.3d 877 (9th Cir. 2000) .......................................................................... 6

*School Dist. No. 1J, Multonomah County v. AC & S, Inc.*,
    5 F.3d 1255 (9th Cir. 1993) .......................................................................... 9

*Sheen v. Diamond (In re Am. Comput. & Dig. Components, Inc.)*,
    2005 WL 6960172 (B.A.P. 9th Cir. May 12, 2005) ............................................... 7

*Stoumbos v. Kilimnik (In re Am. Alloy Metals)*,
    988 F.2d 949 (9th Cir. 1993) ........................................................................ 10

*White v. N.H. Dep't of Emp't Sec.*,
    455 U.S. 445 (1982) ................................................................................ 9, 11

*Wigley v. Wigley (In re Wigley)*,
    886 F.3d 681 (8th Cir. 2018) .......................................................................... 8

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## **STATUTES**

11 U.S.C. § 327(a) ...................................................................................................10

11 U.S.C. § 327(c) ............................................................................................4, 9, 10

11 U.S.C. § 327(e) ............................................................................................4, 9, 10

11 U.S.C. § 362 .......................................................................................................6

11 U.S.C. § 363 ....................................................................................................5, 6

11 U.S.C. § 542 .......................................................................................................2

Cal. Bus. & Prof. Code § 6068 ............................................................................3, 9

Fed. R. Bankr. P. 2004 .......................................................................................2, 5

Fed. R. Bankr. P. 2014 ...................................................................................3, 9, 11

Fed. R. Bankr. P. 2014(a) .................................................................................11, 12

Fed. R. Bankr. P. 9023 ...........................................................................................6

Fed. R. Bankr. P. 9024 ...........................................................................................6

Fed. R. Civ. P. 59(e) ....................................................................................... passim

Fed. R. Civ. P. 60(b) ...............................................................................................9

## **RULES**

Cal. Rules of Prof'l Conduct, Rule 3.6 ...............................................................3, 9

## **TREATISES**

9 Collier on Bankruptcy ¶ 2014.05 (Alan N. Resnick & Henry J. Sommer eds., 16th
ed.)........................................................................................................................12

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Elissa D. Miller, the chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Girardi Keese (the "Debtor"), submits this Opposition to Erika Girardi's ("Erika") *Motion for Reconsideration of Order Granting Chapter 7 Trustee's Application to Employ the Law Offices of Ronald Richards & Associates, A.P.C. as Special Litigation Counsel* [Docket No. 437] (the "Motion").  For the reasons set forth below, the Court should deny the Motion without a hearing.

I.      **INTRODUCTION**

Erika's Motion should be denied.  The Trustee previously filed the *Chapter 7 Trustee's Application to Employ the Law Offices of Ronald Richards & Associates, A.P.C. as Special Litigation Counsel* [Docket No. 318] (the "Application").  Although Erika opposed the Application, the Court ultimately entered an order authorizing the Law Offices of Ronald Richards & Associates, A.P.C. (the "Richards Firm") to represent the Trustee as special litigation counsel.  Upon appointment as special litigation counsel, the Richards Firm quickly moved to investigate the Estate's claims against Erika, filing a series of motions for examinations under Federal Rule of Bankruptcy Procedure ("FRBP") 2004.  With these motions granted, examinations are currently pending and scheduled to take place within the coming week.  The Richards Firm, on behalf of the Trustee and the Estate, also filed a complaint against Erika and several related entities for: (1) declaratory relief; (2) turnover of property of the Estate pursuant to 11 U.S.C. § 542; (3) avoidance and recovery of fraudulent transfer; (4) conversion; (5) constructive trust; (6) account stated; (7) open book account; (8) money had and received; (9) unjust enrichment; and (10) accounting (the "Complaint")

Faced with an impending investigation and the Complaint, Erika now brings the Motion to thwart the Trustee's efforts to investigate and pursue her and undermine the Trustee's right to choose counsel.  Erika's expressed willingness to cooperate with the

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

1   Trustee is nothing more than empty words.  Her actions speak far louder.[1]  Erika is well

2   aware of the Motion's effects if granted.  If the Court grants the Motion, the Trustee will be

3   left without special litigation counsel to investigate and pursue claims against Erika, and

4   the Trustee's investigation and pursuit of claims will effectively cease until the Trustee

5   finds qualified counsel to replace the Richards Firm.  Not only will the Estate have to

6   incur additional expenses in seeking approval of new special litigation counsel, the

7   investigation and pursuit of claims will be temporarily stalled and new counsel will need to

8   spend additional time to become familiar with the facts.  The delay may negatively impact

9   the Trustee's investigation and pursuit of claims, and there is no reason for the Trustee to

10  suffer this prejudice caused by an unnecessary delay.

11         More importantly, there are no legal grounds to grant the Motion.  Despite her

12  extraordinary request, Erika makes no serious attempt to abide by the standard

13  governing motions under Federal Rule of Civil Procedure ("FRCP" or "Rule") 59(e).

14  Rather than follow the correct standard under Rule 59(e), Erika relies on inadmissible

15  evidence and purported violations of Cal. Bus. & Prof. Code § 6068 and Rule 3.6 of the

16  California Rules of Professional Conduct.  No such violations have occurred.  Moreover,

17  the issue of the alleged violations has *no* bearing on whether the Motion can be granted.

18  Erika is not free to pick and choose whichever standard she prefers.  Ninth Circuit

19  precedent binds this Court, not Erika's whim.

20         In sum, there is no basis to grant the Motion.  The Richards Firm has fully

21  complied with FRBP 2014.  Erika has not highlighted any other proper grounds for

22  reconsideration under Rule 59(e).  In fact, Erika makes no argument at all that there is an

23  actual conflict that precludes the Richards Firm from serving as special litigation counsel;

24  she merely repackages prior arguments this Court previously rejected.  Furthermore,

25  Erika has no standing to even bring the Motion.  The Trustee's investigation and pursuit

26

27  ────────────────────
    [1]     As discussed in more detail later, Erika has since filed a series of oppositions interfering with the
    Trustee's administration of the Estate.  She has also attempted to disrupt the investigation of claims by
28  special litigation counsel in Thomas Girardi's individual case by filing a late opposition.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  of claims against Erika must continue without further disruption and interference.

2  Accordingly, the Court should deny the Motion without a hearing.

3

4  **II.    FACTUAL BACKGROUND**

5          **A.    The Application and Hearing on the Application**

6          On April 26, 2021, the Trustee filed the Application seeking to retain the Richards

7  Firm as special litigation counsel pursuant to 11 U.S.C. §§ 327(c) and (e) to investigate

8  and pursue potential claims against Erika and any of her related entities.  On May 10,

9  2021, Erika filed an opposition to the Application [Docket No. 333].  On June 1, 2021, the

10  Trustee filed a reply to Erika's opposition [Docket No. 374].

11          On June 8, 2021, the Court held a hearing on the Application.  A transcript of the

12  hearing is attached here as Ex. "1."  At the hearing, Erika requested that the Court issue

13  a gag order against Ronald Richards ("Richards") of the Richards Firm because of

14  certain out of court statements.  However, the Court made clear that it would not issue

15  any gag order against Richards in the following exchange:

16          The Court:  I'm not going to issue any gag order.  I don't even know if I have
           the power to do that at all…I'm not going to—I can't and would not stop him
17          from exercising his First Amendment Rights.  So I'll leave it at that.

18          Mr. Mastan:  Okay. Fair enough…

19  *See* June 8, 2021 Transcript at 6:8-15, Ex. "1."

20          Ultimately, the Court granted the Application and stated, "I am satisfied that there

21  is no – there is no conflict…I will approve the application…"  *See* June 8, 2021 Transcript

22  at 38:14-23, Ex. "1."  On June 10, 2021, the Court entered an order granting the

23  Trustee's Application based on the Richards Firm's representation that it would not

24  pursue any claims (on behalf of its creditor clients) against Erika involving any transfers

25  from the Debtor to Erika.  *See* Order, Ex. "2."

26          **B.    The Trustee's Ongoing Investigation and the Complaint**

27          Since the Court granted the Application, the Richards Firm has started conducting

28  its investigation of potential claims that may exist against Erika and filed several motions

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  for examinations under FRBP 2004 on behalf of the Trustee.  On June 18, 2021, the

2  Trustee filed a *Motion for Order Requiring Examination and Production of Documents by*

3  *Benjamin Khakshour Pursuant to Rule 2004 of the Federal Rules of Bankruptcy*

4  *Procedure* [Docket No. 409].  On June 22, 2021, the Trustee filed a *Motion for Order*

5  *Requiring Examination and Production of Documents by Harris Ginsburg LLP and Larry*

6  *A. Ginsburg Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure*

7  [Docket No. 423].  On June 23, 2021, the Trustee filed a *Motion for Order Requiring*

8  *Examination and Production of Documents by Ullman Accountancy Corp. and Michael J.*

9  *Ullman Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Docket No.

10  427] (these motions collectively, the "2004 Motions").

11        The 2004 Motions are directed at Erika's landlord, Erika's family law counsel, and

12  Erika's business manager.  On June 28, 2021, the Court entered orders granting the

13  2004 Motions, ordering the parties to produce certain documents as well as appear at

14  their respective examinations on July 22, 2021 and July 23, 2021.  *See* Orders at Docket

15  Nos. 440, 441, and 443.

16        On July 14, 2021, the Richards Firm filed the Complaint on behalf of the Trustee

17  and the Estate.

18     **C.     Erika's Recent Efforts to Interfere with the Trustee's Case**

19             **Administration**

20        The Trustee is ceaselessly working to protect the former clients of the Debtor and

21  ensure that they have qualified counsel representing their interests.  In order to protect

22  the Debtor's clients, the Trustee has continued to file motions to transition their cases to

23  competent counsel.  Prior to the Court granting the Application, Erika did not oppose any

24  of the Trustee's motions to transition cases.

25        On June 9, 2021, the Trustee filed a *Motion for Order Authorizing the Transition of*

26  *the Estate's Interest in the NFL Concussion Litigation to Goldberg Persky White P.C.*

27  *Free and Clear of Liens, Claims and Interests Pursuant to 11 U.S.C. § 363* [Docket No.

28  389] (the "Motion to Transition NFL Concussion Litigation").  On June 23, 2021, the

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  Trustee filed a *Motion for Order Authorizing the Transition and Assignment of the Estate's

2  Interests in the Mesh Litigation to Nadrich & Cohen LLP and the Oshman Firm, LLC, Free*

3  *and Clear of Liens, Claims and Interests Pursuant to 11 U.S.C. § 363* [Docket No. 428]

4  (the "Motion to Transition the Mesh Litigation").

5       After the Court granted the Application, Erika proceeded to file several oppositions

6  to the Trustee's motions to transition cases.  On June 28, 2021, Erika filed an objection to

7  the Motion to Transition NFL Concussion Litigation.  On July 7, 2021, Erika filed an

8  objection to the Motion to Transition the Mesh Litigation [Docket No. 481].[2]  Both motions

9  have been set for hearing on August 10, 2021, at 2:00 p.m.

10

11  **III.    LEGAL ARGUMENT**

12       "[R]econsideration of an order in a bankruptcy case may be sought under either

13  Rules 9023 or 9024, which incorporate Fed. R. Civ. P. 59(e) and 60(b) respectively."

14  *Eisen v. Golden (In re Eisen)*, 2007 WL 7532273 at *2 (B.A.P. 9th Cir. 2007).

15       Reconsideration is an "'extraordinary remedy, to be used sparingly in the interests

16  of finality and conservation of judicial resources.'"  *Carroll v. Nakatani*, 342 F.3d 934, 945

17  (9th Cir. 2003) (internal citation omitted).  "Indeed, 'a motion for reconsideration should

18  not be granted, absently highly unusual circumstances, unless the district court is

19  presented with newly discovered evidence, committed clear error, or if there is an

20  intervening change in the controlling law."  *Id. citing Kona Enters., Inc. v. Estate of*

21  *Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).  "A Rule 59(e) motion may *not* be used to

22  raise arguments or present evidence for the first time when they could reasonably have

23  been raised earlier in the litigation."  *Kona Enters., Inc.*, 229 F.3d at 890 (emphasis in

24  original).

25

26  ___

27  [2]    On July 5, 2021, the day before the scheduled hearing, Erika filed a late Opposition to the Motion to Approve Stipulation Between Jason M. Rund (Chapter 7 Trustee) and Secured Creditors Joseph Ruigomez, Jaime Ruigomez, and Kathleen Ruigomez for Relief from the Automatic Stay Under 11 U.S.C.

28  § 362 [Docket No. 236] in Thomas Girardi's individual case.

1   A motion for reconsideration may also not be used to "rehash the same arguments

2   made the first time or simply express an opinion that the court was wrong." *In re Greco*,

3   113 B.R. 658, 664 (D. Haw. 1990), aff'd and remanded sub nom., *Greco v. Troy Corp.*,

4   952 F.2d 406 (9th Cir. 1991); *see also In re Mannie*, 299 B.R. 603, 608 (Bankr. N.D. Cal.

5   2003) ("A motion to reconsider should not be used 'to ask the court to "rethink what the

6   court had already thought through—rightly or wrongly"—or to reiterate arguments

7   previously raised.'") (internal citation omitted).

**A.**   **Erika Has No Standing to Seek Reconsideration of the Order Granting**
8

9   **the Application**

10   Erika lacks standing to bring the Motion.  She is a litigation defendant – nothing

11   more.  "A party's standing in a bankruptcy case is governed by the 'person aggrieved'

12   standard.  A 'person aggrieved' is one whose pecuniary interests are directly adversary

13   affected." *Sheen v. Diamond (In re Am. Comput. & Dig. Components, Inc.),* 2005 WL

14   6960172 at *3 (B.A.P. 9th Cir. May 12, 2005); see also *In re Autosport Int'l, Inc.*, 2013 WL

15   3199826 at *3-4 (Bankr. C.D. Cal. June 24, 2013) (determining that opposition

16   documents to motion could not be considered because the party lacked standing).

17   Erika has not made any showing of how she is a person aggrieved with standing.

18   Here, Erika has not filed a proof of claim, nor has she ever claimed to be a creditor of the

19   Estate.  In short, the Motion fails to highlight any pecuniary interest of Erika's that would

20   be adversely affected by an order granting the Application.  There are none.  To the

21   extent Erika asserts that she has a community property interest in Thomas Girardi's

22   equity interest in the Debtor, her alleged community property interest is property of the

23   Thomas Girardi bankruptcy estate controlled by its trustee, Jason Rund, not the Debtor.

24   Erika cannot establish standing simply because she is a defendant in a fraudulent

25   transfer action.  Courts have routinely held that status as a defendant in a fraudulent

26   transfer case does not confer standing.  *See, e.g. Abbott v. Daff (In re Abbott)*, 183 B.R.

27   198 (B.A.P. 9th Cir. 1995) (holding that the debtor's wife did not have standing as a

28   potential defendant to appeal the order reopening case so that trustee could pursue

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  fraudulent transfer claims against her); *Wigley v. Wigley (In re Wigley)*, 886 F.3d 681, 685

2  (8th Cir. 2018) (holding that debtor's wife did not have standing to appeal bankruptcy

3  court's order granting the creditor relief from stay to prosecute fraudulent transfer action

4  against her).

5        The Ninth Circuit's decision in *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d

6  441 (9th Cir. 1983) mirrors the facts here.  In *Fondiller*, the chapter 7 trustee employed

7  special litigation counsel to investigate and pursue fraudulent transfer claims against a

8  debtor and his wife, a non-debtor.  The bankruptcy court approved the employment of

9  special litigation counsel, and the BAP affirmed.  Subsequently, the wife appealed the

10  order, and the Ninth Circuit affirmed the BAP.  In its holding, the Ninth Circuit noted that

11  the wife's only "demonstrable interest" was as a "potential party defendant in an

12  adversary proceeding[.]"  *Id.* at 443.  Thus, because the "order did not diminish her

13  property, increase her burdens, or detrimentally affect her rights," the wife lacked

14  standing to appeal the order.  Similarly, the order granting the Application has no direct

15  impact on Erika.  The order itself does not diminish her property, increase any burdens,

16  or detrimentally affect any rights.  Indeed, Erika raises none of these arguments in her

17  opposition.

18        In sum, Erika, is a mere defendant and does not have standing to seek

19  reconsideration of the order granting the Application.  The Court should disregard the

20  Motion on this basis alone.  Nonetheless, as set forth below, Erika's Motion also fails on

21  the merits and provides no grounds for reconsideration.

22        **B.**    **There are No Grounds Under Rule 59(e) to Grant the Motion**

23            **1.**    **Erika's Motion is Premised on Incorrect Standards**

24        Erika ignores the clear standard for reconsideration under Rule 59(e).  Under Rule

25  59(e), grounds for reconsideration of the Application must be *solely* based on: (1) newly

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  discovered evidence,[3] (2) clear error by the court; or (3) an intervening change in

2  controlling law.[4]  *See Carroll*, 342 F.3d at 945 (9th Cir. 2003).  Here, the Court must

3  consider whether the new "evidence" from Erika establishes whether there was an actual

4  conflict under sections 327(c) and (e) that requires reconsideration of the order granting

5  the Application.

6         Erika does not argue that the Court made a clear error in granting the Application,

7  nor does Erika highlight any intervening change in controlling law.  Instead, Erika devotes

8  the majority of the Motion to arguing whether there are purported violations of Cal. Bus. &

9  Prof. Code § 6068 and Rule 3.6 of the California Rules of Professional Conduct.[5]  These

10  grounds are irrelevant and cannot be considered in the context of a motion for

11  reconsideration.  *See White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982)

12  ("[F]ederal courts generally have invoked Rule 59(e) *only* to support reconsideration of

13  matters properly encompassed in a decision on the merits.") (emphasis added).

14  "Evidence" of purported violations of Cal. Bus. & Prof. Code § 6068 and Rule 3.6 of the

15  California Rules of Professional Conduct is not evidence of an actual conflict under

16  sections 327(c) and (e).  In short, the Court is required to reconsider whether actual

17  conflicts exist, *not* whether there were purported violations of rules governing attorney

18  conduct.

19

20         [3]  Erika briefly argues that there is "newly discovered evidence" that the Richards Firm did not
disclose an apparent connection in violation of FRBP 2014 with a petitioning creditor, Kimberly Archie.  As
21  discussed below, this is false.

22         [4]  To the extent Erika moves under Rule 60(b), Erika similarly fails to follow the correct standard.
"Rule 60(b) 'provides for reconsideration only upon a showing of (1) mistake, surprise, excusable neglect;
23  (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6)
"extraordinary circumstances" which would justify relief.'"  *See School Dist. No. 1J, Multonomah County v.
24  AC & S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

25         [5]  Although not relevant to whether the Court can reconsider the order granting the Application, the
Richards Firm has not violated Cal. Bus. & Prof. Code § 6068 or Rule 3.6 of the California Rules of
26  Professional Conduct.  *See* Declaration of Erin Joyce filed in support of the Richards Firm's opposition.
Moreover, Erika has offered no evidence of any prejudice.  Erika has not provided a declaration that any of
27  Richards' statements were false, and Erika's counsel has never asked Richards to remove or modify any
posts for inaccuracies.  *See* Declaration of Ronald Richards.  Instead, Erika relies on incomplete
28  conversations from unverified accounts.  *See* Declaration of Bjorn Wallman filed in support of the Richards
Firm's opposition.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    Erika not only fails to argue the correct grounds for reconsideration, but also

2    makes no explanation as to how Richards' alleged out of court comments[6] create an

3    actual conflict that warrants reconsideration of the Application.  The Application was

4    granted under sections 327(c) and (e).  Courts have held that "where the trustee seeks to

5    appoint counsel only as 'special counsel' for a specific matter, there need only be no

6    conflict between the trustee and counsel's creditor client with respect *to the specific*

7    *matter itself*." *Stoumbos v. Kilimnik (In re Am. Alloy Metals)*, 988 F.2d 949, 964 (9th Cir.

8    1993) (internal citation omitted) (emphasis added). "Section 327(e) has a narrower focus

9    than § 327(a), and imposes fewer restrictions on the proposed attorney." *See In re*

10    *Polaroid Corp.*, 424 B.R. 446, 452 (Bankr. D. Minn. 2010).  Although Section 327(c)

11    "applies generally to all employment under section § 327…clearly the 'actual conflict of

12    interest' that it references must be analyzed in the narrower context of § 327(e)." *Id.*

13    *citing Stombous*, 988 F.2d at 964.  Nowhere in the Motion does Erika argue that there are

14    actual conflicts of interest with respect to the Richards Firm's specialized employment.

15    Rather, Erika simply recycles her prior arguments that Richards should not be permitted

16    to publicly comment about her (despite being a public figure), and that Richards' public

17    comments warrant disqualification.  A "motion for consideration is not permitted…to

18    rehash the same arguments made the first time…" *See In re Greco*, 113 B.R. at 664.

19    The Court has unequivocally rejected these arguments and refused to issue a gag order.

20    *See* June 8, 2021 Transcript at 6:2-14, Ex. "1."  In sum, Erika has not argued that there

21    are any actual conflicts, nor has she cited any evidence, new or otherwise, of any *actual*

22    conflicts—she simply chooses to disregard binding Ninth Circuit precedent regarding

23    Rule 59(e).

24    **2.    Erika Requests Relief Beyond the Scope of a Rule 59(e) Motion**

25    Erika also requests affirmative relief concerning issues not before the Court and

26    beyond the scope of a Rule 59(e) motion.  "Rule 59(e) was added to the Federal Rules of

27    _____

28    [6]    Erika does not provide any admissible evidence regarding Richards' alleged comments.  *See* the
Trustee's Evidentiary Objections concurrently filed.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    Civil Procedure in 1946.  Its draftsmen had a clear and narrow aim.  According to the

2    accompanying Advisory Committee Report, the Rule was adopted to '[m]ake clear that

3    the district court possesses the power to rectify its own mistakes in the period

4    immediately following the entry of judgment."  *See White*, 455 U.S. at 450.  "[F]ederal

5    courts generally have invoked Rule 59(e) only to support reconsideration of matters

6    properly encompassed in a decision on the merits."  *Id.*

7         Erika's request that the Court "find that Mr. Richards is unfit and should be

8    disqualified from serving as counsel to a federal bankruptcy trustee" is improper.  *See*

9    Motion at 16:9-11.   A motion to reconsider is brought only to correct a prior order based

10   on a reconsideration of the merits.  *See White*, 455 U.S. at 450.  A request for a finding

11   that counsel is unfit to represent a trustee is an affirmative request that cannot be brought

12   in a motion for reconsideration because it is not correcting anything in the prior order.  At

13   the hearing on the Application, the Court properly considered whether there were any

14   actual conflicts of interest with respect to the Richards' Firms employment.  Again, this is

15   the only issue before the Court right now.  Richards' fitness as special litigation counsel

16   was never at issue in the Application.  It is not at issue now.  Erika's request is

17   inappropriate and a plain attempt to subvert the Trustee's right to her choice of counsel—

18   it should not be considered by the Court.

19              **3.    The Richards Firm Fully Complied with FRBP 2014**

20        Erika's contention that the Richards Firm failed to comply with FRBP 2014 is

21   wrong and without support.  Under FRBP 2014, an application to employ counsel "shall

22   be accompanied by a verified statement of the person to be employed setting forth the

23   person's connections with the debtor, creditors, or any other party in interest…"  FRBP

24   2014(a).  As described by a leading treatise:

25        The term "connection" is an unfortunate one.  Arguably two people are
          "connected" if they serve together on a charitable board or are even
26        friends…The "connections" cited by the courts run to fee sharing
          arrangements and the like that might affect the court's decision to approve
27        the employment.

28

1  *See* 9 Collier on Bankruptcy ¶ 2014.05 (Alan N. Resnick & Henry J. Sommer eds., 16th
2  ed.).

3      The Richards Firm has fully complied with FRBP 2014(a).  When the Application
4  was filed, the Richards Firm fully disclosed its representation of other creditors.
5  Moreover, the Richards Firm has repeatedly agreed that it would not pursue certain
6  claims of these creditors that belong to the Estate.  The Court has recognized these
7  agreements from Richards at two separate hearings, and in two separate orders.  *See*
8  Orders at Exs. "2," and "3."

9      Erika's newfound "evidence" of the "connection" between the Richards Firm and
10  Ms. Archie, a petitioning creditor, does not warrant denial of the Application.  Because no
11  "connection" exists between the Richards Firm and Ms. Archie, there was no violation of
12  FRBP 2014(a).  Erika's assertion is problematic for three reasons.  First, Erika provides
13  no evidence that at the time of the Application, Richards even knew that Ms. Archie was
14  being interviewed in the same documentary.  Indeed, Richards did not know that Ms.
15  Archie was participating in the documentary until *after* it aired.  The Richards Firm could
16  not have disclosed a fact that it had no knowledge of.  *See* Declaration of Ronald
17  Richards at ¶ 6.  Second, there is no connection between the Richards Firm and Ms.
18  Archie.  The Richards Firm has never had any legal, business, or personal relationship
19  with Ms. Archie or any other petitioning creditors.  *Id.*  Third, Erika's definition of
20  "connection" is overly broad and unworkable in practice.  According to Erika, the
21  Richards Firm is "connected" to Ms. Archie because both allegedly participated in the
22  same documentary.  If Erika's understanding of "connection" were true, a party could
23  seek disqualification of counsel any time opposing counsel provided statements to be
24  published in the same article.  In this situation, a party could seek disqualification of
25  counsel in nearly every high profile bankruptcy case where interviews take place.  Erika's
26  theory does not make sense.  This is made clear by the fact that Erika fails to explain
27  how this "connection" poses any threat to the Estate or how the Richards Firm's duty to
28  represent the Estate is compromised.  Mere coincidence is not a connection, and is

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    certainly no reason to allow Erika to infringe on the Trustee's right to choice of counsel.

2    The Court should not grant the Motion.

3    **C.**    **The Motion Will Disrupt the Trustee's Ongoing Investigation and**

4        **Pursuit of Claims**

5        Erika is attempting to disrupt the Trustee's ongoing investigation and pursuit of

6    claims through the Motion.  The Trustee's special litigation counsel, the Richards Firm,

7    has been actively investigating and pursuing the Estate's claims against Erika, as

8    evidenced by the pending 2004 examinations and the Complaint.  If the Motion is

9    granted, the Trustee will be left to look for new counsel in the middle of her investigation

10    and pursuit of claims.  The Trustee will then have to incur the additional expense of

11    seeking approval of new counsel's employment, and spend additional time waiting for her

12    choice to be approved.  Once appointed, new counsel will then need more time to

13    become familiar with the issues and facts at hand.  This delay may prejudice the

14    Trustee's investigation.  *See* Declaration of Elissa D. Miller.

15        Erika's attempt to undermine any pending investigation and the pursuit of claims

16    against her is clear.  She recently opposed the motion to approve a stipulation for relief

17    from stay so special litigation counsel for the trustee in Thomas Girardi's individual case

18    could proceed against her.  Moreover, Erika has demonstrated that she is willing to now

19    impede the Trustee's efforts to protect victims of the Debtor by opposing the Trustee's

20    recent motions to transition cases.   Prior to the granting of the Application, Erika did not

21    oppose any of the Trustee's similar motions.  Now, Erika appears willing to stop at

22    nothing to obstruct the investigation and pursuit of claims and prejudice the Estate.  The

23    Trustee should not be prejudiced by Erika's blatant efforts to interfere with the Trustee's

24    efforts and protection of the Debtor's clients.

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

## IV.    <u>CONCLUSION</u>

2        For the foregoing reasons, the Trustee requests that the Court enter an order

3   denying the Application without a hearing.

4

5   DATED:  July 16, 2021              SMILEY WANG-EKVALL, LLP

6

7                                By:  _____

8                                     PHILIP E. STROK
                                      Attorneys for Elissa D. Miller, Chapter 7
9                                     Trustee

10

11

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DECLARATION OF ELISSA D. MILLER**

2      I, Elissa D. Miller, declare as follows:

3      1.      I am the duly appointed chapter 7 trustee for the bankruptcy estate of

4  Girardi Keese.  I am also a partner at the law firm Sulmeyer**Kupetz**, a Professional

5  Corporation.  I know each of the following facts to be true of my own personal knowledge,

6  except as otherwise stated and, if called as a witness, I could and would competently

7  testify with respect thereto.  I make this declaration in support of the *Opposition to Motion*

8  *for Reconsideration of Order Granting Chapter 7 Trustee's Application to Employ the Law*

9  *Offices of Ronald Richards & Associates, A.P.C. as Special Litigation Counsel* (the

10  "Opposition").  Unless otherwise defined in this declaration, all terms defined in the

11  Opposition are incorporated herein by this reference.

12      2.      I am currently investigating and pursuing claims against Ms. Erika Girardi.

13  On July 14, 2021, the Richards Firm, my special litigation counsel, filed the Complaint

14  against Erika.

15      3.      I will need to begin looking for new special litigation counsel if the Court

16  grants Erika's Motion.  The search for new special litigation counsel will be in the midst of

17  my investigation and litigation of the Complaint against Erika, and will require the Estate

18  to incur additional expenses to seek approval of my potential new special litigation

19  counsel.

20      4.      In addition to the extra expenses the Estate would incur if the Motion is

21  granted, I will also have to wait additional time for approval of my new special litigation

22  counsel.  After approval, new special litigation counsel will need to spend additional time

23  to familiarize itself with the issues and facts at hand.  I believe that the increased delay

24  may result in prejudice to my investigation.

25      5.      The current special litigation counsel is my choice of counsel.  It would be

26  prejudicial for me to waste valuable time looking for new counsel.

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

6.      Mr. Richards has worked tirelessly and with the tenacity I expected when I retained him.  The Estate is well-served by his representation to investigate this target, Erika Girardi.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 16th day of July, 2021, at Los Angeles, California.

_____
Elissa D. Miller

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    **<u>DECLARATION OF RONALD RICHARDS</u>**

2        I, Ronald Richards, declare as follows:

3        1.        I am an attorney with the Richards Firm, special litigation counsel to Elissa

4    D. Miller, the chapter 7 trustee for the bankruptcy estate of Girardi Keese.  I know each of

5    the following facts to be true of my own personal knowledge, except as otherwise stated

6    and, if called as a witness, I could and would competently testify with respect thereto.  I

7    make this declaration in support of the *Opposition to Motion for Reconsideration of Order*

8    *Granting Chapter 7 Trustee's Application to Employ the Law Offices of Ronald Richards*

9    *& Associates, A.P.C.* (the "Opposition").  Unless otherwise defined in this declaration, all

10    terms defined in the Opposition are incorporated herein by this reference.

11        2.        On April 26, 2021, the Trustee filed the Application to employ the Richards

12    Firm as special litigation counsel.

13        3.        On June 8, 2021, the Court held a hearing on the Application.  I attended

14    and participated in oral argument at the hearing on the Application.  A true and correct

15    copy of the transcript I ordered of the June 8, 2021 hearing on the Application is attached

16    hereto as Exhibit "1."

17        4.        At the hearing on the Application, I stated that the Richards Firm would not

18    pursue claims to recover transfers from the Debtor to Erika on behalf of the Richards

19    Firm's creditor clients.  I previously made the same representation to the Court at an

20    earlier hearing on a motion for remand, as recognized in this Court's order granting the

21    motion for remand.  A true and correct copy of the order granting the motion for remand

22    is attached hereto as Exhibit "3."

23        5.        On June 10, 2021, the Court entered an order granting the Application.  A

24    true and correct copy of the order granting the Application is attached hereto as Exhibit

25    "2."

26        6.        The Richards Firm has never had any legal, business, or personal

27    relationship with Ms. Kimberly Archie or any of the other petitioning creditors.  Further, I

28    did not know that Ms. Archie had participated in the documentary produced by ABC until

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  after the documentary aired because I saw her on television.  I have no legal connection

2  to Ms. Archie whatsoever.

3      7.      I have never received a request from counsel for Erika to remove or modify

4  any of my online posts about Erika for inaccuracies.

5      8.      No one from Erika Girardi's management has ever complained about

6  anything that could be attributable to my office as being inaccurate or untrue.

7      9.      I have never met or spoken with Erika Girardi and have no personal agenda

8  whatsoever related to her.  I am only taking direction from my client, the Trustee.

9      I declare under penalty of perjury under the laws of the United States of America

10  that the foregoing is true and correct.

11      Executed on this 16th day of July, 2021.

12

13      _Ronald Richards_

14  _____
    Ronald Richards

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# EXHIBIT "1"

1          UNITED STATES BANKRUPTCY COURT

2     CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

3                    --oOo--

4   In Re:                    ) Case No. 2:20-bk-21022-BR
                              )
5   GIRARDI KEESE,            ) Chapter 7
                              )
6              Debtor.        ) Los Angeles, California
                              ) Tuesday, 10:00 A.M.
7   ----------------------------X June 8, 2021

8
                              HEARING RE: CHAPTER 7
9                             TRUSTEE'S APPLICATION TO
                              EMPLOY THE LAW OFFICES OF
10                            RONALD RICHARDS & ASSOCIATES,
                              A.P.C., AS SPECIAL LITIGATION
11                            COUNSEL

12
              TRANSCRIPT OF PROCEEDINGS
13        BEFORE THE HONORABLE BARRY RUSSELL
            UNITED STATES BANKRUPTCY JUDGE
14

15  APPEARANCES:

16  For the Trustee:         LEI LEI WANG EKVALL, ESQ.
                             Smiley Wang-Ekvall, LLP
17                           3200 Park Center Drive
                             Suite #250
18                           Costa Mesa, California  92626

19  For Erika Keese:         PETER J. MASTAN, ESQ.
                             Dinsmore & Shohl, LLP
20                           550 South Hope Street
                             Suite #1765
21                           Los Angeles, California 90071

22  Special Litigation       RONALD RICHARDS, ESQ.
    Counsel:                 PO Box 11480
23                           Beverly Hills, California  90213

24
    Proceedings produced by electronic sound recording;
25  transcript produced by transcription service.



P 888.272.0022  F 818.343.7119          www.benhyatt.com
Certified Deposition Reporters

```
1   Court Recorder:              Wanda Toliver
                                 U.S. Bankruptcy Court
2                                Central District of California
                                 Edward R. Roybal Federal Building
3                                  and Courthouse
                                 255 East Temple Street, Room #1639
4                                Los Angeles, California  90012
                                 (855) 460-9641
5
    Court Transcriptionist:      Ruth Ann Hager, C.E.T.**D-641
6                                Ben Hyatt Certified Deposition
                                   Reporters
7                                17835 Ventura Boulevard
                                 Suite #310
8                                Encino, California  91316

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page                                                                            3

1              LOS ANGELES, CALIFORNIA, TUESDAY, JUNE 8, 2021

2                                10:02 A.M.

3                                 --oOo--

4         THE CLERK:  #5.00, Girardi Keese.

5         THE COURT:  All right.  Make your appear -- you

6   can stay -- make your appearance where you're at and --

7         THE CLERK:  You have to say that --

8         THE COURT:  Oh, I'm sorry.  I -- thank you.  She

9   keeps me out of trouble.

10        MS. WANG EKVALL:  We're all a bit rusty, Your

11  Honor.  Good morning, Your Honor.  Lei Lei Wang Ekvall with

12  Smiley Wang Ekvall, counsel for Elissa Miller, Chapter 7

13  Trustee.

14        THE COURT:  Okay.  Thank you.  And the only time

15  I'd like you to take your mask down is when you speak, but

16  other than that, use whatever your discretion.  We want to

17  keep everybody as safe as we can.

18        MR. RICHARDS:  Good to see you, Your Honor.  You

19  look great.  Ronald Richards with Law Offices of Ronald

20  Richards & Associates, APC, also appearing on #5.00.

21        THE COURT:  All right.

22        MR. MASTAN:  Good morning, Your Honor.  Peter

23  Mastan of Dinsmore & Shohl, LLP, appearing on behalf of

24  Erika Girardi.

25        THE COURT:  Okay.  This is the -- I've read your

P 888.272.0022  F 818.343.7119        **BEN**HYATT        www.benhyatt.com
                                Certified Deposition Reporters

Page                                                                          4

1  papers with quite -- with interest.  This is the Trustee's

2  application to employ your firm.  It's your -- who wants

3  to -- I guess you want to -- who wants to -- it's either --

4  it would be, I guess whichever one the two of you want to

5  talk.  Again, I've read all the papers and you'll get the

6  second-to-the-last word.

7          MS. WANG EKVALL:  Okay.  Thank you, Your Honor.

8          THE COURT:  You're welcome.

9          MS. WANG EKVALL:  We'll just summarize our

10 position then, Your Honor.  We believe that Ms. Jane

11 (phonetic) or Mrs. Girardi does not have standing to oppose

12 the employment.

13         THE COURT:  Well, let me do this.  I have some

14 question about it, but I'm going to assume for our purposes

15 that standing is always a tricky question at best, so I'm

16 just going to assume for our purposes the standing rather

17 than take the time.  She may or may not but I'm assuming at

18 this point, so why don't you go to the merits of it?

19         MS. WANG EKVALL:  Moreover, Your Honor,

20 Mr. Richard's firm is being employed for a very specific

21 purpose, a very narrow purpose.  He is being employed as

22 special counsel.  And under 363 -- sorry -- 327 --

23         THE COURT:  Close enough.  I understand this

24 is --

25         MS. WANG EKVALL:  Sorry.

Page                                                                    5

1              THE COURT:  It's all right.

2              MS. WANG EKVALL:  327(c) and (e), Your Honor.

3    The fact that Mr. Richards represents a creditor in the

4    case does not exclude him or prevent him for being

5    employable by the Trustee.  And in this case there is no

6    actual conflict that would prohibit him from being employed

7    for the limited purpose as stated in the employment

8    application of investigating and pursuing claims against

9    Ms. Jane.  With respect to claims review in general or

10   claim objections in general, that will be handled by my

11   office as the Trustee's general bankruptcy counsel.

12             THE COURT:  All right.  Counsel.

13             MR. MASTAN:  Good morning again, Your Honor.  But

14   there are conflicts here and there are two of them that are

15   actual conflicts of interest.

16             I do want to start by making sure that everyone

17   is aware that Ms. Girardi is not here to impede the

18   Trustee's investigation.  We understand that has to happen.

19   Mr. Rund in the other case is doing the same thing.  We

20   didn't oppose his retention as special counsel to look

21   into --

22             THE COURT:  All right.

23             MR. MASTAN:  -- the investigation.  We're only

24   saying that the investigation can't be done by Mr. Richards

25   or his firm because of his conflicts of interests.  And

Page                                                                    6

1  again, there are two of them.  And what --

2         THE COURT:  It's also clear you're not happy with

3  him.  I mean, he's a little more vocal than I am, but

4  that -- you know, you're complaining about all that.  It's

5  not my style, but -- but I -- it's clear it's gotten under

6  your client's skin and so that may -- I don't know if

7  that's part of it, but my -- but as far as that position

8  is -- you know, I'm not going to issue any gag order.  I

9  don't even know if I have the power to do that at all.  And

10  if you have any serious complaint there are other people,

11  entities you can go to complain to conduct, but I --

12  myself, I'm not going to -- I can't and would not stop him

13  from exercising his First Amendment rights.  So I'll leave

14  it at that.

15         MR. MASTAN:  Okay.  Fair enough.  And that --

16         THE COURT:  It was interesting reading, however.

17  I  was -- a lot of stuff there --

18         MR. MASTAN:  And again --

19         THE COURT:  -- to look through.

20         MR. MASTAN:  That is --

21         THE COURT:  It's not my -- my style --

22         MR. MASTAN:  Right.

23         THE COURT:  -- doesn't make it right or wrong.

24  It just -- I just don't -- I think he has his right to

25  express his views and what have you and it's clear he is

Page                                                                        7

1   not thrilled with your client.  I mean, so --

2            MR. MASTAN:  Fair enough.

3            THE COURT:  -- that's a fact.

4            MR. MASTAN:  And that was an if-he's-employed

5   kind of thing, but it doesn't go to the thrust of the

6   substance of the real argument.

7            THE COURT:  Oh, no, I understand that.  I

8   understand, but I just get that out in front.  It was clear

9   that there was a huge amount of stuff.  I didn't read every

10  page of everything, but I got the flavor.

11           MR. MASTAN:  So we've taken sort of standing and

12  the gag order.

13           THE COURT:  Yes.

14           MR. MASTAN:  So get to the main -- the main show

15  here.

16           THE COURT:  The main thing is your objection

17  because of con -- of alleged conflicts.

18           MR. MASTAN:  Yes, let's talk about the conflicts

19  and there are two.  First, Mr. Richards is representing

20  creditors the Sheldon and Finn law firms in connection with

21  litigation pending in state court against Ms. Girardi.

22           THE COURT:  Right.

23           MR. MASTAN:  When we filed this we believed that

24  there were two causes of action that were bring -- being

25  brought against Ms. Girardi.  Ms. Wang Ekvall brought to my

Page                                                                        8

1   attention afterwards which I was not aware of that the

2   fraudulent transfer claims have been taken care of.

3           THE COURT:  All right.

4           MR. MASTAN:  And I appreciate and thank Ms. Wang

5   Ekvall for doing that.  But nothing, as far as I know, has

6   changed the conversion claims.  And Mr. Richards on behalf

7   of the Finn/Sheldon law firms is alleging that money went

8   to Girardi Keese and was converted -- their money was

9   converted to -- by Ms. Girardi and others.

10          THE COURT:  Right.

11          MR. MASTAN:  So at the same time that he is

12  bringing and prosecuting those claims, he is also being

13  retained by the Trustee to look into avoidable transfers

14  from the Girardi & Keese law firm to Ms. Girardi.

15          THE COURT:  Right.

16          MR. MASTAN:  That's where the money flowed.  So

17  at that moment you have an irreconcilable conflict of

18  interest because he cannot both at the same time seek the

19  recovery of those funds on behalf of the Finn/Sheldon law

20  firms and seek it on behalf of the Trustee.

21          What's very important to understand here in

22  addition to that is that there is a pie of assets out

23  there.  To the extent that -- and I'll tell you, it ain't

24  big enough to cover anything here that we're talking about.

25          THE COURT:  Well, hope springs eternal, but I



P 888.272.0022  F 818.343.7119              www.benhyatt.com

Page                                                                        9

1  guess we don't know for sure.

2          MR. MASTAN:  Well, yeah.  Yeah.

3          THE COURT:  I guess the big thing is, is this

4  big -- you know, the *Porter Ranch* case, but who knows.

5          MR. MASTAN:  But who knows.  But what I'm saying

6  is her assets.

7          THE COURT:  Oh, you're talking about -- oh, I'm

8  sorry.  You're talking --

9          MR. MASTAN:  Hers, yeah.

10          THE COURT:  -- about hers.

11          MR. MASTAN:  Hers, yes.

12          THE COURT:  Not -- okay, I got it.

13          MR. MASTAN:  There's a limited pie out here.  And

14  to the extent that -- let's assume they're both correct.

15  Let's assume they're both entitled to judgments.  If

16  Mr. Richards geta to judgment first and collects on behalf

17  of the Shinn -- the Finn/Sheldon law firms, that dilutes

18  and takes away completely, I believe, any possible recovery

19  from Ms. Girardi for the estate leaving the estate's

20  creditors in the cold.

21          Now, if Mr. Richards on behalf of the estate gets

22  there and recovers first, then that means -- that's fine

23  for the estate, but then he's now done a disservice to his

24  other creditors who would have 100 percent dollar for

25  dollar on that as opposed to a pro rata distri -- sharing

Page                                                             10

1  with the other creditors.  Who gets there first?  Who makes

2  that decision?  You can't have one person, Mr. Richards in

3  his case or his law firm, following the instructions of two

4  masters about one piece -- one pie of assets that's not

5  enough to go around.

6            THE COURT:  All right.

7            MR. MASTAN:  And over the same funds.  It doesn't

8  work.

9            The second conflict of interest relates to the

10 proofs of claim.  Mr. Richards has asserted, the

11 Finn/Sheldon law firm has asserted that they have claims to

12 recover against the estate for these -- for what is

13 admittedly an oral agreement for referral fees.  California

14 makes those types of agreements unenforceable on their face

15 and I don't think there's any dispute that they were oral

16 agreements.  I think that was in their complaint.  So there

17 was a patently obvious and necessary opposition and

18 objection by this Trustee to those claims.

19           Now, what do we --

20           THE COURT:  What does that have to do with what

21 we're talking about in this case against going after

22 Mrs. Girardi?

23           MR. MASTAN:  Well, it has to do with it in two

24 ways.  One, whose money is it?  Whose money is it?  Is this

25 the Finn law firm's claim, Finn/Sheldon law firm's money

Page                                                                11

1   that went through or is it the Girardi Keese law firm's
2   money that went out?  Who's going to make that decision?
3   Mr. Richards, as the representative of both, can't.
4           So if he's representing the -- how do I explain
5   this?
6           THE COURT:  Take a deep breath.  I know it --
7           MR. MASTAN:  Yeah, there's no water --
8           THE COURT:  -- gets complicated.
9           MR. MASTAN:  There's no water.  I apologize, Your
10  Honor.
11          THE COURT:  Oh, yeah, I guess normally we would
12  but, yeah --
13          MR. MASTAN:  Right.
14          THE COURT:  -- just given everything else, we
15  don't have any.
16          MR. MASTAN:  Right.  So while the G case suggests
17  that -- well --
18          THE COURT:  I may inform people in the future
19  because I'm now --
20          MR. MASTAN:  Should bring a bottle of water.
21          THE COURT:  I'm sorry to actually if you want,
22  yeah, to bring it --
23          MR. MASTAN:  Yeah.
24          THE COURT:  -- I never even thought about it, but
25  that's --



Page                                                                    12

1           MR. MASTAN:  Yeah.

2           THE COURT:  -- a good idea.

3           MR. MASTAN:  So if there is a claim objection,

4  there has to be one because it's patently --

5           UNIDENTIFIED VOICE:  Yeah, I'm listening to

6  Peter --

7           MR. MASTAN:  -- objectionable by itself.

8           UNIDENTIFIED VOICE:  -- in the middle of oral

9  argument.

10          THE COURT:  Excuse me.  Stacy, what was that?  I

11 heard a voice there.

12          THE CLERK:  I got it.  I muted him.

13          THE COURT:  Okay.

14          MR. MASTAN:  Okay.

15          THE COURT:  All right.  I don't know who that --

16 or what -- go on.

17          MR. MASTAN:  So the Trustee at that point is

18 going to be litigating against the same clients as Mr.

19 Richards -- Mister -- as her special counsel.

20          Now, there was a case cited for -- in the

21 *Fondiller* (phonetic) case, I believe -- pull that out -- to

22 suggest that that's not a problem.  But in that case the

23 court approved the retention of counsel for creditors, but

24 it made a point to say those creditors aren't involved in

25 the transactions that are taking place.

Page                                                                    13

1              That's not the case what we have here.  Here
2  Mr. Richards' clients are the ones who are asserting that
3  the money is theirs, that the money was recoverable from
4  Ms. Girardi and at the same time that they're all asserting
5  the claims against the estate, same money.
6              THE COURT:  Well, tell me again about this oral
7  contract.  I mean, what is that claiming and how is that
8  different from the first one we're talking about?
9              MR. MASTAN:  It is different in that it is -- it
10 creates a --
11             THE COURT:  No, but who are they -- that was
12 between --
13             MR. MASTAN:  That was between the Finn/Sheldon --
14             THE COURT:  Yes.
15             MR. MASTAN:  -- purposed creditors.
16             THE COURT:  Yes.  And?
17             MR. MASTAN:  And the estate because Ms. Miller
18 will have an obligation --
19             THE COURT:  No, no, no.  Who is the other side of
20 the -- I think I understand.  Just for the record --
21             MR. MASTAN:  Ms. Miller.
22             THE COURT:  Who is the other side of this oral
23 agreement.
24             MR. MASTAN:  Oh, it was Girardi & Keese.
25             THE COURT:  Okay.  And -- okay.

P 888.272.0022 F 818.343.7119    BENHYATT    www.benhyatt.com
                                 Certified Deposition Reporters

Page                                                                    14

1          MR. MASTAN:  Or Tom Girardi, however.

2          THE COURT:  And so that -- okay.  Oh, oh, here we

3  go.  We got you some --

4          MR. MASTAN:  Wow.

5          THE COURT:  I didn't realize we had some water,

6  but okay.  You're way ahead of me.

7          MR. MASTAN:  What a great staff.

8          THE COURT:  Well, they keep me going here.

9          MR. MASTAN:  Thank you so much.

10         THE COURT:  You notice by the electronics here,

11  the screen and all, we are now -- I prefer live for obvious

12  reasons.

13         MR. MASTAN:  Yeah.

14         THE COURT:  But some hearings we're going to do

15  still on Zoom and they had this -- you see this great

16  screen in here.  The staff has been -- and clerk's office,

17  you know, fantastic kind of getting me into the 21st

18  Century.

19         So tell me how -- okay, so that was between --

20  again, the oral between the firm -- the law firm and

21  Mr. Richards' firm and that was to do what?

22         MR. MASTAN:  It was a referral fee as it was

23  outlined in the complaint.

24         THE COURT:  All right.  Referral fee for what

25  case?

P 888.272.0022 F 818.343.7119        BENHYATT   www.benhyatt.com
                                     Certified Deposition Reporters

Page                                                                    15

1            MR. MASTAN:  TXI.  What is it?  Oh.  Oh, I

2    understand that.

3            THE COURT:  Oh, I want to make sure the con --

4    you're talking about the conflict.

5            MR. MASTAN:  No, he -- right.

6            MR. RICHARDS:  I'm not a party to the oral

7    agreement, Your Honor.

8            MR. MASTAN:  I believe --

9            THE COURT:  Who's a party to the oral agreement?

10           MR. MASTAN:  It's the Finn/Sheldon law firm

11   represented by Mister -- now represented by Mr. Richards.

12           MR. RICHARDS:  And two other lawyers.

13           MR. MASTAN:  Right.

14           THE COURT:  Okay.  Well, anyway.  One at a time.

15           MR. MASTAN:  It's the Finn/Sheldon law firm.

16           THE COURT:  Okay.

17           MR. MASTAN:  Enters into an oral agreement

18   with --

19           THE COURT:  Okay.  And that has --

20           MR. MASTAN:  -- TX.

21           THE COURT:  -- and that's one of these many other

22   cases.  It's a referral fee for --

23           MR. MASTAN:  Yeah, I think it's called the TXI

24   cases or --

25               THE COURT:  Whatever.

Page                                                              16

1            MR. MASTAN:  -- something like that.  Whatever it
2    is.
3            THE COURT:  Well, that's another case.
4            MR. MASTAN:  Yeah, it doesn't matter.
5            THE COURT:  And has that -- is that settled?  Has
6    that money already been transferred in?
7            MR. MASTAN:  Allegedly the money was transferred
8    into Girardi & Keese, one of the allegations in the
9    complaint.
10            THE COURT:  Okay.
11            MR. MASTAN:  And then according to the
12    allegations of the complaint --
13            THE COURT:  Is that --
14            MR. MASTAN:  -- was then transferred out, at
15    least in part allegedly to --
16            THE COURT:  I got it.
17            MR. MASTAN:  -- Ms. Girar -- to Erika, right.
18    And that's with the --
19            THE COURT:  To her and/or to Mr. Girardi or both
20    or --
21            MR. MASTAN:  To Mister who?
22            THE COURT:  Mr. Girardi or --
23            MR. MASTAN:  Oh, they don't specify in the
24    complaint.  They say it went to them.
25            THE COURT:  In any case, right, right, right.

Page                                                                              17

1  No, I was just --

2              MR. MASTAN:  At least -- yeah.

3              THE COURT:  -- tracing.  I got it.

4              MR. MASTAN:  Right.

5              THE COURT:  So the money was come in, they didn't

6  get whatever -- assuming for argument's sake there's a

7  valid agreement, whatever.  There's agreement.  And then

8  the money went out and then everybody -- any money that

9  went out from the firm to either of the Girardis are going

10 to go after that.  That's generally what's going on.

11             MR. MASTAN:  In general, yes.

12             THE COURT:  Yeah, okay.

13             MR. MASTAN:  But at the same time going back,

14 Mr. Richards on behalf of Finn/Sheldon are going after

15 those same funds.

16             THE COURT:  Right.  Okay.

17             MR. MASTAN:  At the same time.

18             THE COURT:  All right.

19             MR. MASTAN:  And you can't be successful at both.

20 And so if we look at the language --

21             THE COURT:  Of course, wouldn't the stay prevent

22 the --

23             MR. MASTAN:  -- that was actually --

24             THE COURT:  At least as far as Mr. Girardi going

25 after -- those are -- under 548 -- we're talking about 548,

Page                                                              18

1   I assume, or something like that.  Maybe not 548, but

2   wouldn't those be stayed, those actions?  Wouldn't the

3   Trustee be the one to go after those?

4            MR. MASTAN:  Not necessarily.  Fraudulent

5   transfer, yes.

6            THE COURT:  Okay.  Fraudulent transfer, but --

7            MR. MASTAN:  Yeah, that's been taken care of.

8            THE COURT:  But even if -- but for -- but if it's

9   now alleged to be the possession of one or both of them, I

10  understand obviously the tracing problem.  Wouldn't that

11  also be -- wouldn't the federal trump that?  Wouldn't that

12  be -- that would be -- because it's allegedly -- if it's in

13  their possession allegedly wouldn't that be property of the

14  estate?

15           MR. MASTAN:  No.

16           THE COURT:  Why not?

17           MR. MASTAN:  Not necessarily.  Because if all

18  they have is bare legal title, then there's nothing that

19  they can -- then there's no fraudulent transfer to recover

20  and we see that all the time in the context of --

21           THE COURT:  Don't you --

22           MR. MASTAN:  -- over --

23           THE COURT:  Don't you have to get to the end

24  of -- the end of -- to know what the answer is to that?

25           MR. MASTAN:  Well, but then who's getting to the

Page                                                                      19

1  end?  Which one of them?  They're both moving forward with

2  the Finn/Sheldon defendants saying, hey, that's my money

3  that was converted --

4             THE COURT:  Yeah, but wouldn't they have then a

5  claim against the estate?  Let's say the estate goes after

6  it and it comes in.  Wouldn't -- and money is not going

7  anywhere.  Once it comes in here it needs a court order

8  wouldn't they then have a claim and at that point say, no,

9  no, no, that's really our money?  I mean, isn't that how it

10 could work?

11            MR. MASTAN:  No, because if the Finn/Sheldon

12 creditors are correct that their money was converted by

13 Ms. Girardi --

14            THE COURT:  Yeah.

15            MR. MASTAN:  -- then the estate can't recover it.

16            THE COURT:  Well, that's a bit of a -- but what

17 I'm thinking --

18            MR. MASTAN:  It's not property of the estate.

19            THE COURT:  -- ahead.

20            MR. MASTAN:  Right.

21            THE COURT:  That's a big "if."  There's all kinds

22 of things.  Let's say the estate goes ahead with that.

23            MR. MASTAN:  Um-hum.

24            THE COURT:  And then the money is there and then

25 wouldn't they still have the claim and say -- to say, no,

Page                                                                20

1  that was really -- we can trace it, whatever.  Isn't
2  that -- couldn't it work out that way?
3          MR. MASTAN:  I don't think it does because that
4  money is going to have to be shifted to recover to recover
5  because it's a fraudulent transfer.  Then it was Girardi &
6  Keese' money that was transferred and that's going to be
7  shared with everybody on a pro rata basis.
8          If it was only if it was Finn/Sheldon money that
9  was converted by Ms. Girardi does it not be property of the
10  estate and they would get --
11         THE COURT:  No, no, I understand.  But --
12         MR. MASTAN:  -- (indiscernible).  Yeah.
13         THE COURT:  -- the way I look at it, sure have to
14  get to the end.  You've got to know all the facts to figure
15  out.  And also is it possible -- again, I -- this is asking
16  questions.
17         MR. MASTAN:  Yeah.
18         THE COURT:  I -- as a former trial lawyer I know
19  the questions.  I just don't know the answer.  Is -- can
20  they actually -- monies come in and it goes in the gen --
21  as I understand it from other litigation here it just went
22  into the general fund.  It didn't go in -- it should have
23  gone in obviously to a separate account.
24         MR. MASTAN:  I don't know where the money went.
25         THE COURT:  But apparently that's not -- from --

Page                                                                    21

1  again, everything that I know about the case.  That's the

2  problem; if it went into a specific account there'd be no

3  tracing problem whatever.  But apparently my

4  understanding -- just in general, not this case.  I mean,

5  not this litigation you're talking about.  It went in and

6  it went to the bank account and then monies went out.  It'd

7  be pretty hard to trace that, wouldn't it?  I'm just asking

8  you.

9             MR. MASTAN:  You know, I don't know what the

10  tracing situation is.  I haven't seen the GK bank records.

11  I think they are -- you know, some of the records I

12  understand from Ms. Miller's representations and

13  descriptions pretty messed up --

14             THE COURT:  Well, that's what I --

15             MR. MASTAN:  Yeah.

16             THE COURT:  And again, all my information, all I

17  get is --

18             MR. MASTAN:  Right.

19             THE COURT:  -- from what's happening in court

20  here.

21             MR. MASTAN:  But again, unless they can show that

22  that was GK's money that went to -- the issue is, whose

23  money went out.  They both can't win and they're both

24  represented by Mr. Richards.

25             THE COURT:  Well, not necessarily.  GK, for

P 888.272.0022  F 818.343.7119      BENHYATT      www.benhyatt.com
Certified Deposition Reporters

EXHIBIT "1", PAGE 39

Page                                                                 22

1   instance, that debtor could if it's an improper transfer to

2   either of them can get it back.  But even then, that would

3   be subject to -- wouldn't it be subject to somebody else

4   saying, yeah, it originally was GK, but actually we can

5   trace it.

6          MR. MASTAN:  And, in fact, the answer to that is

7   no.  And that is because if it was -- if it's purely

8   traceable by the Sheldon/Finn law firms, then it is not a

9   transfer of GK's interest of funds.

10         THE COURT:  Well, again, my question is, how do

11  you know that until you -- and my question -- I get it.

12         MR. MASTAN:  Um-hum.

13         THE COURT:  But in order to get the answer to

14  what you said, you literally have to -- you have to

15  litigate the whole thing and figure out all of it.  And

16  then when you're all done, then you can look back, but I

17  don't see how you would know at the beginning of the

18  lawsuit who's right.

19         MR. MASTAN:  So let me answer that with a

20  question.  Who's going to bring that lawsuit?  Who's going

21  to make those determinations?  Mr. Richards on behalf of

22  his cli -- his purported creditor clients or Mr. Richards

23  on behalf of the Trustee as its --

24         THE COURT:  But aren't they going -- let me ask

25  you this.  But I get it.

Page                                                                    23

1           MR. MASTAN:  Yeah, okay.

2           THE COURT:  Who goes first.  But it seems to me

3    that -- again, I'm not -- I'm trying to explore because you

4    know much more --

5           MR. RICHARDS:  Yeah.

6           THE COURT:  -- about this than I do.  That's why

7    I like it more in person, so we --

8           MR. MASTAN:  Sure.

9           THE COURT:  -- we can ask is, there's really two

10   separate things.  Let's say that -- let's say for whatever

11   reason Girardi Keese said, you know, it shouldn't -- for

12   whatever reason it shouldn't have gone to you.  Wouldn't

13   necessarily have to decide what right anybody else had to

14   them, would it?

15          MR. MASTAN:  No, that's incorrect.

16          THE COURT:  Okay.

17          MR. MASTAN:  In order for the Girardi and Keese

18   trustee to recover a fraudulent transfer part of the

19   statute is there must be a transfer of the debtor's

20   interest in property.

21          THE COURT:  Right.

22          MR. MASTAN:  And what is clear from case law is

23   if you have bare legal title that is not a transfer of the

24   debtor's --

25          THE COURT:  Oh, I get it.

Page                                                                  24

1              MR. MASTAN:  -- interest in property.

2              THE COURT:  I get it.

3              MR. MASTAN:  So if this money belongs to the

4   Finn/Sheldon defend -- lit -- law firms --

5              THE COURT:  Okay.

6              MR. MASTAN:  -- then -- and --

7              THE COURT:  No, I agree.  I agree with your --

8              MR. MASTAN:  -- then the Trustee can't do it.

9              THE COURT:  -- what -- the laws.

10             MR. MASTAN:  Okay.

11             THE COURT:  Why don't you move on because we're

12  never going to decide this, but I want at least in my own

13  mind get an idea of --

14             MR. MASTAN:  Right.

15             THE COURT:  -- what we're talking about.

16             MR. MASTAN:  And my point is, you don't need to

17  know the answer to that question now.  All you need to know

18  how is that Mr. Richards is on both sides.

19             THE COURT:  I got it.

20             MR. MASTAN:  And it's a question of who gets

21  there first.

22             THE COURT:  Okay.

23             MR. MASTAN:  I do want to address briefly --

24  there was some discussion in the reply brief about five --

25  sorry, 327(e) and its applicability.

Page                                                                    25

1          THE COURT:  Right.

2          MR. MASTAN:  If you read the statute, 327(a)

3   talks about being disinterested and not having a conflict.

4   And 327(c) says you don't have a conflict solely -- solely

5   by representation of a trustee.

6          THE COURT:  No, I understand.

7          MR. MASTAN:  Okay.  Now, 327(e) read through on

8   its face relates to the debtors.  Now, there's a case out

9   there from -- called *Polaroid* that was cited in the

10  Trustee's reply brief.  The *Polaroid* case talks about, you

11  know, well, we have to analyze it also in the 320 -- in the

12  con -- the conflict under 327 and some additional language

13  that exists in that case -- or in 327(e).  But my point is,

14  the *Polaroid* case is a debtor case.  That's why it's being

15  analyzed under 327(e).  It's not a representation of the

16  creditors' situation.

17         So what we have, Your Honor, are two conflicts of

18  interest.  One is between Mr. Richards representing both

19  the Shinn Fel -- Finn/Sheldon law firm.

20         THE COURT:  Easy for you to say.

21         MR. MASTAN:  Right.  As well as the Trustee

22  seeking to recover the same money.  And as you -- your

23  thoughtful question was, well, we don't know the answer and

24  my point is you don't need to know the answer.  There's an

25  irreconcilable conflict of interest at that point because

Page                                                                    26

1  he is on both sides.  And because at one point must decide

2  he has to argue that it was Finn/Sheldon money that went to

3  Ms. Girardi.  On the other side he has to argue that it was

4  Girardi & Keese money that went to Girardi.

5           THE COURT:  All right.  Okay.  Now I do

6  understand that.

7           MR. MASTAN:  Okay.  And that's the important --

8  that's the single most important part of this.  That's what

9  we need to understand.  If you've got that, we're good.

10          THE COURT:  Okay.  Now I do understand.

11          MR. MASTAN:  Okay.

12          THE COURT:  And I appreciate it.  All right.

13          So what do you have to say?  We now know what the

14  issue is.  I mean, I know what the issue was.  We know at

15  least -- now I know more about the actual lawsuit and so

16  forth, so what about that?

17          MS. WANG EKVALL:  So under 327(c), Your Honor --

18          THE COURT:  Well, let me ask you specifically.

19  It sounds like he has a good point.  Is he correct that

20  that's what they're -- they -- there -- is it that they are

21  seeking -- Mr. Richards' client is seeking that, no, this

22  is not property of the estate.  Any transfers that were --

23  that the -- that you would be interested in, that is, from

24  the -- representing the Trustee that that's -- now that's

25  commingled or whatever the argument is and that's our money

Page                                                                 27

1   and if they have a claim then they have to file a claim or

2   if -- is he going to be arguing that, no, no, it's not

3   property of the estate because we had this agreement.  What

4   factually is wrong with that argument?

5          MS. WANG EKVALL:  Well --

6          THE COURT:  Now, answer that specific -- because

7   I understand what the law is.  That seems to be a pretty

8   good argument unless I'm missing something.

9          MS. WANG EKVALL:  So under (c) there has to be an

10  actual conflict --

11         THE COURT:  No, no --

12         MS. WANG EKVALL:  -- and the fact that we're all

13  discussing these --

14         THE COURT:  Well, wait.  Let me stop you.  That's

15  why I'm pretty good at getting right to the heart of it.

16  That's the issue.  Is if -- and again, I have no idea

17  whether this oral contract is good -- forget -- I'm

18  assuming just for argument's sake that's where we're at.

19  So I'm not deciding it, but -- so my question is, it would

20  seem that he has a very good point that it is Mr. Richards'

21  client is their position going to be or is it the position

22  no, this was not -- we had an agreement, this was never the

23  estate's money and, therefore, you owe it to us.  Is that

24  their argument?  Yes or no.

25         MS. WANG EKVALL:  No.  I mean, it can't be

Page                                                                    28

 1  because at the end of the day all it was, was a contractual

 2  agreement.  It wasn't their money.  It wasn't that --

 3          THE COURT:  Well, I want to ask you -- no, no.

 4  But whatever the law -- I want to ask you -- and I can ask

 5  Mr. Richards here a very simple question that he raised.

 6  Whatever you -- and again, I know what your position is.

 7  I'm the only neutral person here at least arguing about

 8  this.  It doesn't matter to me one way or the other.  I

 9  just follow the law.

10          But my question is, he's -- counsel has just said

11  that Mr. Richards is going to be arguing the -- that it is

12  their money and not the estate's money, period.  Whether

13  he's right or wrong, that's not the point.  It is his

14  position that it is their money and that's the estate's and

15  if that's the case, then it looks like there's a conflict.

16          So my question is, you can answer it or I can ask

17  Mr. Richards.

18          MS. WANG EKVALL:  I think there are lots of

19  assumptions made there.  If it's true --

20          THE COURT:  No, but I get to ask the questions.

21  That's what --

22          MS. WANG EKVALL:  No, I understand, Your Honor.

23  I'm trying to answer.

24          THE COURT:  So it's a very simple question.  Is

25  his position that this money is not property of the estate

P 888.272.0022  F 818.343.7119    BENHYATT    www.benhyatt.com
                                   Certified Deposition Reporters

Page                                                                      29

1   pursuant to this oral agreement, whatever.  For whatever

2   reason, period.  It's a simple question.  Yes or no.

3           Maybe I'll ask --

4           MS. WANG EKVALL:  I don't know.

5           THE COURT:  -- you, Mr. Richards.

6           MR. RICHARDS:  Yes, Your Honor.  The answer is

7   no.  We saw in your order remanding the case we said all

8   the transfers, if any, to Erika Girardi are property of the

9   estate.  We agreed to this --

10          THE COURT:  Well, then let me ask you.  You heard

11  counsel just saying that your lawsuit is -- that -- is also

12  going on and it was remanded to the state court, right?

13          MR. RICHARDS:  And I didn't file the lawsuit just

14  so the Court --

15          THE COURT:  It doesn't matter who filed it.  I

16  want to know -- you're counsel, right?  You're in the firm.

17          MR. RICHARDS:  I (indiscernible -- away from

18  microphone) --

19          THE COURT:  Right, right.  So it's a very simple

20  question.  Is it -- do you -- are you going to continue

21  with that lawsuit?

22          MR. RICHARDS:  Yes, there's other defendants and

23  there's other --

24          THE COURT:  Okay.  No.  Other -- as to

25  Mrs. Girardi.  That's who we're talking about here.  Only



Page                                                        30

1  her.

2          MR. RICHARDS:  The truthful answer is we have to

3  file an amended complaint, so that complaint that was

4  remanded it hasn't even been --

5          THE COURT:  No, I want you to tell me yes or no.

6  It's very simple depending on the --

7          MR. RICHARDS:  We're not pursuing any money that

8  would be property of the estate.

9          THE COURT:  No, no.  I want you to -- are you

10 going after her for any money that was distributed --

11 you've heard what the argument is.  Namely, money came in,

12 lots of money came in and then the Trustee -- what you're

13 going to be -- if you -- if I approve the hiring in this

14 case would be to go after money that was transferred from

15 the debtor, that is, the Girardi Keese to Mrs. Girardi.

16 That's right and that's what you're being hired for, right?

17         MR. RICHARDS:  We're not going after any of those

18 funds.  We already made a written agreement to that effect

19 with the Trustee.  That's why they brought their opposition

20 to the motion to remand.

21         THE COURT:  No, no.  With -- no, again, again --

22 but I know the Trustee wants to go after her, Mrs. Girardi,

23 for monies that were transferred from the firm to her.  Is

24 that correct?  That's what you're being hired for?

25         MR. RICHARDS:  That is correct.  To investigate

Page                                                                    31

1  those.

2           THE COURT:  To invest those -- those claims.  And

3  again, I have no opinion.  I don't -- of any of this other

4  than that's what you're being hired to, to go after and see

5  to what extent those could be recovered for the Girardi

6  Keese case, right?

7           MR. RICHARDS:  That's correct.

8           THE COURT:  Okay.  So those are monies that --

9  I'm repeating myself *ad nauseam*, but the money that came

10  into the -- into Girardi Keese went out to her, to Mrs.

11  Girardi, right?

12           MR. RICHARDS:  Well, we don't know.

13           THE COURT:  Well, but that's what you're

14  investigating.

15           MR. RICHARDS:  That's right and those are

16  fraudulent conveyances.

17           THE COURT:  Well, whatever.  Whatever.  What I'm

18  talking about, just cutting through all the discussion --

19           MR. RICHARDS:  And we --

20           THE COURT:  And so you are -- when you're being

21  hired to investigate whether any money from Girardi Keese

22  went to her and, if so, is there anything that the estate

23  can recover.

24           MR. RICHARDS:  That's right.  And a week ago I

25  was in front of you and we put on the record because the

Page                                                                32

1  other lawyer asked me to do so for another co-defendant

2  that those funds belong to the estate.

3          THE COURT:  No, I understand that.  I remember

4  that.

5          MR. RICHARDS:  It's in your order remanding it --

6          THE COURT:  I --

7          MR. RICHARDS:  Bullet proof.

8          THE COURT:  I get it, but I want -- but again, I

9  want to make it clear on the record because you are the one

10 who's going to be hired --

11         MR. RICHARDS:  Right.

12         THE COURT:  -- and counsel -- and so -- so we

13 know that you're going to be hired to go after money that

14 came out of Girardi Keese potentially to investigate to

15 Mrs. Girardi and, if so, can that be recovered under any

16 theory.

17         MR. RICHARDS:  Back to the estate.

18         THE COURT:  Back to the estate.  Back to what

19 your other -- the state court case.  Are you going after

20 any money -- just her.  Just Mrs. Girardi, not anybody

21 else -- that is, that same money, namely the money that

22 came from the estate whether or not --

23         MR. RICHARDS:  No, you're not because the only

24 money that came from the state could be a fraudulent

25 conveyance.

Page                                                              33

1          THE COURT:  Right.  No, no, but you -- her -- his

2   argument is saying that you might then claim this was never

3   the -- it was never Girardi Keese's money because you had

4   a -- it was really your money.

5          MR. RICHARDS:  That's not the deal we made with

6   the Trustee.  We waived any claims of transfers to

7   Ms. Girardi.

8          THE COURT:  Okay.  So you're saying on the record

9   that there's no conflict because you are not -- in this

10  lawsuit you're going to have to amend it and it will be a

11  part of any order --

12         MR. RICHARDS:  That's correct.

13         THE COURT:  -- if I approve this that it will

14  make it clear that you've represented that indeed there's

15  no conflict as far as that because you are not -- and your

16  lawsuit will be amended as to her -- you said there were

17  other parties involved -- that you will be not going after

18  as to Mrs. Girardi any money that came from the estate

19  whether it was property of the estate or not.  It came from

20  the estate.

21         MR. RICHARDS:  That's correct and that would have

22  eviscerated the good faith agreement we made --

23         THE COURT:  No, no.  No, I --

24         MR. RICHARDS:  -- with the Trustee.  So

25  (indiscernible) oppose a remand.

Page                                                                    34

```
 1            THE COURT:  No, no, I understand it.  We were
 2  here -- I don't know if you were here last time or not.  I
 3  don't remember who was here.  I was here, you were here.
 4            MR. RICHARDS:  Mr. Leer (phonetic) was the
 5  attorney --
 6            THE COURT:  He -- yeah.
 7            MR. RICHARDS:  -- (indiscernible) and he put that
 8  on the record --
 9            THE COURT:  Right.  And so --
10            MR. RICHARDS:  -- and in the order.
11            THE COURT:  So it's clear to me that what you say
12  then there is no conflict because you're not going to be
13  going after any of that -- any of that -- can't make any
14  claim at all to any of that money, right?
15            MR. RICHARDS:  That's where -- we couldn't.
16            THE COURT:  Okay.  I got it.
17            MR. RICHARDS:  For all the reasons why we made
18  the settlement with the Trustee not to oppose the remand.
19            THE COURT:  Okay.
20            MR. RICHARDS:  There'd be no -- that's not -- you
21  don't make a deal and then say, we're really going after
22  it.  It's in your court order.  I mean --
23            THE COURT:  I understand.
24            MR. RICHARDS:  -- even though, Your Honor, the
25  label is not dispositive, your order says transfer.
```

Page                                                                        35

1              THE COURT:  Okay.

2              MR. RICHARDS:  And so I -- I'm not going to play

3    a game with the Court, but I'm telling the Court keep --

4    don't keep the case because we're not pursuing the

5    estate --

6              THE COURT:  No, I understand.

7              MR. RICHARDS:  -- and I still (indiscernible) --

8              THE COURT:  That was the conversation we had last

9    time.  Let me finish and then you wanted --

10             MR. RICHARDS:  All right.

11             THE COURT:  Why don't you quickly respond because

12   Mr. Richards said it very clear on that point.

13             MR. MASTAN:  What Mr. Richards just said was

14   they're not going after any estate money.

15             THE COURT:  No, no.

16             MR. MASTAN:  That's what he said.

17             THE COURT:  No, that isn't what I said or what he

18   said.  Any money that came from -- was transferred from

19   Girardi Keese to her.  I didn't even get into whether it

20   was estate property at all.

21             MR. MASTAN:  Okay.  But -- okay, that's why --

22   those are the words I thought he just said, but if your

23   understanding is he's not going through any property that's

24   from Girardi & Keese out --

25             THE COURT:  Right.  To her.

Page                                                                        36

```
 1            MR. MASTAN:  Okay.  To her.

 2            THE COURT:  To her.

 3            MR. MASTAN:  Here's the problem with that.

 4            THE COURT:  Briefly because you've already had

 5   your argument.

 6            MR. MASTAN:  Real briefly.  The briefly is that

 7   they're continuing to pursue these claims under the state

 8   law action.

 9            THE COURT:  He is not pursuing her for any money.

10   He said he's going to amend the complaint and I'll have

11   that in any order approving his employment.  They're not

12   going to go after any money that was transferred without

13   getting an asset -- any monies that were transferred from

14   Girardi Keese to Mrs. Girardi, period.  There's no mention

15   in there whether there's assets to the estate or not.  This

16   is money that was transferred from Girardi Keese to her,

17   period.

18            MR. MASTAN:  Okay.

19            THE COURT:  So why don't you have a seat?  That's

20   clear.

21            MR. MASTAN:  But that's -- okay.  So let's assume

22   that they dismiss the lawsuit as to Ms. Girardi in state

23   court, which is difficult for me because I do --

24            THE COURT:  Well, let me stop you.

25            MR. MASTAN:  -- understand -- yes.
```

Page                                                                                    37

1        THE COURT:  Counsel, why don't you have a seat?

2  I really -- I got to the point -- your point that you've

3  made.  He's answered it to my satisfaction.  I'm not going

4  to --

5        MR. MASTAN:  Okay.

6        THE COURT:  -- have any further because you

7  had -- you made a very good point and I've -- and I thought

8  I knew the answer because of the previous hearing, but you

9  weren't here so I want to make sure that on the record in

10 this case it made it clear.  I thought it was clear.  It

11 really is clear.

12       So, counsel, why don't you come back?  Maybe it

13 was the other -- the previous argument as well as conflict.

14       MS. WANG EKVALL:  The claims, Your Honor, as I

15 indicated earlier, Your Honor, as the Trustee's general

16 bankruptcy counsel, my firm will be evaluating and

17 revealing and pursuing any objections to claims including

18 claims of the law firm Finn/Sheldon if it's appropriate to

19 do so.  We haven't gotten to that phase of the case yet.

20 We don't even have schedules filed and we don't have a

21 claims bar date yet, but at some point --

22       THE COURT:  That's quite -- I think it was

23 sometime next year.

24       MS. WANG EKVALL:  Some point down the road, Your

25 Honor.

Page                                                                        38

1        THE COURT:  Well, because it's so -- this is so

2   complicated for everybody's sake, for claimant's sake, for

3   every -- everybody's sake.  That's why we put off the

4   claims bar date to give you time to literally figure out

5   what's going on in the case.

6        MS. WANG EKVALL:  So we will -- there will be a

7   point in time in this case when claims review and analysis

8   will be necessary.  And when that time comes it will be my

9   firm that will be handling it, not Mr. Richards given the

10  very limited scope of his employment.

11       THE COURT:  All right.  Thank you.

12       No, no.  It's not going to -- nothing furth --

13  that's why I prefer being in person.  I can see about

14  the -- no, I am satisfied that there is no -- there is no

15  conflict and to the extent of any claim clearly that the

16  Trustee will be involved.

17       And I appreciate again this one point.  I thought

18  I knew the answer and I want to make it absolutely clear

19  that I thought I knew it, but I wanted Mr. Richards to

20  state it because he was involved in the previous hearing on

21  this remand.  We made it quite clear because the issue did

22  come up.  So no and that -- what I would have you -- I will

23  approve the -- I will approve the application, but I would

24  like to have it in the order, this last point that we were

25  talking about specifically that Mr. Richards made the

Page                                                                                    39

1  representation that essentially that -- that they're not

2  going to be suing any claim -- any of the funds that were

3  transferred from -- they may have claimed later on the

4  estate, but as far as -- they're not -- in the state court

5  action that they're not -- they're going to amend the

6  complaint and -- as far as at least Mrs. Girardi is

7  concerned, and they're not going to be going after her at

8  all for any transfers from Girardi Keese to -- to

9  Mrs. Girardi.

10          MR. MASTAN:  May I ask you one clarification,

11  Your Honor?

12          THE COURT:  Yes.

13          MR. MASTAN:  To be clear, is that a release of

14  the claims that are asserted in the complaint?

15          THE COURT:  No.  Well --

16          MR. MASTAN:  So we can bring it back later?

17  That's the point --

18          THE COURT:  Well, the -- well --

19          MR. MASTAN:  That's the clarification.

20          THE COURT:  I'm not going to worry about it.

21  That would be suicidal.  They're not going to have to --

22  this agreement they don't have to -- after they go through

23  here they're not going to -- I don't think they have to

24  waive anything.  They're not -- the estate is -- that's

25  what he's being hired for.  They're going to go after her.

Page                                                                          40

1  I'm not going to -- we could be here all -- forever --
2  hypothe -- I'm not going to ask them to waive any rights.
3  But as far as what they're -- the complaint will be
4  amended, it's not going to include any claim to specific
5  funds from Girardi Keese to Mrs. Girardi.  So that's clear
6  enough.
7          What happens in the future, we could be here
8  for -- we have bright minds in here.  We could figure out
9  all sorts of possibilities, but I am satisfied that --
10  first of all, I had no idea whether they will -- after the
11  investigation the Trustee will pursue it at all.  I have no
12  idea, but I am -- so that's -- so anyway, so I am going
13  to -- so thank you very much.
14          So just that one portion in there just to make it
15  clear, it's not talking about assets of the estate.  It
16  will be transfers of funds because any transfer claim to
17  any -- any litigation based on any claim of the Girardi
18  Keese case based on transfer of funds from Girardi Keese to
19  Mrs. Girardi and that -- they are not going to pursue in
20  the state court, period.  I'm not going to ask them to
21  waive any -- who knows in the future, but that's -- but
22  right now that's not going to happen.
23          And so if anything if they later do something,
24  you can always come back and complain about it, but it
25  seems pretty clear to me.

P 888.272.0022  F 818.343.7119      **BENHYATT**      www.benhyatt.com
                                    Certified Deposition Reporters

Page                                                        41

1          MS. WANG EKVALL:  I'll make sure to circulate the

2     order, Your Honor.

3          THE COURT:  Okay.  So let me ask.  This is the

4     only thing.  Do we have -- excuse me?

5          THE CLERK:  (Indiscernible)

6          THE COURT:  Yeah, in the future as you can see,

7     you can see where we care about everybody.  We're pretty

8     careful here, but I -- it's so much different, the

9     different dynamic, as far as I am concerned, about

10    physically being here.  You just can't compare.  You do the

11    best you can.  I understand it's necessary, but we will

12    set -- we will still continue certain status conference.  A

13    few things on Zoom.  But ultimately my desire is to get the

14    vast majority back in person like today.  In fact, this

15    afternoon I have a big hearing again in person.

16          So thank you very much and I appreciate and I'm

17    glad -- my staff, they got you -- you can take whatever

18    water you were offered if you want, I guess.  No one else

19    is going to use it, so take the bottle with you and I

20    will -- if you'll prepare that order I will --

21          MS. WANG EKVALL:  Thank you, Your Honor.  On an

22    unrelated note within the same case if I may with the

23    Court's indulgence.

24          THE COURT:  Sure, all right.

25          MS. WANG EKVALL:  We -- the estate has to move

```
Page                                                            42
1   out of the 1122 --
2           THE COURT:  Oh, yeah.  I was going to ask about
3   that --
4           MS. WANG EKVALL:  -- Wilshire building.
5           THE COURT:  -- and I forgot.
6           MS. WANG EKVALL:  And we uploaded an abandonment
7   order this morning.  The movers are coming later this week,
8   so we're hoping that the Court -- it was a negative notice
9   motion.  Nobody opposed and --
10          THE COURT:  Nobody opposed it.
11          MS. WANG EKVALL:  -- we submitted a declaration.
12          THE COURT:  That -- I think it's be unlikely
13  anybody would, but -- so where are you move --
14          MS. WANG EKVALL:  Just --
15          THE COURT:  So you're -- where are you going?
16  Where --
17          MS. WANG EKVALL:  We're --
18          THE COURT:  There are two buildings.  Move from
19  one to the other, but ultimately out of the second one
20  or --
21          MS. WANG EKVALL:  Well, it's a combination.  For
22  now we're moving things that are still necessary into the
23  other building, 1126 Wilshire, but we're also destroying
24  some of the assets of no value, some of the -- there were
25  just thousands of magazines with Tom Joriety's (phonetic)
```

Page                                                                         43

```
 1   pictures on them that don't think they have --
 2           THE COURT:  I say --
 3           MS. WANG EKVALL:  -- realizable value and --
 4           THE COURT:  He has many more, no doubt, than most
 5   people, but --
 6           MS. WANG EKVALL:  Yes.
 7           THE COURT:  -- in any case I -- okay.
 8           MS. WANG EKVALL:  So if the --
 9           THE COURT:  Yeah, I'll --
10           MS. WANG EKVALL:  So just wanted to bring it to
11   the Court's attention.
12           THE COURT:  -- take a look at it and I'm sure
13   I'll sign it, so --
14           MS. WANG EKVALL:  Thank you, Your Honor.
15           THE COURT:  Okay.  Thank you very much.
16           MR. MASTAN:  Thank you, Your Honor.
17           THE COURT:  All right.  Thank you.
18           MR. MASTAN:  Ms. Fortier (phonetic), you are a
19   lifesaver, thank you.  Appreciate it.
20           THE COURT:  Thank you.  All right.
21   (End at 10:41 a.m.)
22                    *  *  *  *  *  *  *
23
24
25
```

P 888.272.0022  F 818.343.7119            BENHYATT          www.benhyatt.com
                                    Certified Deposition Reporters

Page                                                                    44

1           I certify that the foregoing is a correct

2    transcript from the electronic sound recording of the

3    proceedings in the above-entitled matter.

4

5

6           *Ruth Ann Hager*

7    _____        Date:  6/22/2021

8    RUTH ANN HAGER, C.E.T.**D-641

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT "2"

1 | **SMILEY WANG-EKVALL, LLP**
Lei Lei Wang Ekvall, State Bar No. 163047

2 | *lekvall@swelawfirm.com*
Philip E. Strok, State Bar No. 169296

3 | *pstrok@swelawfirm.com*
Timothy W. Evanston, State Bar No. 319342

4 | *tevanston@swelawfirm.com*
3200 Park Center Drive, Suite 250

5 | Costa Mesa, California 92626
Telephone:   714 445-1000

6 | Facsimile:   714 445-1002

7 | Attorneys for Elissa D. Miller, Chapter 7
Trustee

FILED & ENTERED

JUN 10 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier        DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re

GIRARDI KEESE,

                              Debtor.

Case No. 2:20-bk-21022-BR

Chapter 7

**ORDER GRANTING CHAPTER 7 TRUSTEE'S APPLICATION TO EMPLOY THE LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, A.P.C. AS SPECIAL LITIGATION COUNSEL**

Date:      June 8, 2021
Time:      10:00 a.m.
Ctrm.:     1668
           255 E. Temple Street
           Los Angeles, California 90012

On June 8, 2021, at 10:00 a.m., the above-captioned Court held a hearing on the

*Chapter 7 Trustee's Application to Employ the Law Offices of Ronald Richards &*

*Associates, A.P.C. as Special Litigation Counsel* [Docket No. 318] (the "Application") filed

by Elissa D. Miller, in her capacity as Chapter 7 Trustee (the "Trustee") for the

bankruptcy estate of Girardi Keese.  Appearances were as noted on the Court's record.

Having considered the Application and the pleadings, declarations, and exhibits

filed in support thereof and response thereto, and the statements and arguments of

counsel on the record at the hearing on the Application, finding that notice and service of

1   the Application were proper and that no further notice be given, and finding good cause

2   for the relief requested in the Application,

3       **IT IS ORDERED** that, based on the representation by the Richards Firm[1] that the

4   Plaintiffs in the Sheldon Litigation have agreed to and will not pursue any claims against

5   Erika Girardi involving any transfers from the Debtor to Erika Girardi, the Trustee is

6   authorized to employ the Law Offices of Ronald Richards & Associates, A.P.C., as her

7   special litigation counsel on the terms and conditions set forth in the Application.

8                                                    ###

9

10

11

12

13

14  Approved as to Form:

15

16  DINSMORE & SHOHL LLP

17

18  _____*Signature attached*_____
    PETER J. MASTAN
19  Attorneys for Erika Girardi

20

21

22

23

24  Date: June 10, 2021          _____

25                               Barry Russell
                                 United States Bankruptcy Judge
26

27  _____

28      [1]   Capitalized terms shall have the same meaning and usage as in the Motion.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2870299.2                         2                              ORDER

1   **SMILEY WANG-EKVALL, LLP**
Lei Lei Wang Ekvall, State Bar No. 163047
2   *lekvall@swelawfirm.com*
Philip E. Strok, State Bar No. 169296
3   *pstrok@swelawfirm.com*
Timothy W. Evanston, State Bar No. 319342
4   *tevanston@swelawfirm.com*
3200 Park Center Drive, Suite 250
5   Costa Mesa, California 92626
Telephone:   714 445-1000
6   Facsimile:   714 445-1002

7   Attorneys for Elissa D. Miller, Chapter 7
Trustee

8

9           **UNITED STATES BANKRUPTCY COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

            **LOS ANGELES DIVISION**

11

| | |
|---|---|
| In re | Case No. 2:20-bk-21022-BR |
| 12   GIRARDI KEESE, | Chapter 7 |
| 13              Debtor. | **ORDER GRANTING CHAPTER 7 TRUSTEE'S APPLICATION TO EMPLOY THE LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, A.P.C. AS SPECIAL LITIGATION COUNSEL** |

14

15

16

17         Date:    June 8, 2021
        Time:    10:00 a.m.
18        Ctrm.:    1668
              255 E. Temple Street
19              Los Angeles, California 90012

20

21        On June 8, 2021, at 10:00 a.m., the above-captioned Court held a hearing on the

22   *Chapter 7 Trustee's Application to Employ the Law Offices of Ronald Richards &*

23   *Associates, A.P.C. as Special Litigation Counsel* [Docket No. 318] (the "Application") filed

24   by Elissa D. Miller, in her capacity as Chapter 7 Trustee (the "Trustee") for the

25   bankruptcy estate of Girardi Keese.  Appearances were as noted on the Court's record.

26        Having considered the Application and the pleadings, declarations, and exhibits

27   filed in support thereof and response thereto, and the statements and arguments of

28   counsel on the record at the hearing on the Application, finding that notice and service of

2870362.1                     1                       ORDER

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   the Application were proper and that no further notice be given, and finding good cause

2   for the relief requested in the Application,

3        **IT IS ORDERED** that, based on the representation by the Richards Firm[1] that the

4   Plaintiffs in the Sheldon Litigation have agreed to and will not pursue any claims against

5   Erika Girardi involving any transfers from the Debtor to Erika Girardi, the Trustee is

6   authorized to employ the Law Offices of Ronald Richards & Associates, A.P.C., as her

7   special litigation counsel on the terms and conditions set forth in the Application.

8                                        ###

9

10

11

12

13

14

15

16

17

18

19

20   Approved as to Form:

21

22   DINSMORE & SHOHL LLP

23

24   _____
     PETER J. MASTAN

25   Attorneys for Erika Girardi

26

27   _____

28   [1]    Capitalized terms shall have the same meaning and usage as in the Motion.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2870362.1                              2                                    ORDER

# EXHIBIT "3"

1

SPERTUS, LANDES & UMHOFER, LLP
James W. Spertus (SBN 159825)
Ezra D. Landes (SBN 253052)
1990 South Bundy Dr., Suite 705
Los Angeles, California 90025
Tel.:    (310) 826-4700
Fax:    (310) 826-4711
jim@spertuslaw.com
ezra@spertuslaw.com

THE LAW OFFICES OF
RONALD RICHARDS & ASSOCIATES, A.P.C.
Ronald Richards (SBN 176246)
Morani Stelmach (SBN 296670)
P.O. Box 11480
Beverly Hills, CA 90213
Tel.:    (310) 556-1001
Fax:    (310) 277-3325
ron@ronaldrichards.com
morani@ronaldrichards.com

Attorneys for Plaintiffs

FILED & ENTERED

MAY 13 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier      DEPUTY CLERK

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

UNITED STATES BANKRUPTCY COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

In re:

GIRARDI KEESE,

Debtor.

LAW OFFICES OF PHILIP R. SHELDON,
APC, a California professional corporation,
PHILIP R. SHELDON, an individual, LAW
OFFICES OF ROBERT P. FINN, a California
sole proprietorship, and ROBERT P. FINN, an
individual,

Plaintiffs,

v.

THOMAS V. GIRARDI, an individual;
GIRARDI & KEESE, a California law firm;
ERIKA GIRARDI a/k/a ERIKA JAYNE, an
individual, EJ GLOBAL, LLC, a California
limited liability company, 1126 WILSHIRE
PARTNERSHIP, a California general
partnership, GIRARDI FINANCIAL, INC., a
Nevada corporation, DAVID LIRA, an
individual, ROBERT FINNERTY, an
individual, and DOES 1-100, inclusive,

Defendants.

CHAPTER 7

Hon. Barry Russell

CASE NO.: 2:20-bk-21022-BR
ADV. NO.: 2:21-ap-01039-BR

**ORDER GRANTING PLAINTIFFS'
MOTION FOR REMAND**

DATE:        May 11, 2021
TIME:        2:00 p.m.
CTRM:        by zoomgov.com
MEETING ID:  161 713 6367
PASSWORD:    123456

*ORDER GRANTING PLAINTIFFS' MOTON FOR REMAND*

1    The Court, having considered Plaintiffs Law Offices of Philip R. Sheldon, Philip R.

2    Sheldon, Law Offices of Robert P. Finn, and Robert P. Finn's (collectively, "Plaintiffs")

3    motion for an order remanding to state court the action entitled *Law Offices of Philip R.*

4    *Sheldon, et al. v. Girardi, et al.*, Los Angeles Superior Court Case No. 20STCV47160 (the

5    "Removed Action"), any opposition regarding the same, for the reasons stated on the record

6    and for good cause appearing, hereby orders that Plaintiffs' Motion is GRANTED.

7    Counsel for Plaintiff also reaffirmed that Plaintiffs would not be proceeding on any

8    fraudulent transfer claims, including but not limited to the 6th Cause of Action in the First

9    Amended Complaint, and that fraudulent transfer claims belong to the bankruptcy estate of

10    Girardi Keese.

11    The Removed Action is hereby REMANDED to the Superior Court of the State of

12    California, County of Los Angeles forthwith.

13    **IT IS SO ORDERED.**

14    ###

15

16

17

18

19

20

21

22

23

24    Date: May 13, 2021    _____
                                          Barry Russell
25
                                          United States Bankruptcy Judge
26

27

28

1

*ORDER GRANTING PLAINTIFFS' MOTON FOR REMAND*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1  All parties hereby agree to the foregoing order.

2  Dated: May 12, 2021                              SMILEY WANG-EKVALL

3

4                                                   /s Tim Evanston

5                                                   _____

6                                                   Tim Evanston
                                                    Attorney for the Trustee
7

8  Dated: May 12, 2021                              SPERTUS, LANDES & UMHOFER LLP

9

10                                                  /s Ezra Landes

11                                                  _____

12                                                  Ezra Landes
                                                    Attorney for Plaintiffs
13

14 Dated: May 12, 2021                              ROBIE & MATTHAI

15

16                                                  /s Kyle Kveton

17                                                  _____

18                                                  Kyle Kveton
                                                    Attorney for Defendant David Lira
19

20

21

22

23

24

25

26

27

28

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

2

*ORDER GRANTING PLAINTIFFS' MOTON FOR REMAND*

EXHIBIT "3", PAGE 69

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626.

 A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION TO MOTION FOR RECONSIDERATION OF ORDER GRANTING CHAPTER 7 TRUSTEE'S APPLICATION TO EMPLOY THE LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, A.P.C. AS SPECIAL LITIGATION COUNSEL; DECLARATIONS OF ELISSA D. MILLER AND RONALD RICHARDS IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  July 16, 2021  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  July 16, 2021  , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| July 16, 2021 | Gabriela Gomez-Cruz | /s/ Gabriela Gomez-Cruz |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- Kyra E Andrassy    kandrassy@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Rafey Balabanian    rbalabanian@edelson.com, docket@edelson.com
- Michelle Balady    mb@bedfordlg.com, leo@bedfordlg.com
- Ori S Blumenfeld    Ori@MarguliesFaithLaw.com,
  Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com
- Evan C Borges    eborges@ggtriallaw.com, cwinsten@ggtriallaw.com
- Richard D Buckley    richard.buckley@arentfox.com
- Marie E Christiansen    mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-
  4166@ecf.pacerpro.com
- Jennifer Witherell Crastz    jcrastz@hrhlaw.com
- Ashleigh A Danker    Ashleigh.danker@dinsmore.com,
  SDCMLFiles@DINSMORE.COM;Katrice.ortiz@dinsmore.com
- Clifford S Davidson    csdavidson@swlaw.com, jlanglois@swlaw.com;cliff-davidson-7586@ecf.pacerpro.com
- Lei Lei Wang Ekvall    lekvall@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Richard W Esterkin    richard.esterkin@morganlewis.com
- Timothy W Evanston    tevanston@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Jeremy Faith    Jeremy@MarguliesFaithlaw.com,
  Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- James J Finsten    , jimfinsten@hotmail.com
- Alan W Forsley    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com
- Eric D Goldberg    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Andrew Goodman    agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com
- Suzanne C Grandt    suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov
- Steven T Gubner    sgubner@bg.law, ecf@bg.law
- Marshall J Hogan    mhogan@swlaw.com, knestuk@swlaw.com
- Sheryl K Ith    sith@cookseylaw.com, sith@ecf.courtdrive.com
- Razmig Izakelian    razmigizakelian@quinnemanuel.com
- Lillian Jordan    ENOTICES@DONLINRECANO.COM, RMAPA@DONLINRECANO.COM
- Lewis R Landau    Lew@Landaunet.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Elizabeth A Lombard    elombard@zwickerpc.com, bknotices@zwickerpc.com
- Craig G Margulies    Craig@MarguliesFaithlaw.com,
  Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- Peter J Mastan    peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
- Edith R. Matthai    ematthai@romalaw.com, lrobie@romalaw.com
- Kenneth Miller    kmiller@pmcos.com, efilings@pmcos.com
- Elissa Miller (TR)    CA71@ecfcbis.com,
  MillerTrustee@Sulmeyerlaw.com;C124@ecfcbis.com;ccaldwell@sulmeyerlaw.com
- Eric A Mitnick    MitnickLaw@aol.com, mitnicklaw@gmail.com
- Scott H Olson    solson@vedderprice.com, scott-olson-
  2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- Carmela Pagay    ctp@lnbyb.com
- Leonard Pena    lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com
- Michael J Quinn    mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-
  2870@ecf.pacerpro.com
- David M Reeder    david@reederlaw.com, secretary@reederlaw.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com
- Kevin C Ronk    Kevin@portilloronk.com, Attorneys@portilloronk.com
- William F Savino    wsavino@woodsoviatt.com, lherald@woodsoviatt.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**

- Kenneth John Shaffer    johnshaffer@quinnemanuel.com
- Richard M Steingard    , awong@steingardlaw.com
- Philip E Strok    pstrok@swelawfirm.com,
  gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- Boris Treyzon    bt@treyzon.com, sgonzales@actslaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Eric D Winston    ericwinston@quinnemanuel.com
- Christopher K.S. Wong    christopher.wong@arentfox.com, yvonne.li@arentfox.com
- Timothy J Yoo    tjy@lnbyb.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**