Elissa D. Miller
  elissa.miller@gmlaw.com
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: 213.626.2311
Facsimile: 954.771.9264

Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA,

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>GIRARDI KEESE,<br><br><div align="center">Debtor.</div> | Case No. 2:20-bk-21022-BR<br><br>Chapter 7<br><br>**APPLICATION BY CHAPTER 7 TRUSTEE FOR AUTHORITY TO JOINTLY EMPLOY THREESIXTY ASSET ADVISORS, LLC AND JOHN MORAN AUCTIONEERS, INC. AS AUCTIONEERS; TO AUTHORIZE PUBLIC SALE BY AUCTIONEER AND TO PAY AUCTIONEER UPON CONCLUSION OF SALE IN ACCORDANCE WITH THE TERMS HEREOF; STATEMENTS OF DISINTERESTEDNESS; DECLARATION IN SUPPORT THEREOF**<br><br>**[11 U.S.C. § 327, FED.R. BANKR. P. 2014 AND LOC. BANKR. R. 2014-1(B)]**<br><br>**Auction Date:  To Be Set**<br><br>No Hearing Date Required] |

**TO THE  HONORABLE BARRY RUSSELL, UNITED STATE BANKRUPTCY JUDGE,**

**OFFICE OF THE UNITED STATES TRUSTEE, CREDITORS AND ALL INTERESTED**

**PARTIES:**

Elissa D. Miller, the Chapter 7 Trustee (the "Trustee") for Girardi Keese (the

"Debtor") hereby files her "*Application By Chapter 7 Trustee For Authority To Jointly*

*Employ ThreeSixty Asset Advisors, LLC and John Moran Auctioneers, Inc. As*

*Auctioneer; To Authorize Public Sale By Auctioneer And To Pay Auctioneer Upon*

EDM 51396987v1

*Conclusion Of Sale in Accordance with the Terms Hereof; Statements Of Disinterestedness; Declaration In Support Thereof"* (the "Application") pursuant to which she seeks authority to retain ThreeSixty Asset Advisors, LLC ("360") and John Moran Auctioneers, Inc. ("Moran" and together with 360, "360Moran") as her auctioneer as follows:

1.      The Debtor was a plaintiff's law firm based in Los Angeles, California.  On December 18, 2020, petitioning creditors Jill O'Callahan, as successor in interest to James O'Callahan, Robert M. Keese, John Abassian, Erika Saldana, Virginia Antonio, and Kimberly Archie (collectively, the "Petitioning Creditors") filed an involuntary chapter 7 bankruptcy petition against the Debtor.  The Petitioning Creditors also filed an involuntary chapter 7 bankruptcy petition against Thomas V. Girardi ("TVG"), which is currently pending as Bankruptcy Case No. 2:20-bk-21020-BR.

2.      On December 24, 2020, the Petitioning Creditors filed a *Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g)* [Docket No. 12].   The Court entered an order granting the motion on January 5, 2021 [Docket No. 45]. On January 6, 2021, the Trustee was appointed as the interim trustee [Docket No. 50].

3.      On January 13, 2021, the Court entered an *Order Directing: (1) The Clerk of Court to Immediately Enter an Order for Relief under Chapter 7; (2) The United States Trustee to Immediately Appoint a Chapter 7 Trustee; (3) The Debtor to File All Schedules and Related Documentation for Chapter 7 Case within Fourteen Days of the Entry of this Order; and (4) Vacating February 16, 2021 Status Conference* [Docket No. 68].  On January 13, 2021, the Clerk of Court entered an order for relief against the Debtor [Docket No. 69], and the Trustee was appointed and accepted her appointment in the Debtor's case [Docket No. 71]

4.      On July 14, 2021, the Trustee commenced her action against Erika N. Girardi, EJ Global, LLC and Pretty Mess, Inc., Adv. 2:21-ap-01155 BR (the "Erika Adversary"); Erika Jayne Girardi ("EG") is the former spouse of TVG.

5.      While the Erika Adversary was pending, the Trustee ascertained that TVG had purchased large diamond stud earrings (the "Earrings") for EG.  The Trustee also ascertained that the Earrings had been purchased by a check written on the Debtor's "Rezulin" mass tort litigation client trust account and had been booked as a "cost".

6.      On January 25, 2022, the Trustee filed a Motion in the Erika Adversary [Adv. Dkt. No. 28] seeking turnover of the Earrings.  The Earrings were delivered to the Trustee as the parties attempted to resolve the issues.  However, the parties could not resolve the issues, and after further briefing and argument, on July 11, 2022, the Court entered its order granting the Motion for Turnover [Adv. Dkt. No. 58].[1]

7.      On August 18, 2022, a former "friend" of TVG turned over to the Trustee jewelry which she and the Trustee believed were purchased by the Debtor.  The pieces are a small Tiffany heart shaped white gold and pave diamond necklace, a small Cartier gold and pave diamond necklace, a Bulgari pearl and diamond necklace and diamond stud earrings approximately 1.75 carats each (the "Friends' Jewelry").  The Trustee believes that the auction value of the Friend's Jewelry is between $10,000 and $15,000.

8.      At this time, the Trustee seeks to sell the Earrings and the Friend's Jewelry (jointly the "Girardi Jewelry").  In order to facilitate the foregoing sale, it is necessary for the Trustee to employ a duly bonded auctioneer.  Upon the granting of this application, the Trustee will retain and employ 360Moran.  Attached hereto as **Exhibit 1** is 360Moran's Auction Plan; as **Exhibit 2,** the Consignment Agreement; as **Exhibit 3** the Case Specific Bond, and **Exhibit 4** the Insurance Certificate.

9.      Notice of this application to employ 360Moran (the "Notice") is being served concurrently herewith and is being served on creditors and parties in interest.

10.      The Sale will be conducted concurrently as an Internet Auction and Live Auction on the best date to ensure maximum participation and so not to conflict with another jewelry auction between December 5, 2022 and December 16, 2022, and to

---

[1] Although EG filed a notice of appeal, she did not seek a stay pending appeal.

1   allow for optimal advertising including displaying the Earrings to potential purchasers on

2   both coasts, advertising the Girardi Jewelry Auction at the September auction of the TVG

3   Personal Property and on both of 360 and Moran's websites, various auction platforms

4   and in social media all as detailed in the Auction Proposal.  The Auction date will also

5   take advantage of the holiday shopping period. Upon approval of this Application, the

6   Trustee will post the notice of sale pursuant to Local Rule 6004-2 on the Court's website

7   and  commence advertising  and promoting the sale to the public and in accordance with

8   the Auction proposal.

9        11.    After consulting with 360Moran and after 360Moran obtains the GIA

10  certifications on the Earrings, the Trustee and 360Moran will set an estimated value and

11  reserve on the Earrings based on market values in the Rapaport Guide as of December,

12  2022.[2]  However, the Trustee will retain discretion to authorize the sale of the Earrings

13  even if the reserve has not been met.

14       12.    As set forth in the Auction Proposal, **Exhibit 1** hereto,  360Moran will

15  market the Earrings consistent with its usual plan for marketing jewelry of its respective

16  value.  In addition, for all of the Girardi Jewelry, 360Moran will capitalize on the TVG and

17  Real Housewives of Beverly Hills connection in its promotion and will use the following

18  advertising methods:

19           • Previewing during Morans' September auction featuring items from the

20           TVG personal bankruptcy estate

21           • Email notifications to over 1,000 participants from 360's Girardi Keese

22           auction

23           • Featured item in Morans' December auction email

24           • Dedicated press release, with circulation through John Moran Auctioneers

25           press channels and through use of an international press-release agency,

26           previously used in the Girardi Keese auction

27  _____

28  [2] See discussion of Rappaport guide on page 4 of Auction Proposal, **Exhibit 1**.

1         • Homepage Feature on www.johnmoran.com

2         • Private in-person preview through to Morans' network of top jewelry

3   dealers and collectors in Los Angeles and New York

4         • Homepage feature on www.360Bid.sale

5         • Homepage Feature on LiveAuctioneers.com

6         • Inclusion into dedicated Invaluable.com email

7         • Full-page color print ad in Rapaport Magazine, the standard in the

8   diamond industry

9         • Digital banner advertisement on Diamonds.net (Rapaport web site

10        • Social media posting through all of John Moran Auctioneers social media

11   channels, including but not limited to Facebook, and Instagram

12        • Dedicated paid advertising campaigns through Facebook, and Instagram

13     13.     360Moran has agreed to conduct the Auction as a public sale and will not

14 receive a commission from the estate but will be compensated through a buyer's

15 premium.  The buyer's premium for The Girardi Jewelry is on a sliding scale per item sold

16 as follows:

17     25% of the first $500,000

18     18% from $500,000 to $1,000,000

19     15% over $1,000,000[3]

20     14.     360Moran will also be entitled to collect their out of pocket costs.  The

21 estimated costs of $24,600 include:

22     Bond: At cost - typically $5 per $1,000 (est. to be $2,800 based on current

23 estimated replacement/auction value of the Girardi Jewelry);

24     Insurance: 1% of sale/hammer price (est. at $5,610);

25     GIA Certificates for both sets of earrings $1,300;

26

27 [3] For lots selling on the LiveAuctioneers.com or BidSquare.com platforms, the buyers'
premium scale will increase by 5% at each level based on their additional charges.  In
28 addition, buyers will be charged applicable sales tax.

1   Armored Transport to/from GIA Cert site and to/from NY & Private

2   Viewings: $750;

3   Security: $3,200 (for showings in New York and Los Angeles); and

4   Marketing: Capped at $10,400

5   15.    The Declarations of Jeff Tanenbaum, the principal of 360 and of Jeff Moran,

6   the principal of Moran, are attached hereto.  Both 360 and Moran are disinterested

7   parties within the meaning of 11 U.S.C. § 101(14).  Based on auctions conducted by Mr.

8   Tanenbaum in this case and 360Moran for me in other cases and for other trustees and

9   based on my review of Moran's qualifications in the jewelry sector, I am confident that

10  360Moran is fully competent to perform the services for which it is being employed.  A

11  true and correct copy of 360 and Moran's resumes are attached hereto as **Exhibit 5.**

12  16.    360Moran will collect and pay sales tax under its resale license on all sales

13  plus the buyers' premium.  As the party collecting the funds, 360Moran is required by law

14  to file sales tax returns and remit the tax.

15  17.    The Auction will be both a live auction at Moran's auction headquarters in

16  Monrovia, CA and simultaneous as an internet auction.  After the sale, successful buyers

17  will be able to pick up the items from Moran at its Monrovia location or as otherwise

18  arranged with Moran.

19  18.    I wish to be able to pay 360Moran in accordance with the procedures set

20  forth in Supervisory Instruction #10.  360Moran understands that the gross proceeds

21  shall be turned over to the Trustee, along with an accounting within 21 days after the

22  sale.  Within 30 days of receipt of the Report of Auctioneer, the Trustee shall file with the

23  court the Report with a brief Declaration asserting that:  the Trustee has compared the

24  Report of Auctioneer to the item sold, indicating the Report is satisfactory, and request

25  entry of an order approving the payment of compensation to 360Moran pursuant to the

26  Notice of Sale and Report of Auctioneer and exoneration of the auctioneer of his bonds.

27  To the extent the Auction Agency Agreement conflicts with this paragraph, this paragraph

28  will control.

1    **WHEREFORE**, I respectfully request that I be authorized to employ John Moran

2   Auctioneers, Inc. and ThreeSixty Asset Advisors, LLC as my auctioneer, for authority for

3   John Moran Auctioneers, Inc. and ThreeSixty Asset Advisors, LLC to conduct a public

4   sale, and to pay them in accordance with the terms set forth herein upon entry of an

5   Order, and that this Court grant such other and further relief as it may deem just and

6   proper.

7   DATED:August 30, 2022                              **Respectfully submitted,**

8

9                                                       /s/ *Elissa D. Miller*
                                                        Elissa D. Miller
10                                                      Chapter 7 Trustee

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT OF
## PROFESSIONAL PERSON UNDER BANKRUPTCY RULE 2014

[The following information is supplied in conformity with United States Bankruptcy Court,

Central District of California, Form No. 2014-1]

1.      Name, address and telephone number of the professional ("the Professional")
        submitting this Statement:

>           Jeff Tanenbaum
>           ThreeSixty Asset Advisors, LLC
>           3075 E Thousand Oaks Blvd.
>           Westlake Village, CA 91362
>           805.496.8087

2.      The services to be rendered by the Professional in this case are *(specify)*:

The Professional will act as auctioneer, together with John Moran Auctioneers, Inc., for

the Estate of Girardi Keese, Elissa D. Miller, Chapter 7 Trustee.

3.      The terms and source of the proposed compensation and reimbursement of the
        Professional are *(specify)*:

>           A buyers' premium of:

>                   25% of the first $500,000

>                   18% from $500,000 to $1,000,000

>                   15% over $1,000,000[4]

>           Out of pocket costs estimated at $24,600 including:

>                   Bond: At cost - typically $5 per $1,000 ( est. to be
>           $2,800 based on current full replacement value of the Girardi
>           Jewelry

>                   Insurance: 1% of sale/hammer price (est. at $5,610)[5]

>                   GIA Certificates for both sets of earrings: $1,300

>                   Armored Transport to/from GIA Cert site and to/from
>           NY & Private Viewings: $750

---

[4] For lots selling on the LiveAuctioneers.com or BidSquare.com platforms, the buyers'
premium scale will increase by 5% at each level based on their additional charges.  In
addition, buyers will be charged applicable sales tax.

[5]

Security: $3,200 (for showings in New York and Los Angeles)

Marketing: Capped at $10,400

4. The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) half by the Professional are *(specify)*:  None.

5. The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of *(specify)*:

> I have carefully reviewed 360's files and have determined that no conflict exists in connection with this matter.  I have determined that 360 does not represent anyone with any interests adverse to the Estate.  Further, 360 represents no creditor or other party in this Chapter 7 case and has no interest adverse to the Debtor or the Estate.  Therefore, to the best of my knowledge, information and belief 360 is a disinterested party in the Debtor's Chapter 7 case as that term is defined by the Bankruptcy Code.

6. The following is a complete description of all of the Professional's connections with the debtor, principals of the debtor, insiders, the debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, or any person employed in the Office of the United States Trustee *(specify, attaching extra pages as necessary)*:

360 previously served as auctioneer for the Trustee in the instant case as well as in other cases, unrelated to Girardi Keese where the Trustee served as the Chapter 7 Trustee.

With regard to 360's work in the instant case, 360 advertised and sold the estate's personal property, including memorabilia, artwork, furniture, wine, a car, etc. at the Debtor's offices in August, 2021.  The Auction grossed approximate $300,000 and 360 was paid its expenses and a buyer's premium totaling $60,000.  That auction was extremely labor intensive and the costs high.

7. The Professional is not a creditor, an equity security holder or an insider of the debtor, except as follows *(specify, attaching extra pages as necessary)*:   N/A

8. The Professional is not and was not an investment banker for any outstanding security of the debtor.

9. The Professional has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the debtor.

10. The Professional is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the debtor or of any investment banker for any security of the debtor.

EDM 51396987v1

11.     The Professional neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders with respect to the matter on which the Professional is to be employed, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker for any security of the debtor, or for any other reason, except as follows *(specify, attaching extra pages as necessary)*:    N/A

12.     Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional *(specify)*:

>       Jeff Tanenbaum
>       ThreeSixty Asset Advisors, LLC
>       3075 E Thousand Oaks Blvd.
>       Westlake Village, CA 91362
>       805.496.8087

13.     The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows *(specify, attaching extra pages as necessary)*: n/a

14.     Total number of attached pages of supporting documentation:  29

After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 6 through 11 are stated on information and belief.

DATED:  August  29 , 2022            Respectfully submitted,

ThreeSixty Asset Advisors, LLC

By:  _____
                    Jeff Tanenbaum

## STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT OF
## PROFESSIONAL PERSON UNDER BANKRUPTCY RULE 2014

[The following information is supplied in conformity with United States Bankruptcy Court, Central District of California, Form No. 2014-1]

1.    Name, address and telephone number of the professional ("the Professional") submitting this Statement:

>    Jeff Moran
>    John Moran Auctioneers, Inc.
>    5 E. Walnut Avenue.
>    Monrovia, CA 91016
>    626.798.2079

2.    The services to be rendered by the Professional in this case are *(specify)*:

The Professional will act as auctioneer, for the Estate of Girardi Keese, Elissa D. Miller, Chapter 7 Trustee.

3.    The terms and source of the proposed compensation and reimbursement of the Professional are *(specify)*:

>    A buyers' premium of:

>>    25% of the first $500,000

>>    18% from $500,000 to $1,000,000

>>    15% over $1,000,000[6]

>    Out of pocket costs estimated at $24,600 including:

>>    Bond: At cost - typically $5 per $1,000 ( est. to be $2,800 based on current full replacement value of the Girardi Jewelry

>>    Insurance: 1% of sale/hammer price (est. at $5,610)

>>    GIA Certificates for both sets of earrings: $1,300

>>    Armored Transport to/from GIA Cert site and to/from NY & Private Viewings: $750

---

[6] For lots selling on the LiveAuctioneers.com or BidSquare.com platforms, the buyers' premium scale will increase by 5% at each level based on their additional charges.  In addition, buyers will be charged applicable sales tax.

Security: $3,200 (for showings in New York and Los Angeles)

Marketing: Capped at $10,400

4. The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) half by the Professional are *(specify)*: None.

5. The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of *(specify)*:

> I have carefully reviewed Moran's files and have determined that no conflict exists in connection with this matter. I have determined that Moran does not represent anyone with any interests adverse to the Estate. Further, Moran represents no creditor or other party in this Chapter 7 case and has no interest adverse to the Debtor or the Estate. Therefore, to the best of my knowledge, information and belief Moran is a disinterested party in the Debtor's Chapter 7 case as that term is defined by the Bankruptcy Code.

6. The following is a complete description of all of the Professional's connections with the debtor, principals of the debtor, insiders, the debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, or any person employed in the Office of the United States Trustee *(specify, attaching extra pages as necessary)*:

Moran was retained by the Jason Rund, Chapter 7 Trustee to conduct the sale of TVG's personal property.

Moran has previously served as auctioneer for the Trustee in other cases, unrelated to Girardi Keese where the Trustee served as the Chapter 7 Trustee.

7. The Professional is not a creditor, an equity security holder or an insider of the debtor, except as follows *(specify, attaching extra pages as necessary)*:   N/A

8. The Professional is not and was not an investment banker for any outstanding security of the debtor.

9. The Professional has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the debtor.

10. The Professional is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the debtor or of any investment banker for any security of the debtor.

11. The Professional neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders with respect to the matter on which the Professional is to be employed, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker for any security of the debtor, or for any other reason, except as follows *(specify, attaching extra pages as necessary)*:   N/A

12.  Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional *(specify)*:

> Jeff Moran
> John Moran Auctioneers, Inc.
> 145 E. Walnut Avenue.
> Monrovia, CA 91016
> 626-628-9332

13.  The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows *(specify, attaching extra pages as necessary)*: n/a

14.  Total number of attached pages of supporting documentation: 29

After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 6 through 11 are stated on information and belief.

DATED: August 29, 2022

Respectfully submitted,

John Moran Auctioneers, Inc.

By: _____
Jeff Moran, President

# **DECLARATION OF ELISSA D. MILLER**

I, Elissa D. Miller, do hereby declare:

1.      That I am the duly appointed Trustee in the above estate.

2.      I have prepared the foregoing application and know its contents to be true and correct.

3.      I have read the Declarations of Jeff Moran of John Moran Auctioneers, Inc. and Jeff Tanenbaum of ThreeSixty Asset Advisors I am familiar with both firms and know each to be a competent auctioneer.   In addition to the information set forth in the attached resume, I discussed with Mr. Stephen Swan, the Vice President, Business Director of John Moran, Moran's experience in selling similar fine Jewelry, and with both Mr. Swan and Mr. Tanenbaum, the process for maximizing value in situations such as these with significant public interest.

4.      I am satisfied that Moran and 360 are each disinterested persons as defined by the provisions of the Bankruptcy Code and that the employment of 360Moran under the circumstances and terms set forth herein is in the best interest of this bankruptcy estate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed August 30,  2022, at Los Angeles, California.


_/s/ Elissa D. Miller_____
Elissa D. Miller, Trustee

# EXHIBIT 1





Girardi Earrings
And Other Fine Jewelry

JOHN MORAN
SINCE 1969
AUCTIONEERS & APPRAISERS



JOHN MORAN
SINCE 1969
AUCTIONEERS & APPRAISERS

Platinum & marquise diamond ring, 6.12 ct.
Sold at JMA Auction on 3/25/08

Cover:
Representative photo of Girardi Earrings
Suggested Auction Date: December 13, 2022

016



A round brilliant-cut fancy light grey-blue diamond, 2.78 cts.
Sold at JMA Auction on 12/08/15

## A Symbol of Restitution

The significant notoriety of the 14 carat "Girardi Earrings," and the value they represent to those harmed by Thomas Girardi is not lost on our team. As such, they warrant the highest and best opportunity for maximized value as outlined in this proposal. Accordingly, John Moran Auctioneers, Inc – current sales agent of the Thomas Girardi personal bankruptcy in conjunction with ThreeSixty Asset Advisors – past sales agent of the Girardi Keese bankruptcy submit this proposal to assist with the sale of the 14ct Girardi Earrings, along with a small selection of additional jewelry recently turned over to the Girardi Keese estate. Together, we have crafted the ideal sale and marketing plan, and provided a market-competitive fee structure.

### The Earrings, Then and Now

In 2007, the height of many primary markets, Thomas Girardi purchased the "Girardi Earrings" at a boutique jewelry shop in Los Angeles for a retail price of $750,000. The value of a diamond in the primary/retail market is set by the Rapaport price list. This report updates monthly and is used by every diamond wholesaler, dealer, auction house, and appraiser when valuing diamonds to get the most current market rates. Girardi paid a premium on top of the market rate. In today's secondary/non-retail diamond market, one would expect to see a value somewhat less.

The controversy surrounding Thomas and Erika Girardi and that of the "Girardi Earrings" has made national headlines. We believe that the notoriety of the earrings, and the public interest in this case will bolster Moran's and ThreeSixty Asset Advisors' ability to reach private and trade audiences that will likely translate into more bidding at auction and therefore the maximum possible hammer price.

The additional jewelry items turned over to the estate include 3 necklaces and 1 smaller pair of earrings with a combined auction value in the $10,000 to 15,000 range. While representing a lower value compared to the 14 carat earrings, these pieces are from such top tier designers as Tiffany, Cartier and Bvlgari. Sold in conjunction with the premium earrings, they may exceed expectations.

4

017



An Art Deco natural Kashmir sapphire and diamond ring, 5.50 cts.
Sold at JMA Auction on 05/17/11

# Morans: Different by Design

## Proven Track Record

For over 50 years, Morans has assisted families with the sale of important collections, large and small. As an independent, full-service auction house, we have the flexibility to customize the presentation of the entire Collection, handling items ranging $500 to $1 million. Our approach has served several notable single-consignor collections, including the Estate of Phoebe Hearst Cooke, Andrew F. Chandler, Tammis Keck Day, Cindy and Stuart Tietze-Hodish, Alan Schneider, and many more. Each of these collections posed unique opportunities in the retelling a life lived, as viewed through their collections.

In each case, Morans' enthusiasm and creative touch was instrumental in crafting an auction plan for the beneficiaries, resulting in fresh to the market property being sold with record results.

## Prior and Current Girardi Engagements

While Morans prepares for a sale of Girardi personal property on behalf of the Girardi personal bankruptcy estate, this proposal is based upon a collaboration with ThreeSixty Asset Advisors, who conducted the auction of personal property for the Girardi Keese bankruptcy. This collaboration provides unique opportunities to promote the "Girardi Earrings" and other fine jewelry to past Girardi auction participants, capturing the benefits of previous media exposure and thousands of advertising dollars spent. Further, our companies' past and active involvement with the Girardi matter will ensure that the jewelry benefit from the proper Girardi related publicity, and not simply a footnote in the auction catalog. Morans and 360 principals have collaborated for decades, most recently on the bankruptcy auction for Antiquarian Traders in Los Angeles. Together, we have a clear understanding of the Girardi market, access to associated bidders and buyers, and a collaborative synergy that will drive a successful outcome.

6

018



An Art Deco diamond ring, 6.46 cts.
Sold at JMA Auction on 12/05/17

## Sale Plan

To effectuate a sale of the earrings and provide the greatest opportunity to maximize value, we have formulated the following plan to be executed by our experienced team, led by Jeff Moran. This plan addresses such important elements as transportation, security, and insurance, obtaining an up-to-date GIA certificate, providing examination opportunities for jewelers and private parties on both coasts (14 ct. earrings only), and providing an ideal platform and venue to facilitate the auction.

### Insurance, Transportation, and Security

The jewelry will be insured and maintained in a safe at Morans and fully insured from the time Morans takes possession until released to the end buyer. Throughout that time, the 14 ct. earrings will only be moved to obtain the GIA certificate and when sent to New York for private previews. In each case, armored transportation will be used, and while the earrings are in the possession of Morans staff in New York, will be accompanied by security.

### Auction Date and Venue

The jewelry will be included in Morans' December 13th Fine Jewelry and Timepiece Auction. This sale will be conducted in a live and webcast format, providing the opportunity for both in-person bidding and concurrent participation on one of four online platforms, Morans in-house platform and mobile application, Invaluable/Auctionzip, LiveAuctioneers and BidSquare. This approach will accommodate global bidder interest with options for in-person, telephone, absentee, or online bidding.

8

019



A diamond ring, 8.11 cts.
Sold at JMA Auction on 05/23/17

## Marketing

Morans has the capacity to reach a vast bidding audience through a customized advertising campaign incorporating email, direct mail, social media, online and printed advertisements, and an online marketplace for select works.

Our partnership with advertisers from an array of fine arts publications encourages bidding across all collector categories and is a crucial element in promoting and marketing a collection of such breadth.

## Our Reach

In addition to our own online saleroom, Morans has partnerships to cross-list our sales on multiple online auction platforms, including industry leaders Invaluable (and by extension AuctionZip), Live Auctioneers, and Bidsquare. Our robust online presence ensures fierce bidding competition and engagement from countless buyers across the globe. Moreover, Morans advertises with catalogue hosting platforms such as Ask Art and Artnet guaranteeing the "Girardi Earrings" receives maximum exposure to both established and emerging collectors alike. The advantage of presenting our sales on multiple platforms is immense visibility; we do not require collectors to be "in the know" to find the property we offer. Between our website and our platform partners, Morans garners over 1 million monthly lot views.

# 1,000,000

*(Average monthly lot views)*

10

020



A sapphire and diamond necklace, Harry Winston
Sold at JMA Auction on 05/21/13

## Marketing Plan: A Closer Look

In addition to the traditional marketing detailed below, Morans will have unique opportunities to promote the jewelry to past Girardi auction participants, capturing the benefits of previous media exposure and thousands of advertising dollars spent. These marketing opportunities include:

- Previewing during Morans' September auction featuring items from the Girardi personal bankruptcy estate
- Email notifications to over 1,000 participants from 360's Girardi Keese auction
- Featured item in Morans December auction email
- Dedicated press release, with circulation through John Moran Auctioneers press channels and through use of an international press-release agency, previously used in the Girardi Keese auction
- Homepage Feature on www.johmmoran.com
- Private in-person preview through to our network of top jewelry dealers and collectors in Los Angeles and New York
- Homepage Feature on www.johnmoran.com
- Homepage feature on www.360Bid.sale
- Homepage Feature on LiveAuctioneers.com
- Inclusion into dedicated Invaluable.com email
- Full-page color print ad in Rapaport Magazine, the standard in the diamond Industry
- Digital banner advertisement on Diamonds.Net (Rapaport Web site
- Social Media posting through all of John Moran Auctioneers social media channels, including but not limited to Facebook and Instagram
- Dedicated paid advertising campaigns through Facebook, and Instagram

12



An Art Deco natural Ceylon sapphire and diamond pendant necklace
Sold at JMA Auction on 12/15/20



An Art Deco diamond and rock crystal brooch
Sold at JMA Auction on 12/10/20

 

A diamond and gem-set camel motif brooch, Verdura
Sold at JMA Auction on 05/21/13



A pair of Tiffany & Co. fancy vivid and intense yellow and near-colorless diamond earrings
Sold at JMA Auction on 12/15/20



A diamond ring, 10.16 cts.
Sold at JMA Auction on 05/11/21



A Retro diamond, gem-set hand brooch, Cartier
Sold at JMA Auction on 08/28/12

## Just the Facts

### Sale Estimates & Reserves:
To be established by Morans and Trustee prior to the auction based on market values in the Rapaport guide as of December.

### Our Terms (per lot):
• Insurance: 1% of sale/hammer price
• Bond: At cost - typically $5 per $1,000
• GIA Certificate: $1,300
• Armored Transport to/from GIA Cert site and to/from NY & Private Viewings: $750
• Security: $3,200 (for showings in New York and Los Angeles)
• Marketing: Capped at $10,400

### Buyers' Premium Scale (Scale is applicable to each item individually):

25% of the first $500,000
18% from $500,001 to $1,000,000
15% over $1,000,000
Note: for buyers participating on LiveAuctioneers or BidSquare, the scale will increase by 5% at each level

14



## Thank You

Morans and ThreeSixty Asset Advisors is delighted to submit our proposal to represent the "Girardi Earrings". Our customer-oriented philosophy, reputation, and enthusiasm will work to garner the highest price possible at auction.

Thank you for considering our services.

Jeff Moran
President
John Moran Auctioneers
626-485-0197
jeff@johnmoran.com

Jeff Tannenbaum, CAI
President
ThreeSixty Asset Advisors
818-326-4909
jeff@360assetadvisors.com

Right:
A French Cartier Art Deco rock crystal and gem-set perfume bottle
Sold at JMA Auction on 12/15/20

Back Cover:
A solitaire diamond ring, 5.49 cts.
Sold at JMA Auction on 03/25/08



A pear-shaped diamond ring, 11.77 cts.
Sold at JMA Auction on 03/25/08

16



www.johnmoran.com · info@johnmoran.com · 626-793-1833 · 145 East Walnut Avenue, Monrovia CA 91016

JOHN MORAN
AUCTIONEERS & APPRAISERS
SINCE 1969

360 THREESIXTY
ASSET ADVISORS

# EXHIBIT 2

# JOHN MORAN

SINCE 1969

# AUCTIONEERS

| CONSIGNMENT AGREEMENT |
|---|

**Customer Number:**

| **Consignor:** | Elissa Miller, Chapter 7 trustee for the bankruptcy estate of Girardi Keese ("Trustee"), Case No. 2:20-bk-21022-BR ("Bankruptcy Case") |
|---|---|
| **Payable to:** (if other) | |
| **Address:** | 333 South Grand Avenue, Suite 3400 Los Angeles, California 90071 |
| | |
| **Phone/Cell:** | (213) 626-2311 |
| **Fax/Email:** | Elissa.Miller@gmlaw.com |

1. THANK YOU, Elissa Miller, Chapter 7 trustee for the bankruptcy estate of Girardi Keese, Case No. 2:20-bk-21022-BR (the "Consignor") for consigning property (the "Property") to John Moran Auctioneers, Inc. ("Morans") for sale at auction. The Consignor hereby consigns to Morans, as their exclusive agent of sale, the Property identified on the subsequent Inventory Receipts (the "Receipt"). Unless specified on the Receipt, the following terms and conditions apply to all consignments made under this Consignment Agreement (the "Agreement").   This Agreement is subject to the approval of the United State Bankruptcy Court, Central District of California, Los Angeles Division, Case Number 2:20-bk-21022-BR ("Bankruptcy Court").

2. THE CONSIGNOR'S REPRESENTATIONS AND WARRANTIES. The Consignor represents and warrants as follows:

   a. the Consignor is authorized to consign and sell the Property pursuant to an order to be obtained from Bankruptcy Court ("Approval Order").

   b. the Property will be sold free and clear of any and all encumbrances, liens, and;

   c. the Consignor has no information in its possession, custody or control that would lead to a reasonable conclusion that any of the Property is inauthentic or counterfeit;

   d. title to the Property will pass to the buyer pursuant to the Approval Order; and

   e. the Property is sold "as is" without representations or warranties.

3. CONSIGNMENT PROCESS. At the time of consignment, Morans will place  pre-auction estimates on the Property. These estimates are intended as guides for prospective bidders and are in no way a representation or warranty by Morans as to the anticipated selling price. Estimates are preliminary and Morans shall have absolute discretion to revise them. By consigning the Property, the Consignor gives Morans sole discretion in researching (including third-party consultations), grouping the Property into lots, cataloguing, sale and lot placement, illustration, condition reporting, and marketing pertaining to the Property. Morans makes no warranties with respect to the

Page 1

authenticity, genuineness, or overall description of the Property and shall not be responsible for any errors or omissions in describing the Property in the catalogue or advertising.. Morans shall retain copyright to any visual, audio or printed media of the Property produced by them. The Consignor authorizes Morans to charge the buyer for Morans's account a commission on each lot sold (the "Buyer's Premium"), which shall be calculated on the following basis, per auction lot:

> 25% of the first $500,000
> 18% from $500,000 to $1,000,000
> 15% over $1,000,000
> *For lots selling on the LiveAuctioneers.com or BidSquare.com platforms, this buyers' premium scale will increase by 5% at each level

Applicable sales tax will be added to the Hammer Price, as defined in Section 4 of this Agreement, plus Buyer's Premium and will be paid by the buyer. The Consignor agrees that none of the buyers' rights, or Morans's rights or obligations, under the Conditions of Sale apply to the Consignor's benefit. In some instances, Morans may pay out of its commissions a fee to any third-party introducing Property or consignors to them, and will be specifically sharing fees received in this matter with ThreeSixty Asset Advisors, LLC

4.    SALE CONDUCT AND RESERVES. It is mutually agreed that all Property will be sold (unless agreed to be sold privately or in a marketplace setting) via the highest bid attainable by public auction (the "Hammer Price") pursuant to the terms noted on the Receipt. Morans and Consignor have agreed that Consignor may set reserve prices on the Property, which it shall do in collaboration with Morans. Reserves are not permitted for Property estimated at $500 and below. All bids to protect the reserve, if any, will be made by Morans's representative on the Consignor's behalf.  Morans may lower or remove the reserve at any time up until the item is sold, upon notice received from the Consignor. The Consignor expressly agrees that email or facsimile communication shall be binding as to establishing or reducing reserves or estimates.

It is further understood that Morans may nevertheless sell any Property below its reserve, provided the Consignor receives payment, subject to the terms stated on the Receipt, which the Consignor would have received had that Property been sold at the reserve. In either case, once the Property is sold, the Consignor will net the amount if sold at the reserve unless agreed to otherwise in writing. Morans makes no guarantee with respect to the ultimate sale price, nor is Morans liable for the failure of any lot to reach an agreed reserve or sell within its estimated range.

Should the Property remain unsold and Morans receives an offer following the auction to purchase the Property at a price which Morans and Consignor consider to be representative of market value given the auction response, participation and bidding activity, Morans may sell the Property under the terms provided herein if authorized by Consignor.  Otherwise, Morans may elect to reoffer the Property in a future sale with a reduced estimate and reserve to be approved by Consignor. Upon notification in writing (including e-mail) to the Consignor, the Consignor will have two weeks to respond to the re-offer notice. If no response is received, the Consignor will be deemed to have agreed to the revised estimate and reserve.

Consignors, their agents, or their representatives are forbidden from bidding on Property they have consigned. If the Consignor violates this term and subsequently become the successful bidder, Morans will return or re-offer the Property only after any fees due (including Buyer's Premium and Seller's Commission) have been paid.



5.   INSURANCE. The Property will be insured at the Consignor's expense (unless otherwise agreed in writing) while on Morans's premises or otherwise under Morans's care and control at the cost of 1% of:

    a.   the mean pre-sale estimate (as indicated on the Receipt);

    b.   the final bid price if sold; or

    c.   the reserve if offered on the marketplace or unsold (or if no reserve then ½ the low estimate);

less the amount of any commissions and fees due to Morans. This fee applies whether or not Morans chooses to self-insure.

Morans is not liable for loss or damage to the Property, including, but not limited to, frames and picture glass, resulting from:

    a.   third parties retained by the Consignor, regardless of recommendation;

    b.   conservators, restorers, testers, framers, or other independent contractors employed with the Consignor's consent;

    c.   normal wear and tear or inherent defects in the Property; or

    d.   events beyond Morans's control including, but not limited to, earthquake, flood, fire, government action, riot, power failure, and acts of war or terrorism—including radioactive, chemical, or biological contamination.

In an event resulting in partial loss or damage, and where Morans has accepted responsibility, Morans's liability is limited to the amount of depreciation of the Property. Morans has the sole discretion to determine the diminution of value of the Property. In no event shall Morans be liable for incidental, indirect, special or consequential damages of any nature including, but not limited to, lost profits.

6.   BOND. To comply with the provisions of the Bankruptcy Rules applicable in the Central District of California, Morans shall obtain, at the estate's cost, a Bankruptcy Bond, specific to the Property.  The amount of the bond shall be $561,000, and is estimated to cost approx. $2,800.

7.   WITHDRAWALS. No Property may be withdrawn without Morans's consent. Should Morans consent to a withdrawal, before the Property is released, the Consignor shall compensate Morans in an amount equal to twenty percent (20%) of the mean estimate in consideration of forfeited commissions and Buyer's Premium, applicable insurance and illustrations fees, as well as any out-of-pocket expenses incurred by Morans. Morans reserves the right to withdraw any Property from any auction at any time.

8.   RESCISSION. All property will be sold "as-is" and "where-is" without any representations or warranties. The Consignor agrees that each lot will be offered will include the following notice:

"...sold 'as-is, where-is' without any representations or warranties.  All sales are final"

Additionally, each lot will be identified as being sold by the bankruptcy estate of Girardi Keese and that assets will be sold to help pay off creditors.

9.   UNSOLD PROPERTY. Any unsold Property that has not been re-consigned for a future auction must be picked up with within sixty (60) days of the last auction. Unsold Property remaining onsite and not consigned to a future



auction will incur a $100 administration fee and a ten dollar ($10) per lot, per day storage fee. The Consignor agrees that Morans is not liable for any loss or damage to the Property after the sixty (60) day grace period has ended. Ninety days (90) after the last auction, Morans may elect to sell the Property in accord with provisions of California state law and the UCC unless otherwise agreed. Any sale under this Section 9 shall be without regard to the reserve, and shall be subject to Morans's standard commission rates, unpaid charges, and fees incurred to the Consignor's account. The net proceeds of such a sale shall be then applied to the costs of storage and sale of the Property (including reasonable expenses and attorney fees) and the excess, if any, will be remitted to the Consignor, or, in the event that Morans is not able to locate or contact the Consignor, disposed of as required by law.

Unless otherwise agreed to in writing, the Consignor is roesponsible for the cost of the return of any unsold property.

10. SELLER'S COMMISSION. For Morans's services, the Consignor agrees to pay to Morans a "Seller's Commission" of 0%.

11. SELLER'S EXPENSES.  In addition to any other fees or expense reimbursements defined herein, Consignor agrees to reimburse Morans for sale related expenses, which are estimate as follows:  GIA Certificate for the 14 carat earrings, est. at $1,300, Armored Transportation est $750, Security est. at $3,200, Marketing, capped at $10,400.

12. SALE SETTLEMENT. Upon payment by the buyer, Morans shall release to the Consignor the gross proceeds of sale (being the Hammer Price, Buyer's Premium and any applicable taxes) for sold Property seven (7) days from each respective auction date. Sums of additional proceeds collected after the initial remittance, will be remitted to the Consignor every 7 days thereafter. Payments made by wire transfer may incur additional bank fees. Morans assumes no responsibility for and is under no obligation to sue or otherwise enforce, payment by any buyer. No later than 21 days after the auction, Morans shall prepare and submit to the Consignor an auction report which will include: The lot number and description of each item sold, the date of sale, sale price, name, address and telephone number of purchaser; the gross proceeds from the sale, a statement that the gross proceeds have been turned over to the Consignor, and a descriptive list of the items that were not sold but which are to be returned to the Consignor. All proceeds of the sale, including the buyer's premium shall be remitted to the Consignor. Upon receipt and review of the auction report, Consignor shall pay Morans for any fees and expenses required and provided for within this Agreement in accordance with the authorization of the US Bankruptcy Court.

13. ENDANGERED SPECIES. Any Property made of or incorporating endangered or protected species or wildlife that is in violation of federal or state laws may not be publicly sold. The Consignor is aware of such restrictions and agrees that Morans is not liable if such Property is withdrawn by Morans or is otherwise confiscated by state or federal agencies.

14. ENTIRE AGREEMENT. This Agreement constitutes the sole and entire agreement of the parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.

15. GOVERNING LAW. The rights and obligations of the parties with respect to this Agreement and the conduct of the auction shall be governed and interpreted by the laws of the State of California.

16. DISPUTES.  The Bankruptcy Court for the Bankruptcy Case shall have sole jurisdiction to resolve all disputes relating to this Agreement and the sale of any Property.



17. SEVERABILITY. Should any of these conditions be deemed unenforceable, invalid, or illegal in any court having jurisdiction, that part shall be severed from this Agreement and shall have no effect on the enforceability of the remaining provisions contained herein, which shall remain valid to the fullest extent permitted by law.

18. SUCCESSORS AND ASSIGNS. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and assigns. The Consignor may not assign its rights or obligations hereunder without the prior written consent of Morans.

19. AMENDMENT AND MODIFICATION. This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each party hereto.

20. WAIVER. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No failure to exercise, or delay in exercising, any right or remedy arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy.

21. INTERPRETATION; HEADINGS. This Agreement will be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The headings in this Agreement are for reference only and do not affect the interpretation of this Agreement.

22. SIGNATORY / LEGAL REPRESENTATIVE. Please indicate by initialing the appropriate section below if you are either the legal representative of an estate, trust, or corporation or acting as an agent for the Consignor and write the legal name of the principal.

> I am acting on behalf of an estate, trust, or corporation: _____ (initial)
> Name and type of entity: _____
> I am an agent for the Consignor: _____ (initial)
> Consignor's name: _____

23. USE OF NAME AND/OR TITLE. The Consignor authorizes Morans to use the following name(s) for promotional purposes.

Name: _____

I have read and agree to this Agreement and acknowledge receiving of a copy of the accompanying Receipt.

_____        _____
Consignor's Name                         Date


_____        _____
First and Last Name, Title               Date
John Moran Auctioneers, Inc.



JOHN MORAN
SINCE 1969
A U C T I O N E E R S

# EXHIBIT 3

Bond Number: 0817387

## AUCTIONEER BOND

**KNOW ALL MEN BY THESE PRESENTS** that we, JOHN MORAN AUCTIONEERS, INC.
(hereinafter called Principal), as Principal, and the HARCO NATIONAL
INSURANCE COMPANY, its home office in Raleigh, Nc  27605
(hereinafter called Surety), as Surety, are held and firmly bound
unto the UNITED STATES OF AMERICA (hereinafter called Obligee), in
the full and just sum of FIVE HUNDRED SIXTY ONE THOUSAND  AND NO/100
($561,000.00) Dollars, for the payment of which, well and truly to
be made, the Principal and Surety hereby bind themselves, their
heirs, executors, administrators, successors and assigns, jointly
and severally, firmly by these presents.

**NOW THEREFORE**, the condition of this obligation is such that if the
said Principal shall faithfully account for all money, assets and
effects of bankruptcy case, GIRARDI KEESE; CASE #2:20-BK-21022-BR,
in which the Principal is serving as auctioneer, then this
obligation to be void; otherwise to remain in full force in effect.

The liability of the Surety hereunder shall not exceed the aggregate
sum of FIVE HUNDRED SIXTY ONE THOUSAND  AND NO/100 ($561,000.00)
Dollars, for all claims asserted against this bond.

This bond shall remain in full force and effect from AUGUST 25, 2022
to AUGUST 25, 2023.

**SIGNED AND SEALED THIS 25TH day of AUGUST, 2022.**

JOHN MORAN AUCTIONEERS, INC.

By: _____, PRESIDENT

HARCO NATIONAL INSURANCE COMPANY

By: _____
      CATHERINE C. KEHOE, ATTORNEY-IN-FACT

International Sureties, Ltd.
701 POYDRAS Street
SUITE 420
NEW ORLEANS, LA  70139
504-581-6404
504-581-1876 - FAX

Thursday, August 25, 2022

INVOICE

STEPHAN SWAN                                    PHONE - (626) 628-9332
JOHN MORAN AUCTIONEERS, INC.                    FAX   - (626) 798-2079
145 W. WALNUT AVE.                              eMAIL -
MONROVIA, CA 91016

SINGLE SALE AUCTIONEER BANKRUPTCY BOND - GIRARDI KEESE; CASE #2:20-BK-21022-BR

Bond Amount $    561,000

Bond # 0817387
TERM:  08/25/22  to  08/25/23

                        BALANCE DUE            $  2,955.00

                              PLEASE REMIT UPON RECEIPT

PLEASE PUT BOND NUMBER ON CHECK !
PLEASE MAKE CHECKS PAYABLE TO INTERNATIONAL SURETIES, LTD.

This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.



Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

Certificate No: **8198098-016083**

# POWER OF ATTORNEY

**KNOWN ALL PERSONS BY THESE PRESENTS:** That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, Stephen Beahm; Andrea Becker; Darlene A. Bornt; Roxanne Craven; Sara S. DeJarnette; Kristine Donovan; Elizabeth C. Dukes; Clark P. Fitz-Hugh; R. Tucker Fitz-Hugh; Candice T. Gros; David C. Joseph; Elizabeth W. Kearney; Catherine C. Kehoe; Conway C. Marshall; Jessica Palmeri; Margaret Schatzman; Elizabeth Schott; Linda C. Sheffield

all of the city of ____New Orleans____ state of ____LA____ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

**IN WITNESS WHEREOF,** this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this ___3rd___ day of ___December___ , ___2018___ .

 

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

By: _David M. Carey_
David M. Carey, Assistant Secretary

Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

State of PENNSYLVANIA ss
County of MONTGOMERY

On this ___3rd___ day of ___December___ , ___2018___ before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS:** Section 12. Power of Attorney.
Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII – Execution of Contracts:** Section 5. Surety Bonds and Undertakings.
Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed the seals of said Companies this ___25TH___ day of ___AUGUST___ , ___2022___ .

  

By: _Renee C. Llewellyn_
Renee C. Llewellyn, Assistant Secretary

To confirm the validity of this Power of Attorney call 1-610-332-8240 between 9:00 am and 4:30 pm EST on any business day.

LMS-12873 LMIC OCIC WAIC Multi Co_062018

033

# EXHIBIT 4

# ACORD®

# EVIDENCE OF PROPERTY INSURANCE

**DATE (MM/DD/YYYY)**
**8/25/2022**

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| AGENCY | PHONE (A/C, No, Ext): **(626) 449-6310** | COMPANY |
|---|---|---|
| **United Agencies**<br>301 E. Colorado Blvd., #200<br>Pasadena, CA 91101 | | **Underwriters at Lloyd's London**<br>115 S. LaSalle Street<br>Chicago, IL 60603 |

| FAX (A/C, No): **(626) 799-9179** | E-MAIL ADDRESS: | |
|---|---|---|
| CODE: | SUB CODE: | |
| AGENCY CUSTOMER ID #: **JOHNMOR-01** | License # **0252636** | |

| INSURED | LOAN NUMBER | POLICY NUMBER |
|---|---|---|
| **John Moran Auctioneers, Inc**<br>145 E. Walnut Avenue<br>Monrovia, CA 91016 | | **K22G7077** |

| | EFFECTIVE DATE **6/1/2022** | EXPIRATION DATE **6/1/2023** | ☐ CONTINUED UNTIL TERMINATED IF CHECKED |
|---|---|---|---|

THIS REPLACES PRIOR EVIDENCE DATED:

## PROPERTY INFORMATION

LOCATION/DESCRIPTION

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES.  LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE INFORMATION

PERILS INSURED ☐ BASIC ☐ BROAD ☐ SPECIAL

| COVERAGE / PERILS / FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| Fine Arts & Jewelry - While at designated locations | $5,000,000 | 5,000 |
| In Transit - Hand Carry | $1,000,000 | 5,000 |

## REMARKS (Including Special Conditions)

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

## ADDITIONAL INTEREST

| NAME AND ADDRESS | ☐ ADDITIONAL INSURED ☐ LENDER'S LOSS PAYABLE ☐ LOSS PAYEE |
|---|---|
| | ☐ MORTGAGEE |
| **The Bankruptcy Estate of Girardi Keese**<br>**Case no. 2-20-bk-21022BR** | LOAN # |
| | AUTHORIZED REPRESENTATIVE<br>*Charlie Russell* |

**ACORD 27 (2016/03)**

© 1993-2015 ACORD CORPORATION.  All rights reserved.
The ACORD name and logo are registered marks of ACORD

034

# EXHIBIT 5

# Jeffrey John Moran

---

145 East Walnut Ave., Monrovia, CA 91016    jeff@johnmoran.com    mobile: 626-485-0197

## Experience

**John Moran Auctioneers, Incorporated, Monrovia, CA**                 June 1986 - Present
*President & Auctioneer – Over 100 million in sales in last five years.*

Manage daily operations of a 50-year-old, family-owned auction company.
Nurture existing client relationships and develop new client contacts.
Negotiate commission sales of fine art and antiques.
Develop and implement cost-effective marketing strategies to counter competition.
Expand and embrace new technology in the marketing and sale of old-world objects.
Provide market valuations and inventories for client property.
Maintain a challenging, yet positive work environment for my staff.
Develop and implement an enriching internship program.
Collaborate with art conservators and historians to preserve research and exhibit American art.
Reduce operating expenses while increasing company's net profitability.

**Los Angeles County Sheriff's Department**                 October 1989 – Present
*Training Officer/Reserve Deputy Sheriff – Over 1000 career operations.*

Altadena Mountain Rescue Team – Responsible for coordinating searches and rescues in the San Gabriel Mountains and assists to other operations in areas within Los Angeles County.  Integrate with multi-agency responses to major accidents. Training Officer:  Schedule weekly and monthly trainings for 25 team members.  Prepare Team for annual accreditation in technical peer evaluation.  Test and evaluate each team member for proficiency on annual basis.
Rescue systems analysis/test new equipment and procedures to increase safety and efficiency.

Emergency Operations Bureau – Diplomatic Protection Unit:  Provide protection for visiting dignitaries for State Department. Work aside US Secret Service for highest-level government officials and visiting dignitaries.  Counter-Terrorism Unit:  Participate in undercover details and trainings, provide security & emergency medical care during in-depth surveillance operations.

**Pasadena Museum of California Art**                 April 2005 – January 2017
*Board Member*

Support PMCA Museum Director and Staff in fulfilling immediate and future goals.  Implement and adhere to newly developed strategic plan. Work with Museum Director and other museums in developing/identifying future exhibits.  Headed search committee to interview candidates for position of Museum Director.  Developed performance-based goals for new Museum Director.  Currently working with City of Pasadena to mitigate existing building code and fire zone issues.

## Education

**Claremont Graduate University - Peter F. Drucker and Masatoshi Ito School of Management,** Executive Management Program, MBA Honors Graduate, Claremont, CA, 2011 – 2013.

**United States Naval Hospital** (Uniformed Services University), *Emergency Medical Course/Live Tissue Program*, Deployment Medicine International, Dr. John Hagmann. Bethesda, MD, August 2009.

**New Mexico Tech** (Department of Homeland Security), Energetic Materials Research and Testing Center, Technical Instructors Course, *ITRB*, Socorro, NM, December 2007

**American Society of Appraisers**, *Uniform Standards of Professional Appraisal Practice* (USPAP), CA 2006 (Renewed 2021)

**Sotheby Institute for Art/NYU**, *Appraisal Certificate Program*, New York, NY, 1996.

**University of California, Santa Cruz** (Sierra Institute), *Sustainability, Philosophy, and Religion,* Santa Cruz, CA, 1992.

**Los Angeles County Sheriff's Academy**, *Reserve Deputy Sheriff*, Los Angeles, CA, June 1990

**Pasadena City College**, *Emergency Medical Technician*, Pasadena, CA, June 1990.

## Achievements/Awards

Los Angeles County Sheriff's Department, 30-year service award, November 2020
Mountaineer of the Year Award, Altadena Mountain Rescue Team, 2004
Recognition for Outstanding Service in Search and Rescue, California State Assembly, 1998
Outstanding Development of a Training Program, Mountain Rescue Association, 1998
One of seven authors to rewrite training guidelines for Los Angeles County Search and Rescue Program, 1998.

## Presentations/Lectures *(partial list)*

Morgan Stanley, Doolin Group, *Gardeners, Gifts and Garbage*, January 2019
Morgan Stanley, Doolin Group, *Fakes, Frauds & Forgeries*, Pasadena, January 2018
Wells Fargo Private Client Group, *Fakes, Frauds & Forgeries*, Pasadena, CA 2017
Huntington Library, *Gardeners, Gifts and Garbage,* San Marino, CA November 2016
U.S. Trust, Private Client Group, *Gardeners, Gifts and Garbage*, Irvine, CA October 2015
U.S. Trust, Private Client Group, *Fakes, Frauds & Forgeries*, Irvine, CA March 2015
Morgan Stanley/Doolin Group, *Gardeners, Gifts and Garbage*, Pasadena, 2015
Keck School of Medicine, University of Southern CA, Physician's Family and Friends Group, *Gardeners, Gifts and Garbage*, Los Angeles, CA, November 2012
U.S. Trust, Private Client Group, *Gardeners, Gifts and Garbage*, Pasadena, CA, August 2012
Pasadena Museum of History, *Gardeners, Gifts and Garbage*, Pasadena, CA, May 2012

The Questers, *Gardeners, Gifts and Garbage*, Altadena, CA, May 2012
Pasadena Bar Association, Women's Focus Group, *Gardeners, Gifts and Garbage*, April 2012
La Canada Women's Club, *Recognizing Value*, Altadena, CA, April 2012
San Gabriel Valley Fiduciary Roundtable, *Recognizing Value,* University Club, Pasadena, CA
December 2012

## Professional Organizations

National Auctioneers Association
Huntington Library, Society of Fellows
Pasadena Museum of History, Founders Circle
Mountain Rescue Association
Wilderness Medical Association

**360 THREESIXTY**
ASSET ADVISORS

## Jeff Tanenbaum, CAI, CES
## PRESIDENT



Jeff Tanenbaum entered the asset recovery profession in 1985, immersing himself in all aspects of the business – from operations and marketing, to auctioneering, supervising liquidations and conducting valuations. Handling complex transactions involving multiple asset classes and expansive geographies, Jeff developed the unique capability to see value where others may not, and to craft solutions that maximize value and create win-win results.

Jeff started his career as employee number one at Great American Group (now a division of B. Riley), helping to grow the company until his departure as Executive Vice President in 1994. In 1995, Jeff launched Remarketing Associates which became Tiger Remarketing Services in 2010, and later Tiger Industrial. Tanenbaum served as President of Tiger Industrial and Executive Managing Director of Tiger Capital Group until his departure in 2019.

Jeff founded ThreeSixty Asset Advisors in 2020. The company's mission is to provide healthy and distressed companies with solutions to maximize value from excess and idle assets. The company's consultative approach ensures access to the most effective tools, resources and strategies.

Over his 35-year tenure in the disposition industry, Jeff has participated in thousands of engagements, and personally managed over 1,000 auction and liquidation sale events, working on behalf of such companies as Apple Computer and Mobil Oil, such financial institutions as Wells Fargo and PNC Bank, and such agencies as the US Bankruptcy Court and the FDIC.

Jeff has served both the auction industry and his community, serving on the boards of the Industrial Auctioneers Association and the Southern California Auctioneers Association, as well as on the Boys & Girls Club Board for over 15 years. Tanenbaum has also conducted 100's of benefit auctions, raising millions of dollars for numerous causes throughout the United States.

### SELECT PROJECTS:

**Apple Computer, Inc.**
50+ Auctions of Refurbished Products

**ITT Technical Institute (Bankruptcy Estate)**
Consolidation and Auctions of Over 100 Locations

**Prime Equip**
3 Month Liquidation Construction Equipment Rental Fleet

**Broadcom**
Worldwide Auctions of Excess Electronic Test Equipment

### EXPERIENCE:

2020 - Present
ThreeSixty Asset Advisors, LLC
President

2010 - 2019
Tiger Capital Group
Executive Managing Director

2002 – 2005
Tranzon Asset Strategies
Executive Vice President

1995 – 2010
Remarketing Associates, Inc.
President

1985 - 1994
Great American Group
Executive Vice President

### MEMBERSHIPS / CERTIFICATIONS:

Designee, Certified Auctioneers
Institute (CAI)

Designee, Certified Estate Specialist
(CES)

Officer, Industrial Auctioneers
Association (former)

Officer, Southern California
Auctioneers Association (former)

Member, National Auctioneers
Association

Education, University of Southern
California

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **APPLICATION BY CHAPTER 7 TRUSTEE FOR AUTHORITY TO JOINTLY EMPLOY THREESIXTY ASSET ADVISORS, LLC AND JOHN MORAN AUCTIONEERS, INC. AS AUCTIONEERS; TO AUTHORIZE PUBLIC SALE BY AUCTIONEER AND TO PAY AUCTIONEER UPON CONCLUSION OF SALE IN ACCORDANCE WITH THE TERMS HEREOF; STATEMENTS OF DISINTERESTEDNESS; DECLARATION IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 30, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**See Attached ECF List**

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) August 30, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor
Girardi Keese
1126 Wilshire Blvd
Los Angeles, CA 90017-1904

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| August 30, 2022 | Cheryl Caldwell | */s/Cheryl Caldwell* |
| *Date* | *Printed Name* | *Signature* |

CC 51263738v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                 **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Kyra E Andrassy**    kandrassy@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Rafey Balabanian**    rbalabanian@edelson.com, docket@edelson.com
- **Michelle Balady**    mb@bedfordlg.com, leo@bedfordlg.com
- **Ori S Blumenfeld**    oblumenfeld@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com
- **Evan C Borges**    eborges@ggtriallaw.com, cwinsten@ggtriallaw.com
- **Richard D Buckley**    richard.buckley@arentfox.com
- **Steve Burnell**    Steve.Burnell@gmlaw.com,
  sburnell@ecf.courtdrive.com;sburnell@ecf.inforuptcy.com;cheryl.caldwell@gmlaw.com
- **Indira J. Cameron-Banks**    indira@cameron-banks.com, tiffany@cameronbankslaw.com
- **Marie E Christiansen**    mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-
  4166@ecf.pacerpro.com
- **Jennifer Witherell Crastz**    jcrastz@hrhlaw.com
- **Ashleigh A Danker**    adanker731@gmail.com
- **Lei Lei Wang Ekvall - DECEASED -**    lekvall@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Richard W Esterkin**    richard.esterkin@morganlewis.com
- **Timothy W Evanston**    tevanston@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- **Jeremy Faith**    Jeremy@MarguliesFaithlaw.com,
  Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- **James J Finsten**    , jimfinsten@hotmail.com
- **James J Finsten**    jfinsten@lurie-zepeda.com, jimfinsten@hotmail.com
- **Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com
- **Larry W Gabriel**    lgabrielaw@outlook.com, tinadow17@gmail.com
- **Eric D Goldberg**    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Andrew Goodman**    agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com
- **Suzanne C Grandt**    suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov
- **Steven T Gubner**    sgubner@bg.law, ecf@bg.law
- **Marshall J Hogan**    mhogan@swlaw.com, knestuk@swlaw.com
- **Sheryl K Ith**    sith@cookseylaw.com
- **Razmig Izakelian**    razmigizakelian@quinnemanuel.com
- **Lillian Jordan**    ENOTICES@DONLINRECANO.COM, RMAPA@DONLINRECANO.COM
- **Lewis R Landau**    Lew@Landaunet.com
- **Daniel A Lev**    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Elizabeth A Lombard**    elombard@zwickerpc.com, bknotices@zwickerpc.com
- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Craig G Margulies**    Craig@MarguliesFaithlaw.com,
  Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Peter J Mastan**    peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
- **Edith R. Matthai**    ematthai@romalaw.com, lrobie@romalaw.com
- **Daniel J McCarthy**    dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;nchacon@hfbllp.com
- **Jack Meyer**    jmeyer@ggtriallaw.com
- **Elissa Miller (TR)**    CA71@ecfcbis.com,
  MillerTrustee@gmlaw.com;C124@ecfcbis.com;cheryl.caldwell@gmlaw.com;cheryl.caldwell@ecf.courtdrive.com
- **Eric A Mitnick**    MitnickLaw@aol.com, mitnicklaw@gmail.com
- **Gilbert M Nishimura**    gnishimura@snw-law.com, schin@snw-law.com;sgalindo@snw-law.com;ffilimona@snw-
  law.com
- **Scott Olson**    scott.olson@bclplaw.com, scott-olson-
  2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com

CC 51263738v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

- **Carmela Pagay**   ctp@lnbyb.com
- **Leonard Pena**   lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com
- **Michael J Quinn**   mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-2870@ecf.pacerpro.com
- **David M Reeder**   david@reederlaw.com, secretary@reederlaw.com
- **Ronald N Richards**   ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Kevin C Ronk**   Kevin@portilloronk.com, Attorneys@portilloronk.com
- **Frank X Ruggier**   frank@ruggierlaw.com, enotice@pricelawgroup.com
- **William F Savino**   wsavino@woodsoviatt.com, lherald@woodsoviatt.com
- **Kenneth John Shaffer**   johnshaffer@quinnemanuel.com
- **Richard M Steingard**   , awong@steingardlaw.com
- **Philip E Strok**   pstrok@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- **Terrence Swinson**   terrenceswinson@gmail.com
- **Tamar Terzian**   tterzian@eppscoulson.com, ecfnotices@eppscoulson.com
- **Boris Treyzon**   btreyzon@actslaw.com, sgonzales@actslaw.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Diane C Weil**   dcweil@dcweillaw.com, diane.c.weil@Gmail.com,dweil@ecf.inforuptcy.com,alopez@dcweillaw.com
- **Pauline White**   pauline@paulinewhite.com
- **Eric D Winston**   ericwinston@quinnemanuel.com
- **Christopher K.S. Wong**   christopher.wong@arentfox.com, yvonne.li@arentfox.com
- **Robert M Yaspan**   court@yaspanlaw.com, tmenachian@yaspanlaw.com
- **Timothy J Yoo**   tjy@lnbyb.com

CC 51263738v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                   **F 9013-3.1.PROOF.SERVICE**