1  Daniel A. Lev (CA Bar No. 129622)
     daniel.lev@gmlaw.com
2  Asa S. Hami (CA Bar No. 210728)
     asa.hami@gmlaw.com
3  **Greenspoon Marder LLP**
   333 South Grand Avenue, Suite 3400
4  Los Angeles, California 90071-1406
   Telephone: 213.626.2311
5  Facsimile: 954.771.9264

6  Attorneys for Plaintiff, Elissa D. Miller, Chapter 7 Trustee

7

                **UNITED STATES BANKRUPTCY COURT**
8
        **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**
9

10
   In re                                  Case No. 2:20-bk-21022-BR
11
   GIRARDI KEESE,                         Chapter 7
12
              Debtor.                     Adv. No.
13
                                          **COMPLAINT FOR (1) AVOIDANCE AND
14                                        RECOVERY OF FRAUDULENT
                                          TRANSFERS, (2) PRESERVATION OF
15                                        FRAUDULENT TRANSFERS, (3)
                                          DISALLOWANCE OF CLAIMS, (4)
16                                        CONVERSION, (5) UNJUST
                                          ENRICHMENT, AND (6) DECLARATORY
17                                        RELIEF**

18                                        DATE:
                                          TIME:    [To Be Set By Summons]
19                                        PLACE:

20  ELISSA D. MILLER, solely in her capacity
    as chapter 7 trustee,
21
              Plaintiff,
22
         vs.
23
    JACQUELINE ANN LIRA aka
24  JACQUELINE ANN GIRARDI, an
    individual,
25
              Defendant.
26

27

28

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1    For her "Complaint for (1) Avoidance and Recovery of Fraudulent

2   Transfers, (2) Preservation of Fraudulent Transfers, and (3) Disallowance of Claims, (4)

3   Conversion, (5) Unjust Enrichment, and (6) Declaratory Relief" (the "Complaint"), plaintiff

4   Elissa D. Miller (the "Trustee" or "Plaintiff"), the duly appointed, qualified, and acting

5   chapter 7 trustee for the estate of the debtor Girardi Keese and as the Successor-in-

6   Interest Trustee of the Girardi Keese Client Trust Account, hereby alleges and avers as

7   follows:

8   **STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE**

9    1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§

10   157(b)(1) and 1334(a).  This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A),

11   (F), (H), and (O).  This action is a proceeding arising in and/or related to the bankruptcy

12   case of In re Girardi Keese, bearing Case No. 2:20-bk-21022-BR (the "Bankruptcy

13   Case"), which is a case under chapter 7 of title 11 of the United States Code, 11 U.S.C. §

14   101 et seq., (the "Bankruptcy Code"), and which is pending in the United States

15   Bankruptcy Court for the Central District of California, Los Angeles Division (the

16   "Bankruptcy Court" or "Court").  Regardless of whether this proceeding is core, non-core,

17   or otherwise, Plaintiff consents to the entry of a final order and judgment by the

18   Bankruptcy Court.  Defendant is hereby notified that Rule 7008 of the Federal Rules of

19   Bankruptcy Procedure requires defendant to plead whether consent is given to the entry

20   of a final order and judgment by the Bankruptcy Court.

21    2.    Venue properly lies in this judicial district pursuant to 28 U.S.C. §§

22   1408 and 1409.

23   **RELEVANT BACKGROUND, PARTIES, AND ALLEGATIONS COMMON TO ALL**

24   **CLAIMS FOR RELIEF**

25    3.    In its heyday, Girardi Keese was one of the most successful

26   plaintiff's law firms in the country - it certainly was the preeminent plaintiff's firm in the

27   State of California.  The firm's founder - Thomas V. Girardi ("Thomas") - was a legendary

28   trial attorney, often viewed as the "Clarence Darrow" of the plaintiff's bar, reeling in

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1    hundreds of millions of dollars in settlements and jury verdicts.  Girardi Keese's practice

2    covered the universe of plaintiff's cases, ranging from personal injury, defective products,

3    sexual abuse, and toxic torts, to business, employment, and aviation law.  But similar to

4    when Toto pulled the curtain back to reveal that the Wizard of Oz was a hoax, the world

5    eventually learned that Girardi Keese was nothing more than an illicit and felonious

6    business operated to line the rather large pockets of Thomas, his wife, and numerous

7    cohorts.  While the Trustee continues to investigate the magnitude of the fraud that

8    spanned decades, it is obvious that millions of dollars of client funds were stolen and

9    diverted to fund the lavish lifestyles of Thomas and other non-deserving parties.

10             4.       On December 18, 2020 (the "Petition Date"), after discovering that

11   Girardi Keese stole the settlement monies of the families who lost loved ones in the

12   disastrous crash of Lion Air Flight JT 610, petitioning creditors Jill O'Callahan, as

13   successor in interest to James O'Callahan, Robert M. Keese, John Abassian, Erika

14   Saldana, Virginia Antonio, and Kimberly Archie (collectively, the "Petitioning Creditors")

15   commenced an involuntary petition for relief under chapter 7 of title 11 of the United

16   Sates Code (the "Bankruptcy Code") against the Debtor.[1]

17             5.       On December 24, 2020, Petitioning Creditors caused to be filed their

18   "Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g); Memorandum

19   of Points and Authorities".  On January 5, 2021, the Court entered its "Order Granting

20   'Motion of Petitioning Creditors for Appointment of Interim Trustee Pursuant to 11 U.S.C.

21   303(g)'".  On January 6, 2021, the Office of the United States Trustee filed its

22   "(Corrected) Notice of Appointment of Chapter 7 Trustee (11 U.S.C. §§ 303(g) and 701)"

23   pursuant to which, among other things, Elissa D. Miller was appointed interim chapter 7

24   trustee for the Debtor's estate.

25             6.       On January 13, 2021, the Court entered its "Order Directing: (1) the

26   Clerk of Court to Immediately Enter an Order for Relief Under Chapter 7; (2) the United

27

---

28   [1] The Petitioning Creditors also filed an involuntary chapter 7 bankruptcy petition against Thomas V.
Girardi, which is currently pending as Case No. 2:20-bk-21020-BR.

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

1   States Trustee to Immediately Appoint a Chapter 7 Trustee; (3) the Debtor to File All

2   Schedules and Related Documentation for Chapter 7 Case Within Fourteen Days of the

3   Entry of This Order; and (4) Vacating February 16, 2021 Status Conference".  On

4   January 13, 2021, the Clerk of Court entered its "Order for Relief and Order to File

5   Schedules, Statements and List(s)".  On January 13, 2021, the Office of the United

6   States Trustee filed its "Notice of Appointment of Trustee and Fixing of Bond; Acceptance

7   of Appointment As Interim Trustee" pursuant to which, among other things, Elissa D.

8   Miller was appointed and accepted her appointment as chapter 7 trustee for the Debtor's

9   estate, and she continues to act in that capacity as well as the Successor-in-Interest

10  Trustee of the Girardi Keese Client Trust Account.

11          7.      Plaintiff brings this action solely in her capacity as chapter 7 trustee

12  for the Debtor's estate and its respective creditors and as Successor-in-Interest Trustee

13  of the Girardi Keese Client Trust Account.  To the extent that Plaintiff hereby asserts

14  claims under 11 U.S.C. § 544(b), Plaintiff is informed and believes, and on that basis

15  alleges thereon, that there exists in this case one or more creditors holding unsecured

16  claims allowable under 11 U.S.C. § 502, or that are not allowable only under 11 U.S.C. §

17  502(e) who could have avoided the respective transfers or obligations under California or

18  other applicable law before the Petition Date.

19          8.      Plaintiff was appointed as chapter 7 trustee after the Petition Date.

20  As a result, Plaintiff does not have personal knowledge of the facts alleged in this

21  Complaint that occurred prior to her appointment and, therefore, alleges all those facts on

22  information and belief.  Plaintiff reserves the right to amend this Complaint to allege

23  additional claims against defendant and to challenge and recover transfers made to or for

24  the benefit of defendant in addition to those transfers alleged in this Complaint.

25          9.      Plaintiff is informed and believes and, on that basis alleges thereon,

26  that defendant Jacqueline Ann Lira aka Jacqueline Ann Girardi ("Jacqueline" or

27  "Defendant") is an individual residing within the jurisdiction of the Court.  Plaintiff further is

28  informed and believes and, on that basis alleges thereon, that Jacqueline is the daughter

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

of Thomas and is married to David Lira, a partner employed by Girardi Keese.  At all

relevant times, Jacqueline was the initial transferee of the transfers alleged herein or was

the party for whose benefit the transfers were made and/or an immediate or mediate

transferee of such initial transferee.

10.     During a time when Girardi Keese was in a precarious financial state,

and was not paying its creditors, Girardi Keese began a systematic process of draining

the available cash, often times consisting of stolen client trust funds, by, among other

things, making distributions to certain preferred creditors or third parties from funds of

Girardi Keese's estate.  During the seven-year period prior to the Petition Date, with the

assistance of various partners, employees, and family members, Thomas and Girardi

Keese conspired by purpose and design to abscond and secrete the assets of Girardi

Keese for the purpose of defrauding Girardi Keese's creditors.  In virtually each instance,

these transfers were made for less than reasonably equivalent value in return and during

a time in which Girardi Keese was insolvent or was rendered insolvent as a result of the

transfers, or when Girardi Keese was engaged or was about to engage in a business or a

transaction for which the remaining assets of Girardi Keese were unreasonably small in

relation to the business or transaction.  Often times, for instance, Girardi Keese used

funds that should have been segregated in IOLTA's (Interest on Lawyer's Trust

Accounts) meant to safeguard such client funds.  However, at all relevant times, Thomas

and Girardi Keese used Girardi Keese's operating and IOLTA accounts as if they were

common depositories of not only Girardi Keese client funds, but also the personal funds

of Thomas, his family members, and other third parties.  As a result of the commingling of

funds in Girardi Keese's general operating accounts, transfers from the IOLTA and

general operating accounts constitute transfers of funds in which Girardi Keese had an

interest.

11.     With respect to Jacqueline, on August 2, 2012, the Superior Court of

the State of California, County of San Bernardino, Rancho Cucamonga District (the

"Superior Court"), entered its "Stipulation and Order Authorizing California Lottery to

1    Disburse Lottery Winnings & Final Dismissal of Action" (the "August 2 Order"), in that

2    certain action styled <u>Maurice Marston, et al. v. Natalie Marston-Salem</u>, bearing Case No.

3    CIVRS 910950 (the "Marston Action").  In accordance with the August 2 Order, the

4    Superior Court approved that certain "Settlement Agreement" (the "Marston Settlement

5    Agreement") dated June 12, 2012, by and between Maurice Marston, on the one hand,

6    and Natalie Marston-Salem, on the other hand.  True and correct copies of the August 2

7    Order and the Marston Settlement Agreement are attached hereto as Exhibit "A".

8           12.    Pursuant to the Marston Settlement Agreement and the August 2

9    Order, (i) Natalie Marston-Salem was entitled to receive twenty (20) annual payments of

10   $260,000 for twenty (20) years from the California Lottery Commission, (ii) Natalie

11   Marston-Salem duly assigned her right to receive the lottery payments authorized for the

12   calendar year 2012 to four individuals, including Jacqueline, who was entitled to receive

13   13.34% of the lottery payments, or a payment of $34,684, for the calendar year 2012 (the

14   "2012 Lottery Payment"), (iii) Natalie Marston-Salem duly assigned her right to receive

15   the lottery payments authorized for the calendar years 2013 through 2025 to four

16   individuals, including Jacqueline, who was entitled to receive 10% of the lottery

17   payments, or annual payments of $26,000, for the calendar years 2013 through 2025 (the

18   "2013-2025 Lottery Payments" and together with the 2012 Lottery Payment, the "Lottery

19   Payments"), and (iv) Natalie Marston-Salem would receive 100% of the lottery payments,

20   or annual payments of $260,000, for the calendar years 2026 through 2028.  On June 19,

21   2012, Jacqueline executed that certain "California Lottery Payee Setup" (the "Payee

22   Setup Form") in order to ensure that the lottery payments authorized by the August 2

23   Order were directed to Jacqueline.  A true and correct copy of the Payee Setup Form is

24   attached hereto as Exhibit "B".

25          13.    Plaintiff is informed and believes and, on that basis alleges thereon,

26   that the payments made, and to be made, to Jacqueline constitute property of Girardi

27   Keese's estate as they were on account of attorneys' fees rendered and expenses

28   incurred by Girardi Keese in its representation of Maurice Marston in the Marston Action

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1  and which attorneys' fees and expenses were fraudulently transferred and diverted by

2  Girardi Keese to Jacqueline.

3       14.    With respect to Jacqueline, during the seven-year period prior to the

4  Petition Date, Jacqueline received approximately 8 payments from the California Lottery

5  Commission in the total aggregate amount of $208,000 (the "Seven-Year Transfers"),

6  consisting of, among other things, (i) approximately 5 payments to Jacqueline in the total

7  aggregate amount of $130,000 during the four-year period prior to the Petition Date (the

8  "Four-Year Transfers"), and (ii) approximately 3 payments to Jacqueline in the total

9  aggregate amount of $78,000 during the two-year period prior to the Petition Date (the

10 "Two-Year Transfers" and together with the Seven-Year Transfers and the Four-Year

11 Transfers, the "Fraudulent Transfers").

12                    **<u>FIRST CLAIM FOR RELIEF</u>**

13 **(Avoidance and Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544(b)**

14 **and 550(a) and California Civil Code §§ 3439.04(a)(1), 3439.07, and 3439.09)**

15      15.    Plaintiff realleges and incorporates herein by reference each and

16 every allegation contained in paragraphs 1 through 14 as though set forth in full.

17      16.    Plaintiff is informed and believes, and on that basis alleges thereon,

18 that during the seven-year period preceding the Petition Date, Girardi Keese made the

19 Seven-Year Transfers to or for the benefit of Jacqueline.

20      17.    Plaintiff is informed and believes, and on that basis alleges thereon,

21 that the Seven-Year Transfers were made by Girardi Keese with actual intent to hinder,

22 delay, or defraud any creditor of Girardi Keese.

23      18.    Plaintiff is informed and believes, and based thereon alleges, that, at

24 all relevant times, the Seven-Year Transfers were voidable under California Civil Code

25 §§ 3439.04(a)(1), 3439.07, and 3439.09 by one or more creditors who held and hold

26 unsecured claims against Girardi Keese that were and are allowable against the estate

27 under 11 U.S.C. § 502, or that were and are not allowable only under 11 U.S.C. § 502(e).

28 These creditors include, without limitation, those creditors who are listed in Girardi

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

DAL 52428733v1                    -7-

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1    Keese's schedules as holding undisputed claims or who have filed proofs of claim against

2    Girardi Keese's estate.

3        19.    Plaintiff is informed and believes, and on that basis alleges thereon,

4    that, based on the foregoing, Plaintiff may avoid the Seven-Year Transfers and recover

5    the equivalent value of said fraudulent transfers for the benefit of Girardi Keese's estate

6    from Defendant pursuant to 11 U.S.C. §§ 544(b) and 550.

7                    **<u>SECOND CLAIM FOR RELIEF</u>**

8    **(Avoidance and Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544(b)**

9            **and 550 and California Civil Code §§ 3439.04(a)(2) and 3439.07)**

10        20.    Plaintiff realleges and incorporates herein by reference each and

11    every allegation contained in paragraphs 1 through 14 as though set forth in full.

12        21.    Plaintiff is informed and believes, and on that basis alleges thereon,

13    that Girardi Keese made the Four-Year Transfers to or for the benefit of Jacqueline.

14        22.    Plaintiff is informed and believes, and on that basis alleges thereon,

15    that Girardi Keese made the Four-Year Transfers (a) without receiving a reasonably

16    equivalent value in exchange for the transfers, and Girardi Keese either (i) was engaged

17    or was about to engage in a business or a transaction for which the remaining assets of

18    Girardi Keese were unreasonably small in relation to the business or transaction, or (ii)

19    intended to incur, or believed or reasonably should have believed that it would incur,

20    debts beyond its ability to pay as they became due.

21        23.    Plaintiff is informed and believes, and based thereon alleges, that, at

22    all relevant times, the Four-Year Transfers were voidable under California Civil Code §§

23    3439.04(a)(2) and 3439.07 by one or more creditors who held and hold unsecured claims

24    against Girardi Keese that were and are allowable under 11 U.S.C. § 502, or that were

25    and are not allowable only under 11 U.S.C. § 502(e).  These creditors include those

26    creditors who are listed in Girardi Keese's schedules as holding undisputed claims or

27    who have filed proofs of claim against Girardi Keese's estate.

28

1    24.    Plaintiff is informed and believes, and on that basis alleges thereon,

2    that, based on the foregoing, Plaintiff may avoid the Four-Year Transfers and recover the

3    equivalent value of said fraudulent transfers for the benefit of Girardi Keese's estate from

4    Defendant pursuant to 11 U.S.C. §§ 544(b) and 550.

5    **THIRD CLAIM FOR RELIEF**

6    **(Avoidance and Recovery of Fraudulent Transfers Pursuant to**

7    **11 U.S.C. §§ 548(a)(1)(A) and 550)**

8    25.    Plaintiff realleges and incorporates herein by reference each and

9    every allegation contained in paragraphs 1 through 14 as though set forth in full.

10    26.    Plaintiff is informed and believes, and on that basis alleges thereon,

11    that during the two-year period preceding the Petition Date, Girardi Keese made the Two-

12    Year Transfers to or for the benefit of Jacqueline.

13    27.    Plaintiff is informed and believes, and on that basis alleges thereon,

14    that the Two-Year Transfers were made by Girardi Keese with actual intent to hinder,

15    delay, or defraud any entity to which Girardi Keese was or became, on or after the date

16    that such transfers were made or such obligations were incurred, indebted.

17    28.    Plaintiff is informed and believes, and based thereon alleges thereon

18    that, at all relevant times, the Two-Year Transfers were voidable under 11 U.S.C. §

19    544(b) by one or more creditors who held and hold unsecured claims against Girardi

20    Keese that were and are allowable under 11 U.S.C. § 502, or that were and are not

21    allowable only under 11 U.S.C. § 502(e).  These creditors include those creditors who are

22    listed in Girardi Keese's schedules as holding undisputed claims or who have filed proofs

23    of claim against Girardi Keese's estate.

24    29.    Plaintiff is informed and believes, and on that basis alleges thereon,

25    that, based on the foregoing, Plaintiff may avoid the Two-Year Transfers and recover the

26    equivalent value of said fraudulent transfers for the benefit of Girardi Keese's estate from

27    Defendant pursuant to 11 U.S.C. §§ 544(b) and 550.

28

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

## FOURTH CLAIM FOR RELIEF

### (Avoidance and Recovery of Fraudulent Transfers Pursuant to

### 11 U.S.C. §§ 548(a)(1)(B) and 550)

30.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 14 as though set forth in full.

31.     Plaintiff is informed and believes, and on that basis alleges thereon, that during the two-year period preceding the Petition Date, Girardi Keese made the Two-Year Transfers to or for the benefit of Jacqueline.

32.     Plaintiff is informed and believes, and on that basis alleges thereon, that Girardi Keese received less than a reasonably equivalent value in exchange for the Two-Year Transfers, and (a) Girardi Keese was insolvent on the date that such transfers were made or became insolvent as a result of such transfers, (b) Girardi Keese was engaged in business or a transaction, or was about to engage in business or a transaction, for which any remaining property remaining with Girardi Keese was an unreasonably small capital, or (c) Girardi Keese intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

33.     Plaintiff is informed and believes, and based thereon alleges thereon that, at all relevant times, the Two-Year Transfers were voidable under 11 U.S.C. § 544(b) by one or more creditors who held and hold unsecured claims against Girardi Keese that were and are allowable under 11 U.S.C. § 502, or that were and are not allowable only under 11 U.S.C. § 502(e).  These creditors include those creditors who are listed in Girardi Keese's schedules as holding undisputed claims or who have filed proofs of claim against Girardi Keese's estate.

34.     Plaintiff is informed and believes, and on that basis alleges thereon, that, based on the foregoing, Plaintiff may avoid the Two-Year Transfers and recover the equivalent value of said fraudulent transfers for the benefit of Girardi Keese's estate from Defendant pursuant to 11 U.S.C. §§ 544(b) and 550.

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

**FIFTH CLAIM FOR RELIEF**

**(Recovery of Avoided Transfers or the Value Thereof Pursuant to**

**11 U.S.C. § 550(a))**

35.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 14 as though set forth in full.

36.     Each of the Fraudulent Transfers are transfers of Girardi Keese's property that should be avoided pursuant to California Civil Code §§ 3439.04(a)(1) and 3439.02(a)(2) and 11 U.S.C. §§ 548(a)(1)(A) and 548(a)(1)(B) and, based thereon, Plaintiff is entitled to avoid the Fraudulent Transfers, and each of them.

37.     Jacqueline is the transferee (initial, immediate, mediate and/or otherwise) of the Fraudulent Transfers and/or the entity or person for whose benefit the Fraudulent Transfers were made, within the meaning of 11 U.S.C. § 550(a).  Based thereon, Plaintiff is entitled to recover the Fraudulent Transfers, together with interest at the applicable rate from the date of the Fraudulent Transfers, for the benefit of Girardi Keese's estate.

**SIXTH CLAIM FOR RELIEF**

**(Preservation of Transfers Avoided Pursuant to 11 U.S.C. § 551)**

39.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 14 as though set forth in full.

40.     Pursuant to 11 U.S.C. § 551, the Fraudulent Transfers are preserved for the benefit of Girardi Keese's estate as each of the Fraudulent Transfers are avoidable under California Civil Code §§ 3439.04(a)(1) and 3439.02(a)(2), 11 U.S.C. §§ 548(a)(1)(A) and 548(a)(1)(B), and 11 U.S.C. § 550 as set forth in this Complaint.

**SEVENTH CLAIM FOR RELIEF**

**(For Disallowance of Claims Pursuant to 11 U.S.C. § 502(d))**

41.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 14 as though set forth in full.

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

42.    Pursuant to 11 U.S.C. § 502(d), to the extent Jacqueline files, has filed, or otherwise asserts a claim in Girardi Keese's case, as the term "claim" is defined by 11 U.S.C. § 101(10), Plaintiff requests that any such claim(s) be disallowed for Jacqueline's failure to return or repay the Fraudulent Transfers, or the value thereof.

## EIGHTH CLAIM FOR RELIEF

### (For Conversion)

43.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 14 as though set forth in full.

44.    The Lottery Payments constitute property of Girardi Keese's bankruptcy estate and Jacqueline has willfully, intentionally, and wrongfully interfered with Girardi Keese's superior right to the Lottery Payments.

45.    Jacqueline has not returned the Lottery Payments to Girardi Keese, and, instead, has continued to receive and divert the Lottery Payments for her own personal benefit.

46.    Plaintiff has been damaged in an amount according to proof as a result of Jacqueline's actions in converting and misappropriating the Lottery Payments for her own personal benefit.

## NINTH CLAIM FOR RELIEF

### (For Unjust Enrichment)

47.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 14 as though set forth in full.

48.    Girardi Keese improperly and illegally conferred upon Jacqueline an economic benefit in the nature of Lottery Payments that constitute property of Girardi Keese's bankruptcy estate on account of attorneys' fees rendered and expenses incurred in Girardi Keese's representation of Maurice Marston in the Marston Action.

49.    It would be inequitable and unjust for Jacqueline to be permitted to retain any of the Lottery Payments resulting from Girardi Keese and Jacqueline's fraudulent and wrongful conduct.

50.     Jacqueline has been unjustly enriched as a result of her fraudulent and wrongful conduct.  Plaintiff, therefore, is entitled to equitable relief, including restitution and/or disgorgement of all Lottery Payments received to date or to be received in the future.

### TENTH CLAIM FOR RELIEF

### (For Declaratory Relief Pursuant to 28 U.S.C. § 2201)

51.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 14 as though set forth in full.

52.     An actual controversy has arisen between Plaintiff, on the one hand, and Jacqueline, on the other hand, in that Plaintiff contends, without limitation, that (i) the Lottery Payments constitute property of Girardi Keese's bankruptcy estate on account of attorneys' fees rendered and expenses incurred in Girardi Keese's representation of Maurice Marston in the Marston Action, and (ii) Jacqueline has no ownership interest in the Lottery Payments, whereas Jacqueline contends that she has a superior interest in the Lottery Payments.

53.     Plaintiff desires a declaration of her rights and remedies with respect to the Lottery Payments.  Such a declaration is necessary and appropriate at this time since, if the Court does not resolve the actual controversy between Plaintiff, on the one hand, and Jacqueline, on the other hand, Jacqueline may take further actions to control, possess, seize, or otherwise interfere with Plaintiff's superior right, title, and interest in and to the Lottery Payments, to the prejudice and detriment of Plaintiff and Girardi Keese's bankruptcy estate.

### RESERVATION OF RIGHTS

54.     Plaintiff reserves the right to amend this Complaint to include, among other things, (i) further information regarding the Fraudulent Transfers or the Lottery Payments, (ii) additional transfers, (iii) modifications of and revisions to Defendant's name, (iv) additional defendants, and (v) additional claims for relief, that may become

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

1  known to Plaintiff at any time during this adversary proceeding through formal discovery

2  or otherwise, and for the amendments to relate back to this Complaint.

3        55.    Plaintiff reserves the right to bring all other claims for relief that

4  Plaintiff may have against Defendant, on any and all grounds, as allowed under the law

5  or in equity.  Additionally, nothing contained in this Complaint shall be construed as a

6  waiver of Plaintiff's right to object to any proof of claim filed by Defendant.  Accordingly,

7  Plaintiff reserves the right to object, on any and all grounds, to any proof of claim filed by

8  Defendant.

9        **WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

10       **ON THE FIRST CLAIM FOR RELIEF**

11       1.    For a judgment and/or order that the Seven-Year Transfers are

12  avoidable under 11 U.S.C. § 544 and California Civil Code § 3439.04(a)(1), or providing

13  any other appropriate remedy under California Civil Code § 3439.07;

14       **ON THE SECOND CLAIM FOR RELIEF**

15       2.    For a judgment and/or order that the Four-Year Transfers are

16  avoidable under 11 U.S.C. § 544 and California Civil Code § 3439.04(a)(2), or providing

17  any other appropriate remedy under California Civil Code § 3439.07;

18       **ON THE THIRD CLAIM FOR RELIEF**

19       3.    For a judgment and/or order that the Two-Year Transfers are

20  avoidable under 11 U.S.C. § 548(a)(1)(A);

21       **ON THE FOURTH CLAIM FOR RELIEF**

22       4.    For a judgment and/or order that the Two-Year Transfers are

23  avoidable under 11 U.S.C. § 548(a)(1)(B);

24       **ON THE FIFTH CLAIM FOR RELIEF**

25       5.    For a judgment and/or order that Plaintiff is entitled to recover the

26  Fraudulent Transfers, or the value thereof, from Defendant under 11 U.S.C. § 550;

27

28

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1

**ON THE SIXTH CLAIM FOR RELIEF**

2    6.    For a judgment and/or order that Plaintiff is entitled to preserve the

3    Fraudulent Transfers avoided under California Civil Code §§ 3439.04(a)(1) and

4    3439.04(a)(2) and 11 U.S.C. §§ 548(a)(1)(A) and 548(a)(1)(B) for the benefit of Girardi

5    Keese's estate under 11 U.S.C. § 551;

6    **ON THE SEVENTH CLAIM FOR RELIEF**

7    7.    For a judgment and/or order disallowing any claim(s) that Defendant

8    may assert or has asserted against Girardi Keese's estate under 11 U.S.C. § 502(d);

9    **ON THE EIGHTH CLAIM FOR RELIEF**

10    8.    For a judgment in an amount according to proof;

11    **ON THE NINTH CLAIM FOR RELIEF**

12    9.    For a judgment and/or order granting Plaintiff equitable relief,

13    including restitution and/or disgorgement of all Lottery Payments received to date or to be

14    received in the future;

15    **ON THE TENTH CLAIM FOR RELIEF**

16    10.    For a declaration and judgment that (i) the Lottery Payments

17    constitute property of Girardi Keese's bankruptcy estate on account of attorneys' fees

18    rendered and expenses incurred in Girardi Keese's representation of Maurice Marston in

19    the Marston Action, and (ii) Jacqueline has no ownership interest in the Lottery

20    Payments;

21    **ON ALL CLAIMS FOR RELIEF**

22    11.    For interest in an amount authorized by law;

23    12.    For costs of suit incurred herein, including, without limitation,

24    attorneys' fees; and

25

26

27

28

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

13.    For such other and further relief as the Court deems just and proper.

DATED: January 9, 2023                    **Greenspoon Marder LLP**


By: /s/ *Daniel A. Lev*
    Daniel A. Lev
    Attorneys for Plaintiff, Elissa D. Miller, Chapter
    7 Trustee

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

DAL 52428733v1

# EXHIBIT A

MATTHEW R. EASON  SBN 160148
KYLE K. TAMBORNINI SBN 160538
LAW OFFICES OF EASON & TAMBORNINI
1819 K Street, Suite 200
Sacramento, CA  95814
Tel: (916) 438-1819
Fax: (916) 438-1820

Attorneys for Defendant

F I L E D
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
RANCHO CUCAMONGA DISTRICT

AUG – 2 2012

BY _____
CHRISTINA L. BANDFIELD, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN BERNARDINO – RANCHO CUCAMONGA

## DISTRICT

| | |
|---|---|
| MAURICE MARSTON, ET AL | Case No.: CIVRS 910950 |
| Plaintiffs, | |
| v. | STIPULATION AND [PROPOSED] ORDER AUTHORIZING CALIFORNIA LOTTERY TO DISBURSE LOTTERY WINNINGS & FINAL DISMISSAL OF ACTION |
| NATALIE MARSTON-SALEM, f/k/a or a/k/a NATALIE MARSTON | |
| Defendant. | |

Plaintiff Maurice L. Marston ("Plaintiff") and defendant Natalie E. Marston-Salem ("Defendant") hereby stipulate, through their undersigned counsel of record, to the following Order:

1.     Defendant Natalie E. Marston-Salem was entitled to receive twenty (20) annual payments of $260,000.00 for twenty (20) years from the California Lottery winnings.  Pursuant to Government Code section 8880.325 ("Section 8880.325"), California Lottery Regulation section III(B)(2) ("Regulation III(B)(2)"), and the June 12, 2012 settlement agreement between Plaintiff and Defendant attached hereto as Exhibit 1, the Court hereby approves an assignment by the Defendant of 100% of the gross annual amount of California Lottery winnings less Federal taxes and deductions authorized by law for the calendar year 2012 as follows:

STIPULATION AND ORDER FOR ASSIGNMENT Page 1

a.   60% ($156,000.00) to Maurice L. Marston and Nancy Norton-Marston

b.   13.34 % ($34,684.00) to Jacqueline Ann Lira

c.   13.33% ($34,658.00) to Erika Girardi

d.   13.33 % ($34,658.00) to Basel George Abujamra

2.   Pursuant to Government Code section 8880.325 ("Section 8880.325"), California Lottery Regulation section III(B)(2) ("Regulation III(B)(2)"), and the June 12, 2012 settlement agreement between Plaintiff and Defendant attached hereto as Exhibit 1, the Court hereby approves an assignment by the Defendant of 75% of the gross annual amount of California Lottery winnings of $260,000.00 less Federal taxes and deductions authorized by law for the calendar years 2013 through 2025 as follows:

a.   45% ($117,000) to Maurice L. Marston and Nancy Norton-Marston

b.   10 % ($26,000) to Jacqueline Ann Lira

c.   10% ($26,000) to Erika Girardi

d.   10 % ($26,000) to Basel George Abujamra

Defendant will retain $65,000.00 or twenty-five percent (25%) of the gross amount of California Lottery winnings for the calendar years 2013 through 2025. For the calendar years 2026 through 2028, Defendant will receive one hundred percent (100%) of the gross annual amount of the California Lottery winnings of $260,000.00.

3.   The Court authorizes the California Lottery to disburse the above stated amounts, less federal taxes and deductions that the Lottery is required by law to withhold, to Plaintiff and the assignees set forth in Paragraph 1 herein.

4.   The Lottery will pay the balance of the lottery prize to Defendant Natalie E. Marston-Salem after the allocations set forth in Paragraph 2a. – d. herein.

5.   Additionally, pursuant to Section 8880.325 and Regulation III(B)(2), the Court finds as follows:

(a)   Defendant/Winner's name on California Lottery claim form: Natalie E. Marston. She was later married and changed her name to Natalie E. Marston-Salem.

(b)   Defendant/Winner's address and social security number: Confidential/has already

1    been provided to the California Lottery;

2        (c)      Plaintiff/Assignee's name: Maurice L. Marston and Nancy Norton-Marston

3    (Federal taxes will be paid under Maurice L. Marston's Social Security Number as provided

4    under separate cover);

5        (d)      Plaintiff/Assignee's address, birth date, and social security number:

6    Confidential/will be provided to the California Lottery under separate cover;

7        (e)      Additional assignees' names:  Jacqueline Ann Lira, Erika Girardi, and Basel

8    George Abujamra;

9        (f)      Additional assignees' addresses, birth dates, and social security numbers:

10   Confidential/will be provided to the California Lottery under separate cover;

11       (g)      Defendant/Winner has reviewed and understands the terms of the foregoing

12   assignment; understands that she will not receive the assigned prize payments or a portion

13   thereof for the payments assigned; has entered into the agreement of her own free will without

14   undue influence or duress and not under the influence of drugs or alcohol; has had an opportunity

15   to retain and consult with an independent financial and tax advisor(s) concerning the effect of the

16   assignment, who have fully advised her about the tax consequences of the assignment; and has

17   been represented by independent legal counsel, Matthew R. Eason, Eason & Tambornini, ALC

18   who has advised her of her legal rights and obligations under the assignment and whose State

19   Bar of California number is 160142;

20       (h)      Defendant/Winner is married and her spouse has executed this stipulation

21   disclaiming any interest, as provided in his Declaration, and there are no other non-spouse co-

22   owners, claimants, or lien holders asserting a claim against Defendant/Winner's lottery winnings,

23   including, but not limited to, payments that are the subject of this assignment;

24       (i)      Defendant/Winner has obtained and filed with the Court a notification from the

25   California State Lottery of any liens, levies, or claims, and the Controller's office of any offsets

26   asserted as of that time against Defendant/Winner, as reflected in their respective official records

27   as of the time of the notification; and

28       (j)      The California Lottery and the State of California are not parties to the proceeding

**STIPULATION AND ORDER FOR ASSIGNMENT** Page 3

019

1  and the California Lottery and the State of California may rely upon this order in disbursing the

2  lottery prize payments that are the subject of this order.  Further, upon payment of lottery prize

3  monies pursuant to an order of the court, the California Lottery, the director, and commission

4  and the employees of the California Lottery, and the State of California shall be discharged of

5  any and all liability for the lottery prize paid, and these persons and entities shall have no duty or

6  obligation to any person asserting another interest in, or right to receive, the lottery prize

7  payment.

8      6.    The June 5, 2012 annual lottery payment that is currently being held by the

9  Lottery will be disbursed upon confirmation of the assignment and the necessary time to set up

10  the payees.

11      7.    The Court hereby dismisses the above-captioned action with prejudice with each

12  party to bear its own attorneys' fees and court costs.

13  Dated:  July 30, 2012

14  _____
    Natalie E. Marston-Salem, Defendant

15

16  Dated:  July 30 2012

17  _____
    John Salem, Consenting Spouse

18  Dated:  July 30, 2012

19  _____
    Maurice L. Marston, Plaintiff

20  Dated:  July 30, 2012

21  _____
    Nancy Norton-Marston, Consenting
    Spouse

22

23

24                  **ORDER**

24  IT IS SO ORDERED.

25      AUG 0 2 2012

26  DATED:  ~~July ___, 2012~~

27                  JOSEPH R. BRISCO

    _____
    HONORABLE JOSEPH R. BRISCO
28  Judge of the Superior Court

STIPULATION AND ORDER FOR ASSIGNMENT Page 4

020

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of June __, 2012, by and between Maurice Marston ("Plaintiff"), Natalie Marston Salem ("Defendant"). Plaintiff and Defendant are also sometimes referred to herein collectively as the "Parties" and/or individually as a "Party."

## RECITALS

WHEREAS, on September 29, 2009, Plaintiff filed a action for damages, declaratory relief, and injunctive relief against the Defendant. The case is commonly known as Marston v. Marston, San Bernardino Superior Court Case Number CIVRS 910950 ("The Action");

WHEREAS, on November 29, 2011, judgment was entered in "The Action" on behalf of the Plaintiff and against the Defendant;

WHEREAS, Defendant appealed that judgment;

WHEREAS, the Parties, their respective counsel, and Nancy Marston attended a settlement conference before the Fourth District Court of Appeals Presiding Justice Manuel A. Ramirez.

WHEREAS, as of the drafting of this agreement, the California Lottery has made the first three years of a twenty year payout to the Defendant. The 2012 payment representing year four has not yet been made.

WHEREAS, because of the time, expense and uncertainties associated with further litigation between the Parties and in exchange for the mutual considerations exchanged and agreed to by the Parties under this Agreement, the Parties agree to fully, finally and completely resolve and settle all issues between the Parties, as expressly set forth in this Agreement;

## TERMS

1.      In connection with the Recitals set forth above, which are all fully incorporated herein by reference, the Parties hereby agree to fully, finally and completely resolve and settle all past and present disputes, known and unknown, between them.

2.      Defendant has paid Plaintiff in consideration of this agreement the sum of $135,000.

3.      As of the drafting of this agreement, the payment for 2012 (year 4) from the California State Lottery has not been issued. The parties agree that the proceeds of that payment will be surrendered promptly to the Plaintiff. If the check comes in made payable to the Defendant, the Defendant will negotiate the check, and immediately upon confirmation of availability of funds will submit the entire funds to the Plaintiff. If the check comes in made payable to multiple parties which include the Defendant, Defendant will promptly execute the check and surrender the check to the Plaintiff.

021

4. The parties agree that the Defendant will voluntarily assign to Plaintiff, or his to his named assignees a seventy-five percent (75%) portion of the payments for years five (5) through seventeen (17) (Calendar years 2013-2025). Defendant will retain a twenty-five (25%) portion of the payments for years five (5) through seventeen (17) (Calendar years 2013-2025), and she shall retain 100% of the payments for years eighteen (18) through twenty (20) (Calendar years 2026- 2028).

5. Plaintiff will apply for, and Defendant will cooperate in, the executing of court documents to have the assignments contemplated above approved by a court of competent jurisdiction pursuant to Government Code Section 8880.325(j).

6. Upon satisfaction of the terms above, the Defendant will file a notice of abandonment of appeal, and the Plaintiff will cause to be filed a satisfaction of judgment in full.

7. In consideration of the Settlement Payment, and promises of the Parties specified in this Agreement, the Parties hereby fully, finally and forever release, acquit, exonerate, waive, settle and discharge, each other, and each Party's attorneys, insurance carriers, agents, servants, representatives, employees, subsidiaries, affiliates, directors, board members, partners, officers, directors, shareholders, predecessors, successors-in-interest, assigns, heirs, spouses, and all persons acting by, through, under or in concert with them, of and from any and all past and present claims, demands, obligations, actions, causes of action, damages, costs, attorneys' fees, losses of service, expenses, liability, suits, and compensation of any nature whatsoever, whether based in tort, contract, or any other theory of recovery arising from the recitals set forth above, including without limitation any claim or claims that may have been filed between them. The foregoing is hereinafter referred to as the "Released Matters."

8. The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

9. Except for the obligations set forth in this Agreement, the Parties, after consulting with their respective counsel, hereby waive and relinquish any and all rights and benefits which they may have under, and which may be conferred upon them by, the provisions of Section 1542 regarding the Released Matters to the fullest extent that they may lawfully waive such rights or benefits. The Parties declare that they understand the full nature, extent and import of Section 1542 of the California Civil Code and have been so advised, and/or have had the opportunity to be so advised, by their respective attorneys.

10. The Parties each represent and warrant that they/it are the sole owner of all rights, title, and interests in and to all of the Released Matters settled under this Agreement and that they have not heretofore assigned, transferred, or purported to assign and/or transfer to any person or entity any matters, or portions thereof, settled and released under this Agreement.

11. The settlement, releases and other matters set forth herein are a compromise and

022

settlement of disputed and contested claims between the Parties, and nothing contained herein shall be construed as an admission by any Party of any obligation and/or liability of any kind to any other Party.

12.    This Agreement contains and embodies the entire agreement of the Parties with regard to the obligations under this Agreement and to the Released Matters covered in this Agreement, and no representations, inducements, or other agreements, oral or otherwise, not embodied herein, exist nor shall they be of any force or effect. This Agreement can only be modified or amended by a subsequent written agreement signed by the Parties.

13.    This Agreement is binding upon and shall inure to the benefit of the Parties, their respective agents, employees, representatives, shareholders, officers, directors, partners, board members, divisions, corporations, subsidiaries, parents, affiliates, assigns, heirs, predecessors, spouses, and successors, past, present, and future, and all of their insurers, guarantors, sureties and reinsurers.

14.    The Parties to this Agreement shall each be deemed to have drafted this Agreement, such that no ambiguity in this Agreement, if any, shall be construed against any Party.

15.    The Parties shall each bear their own costs, expenses and fees, of all kind, including attorney, consultant, and expert fees, up through the date this Agreement is entered into, regarding the Released Matters.

16.    The Parties agree to execute any and all such other documents and perform such other acts as are necessary to give effect to the intent and purposes of this Agreement.

17.    If any part, provision, condition, or term of this Agreement, or the application thereof to any person, Party or circumstance, shall to any extent be invalid or unenforceable, the remainder of this Agreement shall not be affected thereby, and each part, provision, condition or term of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

18.    Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the Parties hereto. This Agreement and the performance of the Parties' obligations hereunder are for the sole and exclusive benefit of the Parties.

19.    This Agreement is entered into and shall be subject to the laws of the State of California. Any dispute shall be resolved before the Superior Court of the County of Riverside which shall retain exclusive jurisdiction over this matter.

20.    This Agreement may be signed in counter-parts; all of which taken together shall be construed as one original. Telefaxed signatures shall constitute original signatures.

21.    Each Party hereto represents and warrants that it is represented by, or has had the opportunity to consult with, legal counsel and that it is authorized to sign this Agreement and bind the respective Party hereby and that all acts necessary to confer such authority have been duly, properly and legally taken.

023

IN WITNESS WHEREOF, the parties hereto have executed or caused this Agreement to be executed as of the date first written above.

Dated: June 13, 2012

_Natalie Marston-Salam_

Dated: June 12, 2012

_Maurice Marston_

6·6·12

# EXHIBIT B



## CALIFORNIA LOTTERY
# PAYEE SETUP

Please complete, sign, obtain notarization, and return this form to the following address:

    California Lottery
    Attn: Investments Section
    700 North 10th Street
    Sacramento, CA 95811

The following information is required to properly set up your file, and will determine the appropriate tax withholding rate.
Please see information about Federal Tax Reporting below.

### PLEASE PRINT IN INK OR TYPE

| NAME (FIRST, MIDDLE, LAST) JACQUELINE ANN LIRA | | HOME TELEPHONE NO. 626/792-9734 | WORK TELEPHONE NO. 626/399-6839 |
|---|---|---|---|
| MAILING ADDRESS (STREET, RURAL ROUTE, OR PO BOX) 420 S. Hill Avenue | CITY Pasadena | STATE CA | ZIP CODE 91106 |
| COUNTRY (if not USA) | SOCIAL SECURITY/TAX ID NO. 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 | DATE OF BIRTH Aug. 21, 1966 | DRAW DATE 6/14/2009 |
| ARE YOU A U.S. CITIZEN? [X] YES ☐ NO | IF NOT A U.S. CITIZEN, YOUR RESIDENT STATUS | ☐ Resident | ☐ Non-Resident |

*I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

| SIGNATURE | DATE 6/19/12 |
|---|---|

### NOTARY PUBLIC ACKNOWLEDGMENT

State of _California_     County of _Los Angeles_

On _June 19, 2012_     before me _Eric Petersen/Notary Public_ personally

appeared _Jacqueline Ann Lira_ _____ who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> ERIC PETERSEN
> Commission # 1971078
> Notary Public - California
> Los Angeles County
> My Comm. Expires Mar 10, 2016

(seal)

**INFORMATION ABOUT FEDERAL TAX REPORTING:** The California Lottery (Lottery) is required by Internal Revenue Code Treasury Regulations, § 31.3402(q)-1 to withhold income on the proceeds of a single wager which exceeds $5,000. The withholding rate for income tax depends on your personal resident status. The Lottery is currently required to withhold federal taxes at the rate of 25% for a U.S. citizen and resident aliens; 30% for non-resident aliens, and 28% for U.S. citizens and resident aliens who do not have a Social Security Number.

**PRIVACY NOTICE:** The State Information Practices Act of 1977 (Civil Code § 1798.17) and the Federal Privacy Act (Public Law 93-579) require that this notice be provided when the Lottery collects personal information from individuals. Social Security numbers and birth dates are used for identification purposes only, except as required by state and federal law. Providing the requested information will prevent delays in receipt of annual prize payments.

The information you provide may be disclosed to state and federal government agencies including, but not limited to: the State Controller's Office, State Franchise Tax Board, Department of Health Services, and the Federal Internal Revenue Service.

You have the right to access your personal information maintained by the Lottery by contacting the California Lottery, 700 North 10th Street, Sacramento, CA 95811, Attention: Public Records Act Coordinator. ·

CSL 1270 (R05/11)                                          Event No. TV 570002-(-1     1476

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Elissa D. Miller, solely in her capacity as Chapter 7 Trustee | DEFENDANTS<br>Jacqueline Ann Lira aka Jacqueline Ann Girardi, an<br>individual |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Daniel A. Lev (CA Bar No. 129622)<br>    daniel.lev@gmlaw.com<br>**GREENSPOON MARDER LLP**<br>333 South Grand Avenue, Suite 3400<br>Los Angeles, California 90071-1406<br>Telephone: 213.626.2311<br>Facsimile: 954.771.9264 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☒ Trustee | ☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint to Avoid and Recover Fraudulent Conveyances (11 U.S.C. § 548)

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| FRBP 7001( 1) – Recovery of Money/Property | FRBP 7001(6) – Dischargeability (continued) |
|---|---|
| ☐ 11-Recovery of money/property - §542 turnover of property | ☐ 61 -Dischargeability- §523(a)(5 ), domestic support |
| ☐ 12-Recovery of money/property - §547 preference | ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury |
| ☒ 13-Recovery of money/property - §548 fraudulent transfer | ☐ 63-Dischargeability- §523(a)(8), student loan |
| ☐ 14-Recovery of money/property - other | ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation |
| | (other than domestic support) |
| **FRBP 7001 (2) – Validity, Priority or Extent of Lien** | ☐ 6 5 -Dischargeability - other |
| ☐ 21-Validity, priority or extent of lien or other interest in property | |
| | **FRBP 7001(7) – Injunctive Relief** |
| **FRBP 7001( 3) – Approval of Sale of Property** | ☐ 71 -Injunctive relief- imposition of stay |
| ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | ☐ 72-Injunctive relief - other |
| | |
| **FRBP 7001(4 ) – Objection/ Revocation of Discharge** | **FRBP 7001(8) Subordination of Claim or Interest** |
| ☐ 41-Objection/re vocation of discharge - §727(c),(d),(e) | ☐ 81 -Subordination of claim or interest |
| | |
| **FRBP 7001(5) – Revocation of Confirmation** | **FRBP 7001(9) Declaratory Judgment** |
| ☐ 51-Revocation of confirmation | ☒ 91 -Declaratory judgment |
| | |
| **FRBP 7001(6) – Dischargeability** | **FRBP 7001(10) Deter mi nation of Removed Act ion** |
| ☐ 6 6 -Dischargeability - §523(a)(1),(14),(14A) priority tax claims | ☐ 01 -Determination of removed claim or cause |
| ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, | |
| actual fraud | **Other** |
| ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | ☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.* |
| | ☐ 02-Other (e.g. other actions that would have been brought in state court |
| **(continued next column)** | if unrelated to bankruptcy case) |

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | ☒ Demand: $338,000 (approx.) |

Other Relief Sought
For interest and costs of suit.

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>GIRARDI KEESE | BANKRUPTCY CASE NO.<br>2:20-bk-21022-BR | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Barry Russell |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ *Daniel A. Lev* | | |
| DATE<br><br>January 9, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Daniel A. Lev | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.