Elissa D. Miller
  elissa.miller@gmlaw.com
333 South Grand Ave., Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 954.771.9264

Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>GIRARDI KEESE,<br><br>      Debtor. | Case No. 2:20-bk-21022-BR<br><br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S STATUS REPORT, ANALYSIS OF USES AND SOURCES OF CASH AND FUNDS ON HAND; APPROVAL OF FIRST INTERIM APPLICATIONS OF ESTATE PROFESSIONALS**<br><br>Date:   March 7, 2023<br>Time:  10:00 a.m.<br>Ctrm.:  1668 via ZoomGov<br>         255 E. Temple Street<br>         Los Angeles, CA 90012) |

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

     I, Elissa D. Miller, the Chapter 7 Trustee for the Bankruptcy Estate of Girardi Keese, hereby submits this Status Report. Towards the end of the Status Report, I will address the amount of cash I have collected during the course of this case, the use of the cash and the remaining balance, including the portion which is not cash collateral but from avoidance action recoveries and my approval of and proposal re the payment of my allowed Professionals fees and costs.

EDM 53185073v1

# I.

# **BRIEF OVERVIEW**

This has been an interesting, difficult, complex and sad case.  It is the case of a law firm that, despite what was believed to be a stellar reputation, over the past years routinely and systematically failed to pay its clients the funds it received in settlement of their claims.  It is a case where the State Bar of California recently admitted that it had received over 205 complaints over the last 40 years and did nothing.  It is a case where to date, Thomas V. Girardi ("Girardi") and his son-in-law David Lira, along with the firm's chief financial officer, Christopher Kamon, have been indicted for stealing money, and it is a case where a law firm was in complete and total disarray due to evidence of years of lack of management.

It is against this backdrop that I have administered this case putting the victim clients first.  Most of my energy for the first two years of this case has been in transitioning active cases, protecting the clients and the recovery of attorney's fees coupled with some litigation.

While the transitioning of open client files has mostly been completed, we are still collecting quantum meruit fees and the bulk of the litigation has just been commenced.

# II.

# **FACTUAL BACKGROUND**

**A.    The Debtor's Involuntary Bankruptcy Case**

Pre-petition, the Debtor was a plaintiff's law firm based in Los Angeles, California. On December 18, 2020, petitioning creditors Jill O'Callahan, as successor in interest to James O'Callahan, Robert M. Keese, John Abassian, Erika Saldana, Virginia Antonio, and Kimberly Archie (collectively, the "Petitioning Creditors") filed an involuntary

chapter 7 bankruptcy petition against the Debtor.[1]  Prior to the involuntary petition, the Debtor practiced in the areas of personal injury, defective products, sexual abuse, toxic torts, business law, employment law, and aviation law.  The Debtor was well known in the national mass torts community representing clients in mass tort cases around the country.  One or more of Debtor's attorneys would often participate on the mass tort case leadership teams.

With a few minor exceptions, all of the Debtor's cases were handled on a contingency basis with different percentages based on the case, the client and the number of clients the Debtor represented in any one case.  There was no rule of thumb.  In addition, the Debtor was co-counsel on some cases and had referring attorneys to whom it had promised a percentage of the recovery on others.  Sometimes the referral fee was documented in a retainer agreement or otherwise in accordance with California law, and other times there was simply no documentation or at least not signed by the client.

On December 24, 2020, the Petitioning Creditors filed a *Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g)* [Docket No. 12].  The Court entered an order granting the motion on January 5, 2021 [Docket No. 45].  On January 6, 2021, I was appointed as the interim trustee [Docket No. 50].

On January 13, 2021, the Court entered an *Order Directing: (1) The Clerk of Court to Immediately Enter an Order for Relief under Chapter 7; (2) The United States Trustee to Immediately Appoint a Chapter 7 Trustee; (3) The Debtor to File All Schedules and Related Documentation for Chapter 7 Case within Fourteen Days of the Entry of this Order; and (4) Vacating February 16, 2021 Status Conference* [Docket No. 68].  On January 13, 2021, the Clerk of Court entered an order for relief against the Debtor

---

[1] The Petitioning Creditors also filed an involuntary chapter 7 bankruptcy petition against Thomas V. Girardi ("Girardi"), which is currently pending as Bankruptcy Case No. 2:20-bk-21020-BR.

[Docket No. 69], and I was appointed and accepted the appointment in the Debtor's case [Docket No. 71].

**B.    The Debtor's Primary Assets**

At the time the involuntary petition was filed against the Debtor, the Debtor was counsel of record in a significant number of cases which had been undertaken on a contingency basis. Prior to the involuntary petition date, many of the Debtor's employees and attorneys had resigned.

The Debtor was counsel of record in a number of cases referred to as "Mass Tort Cases," where the Debtor represented between dozens to hundreds of clients in cases concerning similar injuries resulting from a general set of facts or circumstances against the same group of defendants and in one particular instance, the Southern California Gas Leak Litigation ("Porter Ranch"), the Debtor had 8,202 client cases. In addition, the Debtor was counsel of record in a number of cases where the Debtor represented one or more plaintiffs in more discrete actions (the "Discrete Cases"). The Debtor did not have any active class action cases.

All of the cases were at varying litigation stages. Many cases were pending and still in the midst of active litigation. Some cases were resolved in principal but with outstanding ministerial and/or other tasks that had to be addressed before the settlement could be finalized and the settlement funds released. There were a few settled cases that were waiting on instructions as to where to send the settlement funds. In addition, there were cases where the Debtor had been substituted out pre-petition leaving the Debtor with a quantum meruit claim for its fees and a claim for the recovery of its costs. Without former staff and attorneys, I was faced with the challenge of establishing the Estate's rights to fees and costs and collecting on such fees and costs from the Debtor's contingency cases.

The Debtor's fees and costs in its plethora of cases constitute one of the most significant assets in the Estate. Protecting and preserving the Debtor's and clients' interests in these cases was and continues to be of paramount importance to me and my

support team.  It has required a support team for the maintenance of the Debtor's computer systems and access to the Debtor's physical files and data. The need for these systems continue.

### C. State of the Debtor's Office and My Move to Pasadena

Following my appointment through the end of 2021, The Debtor continued to use the offices at 1122 and 1126 Wilshire Blvd mostly as storage facilities for years of closed and duplicative client files, old records, discarded electronics and boxes and boxes of marketing materials prominently featuring Girardi.  I previously reported about the state in which I found the offices.

From the time of my appointment through December, 31, 2022, my field agent and staff and I, following entry of appropriate orders of this Court, disposed of trash and unneeded paper and other records, transitioned files to new counsel, and worked with auctioneers to sell most if not all of the personal property of any value.  In late 2021, we vacated the 1122 Wilshire Building and sold the furnishings to the buyer, and moved all of the remaining files and personal property into the 1126 Wilshire building.

By the end of 2022, I had auctioned the personal property in the 1126 Building, and consolidated all of the data and files so that it made financial sense to place the remaining files, including financial files, into an off-site storage facility and to vacate the 1126 Wilshire Building.  Pursuant to court order, we entered into a lease of a single full-service office in Pasadena where we also moved the computers, and also entered into an offsite storage agreement.  By doing so, I reduced the estate's overhead.

## III.

## ACTIONS SINCE MY APPOINTMENT

### A. General Post-Appointment Matters

As previously reported, upon my appointment, I took control of all bank accounts, including IOLTA and blocked minor's accounts.  I learned that the Debtor carried only health insurance for its employees, which had been canceled pre-petition due to nonpayment and certain automobile insurance. The Debtor did not maintain malpractice

or liability insurance.  Therefore, I obtained and continue to maintain liability and contents insurance to protect the Estate.

I worked with the 401k plan administrator to close out the plan and return all of the employees money to them.  Fortunately, it was the one trust account which had not been looted.

One of my first tasks was to retain IDS, a digital security consulting firm, to image the servers and hard drives of the Debtor's computers (Servers and others). Since my appointment, with the assistance of Debtor's former IT manager, I have been able to keep the computers running so that we can access all of the data, provide the files to attorneys who have taken over the cases and access the financial information necessary to prepare schedules and schedules of other financial data internally pursuant to appropriate requests by third parties.  I have reviewed software licenses as necessary so that we did not lose access to any critical data.

### B.     Retention of Professionals

In this case, I have retained three law firms as well as financial and other professionals.  I closely monitor all of my professionals including conducting a once a month all hands meeting.  In this manner, and through frequent email and telephone communications, I insure that there is no duplication of services between the professionals.

The professionals I retained and the services they performed and their compensation arrangements are as follows:

1) General Counsel – Smiley Wang Ekvall ("SWE").  SWE handles all legal matters in this case other than those specifically handled by my special counsel.  SWE is retained on an hourly basis.

2) Special Litigation Counsel - Larry Gabriel ("LG") – Special litigation counsel to deal with Erika and the Lenders.  LG is employed pursuant to a hybrid fee and contingency.

3) Special Avoidance Action Litigation Counsel – **Sulmeyer**Kupetz ("SK") and Greenspoon Marder[2] ("GM").  SK/GM is the firm of which the Trustee is a member. SK/GM is employed pursuant to a hybrid fee and contingency basis as my special avoidance action counsel.

4) Forensic Computer Specialist – Intelligent Discovery Solutions ("IDS") – IDS is employed on an hourly basis.  IDS imaged all of the Debtor's computer immediately following my initial appointment and continues to act in a consulting role.

5) Forensic Team - Development Specialists, Inc. ("DSI") – DSI is my financial forensic team/expert who has provided all financial analysis in this case, assisted with the preparation of the Schedules and provides support for the litigators and information to third parties.  DSI is employed on an hourly basis.

6) Tax Accountant – Menchaca & Company, LLC – Menchaca is employed on an hourly basis.

7) Claims and Noticing Agent – Donlin Recano ("DR").  DR also assisted in the preparation of the schedules.  The Order approved two agreements between me and DR.  Pursuant to the Standard Claims Agreement, I pay DR's expenses monthly, the fees incurred are to be paid as a costs of administration without fee application.  The Court also approved a Consulting Agreement.  DR bills hourly.

**C.   Claims**

In 2021, I filed and served a motion to set a Claims Bar Date and Approve the Form of Notice.  Upon approval I noticed over 10,000 creditors and former clients.

To date, 684 claims were filed for the total amount of $500,881,512.21.  Of this amount $96,158,135.04 of claims were filed as secured and $83,388,078.83 were filed as priority.  In addition, claims continue to be filed as creditors who did not receive notice

---

[2] SK closed effective June 30, 2022 and the Trustee and most of her partners joined the firm of GM effective as of July 1, 2022.

EDM 53185073v1                                             8

due to changes of address from what my team could find in the Debtor's records, are authorized to file claims.[3]

Although I have not yet vetted the claims, I do know for example that the secured claims include duplicates and an already avoided secured claim. For example, the Ruigomez family holds one judgment. Yet, each family member filed their own claim in the amount of approximately $13.4 million, resulting in docketed claims of over $40 million. (Claims #23-3 through 25-4). Of course, each family member is entitled to assert his or her own claim until the total $13.4 million is paid but for purposes of estimating the total amount of secured claims, the total should be reduced by $27 million. The secured claims also include a $7.8 million secured claim filed by KCC, a claims administration agent. KCC has already stipulated to avoid its lien in Adversary No. 2:23-ap-01019-BR which stipulation was approved by order of this Court. This too reduces the amount of secured claims.

I suspect that once vetted, the Secured Claims will be reduced by another $64,266,356.27 as a number of claims were filed as secured, which are not and others received some payment from the Girardi Trustee. In other words, I estimate that secured claims will ultimately total somewhere closer to $30 – $ 35 million, if that much.

**D.    Operations**

I have operated the estate continuously since appointment pursuant to Orders authorizing operations and use of cash collateral. As has been noted in prior court filings, period after period, I have operated under budget.

Initially my staff included my field agent, the Debtor's former IT manager and three other former employees. Over time, I reduced my staffing needs so that at this point, my staff includes my field agent, the it manager on an as needed basis (particularly during the move), and a former attorney who assists in researching cases so that I my attorneys

---

[3] I continue to receive calls from former clients and others who are only now learning of the bankruptcy.

EDM 53185073v1                                        9

have the information necessary to negotiate quantum meruit fees and other matters also solely on an as needed basis.  My field agent is the go to person for collecting data from the computer system by my professionals and to comply with requests from other attorneys, the state bar and governmental agencies.

Also as previously noted, I have now moved from the two Wilshire office buildings to a single office and offsite storage.

### E.    Recoveries and Distributions to date

To date, I have recovered approximately  $18.9 million in fees and in other collections.  Included in this amount is approximately $1.5 million in avoidance recoveries as will be discussed in more detail below; funds from the sale of personal property from the 1122 and 1126 Building at auction and from the sale of personal Property from the 1122 building, the close out of general bank accounts and miscellaneous other payments including the recovery of $750,000 in costs from the Porter Ranch Litigation Common Fund.

I am also holding approximately $390,000 in funds from closed IOLTA accounts and accounts denominated client accounts.  In addition to what I have in my estate accounts, I am also overseeing approximately $1.9 million in minors blocked accounts at two separate banks, and approximately $1 million in IOLTA accounts at three banks.  With the assistance of my forensic team we have tried to identify the source of the funds in the IOLTA accounts.  However, with the exception of one account in the amount of approximately $496,000, where the funds were deposited shortly before the bankruptcy was filed, the accounts are old and the funds cannot be traced to any particular case.  My Trustee Bond currently covers all funds both in my possession and in the accounts I oversee.

Thus, in the next few months I will be filing motions to 1) Interplead the funds in the one IOLTA where we have identified the source and the client, as the medical and other liens against the account and the client's demands exceed the amount in the account; 2) close all IOLTA accounts, both with respect to funds I am holding and those

under my control and depositing all funds in my general accounts; and 3) relieving me of any responsibility with respect to the Minor's blocked accounts.

Against these recoveries, I have paid out of my accounts approximately $7,115,000 as follows:

| | |
|---|---|
| Chapter 7 Admin Fees (Bond Payments, Operating expenses, etc. no payments to retained professionals) | $817,782.97 |
| Professional Fees and Expenses (includes $10,000 expense deposit, Auctioneer fees and mediator fees all authorized by court order. No payments to retained professionals) | $189,820.00 |
| Secured Claims (To California Attorney Lending II per order) | $4,105,735.90 |
| Funds Paid to Clients | $2,001,707.49 |

I have also facilitated the distribution to clients of not less than a net $17 million through stipulations and agreements, all as has been approved by the Court. Finally, in connection with my negotiation of quantum meruit fees, I agreed to the release of millions of dollars to former clients so that the clients would not be further harmed by any dispute over fees.

## IV.

## CURRENT STATUS OF CASE

### A. Collection of Fees and Costs

At this time, I continue to collect quantum meruit and other fees and costs. This is an ongoing process and will likely continue for many years. The largest outstanding fee due is the fee from the Porter Ranch litigation. That matter has settled and I have been advised that I should receive the estate's portion of the attorney's fees at the same time funds are distributed to clients which is estimated to be by the end of March, 2023. To the extent I have more information as to the date of distribution and the estimated amount, I will update the Court at the March 7, 2023 hearing.

### B. Litigation other than Avoidance Actions

Litigation other than avoidance actions falls into three buckets; 1) Litigation against the ACTS Law Firm arising in connection with Porter Ranch and their attempts to take all of the Debtor's client's pre-petition and the Exide Litigation over $1.8 million in fees; and 2) Claims against the lenders; and 3) Claims against Erika. All of these matters are ongoing and all seek the recovery of monies or the avoidance of liens.

### C. Avoidance Actions

In late December 2022, early January 2023, I filed a total of 108 Avoidance Actions. To date, one has been dismissed pursuant to stipulation, four have settled (one by stipulation and order already entered) and I am in settlement discussions in several others. Motions to approve settlements will be filed as soon as the settlements are documented. Answers and/or stipulations to continue dates have been filed in approximately 78 cases, leaving approximately 25 for which we have no response to date. Status conferences in these cases are set for March and April, 2023.

## V.
## APPROVAL OF PROFESSIONALS FEES AND PROPOSAL RE PAYMENT

Set for hearing on March 7, 2023, are the Applications for Interim Compensation and Reimbursement of Expenses filed by all of my professionals. I have reviewed each of the applications carefully and have no objection to the allowance of any of the fees and costs sought. My team has been responsive and their work has been excellent.

With regard to payment, however, and while ultimately I believe that I could surcharge one or more of the lenders for fees incurred, I have not yet done so. Thus, I do not have sufficient cash, which is not cash collateral, to pay my professionals' fees and costs in full. Rather, I intend to use the $1,564,346.28 in my Avoidance Action

account to make the payments.[4]  Therefore, I have discussed the following proposed payment schedule with my professionals from SWE, GM, LG and DSI and all are in agreement.  Therefore, I propose making payments as follows:

| Firm | Fees | Costs | Proposed Treatment | Funds Remaining[5] |
|---|---|---|---|---|
| IDS | $22,218.50 | $5,517.42 | pay in full | $1,536.610.36 |
| DR | $18,807.00 | | pay in full | $1,517,803.36 |
| Menchaca | $32,562.00 | $150.32 | pay in full | $1,485,091.04 |
| LG[6] | $165,946.71 | $2,137.27 | pay in full – contingency from sale of earrings | $1,385,091.04 |
| SK | $43,997.50 | $215.47 | pay costs in full, fees pro rata | 1,384,875.57 |
| GM | $79,314.00 | $51.54 | pay costs in full, fees pro rata | 1,384,824.03 |
| DSI | $1,081,297.00 | $514.51 | pay costs in full, fees pro rata | 1,384,309.52 |
| SWE | $2,850,387.50 | $48,944.07 | pay costs in full, fees pro rata | 1,335,365.45 |
| | $4,294,530.21 | $52,013.18 | | |

In addition to the administrative fees and costs for the professionals, there are two other administrative claims.  One is the allowed administrative rent claim of $130,000 due

---

[4] This funds in this account are from the following:  1) Recovery from settlement of fraudulent conveyed airplanes  $520,230.35;  2) Voluntary turnover by Kamon of funds used to purchase Porche $121,494.23; 3) Voluntary full restitution from Girardi friend of funds subject to avoidance- $461,000.00;4) net auction proceeds from Erika's earrings and friend's jewelry $256,542.00; and 5) the recovery of Stillwell Madison amounts attached during the preference period - $236,542.00.

[5] The Funds remaining after payment of SK, GM, DSI and SWE are net of costs only.

[6] See, Footnote, No. 4.  LG is entitled to a contingency fee based on recovery and sale of earrings and Madison Stillwell monies..  In addition, LG costs were deducted from $10,000 cost advance and, therefore, have not been deducted herein.

to the Wilshire Parties pursuant to the Order entered on August 10, 2022 [Dkt. No. 1313] and the other is the administrative portion of DR's claim pursuant to their Standard Claims agreement. [Dkt. No. 500]. Through December, 2022, the total due to DR on that agreement is $130,420.20.

Thus, I anticipate that if all fees are approved and paid as requested above, I will have $1,269,418.74 to pay to fees of SK/GM, DSI and SWE and the Wilshire Parties and DR administrative claims. This equates to a pro rata distribution of approximately 29%.

Therefore, at this time, I request authority to pay the professionals as allowed and proposed and the Wilshire Parties and DR claims as proposed. I further request authority to pay the allowed fees and claims, pro rata as I continue to settle and recover funds from my avoidance actions.

## VI.

## CONCLUSION

I will be present at the hearing on March 7, 2023 to respond to any questions or concerns which the Court may have.

At this time, based on the foregoing, I respectfully request that the Court approve the allowance and payment of fees as proposed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing Status Report which was prepared by me is true and correct.

Executed this 14th day of February, 2023 at Los Angeles, CA

/s/ *Elissa D. Miller*
Elissa D. Miller

EDM 53185073v1

14

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S STATUS REPORT, ANALYSIS OF USES AND SOURCES OF CASH AND FUNDS ON HAND; APPROVAL OF FIRST INTERIM APPLICATIONS OF ESTATE PROFESSIONALS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 14, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**See Attached ECF List**

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) February 14, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 14, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**See Attached List**

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 14, 2023 | Cheryl Caldwell | /s/Cheryl Caldwell |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 52398572v1  This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    F 9013-3.1.PROOF.SERVICE

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. <u>**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u>

- **Kyra E Andrassy**  kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Rafey Balabanian**  rbalabanian@edelson.com, docket@edelson.com;5926930420@filings.docketbird.com
- **Michelle Balady**  mb@bedfordlg.com, leo@bedfordlg.com
- **Reem J Bello**  rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Kate Benveniste**  kate.benveniste@us.dlapiper.com, dlaphx@us.dlapiper.com
- **Ori S Blumenfeld**  oblumenfeld@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com
- **Evan C Borges**  eborges@ggtriallaw.com, cwinsten@ggtriallaw.com
- **William E Brueckner**  wbrueckner@woodsoviatt.com
- **Richard D Buckley**  richard.buckley@arentfox.com
- **Steve Burnell**  Steve.Burnell@gmlaw.com, sburnell@ecf.courtdrive.com;sburnell@ecf.inforuptcy.com;cheryl.caldwell@gmlaw.com;denise.walker@gmlaw.com
- **Glenn Ward Calsada**  glenn@calsadalaw.com, lnw@calsadalaw.com;glenncalsada@gmail.com,niko@calsadalaw.com,lauren@calsadalaw.com,pat@calsadalaw.com
- **Indira J. Cameron-Banks**  indira@cameronjones.law, tiffany@cameronbankslaw.com
- **Michael F Chekian**  mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Marie E Christiansen**  mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-4166@ecf.pacerpro.com
- **Baruch C Cohen**  bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Jennifer Witherell Crastz**  jcrastz@hrhlaw.com
- **Christopher D Crowell**  ccrowell@hrhlaw.com
- **Ashleigh A Danker**  adanker731@gmail.com
- **Lei Lei Wang Ekvall - DECEASED -**  lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Richard W Esterkin**  richard.esterkin@morganlewis.com
- **Oscar Estrada**  oestrada@ttc.lacounty.gov
- **Timothy W Evanston**  tevanston@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- **Jeremy Faith**  Jeremy@MarguliesFaithlaw.com, Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- **James J Finsten**   , jimfinsten@hotmail.com
- **James J Finsten**  jfinsten@lurie-zepeda.com, jimfinsten@hotmail.com
- **Alan W Forsley**  alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com
- **Larry W Gabriel**  lgabrielaw@outlook.com, tinadow17@gmail.com
- **James B Glucksman**  jbg@dhclegal.com
- **Robert P Goe**  kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Eric D Goldberg**  eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Rosendo Gonzalez**  rossgonzalez@gonzalezplc.com, rgonzalez@ecf.axosfs.com;jzavala@gonzalezplc.com;zig@gonzalezplc.com;gig@gonzalezplc.com
- **Andrew Goodman**  agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com
- **Suzanne C Grandt**  suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov
- **Steven T Gubner**  sgubner@bg.law, ecf@bg.law
- **Asa S Hami**  asa.hami@gmlaw.com, ahami@ecf.courtdrive.com;patricia.dillamar@gmlaw.com;pdillamar@ecf.courtdrive.com
- **Stella A Havkin**  stella@havkinandshrago.com, shavkinesq@gmail.com
- **James Andrew Hinds**  jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com
- **Marshall J Hogan**  mhogan@swlaw.com, knestuk@swlaw.com
- **Bradford G Hughes**  bhughes@Clarkhill.com, mdelosreyes@clarkhill.com
- **Sheryl K Ith**  sith@cookseylaw.com
- **Razmig Izakelian**  razmigizakelian@quinnemanuel.com
- **Lillian Jordan**  nefrecipients@donlinrecano.com, RMAPA@DONLINRECANO.COM

CC 52398572v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*  **F 9013-3.1.PROOF.SERVICE**

- **Michael S Kogan**   mkogan@koganlawfirm.com
- **Kenneth A Kotarski**   KKOTARSKI@HAMRICKLAW.COM, hmartindale@HAMRICKLAW.COM;pliscano@hamricklaw.com;gknopfler@hamricklaw.com;khearn@hamricklaw.com;secretary2@hamricklaw.com;sjustice@hamricklaw.com;jpoole@hamricklaw.com
- **Lewis R Landau**   Lew@Landaunet.com
- **Daniel A Lev**   daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Marc A Lieberman**   marc.lieberman@flpllp.com, safa.saleem@flpllp.com
- **Elizabeth A Lombard**   elombard@zwickerpc.com, bknotices@zwickerpc.com
- **Kathleen P March**   kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Craig G Margulies**   Craig@MarguliesFaithlaw.com, Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- **Ron Maroko**   ron.maroko@usdoj.gov
- **Damian J. Martinez**   damian.martinez@aalrr.com, julissa.ruiz@aalrr.com
- **Peter J Mastan**   peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
- **Edith R. Matthai**   ematthai@romalaw.com, lrobie@romalaw.com
- **Daniel J McCarthy**   dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;nchacon@hfbllp.com
- **Dennis E McGoldrick**   dmcgoldricklaw@yahoo.com, demcg@demcg.com
- **Elissa Miller (TR)**   CA71@ecfcbis.com, MillerTrustee@gmlaw.com;C124@ecfcbis.com;cheryl.caldwell@gmlaw.com;cheryl.caldwell@ecf.courtdrive.com
- **Eric A Mitnick**   MitnickLaw@gmail.com, mitnicklaw@gmail.com
- **Byron Z Moldo**   bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Kevin H Morse**   kmorse@clarkhill.com, blambert@clarkhill.com
- **Gilbert M Nishimura**   gnishimura@snw-law.com, schin@snw-law.com;sgalindo@snw-law.com;ffilimona@snw-law.com
- **Scott Olson**   scott.olson@bclplaw.com, scott-olson-2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- **Aram Ordubegian**   ordubegian.aram@arentfox.com
- **Carmela Pagay**   ctp@lnbyb.com
- **Carmela Pagay**   ctp@lnbyg.com
- **Leonard Pena**   lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com
- **Matthew D Pham**   mpham@allenmatkins.com, mdiaz@allenmatkins.com
- **Michael J Quinn**   mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-2870@ecf.pacerpro.com,ahirschkowitz@vedderprice.com
- **Ronald N Richards**   ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Kevin C Ronk**   Kevin@portilloronk.com, Attorneys@portilloronk.com
- **Brian M Rothschild**   brothschild@parsonsbehle.com, usclawyer@yahoo.com;ecf@parsonsbehle.com
- **Frank X Ruggier**   frank@ruggierlaw.com, enotice@pricelawgroup.com
- **William F Savino**   wsavino@woodsoviatt.com, lherald@woodsoviatt.com
- **Scott A Schiff**   sas@soukup-schiff.com
- **Kenneth John Shaffer**   johnshaffer@quinnemanuel.com
- **Amir Shakoorian**   AShakoorian@GGTrialLaw.com
- **Summer M Shaw**   ss@shaw.law, shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com
- **Anastasija Olegovna Snicarenko**   asnicarenko@flyxo.com, jennifer@cypressllp.com
- **Richard M Steingard**   , awong@steingardlaw.com
- **Annie Y Stoops**   annie.stoops@afslaw.com, yvonne.li@arentfox.com
- **Philip E Strok**   pstrok@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- **Jeffrey L Sumpter**   jsumpter1@cox.net
- **Terrence Swinson**   terrenceswinson@gmail.com
- **Tamar Terzian**   tamar@terzlaw.com, ecfnotices@eppscoulson.com
- **Boris Treyzon**   btreyzon@actslaw.com, pjs@actslaw.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Diane C Weil**   dcweil@dcweillaw.com, diane.c.weil@Gmail.com,dweil@ecf.inforuptcy.com,jfiser@dcweillaw.com
- **Andrew D. Weiss**   oclawadw@aol.com
- **Pauline White**   pauline@paulinewhite.com

CC 52398572v1  This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                         **F 9013-3.1.PROOF.SERVICE**

- **Eric D Winston**     ericwinston@quinnemanuel.com
- **Christopher K.S. Wong**    christopher.wong@afslaw.com, yvonne.li@arentfox.com
- **Robert M Yaspan**     court@yaspanlaw.com, tmenachian@yaspanlaw.com
- **Timothy J Yoo**    tjy@lnbyb.com
- **Isaac R Zfaty**    izfaty@muchlaw.com
- **David B Zolkin**    dzolkin@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com
- **Joshua del Castillo**    jdelcastillo@allenmatkins.com, mdiaz@allenmatkins.com

## 2. SERVED BY UNITED STATES MAIL

Debtor
Girardi Keese
1126 Wilshire Blvd
Los Angeles, CA 90017-1904

Secured Creditors

CORPORATION SERVICE COMPANY
801 Adlai Stevenson Dr
Springfield IL 62703-4261

IKON FINANCIAL SERVICES
1738 Bass Road
Macon GA 31210-1043

LAW FINANCE GROUP, LLC
591 Redwood Hwy, Suite 1200
Mill Valley CA 94941

LFG SPECIAL INVESTOR GROUP, LLC
Series Law Finance Group Fund III
200 South Virginia Street, , 8TH Fl
Reno NV 89501

TSO LFG HOLDCO LLP
65 East 55TH Street, 27TH Floor
New York NY 10022

## 3. Served Via Email

Secured Creditor
NANO BANC
25220 Hancock Avenue, Suite 140
Murrieta CA 95262
Attorneys for Nano Bank:
Jeffrey M. Schwartz   jschwartz@muchlaw.com

Request for Special Notice
Chester A. Thompson III, CEO
CT3Media, Inc.
26080 Shadow Rock Lane
Valencia, CA 91381
chet@ct3media.com

CC 52398572v1  This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                           **F 9013-3.1.PROOF.SERVICE**