**SMILEY WANG-EKVALL, LLP**
Philip E. Strok, State Bar No. 169296
*pstrok@swelawfirm.com*
Kyra E. Andrassy, State Bar No. 207959
kandrassy@swelawfirm.com
Timothy W. Evanston, State Bar No. 319342
*tevanston@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:   714 445-1000
Facsimile:   714 445-1002

Attorneys for Elissa D. Miller, Chapter 7
Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:20-bk-21022-BR |
| GIRARDI KEESE, | Chapter 7 |
| Debtor. | **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER APPROVING COMPROMISE WITH JASON M. RUND, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF THOMAS V. GIRARDI, CALIFORNIA ATTORNEY LENDING II, INC., AND COUNSEL FINANCIAL SERVICES, LLC, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ELISSA D. MILLER IN SUPPORT** |
| | Date:     April 18, 2023<br>Time:     10:00 a.m.<br>Ctrm.:     1668<br>            255 E. Temple Street<br>            Los Angeles, California 90012 |

2936742.3                                                1                                                MOTION

1

## TABLE OF CONTENTS

2

**Page**

3   I.    INTRODUCTION ..................................................................... 2

4   II.   BACKGROUND ..................................................................... 4

5         A.    The Debtor's Bankruptcy Case ....................................... 4

6         B.    Thomas Girardi's Bankruptcy Case................................ 4

7         C.    Issues and Disputes Concerning Kelco Properties, LLC ............................ 5

8         D.    The Secured Claims of the Ruigomez Creditors and CAL II in the
                TVG Bankruptcy Case.................................................. 6
9

10        E.    The Secured Claim of CAL II in the Debtor's Case and the CAL II
                Adversary Action ......................................................... 7

11        F.    CAL II's Payment Request to the GK Trustee and TVG Trustee.................. 8

12        G.    The Settlement Agreement .............................................. 8

13  III.  MEMORANDUM OF POINTS AND AUTHORITIES ............................ 11

14        A.    The Court Can Approve the Settlement Agreement.................................. 11

15        B.    The Settlement Agreement is Fair and Reasonable................................. 12

16              1.    The Probability of Success in the Litigation is Uncertain and
                      the Disputes are Complex ............................................ 12
17

18              2.    Litigation Will be Expensive and Further Delay Administration
                      of the GK Bankruptcy Estate ........................................ 14

19              3.    The Settlement Agreement is Reasonable and its Effect on
                      the Administration of the GK Estate is in the Best Interest of
20                    All Creditors ............................................................. 15

21        C.    The Court Should Authorize Payment of the 20% Success Fee to
                Greenspoon as Previously Approved by the Court. ............................ 17
22

23  IV.   CONCLUSION .................................................................... 19

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Delta Star, Inc. v. H.K. Porter Co., Inc. (In re H.K. Porter Co., Inc.),*
    183 B.R. 96 (Bankr. W.D. Pa. 1995) ....................................................................18

*In re America West Airlines, Inc.,*
    214 B.R. 382 (Bankr. D. Ariz. 1997).....................................................................12

*In re Hermitage Inn, Inc.,*
    66 B.R. 71 (Bankr. D. Colo. 1986) .......................................................................11

*In re Mickey Thompson Entm't Grp., Inc.,*
    292 B.R. 415 (B.A.P. 9th Cir. 2003) .....................................................................11

*In re Olson,*
    2006 WL 2433448 (Bankr. D. Idaho July 24, 2006) .............................................18

*In re Schmitt,*
    215 B.R. 417 (B.A.P. 9th Cir. 1997) .....................................................................11

*In re World Health Alt., Inc.,*
    344 B.R. 291 (Bankr. D. Del. 2006) ......................................................................11

*Martin v. Kane (In re A & C Properties),*
    784 F.2d 1377 (9th Cir. 1986)...............................................................................11

## **STATUTES**

11 U.S.C. § 105(a).......................................................................................................18

11 U.S.C. § 303(g).........................................................................................................4

11 U.S.C. § 328(a).......................................................................................................18

11 U.S.C. § 330(a).......................................................................................................18

Fed. R. Bankr. P. 9019 .........................................................................................2, 6, 7

Fed. R. Bankr. P. 9019(a)............................................................................................11

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

Elissa D. Miller, the chapter 7 trustee (the "GK Trustee") for the bankruptcy estate of Girardi Keese (the "Debtor"), submits this *Chapter 7 Trustee's Motion for Order Approving Compromise with Jason M. Rund, Chapter 7 Trustee for the Bankruptcy Estate of Thomas V. Girardi, California Attorney Lending II, Inc., and Counsel Financial Services, LLC, Pursuant to Federal Rule of Bankruptcy Procedure 9019* ("Motion").  In support of the Motion, the GK Trustee submits the following memorandum of points and authorities and the attached declaration of Elissa D. Miller.

## I.    INTRODUCTION

The Court should approve the GK Trustee's settlement agreement with Jason M. Rund (the "TVG Trustee"), California Attorney Lending II, Inc. ("CAL II") and Counsel Financial Services, LLC ("CFS").  As the Debtor's case has progressed, certain issues have occasionally arisen where the bankruptcy estates of the Debtor and Thomas V. Girardi hold competing interests.  Fortunately, both the GK Trustee and the TVG Trustee have been able to resolve these issues as they arise.  The instant Motion represents both of the trustees' continued cooperation resolving claims common to both their estates so as to avoid unnecessary litigation.

Recently, the sale of certain real property and distribution from Kelco (defined below) of a portion of the sale proceeds to the TVG Trustee on account of a 45% membership interest in Kelco has resulted in a recovery of $8,115,666.51.  Both the GK Trustee and the TVG Trustee assert that the 45% membership interest in Kelco is property of their respective bankruptcy estates.  This dispute however, implicates other controversies.  The GK Trustee filed a complaint against Kelco for the recovery of $160,000.00 in avoidable transfers.  CAL II has also asserted that it has a lien on and should be paid in full from the distribution proceeds, but both the GK Trustee and TVG Trustee contest the amount that CAL II asserts is owed to it.  Specifically, the trustees object to the amount of attorneys' fees CAL II includes in its payoff request.  In addition,

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 ♦ Fax 714 445-1002

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  because CAL II is requesting payment of its claim in full, the GK Trustee's claims in a

2  separately filed adversary proceeding against CAL II and CFS are also intertwined and at

3  issue.  The settlement agreement untangles these issues by resolving the various

4  disputes among the parties.

5      The settlement agreement provides the GK bankruptcy estate with at least six key

6  benefits as it: (1) results in the GK Trustee's full recovery of $160,000.00 from the Kelco

7  Avoidance Action (defined below); (2) reduces CAL II's payoff request by $669,177.77;

8  (3) provides a general release by CAL II and CFS of claims against the bankruptcy

9  estates, which includes all claims by CAL II and CFS for attorneys' fees, including

10  attorneys' fees incurred in defending against third party litigation related to CAL II and

11  CFS's involvement with the Debtor and Thomas V. Girardi[1]; (4) streamlines the full and

12  complete satisfaction of CAL II's payoff request and claim; (5) prevents CFS from filing

13  further proofs of claim in the bankruptcy cases of the Debtor and Thomas V. Girardi; and

14  (6) pays down a significant portion of the claim of the Ruigomez Creditors (defined

15  below).

16      In short, the settlement agreement is fair and reasonable and in the best interest of

17  the GK bankruptcy estate.  The settlement agreement not only results in the full

18  satisfaction of CAL II's claim and a reduction in the amount due to the Ruigomez

19  Creditors as they too will receive a significant sum, it also avoids costly litigation and

20  either reduces or entirely eliminates the risks in the existing litigation by the GK Trustee

21  against CAL II and CFS.  Moreover, the settlement agreement avoids further delay and

22  paves the way forward for the GK Trustee to continue her progress in administering the

23  GK bankruptcy estate.  For these reasons, the settlement agreement should be

24  approved.

25

26

27

28

---

[1]    The release is not a release by or of CFS in its representative capacity with regard to Claim No. 72.
All of the parties rights to assert and/or object to the claim are preserved.

## II.    **BACKGROUND**

### A.    **The Debtor's Bankruptcy Case**

The Debtor is a plaintiff's law firm based in Los Angeles, California.  On December 18, 2020, petitioning creditors Jill O'Callahan, as successor in interest to James O'Callahan, Robert M. Keese, John Abassian, Erika Saldana, Virginia Antonio, and Kimberly Archie (collectively, the "Petitioning Creditors") filed an involuntary chapter 7 bankruptcy petition against the Debtor, commencing the instant case (the "GK Bankruptcy Case").  Prior to the involuntary petition, the Debtor practiced in the areas of personal injury, defective products, sexual abuse, toxic torts, business law, employment law, and aviation law.

On December 24, 2020, the Petitioning Creditors filed a *Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g)* [Docket No. 12].  The Court entered an order granting the motion on January 5, 2021 [Docket No. 45].  On January 6, 2021, the GK Trustee was appointed as the interim trustee [Docket No. 50].

On January 13, 2021, the Court entered an *Order Directing: (1) The Clerk of Court to Immediately Enter an Order for Relief under Chapter 7; (2) The United States Trustee to Immediately Appoint a Chapter 7 Trustee; (3) The Debtor to File All Schedules and Related Documentation for Chapter 7 Case within Fourteen Days of the Entry of this Order; and (4) Vacating February 16, 2021 Status Conference* [Docket No. 68].  On January 13, 2021, the Clerk of Court entered an order for relief against the Debtor [Docket No. 69], and the GK Trustee was appointed and accepted her appointment in the Debtor's case [Docket No. 71].

### B.    **Thomas Girardi's Bankruptcy Case**

Thomas V. Girardi ("TVG") was the former managing partner of Girardi Keese.  Also on December 18, 2020, the Petitioning Creditors filed an involuntary chapter 7 bankruptcy petition against TVG.  On January 5, 2021, the Court appointed the TVG Trustee as interim trustee.  The order for relief was entered in that case on January 13,

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2021, and the TVG Trustee was reappointed as chapter 7 trustee.  The case is currently pending before the Court as 2:20-bk-21020-BR (the "TVG Bankruptcy Case").

**C.    Issues and Disputes Concerning Kelco Properties, LLC**

Kelco Properties, LLC ("Kelco") is a California limited liability company formed on or about October 1, 2009.  Pre-petition, Kelco acquired certain unimproved real property consisting of approximately 54.8 acres of land in Riverside County, California (the "Kelco Property").  TVG holds a 45% interest in Kelco.  Although the 45% membership interest in Kelco is in the name of TVG, the Debtor is actually the party which paid approximately $4,160,000.00 to Kelco commencing in October 2009, presumably as capital contributions for TVG.  Of the total $4,160,000.00 the Debtor paid to Kelco, $160,000.00 (the "Fraudulent Transfers") was paid to Kelco during the 7-year period preceding the petition date of the GK Bankruptcy Case.  Accordingly, because it appears that the Debtor paid the capital contributions on behalf of TVG, the GK Trustee asserts that the Debtor should be considered the holder of the 45% membership interest in Kelco.[2]

On December 27, 2022, the GK Trustee filed a complaint against Kelco to avoid and recover the Fraudulent Transfers ($160,000.00) paid to Kelco by the Debtor, commencing adversary case 2:22-ap-01249-BR (the "Kelco Avoidance Action").  After commencing the Kelco Avoidance Action, the TVG Trustee advised the GK Trustee that a sale of the Kelco Property was imminent.  Therefore, the GK Trustee, TVG Trustee, and Kelco agreed to stay the Kelco Adversary Action for 180 days (subject to further extension).  The parties further agreed that if Kelco liquidated any of its assets during the stay of the Kelco Adversary Action, that Kelco would deliver and remit to the TVG Trustee the net sale proceeds representing the 45% membership in Kelco (the "Kelco Liquidation Proceeds").  The parties also agreed that the TVG Trustee would then remit $160,000.00 from the Kelco Liquidation Proceeds (the "Kelco Reserve") to the GK Trustee on account of the Fraudulent Transfers.  Finally, the parties agreed that the Kelco Avoidance Action

---

[2]    The TVG Trustee and the GK Trustee each filed a proof of claim in the other's case and agreed to defer the determination as to who owes what to whom until all assets have been collected by both.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  would be dismissed, with prejudice, within five business of the GK Trustee's receipt of the

2  Kelco Reserve.  The Court approved the stipulated agreement between the parties by

3  order entered on February 2, 2023.

4       The sale of the Kelco Property closed and on February 16, 2023, the TVG Trustee

5  received $8,115,666.51 of Kelco Liquidation Proceeds.  On February 21, 2023, the TVG

6  Trustee delivered and remitted $160,000.00 to the GK Trustee to fund the Kelco

7  Reserve.  The Kelco Avoidance Action was then dismissed with prejudice.

8  Consequently, the TVG Trustee is currently holding $7,995,666.51 in Kelco Liquidation

9  Proceeds and the GK Trustee is holding $160,000.00 in the Kelco Reserve.

10      **D.**     **The Secured Claims of the Ruigomez Creditors and CAL II in the TVG**

11         **Bankruptcy Case**

12       On March 12, 2021, the TVG Trustee filed his *Chapter 7 Trustee's Motion to*

13  *Approve Compromise under FRBP 9019* (the "TVG Ruigomez Compromise Motion").

14  Attached to the TVG Ruigomez Compromise Motion as Exhibit 7 is the Settlement

15  Agreement (the "TVG Ruigomez Settlement") entered into by and between the TVG

16  Trustee and Joseph Ruigomez, Kathleen Ruigomez and Jamie Ruigomez (the

17  "Ruigomez Creditors").  The TVG Ruigomez Compromise Motion was approved by order

18  of the Court entered April 20, 2021.

19       Under the TVG Ruigomez Settlement, (1) the Ruigomez Creditors have an

20  allowed claim in the amount of $11,747,245.95 as of the TVG Bankruptcy Case petition

21  date (the "TVG Ruigomez Claim") with a perfected security interest in all of TVG's

22  personal property and real property in Riverside and Los Angeles Counties that existed

23  on the petition date and a reservation of rights to seek post-petition interest, and (2) the

24  TVG Trustee and the Ruigomez Creditors mutually released claims.  The TVG Ruigomez

25  Settlement also contains a provision which sets forth the priority of distributions for the

26  Ruigomez Creditors' from the proceeds of collateral liquidated by the TVG Trustee.

27       On May 19, 2021, the TVG Trustee filed his *Chapter 7 Trustee's Motion to*

28  *Approve Compromise of Controversy under FRBP 9019 with California Attorney Lending*

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    *II* (the "TVG CAL II Compromise Motion").  Attached to the TVG CAL II Compromise

2    Motion as Exhibit 6 is the Settlement Agreement (the "TVG CAL II Settlement") entered

3    into by and between the TVG Trustee and CAL II.  The TVG CAL II Compromise Motion

4    was approved by order of the Court entered June 21, 2021.

5         Under the TVG CAL II settlement, (i) CAL II has an allowed claim in the amount of

6    $6,402,213.49 plus $97,548.29 in legal fees as of the TVG Bankruptcy Case petition date

7    (the "TVG CAL II Claim") with a perfected security interest in all of TVG's personal

8    property with the exception of cash and bank accounts and a reservation of rights to seek

9    post-petition interest, and (ii) the TVG Trustee and CAL II mutually released claims.  The

10   TVG CAL II Settlement also contains a provision which sets forth the priority of

11   distributions for CAL II's collateral that the TVG Trustee administers.

12        Accordingly, when the TVG Ruigomez Settlement and TVG CAL II Settlement are

13   read together, CAL II has a first priority lien position and the Ruigomez Creditors have a

14   second priority lien position as to the Kelco Liquidation Proceeds currently held by the

15   TVG Trustee in the TVG bankruptcy estate.

16   **E.**      **The Secured Claim of CAL II in the Debtor's Case and the CAL II**

17            **Adversary Action**

18        On May 11, 2021, the GK Trustee filed her *Motion for Order Approving*

19   *Compromise with California Attorney Lending II, Inc. Pursuant to Federal Rule of*

20   *Bankruptcy Procedure 9019* (the "GK CAL II Compromise Motion").  Attached to the GK

21   CAL II Compromise Motion as Exhibit 5 is the Settlement Agreement (the "GK CAL II

22   Settlement") entered into by and between the GK Trustee and CAL II.  The GK CAL II

23   Compromise Motion was approved by order of the Court entered June 9, 2021.  Under

24   the GK CAL II Settlement, CAL II has an allowed claim in the amount of $6,508,361.55 as

25   of the GK Bankruptcy Case petition date (the "GK CAL II Claim") with a first priority

26   perfected security interest in substantially all of GK's personal property assets and a

27   reservation of rights to seek post-petition interest and reasonable fees, costs or charges.

28   The GK CAL II Settlement did not include general releases.

1    On August 31, 2022, the GK Trustee filed a complaint against CAL II, CFS, and

2    Joseph D. DiNardo for declaratory relief and other claims for relief, commencing

3    Adversary Case No. 2:22-ap-01169-BR (the "CAL II Adversary Action").  CAL II and CFS

4    jointly filed a motion to dismiss the CAL II Adversary Action which the Court granted, with

5    prejudice and without leave to amend, by order entered February 16, 2023 (the

6    "Dismissal Order").  The Dismissal Order provides that each party is to bear its own costs

7    and fees.  The GK Trustee has appealed the Dismissal Order and elected to have the

8    appeal heard by the United States District Court for the Central District of California,

9    Case No. 2:23-cv-01637-MEMF (the "CAL II/CFS Dismissal Order Appeal").

10       **F.    CAL II's Payment Request to the GK Trustee and TVG Trustee**

11    During the course of the Debtor's and TVG respective bankruptcy cases, the GK

12    Trustee and the TVG Trustee have made certain payments to CAL II on account of the

13    GK CAL II claim and the TVG CAL II Claim.  On February 22, 2023, CAL II submitted its

14    payoff statement to the TVG Trustee in the total amount of $3,343,271.06 with per diem

15    interest at $491.61 (the "Payoff Request").  Included in the Payoff Request is

16    $1,162,685.12 in legal fees, including $819,117.77 in legal fees incurred by CAL II

17    defending the CAL II Adversary Action.  The TVG Trustee and the GK Trustee both

18    dispute the entitlement to and the amount of legal fees asserted by CAL II.

19       **G.    The Settlement Agreement**

20    On March 21, 2023, the GK Trustee, TVG Trustee, CAL II, and CFS entered into

21    the Settlement Agreement.  A true and correct copy of the Settlement Agreement is

22    attached hereto as Exhibit "1."  The salient terms of the Settlement Agreement are

23    summarized as follows.

24    1.    **The Allowed CAL II Payoff Request.**  CAL II shall a single allowed Payoff

25    Request as of February 22, 2023 in the amount of $2,674,153.29 plus per diem interest

26    of $491.61 from February 22, 2023 until paid in full (the "Allowed Payoff Request").  The

27    Allowed Payoff Request includes a reduction of legal fees by a total of $669,117.77.

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2.    **The TVG Trustee's Waiver and Release of Claims to the Kelco Reserve.**  The TVG Trustee and the TVG bankruptcy estate waive and release all ownership claims to the Kelco Reserve.  Further, the Kelco Reserve will remain in the GK bankruptcy estate for administration by the GK Trustee.  The TVG Trustee has not waived and/or released his claims filed in the GK Bankruptcy Case, and can continue to prosecute claims in the GK Bankruptcy Case for the benefit of the TVG bankruptcy estate.  All other rights of the TVG Trustee and TVG bankruptcy estate are preserved.

3.    **The GK Trustee's Waiver and Release of Claims to the Kelco Liquidation Proceeds.**  Except for the Kelco Reserve the GK Trustee received in connection with the Kelco Avoidance Action which the GK Trustee will be entitled to keep, free and clear of any liens or claims, the GK Trustee and the GK bankruptcy estate release and waive and release all ownership claims to the Kelco Liquidation Proceeds. However, the GK Trustee has not waived and/or released her claims filed in the TVG Bankruptcy Case, and can continue to prosecute claims in the TVG Bankruptcy Case for the benefit of the GK bankruptcy estate.  All other rights of the GK Trustee and GK bankruptcy estate are preserved.  In addition, the Kelco Liquidation Proceeds will remain with the TVG Trustee to be administered within five days of the effective date of the Settlement Agreement.  The TVG Trustee will first use the Kelco Liquidation Proceeds to pay off the Allowed Payoff Request pursuant to the previously approved TVG CAL II Settlement, except that the TVG Trustee will not withhold 20% from the Allowed Payoff Request or the Kelco Liquidation Proceeds for the allowed unsecured claims of the TVG bankruptcy estate.  After payment of the Allowed Payoff Request, the TVG Trustee will administer the remainder of the Kelco Liquidation Proceeds pursuant to the TVG Ruigomez Settlement, with the TVG Ruigomez Claim to be reduced from the Kelco Liquidation Proceeds.

4.    **Withdrawal of CAL II Claims and No Further CFS Claims.**  Within five days of payment of the Allowed Payoff Request, CAL II will withdraw its proofs of claim filed in the GK Bankruptcy Case and TVG Bankruptcy Case.  CFS is currently asserting a

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 ♦ Fax 714 445-1002

general unsecured claim in its capacity as a disbursing agent in the amount of $8,698,610.03 in the GK Bankruptcy Case.  CFS will not be required to withdraw its filed proof of claim in the GK Bankruptcy Case, but CFS will not file any further proofs of claim in the GK Bankruptcy Case or the TVG Bankruptcy Case.  The GK Trustee and CFS reserve all rights with respect to the proof of claim filed by CFS to object to and contest the validity of the amount of the proof of claim and defend against any objection.  The Settlement Agreement does not validate or invalidate the proof of claim filed by CFS in the GK Bankruptcy Case.

5.    **Dismissal of the CAL II/CFS Dismissal Order Appeal.**  Within five days of the effective date of the Settlement Agreement, the GK Trustee will dismiss with prejudice the CAL II/CFS Dismissal Order Appeal.  However, the GK Trustee expressly reserves the right to pursue any and all claims the GK bankruptcy estate may have against Joseph D. DiNardo.

6.    **The Releases of the GK Trustee, the GK bankruptcy estate, the TVG Trustee, and the TVG bankruptcy estate.**  CAL II and CFS release the GK bankruptcy estate, the TVG bankruptcy estate, the GK Trustee, and the TVG Trustee and their attorneys and agents from any and all claims that CAL II and/or CFS may have.  The release includes any and all legal fees incurred by CAL II and CFS arising out or relating to CAL II's or CFS's involvement with GK and/or TVG including any legal fees that CAL II or CFS incurs defending against claims brought by third parties other than the GK Trustee or the TVG Trustee.

7.    **The Release of CAL II and CFS by the GK Trustee and the TVG Trustee.**  The GK Trustee, on behalf of the GK bankruptcy estate, and the TVG Trustee, on behalf of the TVG bankruptcy estate, release CAL II and CFS and their attorneys and agents from any and all claims that the GK Trustee and TVG Trustee may have in connection with, arising out of, or related to the GK Bankruptcy Case and TVG Bankruptcy Case.  The release by the GK Trustee and the TVG Trustee does not include a release of Joseph D. DiNardo in his individual capacity (not as an agent or

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  representative of CAL II or CFS), or any law firm or law practice that Joseph D. DiNardo

2  has in the past, is currently, or will become associated with in the future.

3

4  **III.    MEMORANDUM OF POINTS AND AUTHORITIES**

5      **A.    The Court Can Approve the Settlement Agreement**

6      Federal Rule of Bankruptcy Procedure ("FRBP") 9019(a) provides, in part, that a

7  court may approve a compromise per motion by the trustee and after a hearing on notice

8  to the debtor, all creditors, and all interested parties.  In considering whether to approve a

9  settlement agreement, courts must consider the probability of success of any litigation,

10  the difficulties in collection on a judgment, the complexity of the matter, the expense,

11  inconvenience or delay occasioned by resolution through litigation, and interests of

12  creditors, and the reasonableness of the compromise.  *See Martin v. Kane (In re A & C*

13  *Properties),* 784 F.2d 1377, 1380-81 (9th Cir. 1986).

14      "The bankruptcy court has great latitude in approving compromising agreements."

15  *See id.*  In approving a settlement agreement, the court must find that it is fair and

16  equitable and the product of good-faith negotiations.  *See id.*  Generally speaking, the

17  court may defer to the business judgment of the debtor-in-possession or trustee in

18  deciding whether to settle a matter.  *See In re Mickey Thompson Entm't Grp., Inc.,* 292

19  B.R. 415, 420 (B.A.P. 9th Cir. 2003).  The court need not conclude that the proposed

20  settlement is the best possible compromise, but only that the settlement is "within the

21  reasonable range of litigation possibilities."  *See In re World Health Alt., Inc.,* 344 B.R.

22  291, 296 (Bankr. D. Del. 2006).  Similarly, the court need not, and should not conduct a

23  "mini-trial" on the compromised claims but simply determine that disputes related to those

24  claims exist.  *See In re Schmitt,* 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997) ("When

25  assessing a compromise, courts need not rule upon disputed facts and questions of law,

26  but rather only canvass the issues.  A mini-trial on the merits is not required."); *see also,*

27  *In re Hermitage Inn, Inc.,* 66 B.R. 71, 72 (Bankr. D. Colo. 1986) ("[T]he court's

28  assessment does not require resolution of the issues, but only their identification, so that

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  the reasonableness of the settlement may be evaluated.").  It is enough that the court

2  conclude the probability of success is uncertain.  *See, e.g., In re America West Airlines,*

3  *Inc.,* 214 B.R. 382, 386 (Bankr. D. Ariz. 1997).

4       **B.**    <u>**The Settlement Agreement is Fair and Reasonable**</u>

5          **1.**    <u>**The Probability of Success in the Litigation is Uncertain and the**</u>

6              <u>**Disputes are Complex**</u>

7       The Settlement Agreement resolves multiple complex disputes where it is

8  uncertain whether the GK Trustee would prevail on her claims.  There are three disputes

9  at issue:  (1) the dispute between the GK Trustee and the TVG Trustee concerning which

10  estate is entitled to the Kelco Liquidation Proceeds and the Kelco Reserve on account of

11  the 45% membership interest in Kelco; (2) the CAL II Adversary Action commenced by

12  the GK Trustee against CAL II and CFS; and (3) whether CAL II is entitled to its legal

13  fees of $1,162,685.12.[3]

14       The complexity of the suits makes it difficult to predict whether the GK Trustee will

15  ultimately prevail.  Moreover, certain facts and recent rulings suggest that it will be

16  difficult for the GK Trustee to prevail on her claims, despite her belief that the claims have

17  merit.  As to the dispute concerning Kelco, the GK Trustee will be required to prove that

18  the GK bankruptcy estate is entitled to all proceeds related to the 45% membership

19  interest in Kelco, even though the membership interest is in the name of TVG, not the

20  Debtor.  While the GK Trustee can likely establish that the capital contributions to Kelco

21  were paid from the Debtor, this may not be sufficient to prove that GK was the true holder

22  of the membership interest.  For example, the TVG Trustee could potentially argue that

23  the funds paid to Kelco from GK were part of TVG's compensation as managing partner

24  of the Debtor and were no longer funds of the Debtor.  Further, because the Debtor

25  frequently shuffled its funds from different accounts, the GK Trustee will likely need to

26  conduct a difficult and complicated tracing analysis to establish that the funds paid to

27  _____

28      [3]    The GK CAL II Settlement preserved the GK Trustee's right to later object to any request by CAL II for attorneys' fees and costs.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  Kelco were actually funds of the Debtor and not TVG or stolen funds from the Debtor's

2  clients.

3      Regarding the CAL II Adversary Action, the GK Trustee is well aware that there

4  are significant obstacles she must overcome to prevail on her claims against CAL II and

5  CFS.  CAL II and CFS filed a motion to dismiss the CAL II Adversary Action.  Ultimately,

6  the Court granted the motion to dismiss the GK Trustee's claims against CAL II and CFS

7  with prejudice.  Currently, the GK Trustee has filed an appeal with the District Court

8  regarding the ruling.  Even if the GK Trustee were to prevail on appeal and is ultimately

9  granted leave to amend her complaint, the GK Trustee will still need to prove her claims

10  before the Court.  While the GK Trustee harbors no doubts that the Court will fully and

11  faithfully consider her arguments if the appeal is successful, the GK Trustee knows it will

12  be difficult given the Court's previous skepticism, as evidenced by its order dismissing the

13  claims with prejudice.  This is a tall order.  Finally, as to the dispute concerning whether

14  CAL II's attorneys' fees are appropriate and proper, the dispute will be lengthy and

15  complex.  First, the GK Trustee may need to propound discovery to obtain invoices for

16  CAL II's attorneys' fees.  Once the GK Trustee obtains these invoices, the GK Trustee

17  and her professionals will not only need to spend significant time reviewing each time

18  entry on the invoices, but will need to analyze the time entries in conjunction with CAL II's

19  loan documents to determine if CAL II is truly entitled to payment for a specific service.

20  In short, the analysis of CAL II's claim for attorneys' fees is more involved than

21  determining whether the fees are reasonable—the analysis requires whether the

22  attorneys' fees are both reasonable *and* allowed under CAL II's complex loan documents

23  with the Debtor.

24      There is no dispute that there are inherent risks in all litigation.  Given certain facts

25  present here, rulings from the Court and the complexity of each dispute, it is clear that the

26  disputes resolved by the Settlement Agreement are risky.  Moreover, the risks here are

27  even more pronounced.  The Settlement Agreement is not just resolving only one

28  complex and uncertain dispute—it is resolving *three*.  With the amount of issues in

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

1    dispute, It is hard to predict whether claims in one dispute will prevail, let alone three.  In

2    sum, resolution of these eliminates certain litigation risks and supports granting the

3    Motion.

4            **2.**      **<u>Litigation Will be Expensive and Further Delay Administration of</u>**

5                 **<u>the GK Bankruptcy Estate</u>**

6          Resolution of the disputes will prevent delay to the administration of the GK

7    bankruptcy estate and will avoid expensive litigation.  As discussed earlier, the dispute

8    concerning Kelco will likely require the Trustee's financial advisor to conduct a

9    complicated tracing analysis regarding the Debtor's payment of capital contributions to

10    Kelco.  The analysis will likely not only be difficult, but it may require that the GK

11    Trustee's financial advisor eventually prepare an expert report—an expensive

12    undertaking.  As to the CAL II Adversary Action, CAL II has demonstrated that it will

13    vigorously defend against the GK Trustee's claims, and it will likely adopt the same

14    approach to any challenge for its request for attorneys' fees.  In short, the litigation will

15    likely be protracted and expensive if it is not settled sooner rather than later.

16          If the litigation remains unresolved, there will likely be delay to the administration

17    of the GK Estate.  First, the dispute between the GK Trustee and the TVG Trustee

18    concerning Kelco is not yet before the Court.  If the dispute were not resolved by the

19    Settlement Agreement, the dispute could require an adversary proceeding or a contested

20    matter and evidentiary hearing before the Court issues a ruling.  The GK Trustee would

21    potentially need to file and serve a complaint, wait for a response to the complaint, and

22    wait for litigation of Trustee's claims to commence.  Similarly, the dispute involving

23    whether CAL II is entitled to its request for attorneys' fees would likely require the GK

24    Trustee to file a claim objection, which is a contested matter that may require another

25    evidentiary hearing.  In short, prosecuting these claims will take time, which will delay

26    administration of the GK bankruptcy estate.

27          Finally, the CAL II Adversary Action is still in its beginning stages.  If the claims

28    against CAL II and CFS are not resolved, the GK Trustee will need to first litigate her

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

appeal before the District Court.  If the GK Trustee is successful, the GK Trustee will then have to amend her complaint, which may result in another motion to dismiss filed by CAL II and CFS.  Although the Settlement Agreement does not fully resolve the CAL II Adversary Action, as the GK Trustee is not dismissing her pending appeal as against Joseph DiNardo, the Settlement Agreement narrows the scope of the litigation by withdrawing her claim against CAL II and CFS.  By narrowing the scope of the litigation, issues will be reduced, which will hopefully decrease the time needed to litigate any claims against Joseph DiNardo.  Ultimately, by resolving the litigation, the GK Trustee will be able to save the GK bankruptcy estate money by reducing (and in some cases, eliminating) litigation.

3.    **The Settlement Agreement is Reasonable and its Effect on the Administration of the GK Estate is in the Best Interest of All Creditors**

The Settlement Agreement provides significant benefits to the GK bankruptcy Estate and is in the best interests of creditors.  In addition to eliminating expensive litigation, reducing risk, and preventing delay, the Settlement Agreement provides six tangible benefits to the GK bankruptcy estate, discussed below.

First, the Settlement Agreement provides that the entirety of the Kelco Reserve ($160,000.00) will remain the GK bankruptcy estate for administration by the GK Trustee.

Second, the Settlement Agreement reduces CAL II's claim for legal fees by a significant amount.  Currently, CAL II is asserting legal fees totaling $1,162,685.12. Under the Settlement Agreement, CAL II has agreed to reduce it's legal fees by $669,117.77, an approximate 58% reduction from CAL II's initial request for legal fees.

Third, except as paid pursuant to this agreement, CAL II and CFS have agreed to waive any additional attorney fees against the GK Trustee, GK bankruptcy estate, TVG Trustee, and TVG bankruptcy estate which they may incur in the future.  This release is broad in scope.  CAL II and CFS have not only agreed to waive the balance of their attorney fees incurred directly with the bankruptcy cases of GK and TVG, but have also

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   agreed to not seek recovery of any of legal fees and costs incurred in connection with

2   litigating *any* claim brought against CAL II and CFS by third parties relating to CAL II and

3   CFS's involvement with GK and TVG.  Accordingly, the GK bankruptcy estate will not be

4   liable for the fees CAL II and CFS have incurred or will incur in the future defending

5   against the claims by the Ruigomez Creditors and Edelson, P.C.

6        Fourth, the Settlement Agreement streamlines the payoff of the Allowed Payoff

7   Request and the payment to the Ruigomez Creditors.  There is already a documented

8   and Court-approved mechanism governing the distribution of the Kelco Liquidation

9   Proceeds.  Here, the Settlement Agreement provides that the TVG Trustee will disburse

10  the Kelco Liquidation Proceeds pursuant to the TVG CAL II Settlement and TVG

11  Ruigomez Settlement.  As a result, the GK Trustee will not need to expend estate

12  resources to develop a procedure to distribute the Kelco Liquidation Proceeds since one

13  is already in place and Court-approved.  Importantly, given that the distribution schemes

14  have been approved by the Court, there is a low risk that there will be future disputes

15  concerning the payments made to CAL II and the Ruigomez Creditors from other parties.

16  The GK bankruptcy estate benefits because it reduces the amount of secured claims in

17  the GK bankruptcy estate.  CAL II will be paid in full and the Ruigomez Creditors' claim

18  will be significantly reduced.

19       Fifth, CFS has agreed that it will not file any further claims in the GK bankruptcy

20  estate or the TVG bankruptcy estate.  Although CFS has not agreed to withdraw its

21  representative unsecured proof of claim, the GK Trustee has preserved her right to later

22  challenge the proof of claim if she determines that an objection to CFS's proof of claim is

23  in the best interest of the GK bankruptcy estate.  In short, while the Settlement

24  Agreement does not result in an immediate reduction in CFS's proof of claim, this

25  provision in the Settlement Agreement still benefits the GK bankruptcy estate because it

26  caps the total amount of CFS's claim and preserves the GK Trustee's right to seek a

27  further reduction or disallowance.

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    Sixth, the Ruigomez Creditors' claim will be paid down significantly.  Admittedly, it

2    is difficult to calculate the total amount the Ruigomez Creditors will ultimately recover

3    because of the interest that is accruing on CAL II's claim and the reserves for the TVG

4    bankruptcy estate.[4]  However, it appears clear that the Ruigomez Creditors will likely

5    receive a payment in the millions, as the TVG Trustee is currently holding $7,955,666.51

6    and the Allowed CAL II Payoff Request is in the amount of $2,674,153.29 (not including

7    interest).  The resulting payment to the Ruigomez Creditors is further beneficial to the GK

8    bankruptcy estate because it should reduce the principal amount of the claim, and

9    therefore the amount of interest that will accrue thereon and have to be paid by the GK

10    bankruptcy estate.  Recently, the Ruigomez Creditors filed a motion to renew their

11    judgment, which was granted by the Court.  When the Ruigomez Creditors renew their

12    judgment, they may be entitled to include past due interest on the principal of their

13    renewed judgment—they will be able to collect interest on interest.  Given that the

14    Ruigomez Creditors assert a secured claim in the GK Bankruptcy Case, reducing the

15    Ruigomez Creditors' claim will result in the GK bankruptcy estate paying less interest and

16    will diminish the impact of the Ruigomez Creditors' claim on the unsecured creditors of

17    the GK bankruptcy estate.  Accordingly, the Settlement Agreement is reasonable and is

18    in the best interest of the GK bankruptcy estate.

19    **C.    The Court Should Authorize Payment of the 20% Success Fee to**

20    **Greenspoon as Previously Approved by the Court.**

21    The Court should approve the payment of the 20% success fee to Greenspoon

22    Marder, LLP ("Greenspoon"), special litigation counsel to the GK Trustee.  On July 28,

23    2022, the GK Trustee filed her *Chapter 7 Trustee's Application for Authority to Employ*

24    *Greenspoon Marder LLP as Special Avoidance Power Litigation Counsel Effective July 1,*

25    *2022* [Docket No. 1297] ("Greenspoon Application").  On August 26, 2022, the Court

26    entered an order granting the Greenspoon Application ("Employment Order").  *See*

27    _____

28    [4]    As of the filing of this Motion, the Ruigomez Creditors have received one payment of $596,480.55 from the TVG Trustee.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   Docket No. 1327.  Under the Employment Order, the Court authorized Greenspoon to be

2   entitled to a success fee of 20% of the amount recovered on each avoidance claim.  As

3   discussed earlier, the Kelco Reserve represents a one hundred per cent (100%) recovery

4   on the GK Trustee's claims for Fraudulent Transfers against Kelco.

5           Typically, where special counsel has been employed and is to be compensated on

6   a contingency basis, a trustee's motion seeking to obtain approval of the settlement

7   almost invariably includes a request for payment of special counsel's fees and costs.

8   Such is the case here, where the Employment Order specifically authorized the payment

9   of a 20% success fee to Greenspoon upon the successful settlement of an avoidance

10  power claim.[5]  By detailing how much compensation is being sought on a contingency

11  basis, the Motion enables the Court and interest parties to determine that the calculations

12  are consistent with the Greenspoon Application and Employment Order.

13          Although the GK Trustee could, conceivably, request that Greenspoon file a

14  separate application for the success fee, this would be highly inefficient and would be a

15  waste of judicial resources.  Since the Kelco Avoidance Action is one of more than 100

16  actions filed, the Court could soon find itself burdened with a multitude of separate fee

17  applications each time an avoidance action is compromise.  Because the GK Trustee

18  hopes to save the time and expense of separate applications and additional notices to

19  creditors, the Trustee believes this "combined" compromise/compensation motion is

20  appropriate under 11 U.S.C. §§ 105(a), 328(a), and 330(a).  *See In re Olson*, 2006 WL

21  2433448 at *2 (Bankr. D. Idaho July 24, 2006) (recognizing propriety of motions to

22  approve compromises that also include requests for payment of court-approved

23  contingency fees); *Delta Star, Inc. v. H.K. Porter Co., Inc. (In re H.K. Porter Co., Inc.)*,

24  183 B.R. 96, 97 (Bankr. W.D. Pa. 1995) (referencing previously approved motion for

25

26  _____
    [5]    In addition to a 20% contingency fee of the gross proceeds on any settled avoidance power claim,
    the Employment Order also authorizes the recovery of hourly fees incurred at 50% of the hourly fees then

27  in effect.  At this time, the GK Trustee only is seeking authority to pay the 20% contingency fee award from
    the settlement proceeds.  The hourly attorneys' fees incurred will be sought through a separately filed fee

28  application as required by the Employment Order.

1  authority to settle litigation and for authority to pay attorney a 50% contingency fee out of

2  settlement proceeds).

3

4  **IV.**    **CONCLUSION**

5      For the foregoing reasons, the Trustee respectfully requests that the Court enter

6  an order providing for the following relief:

7      1.      Granting the Motion;

8      2.      Authorizing the GK Trustee to enter into the Settlement Agreement;

9      3.      Approving the terms of the Settlement Agreement, a copy of which is

10  attached hereto as Exhibit "1";

11      4.      Authorizing the GK Trustee to execute any documents or take any actions

12  reasonably necessary to effectuate the terms of the Settlement Agreement;

13      5.      Authorizing the GK Trustee to pay Greenspoon Marder, LLP, the sum of

14  $32,000.00 from the Kelco Reserve; and

15      6.      For such other relief as the Court may deem just and necessary.

16

17  DATED:  March 28, 2023        Respectfully submitted,

18                  SMILEY WANG-EKVALL, LLP

19

20                  By:    _____/s/ Philip E. Strok_____

21                      PHILIP E. STROK
                        Attorneys for Elissa D. Miller, Chapter 7
22                      Trustee

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

## DECLARATION OF ELISSA D. MILLER

I, Elissa D. Miller, declare as follows:

1.      I am the duly appointed Chapter 7 Trustee in the bankruptcy case of Girardi Keese.  I am also a partner at the law firm Greenspoon Marder, LLP.  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of the *Chapter 7 Trustee's Motion for Order Approving Compromise With Jason M. Rund, Chapter 7 Trustee for the Bankruptcy Estate of Thomas V. Girardi, California Attorney Lending II, Inc., and Counsel Financial Services, LLC, Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "Motion").  Unless otherwise defined in this declaration, all terms defined in the Motion are incorporated herein by this reference.

2.      On January 6, 2021, I was appointed as interim trustee of the bankruptcy estate of the Debtor.  On January 13, 2021, I was re-appointed as chapter 7 trustee for the bankruptcy estate of the Debtor and have been serving in that capacity since.

3.      Recently, after a series of arms-length negotiations, I entered into the Settlement Agreement on behalf of the GK bankruptcy estate with the TVG Trustee, CAL II, and CFS to resolve three disputes: (1) the dispute between the GK Trustee and the TVG Trustee concerning which estate is entitled to the Kelco Liquidation Proceeds and the Kelco Reserve on account of the 45% membership interest in Kelco; (2) the CAL II Adversary Action commenced by the GK Trustee against CAL II and CFS; and (3) whether CAL II is entitled to its legal fees of $1,162,685.12.  A true and correct copy of the Settlement Agreement is attached hereto as Exhibit "1."

4.      The Settlement Agreement is the product of my arms-length negotiations with the TVG Trustee, CAL II, and CFS.  Among other benefits, the Settlement Agreement: (1) results in the GK Trustee's full recovery of $160,000.00 from the Kelco Avoidance Action; (2) reduces CAL II's payoff request by $669,177.77; (3) provides a general release by CAL II and CFS of claims against the GK and TVG bankruptcy

1  estates, which includes all claims by CAL II and CFS for attorneys' fees, including

2  attorneys' fees incurred in defending against third party litigation related to CAL II and

3  CFS's involvement with the Debtor and Thomas V. Girardi; (4) streamlines the full and

4  complete satisfaction of CAL II's payoff request and claim; (5) prevents CFS from filing

5  further proofs of claim in the bankruptcy cases of the Debtor and Thomas V. Girardi; and

6  (6) pays down a meaningful portion of the claim of the Ruigomez Creditors.

7         5.      In my opinion and based on my business judgment, the Settlement

8  Agreement is in the best interest of the GK bankruptcy estate for the foregoing reasons.

9  In sum, I believe there is valid business justification for the Settlement Agreement.

10         6.      To the best of my knowledge, information and belief, the facts in the Motion

11  are true and correct.

12         I declare under penalty of perjury under the laws of the United States of America

13  that the foregoing is true and correct.

14         Executed on this 28th day of March, 2023, at Los Angeles, California.

15

16                                                            _____

17                                                            Elissa D. Miller

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2936742.3                                    21                                    MOTION

# EXHIBIT "1"

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("<u>Agreement</u>") is entered into by and between ELISSA D. MILLER, solely in her capacity as the chapter 7 trustee of the bankruptcy estate of Girardi Keese (the "<u>GK Trustee</u>"), JASON M. RUND, solely in his capacity as the chapter 7 trustee of the bankruptcy estate of Thomas V. Girardi (the "<u>TVG Trustee</u>"), CALIFORNIA ATTORNEY LENDING II, INC., a New York Corporation ("<u>CAL II</u>"), and COUNSEL FINANCIAL SERVICES, LLC, a Delaware limited liability company ("<u>CFS</u>").  The GK Trustee, the TVG Trustee, CAL II and CFS may hereinafter be referred to individually as a "<u>Party</u>" or collectively as the "<u>Parties</u>."

## RECITALS

### The Bankruptcy Cases

A.    On December 18, 2020, an involuntary chapter 7 bankruptcy petition was filed against Girardi Keese ("<u>GK</u>") commencing Case No. 2:20-bk-21022-BR (the "<u>GK Bankruptcy Case</u>") in the U.S. Bankruptcy Court for the Central District of California (the "<u>Bankruptcy Court</u>").  The petitioning creditors moved for the appointment of an interim trustee which was granted by the Bankruptcy Court by order entered January 5, 2021.  The GK Trustee was appointed as the interim chapter 7 trustee on January 6, 2021.  The order for relief was entered January 13, 2021 and, the same date, the GK Trustee was reappointed and has been serving in that capacity since.

B.    On December 18, 2020, an involuntary chapter 7 bankruptcy petition was also filed against Thomas V. Girardi ("<u>TVG</u>").  The TVG Trustee was appointed interim trustee on January 5, 2021.  The order for relief was entered in that case on January 13, 2021, and the TVG Trustee was reappointed as chapter 7 trustee.  The case is pending before the Bankruptcy Court as Case No. 2:20-bk-21020-BR (the "<u>TVG Bankruptcy Case</u>").

### Kelco Properties, LLC, the Kelco Avoidance Action and Sale of the Kelco Property

C.    TVG holds a 45% membership interest in Kelco Properties, LLC, a California limited liability company ("<u>Kelco</u>").  Kelco was formed on or about October 1, 2009 and acquired certain unimproved real property consisting of approximately 54.8 acres of land in Riverside County, California (the "<u>Kelco Property</u>").

D.    Although the 45% membership interest in Kelco is in the name of TVG, GK paid approximately $4,160,000.00 to Kelco commencing in October 2009, presumably as capital contributions for TVG.  Of the $4,160,000.00, GK paid Kelco $160,000.00 (the "<u>Fraudulent Transfers</u>") during the 7-year period preceding the GK Bankruptcy Case petition date.  It is unclear, therefore, whether TVG or GK should be considered as the holder of the 45% membership interest in Kelco.

E.    On December 27, 2022, the GK Trustee filed a complaint against Kelco to avoid and recover the Fraudulent Transfers, commencing Adversary Case No. 2:22-ap-01249-BR (the "<u>Kelco Avoidance Action</u>").

2936484.1

F.    Given that a sale of the Kelco Property was imminent, the GK Trustee, the TVG Trustee and Kelco agreed to stay the Kelco Adversary Action for 180 days (subject to further extension) and further agreed that if, during the stay, Kelco liquidated any of its assets, Kelco would deliver and remit to the TVG Trustee the net sales proceeds representing TVG's 45% interest in Kelco (the "Kelco Liquidation Proceeds"), provided, however, that the total sum of $160,000.00 from the Kelco Liquidation Proceeds (the "Kelco Reserve") would be delivered and remitted by the TVG Trustee to the GK Trustee on account of the Fraudulent Transfers.  The parties also agreed that the Kelco Adversary Action would be dismissed, with prejudice, within five (5) business days of the GK Trustee's receipt of the Kelco Reserve.  The Bankruptcy Court approved the stipulated agreement between the parties by order entered February 2, 2023.

G.    The Kelco Property sold and on February 16, 2023, the TVG Trustee received $8,115,666.51 of Kelco Liquidation Proceeds.  On February 21, 2023, the TVG Trustee delivered and remitted $160,000.00 to the GK Trustee to fund the Kelco Reserve.  Consequently, the TVG Trustee is holding $7,955,666.51 in Kelco Liquidation Proceeds and the GK Trustee is holding $160,000.00 in the Kelco Reserve.  The Kelco Avoidance Action was subsequently dismissed, with prejudice.

**Secured Claims of CAL II and the Ruigomez Creditors in the TVG Bankruptcy Case**

H.    On March 12, 2021, the TVG Trustee filed his *Chapter 7 Trustee's Motion to Approve Compromise under FRBP 9019* (the "TVG Ruigomez Compromise Motion").  Attached to the TVG Ruigomez Compromise Motion as Exhibit 7 is the Settlement Agreement (the "TVG Ruigomez Settlement") entered into by and between the TVG Trustee and Joseph Ruigomez, Kathleen Ruigomez and Jaime Ruigomez (the "Ruigomez Creditors").  The TVG Ruigomez Compromise Motion was approved by order of the Bankruptcy Court entered April 20, 2021.

I.    Pursuant to the TVG Ruigomez Settlement (i) the Ruigomez Creditors have an allowed claim in the amount of $11,747,245.95 as of the TVG Bankruptcy Case petition date (the "TVG Ruigomez Claim") with a perfected security interest in all of TVG's personal property and all real property of TVG in Riverside and Los Angeles Counties that existed on the petition date and a reservation of rights to seek post-petition interest, and (ii) the TVG Trustee and the Ruigomez Creditors mutually released claims.  Section 4.b. of the TVG Ruigomez Settlement also provides:

"For each Ruigomez Collateral being administered, the sale proceeds shall be distributed in the following order of priority: (1) liens senior to the Ruigomez Liens, taxes arising from the sale (including transfer and income taxes), and ordinary costs of sale (including broker commissions, escrow, etc.); (2) the administrative fees and costs of the bankruptcy estate; (3) 80% of the balance to the Ruigomez Creditors to be applied towards the Ruigomez Claim; and (4) the remainder (*i.e.*, 20%) to the Trustee to be held in trust for the allowed unsecured claimants of the bankruptcy estate."

J.    On May 19, 2021, the TVG Trustee filed his *Chapter 7 Trustee's Motion to Approve Compromise of Controversy under FRBP 9019 with California Attorney Lending II* (the "TVG CAL II Compromise Motion").  Attached to the TVG CAL II Compromise Motion as Exhibit 6 is the Settlement Agreement (the "TVG CAL II Settlement") entered into by and

between the TVG Trustee and CAL II.  The TVG CAL II Compromise Motion was approved by order of the Bankruptcy Court entered June 21, 2021.

K.    Pursuant to the TVG CAL II Settlement (i) CAL II has an allowed claim in the amount of $6,402,213.49 plus $97,548.29 in legal fees as of the TVG Bankruptcy Case petition date (the "TVG CAL II Claim") with a perfected security interest in all of TVG's personal property with the exception of cash and bank accounts and a reservation of rights to seeks post-petition interest, and (ii) the TVG Trustee and CAL II mutually released claims.  Section 6.b. of the TVG CAL II Settlement also provides:

> "For each CAL II's Collateral being administered, the sale proceeds shall be distributed in the following order of priority: (1) liens senior to CAL II's liens (if any)", *allowed* claim of exemption, taxes arising from the sale (including transfer and income taxes), and ordinary costs of sale (including broker commissions, escrow, etc.); (2) the reasonable, necessary administrative fees and costs of the bankruptcy estate assembling, acquiring and disposing of said Collateral; (3) 80% of the balance to be applied towards CAL II's Claim; and (4) the remainder (*i.e.*, 20%) to the Trustee to be held in trust for the allowed unsecured claimants of the bankruptcy estate.  To be clear, CAL II will continue to receive the foregoing 80% distributions until CAL II's Claim is paid in full.  Once CAL II has been paid in full from this Case and the Girardi Keese Case, the sale proceeds shall be distributed in accordance with the Settlement Agreement previously approved by the Bankruptcy Court between the Trustee and the Ruigomez Creditors."

L.    As to the Kelco Liquidation Proceeds currently held by the TVG Trustee in the TVG bankruptcy estate, CAL II has a first priority lien position and the Ruigomez Creditors have a second priority lien position.

**Secured Claim of CAL II in the GK Bankruptcy Case and the CAL II Adversary Action**

M.    On May 11, 2021, the GK Trustee filed her *Motion for Order Approving Compromise with California Attorney Lending II, Inc. Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "GK CAL II Compromise Motion").  Attached to the GK CAL II Compromise Motion as Exhibit 5 is the Settlement Agreement (the "GK CAL II Settlement") entered into by and between the GK Trustee and CAL II.  The GK CAL II Compromise Motion was approved by order of the Bankruptcy Court entered June 9, 2021.

N.    Pursuant to the GK CAL II Settlement, CAL II has an allowed claim in the amount of $6,508,361.55 as of the GK Bankruptcy Case petition date (the "GK CAL II Claim") with a first priority perfected security interest in substantially all of GK's personal property assets and a reservation of rights to seek post-petition interest and reasonable fees, costs or charges.

O.    On August 31, 2022, the GK Trustee filed a complaint against CAL II, CFS, and Joseph D. DiNardo for declaratory relief and other claims for relief, commencing Adversary Case No. 2:22-ap-01169-BR (the "CAL II Adversary Action").

P.    CAL II and CFS jointly filed a motion to dismiss the CAL II Adversary Action which the Bankruptcy Court granted, with prejudice and without leave to amend, by order

entered February 16, 2023 (the "Dismissal Order"). The Dismissal Order provides that each party is to bear its own costs and fees. The GK Trustee has appealed the Dismissal Order and elected to have the appeal heard by the United States District Court for the Central District of California, Case No. 2:23-cv-01637-MEMF (the "CAL II/CFS Dismissal Order Appeal").

Q.     Joseph D. DiNardo also filed a motion to dismiss the CAL II Adversary Action which was granted, with prejudice and without leave to amend, by the Bankruptcy Court. The GK Trustee has appealed this dismissal order as well and also elected to have the appeal heard by the United State District Court for the Central District of California (the "DiNardo Dismissal Order Appeal").

### The CAL II Payoff Request

R.     During the course of the GK Bankruptcy Case and the TVG Bankruptcy Case, the GK Trustee and the TVG Trustee have made certain payments to CAL II on account of the GK CAL II Claim and the TVG CAL II Claim.

S.     On February 22, 2023, CAL II submitted its payoff statement to the TVG Trustee in the total amount of $3,343,271.06 with per diem interest at $491.61 (the "Payoff Request"). Included in the Payoff Request is $1,162,685.12 in legal fees, including $819,117.77 in legal fees incurred by CAL II defending the CAL II Adversary Action. The TVG Trustee and the GK Trustee both dispute the entitlement to and the amount of legal fees asserted by CAL II.

T.     The Parties have reached this Agreement to resolve the issues and claims raised in the Recitals including the issues and claims related to the Kelco Liquidation Proceeds, the Kelco Reserve, the CAL II/CFS Dismissal Order Appeal, and the CAL II Payoff Request.

NOW THEREFORE, in consideration of the foregoing recitals and the mutual covenants, conditions, promises, and agreements contained herein, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

### ARTICLE 1
### APPROVAL ORDER AND BINDING EFFECT

1.1.     **Binding Effect**. This Agreement shall become effective and binding only upon entry by the Bankruptcy Court of a final order approving the Agreement (the "Approval Order") in both the GK Bankruptcy Case and the TVG Bankruptcy Case. The Approval Order is "final" after it is entered unless an appeal is timely filed or a stay pending appeal is obtained. In the event of a timely-filed appeal or stay, the order shall become final if and when the appeal is resolved in favor of the GK Trustee and/or the TVG Trustee. In the event the stay pending appeal is lifted prior to the resolution of the appeal, the order shall become final upon the lifting of the stay pending appeal. The "Effective Date" of this Agreement shall be the first business day after the Approval Order becomes final in both the GK Bankruptcy Case and the TVG Bankruptcy Case. In the event that this Agreement is not approved by the Bankruptcy Court with a final Approval Order in both the GK Bankruptcy Case and the TVG Bankruptcy Case, this Agreement shall become null and void and of no force or effect.

**1.2.    Court Approval**.  Upon execution of this Agreement by the Parties, the GK Trustee and the TVG Trustee will timely file motions to be set for hearing on April 18, 2023 at 10:00 a.m. seeking Bankruptcy Court approval of this Agreement in the GK Bankruptcy Case and the TVG Bankruptcy Case, respectively.  The GK Trustee and the TVG Trustee shall use their best efforts to obtain the Bankruptcy Court's approval of the motions and this Agreement, and the Parties shall cooperate in this regard and in defending against an appeal of the Bankruptcy Court's approval of each motion.

## ARTICLE 2
## TERMS OF SETTLEMENT

**2.1.    The Allowed CAL II Payoff Request**.  CAL II has agreed to reduce the legal fees asserted in the Payoff Request by a total of $669,117.77.  As of the Effective Date and in full and complete satisfaction of both the TVG CAL II Claim and the GK CAL II Claim, CAL II shall have a single allowed Payoff Request as of February 22, 2023 in the amount of $2,674,153.29 plus per diem interest of $491.61 from February 22, 2023 until paid in full as set forth in this Agreement (the "Allowed Payoff Request").

**2.2.    The TVG Trustee's Waiver and Release of Claims to the Kelco Reserve**.
Except for the obligations and benefits set forth by and for the Parties in this Agreement, upon the Effective Date, the TVG Trustee and the TVG bankruptcy estate waive and release any and all ownership claims to the Kelco Reserve.  The Kelco Reserve shall remain in the GK bankruptcy estate for administration by the GK Trustee.  Notwithstanding the waiver and release set forth in this Section 2.2, (i) the TVG Trustee has not waived and/or released and shall be allowed to continue to prosecute his claim(s) filed in the GK Bankruptcy Case for the benefit of the TVG bankruptcy estate, and (ii) all other rights of the TVG Trustee and the TVG bankruptcy estate are preserved.

**2.3.    The GK Trustee's Waiver and Release of Claims to the Kelco Liquidation Proceeds**.  Except for the obligations and benefits set forth by and for the Parties in this Agreement, upon the Effective Date, the GK Trustee and the GK bankruptcy estate waive and release any and all ownership claims to the Kelco Liquidation Proceeds.  Notwithstanding the waiver and release set forth in this Section 2.3, (i) the GK Trustee has not waived and/or released and shall be allowed to continue to prosecute her claim(s) filed in the TVG Bankruptcy Case for the benefit of the GK bankruptcy estate, and (ii) all other rights of the GK Trustee and the TVG bankruptcy estate are preserved.  The Kelco Liquidation Proceeds shall remain in the TVG bankruptcy estate for administration and payment by the TVG Trustee as follows:

**(a)**    First, within five (5) business days of the Effective Date, the TVG Trustee shall pay CAL II the Allowed Payoff Request in accordance with Section 6.b. of the TVG CAL II Settlement provided, however, that the TVG Trustee shall not withhold 20% from the Allowed Payoff Request or the Kelco Liquidation Proceeds for the allowed unsecured claimants of the TVG bankruptcy estate; and

**(b)**    Thereafter, in accordance with Section 4.b. of the TVG Ruigomez Settlement with the express intent of the TVG Trustee and the GK Trustee to reduce the amount of the TVG Ruigomez Claim.

**2.4.    Withdrawal of CAL II Claims; No Further CFS Claims**.  Within five (5) business days of payment of the Allowed Payoff Request, Cal II shall withdraw its Proofs of Claim filed in the GK Bankruptcy Case and the TVG Bankruptcy Case. Except for Claim No. 72 filed by CFS in its capacity as disbursing agent as a general unsecured claim in the amount of $8,698,610.03 in the GK Bankruptcy Case against GK and the GK bankruptcy estate, which the Parties agree CFS shall not be required to withdraw pursuant to this Agreement, CFS has not filed and will not file a Proof of Claim in the GK Bankruptcy Case and the TVG Bankruptcy Case.  Notwithstanding any other provisions in this Agreement, the GK Trustee and CFS expressly reserve all of their rights with respect to Claim No. 72, including, without limitation, the GK Trustee's right to object to and contest the validity and amount of Claim No. 72 and CFS's right to defend against any objection.  The GK trustee and CFS agree that this Agreement does not allow, validate, disallow or invalidate Claim No. 72.

**2.5.    Dismissal of the CAL II/CFS Dismissal Order Appeal**.  Within five (5) business days of the Effective Date, the GK Trustee shall dismiss with prejudice the CAL II/CFS Dismissal Order Appeal.  The GK Trustee expressly reserves the right to pursue any and all claims that the GK bankruptcy estate has or may have against Joseph D. DiNardo, including, without limitation, the DiNardo Dismissal Order Appeal.

**2.6.    Releases**.

**(a)    Release of the GK Trustee, the GK Bankruptcy Estate, the TVG Trustee, and the TVG Bankruptcy Estate**.

Upon the Effective Date and except for the obligations and benefits set forth by and for the Parties in this Agreement, CAL II and CFS hereby release and forever discharge the GK bankruptcy estate, the TVG bankruptcy estate, the GK Trustee, the TVG Trustee, and the GK Trustee's and the TVG Trustee's attorneys and agents, each in their capacity(ies) as such (collectively, the "Trustee Released Parties") from and against any and all claims (including, without limitation, all complaints, causes of action, lawsuits, charges, debts, liens, contracts, agreements, promises, liabilities, judgments, demands, damages, losses, emotional distress, rights, benefits, obligations, attorneys' fees, costs, and expenses), of any kind, nature or type, whether known or unknown, liquidated or unliquidated, matured or unmatured, that CAL II and/or CFS have or may have against any, some, or all of the Trustee Released Parties in connection with, arising out of or related to the GK Bankruptcy Case and the TVG Bankruptcy Case.

For the avoidance of doubt, the claims being released herein shall include any and all legal fees incurred by CAL II or CFS arising out of or relating to CAL II's or CFS's involvement with GK and/or TVG including any legal fees incurred by CAL II or CFS defending claims brought against CAL II or CFS by third parties other than the GK Trustee or the TVG Trustee.

**(b)    Release of CAL II and CFS**.

Upon the Effective Date and except for the obligations and benefits set forth by and for the Parties in this Agreement, the GK Trustee on behalf of the GK bankruptcy estate and the TVG Trustee on behalf of the TVG bankruptcy estate (collectively, the "Trustee Releasors")

hereby release and forever discharge CAL II and CFS and their attorneys and agents (the "CAL II Released Parties") from and against any and all claims (including, without limitation, all complaints, causes of action, lawsuits, charges, debts, liens, contracts, agreements, promises, liabilities, judgments, demands, damages, losses, emotional distress, rights, benefits, obligations, attorneys' fees, costs and expenses), of any kind, nature or type, whether known or unknown, liquidated or unliquidated, matured or unmatured, that the Trustee Releasors have or may have against the CAL II Released Parties in connection with, arising out of or related to the GK Bankruptcy Case and the TVG Bankruptcy Case.

For the avoidance of doubt, the CAL II Released Parties shall not include Joseph D. DiNardo, in his individual capacity (not as an agent or representative of CFS or CAL II), or any law firm or law practice that Joseph D. DiNardo has in the past, is currently or will become associated with in the future.

**(c)     Unknown Claims**.

The Parties each acknowledge and assume the risk that subsequent to the execution of the Settlement Agreement, he, she, or it may discover facts or law, or may incur, suffer, or discover losses, damages, or injuries that are unknown and unanticipated at the time the Settlement Agreement was executed or became effective, which if known at such time may have materially affected his, her, or its decision to give the release contained herein.

**(d)     Section 1542 Waiver**.

The GK Trustee on behalf of the GK bankruptcy estate, the TVG Trustee on behalf of the TVG bankruptcy estate, CAL II and CFS waive any and all rights they might otherwise possess under California Civil Code Section 1542 and similar provisions of law existing in any other jurisdiction.

California Civil Code Section 1542 provides as follows:

A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor.

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES

**3.1.     No Undisclosed Inducements**.  The Parties represent that they have entered into this Agreement in reliance on their own investigation and that no representations, warranties, or promises other than those set forth in this Agreement were made by the Parties or their agents, employees, or counsel to induce either Party to enter into this Agreement.

**3.2.     Representation by Counsel**.  Each Party represents that he, she or it has obtained independent legal advice with respect to this Agreement, the subject matter of this Agreement, the facts referred to above, and any rights or asserted rights arising therefrom.  The Parties

FINAL                                    7

acknowledge that they are executing this Agreement voluntarily, without any duress or undue influence.

**3.3.** **Authority to Execute Agreement**. The Parties warrant and represent that they are authorized to execute this Agreement on behalf of the respective parties and in their respective capacities as indicated below, provided however that the GK Trustee's and the TVG Trustee's execution of this Agreement is specifically subject to the approval of the Bankruptcy Court as provided for herein.

### ARTICLE 4
### GENERAL PROVISIONS

**4.1.** **Integration**. This Agreement sets forth the entire agreement between the Parties with regard to the subject matter hereof and no change, modification, amendment, termination or discharge of this Agreement shall be binding unless made in writing and executed by each of the parties. All agreements, covenants, representations and warranties, express or implied, oral and written, of the parties with regard to the subject matter hereof, are contained in this Agreement and the documents referred to herein or implementing the provisions hereof. No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party to another party with respect to the subject matter of this Agreement. All prior and contemporaneous conversations, negotiations, possible and alleged agreements and representations, covenants and warranties with respect to the subject matter hereof are waived, merged herein, and superseded hereby and thereby.

**4.2.** **No Third-Party Beneficiaries**. This Agreement is not for the benefit of any person who is not a party signatory to this Agreement or who is not specifically named as a beneficiary in this Agreement, and the provisions of this Agreement are not intended to affect the rights of any party or non-party against any person or entity who is not a party signatory to this Agreement or who is not specifically named as a beneficiary in this Agreement.

**4.3.** **Attorneys' Fees**. With respect to any suit or proceeding involving the enforcement of this Agreement, including, but not limited to, instituting any action or proceeding to enforce any provisions of this Agreement, to prevent a breach of this Agreement, for damages by reason of any alleged breach of any provisions of this Agreement, or for a declaration of a Party's rights or obligations under this Agreement, the ultimate prevailing Party shall be entitled to recover from the losing Party or Parties, in addition to such other relief as may be granted, his/her/its reasonable attorneys' fees (other than the attorneys' fees and costs to prepare this Agreement and seek Bankruptcy Court approval of this Agreement).

**4.4.** **Survival**. It is expressly understood and agreed by each of the Parties that nothing provided for in this Agreement is intended to nor does it release any claims arising out of breach of this Agreement, or any representations contained herein or made in connection herewith. All representations, warranties and covenants herein shall survive the execution of this Agreement.

**4.5.** **Further Documentation**. Following the date hereof, the parties must take such action and execute and deliver such further documents as may be reasonably necessary or appropriate to effectuate the intention of this Agreement.

**4.6.** **Governing Law**. This Agreement and the rights and obligations of the parties hereunder shall be construed, interpreted and enforced in accordance with the laws of the State of California.

**4.7.** **Jurisdiction**. In the event a dispute arises under this Agreement, the Bankruptcy Court shall have exclusive jurisdiction to interpret and enforce this Agreement.

**4.8.** **Interpretation**. This Agreement shall be treated as jointly drafted and will not be construed against any Party as drafter. Furthermore, in the event of any ambiguity in or dispute regarding the interpretation of this Agreement, the interpretation will not be resolved by any rule of interpretation providing for interpretation against the Party who causes the uncertainty to exist or against the draftsperson.

**4.9.** **Meaning of Pronouns and Effect of Headings**. As used in the Agreement and attached exhibits, the masculine, feminine and/or neuter gender, in the singular or plural, shall be deemed to include the others whenever the text so requires. The captions and paragraph headings in the Agreement are inserted solely for convenience or reference and shall not restrict, limit or otherwise affect the meaning of the Agreement.

**4.10.** **Counterparts and Electronic Signatures**. This Agreement may be executed in multiple counterpart copies, each of which shall be deemed an original, but all of which together shall constitute one agreement. A signature sent and received by facsimile or other electronic means shall constitute an original signature for purposes of this Agreement. An electronic signature shall constitute an original signature for purposes of this Agreement.

**4.11.** **Severability**. In the event that any covenant, condition or other provision contained in this Agreement is held to be invalid, void or illegal by any court of competent jurisdiction, the same shall be deemed severable from the remainder of this Agreement and shall in no way affect, impair or invalidate any other covenant, condition or other provision contained herein, so long as such severance does not materially affect the consideration given or received herein or the general intent hereof. If such condition, covenant or other provision shall be deemed invalid due to its scope or breadth, such covenant, condition or other provision shall be deemed valid to the extent that the scope or breadth is permitted by law.

**4.12.** **Waiver**. No breach of any provision herein can be waived unless in writing. Waiver of any one breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same or any other provision hereof. No failure or delay on the part of any Party to exercise any right hereunder, nor any other indulgence of such Party, shall operate as a waiver of any other rights hereunder, nor shall any single exercise by any Party of any right hereunder preclude any other or further exercise thereof. The rights and remedies herein provided are cumulative and not exclusive of any right or remedies provided by law.

**4.13.** **Binding on Successors**. This Agreement shall be binding upon and inure to the benefit of the successors, assigns, heirs, executors, administrators, etc. of each of the Parties,

FINAL

9

including but not limited to any successor trustee and GK and TVG after the case is dismissed or closed.

**4.14.** **No Assignments or Delegation of Rights**.  No Party hereto has assigned or delegated any rights to any other party or person any of the rights or interests related to any claim which may be subject to the terms of this Agreement.

**4.15.** **Further Assurances**.  The Parties shall take all further acts and sign all further documents necessary or convenient to effectuate the purpose of this Agreement.

**4.16.** **Full Authority to Sign Agreement**.  Any individual signing on behalf of any Party hereto expressly represents and warrants to each other Party that he or she has full authority to do so and to bind such Party hereto and, in the case of the GK Trustee and the TVG Trustee, to bind their respective estate, subject only to approval of the Bankruptcy Court.

**4.17.** **Parties to Bear Own Costs**.  Each party shall be responsible for the payment of its own costs, attorneys' fees, and all other expenses in connection with negotiation, preparation, execution, and approval of this Agreement.

**4.18.** **Recitals Acknowledged**.  The Recitals are true and correct to the best of the Parties' knowledge, and hereby adopted by the Parties.


**IN WITNESS WHEREOF**, the Parties hereto hereby execute this Agreement as of the date of final signature below.

CALIFORNIA ATTORNEY LENDING II, INC.

DATED:  March  21 , 2023

By: _____

     Paul R. Cody
Its: President & CEO


DATED:  March  21 , 2023            COUNSEL FINANCIAL SERVICES, LLC


By: _____

     Megan B. Payne
Its: Vice President

DATED:  March  20, 2023

_____
ELISSA D. MILLER, solely in her capacity as
Chapter 7 Trustee of the Girardi Keese estate


DATED:  March ___, 2023

_____
JASON M. RUND, solely in his capacity as
Chapter 7 Trustee of the Thomas V. Girardi estate

DATED:  March ___, 2023

_____
ELISSA D. MILLER, solely in her capacity as
Chapter 7 Trustee of the Girardi Keese estate


DATED:  March _21_, 2023

_____
JASON M. RUND, solely in his capacity as
Chapter 7 Trustee of the Thomas V. Girardi estate

FINAL

11

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626.

 A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER APPROVING COMPROMISE WITH JASON M. RUND, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF THOMAS V. GIRARDI, CALIFORNIA ATTORNEY LENDING II, INC., AND COUNSEL FINANCIAL SERVICES, LLC, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ELISSA D. MILLER IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 28, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  March 28, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 28, 2023 | Gabriela Gomez-Cruz | /s/ Gabriela Gomez-Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

ADDITIONAL SERVICE INFORMATION (if needed):

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- Kyra E Andrassy    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Rafey Balabanian    rbalabanian@edelson.com, docket@edelson.com;5926930420@filings.docketbird.com
- Michelle Balady    mb@bedfordlg.com, leo@bedfordlg.com
- Robert D Bass    bob.bass47@icloud.com
- Reem J Bello    rbello@goeforlaw.com, kmurphy@goeforlaw.com
- Kate Benveniste    kate.benveniste@us.dlapiper.com, dlaphx@us.dlapiper.com
- Ori S Blumenfeld    oblumenfeld@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com
- Evan C Borges    eborges@ggtriallaw.com, cwinsten@ggtriallaw.com
- William E Brueckner    wbrueckner@woodsoviatt.com
- Richard Dennis Buckley    rbuckley@safarianchoi.com
- Steve Burnell    Steve.Burnell@gmlaw.com, sburnell@ecf.courtdrive.com;sburnell@ecf.inforuptcy.com;cheryl.caldwell@gmlaw.com;denise.walker@gmlaw.com
- Glenn Ward Calsada    glenn@calsadalaw.com, lnw@calsadalaw.com;glenncalsada@gmail.com,niko@calsadalaw.com,lauren@calsadalaw.com,pat@calsadalaw.com
- Indira J. Cameron-Banks    indira@cameronjones.law, tiffany@cameronbankslaw.com
- Michael F Chekian    mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- Marie E Christiansen    mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-4166@ecf.pacerpro.com
- Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;jessica@lesliecohenlaw.com
- Jennifer Witherell Crastz    jcrastz@hrhlaw.com
- Christopher D Crowell    ccrowell@hrhlaw.com
- Ashleigh A Danker    adanker731@gmail.com
- Lei Lei Wang Ekvall - DECEASED -    lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Richard W Esterkin    richard.esterkin@morganlewis.com
- Oscar Estrada    oestrada@ttc.lacounty.gov
- Timothy W Evanston    tevanston@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Jeremy Faith    Jeremy@MarguliesFaithlaw.com, Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- James R Felton    jfelton@gblawllp.com, pstruntz@gblawllp.com;msingleman@gblawllp.com
- James J Finsten    , jimfinsten@hotmail.com
- James J Finsten    jfinsten@lurie-zepeda.com, jimfinsten@hotmail.com
- Alan W Forsley    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com
- Larry W Gabriel    lgabrielaw@outlook.com, tinadow17@gmail.com
- James B Glucksman    jbg@dhclegal.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- Eric D Goldberg    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Rosendo Gonzalez    rossgonzalez@gonzalezplc.com, rgonzalez@ecf.axosfs.com;jzavala@gonzalezplc.com;zig@gonzalezplc.com;gig@gonzalezplc.com
- Andrew Goodman    agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com
- Suzanne C Grandt    suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov
- Steven T Gubner    sgubner@bg.law, ecf@bg.law
- Asa S Hami    asa.hami@gmlaw.com, ahami@ecf.courtdrive.com;patricia.dillamar@gmlaw.com;pdillamar@ecf.courtdrive.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com
- Stella A Havkin    stella@havkinandshrago.com, shavkinesq@gmail.com
- James Andrew Hinds    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com
- Marshall J Hogan    mhogan@swlaw.com, knestuk@swlaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                       **F 9013-3.1.PROOF.SERVICE**

- Bradford G Hughes    bhughes@Clarkhill.com, mdelosreyes@clarkhill.com
- Sheryl K Ith    sith@cookseylaw.com
- Razmig Izakelian    razmigizakelian@quinnemanuel.com
- Steven D Jerome    sjerome@swlaw.com
- Lillian Jordan    nefrecipients@donlinrecano.com, RMAPA@DONLINRECANO.COM
- Alphamorlai Lamine Kebeh    akebeh@danninggill.com
- Molly J. Kjartanson    mkjartanson@swlaw.com
- Michael S Kogan    mkogan@koganlawfirm.com
- Kenneth A Kotarski    KKOTARSKI@HAMRICKLAW.COM,
  hmartindale@HAMRICKLAW.COM;pliscano@hamricklaw.com;gknopfler@hamricklaw.com;khearn@hamricklaw.com;secretary2@hamric
  klaw.com;sjustice@hamricklaw.com;jpoole@hamricklaw.com
- Lewis R Landau    Lew@Landaunet.com
- Janet A Lawson    jlawsonlawyer@gmail.com, G38570@notify.cincompass.com
- Daniel A Lev    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- Marc A Lieberman    marc.lieberman@flpllp.com, safa.saleem@flpllp.com
- Elizabeth A Lombard    elombard@zwickerpc.com, bknotices@zwickerpc.com
- Noreen A Madoyan    Noreen.Madoyan@usdoj.gov
- Aaron J Malo    amalo@sheppardmullin.com, clopez@sheppardmullin.com;abilly@sheppardmullin.com
- Kathleen P March    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- Craig G Margulies    Craig@MarguliesFaithlaw.com,
  Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- Ron Maroko    ron.maroko@usdoj.gov
- Damian J. Martinez    damian.martinez@aalrr.com, julissa.ruiz@aalrr.com
- Peter J Mastan    peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
- Edith R. Matthai    ematthai@romalaw.com, lrobie@romalaw.com
- Daniel J McCarthy    dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;nchacon@hfbllp.com
- Dennis E McGoldrick    dmcgoldricklaw@yahoo.com, demcg@demcg.com
- Elissa Miller (TR)    CA71@ecfcbis.com,
  MillerTrustee@gmlaw.com;C124@ecfcbis.com;cheryl.caldwell@gmlaw.com;cheryl.caldwell@ecf.courtdrive.com
- Eric A Mitnick    MitnickLaw@gmail.com, mitnicklaw@gmail.com
- Byron Z Moldo    bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- Kevin H Morse    kmorse@clarkhill.com, blambert@clarkhill.com
- Glenn D. Moses    gmoses@venable.com, cascavone@venable.com;ipmalcolm@venable.com;jadelgado@venable.com
- Gilbert M Nishimura    gnishimura@snw-law.com, schin@snw-law.com;sgalindo@snw-law.com;ffilimona@snw-law.com
- Scott Olson    scott.olson@bclplaw.com, scott-olson-2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Carmela Pagay    ctp@lnbyb.com
- Carmela Pagay    ctp@lnbyg.com
- Leonard Pena    lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com
- Matthew D Pham    mpham@allenmatkins.com, mdiaz@allenmatkins.com
- Steven G. Polard    steven.polard@ropers.com, calendar-
  lao@ropers.com;keiko.kakiuchi@ropers.com;tiffany.sterling@ropers.com;anthony.arriola@ropers.com
- Christopher E Prince    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com;jnavarro@lesnickprince.com
- Michael J Quinn    mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-
  2870@ecf.pacerpro.com,ahirschkowitz@vedderprice.com
- Dean G Rallis    drallis@hahnlawyers.com, jevans@hahnlawyers.com;drallis@ecf.courtdrive.com;jevans@ecf.courtdrive.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- Kevin C Ronk    Kevin@portilloronk.com, Attorneys@portilloronk.com
- Brian M Rothschild    brothschild@parsonsbehle.com, usclawyer@yahoo.com;ecf@parsonsbehle.com
- Frank X Ruggier    frank@ruggierlaw.com, enotice@pricelawgroup.com
- William F Savino    wsavino@woodsoviatt.com, lherald@woodsoviatt.com
- Scott A Schiff    sas@soukup-schiff.com
- Daren M Schlecter    daren@schlecterlaw.com, assistant@schlecterlaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

- Kenneth John Shaffer    johnshaffer@quinnemanuel.com
- Amir Shakoorian    AShakoorian@GGTrialLaw.com
- Summer M Shaw    ss@shaw.law, shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com
- Zev Shechtman    zs@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- Anastasija Olegovna Snicarenko    legal@flyxo.com, jennifer@cypressllp.com
- Richard M Steingard    , awong@steingardlaw.com
- Andrew Still    astill@swlaw.com, kcollins@swlaw.com
- Annie Y Stoops    annie.stoops@afslaw.com, yvonne.li@arentfox.com
- Philip E Strok    pstrok@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- Jeffrey L Sumpter    jsumpter1@cox.net
- Terrence Swinson    terrenceswinson@gmail.com
- Tamar Terzian    tamar@terzlaw.com, sandra@terzlaw.com
- Boris Treyzon    btreyzon@actslaw.com, pjs@actslaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Diane C Weil    dcweil@dcweillaw.com, diane.c.weil@Gmail.com,dweil@ecf.inforuptcy.com,jfiser@dcweillaw.com
- David R. Weinstein    dweinstein@weinsteinlawfirm.net
- Andrew D. Weiss    ADWeiss@oclawadw.com
- Jessica Wellington    jwellington@bg.law, ecf@bg.law
- Pauline White    pauline@paulinewhite.com
- Eric D Winston    ericwinston@quinnemanuel.com
- Christopher K.S. Wong    christopher.wong@afslaw.com, yvonne.li@arentfox.com
- Robert M Yaspan    court@yaspanlaw.com, tmenachian@yaspanlaw.com
- Timothy J Yoo    tjy@lnbyb.com
- Isaac R Zfaty    izfaty@muchlaw.com
- David B Zolkin    dzolkin@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com
- Joshua del Castillo    jdelcastillo@allenmatkins.com, mdiaz@allenmatkins.com
-

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.