1 | EVAN C. BORGES, State Bar No. 128706
*EBorges@GGTrialLaw.com*
2 | DAVID T. SHACKELFORD, State Bar No. 318149
*Dshackelford@GGTrialLaw.com*
3 | GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
4 | Costa Mesa, California 92626
Telephone: (949) 383-2800
5 | Facsimile: (949) 383-2801

6 | Attorneys for Creditor and Party-in-Interest Erika Girardi

7

8

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

11

12 | In re | Case No. 2:20-bk-21022-BR

13 | GIRARDI KEESE, | Chapter 7

14 | Debtor. | **OMNIBUS OPPOSITION OF ERIKA GIRARDI TO MOTIONS OF**

15 | | **CHAPTER 7 TRUSTEES, PURSUANT TO BANKRUPTCY RULE 9019, FOR**

16 | | **AN ORDER APPROVING SETTLEMENT AGREEMENT WITH**

17 | | **CALIFORNIA ATTORNEY LENDING II, INC., AND COUNSEL FINANCIAL**

18 | | **SERVICES, LLC; AND REQUEST FOR CONTINUANCE OF HEARING**

19 | | **TO ALLOW FOR DISCOVERY IN THIS CONTESTED MATTER**

20 | | [Request for Judicial Notice Filed

21 | | Concurrently Herewith]

22 | | Date:     April 18, 2023
Time:     10:00 a.m.

23 | | Crtrm.:   1668

24 | | 255 E. Temple Street
Los Angeles, CA 90012

25 | | Judge:   Hon. Barry Russell

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ......................................... 6

II.     STATEMENT OF FACTS ................................................................................. 11

    A.      2011-2013:  Commencement of Lending Relationship Between Cal II
and GK; and GK's Payment to Mr. DiNardo (an owner, principal, and
the representative of Cal II interfacing with GK) of $6.35 Million in
Stolen Client Settlement Funds. .................................................................. 11

    B.      2019-2020:  The Role of Cal II and Mr. DiNardo in Managing and
Controlling GK's Finances and Closely Monitoring GK Legal Cases. ........ 12

    C.      Early 2020:  Cal II Orchestrates and Receives a Payment from Boeing
of $1,772,500 Which Consisted of GK Client Funds to Which Cal II
Had No Entitlement; Cal II Refused to Return the Funds Even After
Having Knowledge That They Are Stolen Property; and the
Ambiguity in the Settlement at Issue Regarding Whether Cal II Has
Given a Credit Toward its Alleged Claim based on this Payment. ............... 14

    D.      November 2020:  ACTS and Cal II Force TG and GK to Sign
Agreement Turning Over All GK Cases of Value, With No Binding
Commitment in Return. ................................................................................ 14

    E.      Early December 2020:  Cal II's Ex Parte Application for a Receiver
Over GK and the Agreement Between Cal II and ACTS to Dismiss
the Receivership Action to Avoid Judicial Scrutiny; Only Edelson
Objects. ........................................................................................................ 16

    F.      Mid-December 2020 – January 2021:  Edelson Obtains a Freeze
Order Over GK's Assets; To Avoid Impact of Freeze Order, ACTS
and Cal II Orchestrate the Involuntary Petitions and the Emergency
Motions for Appointment of Trustees; and Their Role in the Trustee
Selection Process. ........................................................................................ 17

    G.      February 17, 2021:  ACTS Obtains Signatures from TG Trustee on:
(a) Early Settlement with Ruigomez Creditors Without Meaningful
Investigation; and (b) Retention Agreement by TG Trustee to Employ
ACTS as Special Counsel to the TG Estate. ................................................ 18

    H.      May 3, 2021:  The TG Trustee and the GK Trustee Sign Separate
Early "Sweetheart" Settlement Agreements with Cal II, Based on No
Meaningful Investigation, Under No Exigency, and Before the
Secured Creditor Bar Date in the GK Case of June 23, 2021 ...................... 19

    I.      August 2022:  The GK Trustee's Adversary Proceeding Against Cal
II, CFS, and Mr. DiNardo. ........................................................................... 19

    J.      January 2023:  Ms. Girardi's Notice of Intent To File Motion for
Order Disqualifying and Immediately Terminating ACTS as Special
Counsel to the Trustee of the Tom Girardi Estate, For Sanctions, and
Other Relief ................................................................................................. 20

K.    January 2023:  The Ruigomez Creditors' Suit Against ACTS. .................... 20

L.    March 2023:  Under No Circumstances of Exigency, the Trustees Agree to the Settlement Agreement at Issue with Cal II, Including:  (a) a Complete Surrender by the Trustees to Cal II; (b) No Consideration of Critical Undisputed Facts Such as the Prior $6.35 Million Payment to Mr. DiNardo/Cal II; and (c) a Total Payment to Cal II of $7.5 Million, Which is More Than Payment in Full and Far Exceeds the Amount Even Potentially Due to Cal II. ....................................................... 20

III.    ARGUMENT ............................................................................................... 21

IV.    CONCLUSION ........................................................................................... 25

OMNIBUS OPPOSITION OF ERIKA GIRARDI TO MOTION FOR ORDER APPROVING SETTLEMENT
BETWEEN TRUSTEES, CAL II AND CFS; REQUEST FOR CONTINUANCE TO PERMIT DISCOVERY

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

4

**Cases**

5

*In re A & C Properties*,
    784 F.2d 1377 (9th Cir. 1986)..................................................................22

6

7

*In re Arter & Hadden LLP*,
    373 B.R. 31 (Bankr. N.D. Ohio 2007) .........................................................23

8

9

*In re de Armond*,
    240 B.R. 51 ........................................................................................22

10

11

*In re Drexel Burnham Lambert Group, Inc. v. Claimants Identified on
    Schedule I (In re Drexel Burnham Lambert Group, Inc.)*,
    995 F.2d 1138 (2d Cir. 1993) ....................................................................23

12

13

*In re Fitzgerald*,
    428 B.R. 872 .......................................................................................22

14

15

*In re Iridium Operating LLC*,
    478 F.3d 452 (2d Cir. 2007)......................................................................22

16

17

*In re Kuhns*,
    101 B.R. 243 (Bkrtcy. D. Mont. 1989) ........................................................24

18

*In re Masters Mates & Pilots Pension Plan and IRAP Litigation*,
    957 F.2d 1020 (2d Cir. 1992).............................................................23, 24

19

20

*In re Medical Asset Management, Inc.*,
    249 B.R. 659 (Bankr. W.D. Pa. 2000) .........................................................23

21

22

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v.
    Anderson* (*TMT*)
    390 U.S. 414, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968)...............................22, 23

23

24

*In re The Gen. Store of Beverly Hills*,
    11 B.R. 539 (B.A.P. 9th Cir. 1981) .............................................................23

25

26

*In re Transcon. Energy Corp.*,
    764 F.2d 1296 (9th Cir. 1985)...................................................................23

27

28

*Matter of W.T. Grant Co.*,
    4 B.R. 53 (Bankr.S.D.N.Y.1980)................................................................23

-4-

1

**Other Authorities**

2

FRBP Rule 2014 ......................................................................................................... 9, 18

FRBP Rule 9019 ............................................................................................................. 6

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OMNIBUS OPPOSITION OF ERIKA GIRARDI TO MOTION FOR ORDER APPROVING SETTLEMENT
BETWEEN TRUSTEES, CAL II AND CFS; REQUEST FOR CONTINUANCE TO PERMIT DISCOVERY

Creditor and party-in-interest Erika Girardi ("Ms. Girardi") hereby submits her
Omnibus Opposition in response to the Rule 9019 motions filed by Elissa D. Miller,
chapter 7 trustee of the Girardi Keese bankruptcy estate (the "GK Trustee") and Jason
Rund, chapter 7 trustee of the Thomas Girardi bankruptcy estate (the "TG Trustee")
(collectively the "Trustees").  The GK Trustee filed her motion on minimum notice on
March 28, 2023 (Docket No. 1673) (the "GK Trustee Motion"); and the TG Trustee filed
his motion on March 24, 2023 (Docket No. 431) (the "TG Trustee Motion") (collectively
the "Motions").  The Motions are currently set for hearing on April 18, 2023.

## I.    <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

The Motions present for decision among the most important of issues brought
before the Court in these bankruptcy cases.  Specifically, the Court must decide:

**(1)** Whether an alleged secured creditor, California Lending II, Inc. ("Cal II"),
which the GK Trustee in a recent adversary proceeding accused of intentional misconduct,
harming the estate, and responsible for tens if not hundreds of millions of dollars in
compensatory and punitive damages, should be:  (a) let off the hook and released by the
Trustees; and (b) affirmatively paid early, before any other creditor, a total amount of at
least **$7.5 million**, which is **more** than payment in full and, specifically, in excess of
$800,000 above the $6.668 million asserted amount of Cal II's proof of claim as filed?

**(2)** Whether an alleged secured creditor, Cal II, should receive payment from the
estates of more than $7.5 million when uncontroverted documentary evidence shows that
GK paid to Joseph DiNardo (an owner, principal, and the main representative of Cal II
interfacing with GK) **$6.35 million** in client funds literally stolen by GK out its client trust
account?  Neither DiNardo nor Cal II had any right to these stolen funds, which were
transmitted on GK client trust account checks describing the payments as "Assoc Counsel
Fees."  Neither DiNardo nor Cal II had any attorney-client relationship or right to fees in
the client matter in question (which was the Ruigomez case).  The funds should have been
returned immediately by DiNardo and Cal II, but were not, and the $6.35 million, plus

1 pre-judgment interest, should be applied as an offset to Cal II's claim.[1]  The pending

2 Motions say ***nothing*** about these critical facts, which are known to both Trustees.

3      **(3)** Why are the Trustees seeking to rush a decision on the Motions on minimum

4 notice where no exigency exists?  These cases have been pending for more than two years.

5 The Motions request that the Court – on a woefully incomplete evidentiary record with

6 critical issues outstanding that must be examined through discovery – make far-reaching

7 decisions with economic significance to these estates far beyond the $8 million that the

8 Trustees are racing to pay to two favored creditors, including Cal II.

9      **(4)** Whether additional recently-discovered facts, which are directly relevant to the

10 Motions and raise concerns about integrity of the bankruptcy process, should be ignored

11 and swept under the rug by granting the Motions under a euphemism of "efficiency."  This

12 Court, the parties in interest, and the OUST are entitled to know the full truth.

13      As explained below, the evidence shows irregularities, non-disclosure, and

14 concealment of facts from this Court regarding the history, role, and influence in these

15 bankruptcy cases of the key drivers behind and beneficiaries of the settlement at issue in

16 the Motions, namely:  (1) Cal II and its affiliate CFS; and (2) Abir Cohen Treyzon & Salas

17 ("ACTS"), now-former counsel to the Ruigomez creditors.  Pre-petition, commencing no

18 later than November 2020, ACTS orchestrated, ***along with Cal II***, an attempted taking of

19 all GK's cases, including affirmatively seeking to avoid any court supervision.  At the

20 time, Edelson, P.C. was the only party who objected to the private plan of ACTS and Cal

21 II to take for themselves virtually all the value of GK.  After Edelson obtained a freeze

22

23      [1] Indeed, the payment when made was sufficient to pay off GK's **entire loan
balance** with Cal II.  Cal II and DiNardo, however, never gave a credit against the loan

24 balance for this payment, and, on information and belief, continued to collect usurious

25 interest payments from GK, based on an artificially inflated principal balance, in amounts
that the GK Trustee has not disclosed or provided the information based on which an

26 analysis can be performed.  In addition, evidence attached by the GK Trustee to her
adversary complaint against Cal II, its affiliate Counsel Financial Services, LLC ("CFS"),

27 and Mr. DiNardo shows that multiple other payments were made by GK to Mr. DiNardo

28 and CFS.  The Motions provide no analysis of these issues.

OMNIBUS OPPOSITION OF ERIKA GIRARDI TO MOTION FOR ORDER APPROVING SETTLEMENT
BETWEEN TRUSTEES, CAL II AND CFS; REQUEST FOR CONTINUANCE TO PERMIT DISCOVERY

order over GK's assets on December 14, 2020, and with the goal of eliminating the freeze

order's damper on the plan of ACTS and Cal II, ACTS masterminded the involuntary

petitions, entered into attorney-client relationships with some or all of the petitioning

creditors, and obtained and paid for the fees of bankruptcy counsel for the petitioning

creditors – none of which has been disclosed to the OUST or this Court.  Next, ACTS

coordinated ***with Cal II*** the emergency motions for appointment of trustees, giving the

false impression that the petitioning creditors (secretly represented by ACTS) and Cal II

(already coordinating with ACTS to take all GK's cases of value) were innocent and

substantial creditors to whom the OUST must give credence in selecting chapter 7 trustees.

Thus, ACTS and Cal II misleadingly and falsely put themselves at the forefront for the

OUST in terms of creditors with whom to consult about appointment of specific trustees.

Disturbingly, the evidence shows that ACTS, through bankruptcy counsel for the

petitioning creditors, engaged in multiple conversations with the OUST about what

trustees to appoint in these cases.  It is currently unknown whether ACTS or Cal II had

influence over the trustee selection process, including what was communicated to the

Trustees in this regard.

What we do know, as shown by the background of the settlement at issue in the

Motions, is that both ACTS (for its then-clients, the Ruigomez creditors) and Cal II were

able to obtain, within a matter of weeks of the Trustees' appointment and before the bar

date for secured creditor claims, extremely favorable "sweetheart" settlements.  At a

minimum, these settlements, with only ACTS's client (Ruigomez) and Cal II – no one else

– were rushed, based on no opportunity for an investigation, and demand further inquiry.

The early settlements with ACTS and Cal II, respectively, were consummated with

agreements signed on February 17, 2021 (approximately four weeks after the Order for

Relief) and May 3, 2021, and were based on woefully incomplete investigations.

Specifically, the GK Trustee's early settlement with Cal II – which similar to now, was at a

time of no exigency when the GK estate already had $3.8 million in cash on hand (apart

from client funds) – was and is contrary to the conclusions reached by the GK Trustee after

-8-

1    an actual and genuine investigation, as demonstrated by the GK Trustee's August 2022

2    adversary proceeding against Cal II.

3         In contrast to the GK Trustee, the TG Trustee has never lifted a finger to challenge

4    Cal II and, instead, has fully surrendered and acquiesced to the demands of Cal II and

5    ACTS at every opportunity.  Moreover, on the exact same day (February 17, 2021) that the

6    TG Trustee signed an immediate settlement agreement for the Ruigomez creditors based

7    on zero investigation, ACTS also obtained a signature from the TG Trustee on a retention

8    agreement to employ ACTS as special counsel to the TG estate.  At the time, the TG

9    Trustee knew or should have known that ACTS had irreconcilable conflicts.  Later, both

10   Trustees learned facts showing that ACTS affirmatively concealed and failed to disclose

11   material facts in not one but two separate Rule 2014 statements filed by it.  To date, neither

12   of the Trustees has done anything meaningful about it, which is a concern.

13        To be clear, Ms. Girardi wants the Ruigomez creditors to be made whole for their

14   losses.  But the settlement proposed by the Motions uses the publicity ruse of a payment to

15   the Ruigomez creditors at the cost of monumental harm to the estates, creditors, and the

16   interests of justice in the portions of the settlement related to Cal II.  The Court's decision

17   on whether to approve the settlement in the Motions should not be rushed on minimum

18   notice as the Trustees request.  Key background facts, and issues related to the integrity of

19   this bankruptcy process, should and must be investigated through discovery.  Otherwise,

20   the harm created by prior decisions of the Trustees in entering into the hasty and grossly

21   negligent early settlements, including with Cal II, will be compounded exponentially by

22   rushing again for no good reason.  The result will be to aid wrongdoers in escaping

23   scrutiny or accountability.

24        Based on the facts, evidence, and proffer of evidence below, Ms. Girardi requests

25   that the Court rule as follows:

26        1.  The Court should continue the hearing on the Motions for at least 90 to 120

27   days, to allow Ms. Girardi and any other parties in interest the opportunity to conduct

28   formal discovery into critical background facts.  In this regard, Ms. Girardi intends to file

-9-

1   in the near future motions for orders to show cause related to the misconduct of ACTS and

2   related issues that bear on the Motions.  The integrity of the bankruptcy process, and the

3   Court being able to make decisions based on all the relevant facts, are more important than

4   considerations of "efficiency" in cases that are more than two years old.  Thus, Ms. Girardi

5   requests that the Court continue the hearing on the Motions for 90 to 120 days to allow for

6   discovery in this contested matter.

7          2.  If the Court is inclined to decide the Motions, given that (a) the Trustees have

8   presented the Court with a skewed and narrow record, and (b) granting the Motions would

9   be against the interests of the estates, creditors, and the interests of justice, the Court

10  should deny the Motions.  The denial can be without prejudice to renewing the Motions in

11  the future with a full and proper record.

12         3.  If the Court is inclined to grant the Motions, Ms. Girardi requests that, to avoid

13  unnecessary harm and prejudice to persons and entities who are not parties to the

14  settlement agreement at issue in the Motions, including without limitation Ms. Girardi, the

15  Court clarify in its approval Order that granting the Motions does not and will not affect

16  the rights and claims of any person or entity who is not a party to the settlement agreement

17  at issue, which only binds the specific parties to the settlement agreement but not any non-

18  parties unless expressly mentioned.  Thus, non-parties or third parties such as Ms. Girardi

19  or any other person or entity that assert claims, now or in the future, against the parties to

20  the settlement agreement should not and will not be barred by the Court's approval order.

21  In addition, to avoid unintended prejudice to non-parties to the settlement, the approval

22  Order should approve the settlement only if the term that the GK Trustee will dismiss her

23  pending appeal (from this Court's order dismissing the GK Trustee's adversary proceeding

24  against Cal II and CFS) is modified to provide for a dismissal without prejudice as

25  opposed to a dismissal with prejudice.

26         4.  Finally, Ms. Girardi supports the Court, as a matter of equity and if necessary

27  based on further motion or application after consultation with new counsel for the

28  Ruigomez creditors, permitting an interim payment out of the Kelco proceeds (as

-10-

described in the Motions) to the Ruigomez creditors on their secured claim.

II.    **STATEMENT OF FACTS**

    A.    **2011-2013:  Commencement of Lending Relationship Between Cal II and GK; and GK's Payment to Mr. DiNardo (an owner, principal, and the representative of Cal II interfacing with GK) of $6.35 Million in Stolen Client Settlement Funds.**

According to the GK Trustee, on or about July 5, 2011 and August 12, 2011, Cal II commenced its lending relationship with GK by making two loans for $3.5 million and $1.5 million for a total principal amount of $5 million.[2]

In 2013, based on an undisputed GK "case card register" recently obtained by the Ruigomez creditors, GK, after receiving the Ruigomez creditors' settlement funds, misappropriated those funds by sending two checks totaling $6.35 million, written on the GK client trust account, to Joseph DiNardo, an owner, managing agent and the main representative of Cal II interfacing with GK.  The GK case card register shows that GK sent the $6.35 million to Mr. DiNardo (1) by GK trust account check number 101721 dated February 12, 2013 for $5.825 million; and (2) by GK trust account check number 10234 dated May 20, 2013 for $500,000.  The case card register describes both payments as for "Assoc. Counsel Fees."[3]

Mr. DiNardo never served as co-counsel or associated counsel with GK in the Ruigomez case; and he had no entitlement whatsoever to the $6.35 million sent to him by GK of Ruigomez settlement funds from the GK client trust account.

In sum, the evidence shows that GK stole the funds, which were property of the Ruigomez creditors, from its client trust account, and paid over the funds to Mr. DiNardo/Cal II who never had any entitlement to them.  Mr. DiNardo should have returned the funds upon receipt.

---

[2]  Request for Judicial Notice ("RJN") Exhibit A ¶¶ 40, 41.

[3]  RJN, Exhibit B.

1    The only potentially legitimate reason for GK to pay the $6.35 million to Mr.

2  DiNardo would have been a loan repayment on the Cal II facility.  Given the loan balance

3  at the time on the Cal II facility of no more than $5 million plus interest, the $6.35 million

4  should have constituted **payment in full** of the Cal II loan.  Neither Cal II nor Mr.

5  DiNardo, however, credited the Cal II loan balance at any time to reflect the $6.35 million

6  payment (including in Cal II's proofs of claim).

7    The Trustees have been and are fully aware of the above facts.  Accordingly, at best

8  for Cal II and Mr. DiNardo, GK had and has an offset right against Cal II's proofs of claim

9  in the amount of $6.35 million, plus pre-judgment interest accruing as of 2013.

10    Disturbingly, the settlement at issue in the Motions does not take into account and

11  the Motions do not discuss, at all, the estates' offset right of more than $6.35 million

12  against Cal II's claims.  For this reason alone, the outcome sought by the Motions of

13  paying Cal II a total of $7.5 million on its claims would be unconscionable, and the

14  Motions should be denied.

15    **B.    2019-2020:  The Role of Cal II and Mr. DiNardo in Managing and**

16  **Controlling GK's Finances and Closely Monitoring GK Legal Cases.**

17    As alleged in the GK Trustee's August 2022 adversary complaint against Cal II, and

18  as supported by the Exhibits to the complaint, commencing in 2019 if not sooner, Mr.

19  DiNardo and Cal II insisted that GK put into place a CRO, paid for by Cal II, with full

20  insight and access to all GK finances, and with control over GK's finances.[4]  Further, the

21  emails attached to the GK trustee's adversary complaint show that Mr. DiNardo negotiated

22  with other lenders on GK's behalf, and directed GK's actions regarding any additional

23  borrowing.[5]

24    Under lender liability law, a lender's control over a borrower's operations or

25  management of its finances gives rise to fiduciary duties.  Further, Cal II itself, in its

26

27    [4]  RJN, Exhibit A.

28    [5]  RJN, Exhibit A.

-12-

declaration in support of the emergency motion for appointment of trustees in these cases, discusses its extensive proprietary means of monitoring cases handled by borrower law firms.[6]  Also, Mr. DiNardo, in an exhibit to the GK Trustee's adversary complaint, refers to Cal II's ongoing access and visibility into GK's finances.[7]  Finally, the exhibits to the Ruigomez creditors' recently filed state court complaint against ACTS and its partner Robert Finnerty (a former long-time GK partner) demonstrate that anyone monitoring legal dockets and filings would be on notice of multiple lawsuits against GK through the years involving accusations of theft of client settlement funds.[8]

Ms. Girardi submits that the GK Trustee, in her adversary complaint against Cal II, CFS, and Mr. DiNardo, sufficiently alleged facts, or should have been given leave to allege facts, which would support both (1) a fiduciary duty to GK owed by Cal II, DiNardo, and CFS; and (2) a conclusion that Cal II, CFS, and Mr. DiNardo must have been aware, through the years, of the multiple lawsuits filed against GK accusing the firm and its partners of misappropriating client funds.[9]  Cal II, Mr. DiNardo, and CFS, however, instead of cutting off their business relationship with GK, doubled down and continued to fund, aid, and abet GK's operations, which they knew or should have known involved a material risk of GK perpetrating frauds on clients.

The settlement in the Motions does not take into account any of the foregoing factors.  Instead, the GK Trustee inexplicably has flip-flopped from suing Cal II and CFS for tens of millions of dollars or more, including intentional torts, to a complete surrender to Cal II **and** agreeing to pay its claim **more than in full** (specifically for in excess of $800,000 above the original asserted amount of its claim) **long before** any other creditor will get paid.  In addition, as noted, the TG Trustee's pattern of consistent capitulation to

---

[6]  RJN, Exhibit C.

[7]  RJN, Exhibit A.

[8]  RJN, Exhibit D.

[9]  RJN, Exhibit A.

OMNIBUS OPPOSITION OF ERIKA GIRARDI TO MOTION FOR ORDER APPROVING SETTLEMENT
BETWEEN TRUSTEES, CAL II AND CFS; REQUEST FOR CONTINUANCE TO PERMIT DISCOVERY

Cal II, without any meaningful investigation, is suspect, a gross breach of duties to the TG estate or worse, and falls outside any justifiable exercise of judgment.

**C.**      **Early 2020:  Cal II Orchestrates and Receives a Payment from Boeing of $1,772,500 Which Consisted of GK Client Funds to Which Cal II Had No Entitlement; Cal II Refused to Return the Funds Even After Having Knowledge That They Are Stolen Property; and the Ambiguity in the Settlement at Issue Regarding Whether Cal II Has Given a Credit Toward its Alleged Claim based on this Payment.**

According to the GK Trustee's adversary complaint, in March 2020, Cal II, CFS, and Mr. DiNardo orchestrated and caused a payment to be wired to Cal II directly from Boeing in the amount of $1,772,500, which represented settlement proceeds due to GK's clients in the Lion Air cases.[10]  No later than the time of Judge Durkin's contempt and freeze orders in December 2020, Cal II was on notice and aware of the fact that the funds it had received were client property and stolen.  Nonetheless, even after demand, Cal II refused to return the funds.

The settlement at issue in the pending Motions is ambiguous as to whether Cal II has given a credit against or reduction of its asserted claim based on the above payment.  Counsel for the GK Trustee has advised that, in fact, in the May 3, 2021 settlement between the GK Trustee and Cal II, Cal II gave such a credit; but counsel for the GK Trustee was not at the time able to locate documentation of this fact, which should be provided.  Cal II cannot both fail to return to the funds and fail to provide a credit to the GK estate.

**D.**      **November 2020:  ACTS and Cal II Force TG and GK to Sign Agreement Turning Over All GK Cases of Value, With No Binding Commitment in Return.**

By the fall of 2020, ACTS for the Ruigomez creditors had obtained a judgment

---

[10] RJN, Exhibit A, ¶ 75.

against GK and TG for $11 million in April 2020, and ACTS actively pursued various means of judgment collection.  In addition, by October 2020, Cal II had obtained a judgment by confession against GK and TG of approximately $8 million.

On or about November 18, 2020, at a time that TG and GK were in financial extremis, after Ms. Girardi had filed for divorce and moved to a rental, after it appears that most GK lawyers had left the firm (including various attorneys and staff going to ACTS), ACTS acted on its (and on information and belief, Cal II''s) predatory plan to take virtually all remaining cases of value from GK.  Specifically, ACTS in support of its $95 million proofs of claim in these cases, has attached a written agreement with TG dated November 18, 2020, pursuant to which ACTS, without making any affirmative commitments or paying any consideration, caused TG to commit to transfer to ACTS the entirety of the case portfolio of GK at the time, including the crown jewel Porter Ranch cases, with ACTS deciding what it would take..[11]

The November 2020 Agreement, in short, purported to hand over to ACTS everything remaining of value at GK, in exchange for a non-binding if not illusory and meaningless commitment from ACTS in return, under which ACTS in its sole discretion would determine what if anything it would pay to GK.  While not immediately relevant to the pending Motions, in late January 2021, the GK Trustee sued ACTS, obtained a TRO and a Preliminary Injunction, and the litigation is pending.

An important new piece of evidence that it appears has not been made public until recently is that ACTS did not act alone in its plan and conduct in November 2020 to take all the value possible from GK's cases.  Rather, on information and belief, ACTS was acting in concert with Cal II, given their combined leverage against TG and GK as a result of their respective judgments.  Indeed, the Ruigomez creditors, in their complaint against ACTS filed in January 2023, allege that:  **"in the fall of 2020, Finnerty and ACTS, working with GK and one of GK's creditors, negotiated to take even more of GK's**

---

[11] RJN, Exhibits E and F.

OMNIBUS OPPOSITION OF ERIKA GIRARDI TO MOTION FOR ORDER APPROVING SETTLEMENT
BETWEEN TRUSTEES, CAL II AND CFS; REQUEST FOR CONTINUANCE TO PERMIT DISCOVERY

1   **valuable cases**, all to the detriment of the Ruigomezes [given that GK's assets were the

2   only source for payment on the Ruigomez creditors' judgment]."[12]  (emphasis added).

3          **E.      Early December 2020:  Cal II's Ex Parte Application for a Receiver**

4                 **Over GK and the Agreement Between Cal II and ACTS to Dismiss the**

5                 **Receivership Action to Avoid Judicial Scrutiny; Only Edelson Objects.**

6          On December 7, 2020, Cal II filed an *ex parte* application in Los Angeles Superior

7   Court requesting the appointment of a receiver over GK.[13]  By the time of the ex parte

8   hearing on December 9, 2020, however, Cal II  and ACTS had reached an agreement in

9   principle to divide the spoils and take the assets of GK for themselves.[14]  Everyone in the

10  courtroom, including attorney Philip Baker who stated he was representing TG and GK,

11  deferred to ACTS partner Boris Treyzon to explain their tentative agreement to take over

12  the assets of GK, with which counsel for Cal II agreed.  The trick was that ACTS and Cal

13  II had determined that due to their private deal, they did not want and ACTS would be

14  withdrawing its request for appointment of a receiver.  No doubt, this was because ACTS

15  and Cal II in no manner wanted court supervision. . The only party in interest at the

16  hearing who objected to ACTS and Cal II's plan was a partner of Edelson, P.C., who

17  stated, among other things:

18              **Your honor, we have serious concerns about the proposal that's**

19              **being made today, including the fact of Mr. Treyzon's firm**

20              **potentially associating in on the – it sounds like Porter Ranch**

21              **cases. . . . One of the concerns [we] have with Mr. Treyzon's firm**

22              **taking over or associating in the Porter Ranch cases is that I**

23              **believe at least one of the attorneys at his firm, Robert Finnerty,**

24              **used to be at Mr. Girardi's firm and has even represented Mr.**

25

26  _____

27          [12] RJN, Exhibit G, ¶ 60.

           [13] RJN, Exhibit H.

28          [14] RJN, Exhibit I.

> **Girardi in the defense of misappropriation of client fund cases.**
> **And so I think there's a real question as to whether the**
> **arrangement that is being made is in the best interest of the**
> **clients.  I absolutely think that a receiver is necessary because the**
> **issues here go so far beyond simply prosecuting the Porter Ranch**
> **cases .  We are talking about allegedly misappropriation,**
> **conversation and dissipation of tens of millions of dollars of**
> **clients' funds – proceeds of settlements that have been stolen from**
> **clients of Girardi Keese.**  And a receiver is absolutely needed to get
> to the bottom of that. . . **[W]e think a receiver is vital at this stage.**[15]

ACTS and Cal II were completely undeterred by the Edelson firm's objection, continued with their private plan, and withdrew the request for a receiver..

**F.**    **Mid-December 2020 – January 2021:  Edelson Obtains a Freeze Order Over GK's Assets; To Avoid Impact of Freeze Order, ACTS and Cal II Orchestrate the Involuntary Petitions and the Emergency Motions for Appointment of Trustees; and Their Role in the Trustee Selection Process.**

Less than a week after the above-quoted receivership hearing, after a hearing, on December 14, 2022, Judge Durkin based on application by Edelson found TG in contempt, and issues a freeze order over the assets of GK and TG.[16]

The evidence will show that next, with the goal of eliminating the freeze order's damper on ACTS and Cal II's plan, ACTS masterminded the involuntary petitions, entered into attorney-client relationships with some or all of the petitioning creditors, and obtained and paid for the fees of bankruptcy counsel for the petitioning creditors – none of which has been disclosed to the OUST or this Court.

---

[15] RJN, Exhibit I.

[16] RJN, Exhibits J, K, and L.

1    After filing the involuntary petitions on December 18, 2020, ACTS coordinated

2 *with Cal II* the emergency motions for appointment of trustees, which were filed on

3 December 24, 2020.  The emergency motions submitted by bankruptcy counsel to the

4 petitioning creditors, however, were supported by not just a petitioning creditor declaration

5 but declarations of guess who?  ACTS and Cal II.  The motions, therefore, gave the false

6 impression that the petitioning creditors (secretly represented by ACTS), ACTS, and Cal II

7 (coordinating with ACTS to take all GK's cases of value) were innocent and substantial

8 creditors to whom the OUST must give credence in selecting chapter 7 trustees.  Thus,

9 ACTS and Cal II misleadingly and falsely put themselves at the forefront for the OUST in

10 terms of creditors with whom to consult about appointment of specific trustees.[17]

11    Disturbingly, the evidence also will show that ACTS, through bankruptcy counsel

12 for the petitioning creditors, engaged in multiple conversations with the OUST about what

13 trustees to appoint in these cases.  It is currently unknown whether ACTS or Cal II had

14 influence over the trustee selection process, including what was communicated to the

15 Trustees in this regard.

16    **G.    February 17, 2021:  ACTS Obtains Signatures from TG Trustee on:  (a)**

17    **Early Settlement with Ruigomez Creditors Without Meaningful**

18    **Investigation; and (b) Retention Agreement by TG Trustee to Employ**

19    **ACTS as Special Counsel to the TG Estate.**

20    On February 17, 2021, barely four weeks after the Orders for Relief and

21 reappointment of the Trustees on January 13, 2021, ACTS had already negotiated,

22 prepared and obtained the TG Trustee's signature on two important agreements:  (a) a

23 settlement agreement with the Ruigomez creditors on the amount and priority of their

24 alleged secured claim; and (b) a retention agreement by which the TG Trustee employed

25

26

27    [17] ACTS never disclosed any of these facts and concealed them from disclosure to
the OUST and this Court in two different Rule 2014 statements filed by ACTS in April
28 2021 and April 2022.

1    ACTS as special counsel to the TG estate.[18]

2    **H.    May 3, 2021:  The TG Trustee and the GK Trustee Sign Separate Early**

3    **"Sweetheart" Settlement Agreements with Cal II, Based on No**

4    **Meaningful Investigation, Under No Exigency, and Before the Secured**

5    **Creditor Bar Date in the GK Case of June 23, 2021**

6    After ACTS got its special treatment, then came Cal II.  Specifically, based on

7    separate settlement agreements with the Trustees, which Cal II signed the same day, May

8    3, 2021, Cal II was able to negotiate with both Trustees an allowed amount of Cal II's

9    proof of claim, including most importantly, putting Cal II in a first priority secured

10   position.[19]  No exigency existed that required either of the Trustees to reach such

11   agreements with Cal II without adequate or for that matter any true investigation.  Indeed,

12   no more powerful a statement can be made about the inadequacy of the Trustees' alleged

13   investigations other than pointing to the GK Trustees adversary proceeding filed against

14   Cal II, CFS, and Mr. DiNardo slightly over a year later in August 2022 – after the GK

15   Trustee with experienced lender liability counsel had undertaken a genuine and thorough

16   review of the facts.

17   **I.    August 2022:  The GK Trustee's Adversary Proceeding Against Cal II,**

18   **CFS, and Mr. DiNardo.**

19   As already noted, the GK Trustee's adversary complaint filed against Cal II, CFS,

20   and Mr. DiNardo in August 2022 alleged in detail, with supporting exhibits, various claims

21   and causes of action against the defendants. Including claims for intentional torts and

22   conduct giving rise to claims for punitive damages.  Based, however, on a motion to

23   dismiss filed by defendants, which principally argued that the adversary proceeding was

24   barred by the GK Trustee's early settlement with Cal II on May 3, 2021, this Court

25   dismissed the GK Trustee's complaint without leave to amend.  The GK Trustee's appeal

26

27   _____

         [18] RJN, Exhibits M and N.

28       [19] RJN, Exhibits O, P, Q, and R.

OMNIBUS OPPOSITION OF ERIKA GIRARDI TO MOTION FOR ORDER APPROVING SETTLEMENT
BETWEEN TRUSTEES, CAL II AND CFS; REQUEST FOR CONTINUANCE TO PERMIT DISCOVERY

1  to the District Court is pending, but under the settlement at issue in the Motions, the GK

2  Trustee has agreed to dismiss her appeal with prejudice.  Ms. Girardi reiterates here her

3  requests to the Court in the alternative as set forth above in items 1 through 4 of pages 9

4  through 11 of this Opposition.

5  **J.    January 2023:  Ms. Girardi's Notice of Intent To File Motion for Order**

6  **Disqualifying and Immediately Terminating ACTS as Special Counsel to**

7  **the Trustee of the Tom Girardi Estate, For Sanctions, and Other Relief**

8  On January 18, 2023, Ms. Girardi filed in the TG bankruptcy case, as well as in an

9  adversary proceeding filed against her by ACTS on December 18, 2022, the above-

10  referenced Notice of Intent.  While after receipt of the Notice of Intent, the TG Trustee

11  substituted his general counsel in place of ACTS in the adversary proceeding, Ms. Girardi

12  is not aware of either of the Trustees taking any meaningful action related to ACTS, which

13  has faced no consequences for conduct arguably amounting to bankruptcy fraud.

14  **K.    January 2023:  The Ruigomez Creditors' Suit Against ACTS.**

15  Later in the day on January 18, 2023, the Ruigomez creditors, through new counsel,

16  filed their state court complaint against ACTS and its partner Robert Finnerty, among

17  others.[20]  The Ruigomez complaint and its exhibits provide a comprehensive, detailed, and

18  persuasive chronology of compelling evidence against the defendants.

19  **L.    March 2023:  Under No Circumstances of Exigency, the Trustees Agree**

20  **to the Settlement Agreement at Issue with Cal II, Including:  (a) a**

21  **Complete Surrender by the Trustees to Cal II; (b) No Consideration of**

22  **Critical Undisputed Facts Such as the Prior $6.35 Million Payment to**

23  **Mr. DiNardo/Cal II; and (c) a Total Payment to Cal II of $7.5 Million,**

24  **Which is More Than Payment in Full and Far Exceeds the Amount**

25  **Even Potentially Due to Cal II.**

26  The relevant terms of the settlement in the Motions to which Ms. Girardi objects are

27

28  [20] RJN, Exhibit S.

OMNIBUS OPPOSITION OF ERIKA GIRARDI TO MOTION FOR ORDER APPROVING SETTLEMENT
BETWEEN TRUSTEES, CAL II AND CFS; REQUEST FOR CONTINUANCE TO PERMIT DISCOVERY

discussed above and below.  Here, we add the following comments:

The Motions do not explain, at all, the total amount that Cal II will have received based on its alleged secured claim if the proposed settlement is approved.  Nor do the Motions disclose specifically what the Trustees intend to do in terms of reserves or payout of the Kelco sale proceeds.  The Trustees should provide this information with specificity.

The Motions do state that if the proposed settlement is approved, the payoff amount of Cal II's alleged secured claim will be **$2,674,153.29** as of February 22, 2023, plus $491 in per diem interest thereafter.  (See GK Trustee Motion, Docket 1673, at page 29 of 40, ¶ 2.1).  The Motions state that both Trustees already have paid substantial sums to Cal II, but do not disclose the amounts.  Based on the GK Trustee's most recent Seventh Cash Collateral Motion (Docket No. 1413; filed 11/22/22), the GK Trustee represents that as of that date, "between the two estates, CAL II has received approximately **$4,830,735.90** of its claim."  *Id*. at Page 16 of 44, lines 1-2.  (emphasis added).  Adding approximately **$2.674 million** to **$4.830 million**, the Motions seek approval to pay Cal II no less than a total of **$7.504 million**.  This proposed $7.504 million total payment to Cal II exceeds by more than $800,000 the asserted amount of Cal II's proofs of claim as originally filed on June 22, 2021, which was approximately **$6.668 million**.  (See Cal II Proofs of Claim Nos. 35-1 and 71-1 filed 6/22/21.)

Finally, Ms. Girardi notes that the TG Trustee has not in the past communicated with her, at all, about the massive community property asset in the form of TG's 45% interest in the LLC owning the Kelco property, which resulted in the TG estate receiving more than $8 million.  Among other things, Ms. Girardi more than six months ago, through counsel, advised counsel for both Trustees of concerns of Ms. Girardi related to business dealings with certain individuals.  Regrettably, the lack of communication, disclosure and information from both Trustees has resulted in leaving Ms. Girardi in the dark about community property assets after a 20 year marriage.

III.    **UNDERLINE ARGUMENT**

Before approving a proposed settlement, the Court must determine that it is "fair

-21-

1    and equitable" and "in the best interests of the estate." *Protective Comm. for Indep.*

2    *S'holders of TMT Trailer Ferry, Inc. v. Anderson*, (*TMT*) 390 U.S. 414, 424, 88 S. Ct.

3    1157, 1163, 20 L. Ed. 2d 1 (1968); see also, *In re Fitzgerald*, 428 B.R. 872, 53 Bankr. Ct.

4    Dec. (CRR) 37 (B.A.P. 9th Cir. 2010); *In re de Armond*, 240 B.R. 51, 35 Bankr. Ct. Dec.

5    (CRR) 87 (Bankr. C.D. Cal. 1999).

6        In determining the fairness, reasonableness and adequacy of a proposed settlement

7    agreement, the Court must consider: (a) probability of success in the litigation; (b) the

8    difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the

9    litigation involved, and the expense, inconvenience and delay necessarily attending it; (d)

10   the paramount interest of the creditors and a proper deference to their reasonable views in

11   the premises.  See *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986).  Similar,

12   but more exhaustive factor can also be found in the Second Circuit known as the *Iridium*

13   factors:  (1) the balance between the litigation's possibility of success and the settlement's

14   future benefits; (2) the likelihood of complex and protracted litigation, with its attendant

15   expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

16   (3) the paramount interests of the creditors, including each affected class's relative benefits

17   and the degree to which creditors either do not object to or affirmatively support the

18   proposed settlement; (4) whether other parties in interest support the settlement; (5) the

19   competency and experience of counsel supporting, and the experience and knowledge of

20   the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases

21   to be obtained by officers and directors; and (7) the extent to which the settlement is the

22   product of arm's length bargaining.  *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d

23   Cir. 2007).

24       The principles underlying these factors were detailed by the Supreme Court in *TMT*

25   *Trailer Ferry v. Anderson*, 390 U.S. 414 (U.S. 1968) as follows:

26       There can be no informed and independent judgment as to whether a

27       proposed compromise is fair and equitable until the bankruptcy judge has

28       apprised himself of all facts necessary for an intelligent and objective

-22-

1    opinion of the probabilities of ultimate success should the claim be

2    litigated.  Further, the judge should form an educated estimate of the

3    complexity, expense, and likely duration of such litigation, the possible

4    difficulties of collecting on any judgment which might be obtained, and all

5    other factors relevant to a full and fair assessment of the wisdom of the

6    proposed compromise."

7    390 U.S. at 424.

8         In addition, the Court must be sensitive to whether the proposed settlement would

9    "unduly prejudice" a non-settling creditor or other party. *See In re Masters Mates & Pilots*

10   *Pension Plan and IRAP Litigation*, 957 F.2d 1020, 1026 (2d Cir. 1992) ("Where the rights

11   of third parties are affected, however, their interests too must be considered").  Creditor

12   objections to a compromise must be afforded deference.  *In re Transcon. Energy Corp.*,

13   764 F.2d 1296, 1299 (9th Cir. 1985); *accord, In re The Gen. Store of Beverly Hills*, 11

14   B.R. 539, 541 (B.A.P. 9th Cir. 1981).  In addition, the bankruptcy court is obligated to

15   preserve the rights of the creditors.  See *Matter of W.T. Grant Co., 4 B.R. 53, 69

16   (Bankr.S.D.N.Y.1980).*

17        In *In re Drexel Burnham Lambert Group, Inc. v. Claimants Identified on Schedule I

18   (In re Drexel Burnham Lambert Group, Inc.)*, 995 F.2d 1138 (2d Cir. 1993) the Court

19   acknowledged that before endorsing a settlement, it was obligated to make an examination

20   of how the settlement affected the rights of third parties.  *See also*, *In re Arter & Hadden

21   LLP*, 373 B.R. 31, 36 (Bankr. N.D. Ohio 2007) ("looking only to the fairness of the

22   settlement as between the debtor and the settling claimant [and ignoring third-party rights]

23   contravenes a basic notion of fairness") (citing and quoting prior cases); *see also In re

24   Medical Asset Management, Inc.*, 249 B.R. 659, 664 (Bankr. W.D. Pa. 2000) ("The

25   fairness to the settling parties of a proposed settlement may not warrant its approval if the

26   rights of others who are not parties to the settlement agreement are unduly prejudiced" and

27   the Court must consider whether any party in interest "has been set apart for unfair

28   treatment.").

1   Here, the proposed settlement in the Motions offers little or nothing for the estate,

2   does not take into consideration substantial factors as noted above, and results in more than

3   payment in full to an alleged secured creditor that faces significant risk of liability to the

4   estates.  At a minimum, further discovery is necessary before the Trustees can prove that

5   the proposed settlement in the Motions is somehow in the "best interests of all the

6   creditors."

7   The proposed settlement in the Motions is extremely one-sided in favor of Cal II,

8   and harms the interests of creditors simply because the Trustees seek to rush through a

9   sweetheart deal for Cal II that cannot be reconciled with the GK Trustee's adversary

10  complaint filed against Cal II after a genuine and thorough investigation.

11  The proposed settlement in the Motions also should have no impact or effect on the

12  rights of Ms. Girardi or other non-parties to the settlement.  The fact that the settlement

13  suits the proponent and its contracting partner does nothing to ameliorate the harm and

14  prejudice to third parties such as Ms. Girardi and other creditors who would be affected

15  negatively by the accord.  As observed by the Court in *IRAP Litigation*, 957 F.2d 1020,

16  1026 (2d Cir. N.Y. 1992), "where the rights of one who is not a party to a settlement are at

17  stake, the fairness of the settlement to the settling parties is not enough to earn the judicial

18  stamp of approval."  957 F.2d. at 1026.

19  Finally, if as may be the case here, the settlement in the Motions is the product or

20  consequence of prior grossly negligent or worse decisions by the Trustees, and if the

21  settlement at issue is designed to sweep prior misconduct or mistakes under the rug and

22  away from public view, the settlement would be for an improper purpose and the court

23  should refuse to approve it.  *In re Kuhns*, 101 B.R. 243 (Bkrtcy. D. Mont. 1989) (rejecting

24  approval where real purpose of sale of claims was improper).  The purpose of the

25  settlement at issue in the Motions seems to be not to benefit the creditors of the estate, but

26  specifically, to let Cal II off the hook while harming the creditors.  Just as in *Kuhns*, where

27  an improper purpose motivated the settlement, Ms. Girardi submits that the settlement here

28  should not be approved.

-24-

IV. **CONCLUSION**

For the foregoing reasons, Ms. Girardi requests that the Court rule as follows:

1. The Court should continue the hearing on the Motions for at least 90 to 120 days, to allow Ms. Girardi and any other parties in interest the opportunity to conduct formal discovery into critical background facts. The integrity of the bankruptcy process, and the Court being able to make decisions based on all the relevant facts, are more important than considerations of "efficiency" in cases that are more than two years old. Thus, Ms. Girardi requests that the Court continue the hearing on the Motions for 90 to 120 days to allow for discovery in this contested matter.

2. If the Court is inclined to decide the Motions, given that (a) the Trustees have presented the Court with a skewed and narrow record, and (b) granting the Motions would be against the interests of the estates, creditors, and the interests of justice, the Court should deny the Motions.

3. If the Court is inclined to grant the Motions, Ms. Girardi requests that, to avoid unnecessary harm and prejudice to persons and entities who are not parties to the settlement agreement at issue in the Motions, including without limitation Ms. Girardi, the Court clarify in its approval Order that granting the Motions does not and will not affect the rights and claims of any person or entity who is not a party to the settlement agreement at issue, which only binds the specific parties to the settlement agreement but not any non-parties unless expressly mentioned. Thus, non-parties or third parties such as Ms. Girardi or any other person or entity that assert claims, now or in the future, against the parties to the settlement agreement should not and will not be barred by the Court's approval order. In addition, to avoid unintended prejudice to non-parties to the settlement, the approval Order should approve the settlement only if the term that the GK Trustee will dismiss her pending appeal (from this Court's order dismissing the GK Trustee's adversary proceeding against Cal II and CFS) is modified to provide for a dismissal without prejudice as opposed to a dismissal with prejudice.

4. As noted above, Ms. Girardi also supports the Court, as a matter of equity and if

-25-

1  necessary based on further motion or application after consultation with new counsel for

2  the Ruigomez creditors, permitting an interim payment out of the Kelco proceeds (as

3  described in the Motions) to the Ruigomez creditors on their secured claim.

4  DATED:  April 4, 2023                    GREENBERG GROSS LLP

5

6

7  By:  _____

8       Evan C. Borges
       Attorneys for Creditor and Party-in-Interest
9       Erika Girardi

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

650 Town Center Drive, Suite 1700
Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): **OMNIBUS OPPOSITION OF ERIKA GIRARDI TO MOTIONS OF CHAPTER 7 TRUSTEES, PURSUANT TO BANKRUPTCY RULE 9019, FOR AN ORDER APPROVING SETTLEMENT AGREEMENT WITH CALIFORNIA ATTORNEY LENDING II, INC., AND COUNSEL FINANCIAL SERVICES, LLC; AND REQUEST FOR CONTINUANCE OF HEARING TO ALLOW FOR DISCOVERY IN THIS CONTESTED MATTER** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 4, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒      Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **April 4, 2022,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒      Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **April 4, 2022,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒      Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

 April 4, 2022  Cheryl Winsten_____          _____
   Date                        Printed Name                              Signature

**In re GIRARDI KEESE**
Case No. 2:20-bk-21022-BR
U.S.B.C. Central District of California
Los Angeles Division

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING**:

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

he following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Kyra E Andrassy**    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

- **Rafey Balabanian**    rbalabanian@edelson.com, docket@edelson.com;5926930420@filings.docketbird.com

- **Michelle Balady**    mb@bedfordlg.com, leo@bedfordlg.com

- **Robert D Bass**    bob.bass47@icloud.com

- **Reem J Bello**    rbello@goeforlaw.com, kmurphy@goeforlaw.com

- **Kate Benveniste**    kate.benveniste@us.dlapiper.com, dlaphx@us.dlapiper.com

- **Ori S Blumenfeld**    oblumenfeld@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com

- **Evan C Borges**    eborges@ggtriallaw.com, cwinsten@ggtriallaw.com

- **William E Brueckner**    wbrueckner@woodsoviatt.com

- **Richard Dennis Buckley**    rbuckley@safarianchoi.com

- **Steve Burnell**    Steve.Burnell@gmlaw.com, sburnell@ecf.courtdrive.com;sburnell@ecf.inforuptcy.com;cheryl.caldwell@gmlaw.com;denise.walker@gmlaw.com

- **Glenn Ward Calsada**    glenn@calsadalaw.com, lnw@calsadalaw.com;glenncalsada@gmail.com,niko@calsadalaw.com,lauren@calsadalaw.com,pat@calsadalaw.com

- **Indira J. Cameron-Banks**    indira@cameronjones.law, tiffany@cameronbankslaw.com

- **Michael F Chekian**    mike@cheklaw.com, chekianmr84018@notify.bestcase.com

-28-

- **Marie E Christiansen**    mchristiansen@vedderprice.com,
  ecfladocket@vedderprice.com,marie-christiansen-4166@ecf.pacerpro.com

- **Baruch C Cohen**    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com

- **Leslie A Cohen**    leslie@lesliecohenlaw.com,
  jaime@lesliecohenlaw.com;jessica@lesliecohenlaw.com

- **Jennifer Witherell Crastz**    jcrastz@hrhlaw.com

- **Christopher D Crowell**    ccrowell@hrhlaw.com

- **Ashleigh A Danker**    adanker731@gmail.com

- **Lei Lei Wang Ekvall - DECEASED -**    lekvall@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

- **Richard W Esterkin**    richard.esterkin@morganlewis.com

- **Oscar Estrada**    oestrada@ttc.lacounty.gov

- **Timothy W Evanston**    tevanston@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com

- **Jeremy Faith**    Jeremy@MarguliesFaithlaw.com,
  Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com

- **James R Felton**    jfelton@gblawllp.com,
  pstruntz@gblawllp.com;msingleman@gblawllp.com

- **James J Finsten**    , jimfinsten@hotmail.com

- **James J Finsten**    jfinsten@lurie-zepeda.com, jimfinsten@hotmail.com

- **Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com

- **Larry W Gabriel**    lgabrielaw@outlook.com, tinadow17@gmail.com

- **James B Glucksman**    jbg@dhclegal.com

- **Robert P Goe**    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;goeforecf@gmail.com

- **Eric D Goldberg**    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com

- **Rosendo Gonzalez**    rossgonzalez@gonzalezplc.com,
  rgonzalez@ecf.axosfs.com;jzavala@gonzalezplc.com;zig@gonzalezplc.com;gig@gonzalezplc.com

- **Andrew Goodman**    agoodman@andyglaw.com,
  Goodman.AndrewR102467@notify.bestcase.com

- **Suzanne C Grandt**    suzanne.grandt@calbar.ca.gov,
  joan.randolph@calbar.ca.gov

- **Steven T Gubner**    sgubner@bg.law, ecf@bg.law

- **Asa S Hami**    asa.hami@gmlaw.com,
  ahami@ecf.courtdrive.com;patricia.dillamar@gmlaw.com;pdillamar@ecf.courtdriv
  e.com

- **Brian T Harvey**    bharvey@buchalter.com,
  IFS_filing@buchalter.com;dbodkin@buchalter.com

- **Stella A Havkin**    stella@havkinandshrago.com, shavkinesq@gmail.com

- **James Andrew
  Hinds**    jhinds@hindslawgroup.com;mduran@hindslawgroup.com,
  mduran@hindslawgroup.com

- **Marshall J Hogan**    mhogan@swlaw.com, knestuk@swlaw.com

- **Bradford G Hughes**    bhughes@Clarkhill.com, mdelosreyes@clarkhill.com

- **Sheryl K Ith**    sith@cookseylaw.com

- **Razmig Izakelian**    razmigizakelian@quinnemanuel.com

- **Steven D Jerome**    sjerome@swlaw.com

- **Lillian Jordan**    nefrecipients@donlinrecano.com,
  RMAPA@DONLINRECANO.COM

- **Alphamorlai Lamine Kebeh**    akebeh@danninggill.com

- **Molly J. Kjartanson**    mkjartanson@swlaw.com

- **Michael S Kogan**    mkogan@koganlawfirm.com

- **Kenneth A Kotarski**    KKOTARSKI@HAMRICKLAW.COM,
  hmartindale@HAMRICKLAW.COM;pliscano@hamricklaw.com;gknopfler@hamr
  icklaw.com;khearn@hamricklaw.com;secretary2@hamricklaw.com;sjustice@hamri
  cklaw.com;jpoole@hamricklaw.com

- **Lewis R Landau**    Lew@Landaunet.com

- **Janet A Lawson**    jlawsonlawyer@gmail.com, G38570@notify.cincompass.com

- **Daniel A Lev**    daniel.lev@gmlaw.com,
  cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

-30-

- **Marc A Lieberman**     marc.lieberman@flpllp.com, safa.saleem@flpllp.com

- **Elizabeth A Lombard**     elombard@zwickerpc.com, bknotices@zwickerpc.com

- **Noreen A Madoyan**     Noreen.Madoyan@usdoj.gov

- **Aaron J Malo**     amalo@sheppardmullin.com,
  clopez@sheppardmullin.com;abilly@sheppardmullin.com

- **Kathleen P March**     kmarch@bkylawfirm.com,
  kmarch3@sbcglobal.net,kmarch@sbcglobal.net

- **Craig G Margulies**     Craig@MarguliesFaithlaw.com,
  Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@Margulie
  sFaithlaw.com

- **Ron Maroko**     ron.maroko@usdoj.gov

- **Damian J. Martinez**     damian.martinez@aalrr.com, julissa.ruiz@aalrr.com

- **Peter J Mastan**     peter.mastan@dinsmore.com,
  SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com

- **Edith R. Matthai**     ematthai@romalaw.com, lrobie@romalaw.com

- **Daniel J McCarthy**     dmccarthy@hillfarrer.com,
  spadilla@hillfarrer.com;nchacon@hfbllp.com

- **Dennis E McGoldrick**     dmcgoldricklaw@yahoo.com, demcg@demcg.com

- **Elissa Miller (TR)**     CA71@ecfcbis.com,
  MillerTrustee@gmlaw.com;C124@ecfcbis.com;cheryl.caldwell@gmlaw.com;cher
  yl.caldwell@ecf.courtdrive.com

- **Eric A Mitnick**     MitnickLaw@gmail.com, mitnicklaw@gmail.com

- **Byron Z Moldo**     bmoldo@ecjlaw.com,
  amatsuoka@ecjlaw.com,dperez@ecjlaw.com

- **Kevin H Morse**     kmorse@clarkhill.com, blambert@clarkhill.com

- **Glenn D. Moses**     gmoses@venable.com,
  cascavone@venable.com;ipmalcolm@venable.com;jadelgado@venable.com

- **Gilbert M Nishimura**     gnishimura@snw-law.com, schin@snw-
  law.com;sgalindo@snw-law.com;ffilimona@snw-law.com

- **Scott Olson**     scott.olson@bclplaw.com, scott-olson-
  2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com

- **Aram Ordubegian**     ordubegian.aram@arentfox.com

1  • **Carmela Pagay**    ctp@lnbyb.com

2  • **Carmela Pagay**    ctp@lnbyg.com

3  • **Leonard Pena**    lpena@penalaw.com,
4    penasomaecf@gmail.com;penalr72746@notify.bestcase.com

5  • **Matthew D Pham**    mpham@allenmatkins.com, mdiaz@allenmatkins.com

6  • **Steven G. Polard**    steven.polard@ropers.com, calendar-
7    lao@ropers.com;keiko.kakiuchi@ropers.com;tiffany.sterling@ropers.com;anthony.
     arriola@ropers.com

8  • **Christopher E Prince**    cprince@lesnickprince.com,
9    jmack@lesnickprince.com;cprince@ecf.courtdrive.com;jnavarro@lesnickprince.co
     m

10 • **Michael J Quinn**    mquinn@vedderprice.com,
11   ecfladocket@vedderprice.com,michael-quinn-
12   2870@ecf.pacerpro.com,ahirschkowitz@vedderprice.com

13 • **Dean G Rallis**    drallis@hahnlawyers.com,
     jevans@hahnlawyers.com;drallis@ecf.courtdrive.com;jevans@ecf.courtdrive.com

14 • **Ronald N Richards**    ron@ronaldrichards.com,
15   7206828420@filings.docketbird.com

16 • **Kevin C Ronk**    Kevin@portilloronk.com, Attorneys@portilloronk.com

17 • **Brian M Rothschild**    brothschild@parsonsbehle.com,
18   usclawyer@yahoo.com;ecf@parsonsbehle.com

19 • **Frank X Ruggier**    frank@ruggierlaw.com, enotice@pricelawgroup.com

20 • **William F Savino**    wsavino@woodsoviatt.com, lherald@woodsoviatt.com

21 • **Scott A Schiff**    sas@soukup-schiff.com

22 • **Daren M Schlecter**    daren@schlecterlaw.com, assistant@schlecterlaw.com

23 • **Kenneth John Shaffer**    johnshaffer@quinnemanuel.com

24 • **Amir Shakoorian**    AShakoorian@GGTrialLaw.com

25 • **Summer M Shaw**    ss@shaw.law,
     shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com
26
   • **Zev Shechtman**    zs@DanningGill.com,
27   danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

28 • **Anastasija Olegovna Snicarenko**    legal@flyxo.com, jennifer@cypressllp.com

-32-

1   • **Richard M Steingard**    , awong@steingardlaw.com

2   • **Andrew Still**    astill@swlaw.com, kcollins@swlaw.com

3   • **Annie Y Stoops**    annie.stoops@afslaw.com, yvonne.li@arentfox.com

4   • **Philip E Strok**    pstrok@swelawfirm.com,
5   gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com

6   • **Jeffrey L Sumpter**    jsumpter1@cox.net

7   • **Terrence Swinson**    terrenceswinson@gmail.com

8   • **Tamar Terzian**    tamar@terzlaw.com, sandra@terzlaw.com

9   • **Boris Treyzon**    btreyzon@actslaw.com, pjs@actslaw.com

10  • **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

11  • **Diane C Weil**    dcweil@dcweillaw.com,
12  diane.c.weil@Gmail.com,dweil@ecf.inforuptcy.com,jfiser@dcweillaw.com

13  • **David R. Weinstein**    dweinstein@weinsteinlawfirm.net

14  • **Andrew D. Weiss**    ADWeiss@oclawadw.com

15  • **Jessica Wellington**    jwellington@bg.law, ecf@bg.law

16  • **Pauline White**    pauline@paulinewhite.com

17  • **Eric D Winston**    ericwinston@quinnemanuel.com

18  • **Christopher K.S. Wong**    christopher.wong@afslaw.com,
19  yvonne.li@arentfox.com

20  • **Robert M Yaspan**    court@yaspanlaw.com, tmenachian@yaspanlaw.com

21  • **Timothy J Yoo**    tjy@lnbyb.com

22  • **Isaac R Zfaty**    izfaty@muchlaw.com

23  • **David B Zolkin**    dzolkin@wztslaw.com,
    maraki@wztslaw.com,sfritz@wztslaw.com

24  • **Joshua del Castillo**    jdelcastillo@allenmatkins.com, mdiaz@allenmatkins.com

25

26

27

28

OMNIBUS OPPOSITION OF ERIKA GIRARDI TO MOTION FOR ORDER APPROVING SETTLEMENT
BETWEEN TRUSTEES, CAL II AND CFS; REQUEST FOR CONTINUANCE TO PERMIT DISCOVERY

**2.**   1   **SERVED BY UNITED STATES MAIL:**

2   **Debtor:**
Girardi Keese

3   1126 Wilshire Blvd
Los Angeles, CA 90017

4

5   ABIR COHEN TREYZON SALO, LLP, a California limited liability partnership (ACTS)
16001 Ventura Boulevard, Suite 200

6   Encino, CA 91436

7   Donlin, Recano & Company
6201 15th Ave

8   Brooklyn, NY 11219

9   IDiscovery Solutions

10   535 Anton Blvd Ste 850
Costa Mesa, CA 92626

11

12   James W Spertus
Spertus Landes & Umhoffer LLP

13   1990 South Bundy Dr Ste 705
Los Angeles, CA 90025

14

15   Neil Steiner
Steiner & Libo, Professional Corp

16   11845 W. Olympic Blvd Ste 910W
Los Angeles, CA 90064

17

18   Boris Treyzon Esq
16001 Ventura Blvd., Suite 200

19   Encino, CA 91436

20

21   Andrew W Zepeda
Lurie, Zepeda, Schmalz, Hogan & Martin

22   1875 Century Park East Ste 2100
Los Angeles, CA 90067

23

24   **3.       SERVED BY PERSONAL DELIVERY:**

25   **U.S. Bankruptcy Court:**
U.S. Bankruptcy Court

26   Hon. Barry Russell
255 E. Temple Street, Courtroom 1668

27   Los Angeles, CA 90012

28

-34-