Daniel A. Lev (CA Bar No. 129622)
  daniel.lev@gmlaw.com
Asa S. Hami (CA Bar No. 210728)
  asa.hami@gmlaw.com
**Greenspoon Marder LLP**
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 954.771.9264

Attorneys for Elissa D. Miller, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>GIRARDI KEESE,<br><br>        Debtor. | Case No. 2:20-bk-21022-BR<br><br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S MOTION FOR ORDER AUTHORIZING COMPROMISE OF CONTROVERSY RE NICOLE ROKITA AND NIKITA MANAGEMENT, INC. PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND AUTHORIZING PAYMENT OF CONTINGENCY FEE TO SPECIAL AVOIDANCE POWER LITIGATION COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ELISSA D. MILLER IN SUPPORT THEREOF**<br><br>DATE:<br>TIME:    [Hearing Only Upon Request]<br>PLACE: |

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

DAL 54836652v1

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR, AND ALL OTHER INTERESTED PARTIES:**

<u>**MOTION**</u>

Through her "Chapter 7 Trustee's Motion for Order Authorizing Compromise of Controversy Re Nicole Rokita and Nikita Management, Inc. Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Authorizing Payment of Contingency Fee to Special Avoidance Power Litigation Counsel; Memorandum of Points and Authorities; Declaration of Elissa D. Miller in Support Thereof" (the "Motion"), plaintiff, Elissa D. Miller (the "Trustee" or "Plaintiff"), the duly appointed, qualified, and acting chapter 7 trustee for the estate of the debtor Girardi Keese (the "Debtor" or "Girardi Keese") and Successor-in-Interest Trustee of the Girardi Keese Client Trust Accounts, hereby seeks, among other things, an order authorizing and approving, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 9013, a settlement agreement by and between the Trustee, on the one hand, and defendants, Nicole Rokita ("Rokita") and Nikita Management, Inc., a California corporation ("Nikita" and together with Rokita, the "Defendants"), on the other hand.

The Motion is based on the following:

(a)     On December 18, 2020 (the "Petition Date"), petitioning creditors Jill O'Callahan, as successor in interest to James O'Callahan, Robert M. Keese, John Abassian, Erika Saldana, Virginia Antonio, and Kimberly Archie (collectively, the "Petitioning Creditors") commenced an involuntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") against the Debtor in the United States Bankruptcy Court, Central District of California, Los Angeles Division (the "Court" or "Bankruptcy Court"), styled <u>In re Girardi Keese</u>, bearing Case No. 2:20-bk-21022-BR[1];

---

[1] The Petitioning Creditors also filed an involuntary chapter 7 bankruptcy petition against Thomas V. Girardi ("Thomas"), which is currently pending as Case No. 2:20-bk-21020-BR.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

(b)    On December 24, 2020, Petitioning Creditors caused to be filed their "Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g); Memorandum of Points and Authorities."  On January 5, 2021, the Court entered its "Order Granting 'Motion of Petitioning Creditors for Appointment of Interim Trustee Pursuant to 11 U.S.C. 303(g).'"  On January 6, 2021, the Office of the United States Trustee filed its "(Corrected) Notice of Appointment of Chapter 7 Trustee (11 U.S.C. §§ 303(g) and 701)" pursuant to which, among other things, Elissa D. Miller was appointed interim chapter 7 trustee for the Debtor's estate;

(c)    On January 13, 2021, the Court entered its "Order Directing: (1) the Clerk of Court to Immediately Enter an Order for Relief Under Chapter 7; (2) the United States Trustee to Immediately Appoint a Chapter 7 Trustee; (3) the Debtor to File All Schedules and Related Documentation for Chapter 7 Case Within Fourteen Days of the Entry of This Order; and (4) Vacating February 16, 2021 Status Conference."  On January 13, 2021, the Clerk of Court entered its "Order for Relief and Order to File Schedules, Statements and List(s)."  On January 13, 2021, the Office of the United States Trustee filed its "Notice of Appointment of Trustee and Fixing of Bond; Acceptance of Appointment As Interim Trustee" pursuant to which, among other things, Elissa D. Miller was appointed and accepted her appointment as chapter 7 trustee for the Debtor's estate, and she continues to act in that capacity as well as the Successor-in-Interest Trustee of the Girardi Keese Client Trust Accounts;

(d)    On December 29, 2022, the Trustee, as plaintiff, caused to be filed her "Complaint for (1) Avoidance and Recovery of Fraudulent Transfers, (2) Preservation of Fraudulent Transfers, and (3) Disallowance of Claims" (the "Complaint") against Defendants giving rise to the adversary proceeding entitled Elissa D. Miller v. Nikita Management, Inc., et al., bearing Adv. No. 2:22-ap-01268-BR (the "Action"), pursuant to which the Trustee sought, among other things, to avoid and recover, under both federal

1  and state law, certain alleged fraudulent transfers in the total aggregate amount of

2  $425,000;[2]

3        (e)    Defendants deny that the Trustee is entitled to avoid and recover

4  funds as fraudulent transfers, under either federal or state law, as alleged in the

5  Complaint; and

6        (f)    On June 21, 2023, the Trustee and Defendants entered into that

7  certain "Settlement Agreement and Mutual General Release" (the "Rokita Agreement")

8  pursuant to which, in exchange for limited mutual releases, and dismissal of the Action

9  against Defendants, with prejudice, Defendants will pay the estate the total amount of

10  $30,000.  Defendants also agree to waive any claim provided by 11 U.S.C. § 502(h) that

11  may arise in connection with the settlement payment.  A true and correct copy of the

12  Rokita Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

13        The Motion also seeks authority for the Trustee to pay Greenspoon Marder,

14  LLP, special avoidance power litigation counsel for the estate, the sum of $6,000 from the

15  settlement proceeds, representing the 20% contingency fee authorized by the Court

16  pursuant to its "Order Granting Chapter 7 Trustee's Application for Authority to Employ

17  Greenspoon Marder LLP As Special Avoidance Power Litigation Counsel Effective July 1,

18  2022" (the "Employment Order") [Docket No. 1327] entered on August 26, 2022.[3]

19        This Motion is made pursuant to Rule 9019 of the Federal Rules of

20  Bankruptcy Procedure, and Local Bankruptcy Rule 9013, on the grounds that the Trustee

21  has determined that the Rokita Agreement is fair, reasonable, and in the best interests of

22  the estate and its creditors, in light of the uncertainties of litigation, the possibility that the

23  Trustee may recover less than the settlement amount on behalf of the estate, and the

24  _____

25  [2] The Complaint sought to avoid and recover $60,000 from Rokita and $365,000 from Nikita.

26  [3] In addition to a 20% contingency fee of the gross proceeds on any settled avoidance power claim, the
Employment Order also authorizes the recovery of hourly fees incurred at 50% of the hourly fees then in
27  effect.  At this time, the Trustee only is seeking authority to pay the 20% contingency fee award from the
settlement proceeds.  The hourly attorneys' fees incurred will be sought through a separately filed fee
28  application as required by the Employment Order.

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1    fees and costs associated with prosecuting the adversary proceeding against Defendants

2    since, among other things, (i) the Rokita Agreement will benefit the estate by the infusing

3    it with a total of $30,000 in settlement proceeds, (ii) Defendants have agreed to waive

4    certain claims against the estate, which will further benefit creditors, and (iii) Defendants

5    will execute a limited mutual release of any claims, attorneys' fees, and the like, relating

6    to the claims made in the adversary proceeding.  Moreover, it is within the sound

7    discretion and business judgment of the Trustee to enter into the Rokita Agreement.

8         This Motion is made and based upon the moving papers, the attached

9    memorandum of points and authorities and the supporting declaration of Elissa D. Miller,

10    the pleadings filed in the Debtor's case, all judicially noticeable facts, the arguments and

11    representations of counsel, and any oral or documentary evidence presented at the time

12    of the hearing, if any.

13         **WHEREFORE** the Trustee respectfully requests that the Court enter an

14    order:

15         (1)    granting this Motion;

16         (2)    authorizing and approving the Rokita Agreement pursuant to Rule

17    9019(a) of the Federal Rules of Bankruptcy Procedure;

18         (3)    authorizing payment of the sum of $6,000 from the settlement

19    proceeds to Greenspoon Marder, LLP, special avoidance power litigation counsel for the

20    Trustee, representing the 20% contingency fee previously approved by the Court

21    pursuant to the Employment Order; and

22         (4)    granting such other and further relief as this Court deems just and

23    proper under the circumstances.

24    DATED: July 6, 2023         **Greenspoon Marder LLP**

25

26                      By: /s/ *Daniel A. Lev*
                           Daniel A. Lev
27                           Attorneys for Elissa D. Miller, Chapter 7
                           Trustee
28

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### PREFATORY STATEMENT

4        During the course of her administration of the Debtor's estate, the Trustee

5    determined that numerous parties received preferential and fraudulent transfers within

6    the statutory time periods set forth by applicable law.  As a result, the Trustee filed over

7    100 complaints seeking the avoidance and recovery of the alleged preferential and

8    fraudulent transfers.  The Trustee now has entered into a settlement with two of the

9    defendants, and seeks Court approval of the compromise.  The Trustee believes that the

10   settlement satisfies the prerequisites adopted by the Ninth Circuit and, therefore, the

11   Court should defer to the Trustee's business judgment and grant the Motion.

12

### II.

13

### RELEVANT BACKGROUND

14   A.    **Commencement of Involuntary Petition, Entry of Order for Relief, and**

15        **Appointment of Chapter 7 Trustee**

16        On December 18, 2020 (the "Petition Date"), petitioning creditors Jill

17   O'Callahan, as successor in interest to James O'Callahan, Robert M. Keese, John

18   Abassian, Erika Saldana, Virginia Antonio, and Kimberly Archie (collectively, the

19   "Petitioning Creditors") commenced an involuntary petition for relief under chapter 7 of

20   title 11 of the United States Code (the "Bankruptcy Code") against Girardi Keese.[4]

21        On December 24, 2020, Petitioning Creditors caused to be filed their

22   "Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g); Memorandum

23   of Points and Authorities."  On January 5, 2021, the Court entered its "Order Granting

24   'Motion of Petitioning Creditors for Appointment of Interim Trustee Pursuant to 11 U.S.C.

25   303(g).'"  On January 6, 2021, the Office of the United States Trustee filed its

26   "(Corrected) Notice of Appointment of Chapter 7 Trustee (11 U.S.C. §§ 303(g) and 701)"

27

28   [4] The Petitioning Creditors also filed an involuntary chapter 7 bankruptcy petition against Thomas V. Girardi
("Thomas"), which is currently pending as Case No. 2:20-bk-21020-BR.

1   pursuant to which, among other things, Elissa D. Miller was appointed interim chapter 7

2   trustee for Girardi Keese's estate.

3           On January 13, 2021, the Court entered its "Order Directing: (1) the Clerk of

4   Court to Immediately Enter an Order for Relief Under Chapter 7; (2) the United States

5   Trustee to Immediately Appoint a Chapter 7 Trustee; (3) the Debtor to File All Schedules

6   and Related Documentation for Chapter 7 Case Within Fourteen Days of the Entry of

7   This Order; and (4) Vacating February 16, 2021 Status Conference."  On January 13,

8   2021, the Clerk of Court entered its "Order for Relief and Order to File Schedules,

9   Statements and List(s)."  On January 13, 2021, the Office of the United States Trustee

10  filed its "Notice of Appointment of Trustee and Fixing of Bond; Acceptance of

11  Appointment As Interim Trustee" pursuant to which, among other things, Elissa D. Miller

12  was appointed and accepted her appointment as chapter 7 trustee for the Debtor's

13  estate, and she continues to act in that capacity as well as the Successor-in-Interest

14  Trustee of the Girardi Keese Client Trust Account.

15          **B.**     **Uncovering the Debtor's Fraudulent Enterprise**

16          As the Trustee quickly learned after her appointment, despite all

17  appearances, Girardi Keese was nothing more than an illicit and felonious business

18  operated to line the pockets of Thomas, his wife, and several collaborators.  While the

19  Trustee continues to investigate the magnitude of the fraud that spanned decades, it is

20  obvious that tens of millions of dollars of client and partnership funds were stolen and

21  diverted to Thomas and others.

22          Emblematic of the rampant fraud and pervasive misappropriation of client

23  and creditor funds, during a time when Girardi Keese was in a precarious financial state,

24  and was not paying its creditors, Thomas and his co-conspirators began a systematic

25  process of draining the available cash, often times consisting of stolen client trust funds,

26  by, among other things, making distributions to certain preferred creditors or third parties

27  from funds of Girardi Keese's estate and using the funds to invest in speculative business

28  ventures not in the firm's name.  Thomas and his co-conspirators conspired by purpose

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1  and design to abscond and secrete the assets of Girardi Keese, as well as funds held in

2  trust for clients, for the purpose of enriching themselves and others while at the same

3  time defrauding Girardi Keese's clients and creditors.

4      In virtually each instance, these transfers were made for less than

5  reasonably equivalent value in return and during a time in which Girardi Keese was

6  insolvent or was rendered insolvent as a result of the transfers, or when Girardi Keese

7  was engaged or was about to engage in a business or a transaction for which the

8  remaining assets of Girardi Keese were unreasonably small in relation to the business or

9  transaction.  Often times, for example, Thomas and others used funds from "interest on

10  lawyers' trust accounts" (or "IOLTAs"), which accounts were intended to safeguard client

11  funds, for illegitimate purposes.  Despite the strict prohibitions on the use of funds in an

12  IOLTA, Thomas and others used Girardi Keese's general operating accounts and IOLTAs

13  as if they were common depositories of not only Girardi Keese client funds, but also their

14  personal funds.

15      Hidden from the public, however, was the fact that, over the course of his

16  four-decade career, the State Bar of California received no less than 205 complaints

17  against Thomas alleging he misappropriated settlement money, abandoned clients, and

18  committed other serious ethical violations.  Eventually, Thomas was suspended from the

19  practice of law in March 2021 and was finally disbarred by the California Supreme Court

20  in July 2021.

21    **C.    Retention of Special Litigation Counsel, Investigation of Potential**

22        **Avoidance Power Claims, and Settlement With Defendants**

23      In order to recover the misappropriated funds wrongfully diverted by the

24  Debtor, the Trustee employed Greenspoon Marder, LLP ("Greenspoon") as her special

25  avoidance power litigation counsel.  According to the "Chapter 7 Trustee's Application for

26  Authority to Employ Greenspoon Marder LLP As Special Avoidance Power Litigation

27  Counsel Effective July 1, 2022; Declaration of Daniel A. Lev in Support Thereof" (the

28

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

1    "Greenspoon Application") [Docket No. 1297] filed on July 28, 2022, the Trustee sought

2    to employ Greenspoon on a hybrid fee basis.[5]

3              In sum, if the Trustee elected to commence an avoidance power claim

4    through the preparation, filing, and prosecution of a formal complaint in this Court,

5    Greenspoon agreed to bill its time on an hourly basis at 50% of its standard fees unless

6    and until Greenspoon recovered under one or more of the avoidance power claims.  For

7    recoveries under any avoidance power claim which was the subject of an adversary

8    proceeding, Greenspoon would be entitled to a success fee equal to 20% of the amount

9    recovered under each avoidance power claim.

10              By way of example only, if the Trustee compromised an avoidance power

11   claim in the amount of $1,000,000 for $100,000, Greenspoon would be entitled to 50% of

12   its hourly rate for services rendered in preparing and prosecuting the claim (subject to

13   approval of the Court), plus an additional $20,000 success fee (20% of $100,000).

14   Greenspoon would be entitled to petition the Court for allowance of the 20% success fee

15   separate and apart from the fees rendered on an hourly basis which could only be sought

16   through a fee application.  The Greenspoon Application was granted pursuant to the

17   "Order Granting Chapter 7 Trustee's Application for Authority to Employ Greenspoon

18   Marder LLP As Special Avoidance Power Litigation Counsel Effective July 1, 2022" (the

19   "Employment Order") [Docket No. 1327] entered on August 26, 2022.

20              Based on a comprehensive review of the Debtor's books and records to

21   determine the scope of the estate's avoidance power claims, the Trustee authorized the

22   filing of the Complaint against Defendants.  After the Complaint was filed, Defendants

23   challenged numerous elements of the Trustee's claims and raised numerous affirmative

24   ─────────────────

25   [5] As explained in the Greenspoon Application, the Trustee first employed **Sulmeyer**Kupetz, A Professional
     Corporation ("Sulmeyer"), as the estate's special avoidance power litigation counsel pursuant to the "Order
     Granting Chapter 7 Trustee's Application for Authority to Employ SulmeyerKupetz, A Professional

26   Corporation, as Special Avoidance Power Litigation Counsel" [Docket No. 893] entered by the Court on
     November 30, 2021.  However, on July 1, 2022, the majority of the lawyers from Sulmeyer joined

27   Greenspoon.  As a result, the Trustee requested that Greenspoon be employed as the estate's special
     litigation counsel effective July 1, 2022, as Greenspoon was familiar with the legal issues facing the

28   Trustee and the estate with respect to the Debtor's chapter 7 case.

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

1  defenses to the Action, including defenses under 11 U.S.C. § 550(b) (good faith

2  transferee for value and immediate or mediate good faith transferee of such transferee).

3       In addition, Defendants provided documentation to the Trustee

4  demonstrating that, even if the Trustee was successful in avoiding the transfers, there

5  were serious questions regarding the recovery of any judgment from Defendants.  Nikita

6  was formed by Rokita in 2017 for the purpose of opening an all-keto restaurant that

7  specialized in low-carb, gluten-free ketogenic food.  However, the restaurant failed and

8  was formally dissolved in February 2011, shortly after the Petition Date.  As a result,

9  there were no assets from which the Trustee could recover, presuming a judgment was

10  even entered against Nikita.

11       Moreover, there was uncertainty whether Rokita possessed the financial

12  resources to satisfy any judgment entered against her.  So while the Trustee was

13  prepared to contest the individual defenses, the Trustee determined that it was not

14  economically beneficial to continue to prosecute the Action in light of both Nikita and

15  Rokita's financial positions, defenses, and the settlement.

16       As a result, on June 21, 2023, the Trustee and Defendants entered into that

17  certain "Settlement Agreement and Mutual General Release" (the "Rokita Agreement").

18  A true and correct copy of the Rokita Agreement is attached hereto as Exhibit "A" and

19  incorporated herein by reference.  The Trustee believes the settlement (which is

20  summarized below) is in the best interests of creditors of the estate and should be

21  approved by the Court.  See Declaration of Elissa D. Miller affixed hereto.

22  **III.**

23  **SUMMARY OF SETTLEMENT**

24       The Rokita Agreement can be summarized as follows:

25      •    In exchange for a dismissal of the Action against Defendants, with

26  prejudice, Defendants shall pay the estate the total amount of Thirty Thousand Dollars

27  and Zero Cents ($30,000) (the "Settlement Payment").

28

1  •  The Settlement Payment shall be due on or before the fifteenth (15th)

2  calendar day following the date the order of the Court, or other court of competent

3  jurisdiction, approving the settlement becomes a final, unstayed order.

4  •  In addition to the Settlement Payment, Defendants acknowledge and

5  expressly waive any claim provided by 11 U.S.C. § 502(h) that may arise in connection

6  with the Settlement Payment.  The Trustee further reserves the right to object to any

7  proof of claim (if any), or scheduled claim, that Defendants may have previously filed

8  against the Debtor and the estate.

9  •  The parties also are exchanging limited mutual releases.[6]

10  Therefore, subject to the terms and conditions set forth in the Rokita

11  Agreement, the Trustee has agreed to dismiss the Complaint subject to approval of this

12  Motion and upon Defendants' subsequent compliance with the terms and conditions of

13  the settlement.

14  **IV.**

15  **EFFECT OF SETTLEMENT**

16  In this case, to date, 684 claims were filed for the total amount of

17  $550,881,512.21.  Of this amount, slightly more than $96 million were filed as secured

18  and $83 million were filed as priority unsecured claims.  Once all of the secured claims

19  are reviewed and objections resolved, the Trustee estimates that secured claims will

20  ultimately be somewhere in the range of $30 to $35 million.  In addition, the Trustee

21  expects that the vast majority of the priority unsecured claims should be reclassified to

22  general unsecured claims.  The assets available to pay these claims consist mostly of

23  attorney's fees earned by the Debtor for legal services and the proceeds of avoidance

24  actions to recover payments made by the Debtor without the receipt of reasonably

25  equivalent value or with the actual intent to defraud.  The incremental benefit of any

26  particular settlement is impossible to quantify given this landscape, but the cumulative

27  ───────────────

28  [6] The foregoing is merely a summary of the salient terms of the Rokita Agreement.  Therefore, any party
interested in the terms and conditions should read the Rokita Agreement in its entirety.

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1    benefit is that the Trustee is hopeful she will recover sufficient assets to pay off the

2    secured claims and to be able to make a distribution to unsecured creditors.

3                                      **V.**

4                                 **ARGUMENT**

5    A.       **The Legal Standard for Approving a Compromise of Controversy**

6               Rule 9019(a) of the Federal Rules of Bankruptcy Procedure states as

7    follows with respect to motions brought by trustees to approve settlements:

8               On motion by the trustee and after notice and a hearing, the

9               court may approve a compromise or settlement.  Notice shall

10              be given to creditors, the United States trustee, the debtor,

11              and indenture trustees as provided in Rule 2002 and to any

12              other entity as the court may direct.

13   Fed. R. Bankr. P. 9019(a).

14              As this Court is aware, compromise is favored over continued litigation.

15   See In re A&C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S.

16   854, 107 S. Ct. 189, 93 L. Ed. 2d 122 (1986); Port O'Call Investment Co. v. Blair (In re

17   Blair), 538 F.2d 849, 851 (9th Cir. 1976).  Generally, a compromise should be approved if

18   it is "fair and equitable" and in "the best interests of the estate."  In re Woodson, 839 F.2d

19   610, 620 (9th Cir. 1988); In re Schmidt, 215 B.R. 417, 424 (B.A.P. 9th Cir. 1997); St. Paul

20   Fire & Marine Insurance Co. v. Vaughn, 779 F.2d 1003, 1010 (4th Cir. 1985); In re

21   Continental Investment Corp., 637 F.2d 8, 11 (1st Cir. 1980).  Whether a compromise will

22   benefit or harm the debtor is immaterial.

23              Specifically, in evaluating whether to approve a compromise, courts in the

24   Ninth Circuit must consider the following:

25              (a)      The probability of success in litigation;

26              (b)      the difficulties, if any, to be encountered in the matter of collection;

27              (c)      the complexity of the litigation involved and the expense;

28                       inconvenience and delay necessarily attending it; and

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1            (d)     the paramount interest of the creditors and a proper deference to

2                    their reasonable views.

3   A&C Properties, 784 F.2d at 1381.

4          In considering these factors, courts are guided by two principles.  First, as

5   noted earlier, "the law favors compromise."  Blair, 538 F.2d at 851.  Compromises are

6   favored in bankruptcy, and have become "a normal part of the process of reorganization".

7   Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v.

8   Anderson, 390 U.S. 414, 424, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968) (quoting Case v. Los

9   Angeles Lumber Prods. Co., 308 U.S. 106, 130, 60 S. Ct. 1, 84 L. Ed. 110 (1939)).

10   Second, a compromise should be approved unless it "fall[s] below the lowest point in the

11   range of reasonableness".  In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983), cert.

12   denied, 464 U.S. 822, 104 S. Ct. 88, 78 L. Ed. 2d 97 (1985).  As the court in W.T. Grant

13   aptly commented:

14          [The] responsibility of the bankruptcy judge, and ours upon

15          review, is not to decide the numerous questions of law and

16          fact raised by the appellants but rather to canvass the issues

17          and see whether the settlement 'fall[s]' below the lowest

18          point in the range of reasonableness . . .

19   Id., at 608.

20          In fact,

21          [I]t is inappropriate for the court to substitute its own

22          judgment as to the wisdom of a proposed settlement for that

23          of the trustee.  The court need not engage in an exhaustive

24          analysis of the law and merits of each claim, or the likelihood

25          of the outcome, as doing so would in large part defeat the

26          purpose of settlement.  Rather, the court's role is to ensure

27          that the trustee has exercised proper business judgment in

28          making the decision to agree to the proposed settlement,

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

1    and that the settlement "falls above the lowest possible point

2    in the range of reasonableness."

3    In re 110 Beaver Street P'ship, 244 B.R. 185, 187 (Bankr. D. Mass. 2000).  See also In re

4    Pacific Gas & Elec. Co., 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).

5    Here, under express provisions of the Bankruptcy Code, a trustee is vested

6    with the standing and authority to seek compromises of legal and factual disputes.  As

7    such, settlements which have been negotiated by a trustee are entitled to deference.

8    See In re Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) (objecting creditors may not

9    substitute their judgment for that of the trustee).  Moreover, when considering these

10   factors, the court need only canvass the issues, "a mini trial on the merits is not required."

11   Schmidtt, 215 B.R. at 423.

12   In this instance, there are a variety of reasons why the Court should

13   approve the settlement.  As demonstrated, the application of the A&C Properties test to

14   the settlement requires a finding that the compromise be approved, even over the

15   objections of disappointed creditors.

16   B.    The Settlement Should Be Approved Pursuant to Rule 9019(a) of the

17         Federal Rules of Bankruptcy Procedure

18   For the following reasons, the Trustee submits that the settlement is in the

19   best interests of the Debtor's estate, and satisfies the criteria established by the Ninth

20   Circuit in A&C Properties.

21         1.    The Probability of Success in Litigation

22   The first factor to evaluate whether a settlement is fair and equitable is the

23   probability of success in the litigation.  A&C Properties, 784 F.2d at 1381.  A precise or

24   exact judicial determination of the likely outcome is not required because that would

25   defeat the purpose of compromising the litigation.  In re Telesphere Communications,

26   Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994); In re Energy Coop., Inc., 886 F.2d 921,

27   929 (7th Cir. 1989) (quoting In re Penn Central Transp. Co., 596 F.2d 1102, 1114 (3d Cir.

28   1979)).  As mentioned earlier, in the Ninth Circuit a bankruptcy court need not conduct an

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

1    exhaustive investigation into the validity of the asserted claim, but rather "[i]t is sufficient

2    that, after apprising itself of all facts necessary for an intelligent and objective opinion

3    concerning the claim's validity, the court determines that either (1) the claim has a

4    'substantial foundation' and is not 'clearly invalid as a matter of law,' or (2) the outcome of

5    the claim's litigation is doubtful."  United States of America v. Alaska National Bank

6    (Matter of Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982).

7            The Ninth Circuit cited Walsh approvingly in A&C Properties, noting that the

8    purpose of a compromise agreement is to allow the trustee and creditors "to avoid the

9    expenses and burdens associated with litigating sharply contested and dubious claims,"

10   and that the "law favors compromise and not litigation for its own sake."  Blair, 538 F.2d

11   at 851.  Here, the Trustee contends, without limitation, that the settlement is fair and

12   reasonable, in the best interests of the estate, and made according to the Trustee's

13   sound business judgment.  While the Trustee is confident that she would prevail in the

14   Action, to some degree, given the defenses and the legal and factual challenges being

15   asserted by Defendants, the costs of prosecuting the Action through trial would be cost-

16   prohibitive.

17           Understanding that settlement generally is the preferred path forward, the

18   Trustee and her professionals had numerous written and verbal communications with

19   Defendants since the date the Complaint was filed.  These communications and

20   meetings involved in-depth settlement negotiations concerning the merits of the Action

21   and any mitigating factors or defenses, including the fact that the collection of any

22   judgment remained in doubt based on the documentation provided to the Trustee.  After

23   these discussions, the Trustee and her professionals analyzed the merits of Defendants'

24   asserted defenses and challenges to certain elements of the Trustee's claims, and took

25   into account the risks of collection.

26           Although there were open questions regarding the applicability of the range

27   of challenges and defenses raised, it became clear that if Defendants were to prevail on

28   any of their potential defenses, then the net recovery to the estate could be significantly

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1    reduced, if not eliminated.  Furthermore, the estate would incur a significant amount of

2    additional attorneys' fees in litigating the Action.  In fact, the Trustee estimates that

3    litigating this matter through judgment could cost the estate tens of thousands of dollars,

4    which would have included time-consuming discovery.  In this regard, there would likely

5    be numerous discovery papers served, together with depositions of parties and non-

6    parties, including potential experts.  Substantial document review would also ensue.  The

7    settlement avoids these unnecessary pre-trial and trial preparation costs, and obviates

8    the need to seek the later speculative enforcement of any judgment against Defendants.

9           As a reminder, in satisfying this first element of the four-part A&C Properties

10   test, the burden is not on a trustee to conclusively establish that a defendant would be

11   successful at a trial on the issues raised in an action, as that would defeat the purpose of

12   settlement and would eliminate any cost savings from the settlement.  Rather, all that a

13   trustee is required to demonstrate is that, to the reasonable satisfaction of the court, all

14   things being considered, it is prudent to eliminate the risks of litigation to achieve specific

15   certainty, though it might be considerably less, or more, than if the case was fought to the

16   bitter end.  See In re Aloha Racing Foundation, Inc., 257 B.R. 83 (Bankr. N.D. Ala. 2000).

17          In fact, at least one court has found that a settlement reached by a trustee

18   could be approved even after the court had decided to rule for the trustee on a contested

19   matter.  See In re Dalen, 259 B.R. 586 (Bankr. W.D. Mich. 2001).  In Dalen, the trustee

20   sought approval of a settlement after the court had already decided to rule for the trustee,

21   such that the estate would have profited if the settlement were rejected.  The ultimate

22   issue for the court, however, was whether the trustee exercised reasonable judgment in

23   entering into the settlement based upon information then in her possession.  As long as a

24   court is able to make this determination, and finds that the trustee has fulfilled her

25   fiduciary duty to the estate, the fact that creditors are objecting to the settlement is

26   irrelevant to the court's determination under Rule 9019(a).

27          Here, there is no question that the Trustee has fulfilled her fiduciary duties

28   to the estate by not only aggressively pursuing the recovery of the alleged fraudulent

1    transfers, but by entering into the Rokita Agreement.  In light of the indisputable fact that

2    the estate will receive significant funds through the settlement, it cannot be said that the

3    Trustee has not acted in the best interests of creditors.  This settlement will benefit the

4    estate and its creditors and will end a contested matter without incurring substantial

5    attorneys' fees and costs.

6         2.    **The Difficulties, if any, to be Encountered in the Matter of**

7              **Collection**

8         Of obvious concern to the Trustee was the possibility that any judgment

9    awarded by the Court would not be collectable.  As a practical matter, there was no

10   assurance that the Trustee would prevail in avoiding and recovering the alleged

11   fraudulent transfers if the matter proceeded to trial.  However, even if the Trustee was

12   successful, serious questions remained regarding the recovery of any judgment from

13   Defendants.  As noted, Defendants produced documentation placing the collection of any

14   judgment in doubt.

15        Thus, given the amount of the claim, collection costs, even if successful,

16   would have further reduced any net benefit to the estate, even assuming collection of the

17   full amount of the judgment was possible.  Hence, even if the Trustee prevailed in

18   avoiding and recovering each of the avoidable transfers at issue, there remained a

19   legitimate concern of recovery.

20        As a result, the Trustee was required to factor into her decision the

21   likelihood of recovering on a judgment, as well as the time that would lapse if any

22   judgment was appealed or was subject to collection proceedings.  When weighed against

23   the continuing administrative costs that would need to be incurred to obtain a final

24   judgment, this element of the A&C Properties test militated in favor of settlement.

25        3.    **The Complexity of the Litigation and the Expense,**

26              **Inconvenience and Delay Necessarily Attending It**

27        The rationale behind public policy favoring pre-trial settlements is that

28   litigation, depending upon its complexity, can occupy a court's docket for years on end,

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1   depleting the resources of the parties and the taxpayers while rendering meaningful relief

2   increasingly elusive.  In a bankruptcy context, such litigation costs can be particularly

3   burdensome on the bankruptcy estate given the financial instability of the estate.  See In

4   re Grau, 267 B.R. 896 (Bankr. S.D. Fla. 2001).  Here, the complexity of ensuring

5   collection of a judgment dictated that the Trustee seek a path towards settlement.  The

6   legal and factual issues raised in the Action spanned years, are factually complex, are

7   contested, and would be extremely time consuming and costly for the estate to prosecute

8   and defend through possible appeals, particularly if the Trustee was forced to seek

9   collection efforts against Defendants.

10          Moreover, the Debtor's chapter 7 case has been pending on the Court's

11  docket for more than two years.  If the Trustee was forced to prosecute the Action to

12  finality, it is possible that at least one year would pass before any judgment was

13  rendered.  It is also likely that any judgment obtained by the Trustee could be the subject

14  of appeals and further appellate litigation for years to come.  During this time,

15  administrative fees and costs would continue to escalate, reducing any net recovery for

16  the estate.  As a result, the Trustee's decision to put an end to the Action will benefit the

17  estate and creditors alike.

18                  **4.      <u>The Paramount Interest of Creditors</u>**

19          The paramount interest of creditors which a bankruptcy court must consider

20  in deciding whether to approve a proposed compromise, generally reflects not only the

21  desire of creditors to obtain the maximum possible recovery, but also their competing

22  desire that the recovery should occur in the least amount of time possible.  See In re

23  Marples, 266 B.R. 202, 206 (Bankr. D. Idaho 2001); In re Lake City RV, Inc., 226 B.R.

24  241, 243-44 (Bankr. D. Idaho 1998).  Here, the estate is not in the position to fund

25  lengthy, difficult, and potentially uncertain litigation.  The settlement resolves the

26  competing and existing claims between the parties in a manner meant to avoid further

27  administrative expenses and also will facilitate the distribution of assets in an orderly

28  fashion which will allow the chapter 7 case to be timely administered.

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1    As noted earlier, generally, a court should approve a proposed settlement

2    so long as it is above "the lowest point in the range of reasonableness," giving deference

3    to a trustee's reasonable business judgment. See In re Receivership Estate of Indian

4    Motorcycle Mfg., Inc., 299 B.R. 8, 21 (D. Mass. 2003) ("The court may give substantial

5    deference to the business judgment of a bankruptcy trustee when deciding whether to

6    approve a settlement"). Since the Rokita Agreement adds significant value to the estate,

7    while greatly reducing the administrative fees and expenses that would be incurred in

8    prosecuting the claims, the settlement far exceeds that threshold standard and should be

9    approved.

10    **C.    The Court Should Authorize Payment of the 20% Success Fee to**

11    **Greenspoon as Previously Approved By the Court**

12    Typically, where special counsel has been employed and is to be

13    compensated on a contingency fee basis, a trustee's motion seeking to obtain approval

14    of the settlement almost invariably includes a request for payment of special counsel's

15    fees and costs. Such is the case here, where the Employment Order specifically

16    authorized the payment of a 20% success fee to Greenspoon upon the successful

17    settlement of an avoidance power claim. By detailing how much compensation is being

18    sought on a contingency basis, the Motion enables the Court and interested parties to

19    determine that the calculations are consistent with the Greenspoon Application and

20    Employment Order.

21    Although the Trustee could, conceivably, request that Greenspoon file a

22    separate application for the success fee, this would be highly inefficient and would be a

23    waste of judicial resources. Since this is one of more than 100 actions filed, the Court

24    could soon find itself burdened with a multitude of separate fee applications each time an

25    avoidance power action is compromised. Because the Trustee hopes to save the time

26    and expense of separate applications and additional notices to creditors, the Trustee

27    believes this "combined" compromise/compensation motion is appropriate under 11

28    U.S.C. §§ 105(a), 328(a), and 330(a). See In re Olson, 2006 WL 2433448 (Bankr. D.

1  Idaho July 24, 2006) (court recognizes propriety of motions to approve compromises that

2  also include requests for payment of court-approved contingency fees); In re H.K. Porter

3  Co., Inc., 183 B.R. 96 (Bankr. W.D. Pa. 1995) (in determining dispute over ownership of

4  settlement proceeds, court referenced previously approved motion for authority to settle

5  litigation and for authority to pay attorney a 50% contingency fee out of settlement

6  proceeds).

7                                        **VI.**

8                                  **<u>CONCLUSION</u>**

9            Based on the foregoing, the Trustee respectfully requests that the Court

10  grant the Motion in its entirety, and for such other and further relief as the Court deems

11  appropriate under the circumstances.

12  DATED: July 6, 2023                    **Greenspoon Marder LLP**

13

14                                  By: /s/ *Daniel A. Lev*
                                         Daniel A. Lev
15                                       Attorneys for Elissa D. Miller, Chapter 7
                                         Trustee
16

17

18

19

20

21

22

23

24

25

26

27

28

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

DAL 54836652v1                          -20-

1

**DECLARATION OF ELISSA D. MILLER**

2          I, Elissa D. Miller, state as follows:

3          1.      I am an attorney at law, duly qualified and licensed to practice before

4    this Court, and am the duly appointed, qualified, and acting chapter 7 trustee for the

5    estate of the debtor Girardi Keese (the "Debtor" or "Girardi Keese").  I have personal

6    knowledge of the facts stated in this Declaration, and if called to testify, could and would,

7    without waiver of any applicable privilege, testify that the facts stated in this Declaration

8    are true and correct to the best of my knowledge and information.

9          2.      I make this declaration in support of my "Chapter 7 Trustee's Motion

10   for Order Authorizing Compromise of Controversy Re Nicole Rokita and Nikita

11   Management, Inc. Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure

12   and Authorizing Payment of Contingency Fee to Special Avoidance Power Litigation

13   Counsel; Memorandum of Points and Authorities; Declaration of Elissa D. Miller in

14   Support Thereof" (the "Motion"), through which I seek, among other things, an order

15   authorizing and approving, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy

16   Procedure, and Local Bankruptcy Rule 9013, a settlement agreement by and between

17   me, in my capacity as trustee, on the one hand, and defendants, Nicole Rokita ("Rokita")

18   and Nikita Management, Inc., a California corporation ("Nikita" and together with Rokita,

19   the "Defendants"), on the other hand.  In sum, in exchange for limited mutual releases,

20   and dismissal of the action against Defendants, with prejudice, Defendants will pay the

21   estate the total amount of $30,000.  Defendants also agree to waive any claim provided

22   by 11 U.S.C. § 502(h) that may arise in connection with the settlement payment.  A true

23   and correct copy of the Rokita Agreement is attached hereto as Exhibit "A" and

24   incorporated herein by reference.  As part of the Motion, I also seek authority to pay

25   Greenspoon Marder, LLP ("Greenspoon"), special avoidance power litigation counsel for

26   the estate, the sum of $6,000 from the settlement proceeds, representing the 20%

27   contingency fee authorized by the Court pursuant to its "Order Granting Chapter 7

28   Trustee's Application for Authority to Employ Greenspoon Marder LLP As Special

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

1    Avoidance Power Litigation Counsel Effective July 1, 2022" (the "Employment Order")

2    [Docket No. 1327] entered on August 26, 2022.

3              3.    As I ultimately learned after my appointment as trustee, despite all

4    appearances, Girardi Keese was an illicit and felonious business enterprise that engaged

5    in a decades-long fraud resulting in the wrongful diversion and misappropriation of tens of

6    millions of dollars of client and partnership funds.  Emblematic of the rampant fraud and

7    pervasive misappropriation of client and creditor funds, during a time when Girardi Keese

8    was in a precarious financial state, and was not paying its creditors, Thomas and his co-

9    conspirators began a systematic process of draining the available cash, often times

10    consisting of stolen client trust funds, by, among other things, making distributions to

11    certain preferred creditors or third parties from funds of Girardi Keese's estate and using

12    the funds to invest in speculative business ventures not in the firm's name.  Thomas and

13    his co-conspirators conspired by purpose and design to abscond and secrete the assets

14    of Girardi Keese, as well as funds held in trust for clients, for the purpose of enriching

15    themselves and others while at the same time defrauding Girardi Keese's clients and

16    creditors.

17              4.    In virtually each instance, these transfers were made for less than

18    reasonably equivalent value in return and during a time in which Girardi Keese was

19    insolvent or was rendered insolvent as a result of the transfers, or when Girardi Keese

20    was engaged or was about to engage in a business or a transaction for which the

21    remaining assets of Girardi Keese were unreasonably small in relation to the business or

22    transaction.  Often times, for example, Thomas and others used funds from "interest on

23    lawyers' trust accounts" (or "IOLTAs"), which accounts were intended to safeguard client

24    funds, for illegitimate purposes.  Despite the strict prohibitions on the use of funds in an

25    IOLTA, Thomas and others used Girardi Keese's general operating accounts and IOLTAs

26    as if they were common depositories of not only Girardi Keese client funds, but also their

27    personal funds.

28

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

1        5.     Based on a comprehensive review of the Debtor's books and records

2   meant to determine the scope of the estate's avoidance power claims, I authorized the

3   filing of an adversary proceeding against Defendants seeking the avoidance and

4   recovery of fraudulent transfers in the total aggregate amount of $425,000.  After the

5   operative complaint was filed, I learned that Defendants were challenging numerous

6   elements of the estate's claims and were raising numerous affirmative defenses to the

7   action, including defenses under 11 U.S.C. § 550(b).  In addition, Defendants provided

8   documentation that, even if I was successful in avoiding the transfers, there were serious

9   questions regarding the recovery of any judgment from Defendants.  Nikita was formed

10  by Rokita in 2017 for the purpose of opening an all-keto restaurant that specialized in

11  low-carb, gluten-free ketogenic food.  However, the restaurant failed and was formally

12  dissolved in February 2011, shortly after the Petition Date.  As a result, there were no

13  assets from which I could recover presuming a judgment was even entered against

14  Nikita.  Moreover, there was uncertainty whether Rokita possessed the financial

15  resources to satisfy any judgment entered against her.  So while So while I was prepared

16  to contest the individual defenses, I determined that it was not economically beneficial to

17  continue to prosecute the Action in light of Nikita and Rokita's financial positions,

18  defenses, and the settlement.

19       6.     In my opinion, the settlement is fair and reasonable, in the best

20  interests of the estate, and was made according to my sound business judgment.  While I

21  believe that I likely would prevail if the action to trial, to some degree, given the defenses

22  and the legal and factual challenges being asserted by Defendants, the costs of

23  prosecuting the action through and after trial would be cost-prohibitive.  Understanding

24  that settlement is always the preferred path forward, my professionals and I carefully

25  reviewed Defendants' potential defenses when considering the settlement offers being

26  discussed, including the fact that the collection of any judgment against Defendants was

27  in doubt.  Although there were open questions regarding the applicability of the range of

28  challenges and defenses raised, it became clear that if Defendants were to prevail on any

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

1    of their potential defenses, then the net recovery to the estate could be significantly

2    reduced, if not eliminated.  Furthermore, the estate would incur a significant amount of

3    additional attorneys' fees in litigating the action through final judgment, including post-

4    judgment remedies.  Therefore, I believe the settlement is in the best interests of the

5    estate as it eliminates the risks of litigation to achieve specific certainty.

6                    7.       Of obvious concern to me was the possibility that any judgment

7    awarded by the Court would not be collectable.  As a practical matter, there was no

8    assurance that I would prevail in avoiding and recovering the alleged fraudulent transfers

9    if the matter proceeded to trial.  However, even I was successful, serious questions

10   remained regarding the recovery of any judgment from Defendants.  As noted, Nikita

11   operated a short-lived restaurant that failed and the entity was dissolved in early 2021,

12   leaving no assets for collection.  There also was a demonstrated uncertainty regarding

13   Rokita's financial resources to satisfy any judgment, rendering the collection of any

14   judgment against her speculative as well.  Thus, given the amount of the claim, collection

15   costs further would have reduced any net benefit to the estate, even assuming collection

16   of the full amount of the judgment was possible.  Therefore, even if I prevailed in avoiding

17   and recovering each of the avoidable transfers at issue, there remained legitimate

18   concerns of recovery.  Hence, when weighed against the continuing administrative costs

19   that would need to be incurred to obtain and collecting a final judgment, this element of

20   the A&C Properties test militated in favor of settlement.

21                   8.       Here, the complexity of ensuring collection of a judgment dictated

22   that I seek a consensual resolution.  The legal and factual issues raised in the action are

23   factually complex, are contested, and would be extremely time consuming and costly for

24   the estate to prosecute and defend through possible appeal.  Moreover, the Debtor's

25   chapter 7 case has been pending on the Court's docket for more than two years.  If I was

26   forced to prosecute the action to finality, and then seek to enforce post-judgment

27   remedies, it is possible that at least one year would pass before any judgment was

28   rendered.  It is also likely that any judgments obtained would be the subject of appeals

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

1    and further appellate litigation for years to come.  During this time, administrative fees

2    and costs would continue to escalate, reducing any net recovery for the estate.  As a

3    result, my decision to put an end to the action will benefit the estate and creditors alike.

4    9.    In addition, the estate is not in the position to fund lengthy, difficult,

5    and potentially uncertain litigation.  The settlement resolves the competing and existing

6    claims between the parties in a manner meant to avoid further administrative expenses

7    and also will facilitate the distribution of assets in an orderly fashion which will allow the

8    chapter 7 case to be timely administered.  Since the Rokita Agreement adds significant

9    value to the estate, while greatly reducing the administrative fees and expenses that

10   would be incurred in prosecuting the avoidance power claims, the settlement does not fall

11   below the lowest point in the range of reasonableness and it should be approved.

12   10.    Finally, the Court should also authorize payment of the 20% success

13   fee to Greenspoon as previously approved by the Court.  Although I could, conceivably,

14   request that Greenspoon file a separate application for the success fee, this would be

15   highly inefficient and would be a waste of judicial resources.  Since this is one of more

16   than 100 actions filed, the Court could soon find itself burdened with a multitude of

17   separate fee applications each time an avoidance power action was compromised.

18   Because I hope to save the time and expense of having Greenspoon file separate

19   applications involving additional notices to creditors, I believes the contingency fee can

20   and should be approved as part of this Motion.

21   I declare under penalty of perjury under the laws of the United States of

22   America that the foregoing is true and correct.

23   Executed this 6th day of July, 2023, at Los Angeles, California.

24

25

26   _____
     Elissa D. Miller, Chapter 7 Trustee

27

28

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

DAL 54836652v1

# EXHIBIT A

### SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This "Settlement Agreement and Mutual General Release" (the "**AGREEMENT**") is entered into as of June 21, 2023, by and between Elissa D. Miller (the "**TRUSTEE**"), in her sole and exclusive capacity as the duly appointed, qualified, and acting chapter 7 trustee for the bankruptcy estate (the "**ESTATE**") of the debtor Girardi Keese (the "**DEBTOR**") and as the Successor-in-Interest Trustee of the Girardi Keese Client Trust Accounts, and the successors and assigns of the **TRUSTEE** in any capacity, on the one hand, and Nikita Management, Inc., a California corporation ("**NIKITA**"), and Nicole Rokita, an individual ("**ROKITA**" and, together with **NIKITA**, the "**DEFENDANTS**"), on the other hand, as follows:

### RECITALS

**A.**      On December 18, 2020 (the "**PETITION DATE**"), petitioning creditors Jill O'Callahan, as successor in interest to James O'Callahan, Robert M. Keese, John Abassian, Erika Saldana, Virginia Antonio, and Kimberly Archie (collectively, the "**PETITIONING CREDITORS**") commenced an involuntary petition for relief under chapter 7 of title 11 of the United Sates Code (the "**BANKRUPTCY CODE**") against the **DEBTOR** in the United States Bankruptcy Court, Central District of California, Los Angeles Division (the "**COURT**" or "**BANKRUPTCY COURT**"), styled <u>In re Girardi Keese</u>, bearing Case No. 2:20-bk-21022-BR.

**B.**      On December 24, 2020, **PETITIONING CREDITORS** caused to be filed their "Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g); Memorandum of Points and Authorities". On January 5, 2021, the **COURT** entered its "Order Granting 'Motion of Petitioning Creditors for Appointment of Interim Trustee Pursuant to 11 U.S.C. 303(g)'". On January 6, 2021, the Office of the United States Trustee filed its "(Corrected) Notice of Appointment of Chapter 7 Trustee (11 U.S.C. §§ 303(g) and 701)" pursuant to which, among other things, Elissa D. Miller was appointed interim chapter 7 trustee for the **DEBTOR'S ESTATE**.

**C.**      On January 13, 2021, the **COURT** entered its "Order Directing: (1) the Clerk of Court to Immediately Enter an Order for Relief Under Chapter 7; (2) the United States Trustee to Immediately Appoint a Chapter 7 Trustee; (3) the Debtor to File All Schedules and Related Documentation for Chapter 7 Case Within Fourteen Days of the Entry of This Order; and (4) Vacating February 16, 2021 Status Conference". On January 13, 2021, the Clerk of Court entered its "Order for Relief and Order to File Schedules, Statements and List(s)". On January 13, 2021, the Office of the United States Trustee filed its "Notice of Appointment of Trustee and Fixing of Bond; Acceptance of Appointment As Interim Trustee" pursuant to which, among other things, Elissa D. Miller was appointed and accepted her appointment as chapter 7 trustee for the **DEBTOR'S ESTATE,** and she continues to act in that capacity as well as the Successor-in-Interest Trustee of the Girardi Keese Client Trust Accounts.

**D.**      The **TRUSTEE** warrants and represents that, in her capacity as chapter 7 trustee and Successor-in-Interest Trustee of the Girardi Keese Client Trust Accounts, she is the sole and exclusive holder of the **CLAIMS** (as hereinafter defined) which are the subject of this **AGREEMENT.**

**E.**     On December 29, 2022, the **TRUSTEE**, as plaintiff, caused to be filed her "Complaint for (1) Avoidance and Recovery of Fraudulent Transfers, (2) Preservation of Fraudulent Transfers, and (3) Disallowance of Claims" (the "**COMPLAINT**") against **NIKITA** and **ROKITA**, as defendants, giving rise to the adversary proceeding entitled Elissa D. Miller v. Nikita Management, Inc., et al., bearing Adv. No. 2:22-ap-01268-BR (the "**ACTION**"), pursuant to which the **TRUSTEE** sought, among other things, to avoid and recover, under both federal and state law, certain alleged fraudulent transfers.

**F.**     **DEFENDANTS** deny that the **TRUSTEE** is entitled to avoid and recover funds as fraudulent transfers, under either federal or state law, as alleged in the **COMPLAINT**.

**G.**     The parties now desire to resolve the **ACTION** and the claims for relief asserted therein and to avoid the uncertainty, costs, and expenses associated with adjudication of the **ACTION**.

## PROVISIONS

**NOW, THEREFORE,** in consideration of the foregoing Recitals and of the mutual agreements, covenants, and releases set forth herein, and for other good and valuable consideration, the sufficiency and adequacy of which is acknowledged by the parties, the parties hereto agree as follows:

1.     **Recitals.**  The recitals contained in paragraphs A through G (the "**RECITALS**") are an integral part of this **AGREEMENT** and are incorporated herein by reference.

2.     **Rules of Construction.**  The following rules of construction govern and apply to the interpretation and construction of this **AGREEMENT**:

    **2.1.**     Whenever the name of the **TRUSTEE** is used, it includes all current and former agents, employees, attorneys, accountants, successors, and assigns of the **TRUSTEE** and all other persons and entities for whose acts and omissions the **TRUSTEE** may be held liable.

    **2.2.**     Whenever the name of **NIKITA** is used, it includes all parents, subsidiaries, related, and affiliated entities, all current and former agents, employees, officers, directors, successors, and assigns of **NIKITA**, as applicable, and all other persons and entities for whose acts and omissions **NIKITA** may be held liable, including, without limitation, **ROKITA**.

    **2.3.**     Whenever the name of **ROKITA** is used, it includes all successors and assigns of **ROKITA**, as applicable, and all other persons and entities for whose acts and omissions **ROKITA** may be held liable, including, without limitation, **NIKITA**.

    **2.4.**     Each party acknowledges that it has participated in the drafting of this **AGREEMENT** and reviewed the terms of the **AGREEMENT** and, as such, no rule of construction shall apply in any interpretation of this **AGREEMENT** which might result in this **AGREEMENT** being construed in favor of or against either of them, including,

without limitation, any rule of construction to the effect that ambiguities ought to be resolved against the drafting party.

**2.5.** The underscored word or words appearing at the commencement of sections of this **AGREEMENT** are intended only as a guide and are not intended, and should not be construed, as controlling, enlarging, restricting, explaining, or modifying, in any manner, the language or meaning of those sections or subsections.

**3.** **Settlement.** In consideration for the promises made in this **AGREEMENT**, including, without limitation, dismissal of the **ACTION** against **DEFENDANTS**, with prejudice, **ROKITA** shall pay the **ESTATE** the total amount of Thirty Thousand Dollars and Zero Cents ($30,000) (the "**SETTLEMENT PAYMENT**"). The **SETTLEMENT PAYMENT** shall be due on or before the fifteenth (15th) calendar day following the date the order of the **BANKRUPTCY COURT**, or other court of competent jurisdiction, approving this **AGREEMENT** becomes a final, unstayed order. The **SETTLEMENT PAYMENT** shall be made by wire (pursuant to instructions provided by the **TRUSTEE**) or business or cashier's check made payable to "Elissa D. Miller, Chapter 7 Trustee for Girardi Keese", and by delivering said business or cashier's check to Elissa D. Miller, Chapter 7 Trustee, Greenspoon Marder LLP, 1875 Century Park East, Suite 1900, Los Angeles, California 90067.

**4.** **No 11 U.S.C. § 502(h) Claim.** In addition to the **SETTLEMENT PAYMENT**, **DEFENDANTS** hereby acknowledge and expressly waive any claim provided by 11 U.S.C. § 502(h) that may arise in connection with the **SETTLEMENT PAYMENT**. The **TRUSTEE** further reserves the right to object to any proof of claim (if any), or scheduled claim, that **DEFENDANTS** may have previously filed against the **DEBTOR** and the **ESTATE**.

**5.** **Dismissal of Action With Prejudice Upon Bankruptcy Court Approval and Payment of Settlement Payment.** In consideration for the promises made in this **AGREEMENT**, the **TRUSTEE** shall, within five (5) business days after confirmation that the **SETTLEMENT PAYMENT** has been honored by the **TRUSTEE'S** depository institution, file with the **COURT** a request for dismissal dismissing the entire **ACTION** against **DEFENDANTS** with prejudice (the "**REQUEST**").

**6.** **Mutual Release.** Except for: (a) a breach of this **AGREEMENT** and claims arising by reason of such breach; (b) enforcement of rights, obligations, and duties arising under this **AGREEMENT**; and (c) the satisfaction of the executory provisions of this **AGREEMENT**, in consideration for the provisions of this **AGREEMENT**, the **TRUSTEE**, on the one side, and **DEFENDANTS**, on the other side, do hereby fully and finally compromise and settle with, and forever release, remise, relieve, waive, relinquish, and discharge each other from any and all claims, complaints, rights, manner of action or actions, cause or causes of action, suits, debts, dues, demands, obligations, charges, costs, expenses (including but not limited to attorneys' fees), sums of money, controversies, damages, accounts, agreements, covenants, contracts, judgments, reckonings, liens, and liabilities of every kind and nature whatsoever, whether at law or in equity, whether based upon statute, common law, or otherwise, whether matured, contingent, or non-contingent, whether direct or indirect, whether known or unknown, whether suspected or unsuspected, whether or not hidden, and without regard to the subsequent discovery or existence of different or additional facts, which the **TRUSTEE** and **DEFENDANTS** ever

3

028

had, now have, or may claim to have against each other (the "**CLAIM(S)**") arising out of, based on, asserted in, or in connection with any matter, cause, claim, or thing or related to the **ACTION**, any of the above now accrued or hereafter accruing. The releases herein only arise out of the **ACTION** filed in the **DEBTOR'S** case and the **TRUSTEE** is not releasing any claims against **DEFENDANTS** unrelated to the **DEBTOR'S** case.

7.    **Final Release and Bar.** The parties hereto hereby acknowledge that it is their intention that this **AGREEMENT** shall be effective as a full and final release of, and as a bar with prejudice to, each and every **CLAIM** which the parties have or had against one another as is applicable, directly or indirectly. In connection with such waiver and relinquishment, the parties acknowledge that they or their attorneys may hereafter discover facts different from or in addition to the facts that they now know or believe to be true with respect to the subject matter of this **AGREEMENT**, but that it is their intention to hereby fully, finally, absolutely, and forever release any and all **CLAIMS** released pursuant to Section 6, above, which now do exist, may exist, or heretofore have existed between them, and that in furtherance of such intentions the release as given herein by the parties shall be and remains in effect as a full and complete release of the **CLAIMS** released in Section 6 above, notwithstanding the discovery of any such different or additional facts.

         Notwithstanding the discovery of any such additional or different facts, the parties certify that they have read Section 1542 of the California Civil Code set forth below:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

         The parties hereto do hereby waive application of Section 1542 of the California Civil Code and any other statutes, common law rights, rules, or the like which may operate to limit the intent of this **AGREEMENT** with respect to the **CLAIMS** released in Section 6 above. The parties understand and acknowledge the significance and consequence of this waiver of Section 1542 of the California Civil Code is that even if they should eventually suffer additional damages on account of the **CLAIMS** released in Section 6 above, they will not be permitted to make any claim for such damages.

8.    **Covenant Not to Sue.** The **TRUSTEE** and **DEFENDANTS** hereby covenant and agree that they will forever refrain and forbear from commencing, instituting, or prosecuting any lawsuit, action, or other proceeding against each other based on, arising out of, or in connection with the **CLAIMS** released in Section 6 above. Notwithstanding the foregoing, nothing contained in this **AGREEMENT** shall preclude the **TRUSTEE** or **DEFENDANTS** from exercising their respective rights in the event the other party breaches any of its obligations under this **AGREEMENT**.

**9.    Denial of Liability.**  Liability for any claims that the **TRUSTEE** has or may have asserted is denied by **DEFENDANTS**.  This **AGREEMENT** is a compromise of disputed claims and shall never be construed as an admission of liability or responsibility for any purpose by either party.

**10.    Mutual Warranties and Representations.**    The **TRUSTEE** and **DEFENDANTS** hereby represent and warrant to each other that as of the date of this **AGREEMENT**:

> **10.1**    The **TRUSTEE** and **DEFENDANTS** have each consulted with, or have had the opportunity to consult with, an attorney of their choosing, and each of them has carefully read this **AGREEMENT**, fully understands the **AGREEMENT** and its terms and provisions, and each of them either is relying upon legal advice in entering into this **AGREEMENT** voluntarily, or has determined, without being under any duress or coercion, not to rely upon legal advice in entering into this **AGREEMENT**.

> **10.2**    The **TRUSTEE** and **DEFENDANTS** have each made such investigation of the facts and matters pertaining to this **AGREEMENT** and settlement of the **ACTION** as each of them has deemed necessary.

> **10.3**    Except for the statements, representations, and promises contained in this **AGREEMENT**, the parties hereto are not relying upon any statement, representation, or promise from the other party hereto or any of the other party's agents, employees, representatives, or attorneys in entering into this **AGREEMENT**.

> **10.4**    Each person executing this **AGREEMENT** on behalf of a party hereto has been duly authorized to execute this **AGREEMENT** on behalf of the party and to bind the party to the terms and provisions of this **AGREEMENT** by appropriate appointment, delegation of authority, corporate by-laws, or board resolutions.

> **10.5**    The **TRUSTEE** represents and warrants, which representation and warranty is a material inducement to the execution of the **AGREEMENT**, that, in her capacity as chapter 7 trustee of the **ESTATE**, she is the sole holder of the **CLAIMS** which are the subject of this **AGREEMENT**, with the sole right to initiate, litigate, and compromise said **CLAIMS**.

> **10.6**    As to the matters addressed herein, this **AGREEMENT** is intended to be final and binding upon the parties hereto, regardless of any mistake of fact or law made by the parties hereto.  The **TRUSTEE** and **DEFENDANTS** each assume the risk of any mistake of fact or law in relation to this **AGREEMENT** and may not set aside this **AGREEMENT**, or any portion thereof, based on the subsequent discovery of any such mistake of fact or law.

**11.    Complete Agreement.**  This **AGREEMENT** contains the entire agreement between the parties with respect to the matters addressed in this **AGREEMENT** and the **AGREEMENT** supersedes all prior agreements, whether written or oral.  Should a dispute arise under this **AGREEMENT**, neither the **TRUSTEE** nor **DEFENDANTS** may introduce evidence of any

alleged prior or contemporaneous agreements or understandings to alter the terms of this **AGREEMENT**.

12.   **No Oral Modifications.** This **AGREEMENT** may be amended only in a writing signed by the parties hereto.

13.   **Retention of Jurisdiction.**   The **BANKRUPTCY COURT** shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or relating to this **AGREEMENT**.

14.   **Attorneys' Fees and Costs.** The **TRUSTEE** and **DEFENDANTS** shall each bear their own costs and attorneys' fees, if any, with regard to any aspect of the **TRUSTEE'S CLAIMS** against **DEFENDANTS**, including, with respect to the **COMPLAINT**, the **ACTION**, and the negotiation, drafting, and execution of this **AGREEMENT**.   However, the **TRUSTEE** and **DEFENDANTS** agree that, in the event of any legal or equitable action or arbitration proceeding required to enforce or defend this **AGREEMENT**, the prevailing party, as that term is defined by California Civil Code § 1717, shall be entitled to an award of its attorneys' fees, costs, and expenses incurred in connection with the enforcement or defense of this **AGREEMENT**, in addition to any other damages it may suffer as a result of the violation or breach of this **AGREEMENT**, or other relief to which it may be entitled.

15.   **Successors.** This **AGREEMENT** shall bind and inure to the benefit of the parties hereto and their respective successors, predecessors, and assigns.

16.   **Severability.**   Should any provision of this **AGREEMENT** be unenforceable, those provisions shall be considered severable, and the remaining provisions shall remain in effect.

17.   **Governing Law.** This **AGREEMENT** shall be construed and governed by federal law and, where applicable thereto, or incorporated therein, by California law.

18.   **Counterparts.** This **AGREEMENT** may be executed in counterparts and by facsimile signature with the same force and effect as if all original signatures were set forth in a single document. This **AGREEMENT** shall not be binding until signed by both parties.

19.   **Further Assurances.** The **TRUSTEE** and **DEFENDANTS** hereby agree, on request of the other party hereto, to perform all acts reasonably necessary, including execution of further documents, to effectuate the intent of this **AGREEMENT**.

20.   **Good Faith and Fair Dealing.** This **AGREEMENT** was negotiated in good faith, at arm's length, and for good, reasonable and fair consideration as to all parties.

*[Remainder of page intentionally left blank]*

21.    **Bankruptcy Court Approval.**  This **AGREEMENT** is explicitly conditioned upon entry of an order by the **BANKRUPTCY COURT**, or other court of competent jurisdiction, approving the terms and conditions of this **AGREEMENT**.  In the event the **BANKRUPTCY COURT**, or other court of competent jurisdiction, does not approve this **AGREEMENT**, it will be null and void.

    **BY SIGNING THIS AGREEMENT, I CERTIFY THAT I HAVE READ THIS AGREEMENT AND UNDERSTAND ALL OF ITS TERMS, AND I VOLUNTARILY AGREE TO THE TERMS AS SET FORTH IN THIS AGREEMENT.**

**ELISSA D. MILLER, Solely in her capacity as chapter 7 trustee for the bankruptcy estate of Girardi Keese**

By: _____
    Elissa D. Miller, Chapter 7 Trustee

**NIKITA MANAGEMENT, INC., a California corporation**

By: _____
    Nicole Rokita
Its: President

**NICOLE ROKITA**

By: _____
    Nicole Rokita

21.    __Bankruptcy Court Approval.__  This **AGREEMENT** is explicitly conditioned upon entry of an order by the **BANKRUPTCY COURT**, or other court of competent jurisdiction, approving the terms and conditions of this **AGREEMENT**.  In the event the **BANKRUPTCY COURT**, or other court of competent jurisdiction, does not approve this **AGREEMENT**, it will be null and void.

**BY SIGNING THIS AGREEMENT, I CERTIFY THAT I HAVE READ THIS AGREEMENT AND UNDERSTAND ALL OF ITS TERMS, AND I VOLUNTARILY AGREE TO THE TERMS AS SET FORTH IN THIS AGREEMENT.**

> **ELISSA D. MILLER, Solely in her capacity as chapter 7 trustee for the bankruptcy estate of Girardi Keese**

By:

Elissa D. Miller, Chapter 7 Trustee

**NIKITA MANAGEMENT, INC., a California corporation**

By:

Nicole Rokita

Its: President

**NICOLE ROKITA**

By:

Nicole Rokita

51182583v2

033

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER AUTHORIZING COMPROMISE OF CONTROVERSY RE NICOLE ROKITA AND NIKITA MANAGEMENT, INC. PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND AUTHORIZING PAYMENT OF CONTINGENCY FEE TO SPECIAL AVOIDANCE POWER LITIGATION COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ELISSA D. MILLER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 6, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**See Attached ECF List**

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) July 6, 2023 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) July 6, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Email**
Attorneys for Defendants:
David Weinstein, Esq.
Weinstein Law Firm, Professional Corporation
16501 Ventura Boulevard, Suite 400
Encino, CA 91436
dweinstein@weinsteinlawfirm.net

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 6, 2023 | Cheryl Caldwell | /s/Cheryl Caldwell |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 52398572v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                           **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Kyra E Andrassy**    kandrassy@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Rafey Balabanian**    rbalabanian@edelson.com, docket@edelson.com;5926930420@filings.docketbird.com
- **Michelle Balady**    mb@bedfordlg.com, leo@bedfordlg.com
- **Robert D Bass**    bob.bass47@icloud.com
- **Reem J Bello**    rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Kate Benveniste**    kate.benveniste@us.dlapiper.com, dlaphx@us.dlapiper.com
- **Ori S Blumenfeld**    oblumenfeld@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com
- **Evan C Borges**    eborges@ggtriallaw.com, cwinsten@ggtriallaw.com
- **William E Brueckner**    wbrueckner@woodsoviatt.com
- **Richard Dennis Buckley**    rbuckley@safarianchoi.com
- **Steve Burnell**    Steve.Burnell@gmlaw.com,
  sburnell@ecf.courtdrive.com;sburnell@ecf.inforuptcy.com;cheryl.caldwell@gmlaw.com;denise.walker@gmlaw.com
- **Glenn Ward Calsada**    glenn@calsadalaw.com,
  lnw@calsadalaw.com;glenncalsada@gmail.com;niko@calsadalaw.com,lauren@calsadalaw.com,pat@calsadalaw.com
- **Indira J. Cameron-Banks**    indira@cameronjones.law, tiffany@cameronbankslaw.com
- **Michael F Chekian**    mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Fang Chen**    fang@fangchenlaw.com
- **Marie E Christiansen**    mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-
  4166@ecf.pacerpro.com
- **Baruch C Cohen**    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Jennifer Witherell Crastz**    jcrastz@hrhlaw.com
- **Ashleigh A Danker**    adanker731@gmail.com
- **Richard T Egger**    richard.egger@bbklaw.com, linda.tapia@bbklaw.com
- **Lei Lei Wang Ekvall - DECEASED -**    lekvall@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Richard W Esterkin**    richard.esterkin@morganlewis.com
- **Oscar Estrada**    oestrada@ttc.lacounty.gov
- **Timothy W Evanston**    tevanston@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- **Jeremy Faith**    Jeremy@MarguliesFaithlaw.com,
  Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- **James R Felton**    jfelton@gblawllp.com, pstruntz@gblawllp.com;msingleman@gblawllp.com
- **Robert W Finnerty**    rfinnerty@actslaw.com
- **James J Finsten**    , jimfinsten@hotmail.com
- **James J Finsten**    jfinsten@lurie-zepeda.com, jimfinsten@hotmail.com
- **Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com
- **Michael E Friedman**    MichaelFriedmanLaw@gmail.com
- **Steven R. Friedman**    stevenrfriedman@gmail.com
- **Larry W Gabriel**    lgabrielaw@outlook.com, tinadow17@gmail.com
- **James B Glucksman**    jbg@dhclegal.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Eric D Goldberg**    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Rosendo Gonzalez**    rossgonzalez@gonzalezplc.com,
  rgonzalez@ecf.axosfs.com;jzavala@gonzalezplc.com;zig@gonzalezplc.com;gig@gonzalezplc.com
- **Andrew Goodman**    agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com
- **Suzanne C Grandt**    suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov
- **Steven T Gubner**    sgubner@bg.law, ecf@bg.law
- **Asa S Hami**    asa.hami@gmlaw.com,
  ahami@ecf.courtdrive.com;patricia.dillamar@gmlaw.com;pdillamar@ecf.courtdrive.com

CC 52398572v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

- **Brian T Harvey**    bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com
- **Stella A Havkin**    stella@havkinandshrago.com, shavkinesq@gmail.com
- **James Andrew Hinds**    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com
- **Marshall J Hogan**    mhogan@swlaw.com, knestuk@swlaw.com
- **Bradford G Hughes**    bhughes@Clarkhill.com, mdelosreyes@clarkhill.com;kwebster@clarkhill.com
- **Sheryl K Ith**    sith@cookseylaw.com
- **Razmig Izakelian**    razmigizakelian@quinnemanuel.com
- **Steven D Jerome**    sjerome@swlaw.com
- **Lillian Jordan**    nefrecipients@donlinrecano.com, RMAPA@DONLINRECANO.COM
- **Alphamorlai Lamine Kebeh**    akebeh@danninggill.com
- **Molly J. Kjartanson**    mkjartanson@swlaw.com
- **Michael S Kogan**    mkogan@koganlawfirm.com
- **Kenneth A Kotarski**    KKOTARSKI@HAMRICKLAW.COM,
  hmartindale@HAMRICKLAW.COM;pliscano@hamricklaw.com;gknopfler@hamricklaw.com;khearn@hamricklaw.com;secretary2@hamricklaw.com;sjustice@hamricklaw.com;jpoole@hamricklaw.com
- **Lewis R Landau**    Lew@Landaunet.com
- **Janet A Lawson**    jlawsonlawyer@gmail.com, G38570@notify.cincompass.com
- **Daniel A Lev**    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Marc A Lieberman**    marc.lieberman@flpllp.com, safa.saleem@flpllp.com;addy@flpllp.com
- **Elizabeth A Lombard**    elombard@zwickerpc.com, bknotices@zwickerpc.com
- **Noreen A Madoyan**    Noreen.Madoyan@usdoj.gov
- **Aaron J Malo**    amalo@sheppardmullin.com, clopez@sheppardmullin.com;abilly@sheppardmullin.com
- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Craig G Margulies**    Craig@MarguliesFaithlaw.com,
  Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Damian J. Martinez**    damian.martinez@aalrr.com, julissa.ruiz@aalrr.com
- **Peter J Mastan**    peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
- **Edith R. Matthai**    ematthai@romalaw.com, lrobie@romalaw.com
- **Daniel J McCarthy**    dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;nchacon@hfbllp.com
- **Dennis E McGoldrick**    dmcgoldricklaw@yahoo.com, demcg@demcg.com
- **Elissa Miller (TR)**    CA71@ecfcbis.com,
  MillerTrustee@gmlaw.com;C124@ecfcbis.com;cheryl.caldwell@gmlaw.com;cheryl.caldwell@ecf.courtdrive.com
- **Eric A Mitnick**    MitnickLaw@gmail.com, mitnicklaw@gmail.com
- **Byron Z Moldo**    bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Kevin H Morse**    kmorse@clarkhill.com, blambert@clarkhill.com
- **Glenn D. Moses**    gmoses@venable.com,
  cascavone@venable.com;ipmalcolm@venable.com;jadelgado@venable.com
- **Gilbert M Nishimura**    gnishimura@snw-law.com, schin@snw-law.com;sgalindo@snw-law.com;ffilimona@snw-law.com
- **Scott Olson**    scott.olson@bclplaw.com, scott-olson-2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Carmela Pagay**    ctp@lnbyb.com
- **Carmela Pagay**    ctp@lnbyg.com
- **Leonard Pena**    lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com
- **Matthew D Pham**    mpham@allenmatkins.com, mdiaz@allenmatkins.com
- **Christopher E Prince**    cprince@lesnickprince.com,
  jmack@lesnickprince.com;cprince@ecf.courtdrive.com;jnavarro@lesnickprince.com
- **Amy Quartarolo**    amy.quartarolo@lw.com, laura.pumerville@lw.com;amy-quartarolo-2972@ecf.pacerpro.com
- **Michael J Quinn**    mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-2870@ecf.pacerpro.com,ahirschkowitz@vedderprice.com
- **Dean G Rallis**    drallis@hahnlawyers.com,
  jevans@hahnlawyers.com;drallis@ecf.courtdrive.com;jevans@ecf.courtdrive.com
- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com

CC 52398572v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_    **F 9013-3.1.PROOF.SERVICE**

- **Karen Rinehart**    krinehart@omm.com, karen-rinehart-3320@ecf.pacerpro.com
- **Kevin C Ronk**    Kevin@portilloronk.com, Attorneys@portilloronk.com
- **Brian M Rothschild**    brothschild@parsonsbehle.com, usclawyer@yahoo.com;ecf@parsonsbehle.com
- **Frank X Ruggier**    frank@ruggierlaw.com
- **William F Savino**    wsavino@woodsoviatt.com, lherald@woodsoviatt.com
- **Scott A Schiff**    sas@soukup-schiff.com
- **Daren M Schlecter**    daren@schlecterlaw.com, assistant@schlecterlaw.com
- **Kenneth John Shaffer**    johnshaffer@quinnemanuel.com
- **Amir Shakoorian**    AShakoorian@GGTrialLaw.com
- **Summer M Shaw**    ss@shaw.law, shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com
- **Zev Shechtman**    zs@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- **Anastasija Olegovna Snicarenko**    legal@flyxo.com, jennifer@cypressllp.com
- **Richard M Steingard**    , awong@steingardlaw.com
- **Andrew Still**    astill@swlaw.com, kcollins@swlaw.com
- **Annie Y Stoops**    annie.stoops@afslaw.com, yvonne.li@arentfox.com
- **Philip E Strok**    pstrok@swelawfirm.com,
  gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- **Jeffrey L Sumpter**    jsumpter1@cox.net
- **Terrence Swinson**    terrenceswinson@gmail.com
- **Tamar Terzian**    tamar@terzlaw.com, sandra@terzlaw.com
- **Boris Treyzon**    btreyzon@actslaw.com, pjs@actslaw.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Diane C Weil**    dcweil@dcweillaw.com, diane.c.weil@Gmail.com,dweil@ecf.inforuptcy.com,jfiser@dcweillaw.com
- **David R. Weinstein**    dweinstein@weinsteinlawfirm.net
- **Andrew D. Weiss**    ADWeiss@oclawadw.com
- **Sharon Z. Weiss**    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law
- **Pauline White**    pauline@paulinewhite.com
- **Eric D Winston**    ericwinston@quinnemanuel.com
- **Christopher K.S. Wong**    christopher.wong@afslaw.com, yvonne.li@arentfox.com
- **Robert M Yaspan**    court@yaspanlaw.com, tmenachian@yaspanlaw.com
- **Timothy J Yoo**    tjy@lnbyb.com
- **Isaac R Zfaty**    izfaty@muchlaw.com
- **David B Zolkin**    dzolkin@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com
- **Joshua del Castillo**    jdelcastillo@allenmatkins.com, mdiaz@allenmatkins.com

CC 52398572v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.