Daniel A. Lev (CA Bar No. 129622)
  daniel.lev@gmlaw.com
Asa S. Hami (CA Bar No. 210728)
  asa.hami@gmlaw.com
**Greenspoon Marder LLP**
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 954.771.9264

Attorneys for Elissa D. Miller, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:20-bk-21022-BR |
| GIRARDI KEESE, | Chapter 7 |
| Debtor. | **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER AUTHORIZING COMPROMISE OF CONTROVERSY RE BADERINK PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND AUTHORIZING PAYMENT OF CONTINGENCY FEE TO SPECIAL AVOIDANCE POWER LITIGATION COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ELISSA D. MILLER IN SUPPORT THEREOF** |
| | DATE:
TIME:    [Hearing Only Upon Request]
PLACE: |

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

DAL 55019602v1

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR, AND ALL OTHER INTERESTED PARTIES:**

## MOTION

Through her "Chapter 7 Trustee's Motion for Order Authorizing Compromise of Controversy Re BaderInk Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Authorizing Payment of Contingency Fee to Special Avoidance Power Litigation Counsel; Memorandum of Points and Authorities; Declaration of Elissa D. Miller in Support Thereof" (the "Motion"), plaintiff, Elissa D. Miller (the "Trustee" or "Plaintiff"), the duly appointed, qualified, and acting chapter 7 trustee for the estate of the debtor Girardi Keese (the "Debtor" or "Girardi Keese") and Successor-in-Interest Trustee of the Girardi Keese Client Trust Accounts, hereby seeks, among other things, an order authorizing and approving, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 9013, a settlement agreement by and between the Trustee, on the one hand, and defendant, BaderInk, a California corporation ("BaderInk" or the "Defendant"), on the other hand.

The Motion is based on the following:

(a)    On December 18, 2020 (the "Petition Date"), petitioning creditors Jill O'Callahan, as successor in interest to James O'Callahan, Robert M. Keese, John Abassian, Erika Saldana, Virginia Antonio, and Kimberly Archie (collectively, the "Petitioning Creditors") commenced an involuntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") against the Debtor in the United States Bankruptcy Court, Central District of California, Los Angeles Division (the "Court" or "Bankruptcy Court"), styled In re Girardi Keese, bearing Case No. 2:20-bk-21022-BR[1];

---

[1] The Petitioning Creditors also filed an involuntary chapter 7 bankruptcy petition against Thomas V. Girardi ("Thomas"), which is currently pending as Case No. 2:20-bk-21020-BR.

(b)      On December 24, 2020, Petitioning Creditors caused to be filed their "Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g); Memorandum of Points and Authorities."  On January 5, 2021, the Court entered its "Order Granting 'Motion of Petitioning Creditors for Appointment of Interim Trustee Pursuant to 11 U.S.C. 303(g).'"  On January 6, 2021, the Office of the United States Trustee filed its "(Corrected) Notice of Appointment of Chapter 7 Trustee (11 U.S.C. §§ 303(g) and 701)" pursuant to which, among other things, Elissa D. Miller was appointed interim chapter 7 trustee for the Debtor's estate;

(c)      On January 13, 2021, the Court entered its "Order Directing: (1) the Clerk of Court to Immediately Enter an Order for Relief Under Chapter 7; (2) the United States Trustee to Immediately Appoint a Chapter 7 Trustee; (3) the Debtor to File All Schedules and Related Documentation for Chapter 7 Case Within Fourteen Days of the Entry of This Order; and (4) Vacating February 16, 2021 Status Conference."  On January 13, 2021, the Clerk of Court entered its "Order for Relief and Order to File Schedules, Statements and List(s)."  On January 13, 2021, the Office of the United States Trustee filed its "Notice of Appointment of Trustee and Fixing of Bond; Acceptance of Appointment As Interim Trustee" pursuant to which, among other things, Elissa D. Miller was appointed and accepted her appointment as chapter 7 trustee for the Debtor's estate, and she continues to act in that capacity as well as the Successor-in-Interest Trustee of the Girardi Keese Client Trust Accounts;

(d)      On January 4, 2023, the Trustee, as plaintiff, caused to be filed her "Complaint for (1) Avoidance and Recovery of Fraudulent Transfers, (2) Preservation of Fraudulent Transfers, and (3) Disallowance of Claims" (the "Complaint") against Defendant, giving rise to the adversary proceeding entitled <u>Elissa D. Miller v. BaderInk</u>, bearing Adv. No. 2:23-ap-01017-BR (the "Action"), pursuant to which the Trustee sought, among other things, to avoid and recover, under both federal and state law, certain alleged fraudulent transfers in the total aggregate amount of $102,917;

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1    (e)    Defendant denies that the Trustee is entitled to avoid and recover

2  funds as fraudulent transfers, under either federal or state law, as alleged in the

3  Complaint; and

4    (f)    On July 24, 2023, the Trustee and Defendant entered into that

5  certain "Settlement Agreement and Mutual General Release" (the "BaderInk Agreement")

6  pursuant to which, in exchange for limited mutual releases, and dismissal of the Action

7  against Defendant, with prejudice, Defendant will pay the estate the total amount of

8  $20,000.  Defendant also agrees to waive any claim provided by 11 U.S.C. § 502(h) that

9  may arise in connection with the settlement payment.  A true and correct copy of the

10  BaderInk Agreement is attached hereto as Exhibit "A" and incorporated herein by

11  reference.

12    The Motion also seeks authority for the Trustee to pay Greenspoon Marder,

13  LLP, special avoidance power litigation counsel for the estate, the sum of $4,000 from the

14  settlement proceeds, representing the 20% contingency fee authorized by the Court

15  pursuant to its "Order Granting Chapter 7 Trustee's Application for Authority to Employ

16  Greenspoon Marder LLP As Special Avoidance Power Litigation Counsel Effective July 1,

17  2022" (the "Employment Order") [Docket No. 1327] entered on August 26, 2022.[2]

18    This Motion is made pursuant to Rule 9019 of the Federal Rules of

19  Bankruptcy Procedure, and Local Bankruptcy Rule 9013, on the grounds that the Trustee

20  has determined that the BaderInk Agreement is fair, reasonable, and in the best interests

21  of the estate and its creditors, in light of the uncertainties of litigation, the possibility that

22  the Trustee may recover less than the settlement amount on behalf of the estate, and the

23  fees and costs associated with prosecuting the adversary proceeding against Defendant

24  since, among other things, (i) the BaderInk Agreement will benefit the estate by the

25  _____

26  [2] In addition to a 20% contingency fee of the gross proceeds on any settled avoidance power claim, the
Employment Order also authorizes the recovery of hourly fees incurred at 50% of the hourly fees then in
27  effect.  At this time, the Trustee only is seeking authority to pay the 20% contingency fee award from the
settlement proceeds.  The hourly attorneys' fees incurred will be sought through a separately filed fee
28  application as required by the Employment Order.

1  infusing it with a total of $20,000 in settlement proceeds, (ii) Defendant has agreed to

2  waive certain claims against the estate, which will further benefit creditors, and (iii)

3  Defendant will execute a limited mutual release of any claims, attorneys' fees, and the

4  like, relating to the claims made in the adversary proceeding.  Moreover, it is within the

5  sound discretion and business judgment of the Trustee to enter into the BaderInk

6  Agreement.

7          This Motion is made and based upon the moving papers, the attached

8  memorandum of points and authorities and the supporting declaration of Elissa D. Miller,

9  the pleadings filed in the Debtor's case, all judicially noticeable facts, the arguments and

10  representations of counsel, and any oral or documentary evidence presented at the time

11  of the hearing, if any.

12          **WHEREFORE** the Trustee respectfully requests that the Court enter an

13  order:

14          (1)    granting this Motion;

15          (2)    authorizing and approving the BaderInk Agreement pursuant to Rule

16  9019(a) of the Federal Rules of Bankruptcy Procedure;

17          (3)    authorizing payment of the sum of $4,000 from the settlement

18  proceeds to Greenspoon Marder, LLP, special avoidance power litigation counsel for the

19  Trustee, representing the 20% contingency fee previously approved by the Court

20  pursuant to the Employment Order; and

21          (4)    granting such other and further relief as this Court deems just and

22  proper under the circumstances.

23  DATED: July 25, 2023          **Greenspoon Marder LLP**

24

25                                By: _/s/ Daniel A. Lev_____
                                      Daniel A. Lev
26                                    Attorneys for Elissa D. Miller, Chapter 7
                                      Trustee
27

28

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.**

3    **PREFATORY STATEMENT**

4    During the course of her administration of the Debtor's estate, the Trustee

5    determined that numerous parties received preferential and fraudulent transfers within

6    the statutory time periods set forth by applicable law.  As a result, the Trustee filed over

7    100 complaints seeking the avoidance and recovery of the alleged preferential and

8    fraudulent transfers.  The Trustee now has entered into a settlement with one of the

9    defendants, and seeks Court approval of the compromise.  The Trustee believes that the

10    settlement satisfies the prerequisites adopted by the Ninth Circuit and, therefore, the

11    Court should defer to the Trustee's business judgment and grant the Motion.

12    **II.**

13    **RELEVANT BACKGROUND**

14    A.    **Commencement of Involuntary Petition, Entry of Order for Relief, and**

15    **Appointment of Chapter 7 Trustee**

16    On December 18, 2020 (the "Petition Date"), petitioning creditors Jill

17    O'Callahan, as successor in interest to James O'Callahan, Robert M. Keese, John

18    Abassian, Erika Saldana, Virginia Antonio, and Kimberly Archie (collectively, the

19    "Petitioning Creditors") commenced an involuntary petition for relief under chapter 7 of

20    title 11 of the United States Code (the "Bankruptcy Code") against Girardi Keese.[3]

21    On December 24, 2020, Petitioning Creditors caused to be filed their

22    "Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g); Memorandum

23    of Points and Authorities."  On January 5, 2021, the Court entered its "Order Granting

24    'Motion of Petitioning Creditors for Appointment of Interim Trustee Pursuant to 11 U.S.C.

25    303(g).'"  On January 6, 2021, the Office of the United States Trustee filed its

26    "(Corrected) Notice of Appointment of Chapter 7 Trustee (11 U.S.C. §§ 303(g) and 701)"

27    _____

28    [3] The Petitioning Creditors also filed an involuntary chapter 7 bankruptcy petition against Thomas V. Girardi ("Thomas"), which is currently pending as Case No. 2:20-bk-21020-BR.

1   pursuant to which, among other things, Elissa D. Miller was appointed interim chapter 7

2   trustee for Girardi Keese's estate.

3           On January 13, 2021, the Court entered its "Order Directing: (1) the Clerk of

4   Court to Immediately Enter an Order for Relief Under Chapter 7; (2) the United States

5   Trustee to Immediately Appoint a Chapter 7 Trustee; (3) the Debtor to File All Schedules

6   and Related Documentation for Chapter 7 Case Within Fourteen Days of the Entry of

7   This Order; and (4) Vacating February 16, 2021 Status Conference." On January 13,

8   2021, the Clerk of Court entered its "Order for Relief and Order to File Schedules,

9   Statements and List(s)." On January 13, 2021, the Office of the United States Trustee

10  filed its "Notice of Appointment of Trustee and Fixing of Bond; Acceptance of

11  Appointment As Interim Trustee" pursuant to which, among other things, Elissa D. Miller

12  was appointed and accepted her appointment as chapter 7 trustee for the Debtor's

13  estate, and she continues to act in that capacity as well as the Successor-in-Interest

14  Trustee of the Girardi Keese Client Trust Account.

15          **B.**    **Uncovering the Debtor's Fraudulent Enterprise**

16          As the Trustee quickly learned after her appointment, despite all

17  appearances, Girardi Keese was nothing more than an illicit and felonious business

18  operated to line the pockets of Thomas, his wife, and several collaborators. While the

19  Trustee continues to investigate the magnitude of the fraud that spanned decades, it is

20  obvious that tens of millions of dollars of client and partnership funds were stolen and

21  diverted to Thomas and others.

22          Emblematic of the rampant fraud and pervasive misappropriation of client

23  and creditor funds, during a time when Girardi Keese was in a precarious financial state,

24  and was not paying its creditors, Thomas and his co-conspirators began a systematic

25  process of draining the available cash, often times consisting of stolen client trust funds,

26  by, among other things, making distributions to certain preferred creditors or third parties

27  from funds of Girardi Keese's estate and using the funds to invest in speculative business

28  ventures not in the firm's name. Thomas and his co-conspirators conspired by purpose

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1    and design to abscond and secrete the assets of Girardi Keese, as well as funds held in

2    trust for clients, for the purpose of enriching themselves and others while at the same

3    time defrauding Girardi Keese's clients and creditors.

4        In virtually each instance, these transfers were made for less than

5    reasonably equivalent value in return and during a time in which Girardi Keese was

6    insolvent or was rendered insolvent as a result of the transfers, or when Girardi Keese

7    was engaged or was about to engage in a business or a transaction for which the

8    remaining assets of Girardi Keese were unreasonably small in relation to the business or

9    transaction.  Often times, for example, Thomas and others used funds from "interest on

10   lawyers' trust accounts" (or "IOLTAs"), which accounts were intended to safeguard client

11   funds, for illegitimate purposes.  Despite the strict prohibitions on the use of funds in an

12   IOLTA, Thomas and others used Girardi Keese's general operating accounts and IOLTAs

13   as if they were common depositories of not only Girardi Keese client funds, but also their

14   personal funds.

15       Hidden from the public, however, was the fact that, over the course of his

16   four-decade career, the State Bar of California received no less than 205 complaints

17   against Thomas alleging he misappropriated settlement money, abandoned clients, and

18   committed other serious ethical violations.  Eventually, Thomas was suspended from the

19   practice of law in March 2021 and was finally disbarred by the California Supreme Court

20   in July 2021.

21       **C.**    **Retention of Special Litigation Counsel, Investigation of Potential**

22              **Avoidance Power Claims, and Settlement With BaderInk**

23       In order to recover the misappropriated funds wrongfully diverted by the

24   Debtor, the Trustee employed Greenspoon Marder, LLP ("Greenspoon") as her special

25   avoidance power litigation counsel.  According to the "Chapter 7 Trustee's Application for

26   Authority to Employ Greenspoon Marder LLP As Special Avoidance Power Litigation

27   Counsel Effective July 1, 2022; Declaration of Daniel A. Lev in Support Thereof" (the

28

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1  "Greenspoon Application") [Docket No. 1297] filed on July 28, 2022, the Trustee sought

2  to employ Greenspoon on a hybrid fee basis.[4]

3          In sum, if the Trustee elected to commence an avoidance power claim

4  through the preparation, filing, and prosecution of a formal complaint in this Court,

5  Greenspoon agreed to bill its time on an hourly basis at 50% of its standard fees unless

6  and until Greenspoon recovered under one or more of the avoidance power claims.  For

7  recoveries under any avoidance power claim which was the subject of an adversary

8  proceeding, Greenspoon would be entitled to a success fee equal to 20% of the amount

9  recovered under each avoidance power claim.

10          By way of example only, if the Trustee compromised an avoidance power

11  claim in the amount of $1,000,000 for $100,000, Greenspoon would be entitled to 50% of

12  its hourly rate for services rendered in preparing and prosecuting the claim (subject to

13  approval of the Court), plus an additional $20,000 success fee (20% of $100,000).

14  Greenspoon would be entitled to petition the Court for allowance of the 20% success fee

15  separate and apart from the fees rendered on an hourly basis which could only be sought

16  through a fee application.  The Greenspoon Application was granted pursuant to the

17  "Order Granting Chapter 7 Trustee's Application for Authority to Employ Greenspoon

18  Marder LLP As Special Avoidance Power Litigation Counsel Effective July 1, 2022" (the

19  "Employment Order") [Docket No. 1327] entered on August 26, 2022.

20          Based on a comprehensive review of the Debtor's books and records to

21  determine the scope of the estate's avoidance power claims, the Trustee authorized the

22  filing of the Complaint against BaderInk.  After the Complaint was filed, BaderInk

23

24  [4] As explained in the Greenspoon Application, the Trustee first employed **Sulmeyer**Kupetz, A Professional
25  Corporation ("Sulmeyer"), as the estate's special avoidance power litigation counsel pursuant to the "Order
    Granting Chapter 7 Trustee's Application for Authority to Employ SulmeyerKupetz, A Professional
26  Corporation, as Special Avoidance Power Litigation Counsel" [Docket No. 893] entered by the Court on
    November 30, 2021.  However, on July 1, 2022, the majority of the lawyers from Sulmeyer joined
27  Greenspoon.  As a result, the Trustee requested that Greenspoon be employed as the estate's special
    litigation counsel effective July 1, 2022, as Greenspoon was familiar with the legal issues facing the
28  Trustee and the estate with respect to the Debtor's chapter 7 case.

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

1    challenged numerous elements of the Trustee's claims and raised numerous affirmative

2    defenses to the Action.

3         Notably, BaderInk alleged that over the course of its business relationship

4    with the Debtor, it provided valuable resources in the form of vehicle maintenance

5    services for vehicles owned by the Debtor and its attorneys.  BaderInk further alleged that

6    the payments it received were immune from attack as fraudulent transfers since the

7    Debtor was provided value under 11 U.S.C. § 550(b) (good faith transferee for value and

8    immediate or mediate good faith transferee of such transferee).  While the Trustee was

9    prepared to defend the claims and contest the individual defenses, the Trustee

10   determined that it was not economically beneficial to continue to prosecute the Action in

11   light of the legal and factual obstacles and the settlement.

12        As a result, on July 24, 2023, the Trustee and BaderInk entered into that

13   certain "Settlement Agreement and Mutual General Release" (the "BaderInk

14   Agreement").  A true and correct copy of the BaderInk Agreement is attached hereto as

15   Exhibit "A" and incorporated herein by reference.  The Trustee believes the settlement

16   (which is summarized below) is in the best interests of creditors of the estate and should

17   be approved by the Court.  See Declaration of Elissa D. Miller affixed hereto.

**III.**

**<u>SUMMARY OF SETTLEMENT</u>**

20        The BaderInk Agreement can be summarized as follows:

21       •    In exchange for a dismissal of the Action against BaderInk, with

22   prejudice, BaderInk shall pay the estate the total amount of Twenty Thousand Dollars

23   and Zero Cents ($20,000) (the "Settlement Payment").

24       •    The Settlement Payment shall be due on or before the fifteenth (15th)

25   calendar day following the date the order of the Court, or other court of competent

26   jurisdiction, approving the settlement becomes a final, unstayed order.

27       •    In addition to the Settlement Payment, BaderInk acknowledges and

28   expressly waives any claim provided by 11 U.S.C. § 502(h) that may arise in connection

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

1  with the Settlement Payment.  The Trustee further reserves the right to object to any

2  proof of claim (if any), or scheduled claim, that BaderInk may have previously filed

3  against the Debtor and the estate.

4         •      The parties also are exchanging limited mutual releases.[5]

5         Therefore, subject to the terms and conditions set forth in the BaderInk

6  Agreement, the Trustee has agreed to dismiss the Complaint subject to approval of this

7  Motion and upon BaderInk's subsequent compliance with the terms and conditions of the

8  settlement.

9                               **IV.**

10                      **EFFECT OF SETTLEMENT**

11         In this case, to date, 684 claims were filed for the total amount of

12  $550,881,512.21.  Of this amount, slightly more than $96 million were filed as secured

13  and $83 million were filed as priority unsecured claims.  Once all of the secured claims

14  are reviewed and objections resolved, the Trustee estimates that secured claims will

15  ultimately be somewhere in the range of $30 to $35 million.  In addition, the Trustee

16  expects that the vast majority of the priority unsecured claims should be reclassified to

17  general unsecured claims.  The assets available to pay these claims consist mostly of

18  attorney's fees earned by the Debtor for legal services and the proceeds of avoidance

19  actions to recover payments made by the Debtor without the receipt of reasonably

20  equivalent value or with the actual intent to defraud.  The incremental benefit of any

21  particular settlement is impossible to quantify given this landscape, but the cumulative

22  benefit is that the Trustee is hopeful she will recover sufficient assets to pay off the

23  secured claims and to be able to make a distribution to unsecured creditors.

24

25

26

27  _____

28  [5] The foregoing is merely a summary of the salient terms of the BaderInk Agreement.  Therefore, any party interested in the terms and conditions should read the BaderInk Agreement in its entirety.

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

## V.

## ARGUMENT

A.    **The Legal Standard for Approving a Compromise of Controversy**

Rule 9019(a) of the Federal Rules of Bankruptcy Procedure states as follows with respect to motions brought by trustees to approve settlements:

> On motion by the trustee and after notice and a hearing, the
>
> court may approve a compromise or settlement.  Notice shall
>
> be given to creditors, the United States trustee, the debtor,
>
> and indenture trustees as provided in Rule 2002 and to any
>
> other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

As this Court is aware, compromise is favored over continued litigation. See In re A&C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854, 107 S. Ct. 189, 93 L. Ed. 2d 122 (1986); Port O'Call Investment Co. v. Blair (In re Blair), 538 F.2d 849, 851 (9th Cir. 1976).  Generally, a compromise should be approved if it is "fair and equitable" and in "the best interests of the estate."  In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988); In re Schmidtt, 215 B.R. 417, 424 (B.A.P. 9th Cir. 1997); St. Paul Fire & Marine Insurance Co. v. Vaughn, 779 F.2d 1003, 1010 (4th Cir. 1985); In re Continental Investment Corp., 637 F.2d 8, 11 (1st Cir. 1980).  Whether a compromise will benefit or harm the debtor is immaterial.

Specifically, in evaluating whether to approve a compromise, courts in the Ninth Circuit must consider the following:

(a)    The probability of success in litigation;

(b)    the difficulties, if any, to be encountered in the matter of collection;

(c)    the complexity of the litigation involved and the expense; inconvenience and delay necessarily attending it; and

(d)    the paramount interest of the creditors and a proper deference to their reasonable views.

1    A&C Properties, 784 F.2d at 1381.

2              In considering these factors, courts are guided by two principles.  First, as

3    noted earlier, "the law favors compromise."  Blair, 538 F.2d at 851.  Compromises are

4    favored in bankruptcy, and have become "a normal part of the process of reorganization".

5    Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v.

6    Anderson, 390 U.S. 414, 424, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968) (quoting Case v. Los

7    Angeles Lumber Prods. Co., 308 U.S. 106, 130, 60 S. Ct. 1, 84 L. Ed. 110 (1939)).

8    Second, a compromise should be approved unless it "fall[s] below the lowest point in the

9    range of reasonableness".  In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983), cert.

10   denied, 464 U.S. 822, 104 S. Ct. 88, 78 L. Ed. 2d 97 (1985).  As the court in W.T. Grant

11   aptly commented:

12              [The] responsibility of the bankruptcy judge, and ours upon

13              review, is not to decide the numerous questions of law and

14              fact raised by the appellants but rather to canvass the issues

15              and see whether the settlement 'fall[s]' below the lowest

16              point in the range of reasonableness . . .

17   Id., at 608.

18              In fact,

19              [I]t is inappropriate for the court to substitute its own

20              judgment as to the wisdom of a proposed settlement for that

21              of the trustee.  The court need not engage in an exhaustive

22              analysis of the law and merits of each claim, or the likelihood

23              of the outcome, as doing so would in large part defeat the

24              purpose of settlement.  Rather, the court's role is to ensure

25              that the trustee has exercised proper business judgment in

26              making the decision to agree to the proposed settlement,

27              and that the settlement "falls above the lowest possible point

28              in the range of reasonableness."

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1  In re 110 Beaver Street P'ship, 244 B.R. 185, 187 (Bankr. D. Mass. 2000).  See also In re

2  Pacific Gas & Elec. Co., 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).

3        Here, under express provisions of the Bankruptcy Code, a trustee is vested

4  with the standing and authority to seek compromises of legal and factual disputes.  As

5  such, settlements which have been negotiated by a trustee are entitled to deference.

6  See In re Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) (objecting creditors may not

7  substitute their judgment for that of the trustee).  Moreover, when considering these

8  factors, the court need only canvass the issues, "a mini trial on the merits is not required."

9  Schmidtt, 215 B.R. at 423.

10        In this instance, there are a variety of reasons why the Court should

11  approve the settlement.  As demonstrated, the application of the A&C Properties test to

12  the settlement requires a finding that the compromise be approved, even over the

13  objections of disappointed creditors.

14  **B.    The Settlement Should Be Approved Pursuant to Rule 9019(a) of the**

15       **Federal Rules of Bankruptcy Procedure**

16        For the following reasons, the Trustee submits that the settlement is in the

17  best interests of the Debtor's estate, and satisfies the criteria established by the Ninth

18  Circuit in A&C Properties.

19       **1.    The Probability of Success in Litigation**

20        The first factor to evaluate whether a settlement is fair and equitable is the

21  probability of success in the litigation.  A&C Properties, 784 F.2d at 1381.  A precise or

22  exact judicial determination of the likely outcome is not required because that would

23  defeat the purpose of compromising the litigation.  In re Telesphere Communications,

24  Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994); In re Energy Coop., Inc., 886 F.2d 921,

25  929 (7th Cir. 1989) (quoting In re Penn Central Transp. Co., 596 F.2d 1102, 1114 (3d Cir.

26  1979)).  As mentioned earlier, in the Ninth Circuit a bankruptcy court need not conduct an

27  exhaustive investigation into the validity of the asserted claim, but rather "[i]t is sufficient

28  that, after apprising itself of all facts necessary for an intelligent and objective opinion

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1    concerning the claim's validity, the court determines that either (1) the claim has a

2    'substantial foundation' and is not 'clearly invalid as a matter of law,' or (2) the outcome of

3    the claim's litigation is doubtful."  United States of America v. Alaska National Bank

4    (Matter of Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982).

5         The Ninth Circuit cited Walsh approvingly in A&C Properties, noting that the

6    purpose of a compromise agreement is to allow the trustee and creditors "to avoid the

7    expenses and burdens associated with litigating sharply contested and dubious claims,"

8    and that the "law favors compromise and not litigation for its own sake."  Blair, 538 F.2d

9    at 851.  Here, the Trustee contends, without limitation, that the settlement is fair and

10   reasonable, in the best interests of the estate, and made according to the Trustee's

11   sound business judgment.  While the Trustee contends that she likely would prevail in the

12   Action, to some degree, given the defenses and the legal and factual challenges being

13   raised by BaderInk, the costs of prosecuting the Action through trial would be cost-

14   prohibitive.

15        Understanding that settlement generally is the preferred path forward, the

16   Trustee and her professionals had numerous written and verbal communications with

17   BaderInk since the date the Complaint was filed.  These communications and meetings

18   involved in-depth settlement negotiations concerning the merits of the Action and any

19   mitigating factors or defenses.  After these discussions, the Trustee and her

20   professionals analyzed the merits of BaderInk's asserted defenses and challenges to

21   certain elements of the Trustee's claims.

22        Although there were open questions regarding the applicability of the range

23   of challenges and defenses raised, it became clear that if BaderInk was to prevail on any

24   of its potential defenses, then the net recovery to the estate could be significantly

25   reduced, if not eliminated.  Furthermore, the estate would incur a significant amount of

26   additional attorneys' fees in litigating the Action.  In fact, the Trustee estimates that

27   litigating this matter through judgment could cost the estate tens of thousands of dollars,

28   which would have included time-consuming discovery.  In this regard, there would likely

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1  be numerous discovery papers served, together with depositions of parties and non-

2  parties, including potential experts.  Substantial document review would also ensue.  The

3  settlement avoids these unnecessary pre-trial and trial preparation costs.

4         As a reminder, in satisfying this first element of the four-part A&C Properties

5  test, the burden is not on a trustee to conclusively establish that a defendant would be

6  successful at a trial on the issues raised in an action, as that would defeat the purpose of

7  settlement and would eliminate any cost savings from the settlement.  Rather, all that a

8  trustee is required to demonstrate is that, to the reasonable satisfaction of the court, all

9  things being considered, it is prudent to eliminate the risks of litigation to achieve specific

10 certainty, though it might be considerably less, or more, than if the case was fought to the

11 bitter end.  See In re Aloha Racing Foundation, Inc., 257 B.R. 83 (Bankr. N.D. Ala. 2000).

12        In fact, at least one court has found that a settlement reached by a trustee

13 could be approved even after the court had decided to rule for the trustee on a contested

14 matter.  See In re Dalen, 259 B.R. 586 (Bankr. W.D. Mich. 2001).  In Dalen, the trustee

15 sought approval of a settlement after the court had already decided to rule for the trustee,

16 such that the estate would have profited if the settlement were rejected.  The ultimate

17 issue for the court, however, was whether the trustee exercised reasonable judgment in

18 entering into the settlement based upon information then in her possession.  As long as a

19 court is able to make this determination, and finds that the trustee has fulfilled her

20 fiduciary duty to the estate, the fact that creditors are objecting to the settlement is

21 irrelevant to the court's determination under Rule 9019(a).

22        Here, there is no question that the Trustee has fulfilled her fiduciary duties

23 to the estate by not only aggressively pursuing the recovery of the alleged fraudulent

24 transfers, but by entering into the BaderInk Agreement.  In light of the indisputable fact

25 that the estate will receive significant funds through the settlement, it cannot be said that

26 the Trustee has not acted in the best interests of creditors.  This settlement will benefit

27 the estate and its creditors and will end a contested matter without incurring substantial

28 attorneys' fees and costs.

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

2.    **The Difficulties, if any, to be Encountered in the Matter of**

**Collection**

Of obvious concern to the Trustee was the possibility that any judgment awarded by the Court would not be collectable.  As a practical matter, there was no assurance that the Trustee would prevail in avoiding and recovering the alleged fraudulent transfers if the matter proceeded to trial.  Although the Trustee did not necessarily question BaderInk's financial ability to satisfy a judgment, it is certainly possible that, through other appellate proceedings, the Trustee could find herself on the wrong end of an appellate decision that could conceivably take years to complete.  Therefore, even if the Trustee prevailed in avoiding and recovering each of the avoidable transfers at issue, there remained the concern of recovery.

Thus, given the amount of the claim, collection costs, even if successful, would have further reduced any net benefit to the estate, even assuming collection of the full amount of the judgment was possible.  Hence, even if the Trustee prevailed in avoiding and recovering each of the avoidable transfers at issue, there remained a legitimate concern of recovery.

As a result, the Trustee was required to factor into her decision the likelihood of recovering on a judgment, as well as the time that would lapse if any judgment was appealed or was subject to collection proceedings.  When weighed against the continuing administrative costs that would need to be incurred to obtain a final judgment, this element of the A&C Properties test militated in favor of settlement.

3.    **The Complexity of the Litigation and the Expense,**

**Inconvenience and Delay Necessarily Attending It**

The rationale behind public policy favoring pre-trial settlements is that litigation, depending upon its complexity, can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.  In a bankruptcy context, such litigation costs can be particularly burdensome on the bankruptcy estate given the financial instability of the estate.  See In

1  re Grau, 267 B.R. 896 (Bankr. S.D. Fla. 2001).  Here, the complexity of ensuring

2  collection of a judgment dictated that the Trustee seek a path towards settlement.  The

3  legal and factual issues raised in the Action spanned years, are factually complex, are

4  contested, and would be extremely time consuming and costly for the estate to prosecute

5  and defend through possible appeals.

6        Moreover, the Debtor's chapter 7 case has been pending on the Court's

7  docket for more than two years.  If the Trustee was forced to prosecute the Action to

8  finality, it is possible that at least one year would pass before any judgment was

9  rendered.  It is also likely that any judgment obtained by the Trustee could be the subject

10  of appeals and further appellate litigation for years to come.  During this time,

11  administrative fees and costs would continue to escalate, reducing any net recovery for

12  the estate.  As a result, the Trustee's decision to put an end to the Action will benefit the

13  estate and creditors alike.

14      **4.**    **The Paramount Interest of Creditors**

15        The paramount interest of creditors which a bankruptcy court must consider

16  in deciding whether to approve a proposed compromise, generally reflects not only the

17  desire of creditors to obtain the maximum possible recovery, but also their competing

18  desire that the recovery should occur in the least amount of time possible.  See In re

19  Marples, 266 B.R. 202, 206 (Bankr. D. Idaho 2001); In re Lake City RV, Inc., 226 B.R.

20  241, 243-44 (Bankr. D. Idaho 1998).  Here, the estate is not in the position to fund

21  lengthy, difficult, and potentially uncertain litigation.  The settlement resolves the

22  competing and existing claims between the parties in a manner meant to avoid further

23  administrative expenses and also will facilitate the distribution of assets in an orderly

24  fashion which will allow the chapter 7 case to be timely administered.

25        As noted earlier, generally, a court should approve a proposed settlement

26  so long as it is above "the lowest point in the range of reasonableness," giving deference

27  to a trustee's reasonable business judgment.  See In re Receivership Estate of Indian

28  Motorcycle Mfg., Inc., 299 B.R. 8, 21 (D. Mass. 2003) ("The court may give substantial

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1   deference to the business judgment of a bankruptcy trustee when deciding whether to

2   approve a settlement").  Since the BaderInk Agreement adds significant value to the

3   estate, while greatly reducing the administrative fees and expenses that would be

4   incurred in prosecuting the claims, the settlement far exceeds that threshold standard

5   and should be approved.

6       **C.**      **The Court Should Authorize Payment of the 20% Success Fee to**

7               **Greenspoon as Previously Approved By the Court**

8           Typically, where special counsel has been employed and is to be

9   compensated on a contingency fee basis, a trustee's motion seeking to obtain approval

10  of the settlement almost invariably includes a request for payment of special counsel's

11  fees and costs.  Such is the case here, where the Employment Order specifically

12  authorized the payment of a 20% success fee to Greenspoon upon the successful

13  settlement of an avoidance power claim.  By detailing how much compensation is being

14  sought on a contingency basis, the Motion enables the Court and interested parties to

15  determine that the calculations are consistent with the Greenspoon Application and

16  Employment Order.

17          Although the Trustee could, conceivably, request that Greenspoon file a

18  separate application for the success fee, this would be highly inefficient and would be a

19  waste of judicial resources.  Since this is one of more than 100 actions filed, the Court

20  could soon find itself burdened with a multitude of separate fee applications each time an

21  avoidance power action is compromised.  Because the Trustee hopes to save the time

22  and expense of separate applications and additional notices to creditors, the Trustee

23  believes this "combined" compromise/compensation motion is appropriate under 11

24  U.S.C. §§ 105(a), 328(a), and 330(a).  See In re Olson, 2006 WL 2433448 (Bankr. D.

25  Idaho July 24, 2006) (court recognizes propriety of motions to approve compromises that

26  also include requests for payment of court-approved contingency fees); In re H.K. Porter

27  Co., Inc., 183 B.R. 96 (Bankr. W.D. Pa. 1995) (in determining dispute over ownership of

28  settlement proceeds, court referenced previously approved motion for authority to settle

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

1  litigation and for authority to pay attorney a 50% contingency fee out of settlement

2  proceeds).

3  VI.

4  **CONCLUSION**

5  Based on the foregoing, the Trustee respectfully requests that the Court

6  grant the Motion in its entirety, and for such other and further relief as the Court deems

7  appropriate under the circumstances.

8  DATED: July 25, 2023                **Greenspoon Marder LLP**

9

10                                     By: /s/ *Daniel A. Lev*

11                                         Daniel A. Lev
                                           Attorneys for Elissa D. Miller, Chapter 7

12                                         Trustee

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

DAL 55019602v1

1

## **DECLARATION OF ELISSA D. MILLER**

2      I, Elissa D. Miller, state as follows:

3      1.    I am an attorney at law, duly qualified and licensed to practice before

4  this Court, and am the duly appointed, qualified, and acting chapter 7 trustee for the

5  estate of the debtor Girardi Keese (the "Debtor" or "Girardi Keese").  I have personal

6  knowledge of the facts stated in this Declaration, and if called to testify, could and would,

7  without waiver of any applicable privilege, testify that the facts stated in this Declaration

8  are true and correct to the best of my knowledge and information.

9      2.    I make this declaration in support of my "Chapter 7 Trustee's Motion

10 for Order Authorizing Compromise of Controversy Re BaderInk Pursuant to Rule 9019 of

11 the Federal Rules of Bankruptcy Procedure and Authorizing Payment of Contingency Fee

12 to Special Avoidance Power Litigation Counsel; Memorandum of Points and Authorities;

13 Declaration of Elissa D. Miller in Support Thereof" (the "Motion"), through which I seek,

14 among other things, an order authorizing and approving, pursuant to Rule 9019(a) of the

15 Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 9013, a settlement

16 agreement by and between me, in my capacity as trustee, on the one hand, and

17 defendant, BaderInk, a California corporation ("BaderInk" or the "Defendant"), on the

18 other hand.  In sum, in exchange for limited mutual releases, and dismissal of the action

19 against BaderInk, with prejudice, BaderInk will pay the estate the total amount of

20 $20,000.  BaderInk also agrees to waive any claim provided by 11 U.S.C. § 502(h) that

21 may arise in connection with the settlement payment.  A true and correct copy of the

22 BaderInk Agreement is attached hereto as Exhibit "A" and incorporated herein by

23 reference.  As part of the Motion, I also seek authority to pay Greenspoon Marder, LLP

24 ("Greenspoon"), special avoidance power litigation counsel for the estate, the sum of

25 $4,000 from the settlement proceeds, representing the 20% contingency fee authorized

26 by the Court pursuant to its "Order Granting Chapter 7 Trustee's Application for Authority

27 to Employ Greenspoon Marder LLP As Special Avoidance Power Litigation Counsel

28

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1    Effective July 1, 2022" (the "Employment Order") [Docket No. 1327] entered on August

2    26, 2022.

3              3.      As I ultimately learned after my appointment as trustee, despite all

4    appearances, Girardi Keese was an illicit and felonious business enterprise that engaged

5    in a decades-long fraud resulting in the wrongful diversion and misappropriation of tens of

6    millions of dollars of client and partnership funds.  Emblematic of the rampant fraud and

7    pervasive misappropriation of client and creditor funds, during a time when Girardi Keese

8    was in a precarious financial state, and was not paying its creditors, Thomas and his co-

9    conspirators began a systematic process of draining the available cash, often times

10   consisting of stolen client trust funds, by, among other things, making distributions to

11   certain preferred creditors or third parties from funds of Girardi Keese's estate and using

12   the funds to invest in speculative business ventures not in the firm's name.  Thomas and

13   his co-conspirators conspired by purpose and design to abscond and secrete the assets

14   of Girardi Keese, as well as funds held in trust for clients, for the purpose of enriching

15   themselves and others while at the same time defrauding Girardi Keese's clients and

16   creditors.

17             4.      In virtually each instance, these transfers were made for less than

18   reasonably equivalent value in return and during a time in which Girardi Keese was

19   insolvent or was rendered insolvent as a result of the transfers, or when Girardi Keese

20   was engaged or was about to engage in a business or a transaction for which the

21   remaining assets of Girardi Keese were unreasonably small in relation to the business or

22   transaction.  Often times, for example, Thomas and others used funds from "interest on

23   lawyers' trust accounts" (or "IOLTAs"), which accounts were intended to safeguard client

24   funds, for illegitimate purposes.  Despite the strict prohibitions on the use of funds in an

25   IOLTA, Thomas and others used Girardi Keese's general operating accounts and IOLTAs

26   as if they were common depositories of not only Girardi Keese client funds, but also their

27   personal funds.

28

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

1    5.    Based on a comprehensive review of the Debtor's books and records

2    meant to determine the scope of the estate's avoidance power claims, I authorized the

3    filing of an adversary proceeding against BaderInk seeking the avoidance and recovery

4    of fraudulent transfers in the total aggregate amount of $102,917.  After the operative

5    complaint was filed, I learned that BaderInk was challenging numerous elements of the

6    estate's claims and was raising numerous affirmative defenses to the action, including

7    defenses under 11 U.S.C. § 550(b).  While I was prepared to contest the challenges to

8    the estate's claims and the individual defenses, I determined that it was not economically

9    beneficial to continue to prosecute the action in light of the legal and factual obstacles

10    and the proposed settlement.

11    6.    In my opinion, the settlement is fair and reasonable, in the best

12    interests of the estate, and was made according to my sound business judgment.  While I

13    believe the estate's claims have merit, given the defenses and the legal and factual

14    challenges being asserted by BaderInk, the costs of prosecuting the action through and

15    after trial would be cost-prohibitive.  Understanding that settlement is always the

16    preferred path forward, my professionals and I carefully reviewed BaderInk's potential

17    defenses when considering the settlement offers being discussed.  Although there were

18    open questions regarding the applicability of the range of challenges and defenses

19    raised, it became clear that if BaderInk was to prevail on any of its potential defenses,

20    then the net recovery to the estate could be significantly reduced, if not eliminated.

21    Furthermore, the estate would incur a significant amount of additional attorneys' fees in

22    litigating the action through final judgment, including post-judgment remedies.  Therefore,

23    I believe the settlement is in the best interests of the estate as it eliminates the risks of

24    litigation to achieve specific certainty.

25    7.    Of obvious concern to me was the possibility that any judgment

26    awarded by the Court would not be collectable.  As a practical matter, there was no

27    assurance that I would prevail in avoiding and recovering the alleged fraudulent transfers

28    if the matter proceeded to trial.  Although I had no reason to necessarily question

1   BaderInk's financial ability to satisfy a judgment, it is certainly possible that, through other

2   appellate proceedings, the estate could find itself on the wrong end of an appellate

3   decision that could conceivably take years to complete.  Therefore, even if I prevailed in

4   avoiding and recovering each of the avoidable transfers at issue, there remained the

5   concern of recovery.  As a result, I was required to factor into my decision the likelihood

6   of recovering on a judgment, as well as the time that would lapse if any judgment was

7   appealed or was subject to collection proceedings.  When weighed against the continuing

8   administrative costs that would need to be incurred to obtain a final judgment, this

9   element of the A&C Properties test militated in favor of settlement.

10          8.     Here, the complexity of ensuring collection of a judgment dictated

11   that I seek a consensual resolution.  The legal and factual issues raised in the action are

12   factually complex, are contested, and would be extremely time consuming and costly for

13   the estate to prosecute and defend through possible appeal.  Moreover, the Debtor's

14   chapter 7 case has been pending on the Court's docket for more than two years.  If I was

15   forced to prosecute the action to finality, and then seek to enforce post-judgment

16   remedies, it is possible that at least one year would pass before any judgment was

17   rendered.  It is also likely that any judgments obtained would be the subject of appeals

18   and further appellate litigation for years to come.  During this time, administrative fees

19   and costs would continue to escalate, reducing any net recovery for the estate.  As a

20   result, my decision to put an end to the action will benefit the estate and creditors alike.

21          9.     In addition, the estate is not in the position to fund lengthy, difficult,

22   and potentially uncertain litigation.  The settlement resolves the competing and existing

23   claims between the parties in a manner meant to avoid further administrative expenses

24   and also will facilitate the distribution of assets in an orderly fashion which will allow the

25   chapter 7 case to be timely administered.  Since the BaderInk Agreement adds significant

26   value to the estate, while greatly reducing the administrative fees and expenses that

27   would be incurred in prosecuting the avoidance power claims, the settlement does not fall

28   below the lowest point in the range of reasonableness and it should be approved.

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 954.771.9264

10. Finally, the Court should also authorize payment of the 20% success fee to Greenspoon as previously approved by the Court. Although I could, conceivably, request that Greenspoon file a separate application for the success fee, this would be highly inefficient and would be a waste of judicial resources. Since this is one of more than 100 actions filed, the Court could soon find itself burdened with a multitude of separate fee applications each time an avoidance power action was compromised. Because I hope to save the time and expense of having Greenspoon file separate applications involving additional notices to creditors, I believes the contingency fee can and should be approved as part of this Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of July, 2023, at Los Angeles, California.

_____
Elissa D. Miller, Chapter 7 Trustee

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

DAL 55019602v1

-25-

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This "Settlement Agreement and Mutual General Release" (the "**AGREEMENT**") is entered into as of July 24, 2023, by and between Elissa D. Miller (the "**TRUSTEE**"), in her sole and exclusive capacity as the duly appointed, qualified, and acting chapter 7 trustee for the bankruptcy estate (the "**ESTATE**") of the debtor Girardi Keese (the "**DEBTOR**") and as the Successor-in-Interest Trustee of the Girardi Keese Client Trust Accounts, and the successors and assigns of the **TRUSTEE** in any capacity, on the one hand, and BaderInk, a California corporation ("**BADERINK**"), on the other hand, as follows:

## RECITALS

**A.**    On December 18, 2020 (the "**PETITION DATE**"), petitioning creditors Jill O'Callahan, as successor in interest to James O'Callahan, Robert M. Keese, John Abassian, Erika Saldana, Virginia Antonio, and Kimberly Archie (collectively, the "**PETITIONING CREDITORS**") commenced an involuntary petition for relief under chapter 7 of title 11 of the United Sates Code (the "**BANKRUPTCY CODE**") against the **DEBTOR** in the United States Bankruptcy Court, Central District of California, Los Angeles Division (the "**COURT**" or "**BANKRUPTCY COURT**"), styled In re Girardi Keese, bearing Case No. 2:20-bk-21022-BR.

**B.**    On December 24, 2020, **PETITIONING CREDITORS** caused to be filed their "Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g); Memorandum of Points and Authorities". On January 5, 2021, the **COURT** entered its "Order Granting 'Motion of Petitioning Creditors for Appointment of Interim Trustee Pursuant to 11 U.S.C. 303(g)'". On January 6, 2021, the Office of the United States Trustee filed its "(Corrected) Notice of Appointment of Chapter 7 Trustee (11 U.S.C. §§ 303(g) and 701)" pursuant to which, among other things, Elissa D. Miller was appointed interim chapter 7 trustee for the **DEBTOR'S ESTATE**.

**C.**    On January 13, 2021, the **COURT** entered its "Order Directing: (1) the Clerk of Court to Immediately Enter an Order for Relief Under Chapter 7; (2) the United States Trustee to Immediately Appoint a Chapter 7 Trustee; (3) the Debtor to File All Schedules and Related Documentation for Chapter 7 Case Within Fourteen Days of the Entry of This Order; and (4) Vacating February 16, 2021 Status Conference". On January 13, 2021, the Clerk of Court entered its "Order for Relief and Order to File Schedules, Statements and List(s)". On January 13, 2021, the Office of the United States Trustee filed its "Notice of Appointment of Trustee and Fixing of Bond; Acceptance of Appointment As Interim Trustee" pursuant to which, among other things, Elissa D. Miller was appointed and accepted her appointment as chapter 7 trustee for the **DEBTOR'S ESTATE**, and she continues to act in that capacity as well as the Successor-in-Interest Trustee of the Girardi Keese Client Trust Accounts.

**D.**    The **TRUSTEE** warrants and represents that, in her capacity as chapter 7 trustee and Successor-in-Interest Trustee of the Girardi Keese Client Trust Accounts, she is the sole and exclusive holder of the **CLAIMS** (as hereinafter defined) which are the subject of this **AGREEMENT**.

E.    On January 4, 2023, the **TRUSTEE**, as plaintiff, caused to be filed her "Complaint for (1) Avoidance and Recovery of Fraudulent Transfers, (2) Preservation of Fraudulent Transfers, and (3) Disallowance of Claims" (the "**COMPLAINT**") against **BADERINK**, as defendant, giving rise to the adversary proceeding entitled Elissa D. Miller v. BaderInk, bearing Adv. No. 2:23-ap-01017-BR (the "**ACTION**"), pursuant to which the **TRUSTEE** sought, among other things, to avoid and recover, under both federal and state law, certain alleged fraudulent transfers.

F.    **BADERINK** denies that the **TRUSTEE** is entitled to avoid and recover funds as fraudulent transfers, under either federal or state law, as alleged in the **COMPLAINT**.

G.    The parties now desire to resolve the **ACTION** and the claims for relief asserted therein and to avoid the uncertainty, costs, and expenses associated with adjudication of the **ACTION**.

## PROVISIONS

NOW, **THEREFORE**, in consideration of the foregoing Recitals and of the mutual agreements, covenants, and releases set forth herein, and for other good and valuable consideration, the sufficiency and adequacy of which is acknowledged by the parties, the parties hereto agree as follows:

1.    **Recitals.**  The recitals contained in paragraphs A through G (the "**RECITALS**") are an integral part of this **AGREEMENT** and are incorporated herein by reference.

2.    **Rules of Construction.**  The following rules of construction govern and apply to the interpretation and construction of this **AGREEMENT**:

2.1.    Whenever the name of the **TRUSTEE** is used, it includes all current and former agents, employees, attorneys, accountants, successors, and assigns of the **TRUSTEE** and all other persons and entities for whose acts and omissions the **TRUSTEE** may be held liable.

2.2.    Whenever the name of **BADERINK** is used, it includes all related and affiliated entities, all current and former partners, owners, shareholders, members, agents, attorneys, employees, officers, directors, successors, and assigns of **BADERINK**, as applicable, **and their relatives and affiliates,** and all other persons and entities for whose acts and omissions **BADERINK** may be held liable.

2.3.    Each party acknowledges that it has participated in the drafting of this **AGREEMENT** and reviewed the terms of the **AGREEMENT** and, as such, no rule of construction shall apply in any interpretation of this **AGREEMENT** which might result in this **AGREEMENT** being construed in favor of or against either of them, including, without limitation, any rule of construction to the effect that ambiguities ought to be resolved against the drafting party.

2

**2.4.** The underscored word or words appearing at the commencement of sections of this **AGREEMENT** are intended only as a guide and are not intended, and should not be construed, as controlling, enlarging, restricting, explaining, or modifying, in any manner, the language or meaning of those sections or subsections.

**3.** **Settlement.** In consideration for the promises made in this **AGREEMENT**, including, without limitation, dismissal of the **ACTION** against **BADERINK**, with prejudice, shall pay the **ESTATE** the total amount of Twenty Thousand Dollars and Zero Cents ($20,000) (the "**SETTLEMENT PAYMENT**"). The **SETTLEMENT PAYMENT** shall be due on or before the fifteenth (15th) calendar day following the date the order of the **BANKRUPTCY COURT**, or other court of competent jurisdiction, approving this **AGREEMENT** becomes a final, unstayed order. The **SETTLEMENT PAYMENT** shall be made by wire (pursuant to instructions provided by the **TRUSTEE**) or business or cashier's check made payable to "Elissa D. Miller, Chapter 7 Trustee for Girardi Keese", and by delivering said business or cashier's check to Elissa D. Miller, Chapter 7 Trustee, Greenspoon Marder LLP, 1875 Century Park East, Suite 1900, Los Angeles, California 90067, or by wire pursuant to wiring instructions to be provided to **BADERINK** upon request.

**4.** **No 11 U.S.C. § 502(h) Claim.** In addition to the **SETTLEMENT PAYMENT**, **BADERINK** hereby acknowledges and expressly waives any claim provided by 11 U.S.C. § 502(h) that may arise in connection with the **SETTLEMENT PAYMENT**. The **TRUSTEE** further reserves the right to object to any proof of claim (if any), or scheduled claim, that **BADERINK** may have previously filed against the **DEBTOR** and the **ESTATE**.

**5.** **Dismissal of Action With Prejudice Upon Bankruptcy Court Approval and Payment of Settlement Payment.** In consideration for the promises made in this **AGREEMENT**, the **TRUSTEE** shall, within five (5) business days after confirmation that the **SETTLEMENT PAYMENT** has been honored by the **TRUSTEE'S** depository institution, file with the **COURT** a request for dismissal dismissing the entire **ACTION** against **BADERINK** with prejudice (the "**REQUEST**").

**6.** **Mutual Release.** Except for: (a) a breach of this **AGREEMENT** and claims arising by reason of such breach; (b) enforcement of rights, obligations, and duties arising under this **AGREEMENT**; and (c) the satisfaction of the executory provisions of this **AGREEMENT**, in consideration for the provisions of this **AGREEMENT**, the **TRUSTEE**, on the one side, and **BADERINK**, on the other side, do hereby fully and finally compromise and settle with, and forever release, remise, relieve, waive, relinquish, and discharge each other from any and all claims, complaints, rights, manner of action or actions, cause or causes of action, suits, debts, dues, demands, obligations, charges, costs, expenses (including but not limited to attorneys' fees), sums of money, controversies, damages, accounts, agreements, covenants, contracts, judgments, reckonings, liens, and liabilities of every kind and nature whatsoever, whether at law or in equity, whether based upon statute, common law, or otherwise, whether matured, contingent, or non-contingent, whether direct or indirect, whether known or unknown, whether suspected or unsuspected, whether or not hidden, and without regard to the subsequent discovery or existence of different or additional facts, which the **TRUSTEE** and **BADERINK** ever had, now have, or may claim to have against each other (the "**CLAIM(S)**") arising out of, whether or not based on, asserted in, or in connection with any matter, cause, claim, or thing or related to the

**ACTION,** or the **DEBTOR,** or its members, principals, owners, employees, and/or their affiliates, agents and relatives, any of the above now accrued or hereafter accruing. The releases herein only arise out of the **DEBTOR'S** case and the **TRUSTEE** is not releasing any claims against **BADERINK,** if any, unrelated to the **DEBTOR'S** case. However, the **TRUSTEE** represents that she is unaware of any such claims.

7.    <u>**Final Release and Bar.**</u> The parties hereto hereby acknowledge that it is their intention that this **AGREEMENT** shall be effective as a full and final release of, and as a bar with prejudice to, each and every **CLAIM** which the parties have or had against one another as is applicable, directly or indirectly. In connection with such waiver and relinquishment, the parties acknowledge that they or their attorneys may hereafter discover facts different from or in addition to the facts that they now know or believe to be true with respect to the subject matter of this **AGREEMENT,** but that it is their intention to hereby fully, finally, absolutely, and forever release any and all **CLAIMS** released pursuant to Section 6, above, which now do exist, may exist, or heretofore have existed between them, and that in furtherance of such intentions the release as given herein by the parties shall be and remains in effect as a full and complete release of the **CLAIMS** released in Section 6 above, notwithstanding the discovery of any such different or additional facts.

Notwithstanding the discovery of any such additional or different facts, the parties certify that they have read Section 1542 of the California Civil Code set forth below:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The parties hereto do hereby waive application of Section 1542 of the California Civil Code and any other statutes, common law rights, rules, or the like which may operate to limit the intent of this **AGREEMENT** with respect to the **CLAIMS** released in Section 6 above. The parties understand and acknowledge the significance and consequence of this waiver of Section 1542 of the California Civil Code is that even if they should eventually suffer additional damages on account of the **CLAIMS** released in Section 6 above, they will not be permitted to make any claim for such damages.

8.    <u>**Covenant Not to Sue.**</u> The **TRUSTEE** and **BADERINK** hereby covenant and agree that they will forever refrain and forbear from commencing, instituting, or prosecuting any lawsuit, action, or other proceeding against each other based on, arising out of, or in connection with the **CLAIMS** released in Section 6 above. Notwithstanding the foregoing, nothing contained in this **AGREEMENT** shall preclude the **TRUSTEE** or **BADERINK** from exercising their respective rights in the event the other party breaches any of its obligations under this **AGREEMENT.**

9.    **Denial of Liability.** Liability for any claims that the **TRUSTEE** has or may have asserted is denied by **BADERINK**. This **AGREEMENT** is a compromise of disputed claims and shall never be construed as an admission of liability or responsibility for any purpose by either party.

10.    **Mutual Warranties and Representations.** The **TRUSTEE** and **BADERINK** hereby represent and warrant to each other that as of the date of this **AGREEMENT**:

   **10.1**    The **TRUSTEE** and **BADERINK** have each consulted with, or have had the opportunity to consult with, an attorney of their choosing, and each of them has carefully read this **AGREEMENT**, fully understands the **AGREEMENT** and its terms and provisions, and each of them either is relying upon legal advice in entering into this **AGREEMENT** voluntarily, or has determined, without being under any duress or coercion, not to rely upon legal advice in entering into this **AGREEMENT**.

   **10.2**    The **TRUSTEE** and **BADERINK** have each made such investigation of the facts and matters pertaining to this **AGREEMENT** and settlement of the **ACTION** as each of them has deemed necessary.

   **10.3**    Except for the statements, representations, and promises contained in this **AGREEMENT**, the parties hereto are not relying upon any statement, representation, or promise from the other party hereto or any of the other party's agents, employees, representatives, or attorneys in entering into this **AGREEMENT**.

   **10.4**    Each person executing this **AGREEMENT** on behalf of a party hereto has been duly authorized to execute this **AGREEMENT** on behalf of the party and to bind the party to the terms and provisions of this **AGREEMENT** by appropriate appointment, delegation of authority, corporate by-laws, or board resolutions.

   **10.5**    The **TRUSTEE** represents and warrants, which representation and warranty is a material inducement to the execution of the **AGREEMENT**, that, in her capacity as chapter 7 trustee of the **ESTATE**, she is the sole holder of the **CLAIMS** which are the subject of this **AGREEMENT**, with the sole right to initiate, litigate, and compromise said **CLAIMS**.

   **10.6**    As to the matters addressed herein, this **AGREEMENT** is intended to be final and binding upon the parties hereto, regardless of any mistake of fact or law made by the parties hereto. The **TRUSTEE** and **BADERINK** each assume the risk of any mistake of fact or law in relation to this **AGREEMENT** and may not set aside this **AGREEMENT**, or any portion thereof, based on the subsequent discovery of any such mistake of fact or law.

11.    **Complete Agreement.** This **AGREEMENT** contains the entire agreement between the parties with respect to the matters addressed in this **AGREEMENT** and the **AGREEMENT** supersedes all prior agreements, whether written or oral. Should a dispute arise under this **AGREEMENT**, neither the **TRUSTEE** nor **BADERINK** may introduce evidence of any

alleged prior or contemporaneous agreements or understandings to alter the terms of this **AGREEMENT**.

12.    <u>**No Oral Modifications.**</u>  This **AGREEMENT** may be amended only in a writing signed by the parties hereto.

13.    <u>**Retention of Jurisdiction.**</u>   The **BANKRUPTCY COURT** shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or relating to this **AGREEMENT**.

14.    <u>**Attorneys' Fees and Costs.**</u>  The **TRUSTEE** and **BADERINK** shall each bear their own costs and attorneys' fees, if any, with regard to any aspect of the **TRUSTEE'S CLAIMS** against **BADERINK**, including, with respect to the **COMPLAINT**, the **ACTION**, and the negotiation, drafting, and execution of this **AGREEMENT**.  However, the **TRUSTEE** and **BADERINK** agree that, in the event of any legal or equitable action or arbitration proceeding required to enforce or defend this **AGREEMENT**, the prevailing party, as that term is defined by California Civil Code § 1717, shall be entitled to an award of its attorneys' fees, costs, and expenses incurred in connection with the enforcement or defense of this **AGREEMENT**, in addition to any other damages it may suffer as a result of the violation or breach of this **AGREEMENT**, or other relief to which it may be entitled.

15.    <u>**Successors.**</u>  This **AGREEMENT** shall bind and inure to the benefit of the parties hereto and their respective successors, predecessors, and assigns.

16.    <u>**Severability.**</u>  Should any provision of this **AGREEMENT** be unenforceable, those provisions shall be considered severable, and the remaining provisions shall remain in effect.

17.    <u>**Governing Law.**</u>  This **AGREEMENT** shall be construed and governed by the laws of the State of California.

18.    <u>**Counterparts.**</u>  This **AGREEMENT** may be executed in counterparts and by facsimile signature with the same force and effect as if all original signatures were set forth in a single document.  This **AGREEMENT** shall not be binding until signed by both parties.

19.    <u>**Further Assurances.**</u>  The **TRUSTEE** and **BADERINK** hereby agree, on request of the other party hereto, to perform all acts reasonably necessary, including execution of further documents, to effectuate the intent of this **AGREEMENT**.

20.    <u>**Good Faith and Fair Dealing.**</u>  This **AGREEMENT** was negotiated in good faith, at arm's length, and for good, reasonable and fair consideration as to all parties.

*[Remainder of page intentionally left blank]*

21. <u>**Bankruptcy Court Approval.**</u>  This **AGREEMENT** is explicitly conditioned upon entry of an order by the **BANKRUPTCY COURT**, or other court of competent jurisdiction, approving the terms and conditions of this **AGREEMENT**.  In the event the **BANKRUPTCY COURT**, or other court of competent jurisdiction, does not approve this **AGREEMENT**, it will be null and void.

**BY SIGNING THIS AGREEMENT, I CERTIFY THAT I HAVE READ THIS AGREEMENT AND UNDERSTAND ALL OF ITS TERMS, AND I VOLUNTARILY AGREE TO THE TERMS AS SET FORTH IN THIS AGREEMENT.**

**ELISSA D. MILLER, Solely in her capacity as chapter 7 trustee for the bankruptcy estate of Girardi Keese**

By: _____
          Elissa D. Miller, Chapter 7 Trustee

**BADERINK, a California corporation**

By: _____
          Bader Bedro
Its:  President

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER AUTHORIZING COMPROMISE OF CONTROVERSY RE BADERINK PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND AUTHORIZING PAYMENT OF CONTINGENCY FEE TO SPECIAL AVOIDANCE POWER LITIGATION COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ELISSA D. MILLER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 25, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**See Attached ECF List**

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) July 25, 2023 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

<u>Attorneys for Defendant</u>:
Leslie Cohen, Esq.
Leslie Cohen Law PC
1615-A Montana Avenue
Santa Monica, CA 90403

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  July 25, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 25, 2023 | Cheryl Caldwell | /s/Cheryl Caldwell |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 52398572v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    **F 9013-3.1.PROOF.SERVICE**

<u>**ADDITIONAL SERVICE INFORMATION**</u> (if needed):

1. <u>**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u>

- **Kyra E Andrassy**   kandrassy@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Rafey Balabanian**   rbalabanian@edelson.com, docket@edelson.com;5926930420@filings.docketbird.com
- **Michelle Balady**   mb@bedfordlg.com, leo@bedfordlg.com
- **Robert D Bass**   bob.bass47@icloud.com
- **Reem J Bello**   rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Kate Benveniste**   kate.benveniste@us.dlapiper.com, dlaphx@us.dlapiper.com
- **Ori S Blumenfeld**   oblumenfeld@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com
- **Clifford Bordeaux**   bordeaux.ecf@gmail.com, BordeauxLawPC@jubileebk.net
- **Evan C Borges**   eborges@ggtriallaw.com, cwinsten@ggtriallaw.com
- **William E Brueckner**   wbrueckner@woodsoviatt.com
- **Richard Dennis Buckley**   rbuckley@safarianchoi.com
- **Steve Burnell**   Steve.Burnell@gmlaw.com,
  sburnell@ecf.courtdrive.com;sburnell@ecf.inforuptcy.com;cheryl.caldwell@gmlaw.com;denise.walker@gmlaw.com
- **Glenn Ward Calsada**   glenn@calsadalaw.com,
  lnw@calsadalaw.com;glenncalsada@gmail.com,niko@calsadalaw.com,lauren@calsadalaw.com,pat@calsadalaw.com
- **Indira J. Cameron-Banks**   indira@cameronjones.law, tiffany@cameronbankslaw.com
- **Michael F Chekian**   mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Fang Chen**   fang@fangchenlaw.com
- **Marie E Christiansen**   mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-4166@ecf.pacerpro.com
- **Baruch C Cohen**   bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Leslie A Cohen**   leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Jennifer Witherell Crastz**   jcrastz@hrhlaw.com
- **Ashleigh A Danker**   adanker731@gmail.com
- **Richard T Egger**   richard.egger@bbklaw.com, linda.tapia@bbklaw.com
- **Lei Lei Wang Ekvall - DECEASED -**   lekvall@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Richard W Esterkin**   richard.esterkin@morganlewis.com
- **Oscar Estrada**   oestrada@ttc.lacounty.gov
- **Timothy W Evanston**   tevanston@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- **Jeremy Faith**   Jeremy@MarguliesFaithlaw.com,
  Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- **James R Felton**   jfelton@gblawllp.com, pstruntz@gblawllp.com;msingleman@gblawllp.com
- **Robert W Finnerty**   rfinnerty@actslaw.com
- **James J Finsten** ,  jimfinsten@hotmail.com
- **James J Finsten**   jfinsten@lurie-zepeda.com, jimfinsten@hotmail.com
- **Alan W Forsley**   alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com
- **Michael E Friedman**   MichaelFriedmanLaw@gmail.com
- **Steven R. Friedman**   stevenrfriedman@gmail.com
- **Larry W Gabriel**   lgabrielaw@outlook.com, tinadow17@gmail.com
- **James B Glucksman**   jbg@dhclegal.com
- **Robert P Goe**   kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Eric D Goldberg**   eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Rosendo Gonzalez**   rossgonzalez@gonzalezplc.com,
  rgonzalez@ecf.axosfs.com;jzavala@gonzalezplc.com;zig@gonzalezplc.com;gig@gonzalezplc.com
- **Andrew Goodman**   agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com
- **Suzanne C Grandt**   suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov
- **Steven T Gubner**   sgubner@bg.law, ecf@bg.law

CC 52398572v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                           **F 9013-3.1.PROOF.SERVICE**

- **Asa S Hami**    asa.hami@gmlaw.com,
  ahami@ecf.courtdrive.com;patricia.dillamar@gmlaw.com;pdillamar@ecf.courtdrive.com
- **Brian T Harvey**    bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com
- **Stella A Havkin**    stella@havkinandshrago.com, shavkinesq@gmail.com
- **James Andrew Hinds**    jhinds@hindslawgroup.com, mduran@hindslawgroup.com, mduran@hindslawgroup.com
- **Marshall J Hogan**    mhogan@swlaw.com, knestuk@swlaw.com
- **Bradford G Hughes**    bhughes@Clarkhill.com, mdelosreyes@clarkhill.com;kwebster@clarkhill.com
- **Sheryl K Ith**    sith@cookseylaw.com
- **Razmig Izakelian**    razmigizakelian@quinnemanuel.com
- **Steven D Jerome**    sjerome@swlaw.com
- **Lillian Jordan**    nefrecipients@donlinrecano.com, RMAPA@DONLINRECANO.COM
- **Alphamorlai Lamine Kebeh**    akebeh@danninggill.com
- **Molly J. Kjartanson**    mkjartanson@swlaw.com
- **Michael S Kogan**    mkogan@koganlawfirm.com
- **Kenneth A Kotarski**    KKOTARSKI@HAMRICKLAW.COM,
  hmartindale@HAMRICKLAW.COM;pliscano@hamricklaw.com;gknopfler@hamricklaw.com;khearn@hamricklaw.com;secretary2@hamricklaw.com;sjustice@hamricklaw.com;jpoole@hamricklaw.com
- **Lewis R Landau**    Lew@Landaunet.com
- **Janet A Lawson**    jlawsonlawyer@gmail.com, G38570@notify.cincompass.com
- **Daniel A Lev**    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Marc A Lieberman**    marc.lieberman@flpllp.com, safa.saleem@flpllp.com,addy@flpllp.com
- **Elizabeth A Lombard**    elombard@zwickerpc.com, bknotices@zwickerpc.com
- **Noreen A Madoyan**    Noreen.Madoyan@usdoj.gov
- **Aaron J Malo**    amalo@sheppardmullin.com, clopez@sheppardmullin.com;abilly@sheppardmullin.com
- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Craig G Margulies**    Craig@MarguliesFaithlaw.com,
  Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Damian J. Martinez**    damian.martinez@aalrr.com, julissa.ruiz@aalrr.com
- **Peter J Mastan**    peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
- **Edith R. Matthai**    ematthai@romalaw.com, lrobie@romalaw.com
- **Daniel J McCarthy**    dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;nchacon@hfbllp.com
- **Dennis E McGoldrick**    dmcgoldricklaw@yahoo.com, demcg@demcg.com
- **Elissa Miller (TR)**    CA71@ecfcbis.com,
  MillerTrustee@gmlaw.com;C124@ecfcbis.com;cheryl.caldwell@gmlaw.com;cheryl.caldwell@ecf.courtdrive.com
- **Eric A Mitnick**    MitnickLaw@gmail.com, mitnicklaw@gmail.com
- **Byron Z Moldo**    bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Kevin H Morse**    kmorse@clarkhill.com, blambert@clarkhill.com
- **Glenn D. Moses**    gmoses@venable.com,
  cascavone@venable.com;jpmalcolm@venable.com;jadelgado@venable.com
- **Gilbert M Nishimura**    gnishimura@snw-law.com, schin@snw-law.com;sgalindo@snw-law.com;ffilimona@snw-law.com
- **Scott Olson**    scott.olson@bclplaw.com, scott-olson-2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Carmela Pagay**    ctp@lnbyb.com
- **Carmela Pagay**    ctp@lnbyg.com
- **Leonard Pena**    lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com
- **Matthew D Pham**    mpham@allenmatkins.com, mdiaz@allenmatkins.com
- **Christopher E Prince**    cprince@lesnickprince.com,
  jmack@lesnickprince.com;cprince@ecf.courtdrive.com;jnavarro@lesnickprince.com
- **Amy Quartarolo**    amy.quartarolo@lw.com, laura.pumerville@lw.com;amy-quartarolo-2972@ecf.pacerpro.com
- **Michael J Quinn**    mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-2870@ecf.pacerpro.com,ahirschkowitz@vedderprice.com
- **Dean G Rallis**    drallis@hahnlawyers.com,
  jevans@hahnlawyers.com;drallis@ecf.courtdrive.com;jevans@ecf.courtdrive.com

CC 52398572v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Karen Rinehart**    krinehart@omm.com, karen-rinehart-3320@ecf.pacerpro.com
- **Kevin C Ronk**    Kevin@portilloronk.com, Attorneys@portilloronk.com
- **Brian M Rothschild**    brothschild@parsonsbehle.com, usclawyer@yahoo.com;ecf@parsonsbehle.com
- **Frank X Ruggier**    frank@ruggierlaw.com
- **William F Savino**    wsavino@woodsoviatt.com, lherald@woodsoviatt.com
- **Scott A Schiff**    sas@soukup-schiff.com
- **Daren M Schlecter**    daren@schlecterlaw.com, assistant@schlecterlaw.com
- **Kenneth John Shaffer**    johnshaffer@quinnemanuel.com
- **Amir Shakoorian**    AShakoorian@GGTrialLaw.com
- **Summer M Shaw**    ss@shaw.law, shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com
- **Zev Shechtman**    zs@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- **Anastasija Olegovna Snicarenko**    legal@flyxo.com, jennifer@cypressllp.com
- **Richard M Steingard**    , awong@steingardlaw.com
- **Andrew Still**    astill@swlaw.com, kcollins@swlaw.com
- **Annie Y Stoops**    annie.stoops@afslaw.com, yvonne.li@arentfox.com
- **Philip E Strok**    pstrok@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- **Jeffrey L Sumpter**    jsumpter1@cox.net
- **Terrence Swinson**    terrenceswinson@gmail.com
- **Tamar Terzian**    tamar@terzlaw.com, sandra@terzlaw.com
- **Boris Treyzon**    btreyzon@actslaw.com, pjs@actslaw.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Diane C Weil**    dcweil@dcweillaw.com, diane.c.weil@Gmail.com,dweil@ecf.inforuptcy.com,jfiser@dcweillaw.com
- **David R. Weinstein**    dweinstein@weinsteinlawfirm.net
- **Andrew D. Weiss**    ADWeiss@oclawadw.com
- **Sharon Z. Weiss**    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law
- **Pauline White**    pauline@paulinewhite.com
- **Eric D Winston**    ericwinston@quinnemanuel.com
- **Christopher K.S. Wong**    christopher.wong@afslaw.com, yvonne.li@arentfox.com
- **Robert M Yaspan**    court@yaspanlaw.com, tmenachian@yaspanlaw.com
- **Timothy J Yoo**    tjy@lnbyb.com
- **Isaac R Zfaty**    izfaty@muchlaw.com
- **David B Zolkin**    dzolkin@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com
- **Joshua del Castillo**    jdelcastillo@allenmatkins.com, mdiaz@allenmatkins.com

CC 52398572v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**